**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
                                                   :
**In re:**                                         :          **Chapter 11**
                                                   :
**ENRON CORP.,** *et al.,*                         :          **Case No. 01-16034 (AJG)**
                                                   :
                          **Debtors.**             :          **Jointly Administered**
-----------------------------------------------------------x

SUPPLEMENTAL MODIFIED FIFTH AMENDED JOINT PLAN OF
AFFILIATED DEBTORS PURSUANT TO CHAPTER 11 OF
THE UNITED STATES BANKRUPTCY CODE

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
(212) 310-8000
                – and –
700 Louisiana
Houston, Texas  77002
(713) 546-5000
Attorneys for Debtors and
   Debtors in Possession

Dated:  July 2, 2004

# TABLE OF CONTENTS

**Page**

ARTICLE I          DEFINITIONS..................................................................................... 2

1.1      ACFI................................................................................................. 2

1.2      ACFI Guaranty Claim ..................................................................... 2

1.3      ACFI Guaranty Distributive Assets ................................................ 2

1.4      ACFI Guaranty Distributive Interests ............................................ 3

1.5      Administrative Expense Claim ....................................................... 3

1.6      Affiliate .......................................................................................... 4

1.7      Allowed Administrative Expense Claim ......................................... 4

1.8      Allowed Claim/Allowed Equity Interest ......................................... 4

1.9      Allowed Convenience Claim .......................................................... 4

1.10     Allowed ENA Debenture Claim ..................................................... 4

1.11     Allowed Enron Common Equity Interest ....................................... 5

1.12     Allowed Enron Guaranty Claim ..................................................... 5

1.13     Allowed Enron Preferred Equity Interest....................................... 5

1.14     Allowed Enron Senior Note Claim ................................................ 5

1.15     Allowed Enron Subordinated Debenture Claim ............................ 5

1.16     Allowed Enron TOPRS Debenture Claim ..................................... 5

1.17     Allowed Enron TOPRS Subordinated Guaranty Claim.................. 5

1.18     Allowed ETS Debenture Claim ...................................................... 5

1.19     Allowed General Unsecured Claim ................................................ 5

1.20     Allowed Guaranty Claim ................................................................ 5

1.21     Allowed Intercompany Claim ......................................................... 5

1.22     Allowed Joint Liability Claim ......................................................... 5

1.23     Allowed Other Subordinated Claim................................................ 6

1.24     Allowed Priority Claim ................................................................... 6

1.25     Allowed Priority Non-Tax Claim .................................................... 6

1.26     Allowed Priority Tax Claim ............................................................ 6

1.27     Allowed Secured Claim .................................................................. 6

1.28     Allowed Section 510 Enron Common Equity Interest Claim............... 6

# TABLE OF CONTENTS
## (continued)

Page

1.29    Allowed Section 510 Enron Preferred Equity Interest Claim ................................ 6

1.30    Allowed Section 510 Enron Senior Notes Claim ................................................ 6

1.31    Allowed Section 510 Enron Subordinated Debenture Claim ............................... 6

1.32    Allowed Subordinated Claim ............................................................................... 6

1.33    Allowed Wind Guaranty Claim ........................................................................... 6

1.34    Assets ................................................................................................................... 6

1.35    Assumption Schedule ........................................................................................... 7

1.36    Ballot ................................................................................................................... 7

1.37    Ballot Date ........................................................................................................... 7

1.38    Bankruptcy Code .................................................................................................. 7

1.39    Bankruptcy Court ................................................................................................. 7

1.40    Bankruptcy Rules ................................................................................................. 7

1.41    Benefit Plan .......................................................................................................... 7

1.42    Business Day ........................................................................................................ 7

1.43    Case Management Order ....................................................................................... 7

1.44    Cash ...................................................................................................................... 8

1.45    Cash Equivalents .................................................................................................. 8

1.46    Chapter 11 Cases .................................................................................................. 8

1.47    Claim .................................................................................................................... 8

1.48    Class ..................................................................................................................... 8

1.49    Class Actions ....................................................................................................... 8

1.50    Collateral .............................................................................................................. 8

1.51    Common Equity Interest ...................................................................................... 8

1.52    Common Equity Trust .......................................................................................... 9

1.53    Common Equity Trustee ...................................................................................... 9

1.54    Common Equity Trust Agreement ....................................................................... 9

1.55    Common Equity Trust Board ............................................................................... 9

1.56    Common Equity Trust Interests ........................................................................... 9

1.57    Confirmation Date ................................................................................................ 9

## TABLE OF CONTENTS
### (continued)

Page

1.58    Confirmation Hearing ................................................................................... 9

1.59    Confirmation Order ...................................................................................... 9

1.60    Consolidated Basis ....................................................................................... 9

1.61    Convenience Claim ....................................................................................... 9

1.62    Convenience Claim Distribution Percentage ....................................... 10

1.63    Creditor ....................................................................................................... 10

1.64    Creditor Cash .............................................................................................. 10

1.65    Creditors' Committee ................................................................................. 10

1.66    CrossCountry Assets .................................................................................. 10

1.67    CrossCountry By-laws/Organizational Agreement ............................. 11

1.68    CrossCountry Charter ................................................................................ 11

1.69    CrossCountry Common Equity ................................................................ 11

1.70    CrossCountry Distributing Company ..................................................... 11

1.71    CrossCountry Trust .................................................................................... 11

1.72    CrossCountry Trust Agreement ............................................................... 11

1.73    CrossCountry Trust Board ........................................................................ 12

1.74    CrossCountry Trustee ................................................................................ 12

1.75    CrossCountry Trust Interests ................................................................... 12

1.76    DCR Overseers ........................................................................................... 12

1.77    Debtors ........................................................................................................ 12

1.78    Debtors in Possession ................................................................................ 13

1.79    Deferred Compensation Litigation .......................................................... 13

1.80    Defined Benefit Plans ................................................................................ 14

1.81    DIP Orders .................................................................................................. 14

1.82    Disbursement Account(s) .......................................................................... 14

1.83    Disbursing Agent ....................................................................................... 14

1.84    Disclosure Statement ................................................................................. 14

1.85    Disclosure Statement Order ..................................................................... 14

1.86    Disputed Claim; Disputed Equity Interest ............................................ 14

# TABLE OF CONTENTS
## (continued)

Page

| | | |
|---|---|---|
| 1.87 | Disputed Claim Amount | 14 |
| 1.88 | Distribution Model | 15 |
| 1.89 | Distributive Assets | 15 |
| 1.90 | Distributive Interests | 15 |
| 1.91 | District Court | 16 |
| 1.92 | ECT I | 16 |
| 1.93 | ECT I Trust Declarations | 16 |
| 1.94 | ECT II | 16 |
| 1.95 | ECT II Trust Declarations | 16 |
| 1.96 | Effective Date | 16 |
| 1.97 | 8.25% Subordinated Debentures | 16 |
| 1.98 | Employee Committee | 16 |
| 1.99 | Employee Counsel Orders | 17 |
| 1.100 | Employee Prepetition Stay Bonus Payments | 17 |
| 1.101 | ENA | 17 |
| 1.102 | ENA Debentures | 17 |
| 1.103 | ENA Debentures Claim | 17 |
| 1.104 | ENA Examiner | 17 |
| 1.105 | ENA Examiner Order | 17 |
| 1.106 | ENA Guaranty Claim | 17 |
| 1.107 | ENA Guaranty Distributive Assets | 17 |
| 1.108 | ENA Guaranty Distributive Interests | 18 |
| 1.109 | ENA Indentures | 18 |
| 1.110 | ENA Indenture Trustee | 19 |
| 1.111 | ENE | 19 |
| 1.112 | ENE Examiner | 19 |
| 1.113 | ENE Examiner Orders | 19 |
| 1.114 | Enron Affiliate | 19 |
| 1.115 | Enron Common Equity Interest | 19 |

# TABLE OF CONTENTS
### (continued)

Page

1.116  Enron Guaranty Claim ................................................................ 19

1.117  Enron Guaranty Distributive Assets .............................................. 19

1.118  Enron Guaranty Distributive Interests  ......................................... 20

1.119  Enron MIPS Agreements .............................................................. 20

1.120  Enron Preferred Equity Interest ................................................... 20

1.121  Enron Senior Notes ..................................................................... 21

1.122  Enron Senior Notes Claim ........................................................... 21

1.123  Enron Senior Notes Indentures .................................................... 21

1.124  Enron Senior Notes Indenture Trustees ........................................ 21

1.125  Enron Subordinated Debentures ................................................... 21

1.126  Enron Subordinated Debenture Claim ........................................... 21

1.127  Enron Subordinated Indenture ...................................................... 21

1.128  Enron Subordinated Indenture Trustee .......................................... 21

1.129  Enron TOPRS Debenture Claim .................................................... 21

1.130  Enron TOPRS Debentures ........................................................... 21

1.131  Enron TOPRS Indenture Trustee .................................................. 22

1.132  Enron TOPRS Indentures ............................................................ 22

1.133  Enron TOPRS Subordinated Guaranty Claim ................................. 22

1.134  Entity ........................................................................................ 22

1.135  EPC .......................................................................................... 22

1.136  EPC Guaranty Claim ................................................................... 22

1.137  EPC Guaranty Distributive Assets ................................................ 22

1.138  EPC Guaranty Distributive Interests ............................................. 23

1.139  EPF I ........................................................................................ 23

1.140  EPF I Partnership Agreement ....................................................... 23

1.141  EPF II ....................................................................................... 24

1.142  EPF II Partnership Agreement ...................................................... 24

1.143  Equity Interest ........................................................................... 24

1.144  ERISA ....................................................................................... 24

## TABLE OF CONTENTS
### (continued)

Page

1.145   ETS.................................................................................................................. 24

1.146   ETS Debenture Claim ...................................................................................... 24

1.147   ETS Indentures ................................................................................................ 24

1.148   ETS Indenture Trustee ..................................................................................... 24

1.149   Exchanged Enron Common Stock ................................................................... 24

1.150   Exchanged Enron Preferred Stock .................................................................. 24

1.151   Existing PGE Common Stock .......................................................................... 25

1.152   Fair Market Value ........................................................................................... 25

1.153   Fee Committee ................................................................................................. 25

1.154   Final Order ...................................................................................................... 25

1.155   General Unsecured Claim ................................................................................ 25

1.156   Guaranty Claims .............................................................................................. 25

1.157   Indentures ........................................................................................................ 25

1.158   Indenture Trustees ........................................................................................... 25

1.159   Indenture Trustee Claims ................................................................................ 25

1.160   Initial Petition Date ......................................................................................... 26

1.161   Intercompany Claims ....................................................................................... 26

1.162   Intercompany Distributive Assets ................................................................... 26

1.163   Intercompany Distributive Interests ................................................................ 26

1.164   Investigative Orders ........................................................................................ 26

1.165   IRC ................................................................................................................... 26

1.166   IRS ................................................................................................................... 26

1.167   Joint Liability Claim ........................................................................................ 26

1.168   Lien .................................................................................................................. 27

1.169   Litigation Trust ................................................................................................ 27

1.170   Litigation Trustee ............................................................................................ 27

1.171   Litigation Trust Agreement ............................................................................. 27

1.172   Litigation Trust Board ..................................................................................... 27

1.173   Litigation Trust Claims ................................................................................... 27

# TABLE OF CONTENTS
## (continued)

1.174   Litigation Trust Interests ........................................................................ 28

1.175   Mediation Orders .................................................................................. 28

1.176   Mediator ............................................................................................... 28

1.177   MegaClaim Litigation ........................................................................... 28

1.178   Montgomery County Litigation ............................................................. 28

1.179   Operating Trustee .................................................................................. 28

1.180   Operating Trust Agreements .................................................................. 28

1.181   Operating Trusts .................................................................................... 28

1.182   Operating Trust Interests ....................................................................... 28

1.183   Other Equity Interest ............................................................................. 28

1.184   Other Subordinated Claim ..................................................................... 28

1.185   Penalty Claim ........................................................................................ 29

1.186   Person .................................................................................................... 29

1.187   Petition Date .......................................................................................... 29

1.188   PGE ....................................................................................................... 29

1.189   PGE By-laws ......................................................................................... 29

1.190   PGE Certificate of Incorporation .......................................................... 29

1.191   PGE Common Stock .............................................................................. 29

1.192   PGE Trust .............................................................................................. 29

1.193   PGE Trust Agreement ........................................................................... 29

1.194   PGE Trust Board ................................................................................... 29

1.195   PGE Trustee ........................................................................................... 30

1.196   PGE Trust Interests ............................................................................... 30

1.197   Plan ........................................................................................................ 30

1.198   Plan Currency ........................................................................................ 30

1.199   Plan Securities ....................................................................................... 30

1.200   Plan Supplement .................................................................................... 30

1.201   Portland Creditor Cash .......................................................................... 31

1.202   Portland Debtors .................................................................................... 31

# TABLE OF CONTENTS
## (continued)

Page

1.203  Preferred Equity Trust ................................................................ 31

1.204  Preferred Equity Trustee ............................................................ 31

1.205  Preferred Equity Trust Agreement ............................................ 31

1.206  Preferred Equity Trust Board .................................................... 31

1.207  Preferred Equity Trust Interests ............................................... 32

1.208  Priority Claim ........................................................................... 32

1.209  Priority Non-Tax Claim ............................................................ 32

1.210  Priority Tax Claim .................................................................... 32

1.211  Prisma ...................................................................................... 32

1.212  Prisma Articles of Association .................................................. 32

1.213  Prisma Assets ........................................................................... 32

1.214  Prisma Common Stock .............................................................. 32

1.215  Prisma Memorandum of Association ......................................... 33

1.216  Prisma Trust ............................................................................. 33

1.217  Prisma Trust Agreement ........................................................... 33

1.218  Prisma Trust Board ................................................................... 33

1.219  Prisma Trustee .......................................................................... 33

1.220  Prisma Trust Interests ............................................................... 33

1.221  Proponents ................................................................................ 33

1.222  Pro Rata Share .......................................................................... 33

1.223  Record Date .............................................................................. 34

1.224  Remaining Assets ...................................................................... 34

1.225  Remaining Asset Trust(s) .......................................................... 34

1.226  Remaining Asset Trustee .......................................................... 34

1.227  Remaining Asset Trust Agreement(s) ....................................... 34

1.228  Remaining Asset Trust Board(s) ............................................... 34

1.229  Remaining Asset Trust Interests ............................................... 34

1.230  Reorganized Debtor Plan Administration Agreement ............... 34

1.231  Reorganized Debtor Plan Administrator .................................... 35

# TABLE OF CONTENTS
## (continued)

**Page**

1.232   Reorganized Debtors.........................................................................................35

1.233   Reorganized Debtors By-laws ........................................................................35

1.234   Reorganized Debtors Certificate of Incorporation...........................................35

1.235   Reorganized ENE............................................................................................35

1.236   Reorganized Portland Debtors ........................................................................35

1.237   Sale/Settlement Orders....................................................................................35

1.238   Sale Transaction..............................................................................................35

1.239   Schedules ........................................................................................................35

1.240   SEC .................................................................................................................35

1.241   Section 510 Enron Common Equity Interest Claim ..........................................35

1.242   Section 510 Enron Preferred Equity Interest Claim .........................................36

1.243   Section 510 Enron Senior Notes Claim ...........................................................36

1.244   Section 510 Enron Subordinated Debenture Claim ..........................................36

1.245   Secured Claim .................................................................................................36

1.246   Series 1 Exchanged Preferred Stock ...............................................................36

1.247   Series 2 Exchanged Preferred Stock ...............................................................36

1.248   Series 3 Exchanged Preferred Stock ...............................................................37

1.249   Series 4 Exchanged Preferred Stock ...............................................................37

1.250   Settling Former Employees..............................................................................37

1.251   Severance Settlement Fund Litigation..............................................................37

1.252   Severance Settlement Fund Proceeds ..............................................................38

1.253   Severance Settlement Fund Trust ....................................................................38

1.254   Severance Settlement Fund Trust Agreement ..................................................38

1.255   Severance Settlement Fund Trustee .................................................................38

1.256   Severance Settlement Order.............................................................................38

1.257   6.75% Subordinated Debentures......................................................................38

1.258   Special Litigation Trust....................................................................................38

1.259   Special Litigation Trustee ................................................................................38

1.260   Special Litigation Trust Agreement .................................................................39

# TABLE OF CONTENTS
## (continued)

Page

1.261    Special Litigation Trust Board ................................................................. 39

1.262    Special Litigation Trust Claims ............................................................... 39

1.263    Special Litigation Trust Interests ............................................................ 39

1.264    Standard Termination Order ..................................................................... 39

1.265    Subordinated Claim.................................................................................. 39

1.266    TOPRS ...................................................................................................... 40

1.267    TOPRS Stipulation................................................................................... 40

1.268    Trust Interests........................................................................................... 40

1.269    Unsecured Claim ...................................................................................... 40

1.270    Value ......................................................................................................... 40

1.271    WD Management Agreement ................................................................... 41

1.272    WD Trust................................................................................................... 41

1.273    WD Trust Agreement ............................................................................... 41

1.274    WS Management Agreement .................................................................... 41

1.275    WS Trust ................................................................................................... 41

1.276    WS Trust Agreement ................................................................................ 41

1.277    Wind ......................................................................................................... 41

1.278    Wind Debtors ........................................................................................... 41

1.279    Wind Guaranty Claim .............................................................................. 41

1.280    Wind Guaranty Distributive Assets ........................................................ 41

1.281    Wind Guaranty Distributive Interests ..................................................... 42

1.282    Wind Management Agreements................................................................ 42

1.283    Wind Reserve Fund .................................................................................. 42

1.284    Wind Reserve Fund Order ....................................................................... 43

1.285    Wind Trusts............................................................................................... 43

1.286    Wind Trusts Assets .................................................................................. 43

1.287    Other Definitions ...................................................................................... 43

ARTICLE II        COMPROMISE AND SETTLEMENT OF DISPUTES;
                  SUBSTANTIVE CONSOLIDATION; ASSUMPTION OF
                  OBLIGATIONS UNDER THE PLAN ................................................. 43

# TABLE OF CONTENTS
## (continued)

Page

2.1    Compromise and Settlement ....................................................... 43

     (a)    Substantive Consolidation .................................................. 43

     (b)    Related Issues ................................................................... 44

         (i)      Intercompany Claims ....................................... 44

         (ii)      Guaranty Claims ............................................. 44

         (iii)      Ownership of Certain Assets ........................... 44

         (iv)      Ownership of Certain Litigation Claims ................. 45

     (c)    Plan Currency .................................................................. 45

     (d)    Inter-Debtor Waivers ........................................................ 45

     (e)    Governance ...................................................................... 45

2.2    Non-Substantive Consolidation ................................................. 46

2.3    Allocation of Expenses ............................................................. 46

2.4    Wind Reserve Fund .................................................................. 46

ARTICLE III      PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND DEBTOR IN POSSESSION FINANCING .............................................. 46

3.1    Administrative Expense Claims .................................................. 46

3.2    Professional Compensation and Reimbursement Claims ................... 47

3.3    Payment of Priority Tax Claims ................................................. 47

3.4    Debtor in Possession Financing ................................................. 47

ARTICLE IV      CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS .......... 48

4.1    Class 1 – Priority Non-Tax Claims .......................................... 48

4.2    Class 2 – Secured Claims ......................................................... 48

4.3    Classes 3 through 182 – General Unsecured Claims (Other than Enron Subordinated Debenture Claims and Enron TOPRS Debenture Claims) ........... 48

4.4    Class 183 – Enron Subordinated Debenture Claims ......................... 48

4.5    Class 184 – Enron TOPRS Debenture Claims ................................ 48

4.6    Class 185 – Enron Guaranty Claims .......................................... 48

4.7    Class 186 – Wind Guaranty Claims ........................................... 48

4.8    Class 187 – ENA Guaranty Claims ........................................... 48

# TABLE OF CONTENTS
## (continued)

Page

4.9    Class 188 – ACFI Guaranty Claims ................................................ 48

4.10   Class 189 – EPC Guaranty Claims ................................................. 48

4.11   Class 190 – Intercompany Claims .................................................. 48

4.12   Classes 191 through 375 – Convenience Claims .................................. 48

4.13   Classes 376 through 382 – Subordinated Claims ................................. 48

4.14   Class 383 – Enron Preferred Equity Interests .................................... 48

4.15   Class 384 – Enron Common Equity Interests ..................................... 48

4.16   Class 385 – Other Equity Interests ................................................. 48

ARTICLE V        PROVISION FOR TREATMENT OF PRIORITY NON-TAX
                 CLAIMS (CLASS 1) ................................................. 49

5.1    Payment of Allowed Priority Non-Tax Claims .................................. 49

ARTICLE VI       PROVISION FOR TREATMENT OF SECURED CLAIMS
                 (CLASS 2) ............................................................ 49

6.1    Treatment of Secured Claims ..................................................... 49

ARTICLE VII      PROVISION FOR TREATMENT OF GENERAL UNSECURED
                 CLAIMS (CLASSES 3-182) ....................................... 49

7.1    Treatment of General Unsecured Claims Other than Those Against the
       Portland Debtors (Classes 3 through 180) ........................................ 49

7.2    Treatment of General Unsecured Claims Against the Portland Debtors
       (Classes 181 and 182) ............................................................. 50

7.3    Election to Receive Additional Cash Distributions in Lieu of Partial Plan
       Securities ........................................................................... 50

7.4    Allowed Claims of Fifty Thousand Dollars or More/Election to be Treated
       as a Convenience Claim ........................................................... 50

7.5    Limitation on Recovery ........................................................... 51

7.6    Severance Settlement Fund Litigation Payments ................................ 51

7.7    Termination of Wind Trusts/Election of Wind Creditors to Receive
       Additional Cash Distributions in Partial Plan Securities ....................... 51

       (a)    Termination ................................................................ 51

       (b)    Election .................................................................... 51

7.8    Election of TOPRS Holders to Receive Additional Cash Distributions in
       Lieu of Partial Plan Securities .................................................... 52

# TABLE OF CONTENTS
## (continued)

**Page**

7.9     Dabhol Debtors Removal......................................................................... 52

ARTICLE VIII     PROVISION FOR TREATMENT OF ENRON
SUBORDINATED DEBENTURE CLAIMS (CLASS 183) .................. 52

8.1     Treatment of Allowed Enron Subordinated Debenture Claims (Class 183)........ 52

8.2     Contingent Distribution/Limitation on Recovery ................................................ 53

ARTICLE IX     PROVISION FOR TREATMENT OF ENRON TOPRS
DEBENTURE CLAIMS (CLASS 184)...................................................... 53

9.1     Treatment of Allowed Enron TOPRS Debenture Claims (Class 184) ............... 53

9.2     Contingent Distribution/Limitation on Recovery ................................................ 53

ARTICLE X     PROVISIONS FOR TREATMENT OF ENRON GUARANTY
CLAIMS (CLASS 185) ........................................................................ 54

10.1     Treatment of Enron Guaranty Claims (Class 185) ........................................... 54

10.2     Allowed Claims of Fifty Thousand Dollars or More/Election to be Treated
as a Convenience Claim ................................................................................ 54

ARTICLE XI     PROVISIONS FOR TREATMENT OF WIND GUARANTY
CLAIMS (CLASS 186) ........................................................................ 55

11.1     Treatment of Wind Guaranty Claims (Class 186) ........................................... 55

11.2     Allowed Claims of Fifty Thousand Dollars or More/Election to be Treated
as a Convenience Claim ................................................................................ 55

ARTICLE XII     PROVISIONS FOR TREATMENT OF ENA GUARANTY
CLAIMS (CLASS 187) ........................................................................ 55

12.1     Treatment of ENA Guaranty Claims (Class 187) .............................................. 55

12.2     Allowed Claims of Fifty Thousand Dollars or More/Election to be Treated
as a Convenience Claim ................................................................................ 56

ARTICLE XIII     PROVISIONS FOR TREATMENT OF ACFI GUARANTY
CLAIMS (CLASS 188) ........................................................................ 56

13.1     Treatment of ACFI Guaranty Claims (Class 188) ............................................ 56

13.2     Allowed Claims of Fifty Thousand Dollars or More/Election to be Treated
as a Convenience Claim ................................................................................ 56

ARTICLE XIV     PROVISIONS FOR TREATMENT OF EPC GUARANTY
CLAIMS (CLASS 189) ........................................................................ 57

14.1     Treatment of EPC Guaranty Claims (Class 189) .............................................. 57

# TABLE OF CONTENTS
## (continued)

Page

14.2 Allowed Claims of Fifty Thousand Dollars or More/Election to be Treated as a Convenience Claim .................................................................................. 57

ARTICLE XV    PROVISIONS FOR TREATMENT OF INTERCOMPANY CLAIMS (CLASS 190) .................................................. 57

15.1 Treatment of Intercompany Claims (Class 190) ................................. 57

ARTICLE XVI    PROVISIONS FOR TREATMENT OF CONVENIENCE CLAIMS (CLASSES 191-375) .................................................. 58

16.1 Treatment of Convenience Claims (Classes 191 through 375) .......................... 58

16.2 Plan Currency Opportunity .................................................................. 58

16.3 Dabhol Debtors Removal ...................................................................... 58

ARTICLE XVII    PROVISION FOR TREATMENT OF SUBORDINATED CLAIMS (CLASSES 376 – 382) ............................................. 58

17.1 Treatment of Allowed Subordinated Claims (Classes 376 through 382) ........... 58

17.2 Contingent Distribution/Limitation on Recovery ................................. 58

ARTICLE XVIII    PROVISIONS FOR TREATMENT OF ENRON PREFERRED EQUITY INTERESTS (CLASS 383) .................................... 59

18.1 Treatment of Allowed Enron Preferred Equity Interests (Class 383) ................. 59

18.2 Contingent Distribution/Limitation on Recovery ................................. 59

18.3 Cancellation of Enron Preferred Equity Interests and Exchanged Enron Preferred Stock ....................................................................................... 59

ARTICLE XIX    PROVISION FOR TREATMENT OF ENRON COMMON EQUITY INTERESTS (CLASS 384) ..................................... 60

19.1 Treatment of Allowed Enron Common Equity Interests (Class 384) ................. 60

19.2 Contingent Distribution to Common Equity Trust ............................... 60

19.3 Cancellation of Enron Common Equity Interests and Exchanged Enron Common Stock ...................................................................................... 60

ARTICLE XX    PROVISIONS FOR TREATMENT OF OTHER EQUITY INTERESTS (CLASS 385) .............................................. 60

20.1 Cancellation of Other Equity Interests (Class 385) ............................. 60

ARTICLE XXI    PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS UNDER THE PLAN ...................................................... 61

21.1 Objections to Claims; Prosecution of Disputed Claims ....................... 61

# TABLE OF CONTENTS
## (continued)

Page

21.2  Estimation of Claims ................................................................. 61

21.3  Payments and Distributions on Disputed Claims ............................. 62

    (a)  Disputed Claims Reserve ................................................ 62

    (b)  Allowance of Disputed Claims ......................................... 62

    (c)  Tax Treatment of Escrow................................................. 63

    (d)  Funding of Escrow's Tax Obligation.................................. 63

ARTICLE XXII    THE LITIGATION TRUST ....................................... 63

22.1  Establishment of the Trust ........................................................ 63

22.2  Purpose of the Litigation Trust ................................................. 64

22.3  Funding Expenses of the Litigation Trust.................................... 64

22.4  Transfer of Assets .................................................................. 64

22.5  Valuation of Assets ................................................................ 65

22.6  Litigation; Responsibilities of Litigation Trustee ......................... 65

22.7  Investment Powers ................................................................. 65

22.8  Annual Distribution; Withholding ............................................. 66

22.9  Reporting Duties ................................................................... 66

    (a)  Federal Income Tax ..................................................... 66

    (b)  Allocations of Litigation Trust Taxable Income................... 66

    (c)  Other......................................................................... 67

22.10  Trust Implementation............................................................ 67

22.11  Registry of Beneficial Interests............................................... 67

22.12  Termination........................................................................ 67

22.13  Net Litigation Trust Recovery/Assignment of Claims .................. 67

    (a)  Net Judgment ............................................................ 67

    (b)  Assignment ............................................................... 68

22.14  Applicability to Certain Claims and Equity Interests ................... 68

ARTICLE XXIII    THE SPECIAL LITIGATION TRUST ......................... 68

23.1  Establishment of the Trust ....................................................... 68

23.2  Purpose of the Special Litigation Trust ...................................... 69

# TABLE OF CONTENTS
## (continued)

Page

| | | |
|---|---|---|
| 23.3 | Funding Expenses of the Special Litigation Trust | 69 |
| 23.4 | Transfer of Assets | 69 |
| 23.5 | Valuation of Assets | 70 |
| 23.6 | Litigation of Assets; Responsibilities of Special Litigation Trustee | 70 |
| 23.7 | Investment Powers | 70 |
| 23.8 | Annual Distribution; Withholding | 71 |
| 23.9 | Reporting Duties | 71 |
| | (a) Federal Income Tax | 71 |
| | (b) Allocations of Special Litigation Trust Taxable Income | 71 |
| | (c) Other | 72 |
| 23.10 | Trust Implementation | 72 |
| 23.11 | Registry of Beneficial Interests | 72 |
| 23.12 | Termination | 72 |
| 23.13 | Net Special Litigation Trust Recovery/Assignment of Claims | 73 |
| | (a) Net Judgment | 73 |
| | (b) Assignment | 73 |
| 23.14 | Applicability to Certain Claims and Equity Interests | 73 |
| ARTICLE XXIV | THE OPERATING TRUSTS | 73 |
| 24.1 | Establishment of the Trusts | 73 |
| 24.2 | Purpose of the Operating Trusts | 74 |
| 24.3 | Funding Expenses of the Operating Trusts | 74 |
| 24.4 | Transfer of Assets | 74 |
| 24.5 | Valuation of Assets | 74 |
| 24.6 | Investment Powers | 75 |
| 24.7 | Annual Distribution; Withholding | 75 |
| 24.8 | Reporting Duties | 75 |
| | (a) Federal Income Tax | 75 |
| | (b) Allocations of Operating Trusts Taxable Income | 76 |
| | (c) Other | 76 |

**TABLE OF CONTENTS**
**(continued)**

Page

24.9 Trust Implementation................................................................76

24.10 Registry of Beneficial Interests...............................................76

24.11 Termination..............................................................................76

24.12 Non-Transferability or Certification.........................................77

24.13 Applicability to Certain Claims and Equity Interests ..............77

ARTICLE XXV    THE REMAINING ASSET TRUSTS ....................77

25.1 Establishment of the Trusts......................................................77

25.2 Purpose of the Remaining Asset Trusts ...................................77

25.3 Funding Expenses of the Remaining Asset Trusts ..................77

25.4 Transfer of Assets ....................................................................78

25.5 Valuation of Assets ..................................................................78

25.6 Investment Powers ...................................................................78

25.7 Annual Distribution; Withholding ...........................................79

25.8 Reporting Duties ......................................................................79

        (a)    Federal Income Tax ......................................................79

        (b)    Allocations of Remaining Asset Trust Taxable Income ........79

        (c)    Other................................................................................80

25.9 Trust Implementation................................................................80

25.10 Registry of Beneficial Interests...............................................80

25.11 Termination..............................................................................80

25.12 Non-Transferability or Certification.........................................80

25.13 Applicability to Certain Claims and Equity Interests ..............80

ARTICLE XXVI    THE PREFERRED EQUITY TRUST....................81

26.1 Establishment of the Trust .......................................................81

26.2 Purpose of the Preferred Equity Trust .....................................81

26.3 Funding Expenses of the Preferred Equity Trust.....................81

26.4 Transfer of Preferred Stock......................................................81

26.5 Investment Powers ...................................................................82

26.6 Annual Distribution; Withholding ...........................................82

# TABLE OF CONTENTS
## (continued)

Page

26.7 Reporting Duties ................................................................................. 83

    (a) Federal Income Tax ............................................................... 83

    (b) Allocations of Preferred Equity Trust Taxable Income ........... 83

    (c) Other ..................................................................................... 83

26.8 Trust Implementation ......................................................................... 83

26.9 Registry of Beneficial Interests .......................................................... 84

26.10 Termination ....................................................................................... 84

26.11 Non-Transferability or Certification ................................................... 84

ARTICLE XXVII    THE COMMON EQUITY TRUST ................................................. 84

27.1 Establishment of the Trusts ................................................................ 84

27.2 Purpose of the Common Equity Trust ................................................ 84

27.3 Funding Expenses of the Common Equity Trust ................................ 84

27.4 Transfer of Common Stock ................................................................. 85

27.5 Investment Powers ............................................................................. 85

27.6 Annual Distribution; Withholding ...................................................... 85

27.7 Reporting Duties ................................................................................. 86

    (a) Federal Income Tax ............................................................... 86

    (b) Allocations of Common Equity Trust Taxable Income ........... 86

    (c) Other ..................................................................................... 86

27.8 Trust Implementation ......................................................................... 86

27.9 Registry of Beneficial Interests .......................................................... 87

27.10 Termination ....................................................................................... 87

27.11 Non-Transferability or Certification ................................................... 87

ARTICLE XXVIII    PROSECUTION, COMPROMISE AND EXTINGUISHMENT
OF CLAIMS HELD BY THE DEBTORS ............................. 87

28.1 Prosecution of Claims ........................................................................ 87

28.2 Compromise of Certain Guaranty Claim Litigation ........................... 88

28.3 Extinguishment of Certain Claims ...................................................... 88

    (a) Intercompany Claims ............................................................ 88

    (b) Guaranty Claims ................................................................... 88

# TABLE OF CONTENTS
## (continued)

Page

ARTICLE XXIX    ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTEREST ........................................................................... 89

29.1    Impaired Classes to Vote ........................................................................... 89

29.2    Acceptance by Class of Creditors and Holders of Equity Interests .................... 89

29.3    Cramdown ........................................................................................... 89

ARTICLE XXX    IDENTIFICATION OF CLAIMS AND EQUITY INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN ........................... 89

30.1    Impaired and Unimpaired Classes ............................................................. 89

30.2    Impaired Classes to Vote on Plan .............................................................. 89

30.3    Controversy Concerning Impairment .......................................................... 89

ARTICLE XXXI    PROVISIONS FOR THE ESTABLISHMENT AND MAINTENANCE OF DISBURSEMENT ACCOUNTS ....................... 90

31.1    Establishment of Disbursement Account ..................................................... 90

31.2    Maintenance of Disbursement Account(s) .................................................... 90

ARTICLE XXXII    PROVISIONS REGARDING DISTRIBUTIONS ................................. 90

32.1    Time and Manner of Distributions ............................................................. 90

    (a)    Initial Distributions of Cash ............................................................. 90

    (b)    Subsequent Distributions of Cash ...................................................... 90

    (c)    Distributions of Plan Securities ......................................................... 91

        (i)    Prisma ............................................................................... 91

        (ii)    CrossCountry ..................................................................... 91

        (iii)    PGE ................................................................................. 91

    (d)    Distribution of Trust Interests .......................................................... 92

    (e)    Allocation of Remaining Asset Trust Interests ...................................... 92

    (f)    Recalculation of Distributive Assets, Guaranty Distributive Assets and Intercompany Distributive Assets ................................................. 92

    (g)    Prior and Subsequent Bankruptcy Court Orders Regarding Non-Conforming Distributions ............................................................... 93

32.2    Timeliness of Payments ........................................................................... 93

32.3    Distributions by the Disbursing Agent ........................................................ 93

# TABLE OF CONTENTS
## (continued)

Page

| | | |
|---|---|---|
| 32.4 | Manner of Payment under the Plan | 93 |
| 32.5 | Delivery of Distributions | 93 |
| 32.6 | Fractional Securities | 93 |
| 32.7 | Undeliverable Distributions | 94 |
| | (a) Holding of Undeliverable Distributions | 94 |
| | (b) Failure to Claim Undeliverable Distributions | 94 |
| 32.8 | Compliance with Tax Requirements | 94 |
| 32.9 | Time Bar to Cash Payments | 94 |
| 32.10 | Distributions After Effective Date | 94 |
| 32.11 | Setoffs | 95 |
| 32.12 | Allocation of Plan Distributions Between Principal and Interest | 95 |
| 32.13 | Surrender of Instruments | 95 |
| 32.14 | Cancellation of Existing Securities and Agreements | 95 |
| 32.15 | Certain Indenture Trustee Fees and Expenses | 96 |
| 32.16 | Cancellation of PGE, CrossCountry Distributing Company and Prisma Securities | 96 |
| 32.17 | Record Date | 97 |
| 32.18 | Applicability to Certain Claims and Equity Interests | 97 |
| ARTICLE XXXIII | COMMITTEES, EXAMINERS, MEDIATOR AND EMPLOYEE COUNSEL | 97 |
| 33.1 | Creditors' Committee - Term and Fees | 97 |
| 33.2 | Employee Committee - Term and Fees | 98 |
| 33.3 | ENE Examiner - Term and Fees | 98 |
| 33.4 | ENA Examiner - Term and Fees | 99 |
| | (a) Pre-Effective Date Role | 99 |
| | (b) Post-Effective Date Role | 99 |
| 33.5 | Fee Committee - Term and Fees | 100 |
| 33.6 | Mediator - Term and Fees | 100 |
| 33.7 | Employee Counsel | 101 |
| ARTICLE XXXIV | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 101 |

# TABLE OF CONTENTS
## (continued)

Page

34.1    Rejection of Executory Contracts and Unexpired Leases ................................... 101

34.2    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ..... 101

34.3    Rejection of Intercompany Trading Contracts .................................................... 102

34.4    Rejection Damage Claims .................................................................................... 102

34.5    Indemnification and Reimbursement Obligations ............................................. 102

34.6    Rejection of TOPRS-Related Agreements .......................................................... 102

34.7    Termination of Benefit Plans .............................................................................. 103

ARTICLE XXXV        RIGHTS AND POWERS OF DISBURSING AGENT ........................ 104

35.1    Exculpation ......................................................................................................... 104

35.2    Powers of the Disbursing Agent ........................................................................ 104

35.3    Fees and Expenses Incurred From and After the Effective Date ....................... 104

ARTICLE XXXVI       THE REORGANIZED DEBTOR PLAN ADMINISTRATOR ............ 104

36.1    Appointment of Reorganized Debtor Plan Administrator .................................. 104

36.2    Responsibilities of the Reorganized Debtor Plan Administrator ....................... 105

36.3    Powers of the Reorganized Debtor Plan Administrator ..................................... 105

36.4    Compensation of the Reorganized Debtor Plan Administrator ......................... 105

36.5    Termination of Reorganized Debtor Plan Administrator ................................... 105

ARTICLE XXXVII      CONDITIONS PRECEDENT TO EFFECTIVE DATE OF THE
                    PLAN; IMPLEMENTATION PROVISIONS ....................................... 106

37.1    Conditions Precedent to Effective Date of the Plan ........................................... 106

        (a)    Entry of the Confirmation Order ............................................................ 106

        (b)    Execution of Documents; Other Actions ................................................ 106

        (c)    Prisma Consents Obtained ...................................................................... 106

        (d)    CrossCountry Consents Obtained ........................................................... 106

        (e)    PGE Approval ......................................................................................... 106

37.2    Waiver of Conditions Precedent ........................................................................ 106

37.3    Alternative Structures ........................................................................................ 106

ARTICLE XXXVIII    RETENTION OF JURISDICTION ....................................................... 107

38.1    Retention of Jurisdiction .................................................................................... 107

# TABLE OF CONTENTS
## (continued)

Page

ARTICLE XXXIX    MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ................................................................ 108

    39.1    Modification of Plan ........................................................ 108

    39.2    Revocation or Withdrawal ................................................ 109

ARTICLE XL    PROVISION FOR MANAGEMENT .................................. 109

    40.1    Reorganized Debtors Directors ......................................... 109

    40.2    Operating Entities Directors ............................................. 109

ARTICLE XLI    ARTICLES OF INCORPORATION AND BY-LAWS OF THE DEBTORS; CORPORATE ACTION .................................. 110

    41.1    Amendment of Articles of Incorporation and By-Laws ................ 110

    41.2    Corporate Action ........................................................... 110

ARTICLE XLII    MISCELLANEOUS PROVISIONS ................................. 110

    42.1    Title to Assets .............................................................. 110

    42.2    Distribution of Reserved Funds ........................................ 111

    42.3    Discharge of Debtors ..................................................... 111

    42.4    Injunction on Claims ..................................................... 112

    42.5    Term of Existing Injunctions or Stays ................................ 113

    42.6    Limited Release of Directors, Officers and Employees .............. 113

    42.7    Exculpation ................................................................ 113

    42.8    Preservation of Rights of Action ....................................... 114

    42.9    Injunction on Actions .................................................... 114

    42.10    Payment of Statutory Fees ............................................. 114

    42.11    Retiree Benefits .......................................................... 114

    42.12    Retention of Documents ................................................ 115

    42.13    Post-Confirmation Date Fees and Expenses ......................... 115

    42.14    Severability .............................................................. 115

    42.15    Governing Law ........................................................... 115

    42.16    Notices .................................................................... 115

    42.17    Closing of Cases ......................................................... 116

    42.18    Section Headings ........................................................ 116

**TABLE OF CONTENTS**
**(continued)**

**Page**

42.19   Exemption from Registration ........................................................................ 116

42.20   Exemption from Transfer Taxes .................................................................. 116

42.21   Inconsistencies ............................................................................................. 117

EXHIBIT A          ALLOWED ENA DEBENTURE CLAIMS ......................................... A-1

EXHIBIT B          ALLOWED ENRON SENIOR NOTE CLAIMS ................................. B-1

EXHIBIT C          ALLOWED ENRON SUBORDINATED DEBENTURE CLAIMS .... C-1

EXHIBIT D          ALLOWED ENRON TOPRS DEBENTURE CLAIM ........................ D-1

EXHIBIT E          ALLOWED ETS DEBENTURE CLAIM ............................................. E-1

EXHIBIT F          ALLOWED INTERCOMPANY CLAIMS .......................................... F-1

        Section I:  Payables ................................................................................. F-1

        Section II:  Receivables ........................................................................... F-20

EXHIBIT G          CONVENIENCE CLAIM DISTRIBUTION PERCENTAGE ............ G-1

EXHIBIT H          LIST OF POTENTIAL PRISMA ASSETS ........................................ H-1

EXHIBIT I          CLASSES OF GENERAL UNSECURED CLAIMS ............................ I-1

EXHIBIT J          CLASSES OF CONVENIENCE CLAIMS .......................................... J-1

EXHIBIT K          CLASSES OF SUBORDINATED CLAIMS ....................................... K-1

EXHIBIT L          SENIOR INDEBTEDNESS ................................................................ L-1

Enron Metals & Commodity Corp., Enron Corp., Enron North America Corp., Enron Power Marketing, Inc., PBOG Corp., Smith Street Land Company, Enron Broadband Services, Inc., Enron Energy Services Operations, Inc., Enron Energy Marketing Corp., Enron Energy Services, Inc., Enron Energy Services, LLC, Enron Transportation Services, LLC, BAM Lease Company, ENA Asset Holdings L.P., Enron Gas Liquids, Inc., Enron Global Markets LLC, Enron Net Works LLC, Enron Industrial Markets LLC, Operational Energy Corp., Enron Engineering & Construction Company, Enron Engineering & Operational Services Company, Garden State Paper Company, LLC, Palm Beach Development Company, L.L.C., Tenant Services, Inc., Enron Energy Information Solutions, Inc., EESO Merchant Investments, Inc., Enron Federal Solutions, Inc., Enron Freight Markets Corp., Enron Broadband Services, L.P., Enron Energy Services North America, Inc., Enron LNG Marketing LLC, Calypso Pipeline, LLC, Enron Global LNG LLC, Enron International Fuel Management Company, Enron Natural Gas Marketing Corp., ENA Upstream Company LLC, Enron Liquid Fuels, Inc., Enron LNG Shipping Company, Enron Property & Services Corp., Enron Capital & Trade Resources International Corp., Enron Communications Leasing Corp., Enron Wind Corp., Enron Wind Systems, Inc., Enron Wind Energy Systems Corp., Enron Wind Maintenance Corp., Enron Wind Constructors Corp., EREC Subsidiary I, LLC, EREC Subsidiary II, LLC, EREC Subsidiary III, LLC, EREC Subsidiary IV, LLC, EREC Subsidiary V, LLC, Intratex Gas Company, Enron Processing Properties, Inc., Enron Methanol Company, Enron Ventures Corp., The New Energy Trading Company, EES Service Holdings, Inc., Enron Wind Development LLC, ZWHC LLC, Zond Pacific, LLC, Enron Reserve Acquisition Corp., EPC Estates Services, Inc., f/k/a National Energy Production Corporation, Enron Power & Industrial Construction Company, NEPCO Power Procurement Company, NEPCO Services International, Inc., Caribe Verde (SJG) Inc., f/k/a San Juan Gas Company, Inc., EBF LLC, Zond Minnesota Construction Company LLC, Enron Fuels International, Inc., E Power Holdings Corp., EFS Construction Management Services, Inc., Enron Management, Inc., Enron Expat Services, Inc., Artemis Associates, LLC, Clinton Energy Management Services, Inc., LINGTEC Constructors L.P., EGS New Ventures Corp., Louisiana Gas Marketing Company, Louisiana Resources Company, LGMI, Inc., LRCI, Inc., Enron Communications Group, Inc., EnRock Management, LLC, ECI-Texas, L.P., EnRock, L.P., ECI-Nevada Corp., Enron Alligator Alley Pipeline Company, Enron Wind Storm Lake I LLC, ECT Merchant Investments Corp., EnronOnLine, LLC, St. Charles Development Company, L.L.C., Calcasieu Development Company, L.L.C., Calvert City Power I, L.L.C., Enron ACS, Inc., LOA, Inc., Enron India LLC, Enron International Inc., Enron International Holdings Corp., Enron Middle East LLC, Enron WarpSpeed Services, Inc., Modulus Technologies, Inc., Enron Telecommunications, Inc., DataSystems Group, Inc. Risk Management & Trading Corp., Omicron Enterprises, Inc., EFS I, Inc., EFS II, Inc., EFS III, Inc., EFS V, Inc., EFS VI, LP., EFS VII, Inc., EFS IX, Inc., EFS X, Inc., EFS XI, Inc., EFS XII, Inc., EFS XV, Inc., EFS XVII, Inc., Jovinole Associates, EFS Holdings, Inc., Enron Operations Services, LLC, Green Power Partners I LLC, TLS Investors, L.L.C., ECT Securities Limited Partnership, ECT Securities LP Corp., ECT Securities GP Corp., KUCC Cleburne, LLC, Enron International Asset Management Corp., Enron Brazil Power Holdings XI Ltd., Enron Holding Company L.L.C., Enron Development Management Ltd., Enron International Korea Holdings Corp., Enron Caribe VI Holdings Ltd., Enron International Asia Corp., Enron Brazil Power Investments XI Ltd., Paulista Electrical Distribution, L.L.C., Enron Pipeline Construction Services Company, Enron Pipeline Services Company, Enron Trailblazer Pipeline Company, Enron Liquid Services Corp., Enron Machine and Mechanical Services, Inc., Enron Commercial

Finance Ltd., Enron Permian Gathering Inc., Transwestern Gathering Company, Enron Gathering Company, EGP Fuels Company, Enron Asset Management Resources, Inc., Enron Brazil Power Holdings I Ltd., Enron do Brazil Holdings Ltd., Enron Wind Storm Lake II LLC, Enron Renewable Energy Corp., Enron Acquisition III Corp., Enron Wind Lake Benton LLC, Superior Construction Company, EFS IV, Inc., EFS VIII, Inc., EFS XIII, Inc., Enron Credit Inc., Enron Power Corp., Richmond Power Enterprise, L.P., ECT Strategic Value Corp., Enron Development Funding Ltd., Atlantic Commercial Finance, Inc., The Protane Corporation, Enron Asia Pacific/Africa/China LLC, Enron Development Corp., ET Power 3 LLC, Nowa Sarzyna Holding B.V., Enron South America LLC, Enron Global Power & Pipelines LLC, Portland General Holdings, Inc., Portland Transition Company, Inc., Cabazon Power Partners LLC, Cabazon Holdings LLC, Enron Caribbean Basin LLC, Victory Garden Power Partners I LLC, Oswego Cogen Company, LLC and Enron Equipment & Procurement Company hereby propose the following joint chapter 11 plan pursuant to section 1121(a) of the Bankruptcy Code.

## ARTICLE I

## DEFINITIONS

As used in the Plan, the following terms shall have the respective meanings specified below and be equally applicable to the singular and plural of terms defined:

1.1 **ACFI**: Atlantic Commercial Finance, Inc., a Delaware corporation.

1.2 **ACFI Guaranty Claim**: Any Unsecured Claim, other than an Intercompany Claim, against ACFI arising from or relating to an agreement by ACFI to guarantee or otherwise satisfy the obligations of another Debtor, including, without limitation, any Claim arising from or relating to rights of contribution or reimbursement.

1.3 **ACFI Guaranty Distributive Assets**: The Plan Currency to be made available to holders of Allowed ACFI Guaranty Claims in an amount derived from the Distribution Model equal to the sum of (A) the product of (i) seventy percent (70%) times (ii) the lesser of (a) the sum of ACFI Guaranty Claims and (b) the product of (y) the Value of ACFI's Assets minus an amount equal to the sum of (1) one hundred percent (100%) of ACFI's Administrative Expense Claims, Secured Claims and Priority Claims plus (2) an amount equal to the product of ACFI's Convenience Claim Distribution Percentage times ACFI's Convenience Claims times (z) a fraction, the numerator of which is equal to the amount of ACFI Guaranty Claims and the denominator of which is equal to the sum of ACFI's (1) General Unsecured Claims, (2) ACFI Guaranty Claims and (3) Intercompany Claims plus (B) the product of (i) thirty percent (30%) times (ii) the Value of all of the Debtors' Assets, calculated as if the Debtors' chapter 11 estates were substantively consolidated, minus an amount equal to the sum of (1) one hundred percent (100%) of all Debtors' Administrative Expense Claims, Secured Claims and Priority Claims, calculated on a Consolidated Basis, plus (2) the sum of the products of each Debtor's Convenience Claims times its respective Convenience Claim Distribution Percentage times (iii) a fraction, the numerator of which is equal to fifty percent (50%) times an amount equal to the sum of the lesser of, calculated on a Claim-by-Claim basis, (1) the amount of ACFI Guaranty Claims and (2) the corresponding primary General Unsecured Claim, calculated on a Consolidated Basis, and the denominator of which is equal to the sum of the amount of (y) all Debtors'

General Unsecured Claims, calculated on a Consolidated Basis and (z) fifty percent (50%) of all Guaranty Claims; provided, however, that, for purposes of calculating "ACFI Guaranty Distributive Assets", such calculation shall not include the Assets of or the General Unsecured Claims against either of the Portland Debtors.

1.4    **ACFI Guaranty Distributive Interests**:  The Litigation Trust Interests or the Special Litigation Trust Interests, as the case may be, to be made available to holders of Allowed ACFI Guaranty Claims in an amount derived from the Distribution Model equal to the quotient of (I) the sum of (A) the product of (i) seventy percent (70%) times (ii) the lesser of (a) the sum of ACFI Guaranty Claims and (b) the product of (y) the sum of the Value of ACFI's Assets and the Fair Market Value of ACFI's Litigation Trust Interests or Special Litigation Trust Interests, as the case may be, minus an amount equal to the sum of (1) one hundred percent (100%) of ACFI's Administrative Expense Claims, Secured Claims and Priority Claims plus (2) an amount equal to the product of ACFI's Convenience Claim Distribution Percentage times ACFI's Convenience Claims times (z) a fraction, the numerator of which is equal to the amount of ACFI Guaranty Claims and the denominator of which is equal to the sum of ACFI's (1) General Unsecured Claims, (2) ACFI Guaranty Claims and (3) Intercompany Claims plus (B) the product of (i) thirty percent (30%) times (ii) the sum of the Value of all of the Debtors' Assets and the Fair Market Value of all of the Debtors' Litigation Trust Interests or Special Litigation Trust Interests, as the case may be, calculated as if the Debtors' chapter 11 estates were substantively consolidated, minus an amount equal to the sum of (1) one hundred percent (100%) of all Debtors' Administrative Expense Claims, Secured Claims and Priority Claims, calculated on a Consolidated Basis, plus (2) the sum of the products of each Debtor's Convenience Claims times its respective Convenience Claim Distribution Percentage times (iii) a fraction, the numerator of which is equal to fifty percent (50%) times an amount equal to the sum of the lesser of, calculated on a Claim-by-Claim basis, (1) the amount of ACFI Guaranty Claims and (2) the corresponding primary General Unsecured Claim, calculated on a Consolidated Basis, and the denominator of which is equal to the sum of the amount of (y) all Debtors' General Unsecured Claims, calculated on a Consolidated Basis and (z) fifty percent (50%) of all Guaranty Claims, minus (C) ACFI Guaranty Distributive Assets, divided by (II) the Fair Market Value of a Litigation Trust Interest or a Special Litigation Trust Interest, as the case may be; provided, however, that, for purposes of calculating "ACFI Guaranty Distributive Interests", such calculation shall not include the Assets of or the General Unsecured Claims against either of the Portland Debtors.

1.5    **Administrative Expense Claim**:  Any Claim constituting a cost or expense of administration of the Chapter 11 Cases asserted or authorized to be asserted in accordance with sections 503(b) and 507(a)(1) of the Bankruptcy Code during the period up to and including the Effective Date, including, without limitation, any actual and necessary costs and expenses of preserving the estates of the Debtors, any actual and necessary costs and expenses of operating the businesses of the Debtors in Possession, any post-Petition Date loans and advances extended by one Debtor to another Debtor, any costs and expenses of the Debtors in Possession for the management, maintenance, preservation, sale or other disposition of any assets, the administration and implementation of the Plan, the administration, prosecution or defense of Claims by or against the Debtors and for distributions under the Plan, any guarantees or indemnification obligations extended by the Debtors in Possession, any Claims for reclamation in accordance with section 546(c)(2) of the Bankruptcy Code allowed pursuant to Final Order,

any Claims for compensation and reimbursement of expenses arising during the period from and after the respective Petition Dates and prior to the Effective Date and awarded by the Bankruptcy Court in accordance with sections 328, 330, 331 or 503(b) of the Bankruptcy Code or otherwise in accordance with the provisions of the Plan, whether fixed before or after the Effective Date, and any fees or charges assessed against the Debtors' estates pursuant to section 1930, chapter 123, Title 28, United States Code.

1.6     **Affiliate**:  Any Entity that is an "affiliate" of any of the Debtors within the meaning of section 101(2) of the Bankruptcy Code.

1.7     **Allowed Administrative Expense Claim**:  An Administrative Expense Claim, to the extent it is or has become an Allowed Claim.

1.8     **Allowed Claim/Allowed Equity Interest**:  Any Claim against or Equity Interest in any of the Debtors or the Debtors' estates, (i) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing such proof of claim against or equity interest in any such Debtor or such Debtor's estate, (ii) if no proof of Claim or Equity Interest has been timely filed, which has been or hereafter is listed by such Debtor in its Schedules as liquidated in amount and not disputed or contingent or (iii) any Equity Interest registered in the stock register maintained by or on behalf of the Debtors as of the Record Date, in each such case in clauses (i), (ii) and (iii) above, a Claim or Equity Interest as to which no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order, or as to which an objection has been interposed and such Claim has been allowed in whole or in part by a Final Order.  For purposes of determining the amount of an "Allowed Claim", there shall be deducted therefrom an amount equal to the amount of any claim which the Debtors may hold against the holder thereof, to the extent such claim may be set off pursuant to applicable bankruptcy and non-bankruptcy law.  Without in any way limiting the foregoing, "Allowed Claim" shall include any Claim arising from the recovery of property in accordance with sections 550 and 553 of the Bankruptcy Code and allowed in accordance with section 502(h) of the Bankruptcy Code, any Claim allowed under or pursuant to the terms of the Plan or any Claim to the extent that it has been allowed pursuant to a Final Order; provided, however, that (i) Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder unless otherwise specified herein or by order of the Bankruptcy Court, (ii) for any purpose under the Plan, other than with respect to an Allowed ETS Debenture Claim, unless distributions shall be made in accordance with the provisions of Section 17.2 or 18.2 of the Plan, "Allowed Claim" shall not include interest, penalties, or late charges arising from or relating to the period from and after the Petition Date and (iii) "Allowed Claim" shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.

1.9     **Allowed Convenience Claim**:  A Convenience Claim, to the extent it is or has become an Allowed Claim.

1.10    **Allowed ENA Debenture Claim**:  An ENA Debenture Claim, to the extent it is or has become an Allowed Claim and as set forth on Exhibit "A" hereto.

1.11    **Allowed Enron Common Equity Interest**:  An Enron Common Equity Interest, to the extent it is or has become an Allowed Equity Interest.

1.12    **Allowed Enron Guaranty Claim**:  An Enron Guaranty Claim, to the extent it is or has become an Allowed Claim.

1.13    **Allowed Enron Preferred Equity Interest**:  An Enron Preferred Equity Interest, to the extent it is or has become an Allowed Equity Interest.

1.14    **Allowed Enron Senior Note Claim**:  An Enron Senior Note Claim, to the extent set forth on Exhibit "B" hereto.

1.15    **Allowed Enron Subordinated Debenture Claim**:  An Enron Subordinated Debenture Claim, to the extent it is or has become an Allowed Claim and as set forth on Exhibit "C" hereto.

1.16    **Allowed Enron TOPRS Debenture Claim**:  An Enron TOPRS Debenture Claim, to the extent it is or has become an Allowed Claim and as set forth on Exhibit "D" hereto.

1.17    **Allowed Enron TOPRS Subordinated Guaranty Claim**:  An Enron TOPRS Subordinated Guaranty Claim, to the extent it is or has become an Allowed Claim.

1.18    **Allowed ETS Debenture Claim**:  An ETS Debenture Claim, to the extent it is or has become an Allowed Claim and as set forth on Exhibit "E" hereto.

1.19    **Allowed General Unsecured Claim**:  A General Unsecured Claim, to the extent it is or has become an Allowed Claim.

1.20    **Allowed Guaranty Claim**:  A Guaranty Claim, to the extent it is or has become an Allowed Claim.

1.21    **Allowed Intercompany Claim**:  An Intercompany Claim, to the extent it is or has become an Allowed Claim and as set forth on Exhibit "F" hereto; provided, however, that, based upon a methodology or procedure agreed upon by the Debtors, the Creditors' Committee and the ENA Examiner and set forth in the Plan Supplement, the amount of each such Intercompany Claim may be adjusted pursuant to a Final Order of the Bankruptcy Court entered after the date of the Disclosure Statement Order to reflect (a) Allowed Claims, other than Guaranty Claims, arising from a Debtor satisfying, or being deemed to have satisfied, the obligations of another Debtor, (b) Allowed Claims arising under section 502(h) of the Bankruptcy Code solely to the extent that a Debtor does not receive a full recovery due to the effect of the proviso set forth in Section 28.1 of the Plan or (c) Allowed Claims arising from the rejection of written executory contracts or unexpired leases between or among the Debtors, other than with respect to Claims relating to the rejection damages referenced in Section 34.3 hereof.

1.22    **Allowed Joint Liability Claim**:  A Joint Liability Claim, to the extent it is or has become an Allowed Claim.

1.23     **Allowed Other Subordinated Claim**:  An Other Subordinated Claim, to the extent it is or has become an Allowed Claim.

1.24     **Allowed Priority Claim**:  A Priority Claim, to the extent it is or has become an Allowed Claim.

1.25     **Allowed Priority Non-Tax Claim**:  A Priority Non-Tax Claim, to the extent it is or has become an Allowed Claim.

1.26     **Allowed Priority Tax Claim**:  A Priority Tax Claim, to the extent it is or has become an Allowed Claim.

1.27     **Allowed Secured Claim**:  A Secured Claim, to the extent it is or has become an Allowed Claim.

1.28     **Allowed Section 510 Enron Common Equity Interest Claim**:  A Section 510 Enron Common Equity Interest Claim, to the extent it is or has become an Allowed Claim.

1.29     **Allowed Section 510 Enron Preferred Equity Interest Claim**:  A Section 510 Enron Preferred Equity Interest Claim, to the extent it is or has become an Allowed Claim.

1.30     **Allowed Section 510 Enron Senior Notes Claim**:  A Section 510 Enron Senior Notes Claim, to the extent it is or has become an Allowed Claim.

1.31     **Allowed Section 510 Enron Subordinated Debenture Claim**:  A Section 510 Enron Subordinated Debenture Claim, to the extent it is or has become an Allowed Claim.

1.32     **Allowed Subordinated Claim**:  A Subordinated Claim, to the extent it is or has become an Allowed Claim.

1.33     **Allowed Wind Guaranty Claim**:  A Wind Guaranty Claim, to the extent it is or has become an Allowed Claim.

1.34     **Assets**:  With respect to a Debtor, (a) all "property" of such Debtor's estate, as defined in section 541 of the Bankruptcy Code, including such property as is reflected on such Debtor's books and records as of the date of the Disclosure Statement Order, unless modified pursuant to the Plan or a Final Order and (b) all claims and causes of action, including those that may be allocated or reallocated in accordance with the provisions of Articles II, XXII, XXIII and XXVIII of the Plan, that have been or may be commenced by such Debtor in Possession or other authorized representative for the benefit of such Debtor's estate, unless modified pursuant to the Plan or a Final Order; provided,  however, that, "Assets" shall not include claims and causes of action which are the subject of the Severance Settlement Fund Litigation or such other property otherwise provided for in the Plan or by a Final Order; and, provided, further, that, in the event that the Litigation Trust or the Special Litigation Trust is created, Litigation Trust Claims or Special Litigation Claims, as the case may be, shall not constitute "Assets".

1.35    **Assumption Schedule**:  The list of executory contracts and unexpired leases to be assumed in accordance with section 365 of the Bankruptcy Code and Article XXXIV of the Plan and filed with the Bankruptcy Court pursuant to the provisions of Article XXXIV of the Plan.

1.36    **Ballot**:  The form distributed to each holder of an impaired Claim on which is to be indicated acceptance or rejection of the Plan.

1.37    **Ballot Date**:  The date established by the Bankruptcy Court and set forth in the Disclosure Statement Order for the submission of Ballots and the election of alternative treatments pursuant to the terms and provisions of the Plan.

1.38    **Bankruptcy Code**:  The Bankruptcy Reform Act of 1978, as amended, to the extent codified in Title 11, United States Code, as applicable to the Chapter 11 Cases.

1.39    **Bankruptcy Court**:  The United States Bankruptcy Court for the Southern District of New York or such other court having jurisdiction over the Chapter 11 Cases.

1.40    **Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of Title 28 of the United States Code, and any Local Rules of the Bankruptcy Court, as amended, as applicable to the Chapter 11 Cases.

1.41    **Benefit Plan**:  Any employee welfare benefit plan, employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan within the meaning of Section 3(3) of ERISA, including, without limitation, the Enron Corp. Medical Plan for Actives, the Enron Corp. Medical Plan for Inactives, the Enron Corp. Savings Plan, the Enron Corp. Flexible Compensation Plan, the Enron Corp. Long Term Care Plan, the Enron Corp. Dental Plan for Active Employees, the Enron Corp. Dental Plan for Inactive Participants, the Enron Corp. Business Travel Accident Plan, the Enron Corp. Accidental Death & Dismemberment Insurance Plan, the Enron Corp. Life Insurance Plan, the Enron Corp. Educational Assistance Plan, the Enron Gas Pipelines Employee Benefit Trust, the Data Systems Group, Inc. Employees' 401(k) Plan, the Enron Wind Corp. Profit Sharing Plan, the Enron Wind Corp. Savings & Retirement Plan, the Garden State Paper 401(k) Plan, the MGMCC Savings Plan & Trust, the Affiliated Building Services, Inc. Money Purchase Pension Plan, the Limbach Holdings, Inc. Profit Sharing Retirement Plan, the EFS Savings Plan, the Enron Corp. Cash Balance Plan, the San Juan Gas Pension Plan, the Garden State Paper Pension Plan, the EFS Pension Plan and any such similar employee benefit plan or arrangement which any of the Debtors maintained prior to the Initial Petition Date.

1.42    **Business Day**:  A day other than a Saturday, a Sunday or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

1.43    **Case Management Order**:  The Second Amended Case Management Order Establishing, Among Other Things, Noticing Electronic Procedures, Hearing Dates, Independent Website and Alternative Methods of Participation at Hearings, dated December 17, 2002, entered by the Bankruptcy Court.

1.44    **Cash**:  Lawful currency of the United States of America.

1.45    **Cash Equivalents**:  Equivalents of Cash in the form of readily marketable securities or instruments issued by a person other than the Debtors, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's Rating of "A" or better, or equivalent rating of any other nationally recognized rating service, or interest-bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or equivalent capital of not less than One Hundred Million Dollars ($100,000,000.00), having maturities of not more than one (1) year, at the then best generally available rates of interest for like amounts and like periods.

1.46    **Chapter 11 Cases**:  The cases commenced under chapter 11 of the Bankruptcy Code by the Debtors on or after the Initial Petition Date, styled In re Enron Corp. et al., Chapter 11 Case No. 01-16034 (AJG), Jointly Administered, currently pending before the Bankruptcy Court.

1.47    **Claim**:  Any right to payment from the Debtors or from property of the Debtors or their estates, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtors or from property of the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.48    **Class**:  A category of holders of Claims or Equity Interests set forth in Article IV of the Plan.

1.49    **Class Actions**:  The litigations styled (1) In re Enron Corporation Securities, Derivative and "ERISA" Litigation, Case No. MDL 1446, (2) Newby, et al. v. Enron Corporation, et al., Civil Action No. H-01-3624, (3) Tittle, et al. v. Enron Corp., et al., Civil Action No. H-01-3913, (4) American National Insurance Company, et al. v. Arthur Andersen, LLP, et al., Civil Action No. G-02585, (5) American National Insurance Company, et al. v. Citigroup, Inc., et al., Civil Action No. G-02-723, (6) Blaz, et al. v. Robert A. Belfer, et al., Civil Action No. H-02-1150, (7) Pearson, et al. v. Fastow, et al., Civil Action No. H-02-3786, (8) Rosen, et al. v. Fastow, et al., Civil Action No. H-02-3787, (9) Ahlich, et al. v. Arthur Andersen LLP, et al., Civil Action No. H-02-3794, (10) Silvercreek Management, Inc., et al. v. Salomon Smith Barney, Inc., et al., Civil Action No. H-02-3185, and (11) such other actions which may be pending and become consolidated or coordinated for pre-trial or administrative purposes in the United States District Court for the Southern District of Texas, Houston Division.

1.50    **Collateral**:  Any property or interest in property of the estates of any of the Debtors that is subject to an unavoidable Lien to secure the payment or performance of a Claim.

1.51    **Common Equity Interest**:  A common Equity Interest.

1.52  **Common Equity Trust**:  The Entity to be created on or prior to the Effective Date to hold the Exchanged Enron Common Stock for the benefit of the holders of Enron Common Equity Trust Interests.

1.53  **Common Equity Trustee**:  Stephen Forbes Cooper, LLC, or such other Entity appointed by the Bankruptcy Court to administer the Common Equity Trust in accordance with the terms and provisions of Article XXVII of the Plan and the Common Equity Trust Agreement.

1.54  **Common Equity Trust Agreement**:  The trust agreement, which agreement shall be in form and substance satisfactory to the Creditors' Committee and substantially in the form contained in the Plan Supplement.

1.55  **Common Equity Trust Board**:  The Persons selected by the Debtors, after consultation with the Creditors' Committee, and appointed by the Bankruptcy Court, or any replacements thereafter selected in accordance with the provisions of the Common Equity Trust Agreement.

1.56  **Common Equity Trust Interests**:  The beneficial interests in the Common Equity Trust, in a number equal to the outstanding shares of Exchanged Enron Common Stock, to be allocated to holders of Allowed Enron Common Equity Interests.

1.57  **Confirmation Date**:  The date the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court with respect to the Chapter 11 Cases.

1.58  **Confirmation Hearing**:  The hearing to consider confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.59  **Confirmation Order**:  The order of the Bankruptcy Court confirming the Plan.

1.60  **Consolidated Basis**:  With respect to any Claims (a) asserted by an Entity against two or more Debtors and (b) arising from or related to the same liability, or on the basis of secondary liability, co-liability or joint liability, for certain purposes of the Plan, such Claims shall be deemed to be treated as a single Claim of such Entity against the Debtors as if the Debtors' estates were substantively consolidated.

1.61  **Convenience Claim**:  Except as provided in Section 16.2 of the Plan, any Claim equal to or less than Fifty Thousand Dollars ($50,000.00) or greater than Fifty Thousand Dollars ($50,000.00) but, with respect to which, the holder thereof voluntarily reduces the Claim to Fifty Thousand Dollars ($50,000.00) on the Ballot; provided, however, that, for purposes of the Plan and the distributions to be made hereunder, "Convenience Claim" shall not include (i) an Enron Senior Note Claim, (ii) an Enron Subordinated Debenture Claim, (iii) an ETS Debenture Claim, (iv) an ENA Debenture Claim, (v) an Enron TOPRS Debenture Claim and (vi) any other Claim that is a component of a larger Claim, portions of which may be held by one or more holders of Allowed Claims.

1.62    **Convenience Claim Distribution Percentage**:  With respect to a Convenience Claim against an individual Debtor, the amount set forth opposite the appropriate Class listed on Exhibit "G" hereto.

1.63    **Creditor**:  Any Person or Entity holding a Claim against the Debtors' estates or, pursuant to section 102(2) of the Bankruptcy Code, against property of the Debtors that arose or is deemed to have arisen on or prior to the Petition Date, including, without limitation, a Claim against any of the Debtors or Debtors in Possession of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.64    **Creditor Cash**:  At any time, the excess, if any, of (a) all Cash and Cash Equivalents (i) in the Disbursement Account(s) or (ii) to be distributed in accordance with the provisions of Sections 22.8 and 23.8 of the Plan over (b) such amounts of Cash (i) reasonably determined by the Disbursing Agent as necessary to satisfy, in accordance with the terms and conditions of the Plan, Administrative Expense Claims, Priority Non-Tax Claims, Priority Tax Claims, Convenience Claims and Secured Claims, (ii) necessary to fund the Litigation Trust and the Special Litigation Trust in accordance with Articles XXII and XXIII of the Plan, respectively, (iii) necessary to make pro rata distributions to holders of Disputed Claims as if such Disputed Claims were, at such time, Allowed Claims and (iv) such other amounts reasonably determined by the Reorganized Debtors as necessary to fund the ongoing operations of the Reorganized Debtors or the Remaining Asset Trusts, as the case may be, during the period from the Effective Date up to and including such later date as the Reorganized Debtor Plan Administrator shall reasonably determine; provided, however, that, on the Effective Date, Creditor Cash available as of the Effective Date shall be equal to or greater than the amount of Creditor Cash jointly determined by the Debtors and the Creditors' Committee and set forth in the Plan Supplement, which amount may be subsequently adjusted with the consent of the Creditors' Committee; and, provided, further, that such projected amount of Creditor Cash shall be reduced, on a dollar-for-dollar basis, to the extent of any distributions of Cash made by the Debtors to Creditors, pursuant to a Final Order, during the period from the Confirmation Date up to and including the Effective Date.

1.65    **Creditors' Committee**:  The statutory committee of creditors holding Unsecured Claims appointed in the Chapter 11 Cases pursuant to section 1102(a)(1) of the Bankruptcy Code, as reconstituted from time to time.

1.66    **CrossCountry Assets**:  The assets of CrossCountry Distributing Company or a subsidiary of CrossCountry Distributing Company, including, without limitation, (a) (i) eight hundred (800) shares of common stock of Transwestern Holding Company, Inc., having a par value of $0.01 per share, (ii) five hundred (500) shares of Class B common stock of Citrus Corp., having a par value of $1.00 per share, (iii) four hundred (400) shares of common stock of Northern Plains Natural Gas Company, having a par value of $1.00 per share, (iv) one hundred percent (100%) of the membership interests in CrossCountry Energy Services, LLC (successor-in-interest to CGNN Holding Company, Inc.) and (v) one thousand (1000) shares of common stock of NBP Services Corporation, having a par value of $1.00 per share; provided, however, that, in the event that, during the period from the date of the Disclosure Statement Order up to and including the date of the initial distribution of Plan Securities pursuant to the terms and provisions of Section 32.1(c) hereof, the Debtors, with the consent of the Creditors'

Committee, determine not to include in CrossCountry Distributing Company or a subsidiary thereof a particular asset set forth above, the Debtors shall file a notice thereof with the Bankruptcy Court and the Value of the CrossCountry Common Equity shall be reduced by the Value attributable to such asset, as set forth in the Disclosure Statement or determined by the Bankruptcy Court at the Confirmation Hearing, and (b) such other assets as the Debtors, with the consent of the Creditors' Committee, determine on or prior to the date of the initial distribution of Plan Securities pursuant to the terms and provisions of Section 32.1(c) hereof to include in CrossCountry Distributing Company or a subsidiary thereof and the Value of the CrossCountry Common Equity shall be increased by the Value attributable to any such assets.

      1.67    **CrossCountry By-laws/Organizational Agreement**: The by-laws or organizational agreement of CrossCountry Distributing Company, which by-laws or other organizational agreement shall be in form and substance satisfactory to the Creditors' Committee and in substantially the form included in the Plan Supplement.

      1.68    **CrossCountry Charter**: The Certificate of Incorporation or other charter document, as applicable, of CrossCountry Distributing Company, to be filed with its jurisdiction of organization, which certificate of incorporation or other organizational document shall be in form and substance satisfactory to the Creditors' Committee and in substantially the form included in the Plan Supplement.

      1.69    **CrossCountry Common Equity**: In the event that CrossCountry Distributing Company is (i) a corporation, the shares of common equity authorized and to be issued pursuant to the Plan, which shares shall have a par value of $0.01 per share, of which one hundred million (100,000,000) shares shall be authorized and of which seventy-five million (75,000,000) shares shall be issued pursuant to the Plan, or (ii) an Entity other than a corporation, units of common equity of such Entity, of which one hundred million (100,000,000) units shall be authorized and of which seventy-five million (75,000,000) units shall be issued pursuant to the Plan, and such other rights with respect to dividends, liquidation, voting and other matters as are provided for by applicable non-bankruptcy law or the CrossCountry Charter or the CrossCountry By-laws/ Organizational Agreement.

      1.70    **CrossCountry Distributing Company**: The Entity designated jointly by the Debtors and the Creditors' Committee pursuant to the Plan to distribute shares of capital stock or equity interests in accordance with Section 32.1(c) of the Plan representing interests in the CrossCountry Assets.

      1.71    **CrossCountry Trust**: The Entity, if jointly determined by the Debtors and, provided that the Creditors' Committee has not been dissolved in accordance with the provisions of Section 33.1 of the Plan, the Creditors' Committee, to be created on or subsequent to the Confirmation Date, but in no event later than the date on which the Litigation Trust is created, in addition to the creation of CrossCountry Distributing Company, and to which Entity shall be conveyed one hundred percent (100%) of the CrossCountry Common Equity.

      1.72    **CrossCountry Trust Agreement**: In the event the CrossCountry Trust is created, the CrossCountry Trust Agreement, which agreement shall be in form and substance satisfactory to the Creditors' Committee and substantially in the form contained in the Plan

Supplement, pursuant to which the CrossCountry Trust Board and the CrossCountry Trustee shall manage, administer, operate and liquidate the assets contained in the CrossCountry Trust and distribute the proceeds thereof or the CrossCountry Common Equity.

1.73    **CrossCountry Trust Board**:  In the event the CrossCountry Trust is created, the Persons selected by the Debtors, after consultation with the Creditors' Committee, and appointed by the Bankruptcy Court, or any replacements thereafter selected in accordance with the provisions of the CrossCountry Trust Agreement.

1.74    **CrossCountry Trustee**:  In the event the CrossCountry Trust is created, Stephen Forbes Cooper, LLC, or such other Entity appointed by the CrossCountry Trust Board and approved by the Bankruptcy Court to administer the CrossCountry Trust in accordance with the provisions of Article XXIV hereof and the CrossCountry Trust Agreement.

1.75    **CrossCountry Trust Interests**:  In the event the CrossCountry Trust is created, the seventy-five million (75,000,000) beneficial interests in CrossCountry Distributing Company to be allocated to holders of Allowed Claims.

1.76    **DCR Overseers**:  The group of five (5) Persons selected by the Debtors with the consent of (a) the Creditors' Committee with respect to four (4) of the Debtors' selections and (b) the ENA Examiner with respect to one (1) of the Debtors' selections, and appointed prior to the Effective Date by the Bankruptcy Court, or any replacements thereafter selected in accordance with the guidelines of the Disputed Claims reserve set forth in the Plan Supplement, who shall determine, in accordance with the provisions set forth therein, to vote or sell the Plan Securities held by the Disputed Claims reserve to be created in accordance with the provisions of Section 21.3 of the Plan.

1.77    **Debtors**:  Enron Metals & Commodity Corp., Enron Corp., Enron North America Corp., Enron Power Marketing, Inc., PBOG Corp., Smith Street Land Company, Enron Broadband Services, Inc., Enron Energy Services Operations, Inc., Enron Energy Marketing Corp., Enron Energy Services, Inc., Enron Energy Services, LLC, Enron Transportation Services, LLC, BAM Lease Company, ENA Asset Holdings L.P., Enron Gas Liquids, Inc., Enron Global Markets LLC, Enron Net Works LLC, Enron Industrial Markets LLC, Operational Energy Corp., Enron Engineering & Construction Company, Enron Engineering & Operational Services Company, Garden State Paper Company, LLC, Palm Beach Development Company, L.L.C., Tenant Services, Inc., Enron Energy Information Solutions, Inc., EESO Merchant Investments, Inc., Enron Federal Solutions, Inc., Enron Freight Markets Corp., Enron Broadband Services, L.P., Enron Energy Services North America, Inc., Enron LNG Marketing LLC, Calypso Pipeline, LLC, Enron Global LNG LLC, Enron International Fuel Management Company, Enron Natural Gas Marketing Corp., ENA Upstream Company LLC, Enron Liquid Fuels, Inc., Enron LNG Shipping Company, Enron Property & Services Corp., Enron Capital & Trade Resources International Corp., Enron Communications Leasing Corp., Enron Wind Corp., Enron Wind Systems, Inc., Enron Wind Energy Systems Corp., Enron Wind Maintenance Corp., Enron Wind Constructors Corp., EREC Subsidiary I, LLC, EREC Subsidiary II, LLC, EREC Subsidiary III, LLC, EREC Subsidiary IV, LLC, EREC Subsidiary V, LLC, Intratex Gas Company, Enron Processing Properties, Inc., Enron Methanol Company, Enron Ventures Corp., The New Energy Trading Company, EES Service Holdings, Inc., Enron Wind Development

LLC, ZWHC LLC, Zond Pacific, LLC, Enron Reserve Acquisition Corp., EPC Estates Services, Inc., f/k/a National Energy Production Corporation, Enron Power & Industrial Construction Company, NEPCO Power Procurement Company, NEPCO Services International, Inc., Caribe Verde (SJG) Inc., f/k/a San Juan Gas Company, Inc., EBF LLC, Zond Minnesota Construction Company LLC, Enron Fuels International, Inc., E Power Holdings Corp., EFS Construction Management Services, Inc., Enron Management, Inc., Enron Expat Services, Inc., Artemis Associates, LLC, Clinton Energy Management Services, Inc., LINGTEC Constructors L.P., EGS New Ventures Corp., Louisiana Gas Marketing Company, Louisiana Resources Company, LGMI, Inc., LRCI, Inc., Enron Communications Group, Inc., EnRock Management, LLC, ECI-Texas, L.P., EnRock, L.P., ECI-Nevada Corp., Enron Alligator Alley Pipeline Company, Enron Wind Storm Lake I LLC, ECT Merchant Investments Corp., EnronOnLine, LLC, St. Charles Development Company, L.L.C., Calcasieu Development Company, L.L.C., Calvert City Power I, L.L.C., Enron ACS, Inc., LOA, Inc., Enron India LLC, Enron International Inc., Enron International Holdings Corp., Enron Middle East LLC, Enron WarpSpeed Services, Inc., Modulus Technologies, Inc., Enron Telecommunications, Inc., DataSystems Group, Inc. Risk Management & Trading Corp., Omicron Enterprises, Inc., EFS I, Inc., EFS II, Inc., EFS III, Inc., EFS V, Inc., EFS VI, LP., EFS VII, Inc., EFS IX, Inc., EFS X, Inc., EFS XI, Inc., EFS XII, Inc., EFS XV, Inc., EFS XVII, Inc., Jovinole Associates, EFS Holdings, Inc., Enron Operations Services, LLC, Green Power Partners I LLC, TLS Investors, L.L.C., ECT Securities Limited Partnership, ECT Securities LP Corp., ECT Securities GP Corp., KUCC Cleburne, LLC, Enron International Asset Management Corp., Enron Brazil Power Holdings XI Ltd., Enron Holding Company L.L.C., Enron Development Management Ltd., Enron International Korea Holdings Corp., Enron Caribe VI Holdings Ltd., Enron International Asia Corp., Enron Brazil Power Investments XI Ltd., Paulista Electrical Distribution, L.L.C., Enron Pipeline Construction Services Company, Enron Pipeline Services Company, Enron Trailblazer Pipeline Company, Enron Liquid Services Corp., Enron Machine and Mechanical Services, Inc., Enron Commercial Finance Ltd., Enron Permian Gathering Inc., Transwestern Gathering Company, Enron Gathering Company, EGP Fuels Company, Enron Asset Management Resources, Inc., Enron Brazil Power Holdings I Ltd., Enron do Brazil Holdings Ltd., Enron Wind Storm Lake II LLC, Enron Renewable Energy Corp., Enron Acquisition III Corp., Enron Wind Lake Benton LLC, Superior Construction Company, EFS IV, Inc., EFS VIII, Inc., EFS XIII, Inc., Enron Credit Inc., Enron Power Corp., Richmond Power Enterprise, L.P., ECT Strategic Value Corp., Enron Development Funding Ltd., Atlantic Commercial Finance, Inc., The Protane Corporation, Enron Asia Pacific/Africa/China LLC, Enron Development Corp., ET Power 3 LLC, Nowa Sarzyna Holding B.V., Enron South America LLC, Enron Global Power & Pipelines LLC, Portland General Holdings, Inc., Portland Transition Company, Inc., Cabazon Power Partners LLC, Cabazon Holdings LLC, Enron Caribbean Basin LLC, Victory Garden Power Partners I LLC, Oswego Cogen Company, LLC and Enron Equipment & Procurement Company.

     1.78   **Debtors in Possession**:  The Debtors as debtors in possession pursuant to sections 1101(1) and 1107(a) of the Bankruptcy Code.

     1.79   **Deferred Compensation Litigation**:  The avoidance actions commenced or to be commenced by the Debtors in Possession or the Employee Committee, for and on behalf of the Debtors' estates, in connection with payments made with respect to the Enron Corp. 1994 Deferral Plan and Enron Expat Services, Inc. 1998 Deferral Plan.

1.80    **Defined Benefit Plans**:  The Enron Corp. Cash Balance Plan, the San Juan Gas Pension Plan, the Garden State Paper Pension Plan and the EFS Pension Plan.

1.81    **DIP Orders**:  The Bankruptcy Court orders, dated December 3, 2001, July 2, 2002 and May 8, 2003, authorizing and approving the Debtors' incurrence of post-Petition Date debtor in possession financing and the granting of liens and security interests in connection therewith.

1.82    **Disbursement Account(s)**:  The account(s) to be established by the Reorganized Debtors on the Effective Date in accordance with Section 31.1 of the Plan, together with any interest earned thereon.

1.83    **Disbursing Agent**:  Solely in its capacity as agent of the Debtors to effectuate distributions pursuant to the Plan, the Reorganized Debtors, the Reorganized Debtor Plan Administrator or such other Entity as may be designated by the Debtors, with the consent of the Creditors' Committee, and appointed by the Bankruptcy Court and set forth in the Confirmation Order.

1.84    **Disclosure Statement**:  The disclosure statement for the Plan approved by the Bankruptcy Court in accordance with section 1125 of the Bankruptcy Code.

1.85    **Disclosure Statement Order**:  The Final Order of the Bankruptcy Court approving the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code.

1.86    **Disputed Claim; Disputed Equity Interest**:  Any Claim against or Equity Interest in the Debtors, to the extent the allowance of such Claim or Equity Interest is the subject of a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Confirmation Order, or is otherwise disputed by the Debtors in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn, with prejudice, or determined by a Final Order; provided, however, that a Claim of a lender in a syndicated credit facility in which such lender holds a direct Claim, and not (a) a credit facility in which such lender holds a participation in a Claim held by the agent(s) or (b) a facility which is the subject of the MegaClaim Litigation or other pending adversary proceeding, shall not be deemed to be a Disputed Claim solely by reason of the agent(s) for such syndicated credit facility being named, in its individual capacity in an objection, the MegaClaim Litigation or other proceeding.

1.87    **Disputed Claim Amount**:  The lesser of (a) the liquidated amount set forth in the proof of claim filed with the Bankruptcy Court relating to a Disputed Claim, (b) if the Bankruptcy Court has estimated such Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, the amount of a Disputed Claim as estimated by the Bankruptcy Court, and (c) the amount of such Disputed Claim allowed by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code, or zero, if such Disputed Claim is disallowed by the Bankruptcy Court pursuant to such section, in either case, regardless of whether the order or judgment allowing or disallowing such Claim has become a Final Order; provided, however, that, in the event that such Claim has been disallowed, but the order of disallowance has not yet become a Final Order, the Bankruptcy Court may require the Disbursing Agent to reserve Cash, Plan Securities and Trust

Interests in an amount equal to the Pro Rata Share that would be attributed to such Claim if it were an Allowed Claim, or a lesser amount, to the extent that the Bankruptcy Court, in its sole and absolute discretion, determines such reserve is necessary to protect the rights of such holder under all of the facts and circumstances relating to the order of disallowance and the appeal of such holder from such order.

1.88    **Distribution Model**:  The computer program developed by The Blackstone Group L.P. for the Debtors, which program tracks the assets and liabilities of, among others, each of the Debtors and calculates the recoveries and distributions to be made pursuant to the Plan.

1.89    **Distributive Assets**:  The Plan Currency to be made available to holders of Allowed General Unsecured Claims of a Debtor in an amount derived from the Distribution Model equal to the sum of (A) the product of (i) seventy percent (70%) times (ii) the lesser of (a) the sum of such Debtor's General Unsecured Claims and (b) the product of (y) the Value of such Debtor's Assets minus an amount equal to the sum of (1) one hundred percent (100%) of such Debtor's Administrative Expense Claims, Secured Claims and Priority Claims plus (2) an amount equal to the product of such Debtor's Convenience Claim Distribution Percentage times such Convenience Claims times (z) a fraction, the numerator of which is equal to the amount of such Debtor's General Unsecured Claims and the denominator of which is equal to the sum of such Debtor's (1) General Unsecured Claims, (2) Guaranty Claims and (3) Intercompany Claims, plus (B) the product of (i) thirty percent (30%) times (ii) the Value of all of the Debtors' Assets as if the Debtors' chapter 11 estates were substantively consolidated, minus an amount equal to the sum of (1) one hundred percent (100%) of all Debtors' Administrative Expense Claims, Secured Claims and Priority Claims, calculated on a Consolidated Basis, plus (2) the sum of the products of each Debtor's Convenience Claims times its respective Convenience Claim Distribution Percentage times (iii) a fraction, the numerator of which is equal to the amount of such Debtor's General Unsecured Claims, calculated on a Consolidated Basis, and the denominator of which is equal to the sum of the amount of (y) all Debtors' General Unsecured Claims, calculated on a Consolidated Basis, and (z) fifty percent (50%) of all Guaranty Claims; provided, however, that, for purposes of calculating "Distributive Assets", (i) such calculation shall not include the Assets of or General Unsecured Claims against either of the Portland Debtors and (ii) with respect to Allowed General Unsecured Claims against ETS, the product set forth in clause (A) above shall be equal to seventy cents ($0.70) per dollar.

1.90    **Distributive Interests**:  The Litigation Trust Interests or the Special Litigation Trust Interests, as the case may be, to be made available to holders of Allowed General Unsecured Claims of a Debtor in an amount derived from the Distribution Model equal to the quotient of (I) the sum of (A) the product of (i) seventy percent (70%) times (ii) the lesser of (a) the sum of such Debtor's General Unsecured Claims and (b) the product of (y) the sum of the Value of such Debtor's Assets and the Fair Market Value of such Debtor's Litigation Trust Interests or Special Litigation Trust Interests, as the case may be, minus an amount equal to the sum of (1) one hundred percent (100%) of such Debtor's Administrative Expense Claims, Secured Claims and Priority Claims plus (2) an amount equal to the product of such Debtor's Convenience Claim Distribution Percentage times such Convenience Claims times (z) a fraction, the numerator of which is equal to the amount of such Debtor's General Unsecured Claims and the denominator of which is equal to the sum of such Debtor's (1) General Unsecured Claims,

(2) Guaranty Claims and (3) Intercompany Claims, plus (B) the product of (i) thirty percent (30%) times (ii) the sum of the Value of all of the Debtors' Assets and the Fair Market Value of all of the Debtors' Litigation Trust Interests or Special Litigation Trust Interests, as the case may be, as if the Debtors' chapter 11 estates were substantively consolidated, minus an amount equal to the sum of (1) one hundred percent (100%) of all Debtors' Administrative Expense Claims, Secured Claims and Priority Claims, calculated on a Consolidated Basis, plus (2) the sum of the products of each Debtor's Convenience Claims times its respective Convenience Claim Distribution Percentage times (iii) a fraction, the numerator of which is equal to the amount of such Debtor's General Unsecured Claims, calculated on a Consolidated Basis, and the denominator of which is equal to the sum of the amount of (y) all Debtors' General Unsecured Claims, calculated on a Consolidated Basis, and (z) fifty percent (50%) of all Guaranty Claims, minus (C) Distributive Assets, divided by (II) the Fair Market Value of a Litigation Trust Interest or a Special Litigation Trust Interest, as the case may be; provided, however, that, for purposes of calculating "Distributive Interests", such calculation shall not include the Assets of or General Unsecured Claims against either of the Portland Debtors.

1.91    **District Court**:  The United States District Court for the Southern District of Texas, Houston Division, having jurisdiction over the Class Actions.

1.92    **ECT I**:  Enron Capital Trust I, a trust under the Delaware Business Trust Act pursuant to the ECT I Trust Declarations.

1.93    **ECT I Trust Declarations**:  That certain Declaration of Trust, dated as of October 25, 1996, as amended by certain Amended and Restated Declaration of Trust of Enron Capital Trust I, dated as of November 18, 1996.

1.94    **ECT II**:  Enron Capital Trust II, a trust under the Delaware Business Trust Act pursuant to the ECT II Trust Declarations.

1.95    **ECT II Trust Declarations**:  That certain Declaration of Trust, dated as of December 23, 1996, as amended by that certain Amended and Restated Declaration of Trust of Enron Capital Trust II, dated as of January 13, 1997.

1.96    **Effective Date**:  The earlier to occur of (a) the first (1st) Business Day following the Confirmation Date that (i) the conditions to effectiveness of the Plan set forth in Section 37.1 of the Plan have been satisfied or otherwise waived in accordance with Section 37.2 of the Plan, but in no event earlier than December 31, 2004, and (ii) the effectiveness of the Confirmation Order shall not be stayed and (b) such other date following the Confirmation Date that the Debtors and the Creditors' Committee, in their joint and absolute discretion, designate.

1.97    **8.25% Subordinated Debentures**:  Those certain debentures issued in the original aggregate principal amount of One Hundred Fifty Million Dollars ($150,000,000.00) in accordance with the terms and conditions of the Enron Subordinated Indenture.

1.98    **Employee Committee**:  The statutory committee appointed in the Chapter 11 Cases pursuant to section 1102(a)(2) of the Bankruptcy Code, as reconstituted from time to time, to advise and represent the interests of former and current employees with respect to employee

related issues to the extent provided in the Bankruptcy Court's order, dated July 19, 2002, as such order may be amended or modified.

1.99 **Employee Counsel Orders** :  The Bankruptcy Court orders, dated March 29, 2002 and November 1, 2002, together with all other orders entered by the Bankruptcy Court in conjunction therewith, authorizing the retention of counsel to represent former and present employees of the Debtors in connection with the investigations of governmental entities, authorities or agencies with respect to the Debtors' operations and financial transactions.

1.100 **Employee Prepetition Stay Bonus Payments** :  The stay bonus payments made to certain of the Debtors' former employees which are the subject of the Severance Settlement Fund Litigation.

1.101 **ENA**:  Enron North America Corp., a Delaware corporation.

1.102 **ENA Debentures**:  The 7.75% Debentures Due 2016, issued in the original aggregate principal amount of $29,108,000.00 and the 7.75% Debentures Due 2016, Series II, issued in the original aggregate principal amount of $21,836,000.00, pursuant to the ENA Indentures.

1.103 **ENA Debentures Claim**:  Any General Unsecured Claim arising from or related to the ENA Indentures.

1.104 **ENA Examiner**:  Harrison J. Goldin, appointed as examiner of ENA pursuant to the Bankruptcy Court's order, dated March 12, 2002.

1.105 **ENA Examiner Order**:  The Bankruptcy Court order, dated June 3, 2004, relating to, among other things, the transition of the ENA Examiner's duties and obligations.

1.106 **ENA Guaranty Claim**:  Any Unsecured Claim, other than an Intercompany Claim, against ENA arising from or relating to an agreement by ENA to guarantee or otherwise satisfy the obligations of another Debtor, including, without limitation, any Claim arising from or relating to rights of contribution or reimbursement.

1.107 **ENA Guaranty Distributive Assets**:  The Plan Currency to be made available to holders of Allowed ENA Guaranty Claims in an amount derived from the Distribution Model equal to the sum of (A) the product of (i) seventy percent (70%) times (ii) the lesser of (a) the sum of ENA Guaranty Claims and (b) the product of (y) the Value of ENA's Assets minus an amount equal to the sum of (1) one hundred percent (100%) of ENA's Administrative Expense Claims, Secured Claims and Priority Claims plus (2) an amount equal to the product of ENA's Convenience Claim Distribution Percentage times ENA's Convenience Claims times (z) a fraction, the numerator of which is equal to the amount of ENA Guaranty Claims and the denominator of which is equal to the sum of ENA's (1) General Unsecured Claims, (2) ENA Guaranty Claims and (3) Intercompany Claims plus (B) the product of (i) thirty percent (30%) times (ii) the Value of all of the Debtors' Assets, calculated as if the Debtors' chapter 11 estates were substantively consolidated, minus an amount equal to the sum of (1) one hundred percent (100%) of all Debtors' Administrative Expense Claims, Secured Claims and Priority Claims, calculated on a Consolidated Basis, plus (2) the sum of the products of each Debtor's

Convenience Claims times its respective Convenience Claim Distribution Percentage times (iii) a fraction, the numerator of which is equal to fifty percent (50%) times an amount equal to the sum of the lesser of, calculated on a Claim-by-Claim basis, (1) the amount of ENA Guaranty Claims and (2) the corresponding primary General Unsecured Claim, calculated on a Consolidated Basis, and the denominator of which is equal to the sum of the amount of (y) all Debtors' General Unsecured Claims, calculated on a Consolidated Basis and (z) fifty percent (50%) of all Guaranty Claims; provided, however, that, for purposes of calculating "ENA Guaranty Distributive Assets", such calculation shall not include the Assets of or the General Unsecured Claims against either of the Portland Debtors.

1.108    **ENA Guaranty Distributive Interests**:  The Litigation Trust Interests or the Special Litigation Trust Interests, as the case may be, to be made available to holders of Allowed ENA Guaranty Claims in an amount derived from the Distribution Model equal to the quotient of (I) the sum of (A) the product of (i) seventy percent (70%) times (ii) the lesser of (a) the sum of ENA Guaranty Claims and (b) the product of (y) the sum of the Value of ENA's Assets and the Fair Market Value of ENA's Litigation Trust Interests or Special Litigation Trust Interests, as the case may be, minus an amount equal to the sum of (1) one hundred percent (100%) of ENA's Administrative Expense Claims, Secured Claims and Priority Claims plus (2) an amount equal to the product of ENA's Convenience Claim Distribution Percentage times ENA's Convenience Claims times (z) a fraction, the numerator of which is equal to the amount of ENA Guaranty Claims and the denominator of which is equal to the sum of ENA's (1) General Unsecured Claims, (2) ENA Guaranty Claims and (3) Intercompany Claims plus (B) the product of (i) thirty percent (30%) times (ii) the sum of the Value of all of the Debtors' Assets and the Fair Market Value of all of the Debtors' Litigation Trust Interests or Special Litigation Trust Interests, as the case may be, calculated as if the Debtors' chapter 11 estates were substantively consolidated, minus an amount equal to the sum of (1) one hundred percent (100%) of all Debtors' Administrative Expense Claims, Secured Claims and Priority Claims, calculated on a Consolidated Basis, plus (2) the sum of the products of each Debtor's Convenience Claims times its respective Convenience Claim Distribution Percentage times (iii) a fraction, the numerator of which is equal to fifty percent (50%) times an amount equal to the sum of the lesser of, calculated on a Claim-by-Claim basis, (1) the amount of ENA Guaranty Claims and (2) the corresponding primary General Unsecured Claim, calculated on a Consolidated Basis, and the denominator of which is equal to the sum of the amount of (y) all Debtors' General Unsecured Claims, calculated on a Consolidated Basis and (z) fifty percent (50%) of all Guaranty Claims, minus (C) ENA Guaranty Distributive Assets, divided by (II) the Fair Market Value of a Litigation Trust Interest or a Special Litigation Trust Interest, as the case may be; provided, however, that, for purposes of calculating "ENA Guaranty Distributive Interests", such calculation shall not include the Assets of or the General Unsecured Claims against either of the Portland Debtors.

1.109    **ENA Indentures**:  That certain (1) Indenture, dated as of November 21, 1996, by and among Enron Capital & Trade Resources Corp., now known as ENA, ENE, as Guarantor, and The Chase Manhattan Bank, as Indenture Trustee, and (2) Indenture, dated as of January 16, 1997, by and among Enron Capital & Trade Resources Corp., now known as ENA, ENE, as Guarantor, and The Chase Manhattan Bank, as Indenture Trustee.

1.110   **ENA Indenture Trustee**:  National City Bank, solely in its capacity as successor in interest to The Chase Manhattan Bank, as Indenture Trustee under the ENA Indentures, or its duly appointed successor.

1.111   **ENE**:  Enron Corp., an Oregon corporation.

1.112   **ENE Examiner**:  Neal A. Batson, appointed as examiner of ENE pursuant to the Bankruptcy Court's order, dated May 24, 2002.

1.113   **ENE Examiner Orders**:  The Bankruptcy Court orders, dated December 17, 2003, December 18, 2003 and February 19, 2004, together with such other orders of the Bankruptcy Court,  relating to, among other things, the termination of the ENE Examiner's duties and obligations.

1.114   **Enron Affiliate**:  Any of the Debtors and any other direct or indirect subsidiary of ENE.

1.115   **Enron Common Equity Interest**:  An Equity Interest represented by one of the one billion two hundred million (1,200,000,000) authorized shares of common stock of ENE as of the Petition Date or any interest or right to convert into such an equity interest or acquire any equity interest of the Debtors which was in existence immediately prior to or on the Petition Date.

1.116   **Enron Guaranty Claim**:  Any Unsecured Claim, other than an Intercompany Claim, against ENE arising from or relating to an agreement by ENE to guarantee or otherwise satisfy the obligations of another Debtor, including, without limitation, any Claim arising from or relating to rights of contribution or reimbursement.

1.117   **Enron Guaranty Distributive Assets**:  The Plan Currency to be made available to holders of Allowed Enron Guaranty Claims in an amount derived from the Distribution Model equal to the sum of (A) the product of (i) seventy percent (70%) times (ii) the lesser of (a) the sum of ENE's Enron Guaranty Claims and (b) the product of (y) the Value of ENE's Assets minus an amount equal to the sum of (1) one hundred percent (100%) of ENE's Administrative Expense Claims, Secured Claims and Priority Claims plus (2) an amount equal to the product of ENE's Convenience Claim Distribution Percentage times ENE's Convenience Claims times (z) a fraction, the numerator of which is equal to the amount of ENE's Enron Guaranty Claims and the denominator of which is equal to the sum of ENE's (1) General Unsecured Claims, (2) Enron Guaranty Claims and (3) Intercompany Claims plus (B) the product of (i) thirty percent (30%) times (ii) the Value of all of the Debtors' Assets, calculated as if the Debtors' chapter 11 estates were substantively consolidated, minus an amount equal to the sum of (1) one hundred percent (100%) of all Debtors' Administrative Expense Claims, Secured Claims and Priority Claims, calculated on a Consolidated Basis, plus (2) the sum of the products of each Debtor's Convenience Claims times its respective Convenience Claim Distribution Percentage times (iii) a fraction, the numerator of which is equal to fifty percent (50%) times an amount equal to the sum of the lesser of, calculated on a Claim-by-Claim basis, (1) the amount of Enron Guaranty Claims and (2) the corresponding primary General Unsecured Claim, calculated on a Consolidated Basis, and the denominator of which is equal to the sum of the amount of (y) all Debtors'

General Unsecured Claims, calculated on a Consolidated Basis and (z) fifty percent (50%) of all Guaranty Claims; provided, however, that, for purposes of calculating "Enron Guaranty Distributive Assets", such calculation shall not include the Assets of or the General Unsecured Claims against either of the Portland Debtors.

      1.118  **Enron Guaranty Distributive Interests**: The Litigation Trust Interests or the Special Litigation Trust Interests, as the case may be, to be made available to holders of Allowed Enron Guaranty Claims in an amount derived from the Distribution Model equal to the quotient of (I) the sum of (A) the product of (i) seventy percent (70%) times (ii) the lesser of (a) the sum of ENE's Enron Guaranty Claims and (b) the product of (y) the sum of the Value of ENE's Assets and the Fair Market Value of ENE's Litigation Trust Interests or Special Litigation Trust Interests, as the case may be, minus an amount equal to the sum of (1) one hundred percent (100%) of ENE's Administrative Expense Claims, Secured Claims and Priority Claims plus (2) an amount equal to the product of ENE's Convenience Claim Distribution Percentage times ENE's Convenience Claims times (z) a fraction, the numerator of which is equal to the amount of ENE's Enron Guaranty Claims and the denominator of which is equal to the sum of ENE's (1) General Unsecured Claims, (2) Enron Guaranty Claims and (3) Intercompany Claims plus (B) the product of (i) thirty percent (30%) times (ii) the sum of the Value of all of the Debtors' Assets and the Fair Market Value of all of the Debtors' Litigation Trust Interests or Special Litigation Trust Interests, as the case may be, calculated as if the Debtors' chapter 11 estates were substantively consolidated, minus an amount equal to the sum of (1) one hundred percent (100%) of all Debtors' Administrative Expense Claims, Secured Claims and Priority Claims, calculated on a Consolidated Basis, plus (2) the sum of the products of each Debtor's Convenience Claims times its respective Convenience Claim Distribution Percentage times (iii) a fraction, the numerator of which is equal to fifty percent (50%) times an amount equal to the sum of the lesser of, calculated on a Claim-by-Claim basis, (1) the amount of Enron Guaranty Claims and (2) the corresponding primary General Unsecured Claim, calculated on a Consolidated Basis, and the denominator of which is equal to the sum of the amount of (y) all Debtors' General Unsecured Claims, calculated on a Consolidated Basis and (z) fifty percent (50%) of all Guaranty Claims, minus (C) Enron Guaranty Distributive Assets, divided by (II) the Fair Market Value of a Litigation Trust Interest or a Special Litigation Trust Interest, as the case may be; provided, however, that, for purposes of calculating "Enron Guaranty Distributive Interests", such calculation shall not include the Assets of or the General Unsecured Claims against either of the Portland Debtors.

      1.119  **Enron MIPS Agreements**: That certain (a) Loan Agreement, dated as of November 15, 1993, between ENE and Enron Capital LLC, executed and delivered in connection with the issuance of 8% Cumulative Guaranteed Monthly Income Preferred Shares, and relating to a loan in the original principal amount of Two Hundred Seventy Million Five Hundred Sixty-Nine Thousand Six Hundred Twenty-One Dollars ($270,569,621.00), and (b) Loan Agreement, dated as of August 3, 1994, between ENE and Enron Capital Resources, L.P., executed and delivered in connection with the issuance of 9% Cumulative Preferred Securities, Series A, and relating to a loan in the original principal amount of Ninety-Four Million Nine Hundred Thirty-Six Thousand Seven Hundred Nine Dollars ($94,936,709.00).

      1.120  **Enron Preferred Equity Interest**: An Equity Interest represented by an issued and outstanding share of preferred stock of ENE as of the Petition Date, including, without

Document Excerpted to Reduce Bulk

described in the Disclosure Statement, and (ii) not commence any action against any Enron Guaranty Claim on the basis of a constructive fraudulent transfer to the extent not commenced as of December 2, 2003.

## ARTICLE XXIX

### ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTEREST

29.1 **Impaired Classes to Vote**: Each holder of a Claim or Equity Interest in an impaired Class, not otherwise deemed to have rejected the Plan in accordance with Section 29.2 of the Plan, shall be entitled to vote separately to accept or reject the Plan.

29.2 **Acceptance by Class of Creditors and Holders of Equity Interests**: An impaired Class of holders of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan. An impaired Class of holders of Equity Interests shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in amount of the Allowed Equity Interests of such Class that have voted to accept or reject the Plan.

29.3 **Cramdown**: In the event that any impaired Class of Claims or Equity Interests shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtors reserve the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code or amend the Plan.

## ARTICLE XXX

### IDENTIFICATION OF CLAIMS AND EQUITY INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN

30.1 **Impaired and Unimpaired Classes**: Claims in Classes 1 and 2 of the Plan are not impaired under the Plan. Claims and Equity Interests in Classes 3 through 385 are impaired under the Plan.

30.2 **Impaired Classes to Vote on Plan**: The Claims included in Classes 3 through 385 of the Plan are impaired and are therefore entitled to vote to accept or reject the Plan. Notwithstanding the foregoing, (a) the Claims included in Class 190 are deemed to have accepted the Plan and (b) the Claims and Equity Interests included in Classes 183 and 376 through 385 of the Plan are deemed to have rejected the Plan in accordance with the provisions of section 1126 (g) of the Bankruptcy Code.

30.3 **Controversy Concerning Impairment**: In the event of a controversy as to whether any Class of Claims or Equity Interests is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

## ARTICLE XXXI

## PROVISIONS FOR THE ESTABLISHMENT
## AND MAINTENANCE OF DISBURSEMENT ACCOUNTS

31.1    **Establishment of Disbursement Account**:  On or prior to the Effective Date, the Debtors shall establish one or more segregated bank accounts in the name of the Reorganized Debtors as Disbursing Agent under the Plan, which accounts shall be trust accounts for the benefit of Creditors and holders of Administrative Expense Claims pursuant to the Plan and utilized solely for the investment and distribution of Cash consistent with the terms and conditions of the Plan.  On or prior to the Effective Date, and periodically thereafter, the Debtors shall deposit into such Disbursement Account(s) all Cash and Cash Equivalents of the Debtors, less amounts reasonably determined by the Debtors or the Reorganized Debtors, as the case may be, as necessary to fund the ongoing implementation of the Plan and operations of the Reorganized Debtors.

31.2    **Maintenance of Disbursement Account(s)**:  Disbursement Account(s) shall be maintained at one or more domestic banks or financial institutions of the Reorganized Debtors' choice having a shareholder's equity or equivalent capital of not less than One Hundred Million ($100,000,000.00).  The Reorganized Debtors shall invest Cash in Disbursement Account(s) in Cash Equivalents; provided, however, that sufficient liquidity shall be maintained in such account or accounts to (a) make promptly when due all payments upon Disputed Claims if, as and when they become Allowed Claims and (b) make promptly when due the other payments provided for in the Plan.

## ARTICLE XXXII

## PROVISIONS REGARDING DISTRIBUTIONS

32.1    **Time and Manner of Distributions**:  Distributions under the Plan shall be made to each holder of an Allowed Unsecured Claim as follows:

(a)    Initial Distributions of Cash:  On or as soon as practicable after the Effective Date, the Disbursing Agent shall distribute, or cause to be distributed, to the Reorganized Debtor Plan Administrator on behalf of holders of Disputed Claims, and to each holder of an Allowed General Unsecured Claim, an Allowed Guaranty Claim, an Allowed Intercompany Claim and an Allowed Convenience Claim, such Creditor's share, if any, of Creditor Cash as determined pursuant to Articles VII, X, XI, XII, XIII, XIV, XV and XVI hereof.

(b)    Subsequent Distributions of Cash:  On the first (1st) Business Day that is after the close of one (1) full calendar quarter following the date of the initial Effective Date distributions, and, thereafter, on each first (1st) Business Day following the close of two (2) full calendar quarters, the Disbursing Agent shall distribute, or cause to be distributed, to the Reorganized Debtor Plan Administrator on behalf of holders of Disputed Claims, and to each holder of an Allowed General Unsecured Claim, an Allowed Guaranty Claim, an Allowed Intercompany Claim, and an Allowed Convenience Claim, an amount equal to such Creditor's

share, if any, of Creditor Cash as determined pursuant to Articles VII, X, XI, XII, XIII, XIV, XV and XVI hereof, until such time as there are no longer any potential Creditor Cash.

(c)     Distributions of Plan Securities:  Notwithstanding anything contained herein to the contrary, commencing on or as soon as practicable after the Effective Date, subject to the availability of any historical financial information required to comply with applicable securities laws, the Disbursing Agent shall commence distributions, or cause to be distributed, to the Reorganized Debtor Plan Administrator on behalf of holders of Disputed Claims, and to each holder of an Allowed General Unsecured Claim, an Allowed Guaranty Claim and an Allowed Intercompany Claim, an amount equal to such Creditor's share, if any, of Plan Securities, as determined pursuant to Articles VII, X, XI, XII, XIII, XIV, XV and XVI hereof, and semi-annually thereafter until such time as there is no longer any potential Plan Securities to distribute, as follows:

(i)     Prisma:  Distribution of Prisma Common Stock to holders of Allowed General Unsecured Claims, Allowed Guaranty Claims and Allowed Intercompany Claims shall commence upon (a) allowance of General Unsecured Claims in an amount which would result in the distribution of thirty percent (30%) of the issued and outstanding shares of Prisma Common Stock and (b) obtaining the requisite consents for the transfer of the Prisma Assets to Prisma and the issuance of the Prisma Common Stock;

(ii)     CrossCountry:  Distributions of CrossCountry Common Equity to holders of Allowed General Unsecured Claims, Allowed Guaranty Claims and Allowed Intercompany Claims shall commence upon (a) allowance of General Unsecured Claims in an amount which would result in the distribution of thirty percent (30%) of the issued and outstanding shares of CrossCountry Common Equity and (b) obtaining the requisite consents for the issuance of the CrossCountry Common Equity; and

(iii)     PGE:  Distributions of PGE Common Stock to holders of Allowed General Unsecured Claims, Allowed Guaranty Claims and Allowed Intercompany Claims shall commence upon (a) allowance of General Unsecured Claims in an amount which would result in the distribution of thirty percent (30%) of the issued and outstanding shares of PGE Common Stock and (b) obtaining the requisite consents for the issuance of the PGE Common Stock;

provided, however, that, in the event that a Sale Transaction has occurred, or an agreement for a Sale Transaction has been entered into and has not been terminated, prior to the satisfaction of the conditions for the distribution of such Plan Securities pursuant to this Section 32.1(c), the proceeds thereof shall be distributed in accordance with the provisions of Section 32.1(a) of the Plan in lieu of the Plan Securities that are the subject of such Sale Transaction or agreement, or in the case of a Sale Transaction involving a sale of all or substantially all of the assets of an issuer of Plan Securities, the Plan Securities of such issuer (unless the agreement for such Sale Transaction terminates subsequent to the satisfaction of such applicable conditions in this

Section 32.1(c), in which case, such Plan Securities shall be distributed pursuant to this Section 32.1(c)), with the balance of such Plan Securities distributed in accordance with the provisions of this Section 32.1(c); and, <u>provided</u>, <u>further</u>, that, if in the joint determination of the Debtors or the Reorganized Debtors, as the case may be, and the Creditors' Committee, the Prisma Trust Interests, CrossCountry Trust Interests and/or PGE Trust Interests are created, on or as soon as practicable following the creation of the Operating Trusts, such interests shall be allocated to the appropriate holders thereof in accordance with Article XXIV of the Plan in lieu of the distributions of Prisma Common Stock, CrossCountry Common Equity and/or PGE Common Stock, respectively; and, <u>provided</u>, <u>further</u>, that during the period of retention of any such Plan Securities, the Disbursing Agent shall distribute, or cause to be distributed, to the Reorganized Debtor Plan Administrator on behalf of holders of Disputed Claims, and to each holder of an Allowed General Unsecured Claim, an Allowed Guaranty Claim and an Allowed Intercompany Claim, an amount equal to such Creditor's share, if any, of dividends declared and distributed with respect to any of the Plan Securities; and, <u>provided</u>, <u>further</u>, until such time as all Disputed Claims have been allowed by Final Order, in whole or in part, the Disbursing Agent shall hold in reserve at least one percent (1%) of the Plan Securities to be distributed in accordance with Section 21.3 of the Plan and this Section 32.1.

(d)    <u>Distribution of Trust Interests</u>:  In the event that the Litigation Trust or the Special Litigation Trust is created, on or as soon as practicable thereafter, the Disbursing Agent shall commence distributions, or cause to be distributed, to the Reorganized Debtor Plan Administrator on behalf of holders of Disputed Claims, and to each holder of an Allowed General Unsecured Claim, an Allowed Guaranty Claim, and an Allowed Intercompany Claim, such Creditor's share, if any, of Trust Interests as determined pursuant to Articles VII, X, XI, XII, XIII, XIV, XV and XVI hereof, and semi-annually thereafter until such time as there is no longer any Trust Interests to distribute.

(e)    <u>Allocation of Remaining Asset Trust Interests</u>:  In the event the Remaining Asset Trusts are created, on or as soon as practicable thereafter, the Disbursing Agent shall allocate, or cause to be allocated, to the Reorganized Debtor Plan Administrator on behalf of holders of Disputed Claims, and to each holder of an Allowed General Unsecured Claim, an Allowed Guaranty Claim, and an Allowed Intercompany Claim, such Creditor's share, if any, of Remaining Asset Trust Interests as determined pursuant to Articles VII, X, XI, XII, XIII, XIV, XV and XVI hereof.

(f)    <u>Recalculation of Distributive Assets, Guaranty Distributive Assets and Intercompany Distributive Assets</u>:  Notwithstanding anything contained herein to the contrary, in connection with each of the distributions of Plan Currency to be made in accordance with this Section 32.1, the Disbursing Agent shall calculate, or cause to be calculated, Distributive Assets, Enron Guaranty Distributive Assets, Wind Guaranty Distributive Assets, ACFI Guaranty Distributive Assets, ENA Guaranty Distributive Assets, EPC Guaranty Distributive Assets and Intercompany Distributive Assets as of the date thereof, taking into account, among other things, (i) sales of Remaining Assets, prior to the creation of the Remaining Asset Trust(s), (ii) proceeds, if any, of Sale Transactions and (iii) the allowance or disallowance of Disputed Claims, as the case may be.

(g)     <u>Prior and Subsequent Bankruptcy Court Orders Regarding Non-Conforming Distributions</u>: For purposes of calculating distributions to be made in accordance with Section 32.1 of the Plan, including, without limitation, the payment of Allowed Claims in full, the Debtors, the Reorganized Debtors, the Disbursing Agent and the Reorganized Debtor Plan Administrator shall take into account those payments made or to be made to holders of Allowed Enron Senior Note Claims and Allowed Enron Subordinated Debenture Claims pursuant to the provisions of prior or subsequent orders of the Bankruptcy Court.

32.2     **Timeliness of Payments**: Any payments or distributions to be made pursuant to the Plan shall be deemed to be timely made if made within twenty (20) days after the dates specified in the Plan. Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

32.3     **Distributions by the Disbursing Agent**: All distributions under the Plan shall be made by the Disbursing Agent at the direction of the Reorganized Debtor Plan Administrator. The Disbursing Agent shall be deemed to hold all property to be distributed hereunder in trust for the Persons entitled to receive the same. The Disbursing Agent shall not hold an economic or beneficial interest in such property.

32.4     **Manner of Payment under the Plan**: Unless the Entity receiving a payment agrees otherwise, any payment in Cash to be made by the Reorganized Debtors shall be made, at the election of the Reorganized Debtors, by check drawn on a domestic bank or by wire transfer from a domestic bank; <u>provided</u>, <u>however</u>, that no Cash payments shall be made to a holder of an Allowed Claim or an Allowed Equity Interest until such time as the amount payable thereto is equal to or greater than Ten Dollars ($10.00).

32.5     **Delivery of Distributions**: Subject to the provisions of Rule 9010 of the Bankruptcy Rules and the TOPRS Stipulation, and except as provided in Section 32.4 of the Plan, distributions and deliveries to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Bankruptcy Court unless superseded by the address set forth on proofs of claim filed by such holders, or at the last known address of such a holder if no proof of claim is filed or if the Debtors has been notified in writing of a change of address. Subject to the provisions of Section 9.1 of the Plan and the TOPRS Stipulation, distributions for the benefit of holders of Enron Senior Notes shall be made to the appropriate Enron Senior Notes Indenture Trustee. Each such Enron Senior Note Indenture Trustee shall in turn administer the distribution to the holders of Allowed Enron Senior Note Claims in accordance with the Plan and the applicable Enron Senior Notes Indenture. The Enron Senior Notes Indenture Trustee shall not be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court.

32.6     **Fractional Securities**: No fractional shares of Plan Securities shall be issued. Fractional shares of Plan Securities shall be rounded to the next greater or next lower number of shares in accordance with the following method: (a) fractions of one-half (1/2) or greater shall be rounded to the next higher whole number, and (b) fractions of less than one-half (1/2) shall be rounded to the next lower whole number. The total number of shares or interests of Plan Securities to be distributed to a Class hereunder shall be adjusted as necessary to account for the

rounding provided for in this Section 32.6.  In the event that, as a result of such rounding, a holder of a Claim would receive no distribution pursuant to this Plan, such holder shall receive Cash in lieu of the fractional shares of Plan Securities to purchase fractional shares such holder was entitled to receive.

32.7    **Undeliverable Distributions**:

(a)    Holding of Undeliverable Distributions:  If any distribution to any holder is returned to the Reorganized Debtors as undeliverable, no further distributions shall be made to such holder unless and until the Reorganized Debtors is notified, in writing, of such holder's then-current address.  Undeliverable distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable.  All Entities ultimately receiving undeliverable Cash shall not be entitled to any interest or other accruals of any kind.  Nothing contained in the Plan shall require the Reorganized Debtors to attempt to locate any holder of an Allowed Claim or an Allowed Equity Interest.

(b)    Failure to Claim Undeliverable Distributions:  On or about the second (2nd) anniversary of the Effective Date, the Reorganized Debtors shall file a list with the Bankruptcy Court setting forth the names of those Entities for which distributions have been made hereunder and have been returned as undeliverable as of the date thereof.  Any holder of an Allowed Claim or an Allowed Equity Interest that does not assert its rights pursuant to the Plan to receive a distribution within three (3) years from and after the Effective Date shall have its entitlement to such undeliverable distribution discharged and shall be forever barred from asserting any entitlement pursuant to the Plan against the Reorganized Debtors or its property.  In such case, any consideration held for distribution on account of such Claim or Equity Interest shall revert to the Reorganized Debtors for redistribution to holders of Allowed Claims and Allowed Equity Interests in accordance with the provisions of Section 32.1 hereof.

32.8    **Compliance with Tax Requirements**:  The Reorganized Debtors shall comply with all applicable tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

32.9    **Time Bar to Cash Payments**:  Checks issued by the Reorganized Debtors on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Reorganized Debtors by the holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check shall be made on or before the later of (a) the second (2nd) anniversary of the Effective Date or (b) ninety (90) days after the date of issuance of such check, if such check represents a final distribution hereunder on account of such Claim.  After such date, all Claims in respect of voided checks shall be discharged and forever barred and the Reorganized Debtors shall retain all monies related thereto for the sole purpose of adding such monies to Creditor Cash for purposes of redistribution to Creditors in accordance with the terms and provisions hereof.

32.10    **Distributions After Effective Date**:  Distributions made after the Effective Date to holders of Claims that are not Allowed Claims as of the Effective Date, but which later

Document Excerpted to
Reduce Bulk