Hearing Date: January 7, 2002 at 2:00 p.m.

SHEARMAN & STERLING
599 Lexington Avenue
New York, NY 10022
Douglas P. Bartner (DB-2301)
Fredric Sosnick (FS-3326)

Attorneys for Citibank, N.A. and
Citicorp USA, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                    :
In re                                               :    Chapter 11 Case No.
                                                    :
ENRON CORP., ET AL.,                                :    01-16034 (AJG)
                                                    :
                                                    :    Jointly Administered
           Debtors.                                 :
-----------------------------------------------------------------x

**OMNIBUS OBJECTION OF CITIBANK, N.A. AND CITICORP USA, INC.
TO THE MOTIONS OF (I) PETRO-HUNT LLC. ET AL., (II) PAMELA M.
TITTLE ET AL., (III) DYNEGY INC. ET AL., (IV) SOUTHERN UTE
INDIAN TRIBE, (V) RELIANT ENERGY SERVICES, INC., (VI) EL PASO
MERCHANT ENERGY L.P., AND (VII) ANNING-JOHNSON CO. ET AL. TO
CHANGE THE VENUE OF THE DEBTORS' CHAPTER 11 CASES TO
<u>THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION</u>**

TO:    THE HONORABLE ARTHUR J. GONZALEZ,
       UNITED STATES BANKRUPTCY JUDGE

        Citibank, N.A. ("Citibank") in its respective capacities as a lender, the Paying

Agent and a Co-Administrative Agent under each of the $1.75 billion 364-Day Revolving

Facility[1] and the $1.25 billion 5-Year Revolving Facility,[2] and Citicorp USA, Inc. (together with

---

[1] $1,750,000,000 364-Day Revolving Credit Agreement, dated as of May 14, 2001, among Enron Corp., as borrower, the banks named therein, Citibank, as paying agent, Citibank and JPMorgan Chase Bank (f/k/a The Chase Manhattan Bank) as co-administrative agents, Salomon Smith Barney Inc. and JP

Citibank, "Citigroup"), in its capacity as a lender, the Paying Agent and a Co-Administrative Agent under the DIP Credit Facility,[3] by and through their undersigned counsel, hereby submit this omnibus objection (this "Objection")[4] to the motions filed by the parties listed in this Objection's caption (collectively, the "Movants")[5] seeking to transfer the venue of the chapter 11 cases of Enron Corp. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") to the Southern District of Texas, Houston Division pursuant to 28 U.S.C. § 1412 (collectively, the "Venue Motions"). In support of this Objection, Citigroup respectfully represents as follows:

---

Morgan, a Division of Chase Securities Inc., as co-lead arrangers, Barclays Bank PLC and the Royal Bank of Scotland plc, as co-syndication agents, and ABN AMRO Bank N.V., as documentation agent (the "364-Day Revolving Facility").

[2] $1,250,000,000 Long-Term Revolving Credit Agreement, dated as of May 18, 2000, among Enron Corp., as borrower, the banks named therein, Citibank, as paying agent, and Citibank and JPMorgan Chase Bank (f/k/a The Chase Manhattan Bank) as co-administrative agents, Salomon Smith Barney Inc. and Chase Securities Inc., as co-lead arrangers, Barclays Bank PLC, as syndication agent, and ABN AMRO Bank N.V., as documentation agent (the "5-Year Revolving Facility").

[3] Revolving Credit and Guaranty Agreement among Enron Corp. and Enron North America Corp., as borrowers, the subsidiaries of the borrowers named therein as guarantors, the lenders party thereto, Citicorp USA, Inc. as paying agent, JPMorgan Chase Bank as collateral agent, and JPMorgan Chase Bank and Citicorp USA, Inc. as co-administrative agents, dated as of December 3, 2001 (the "DIP Credit Facility").

[4] Citigroup also joins in the Objection of JPMorgan Chase Bank to Motions to Transfer Venue, dated January 3, 2002. Citibank and JPMorgan Chase Bank (f/k/a The Chase Manhattan Bank) ("JPMC") are the Co-Administrative Agents under the US$500,000,000 Letter of Credit and Reimbursement Agreement, dated as of May 14, 2001, among Enron Corp., as the company, the banks named therein, JPMC and Citibank as co-administrative agents, JPMC as paying agent and issuing bank and JP Morgan, a division of Chase Securities, and Salomon Smith Barney Inc., as co-lead arrangers.

[5] Motion for Change of Venue to The Southern District of Texas filed by Petro-Hunt LLC. et al., dated December 5, 2001; Motion to Transfer Venue filed by Pamela M. Tittle et al., dated December 4, 2001; Joint Motion for Change of Venue to Southern District of Texas, Houston Division filed by Dynegy Inc. et al., dated December 6, 2001; Motion of The Southern UTE Indian Tribe to Transfer Venue to The Southern District of Texas, dated December 7, 2001; Motion for Change of Venue to Southern District of Texas, Houston Division filed by Reliant Energy Services, Inc., dated December 11, 2001; Motion to Transfer Venue to the Southern District of Texas, Houston Division filed by El Paso Merchant Energy L.P, dated December 26, 2001; and Joinder to the (1) Motion for Change of Venue to The Southern District of Texas and (2) Joint Motion for Change of Venue to The Southern District of Texas, Houston Division filed by Anning-Johnson Company et al., dated December 21, 2001.

## INTRODUCTION

1. The Debtors' chapter 11 cases are among the largest, and may be among the most complicated, cases in U.S. history. Although these cases are just over one-month old, their extraordinary scope and breadth, both in terms of geographic diversity and potential legal issues, already are apparent. For example, given that the Debtors' wholesale energy trading business was the largest of its kind prior to the commencement of these cases, the court presiding over the Debtors' cases likely will adjudicate questions of first impression with respect to the interplay of various types of derivative contracts and the "safe harbor" provisions of the Bankruptcy Code. Moreover, as a result of the Debtors' complex corporate structure -- with over 3,500 domestic and foreign entities (some of which are in insolvency proceedings in various jurisdictions throughout the world, including the United Kingdom, Australia and Japan) -- the Debtors' cases will require not only the adjudication of issues arising in connection with a particular Debtor's ownership of individual assets, but also may require the coordination with reorganization or insolvency proceedings pending in different countries.

2. The Venue Motions ignore the national and international scope of the Debtors' cases, and the substantial disruption that would attend transferring these cases to another district, focusing instead on certain of the Debtors' obvious contacts with Houston, Texas. While the mechanical analysis proffered by the Movants may be appropriate when applied to the much less complicated businesses and single-asset real estate cases that form the bulk of the legal authority cited in several of the Venue Motions, it does not demonstrate that moving the Debtors' cases to the Southern District of Texas, Houston Division is consistent with either the interest of justice or the economic and efficient administration of the Debtors' estates.

**ARGUMENT**

I. **The Movants Have Failed to Carry Their Burden of Proof**

3. Venue of the Debtors' chapter 11 cases in the Southern District of New York is appropriate and correct pursuant to 28 U.S.C. § 1408 ("Section 1408"). A prospective debtor may select, as the venue for its chapter 11 reorganization, the district where it maintains its domicile, residence, principal place of business or where its principal assets are located. 28 U.S.C. § 1408(1). Under Section 1408(2), venue is proper for any affiliate that files in a venue in which a case is properly venued in accordance with Section 1408(1).

4. It is uncontested that Enron Metals & Commodity Corporation ("Enron Metals") properly selected this District as the forum for its chapter 11 case pursuant to Section 1408(1) because it maintains its principal place of business at 520 Madison Avenue, New York, New York.[6] *See* Voluntary Petition of Enron Metals, dated December 2, 2001, at 1. The affiliates of Enron Metals then properly filed their chapter 11 petitions in this District pursuant to Section 1408(2).

5. Given that Section 1408(1) affords a prospective debtor significant discretion to select an appropriate venue, when a proper venue is selected and a motion is brought to transfer venue under 28 U.S.C. § 1412 ("Section 1412"), the Movants bear "the burden of proof and that burden must be carried by a preponderance of the evidence." *Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products*

---

[6] None of the Venue Motions discuss, or even cite to, the appropriate statutory predicate for transfer where a debtor's chapter 11 case has been filed in the incorrect district, 28 U.S.C. § 1406
   *See In re Washington, Perito & Dubuc*, 154 B.R. 853, 858 (Bankr. S.D.N.Y. 1993) (noting that the Advisory Committee's comment to Fed. R. Bankr. P. 1014 illustrates that 28 U.S.C. § 1412 is applicable where the case is properly venued, and Section 1406 governs where venue is improper); *In re Waits*, 70 B.R. 591, 594 (Bankr. S.D.N.Y. 1987) (Section 1406 is applicable where venue is improper). Accordingly, the Movants cannot assert that the venue of these Cases in this District is not proper.

*Corp.)*, 896 F.2d 1384, 1390 (2d Cir. 1990). The debtor's venue selection, therefore, is entitled to deference by a court considering a motion to transfer venue under Section 1412. *See In re Garden Manor Assocs.*, 99 B.R. 551, 555 (Bankr. S.D.N.Y. 1988). Accordingly:

> Where a case is filed in the proper venue, the court should cautiously exercise its power to transfer venue. Such a transfer should not be made "without clear and proper justification".

*In re Pope Vineyards*, 90 B.R. 252, 255 (Bankr. S.D. Tex., Houston Div. 1988) (quoting *In re Holiday Towers, Inc.*, 18 B.R. 183, 187 (Bankr. S.D. Ohio 1982)) (internal citations omitted); *see also In re Shorts Auto Parts of Warren, Inc.*, 136 B.R. 30 (Bankr. N.D.N.Y. 1991) ("The court's power to transfer should be exercised 'cautiously.'") (citing *Puerto Rico v. Commonwealth Oil Refining Co. (In re Commonwealth Oil Refining Co.*), 596 F.2d 1239, 1241 (5th Cir. 1979)).

6. Movants have failed to demonstrate that transferring these cases to the Southern District of Texas satisfies the heavy burdens of Section 1412. Under Section 1412, the Movants must establish that the proposed venue transfer is "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. As the Second Circuit has explained:

> The 'interest of justice' component of § 1412 is a broad and flexible standard which must be applied on a case-by-case basis. It contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness…"

*Manville Forest Products*, 896 F.2d at 1391.

7. In determining whether to exercise their discretion to transfer venue pursuant to Section 1412, courts in this Circuit have taken into consideration the widely-adopted factors set forth in the Fifth Circuit's *Commonwealth Oil* decision:

> (1) the proximity of creditors of every kind to the court;
> (2) the proximity of the debtor to the court;
> (3) the proximity of the witnesses necessary to the administration of the estate;
> (4) the location of the assets;

>   (5)   the economic administration of the estate; and
>   (6)   the necessity for ancillary administration if liquidation should result.

See *Commonwealth Oil*, 596 F.2d at 1247; *In re Seton Chase Associates, Inc.*, 141 B.R. 2, 5 (Bankr. E.D.N.Y. 1992); *In re FRG, Inc.*, 107 B.R. 461, 471 (Bankr. S.D.N.Y. 1989);[7] *Garden Manor*, 99 B.R. at 553; *In re Landmark Capital Co.*, 20 B.R. 220, 223-24 (S.D.N.Y. 1982); *In re Hadar Leasing International Co.*, 14 B.R. 819, 820 (S.D.N.Y. 1981).  In weighing the six *Commonwealth Oil* factors, the most important factor is "whether the requested transfer would promote the economic and efficient administration of the estate."  *Commonwealth Oil*, 596 F.2d at 1247; *see also Seton Chase*, 141 B.R. at 6 (the economic and efficient administration factor is a summary of the first four factors).

8.   The economic and efficient administration of the Debtors' chapter 11 cases would be promoted by continuing the administration of these cases in this District, not by transferring venue to the Southern District of Texas.  The principal reasons that maintaining venue in this District would promote the economic and efficient administration of the Debtors' chapter 11 cases are:  (i) the location of the Debtors' major creditors in this District, (ii) the principal assets of value are not derived from the fact that they may be in Houston, Texas, and (iii) given the fast pace of these cases, a change of venue at this time could prove extremely disruptive to the Debtors' reorganization efforts, particularly with respect to the proposed joint venture for a revived trading business.

### A.   Major Creditors Are In This District

9.   Although the Venue Motions stress that certain of the *Commonwealth Oil* factors noted above focus on the proximity of creditors and witnesses to the Court, these criteria

---

[7] In *FRG*, the court observed that the standards for determining the "interest of justice" and "convenience of the parties" overlap.  *FRG*, 107 B.R. at 471.

are not meant to be applied mechanically, but instead serve as a framework for a court's analysis of whether transferring venue is consistent with the goals of the efficient administration of a debtor's estate and judicial economy. *See Manville Forest Products*, 896 F.2d at 1390. The ultimate goal of these cases is to fashion consensual plans of reorganization for the Debtors. In that regard, it is noteworthy that despite efforts by the various Movants to manipulate the types and locations of creditors in an attempt to make the locus of the creditors appear to be in Houston, a review of the major claims makes clear that the Debtors through their creditors have substantial connections to this District. For example, approximately 99.8% in aggregate amount of the twenty largest unsecured claims against Enron Corp. are held by creditors, or on behalf of creditors by agents under bank credit facilities and indenture trustees for public debt, who maintain their global headquarters in this District. *See* Enron Corp. List of Creditors Holding 20 Largest Unsecured Claims, dated December 2, 2001 (the "Enron Corp. Creditors List").[8]

       10.     The composition of the Official Committee of Unsecured Creditors (the "Official Committee"), appointed by the Office of the United States Trustee to represent all creditors, wherever located, also reflects the fact that from the creditors' perspective the contacts to this District are strong, and certainly no less strong than they are to Houston. Six members of the Official Committee are U.S. institutions that maintain their global headquarters in this District or are non-U.S. institutions that maintain their U.S. headquarters or their principal U.S. work-out groups in this District.[9] Three members are located in Texas, and the other members

---

[8] The Enron Corp. Creditors List states that the thirteen largest unsecured claims are held by The Chase Manhattan Bank, Citibank, N.A., or The Bank of New York, without referring to the capacity in which such institutions hold claims. Each of these institutions, or its ultimate parent or successor, maintains its global headquarters in this District.

[9] Citigroup is a member of the Official Committee, maintains its headquarters in this District, and its New York-based global work-out group is administering Citigroup's claims against the Debtors. If these cases were transferred to another district, this New York-based group would continue to administer

are disbursed geographically throughout the United States and in one instance Canada (i.e. California, Maryland, Minnesota, Ohio, Oklahoma and Ontario, Canada).  *See* Amended Appointment of Committee of Unsecured Creditors, dated December 24, 2001.  In addition, the Co-Administrative Agents and to date the only lenders under the DIP Credit Facility maintain their global headquarters in this District.  The Co-Administrative Agents under the DIP Credit Facility, as well as the Official Committee, have retained counsel in this District who do not have offices in the Southern District of Texas.

    11. Given the ties that the Official Committee has to New York, and the fact that the counsel it selected is located in New York, it is clear that an important focal point for creditor decisions will be in New York, even if the venue were to be moved elsewhere.  Thus, a transfer of venue would only make the case more expensive and time consuming by having the Official Committee's counsel have to travel at considerable expense to Houston, and be out of contact during flights at critical times leading up to hearings.  Moreover, if these Cases are transferred, then the Debtors' estates would incur the additional cost of having the Official Committee and the Co-Administrative Agents for the DIP Credit Facility retain local counsel in that district.  Such a result could not possibly promote the economic and efficient administration of the Debtors' chapter 11 cases.

---

such claims. In addition, the following members of the Official Committee also are based, or maintain their principal U.S. work-out groups, in this District: ABN AMRO Bank, The Bank of New York, Credit Lyonnais, J.P. Morgan Chase & Co., and Westdeutsche Landesbank Girozentrale. The Movants fail to note that several large chapter 11 cases have been properly venued in the District of Delaware because a debtor was incorporated in Delaware. Upon information and belief, the largest creditors' ties to Delaware in those cases were not as strong as they are to this District in these cases.

### B.   Location Of Assets Not Unique To Houston

12.   As the *Commonwealth Oil* decision itself makes clear, the location of physical assets "is of little importance in a Chapter [11] proceeding where the goal is financial *Commonwealth Oil*, 596 F.2d at 1248. Even if, however, the location of assets were to be important, the focus put on the Debtors' tangible assets, such as real estate, by the various Movants is thoroughly misplaced. Such an approach may be appropriate with respect to the single-asset real estate cases cited in certain of the Venue Motions.[10] Focusing here on the Debtors' tangible assets (like their office buildings in Houston), however, is misleading because the Debtors' principal assets are the termination payments owing to them under various derivative contracts, the computer programs and intellectual property necessary to operate their wholesale energy trading and other commodity trading businesses, and equity interests in other companies located throughout the world.

13.   For example, with respect to termination payments that may be owing to the Debtors under derivative contracts, the ISDA Master Agreement anticipates (although parties can voluntarily deviate) that the parties will select either New York law or English law as the contract's governing law. *See* ISDA Master Agreement § 13(b). It is assumed that many, if not most, counterparties (especially the major financial institutions located in New York or elsewhere throughout the world) chose New York as the governing law. Undoubtedly, this Court

---

[10] For example, certain of the Venue Motions cite to the following singe asset real estate cases: *Seton Chase*, 141 B.R. 2 (apartment complex in Houston, Texas); *In re Pinehaven Associates*, 132 B.R. 982 (Bankr. E.D.N.Y. 1991) (motel in Southhaven, Mississippi); *In re Vienna Park Properties*, 128 B.R. 373 (Bankr. S.D.N.Y. 1991) (apartment complex in Vienna, Virginia); *In re Ocean Properties of Delaware, Inc.*, 95 B.R. 304 (Bankr. D. Del. 1988) (apartment complexes and hotels in Miami Beach, Florida); *In re Bell Tower Associates, Ltd.*, 86 B.R. 795 (Bankr. S.D.N.Y. 1988) (apartment complex in Irving, Texas); *Garden Manor*, 99 B.R. 551 (apartment complex in Sierra Vista, Arizona); *In re Pavilion Place Assocs.*, 88 B.R. 32 (Bankr. S.D.N.Y. 1988) (shopping center in Roseville, Minnesota); *In re Old Delmar Corp.*, 45 B.R. 883 (S.D.N.Y. 1985) (apartment complex in Houston, Texas).

is especially well positioned to resolve any disputes between a Debtor and its counterparty under an ISDA Master Agreement that is governed by New York law.  This Court is equally well positioned to resolve any disputes that may arise under the Debtors' primary credit facilities governed by New York law, such as the DIP Credit Facility, the 364-Day Revolving Facility, and the 5-Year Revolving Facility.

14.     In addition, this Court is already familiar with certain of the issues that will arise in connection with the Debtors or their non-Debtor subsidiaries selling their equity interests in non-Debtors, as it has already approved two such sales.[11]  This Court, therefore, is well positioned -- and certainly not worse positioned than a Court sitting in the Southern District of Texas -- to resolve the types of allocation issues that already have arisen in such sales, and in obtaining value for the equity in, and assets of, the nearly 3,500 non-debtor affiliates of the Debtors.

### C.     Transfer At This Time Would Harm The Estates

15.     Most disturbingly, transferring venue at this time may very well have an adverse effect on the Debtors' ability to rejuvenate their wholesale energy trading business as quickly as practicable pursuant to a prospective joint venture.  This Court has already approved the bidding and auction procedures for the proposed joint venture and the hearing on that matter is scheduled for Friday, January 11, 2002 at 10 a.m.  It has not been disputed that, given the nature of the energy trading business, it is critical to maximizing creditors' recoveries that this business, through a joint venture or similar arrangement, be revived as quickly as possible.  It is

---

[11] *See* Order Pursuant to Sections 105 and 363 of the Bankruptcy Code and Federal Bankruptcy Rule 6004 Approving the Sale of Partnership Interests By Enron Wind Development Corp., dated December 28, 2001; Order Authorizing and Approving Consent by Enron North America Corp. to the Sale of Substantially All the Assets of Enron Canada Power Corp. and Consummation of the Purchase and Sale Agreement for Certain Assets Under Power Purchase Agreements, dated December 28, 2001.

difficult to imagine that transferring the venue of these cases at this time would not have an adverse impact on this critical and time sensitive process.

## II. Venue Of Specific Adversary Proceedings Is Not Relevant

16. Another example of the improperly narrow focus proposed by the Venue Motions is the assertion that the venue of these cases should be transferred because a civil action against Enron involving Enron's 401(k) plan is allegedly pending in the U.S. District Court for the Southern District of Texas, and Enron's adversary proceeding against Dynegy Inc. should not be heard by this Court. *See* Motion to Transfer Venue, filed by Pamela M. Tittle et al., dated December 4, 2001, 2-4; Joint Motion for Change of Venue to Southern District of Texas, Houston Division, filed by Dynegy Inc. et al., dated December 6, 2001, ¶¶ 41 & 42. Given the immense scope of these cases, this parochial approach is not consistent with the "consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness[.]" *Manville Forest Products*, 896 F.2d at 1391. In any event, these parties will have an opportunity to argue that their particular disputes with the Debtors should not be adjudicated in this District. *See*, *e.g.*, *Enron Corp. v. Dynegy Inc. (In re Enron Corp.)*, Adv. Pro. No. 01-03626, Motion to Abstain or, in the Alternative, Transfer Venue, filed by Dynegy Inc. et al., dated December 10, 2001.

17. The goal of achieving successful plans of reorganization in these cases will be accomplished only through extensive negotiation sessions between the Debtors and creditors, and with respect to inter-creditor issues, among the creditors. Given the substantial concentration of substantial creditors in this District, the nature of the Debtors' assets, and the disruption that would accompany a transfer of the venue of these cases, Movants have failed to

satisfy their burden of demonstrating that transferring venue is consistent with either the interest of justice or the convenience of the parties.

### III.     *Iragorri* Supports Maintaining Venue In This District

18.     The Dynegy Memorandum of Law[12] puts significant weight on the Second Circuit's recent *forum non conveniens* case, *Iragorri v. United Technologies Corp.*, 2001 WL 1538928 (2d Cir. December 4, 2001).  Dynegy Memorandum of Law ¶¶ 8-11.  Dynegy admits that certain "conceptual transpositions" are required in order to apply *Iragorri* to the Debtors' chapter 11 cases.  *Id.* ¶ 11.  Putting aside the obvious differences between *Iragorri* and this dispute, Dynegy's "conceptual transpositions" lead to an absurd result that is not supported by Section 1408, Section 1412 or the reported decisions interpreting these statutes.

19.     In *Iragorri*, the question before the Second Circuit, sitting *en banc*, was "what degree of deference should the district court accord to a United States plaintiff's choice of a United States forum where that forum is different from the one in which the plaintiff resides." *Iragorri*, 2001 WL 1538928, at *1.  In analyzing this question, the Second Circuit noted the well-settled principle that, under the doctrine of *forum non conveniens*, the choice of a United States forum by a foreign plaintiff is entitled to less deference than is accorded to a U.S. plaintiff. *Id.* at *2 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)).  Dynegy's conceptual transposition is to turn Enron Corp. into the "foreign plaintiff" in order to convince this Court that the Debtors' choice of venue should not be accorded the deference ordinarily granted to debtors who have filed their chapter 11 cases in an appropriate district.

---

[12] Memorandum of Law in Support of Joint Motion For Change of Venue to Southern District of Texas, Houston Division, dated December 6, 2001, filed by Dynegy, Inc. and its affiliates, Statex Petroleum, Inc., Packaged Ice, Inc. and its affiliates, and EC Power (the "Dynegy Memorandum of

20.     The "conceptual transposition" attempted by Dynegy to apply *Iragorri* to these multiple debtor chapter 11 cases stretches *Iragorri* beyond even its applicability to *forum non conveniens* cases. In *Iragorri* the various plaintiffs had no contact with the forum selected -- they were all Columbian nationals resident in Florida that commenced an action in Connecticut. The logic of the Second Circuit's reasoning suggests that had one of the multiple plaintiffs in that case been a Connecticut resident then the Second Circuit almost certainly would have found venue to be proper.[13] Putting aside the fact that Dynegy, by moving under Section 1412 and not Section 1406, concedes that one of the Debtors (Enron Metals) is "domestic" to this jurisdiction, even if the "conceptual transposition" could withstand the applicability of statutes specific to bankruptcy cases (i.e. Section 1408 and Section 1412) -- which, as described below it cannot -- an attempt to argue that *Iragorri* is governing case law for these cases is wholly without merit. In fact, if one were to independently attempt Dynegy's "conceptual transposition," one would conclude that the Debtors' selection of forum is entitled to the deference accorded to "domestic

Debtors have properly filed their chapter 11 cases in this District pursuant to Section 1408, and none of the Movants has demonstrated that any of the Debtors selected this District in order to obtain an improper litigation advantage. Accordingly, the Debtors' selection of this District should be accorded the deference routinely granted to debtors who select a venue in accordance with Section 1408.

21.     Dynegy's "conceptual transposition" is simply inconsistent with Section 1408(2), Section 1412, and the structure of complex corporate groups. It is common for the various members of a corporate group to have domiciles, residences, and principal places of

---

[13] See *Iragorri*, 2001 WL 1538928, at *3 ("The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice.")

business that are located in different districts, and to have their principal assets in the U.S. located in different districts.  After one member of a corporate group has commenced its chapter 11 case in an appropriate district pursuant to Section 1408(1), Section 1408(2) authorizes its affiliates to commence their chapter 11 cases in that district.  Dynegy fails to attempt to explain how a court would divide members of a single corporate group that have all commenced their bankruptcy cases in the proper district into "domestic plaintiffs" and "foreign plaintiffs."  Dynegy's reasoning, therefore, if applied to a case where a creditor sought to transfer the venue of the bankruptcy cases of a geographically diverse corporate group pursuant to Section 1412, would lead to the absurd result that a court would be required to accord different levels of deference to the selection of the same venue by the "domestic plaintiff" whose venue is proper under Section 1408(1), on the one hand, and its affiliated "foreign plaintiffs," on the other hand, even though all of these debtors are members of the same corporate group.

22. Dynegy is further undermined by the fundamental differences between the doctrine of *forum non conveniens* and the language of Section 1412.  As noted above, the doctrine of *forum non conveniens* makes a clear distinction between the deference to be accorded to a U.S. citizen's choice of a forum and the same selection made by a non-U.S. citizen.  Section 1412 makes no such distinction.  Section 1408(1) permits a non-U.S. citizen to commence a bankruptcy case in the district in which its principal assets in the U.S. are located, and Section 1408(2) does not distinguish between U.S. and non-U.S. debtors.  Unlike *forum non conveniens*, Section 1412 does not instruct courts to grant less deference to the venue selection made by a non-U.S. citizen as compared to the same selection by a U.S. citizen.  Given this critical difference, it is almost superfluous to note that Section 1412 does not provide for a court to accord different levels of deference to a corporate group's forum selection depending on the

number of the group's members whose cases are properly venued pursuant to Section 1408(2), as opposed to Section 1408(1).

## **CONCLUSION**

The Movants have failed to demonstrate that the relief requested in the Venue Motions should be granted. Accordingly, the Venue Motions should be denied in their entirety.

Dated: New York, New York
       January 3, 2002

                                                        SHEARMAN & STERLING

                                                       By: /s/ Fredric Sosnick
                                                           Douglas P. Bartner (DB-2301)
                                                           Fredric Sosnick (FS-3326)

                                                       SHEARMAN & STERLING
                                                     599 Lexington Avenue
                                                     New York, NY 10022

                                                     Attorneys for Citibank, N.A. and
                                                      Citicorp USA, Inc.