UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>ENRON NORTH AMERICA CORP.,<br><br>　　　　　　　　　　Debtor. | Chapter 11<br><br>Case No.   01-16035 (AJG)<br><br>Filed: USBC - Southern District of New York<br>ENRON, Et Al.<br>01-16034 (CA)   0000011736 |

<u>PROOF OF CLAIM OF THE BANK OF NEW YORK, AS INDENTURE TRUSTEE
FOR THE HOLDERS OF ENRON CREDIT LINKED NOTES TRUST II NOTES</u>

1. Name and Address of Claimant:

   The Bank of New York, as Indenture Trustee and
   Collateral Agent, on the 7.375% Enron Credit Linked
   Notes Due 2006 of Enron Credit Linked Notes Trust II

   c/o Seward and Kissel LLP
   One Battery Park Plaza
   New York, New York 10004
   (212) 574-1200
   Attention: Ronald L. Cohen, Esq.



2. Amount of Claim:

   Not less than $502,253,472.22.

   BACKGROUND

3. The Bank of New York ("Claimant") is the indenture trustee (the "Indenture Trustee") for the Holders of the 7.375% Enron Credit Linked Notes Due 2006 of Enron Credit Linked Notes Trust II (the "Notes") issued pursuant to an Indenture dated as of May 24, 2001 (the "Indenture") between the United States Trust Company of New York, as indenture trustee ("US Trust") and Enron Credit Linked Notes Trust II, as issuer (the "Issuer"), and that certain Collateral Security Agreement dated as of May 24, 2001 (the "Collateral Security Agreement")

among the Issuer, US Trust, as indenture trustee, collateral agent (in such capacity, the "Collateral Agent"), account bank and securities intermediary, and Citibank, N.A., as swap counterparty ("Citibank"). Copies of the Indenture and the Collateral Security Agreement are attached hereto as Exhibit A and Exhibit B, respectively.

4. The Bank of New York succeeded to all of US Trust's rights and obligations under the Indenture and the Collateral Security Agreement.

5. The Claimant has been appointed Attorney-in-Fact on behalf of the Issuer under Section 3.4 of the Collateral Security Agreement and has the right to file this claim. The Claimant is filing this claim as Collateral Agent and as Indenture Trustee.

## TRANSACTIONS

6. The Issuer, pursuant to an Assignment and Settlement Agreement dated as of February 8, 2002 (the "Assignment Agreement") among the Issuer, Citibank and Delta Energy Corporation ("Delta"), acquired all right, title and interest to termination claims (the "Termination Claims") against Enron North America Corp. (the "Debtor") arising under (a) the ISDA Master Agreement, dated as of November 17, 1992, the schedule thereto (collectively, the "ENA/Citibank Master Agreement"), the Confirmation with a Trade Date and an Effective Date of December 22, 1999 (the "ENA/Citibank December 1999 Confirmation" and, together with the ENA/Citibank Master Agreement, the "ENA/Citibank December 1999 Swap") and the Confirmation with a Trade Date and an Effective Date of May 24, 2001 (the "ENA/Citibank May 2001 Confirmation" and, together with the ENA/Citibank Master Agreement, the "ENA/Citibank May 2001 Swap") by and between the Debtor and Citibank (collectively, the ENA/Citibank Master Agreement, ENA/Citibank December 1999 Confirmation, and ENA/Citibank May 2001 Confirmation are referred to herein as the "ENA/Citibank Swaps") and (b) the ISDA Master Agreement, dated as of November 18, 1999, the schedule thereto (collectively, the "ENA/Delta Master Agreement"), the Confirmation with a Trade Date and an Effective Date of December 22, 1999 (the "ENA/Delta December 1999 Confirmation" and, together with the ENA/Delta Master Agreement, the "ENA/Delta December 1999 Swap") and the Confirmation with a Trade Date and an Effective Date of May 24, 2001 (the "ENA/Delta May 2001 Confirmation" and, together with the ENA/Delta Master Agreement, the "ENA/Delta May 2001 Swap") by and between the Debtor and Delta (collectively, the ENA/ Delta Master Agreement, ENA/ Delta December 1999 Confirmation, and ENA/ Delta May 2001 Confirmation are referred to herein as the "ENA/ Delta Swaps"). Copies of the Assignment Agreement, the ENA/Citibank Swaps and the ENA/Delta Swaps are attached hereto as Exhibit C, Exhibit D and Exhibit E, respectively.

7. The Claimant is the Fiscal Agent and Securities Intermediary with respect to the Termination Claims under the (a) Fiscal Agency Agreement, dated as of May 24,

2001, (the "ENA/Citibank May 2001 Fiscal Agency Agreement") among the Claimant, Citibank, the Debtor and Enron Corp. and (b) Fiscal Agency Agreement, dated as of May 24, 2001, (the "ENA/Delta May 2001 Fiscal Agency Agreement") among the Claimant, Delta Energy Corporation ("Delta"), the Debtor and Enron Corp.. The ENA/Citibank May 2001 Fiscal Agency Agreement and the ENA/Delta May 2001 Fiscal Agency Agreement are collectively referred to herein as the "May 2001 Fiscal Agency Agreements." Copies of the ENA/Citibank May 2001 Fiscal Agency Agreement and the ENA/Delta May 2001 Fiscal Agency are attached hereto as Exhibit F and Exhibit G, respectively.

8. The Claimant is the Fiscal Agent and Securities Intermediary with respect to the Termination Claims under the (a) Fiscal Agency Agreement, dated as of November 18, 1999, (the "ENA/Citibank December 1999 Fiscal Agency Agreement") among the Claimant, Citibank, the Debtor and Enron Corp., as amended December 22, 1999, and (b) Fiscal Agency Agreement, dated as of November 18, 1999, (the "ENA/Delta December 1999 Fiscal Agency Agreement") among the Claimant, Delta Energy Corporation ("Delta"), the Debtor and Enron Corp., as amended December 22, 1999. The ENA/Citibank December 1999 Fiscal Agency Agreement and the ENA/Delta December 1999 Fiscal Agency Agreement are collectively referred to herein as the "December 1999 Fiscal Agency Agreements." Copies of the ENA/Citibank December 1999 Fiscal Agency Agreement and the ENA/Delta December 1999 Fiscal Agency are attached hereto as Exhibit H and Exhibit I, respectively.

## THE DEBTOR'S OBLIGATIONS

9. Pursuant to Section 7 of the ENA/Citibank May 2001 Confirmation and Section 1 of the Assignment Agreement, the Claimant, on behalf of the Issuer, is entitled to payment on a Termination Claim against the Debtor in the aggregate amount of $431,122,839.62 (the "ENA/Citibank May 2001 Termination Claim"). Pursuant to Section 11 of the ENA/Citibank Master Agreement, Claimant is entitled to reasonable out-of-pocket expenses, including legal fees.

10. Pursuant to Section 8 of the ENA/Delta May 2001 Confirmation and Section 1 of the Assignment Agreement, the Claimant, on behalf of the Issuer, is entitled to payment on a Termination Claim against the Debtor in the aggregate amount of $47,885,632.60 (the "ENA/Delta May 2001 Termination Claim"). Pursuant to Section 11 of the ENA/Delta Master Agreement, Claimant is entitled to reasonable out-of-pocket expenses, including legal fees.

11. Pursuant to Section 8 of the ENA/Citibank December 1999 Confirmation and Section 1 of the Assignment Agreement, the Claimant, on behalf of the Issuer, is entitled to payment on a Termination Claim against the Debtor in the aggregate amount of $880,335.37 (the "ENA/Citibank December 1999 Termination Claim"). Pursuant to Section 11 of the ENA/Citibank Master Agreement, Claimant is entitled to reasonable out-of-pocket expenses, including legal fees.

12. Pursuant to Section 7 of the ENA/Delta December 1999 Confirmation and Section 1 of the Assignment Agreement, the Claimant, on behalf of the Issuer, is entitled to payment on a Termination Claim against the Debtor in the aggregate amount of $22,364,664.63 (the "ENA/Delta December 1999 Termination Claim"). Pursuant to Section 11 of the ENA/Delta Master Agreement, Claimant is entitled to reasonable out-of-pocket expenses, including legal fees.

13. Neither this proof of claim nor the filing hereof in the Bankruptcy Court shall (1) prejudice, impair, waive or otherwise affect in any respect the respective rights of the Claimant, the Trust, or any creditor (a "Creditor") of the Trust to assert, prosecute and enforce any and all claims, causes of action, rights and remedies that the Claimant, the Trust or such Creditor has or may have, at law or in equity, against any third party, and such third party's affiliates, or any other person, relating to, without limitation, the Trust, the Notes, any and all swap transactions relating to the Trust or the Notes and the physical settlement thereof, all of which claims, causes of action, rights and remedies are hereby reserved, (2) constitute any election of remedies by the Claimant, the Trust or any Creditor or (3) constitute or be deemed to constitute a consent or submission by the Claimant, the Trust or any Creditor to the jurisdiction of the Bankruptcy Court with respect to such claims, causes of action, rights and remedies.

14. No judgment has been rendered on this claim.

15. No payments have been made to date on this claim.

16. Notices regarding this proof of claim should be sent to:

>   Ronald L. Cohen, Esq.
>   Seward & Kissel LLP
>   One Battery Park Plaza
>   New York, New York 10004
>   (212) 574-1200

and

>   The Bank of New York
>   101 Barclay Street, 8W
>   New York, NY 10286
>   Attn: Loretta A. Lundberg
>   (212) 815-5373

17. The Claimant expressly reserves its right to replace, amend or supplement this proof of claim, including, without limitation, to include claims against Debtor arising under law or equity, including but not limited to damages sustained by Claimant and/or the holders of the Notes arising out of, related to or in connection with any acts and/or omissions of the Debtor.

Name of Claimant:    The Bank of New York, as Indenture Trustee

Signature:

By: _____
Its Authorized Signatory

Dated:    October 10, 2002

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to five years, or both. 18 U.S.S §§ 152 and 3571.

02662.0104 #351934

EXECUTION COPY

NY3:#7264315

# INDENTURE

between

# ENRON CREDIT LINKED NOTES TRUST II,

and

# UNITED STATES TRUST COMPANY OF NEW YORK,
as Indenture Trustee

Dated as of May 24, 2001

Document Excerpted to Reduce Bulk

ASSIGNMENT AND SETTLEMENT AGREEMENT

Reference is made to (i) that certain ISDA Master Agreement, dated as of May 24, 2001, the schedule thereto (collectively, the "Master Agreement") and the Confirmation with a Trade Date and an Effective Date of May 24, 2001 (the "Confirmation" and, together with the Master Agreement, the "Swap") by and between Enron Credit Linked Notes Trust II (the "Trust") and Citibank, N.A. ("Citibank"), (ii) the Notice of Intended Physical Settlement dated January 31, 2002 (the "Notice of Intended Physical Settlement"), delivered by Citibank, (iii) that certain ISDA Master Agreement, dated as of November 17, 1992, the schedule thereto (collectively, the "Enron/Citibank Master Agreement") and (a) the Confirmation with a Trade Date and an Effective Date of December 22, 1999 (the "Enron/Citibank December 1999 Confirmation") and (b) the U.S. Dollar-Denominated Confirmation with a Trade Date and an Effective Date of May 24, 2001 (the "Enron/Citibank May 2001 Confirmation" and, together with the Enron/Citibank Master Agreement and the Enron/Citibank December 1999 Confirmation, the "Enron/Citibank Swaps") by and between Enron North America Corp. ("ENA") and Citibank, (iv) the Guaranty Agreement relating to the Enron/Citibank December 1999 Confirmation, dated as of December 22, 1999, entered into and made by Enron Corp., (v) the Guaranty Agreement relating to the Enron/Citibank May 2001 Confirmation, dated as of May 24, 2001, entered into and made by Enron Corp., (vi) the Fiscal Agency Agreement dated as of November 18, 1999 (as amended, the "Enron/Citibank November 1999 Fiscal Agency Agreement") among Citibank, ENA, Enron Corp. and United States Trust Company of New York, as fiscal agent and as securities intermediary, (vii) the U.S. Dollar-Denominated Fiscal Agency Agreement dated as of May 24, 2001 (the "Enron/Citibank May 2001 Fiscal Agency Agreement") among Citibank, ENA, Enron Corp. and United States Trust Company of New York, as fiscal agent and as securities intermediary, (viii) that certain ISDA Master Agreement, dated as of November 18, 1999, the schedule thereto (collectively, the "Enron/Delta Master Agreement") and (a) the Confirmation with a Trade Date and an Effective Date of December 22, 1999 (the "Enron/Delta December 1999 Confirmation") and (b) the U.S. Dollar-Denominated Confirmation with a Trade Date and an Effective Date of May 24, 2001 (the "Enron/Delta May 2001 Confirmation" and, together with the Enron/Delta Master Agreement and the Enron/Delta December 1999 Confirmation, the "Enron/Delta Swaps") by and between ENA and Delta Energy Corporation ("Delta"), (ix) the Guaranty Agreement relating to the Enron/Delta December 1999 Confirmation, dated as of December 22, 1999, entered into and made by Enron Corp., (x) the Guaranty Agreement relating to the Enron/Delta May 2001 Confirmation, dated as of May 24, 2001, entered into and made by Enron Corp., (xi) the Fiscal Agency Agreement dated as of November 18, 1999 (as amended, the "Enron/Delta November 1999 Fiscal Agency Agreement") among Delta, ENA, Enron Corp. and United States Trust Company of New York, as fiscal agent and as securities intermediary and (xii) the U.S. Dollar-Denominated Fiscal Agency Agreement dated as of May 24, 2001 (the "Enron/Delta May 2001 Fiscal Agency Agreement" and, together with the Enron/Citibank November 1999 Fiscal Agency Agreement, the Enron/Citibank May 2001 Fiscal Agency Agreement and the Enron/Delta November 1999 Fiscal Agency Agreement, the "Fiscal Agency Agreements") among Delta, ENA, Enron Corp. and United States Trust Company of New York, as fiscal agent and as securities intermediary. All capitalized terms used herein but not defined herein have the respective meanings ascribed thereto in the Swap and, if not used therein, have the respective meanings ascribed thereto in the applicable Fiscal Agency Agreement.

Citibank and the Trust hereby agree as follows:

1.      In accordance with the Physical Settlement Terms of the Swap and in settlement of Citibank's obligations under the Swap, Citibank hereby assigns to the Trust without recourse to Citibank, and the Trust hereby assumes from Citibank without recourse to Citibank, effective as of the

Assignment and Settlement Agreement

NY3:#7285247

date hereof (the "Effective Date"), the Citibank Portfolio. As used herein, the "Citibank Portfolio" means Citibank's Termination Claims and Citibank's rights and obligations as a Claim Holder under the Fiscal Agency Agreements in the following amounts:

| | | |
|---|---|---|
| (i) | Enron/Delta May 2001 Fiscal Agency Agreement: | $47,885,632.60 |
| (ii) | Enron/Citibank May 2001 Fiscal Agency Agreement: | $431,122,839.62 |
| (iii) | Enron/Delta November 1999 Fiscal Agency Agreement: | $22,364,664.63 |
| (iv) | Enron/Citibank November 1999 Fiscal Agency Agreement: | $880,335.37 |

2. In accordance with the Physical Settlement Terms of the Swap and in settlement of the Trust's obligations under the Swap, the Trust hereby assigns to Citibank without recourse to the Trust, and Citibank hereby assumes from the Trust without recourse to the Trust, effective as of the Effective Date, the Trust's rights and obligations under the Certificate of Deposit (Reference Number: E01-90872 CD-1) (the "Certificate of Deposit") payable by Citibank, N.A. to the Trust with a face amount equal to $550,000,000 (the "Trust Portfolio").

3. Each party hereto represents that (a) it owns the portfolio being assigned by it hereunder and that such portfolio is being assigned by it hereunder free and clear of any and all Liens (including, without limitation, any counterclaim, defense or right of set-off by or of the related obligor) and (b) this agreement has been duly authorized, executed and delivered on its behalf and constitutes its legal, valid and binding obligations enforceable in accordance with its terms, except as such enforceability may be limited by (i) bankruptcy, insolvency or other similar laws affecting creditors' rights generally and (ii) general principles of equity. Citibank hereby represents that the Termination Claims being assigned hereunder constitute Enron Deliverable Obligations. Citibank also (a) represents that (i) the Fiscal Agency Agreements being delivered hereunder are true and complete copies thereof and (ii) the Enron/Citibank Swaps and the Enron/Delta Swaps being delivered hereunder are true and complete copies of such Transactions (as defined in the applicable Confirmation) and (b) agrees to use its best efforts to provide original documents to the Trust if the Trust is required to produce such originals in a proceeding.

4. The Trust hereby acknowledges receipt of a copy of the Enron/Citibank Swaps, the Enron/Delta Swaps and the Fiscal Agency Agreements. Citibank hereby acknowledges receipt of the Certificate of Deposit.

5. From and after the Effective Date (i) the Trust shall be a party to, be bound by and have the rights and obligations as a Claim Holder under the Fiscal Agency Agreements to the extent of the interests assigned by Citibank under this Assignment and Settlement Agreement and (ii) Citibank shall relinquish its rights and be released from its obligations as a Claim Holder under the Fiscal Agency Agreements to the extent of the interests assigned by Citibank under this Assignment and Settlement Agreement.

6.  This Assignment and Settlement Agreement shall be delivered to the Claims Registrar for recording in the Claims Register pursuant to Section 5.03(c) of the Fiscal Agency Agreements.

7.  No provision of this Assignment and Settlement Agreement shall be deemed to waive any right, claim or cause of action that the Trust may have against Citibank for any action taken by Citibank under or pursuant to this Agreement that is not in accordance with or authorized by the terms of the Credit Swap or the Collateral Security Agreement, nor shall any provision of this Agreement be deemed to waive any right, claim or cause of action that Citibank may have against the Trust, the Collateral Agent, the Indenture Trustee, the Noteholders or any other person or entity for any action taken by it under or pursuant to this Agreement that is not in accordance with or authorized by the terms of the Credit Swap or the Collateral Security Agreement.

8.  This Assignment and Settlement Agreement shall be governed by and construed in accordance with the law of the State of New York.

9.  This Assignment and Settlement Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument and any of the parties hereto may execute this Assignment and Settlement Agreement by signing any such counterpart.

IN WITNESS WHEREOF, the parties hereto have caused this Assignment and Settlement Agreement to be executed by their duly authorized officers on this 8th day of February, 2002.

CITIBANK, N.A.

By _____
Title

Assignment and Settlement Agreement

NY3:#7285247

ENRON CREDIT LINKED NOTES TRUST II
by the Bank of New York, as Collateral Agent executing
as Attorney-In-Fact for Enron Credit Linked Notes
Trust II

By_____
Name:
Title:

Assignment and Settlement Agreement

NY3:#7285247

(Multicurrency—Cross Border)

# ISDA.



International Swap Dealers Association, Inc.

## MASTER AGREEMENT

dated as of November 17, 1992

|  |  |
|---|---|
| Citibank, N.A. and | Enron Capital & Trade Resources Corp., formerly known as Enron Risk Management Services Corp. |

have entered and/or anticipate entering into one or more transactions (each a "Transaction") that are or will be governed by this Master Agreement, which includes the schedule (the "Schedule"), and the documents and other confirming evidence (each a "Confirmation") exchanged between the parties confirming those Transactions.

Accordingly, the parties agree as follows:—

**1. Interpretation**

(a) *Definitions.* The terms defined in Section 14 and in the Schedule will have the meanings therein specified for the purpose of this Master Agreement.

(b) *Inconsistency.* In the event of any inconsistency between the provisions of the Schedule and the other provisions of this Master Agreement, the Schedule will prevail. In the event of any inconsistency between the provisions of any Confirmation and this Master Agreement (including the Schedule), such Confirmation will prevail for the purpose of the relevant Transaction.

(c) *Single Agreement.* All Transactions are entered into in reliance on the fact that this Master Agreement and all Confirmations form a single agreement between the parties (collectively referred to as this "Agreement"), and the parties would not otherwise enter into any Transactions.

**2. Obligations**

(a) *General Conditions.*

(i) Each party will make each payment or delivery specified in each Confirmation to be made by it, subject to the other provisions of this Agreement.

(ii) Payments under this Agreement will be made on the due date for value on that date in the place of the account specified in the relevant Confirmation or otherwise pursuant to this Agreement, in freely transferable funds and in the manner customary for payments in the required currency. Where settlement is by delivery (that is, other than by payment), such delivery will be made for receipt on the due date in the manner customary for the relevant obligation unless otherwise specified in the relevant Confirmation or elsewhere in this Agreement.

(iii) Each obligation of each party under Section 2(a)(i) is subject to (1) the condition precedent that no Event of Default or Potential Event of Default with respect to the other party has occurred and is continuing, (2) the condition precedent that no Early Termination Date in respect of the relevant Transaction has occurred or been effectively designated and (3) each other applicable condition precedent specified in this Agreement.

Copyright © 1992 by International Swap Dealers Association, Inc.

Document Excerpted to Reduce Bulk