UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: <br><br> ENRON NORTH AMERICA CORP., <br><br> Debtor. | ) ) ) Chapter 11 <br> ) ) ) Case No.   01-16035 (AJG) <br> ) ) ) Filed: USBC - Southern District of New York <br> ) ENRON, Et Al. <br> ) 01-16034 (CA)   0000011738 |

## PROOF OF CLAIM OF THE BANK OF NEW YORK, AS INDENTURE TRUSTEE FOR THE HOLDERS OF YOSEMITE SECURITIES TRUST I NOTES

1. Name and Address of Claimant:

    The Bank of New York, as Indenture Trustee and Collateral Agent, on the 8.25% Series 1999-A Linked Enron Obligations Due 2004 of Yosemite Securities Trust I

    c/o Seward and Kissel LLP
    One Battery Park Plaza
    New York, New York 10004
    (212) 574-1200
    Attention: Ronald L. Cohen, Esq.


RECEIVED OCT 11 2002 US BANKRUPTCY COURT SO. DIST. OF NEW YORK

2. Amount of Claim:

    Not less than $753,781,250.00.

### BACKGROUND

3. The Bank of New York ("Claimant") is the indenture trustee (the "Indenture Trustee") for the Holders of the 8.25% Series 1999-A Linked Enron Obligations Due 2004 of Yosemite Securities Trust I (the "Notes") issued pursuant to an Indenture dated as of November 18, 1999 (the "Indenture") between the United States Trust Company of New York, as indenture trustee ("US Trust") and Yosemite Securities Trust I, as issuer (the "Issuer"), and that certain Collateral

Security Agreement dated as of November 18, 1999 (the "Collateral Security Agreement") among the Issuer, US Trust, as indenture trustee, collateral agent (in such capacity, the "Collateral Agent"), account bank and securities intermediary, and Citibank, N.A., as swap counterparty ("Citibank"). Copies of the Indenture and the Collateral Security Agreement are attached hereto as Exhibit A and Exhibit B, respectively.

4. The Bank of New York succeeded to all of US Trust's rights and obligations under the Indenture and the Collateral Security Agreement.

5. The Claimant has been appointed Attorney-in-Fact on behalf of the Issuer under Section 3.4 of the Collateral Security Agreement and has the right to file this claim. The Claimant is filing this claim as Collateral Agent and as Indenture Trustee.

## TRANSACTIONS

6. The Issuer, pursuant to an Assignment and Settlement Agreement dated as of February 8, 2002 (the "Assignment Agreement") among the Issuer, Citibank and Delta Energy Corporation ("Delta"), acquired all right, title and interest to termination claims (the "Termination Claims") against Enron North America Corp. (the "Debtor") arising under (a) the ISDA Master Agreement, dated as of November 17, 1992, the schedule thereto (collectively, the "ENA/Citibank Master Agreement") and the Confirmation with a Trade Date and an Effective Date of December 22, 1999 (the "ENA/Citibank Confirmation" and, together with the ENA/Citibank Master Agreement, the "ENA/Citibank Swap") by and between ENA and Citibank, and (b) the ISDA Master Agreement, dated as of November 18, 1999, the schedule thereto (collectively, the "ENA/Delta Master Agreement") and the Confirmation with a Trade Date and an Effective Date of December 22, 1999 (the "ENA/Delta Confirmation" and, together with the ENA/Delta Master Agreement, the "ENA/Delta Swap") by and between the Debtor and Delta. Copies of the Assignment Agreement, the ENA/Citibank Swap and the ENA/Delta Swap are attached hereto as Exhibit C, Exhibit D and Exhibit E, respectively.

7. The Claimant is the Fiscal Agent and Securities Intermediary with respect to the Termination Claims under the (a) Fiscal Agency Agreement, dated as of November 18, 1999, (the "ENA/Citibank Fiscal Agency Agreement") among the Claimant, Citibank, Enron Corp. ("Enron") and the Debtor, as amended December 22, 1999, and (b) Fiscal Agency Agreement, dated as of November 18, 1999, (the "ENA/Delta Fiscal Agency Agreement") among the Claimant, Delta Energy Corporation ("Delta"), Enron and the Debtor, as amended December 22, 1999. The ENA/Citibank Fiscal Agency Agreement and the ENA/Delta Fiscal Agency Agreement are collectively referred to herein as the "Fiscal Agency Agreements." Copies of the ENA/Citibank Fiscal Agency Agreement and the ENA/Delta Fiscal Agency are attached hereto as Exhibit F and Exhibit G, respectively.

THE DEBTOR'S OBLIGATIONS

8. Pursuant to Section 8 of the ENA/Citibank Confirmation and Section 1 of the Assignment Agreement, the Claimant, on behalf of the Issuer, is entitled to payment on a Termination Claim against the Debtor in the aggregate amount of $28,547,227.01 (the "ENA/Citibank Termination Claim"). Pursuant to Section 11 of the ENA/Citibank Master Agreement, Claimant is entitled to reasonable out-of-pocket expenses, including legal fees.

9. Pursuant to Section 7 of the ENA/Delta Confirmation and Section 1 of the Assignment Agreement, the Claimant, on behalf of the Issuer, is entitled to payment on a Termination Claim against the Debtor in the aggregate amount of $725,234,022.99 (the "ENA/Delta Termination Claim"). Pursuant to Section 11 of the ENA/Delta Master Agreement, Claimant is entitled to reasonable out-of-pocket expenses, including legal fees.

10. Neither this proof of claim nor the filing hereof in the Bankruptcy Court shall (1) prejudice, impair, waive or otherwise affect in any respect the respective rights of the Claimant, the Trust, or any creditor (a "Creditor") of the Trust to assert, prosecute and enforce any and all claims, causes of action, rights and remedies that the Claimant, the Trust or such Creditor has or may have, at law or in equity, against any third party, and such third party's affiliates, or any other person, relating to, without limitation, the Trust, the Notes, any and all swap transactions relating to the Trust or the Notes and the physical settlement thereof, all of which claims, causes of action, rights and remedies are hereby reserved, (2) constitute any election of remedies by the Claimant, the Trust or any Creditor or (3) constitute or be deemed to constitute a consent or submission by the Claimant, the Trust or any Creditor to the jurisdiction of the Bankruptcy Court with respect to such claims, causes of action, rights and remedies.

11. No judgment has been rendered on this claim.

12. No payments have been made to date on this claim.

13. Notices regarding this proof of claim should be sent to:

>Ronald L. Cohen, Esq.
>Seward & Kissel LLP
>One Battery Park Plaza
>New York, New York 10004
>(212) 574-1200

and

>The Bank of New York
>101 Barclay Street, 8W
>New York, NY 10286

        Attn: Loretta A. Lundberg
        (212) 815-5373

14.   The Claimant expressly reserves its right to replace, amend or supplement this proof of claim, including, without limitation, to include claims against Debtor arising under law or equity, including but not limited to damages sustained by Claimant and/or the holders of the Notes arising out of, related to or in connection with any acts and/or omissions of the Debtor.

Name of Claimant:                      The Bank of New York, as Indenture Trustee

Signature:

                                         By: _____
                                           Its Authorized Signatory

Dated:                                 October 10, 2002

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to five years, or both. 18 U.S.S §§ 152 and 3571.

02662.0104 #347213

EXECUTION COPY

# YOSEMITE SECURITIES TRUST I

and

# UNITED STATES TRUST COMPANY OF NEW YORK,
as Indenture Trustee

# INDENTURE

Dated as of November 18, 1999

NY3:#7215294v28

Document Excerpted to Reduce Bulk

## ASSIGNMENT AND SETTLEMENT AGREEMENT

Reference is made to (i) that certain ISDA Master Agreement, dated as of November 18, 1999, the schedule thereto (collectively, the "Master Agreement") and the following Confirmations: (a) Amended and Restated Confirmation (Delta Energy Corporation-Promissory Note) with a Trade Date and an Effective Date of November 18, 1999; (b) Confirmation (Enron Debt Security) with a Trade Date and an Effective Date of November 18, 1999; and (c) Confirmation (Permitted Investments) with a Trade Date and an Effective Date of November 18, 1999 (the "Confirmations" and, together with the Master Agreement, the "Swaps") by and between Yosemite Securities Trust I (the "Trust") and Citibank, N.A. ("Citibank"), (ii) the Notice of Intended Physical Settlement dated January 31, 2002 (the "Notice of Intended Physical Settlement") delivered by Citibank, (iii) the Promissory Note dated November 18, 1999 (as amended, the "Delta Note") issued by Delta Energy Corporation ("Delta") to the Trust, (iv) the Enron Debt Security dated November 18, 1999 (the "Enron Debt Security") issued by Enron Corp. ("Enron") to the Trust, (v) the Agreement dated as of November 18, 1999 (the "Simultaneous Settlement Agreement") among the Trust, Citibank, as counterparty under the Swaps and as directing party, and United States Trust Company of New York, as collateral agent, (vi) that certain ISDA Master Agreement, dated as of November 17, 1992, the schedule thereto (collectively, the "Enron/Citibank Master Agreement") and the Confirmation with a Trade Date and an Effective Date of December 22, 1999 (the "Enron/Citibank Confirmation" and, together with the Enron/Citibank Master Agreement, the "Enron/Citibank Swap") by and between Enron North America Corp. ("ENA") and Citibank, (vii) the Guaranty Agreement relating to the Enron/Citibank Confirmation, dated as of December 22, 1999, entered into and made by Enron, (viii) the Fiscal Agency Agreement dated as of November 18, 1999 (as amended, the "Enron/Citibank Fiscal Agency Agreement") among Citibank, ENA, Enron and United States Trust Company of New York, as fiscal agent and securities intermediary, (ix) that certain ISDA Master Agreement, dated as of November 18, 1999, the schedule thereto (collectively, the "Enron/Delta Master Agreement") and the Confirmation with a Trade Date and an Effective Date of December 22, 1999 (the "Enron/Delta Confirmation", together with the Enron/Delta Master Agreement, the "Enron/Delta Swap" and the Enron/Delta Swap together with the Enron/Citibank Swap, the "Enron Swaps") by and between ENA and Delta, (x) the Guaranty Agreement relating to the Enron/Delta Confirmation, dated as of December 22, 1999, entered into and made by Enron and (xi) the Fiscal Agency Agreement dated as of November 18, 1999 (as amended, the "Enron/Delta Fiscal Agency Agreement" and, together with the Enron/Citibank Fiscal Agency Agreement, the "Fiscal Agency Agreements") among Delta, ENA, Enron and United States Trust Company of New York, as fiscal agent and securities intermediary. All capitalized terms used herein but not defined herein have the respective meanings ascribed thereto in the Swaps and, if not used therein, have the respective meanings ascribed thereto in the applicable Fiscal Agency Agreement.

WHEREAS, an Enron Bankruptcy has occurred due to Enron Corp.'s commencement of a Chapter 11 case under the Bankruptcy Code on December 2, 2001 in the United States Bankruptcy Court for the Southern District of New York;

WHEREAS, Citibank has elected to settle the Swaps with the Trust relating to the Delta Note by Physical Settlement, and accordingly has elected under the Swaps to deliver to the Trust certain claims under the Enron Swaps as a Deliverable Obligations in exchange for the Delta Note and the Enron Debt Security;

WHEREAS, Delta is entitled pursuant to Section 2(c) of the Delta Note to satisfy the Delta Note in kind by delivering certain claims under the Enron Swaps;

- 2 -

WHEREAS, Delta has elected to so satisfy in kind the Delta Note pursuant to the terms thereof;

NOW, THEREFORE, in consideration for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Delta, Citibank and the Trust hereby agree as follows:

Section 1. *Assignment of Termination Claims.*

(a) In accordance with the Simultaneous Settlement Agreement, Delta hereby assigns to the Trust without recourse to Delta, and the Trust hereby assumes from Delta without recourse to Delta, effective as of the date hereof (the "Effective Date"), all of Delta's right, title and interest in and to the following outstanding Termination Claims under the following Enron Swaps:

(i) Enron/Delta Swap:    $725,234,022.99

(ii) Enron/Citibank Swap:   $28,547,227.01.

The parties hereto hereby agree that Citibank shall be deemed to have Delivered to the Trust, in accordance with the Physical Settlement Terms of, and in settlement of Citibank's obligations under, the Swaps, the outstanding Termination Claims under the Enron Swaps as described in the preceding sentence.

(b) In accordance with the Simultaneous Settlement Agreement, Delta hereby assigns to Citibank without recourse to Delta, and Citibank hereby assumes from Delta without recourse to Delta, effective as of the Effective Date, all of Delta's right, title and interest in and to the following outstanding Termination Claims under the following Enron Swaps:

(i) Enron/Delta Swap:    $58,009,074.00

(ii) Enron/Citibank Swap:   $2,283,398.40.

(c) In accordance with the Simultaneous Settlement Agreement, upon the execution and delivery of this agreement by Delta, all of Delta's obligations under the Delta Note shall be terminated and discharged.

(d) In accordance with the Physical Settlement Terms of the Swaps and in settlement of the Trust's obligations under the Swaps, the Trust hereby (i) assigns to Citibank without recourse to the Trust, and Citibank hereby assumes from the Trust without recourse to the Trust, effective as of the Effective Date, all of the Trust's right, title and interest in and to the Enron Debt Security and (ii) delivers the Delta Note to Delta for cancellation.

Section 2. *Representations and Warranties.* Each party hereto hereby represents that (a) it owns the assets being assigned by it hereunder and that such assets are being assigned by it hereunder free and clear of any and all Liens (including, without limitation, any counterclaim, defense or right of set-off by or of the related obligor) and (b) this agreement has been duly authorized, executed and delivered on its behalf and constitutes its legal, valid and binding obligations enforceable in accordance

- 3 -

with its terms, except as such enforceability may be limited by (i) bankruptcy, insolvency or other similar laws affecting creditors' rights generally and (ii) general principles of equity. Citibank hereby represents that the Termination Claims being assigned hereunder constitute Deliverable Obligations. Citibank also (a) represents that (i) the Fiscal Agency Agreements being delivered hereunder are true and complete copies thereof and (ii) the Enron/Citibank Swap and the Enron/Delta Swap being delivered hereunder are true and complete copies of such Transactions (as defined in the applicable Confirmation) and (b) agrees to use its best efforts to provide original documents to the Trust if the Trust is required to produce such originals in a proceeding.

Section 3. *Delivery of Documents*. Each of the Trust and Citibank hereby acknowledges receipt of a copy of each of the Enron Swaps and the Fiscal Agency Agreements. Citibank hereby acknowledges receipt of the Enron Debt Security and Delta hereby acknowledges receipt of the Delta Note.

Section 4. *Rights and Obligations*. From and after the Effective Date (i) the Trust and Citibank shall be a party to, be bound by and have the rights and obligations as a Claim Holder under the Fiscal Agency Agreements to the extent of the interests assigned by Delta under this Assignment and Settlement Agreement and (ii) Delta shall relinquish its rights and be released from its obligations as a Claim Holder under the Fiscal Agency Agreements.

Section 5. *Delivery*. This Assignment and Settlement Agreement shall be delivered (a) to the Claims Registrar for recording in the Claims Register pursuant to Section 5.03(c) of the Fiscal Agency Agreements and (b) to Enron in accordance with the terms of the Enron Debt Security.

Section 6. *No Waiver*. No provision of this Assignment and Settlement Agreement shall be deemed to waive any right, claim or cause of action that the Trust may have against Citibank for any action taken by Citibank under or pursuant to this Agreement that is not in accordance with or authorized by the terms of the Credit Swap or the Collateral Security Agreement, nor shall any provision of this Agreement be deemed to waive any right, claim or cause of action that Citibank may have against the Trust, the Collateral Agent, the Indenture Trustee, the Noteholders or any other person or entity for any action taken by it under or pursuant to this Agreement that is not in accordance with or authorized by the terms of the Credit Swap or the Collateral Security Agreement.

Section 7. *Governing Law*. This Assignment and Settlement Agreement shall be governed by and construed in accordance with the law of the State of New York.

Section 8. *Miscellaneous*. This Assignment and Settlement Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument and any of the parties hereto may execute this Assignment and Settlement Agreement by signing any such counterpart.

IN WITNESS WHEREOF, the parties hereto have caused this Assignment and Settlement Agreement to be executed by their duly authorized officers on this 8th day of February, 2002.

CITIBANK, N.A.

By _____
Title

Assignment and Settlement Agreement

NY3:#7285070

YOSEMITE SECURITIES TRUST I
by the Bank of New York, as Collateral Agent executing
as Attorney-In-Fact for Yosemite Securities Trust I

By _____
Name:
Title:

Assignment and Settlement Agreement

NY3:#7285070



DELTA ENERGY CORPORATION

By_____
Title:

Authorized Signatory of the Sole Director

Assignment and Settlement Agreement

(Multicurrency—Cross Border)

# ISDA®
International Swap Dealers Association, Inc.

# MASTER AGREEMENT

dated as of .....November 17, 1992.....

Citibank, N.A. .................................... and Enron Capital & Trade Resources Corp., formerly known as Enron Risk Management Services Corp. ....................................

have entered and/or anticipate entering into one or more transactions (each a "Transaction") that are or will be governed by this Master Agreement, which includes the schedule (the "Schedule"), and the documents and other confirming evidence (each a "Confirmation") exchanged between the parties confirming those Transactions.

Accordingly, the parties agree as follows:—

1. **Interpretation**

(a)   *Definitions.* The terms defined in Section 14 and in the Schedule will have the meanings therein specified for the purpose of this Master Agreement.

(b)   *Inconsistency.* In the event of any inconsistency between the provisions of the Schedule and the other provisions of this Master Agreement, the Schedule will prevail. In the event of any inconsistency between the provisions of any Confirmation and this Master Agreement (including the Schedule), such Confirmation will prevail for the purpose of the relevant Transaction.

(c)   *Single Agreement.* All Transactions are entered into in reliance on the fact that this Master Agreement and all Confirmations form a single agreement between the parties (collectively referred to as this "Agreement"), and the parties would not otherwise enter into any Transactions.

2. **Obligations**

(a)   *General Conditions.*

(i) Each party will make each payment or delivery specified in each Confirmation to be made by it, subject to the other provisions of this Agreement.

(ii) Payments under this Agreement will be made on the due date for value on that date in the place of the account specified in the relevant Confirmation or otherwise pursuant to this Agreement, in freely transferable funds and in the manner customary for payments in the required currency. Where settlement is by delivery (that is, other than by payment), such delivery will be made for receipt on the due date in the manner customary for the relevant obligation unless otherwise specified in the relevant Confirmation or elsewhere in this Agreement.

(iii) Each obligation of each party under Section 2(a)(i) is subject to (1) the condition precedent that no Event of Default or Potential Event of Default with respect to the other party has occurred and is continuing, (2) the condition precedent that no Early Termination Date in respect of the relevant Transaction has occurred or been effectively designated and (3) each other applicable condition precedent specified in this Agreement.

Copyright © 1992 by International Swap Dealers Association, Inc.

# Document Excerpted to Reduce Bulk