UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>ENRON CORP.,<br><br>       Debtor. | Chapter 11<br><br>Case No.  01-16034 (AJG)<br><br>Filed: USBC - Southern District of New York<br>ENRON, Et Al.<br>01-16034 (CA)  0000011740 |

PROOF OF CLAIM OF THE BANK OF NEW YORK, AS INDENTURE TRUSTEE
FOR THE HOLDERS OF ENRON EURO CREDIT LINKED NOTES TRUST NOTES

1. Name and Address of Claimant:

  The Bank of New York, as Indenture Trustee and
  Collateral Agent, on the 6.50% Enron Euro Credit
  Linked Notes Due 2006 of Enron Euro Credit Linked
  Notes Trust

  c/o Seward and Kissel LLP
  One Battery Park Plaza
  New York, New York 10004
  (212) 574-1200
  Attention: Ronald L. Cohen, Esq.



2. Amount of Claim:

  Not less than $184,099,320.83 (€206,969,444.44)[1].

BACKGROUND

3. The Bank of New York ("Claimant") is the indenture trustee (the "Indenture
  Trustee") for the Holders of the 6.50% Enron Euro Credit Linked Notes Due 2006

---

[1] The Debtor's obligations are in Euros. The Trustee has shown U.S. Dollars based on the exchange rate as of November 30, 2002, and the use of that exchange rate is without prejudice to the Trustee's right to apply an exchange rate as of a different date.

of Enron Euro Credit Linked Notes Trust (the "Notes") issued pursuant to an Indenture dated as of May 24, 2001 (the "Indenture") between the United States Trust Company of New York, as indenture trustee ("US Trust") and Enron Euro Credit Linked Notes Trust, as issuer (the "Issuer"), and that certain Collateral Security Agreement dated as of May 24, 2001 (the "Collateral Security Agreement") among the Issuer, US Trust, as indenture trustee, collateral agent (in such capacity, the "Collateral Agent") and securities intermediary, Deutsche Bank A.G. London Branch, as account bank, and Citibank, N.A., as swap counterparty ("Citibank"). Copies of the Indenture and the Collateral Security Agreement are attached hereto as Exhibit A and Exhibit B, respectively.

4. The Bank of New York succeeded to all of US Trust's rights and obligations under the Indenture and the Collateral Security Agreement.

5. The Claimant has been appointed Attorney-in-Fact on behalf of the Issuer under Section 3.4 of the Collateral Security Agreement and has the right to file this claim. The Claimant is filing this claim as Collateral Agent and as Indenture Trustee.

## TRANSACTIONS

6. The Issuer, pursuant to an Assignment and Settlement Agreement dated as of February 8, 2002 (the "Assignment Agreement") among the Issuer, Citibank and Delta Energy Corporation ("Delta"), acquired (1) Citibank's rights and obligations under the Enron Debt Security dated May 24, 2001 (the "Enron Debt Security"), payable by Enron Corp (the "Debtor") to Citibank with an outstanding principal amount equal to €30,000,000.00 plus accrued and unpaid interest from May 24, 2001 to December 2, 2001 equal to €2,197,282.50 and (2) all right, title and interest to termination claims (the "Termination Claims") against Enron North America Corp. ("ENA") arising under (a) the ISDA Master Agreement, dated as of November 17, 1992, the schedule thereto (collectively, the "ENA/Citibank Master Agreement") and the Confirmation with a Trade Date and an Effective Date of May 24, 2001 (the "ENA/Citibank Confirmation" and, together with the ENA/Citibank Master Agreement, the "ENA/Citibank Swap") by and between ENA and Citibank, and (b) the ISDA Master Agreement, dated as of November 18, 1999, the schedule thereto (collectively, the "ENA/Delta Master Agreement") and the Confirmation with a Trade Date and an Effective Date of May 24, 2001 (the "ENA/Delta Confirmation" and, together with the ENA/Delta Master Agreement, the "ENA/Delta Swap") by and between ENA and Delta. Copies of the Enron Debt Security, the Assignment Agreement, the ENA/Citibank Swap and the ENA/Delta Swap are attached hereto as Exhibit C, Exhibit D, Exhibit E and Exhibit F respectively.

7. The Claimant is the Fiscal Agent and Securities Intermediary with respect to the Termination Claims under the (a) Fiscal Agency Agreement, dated as of May 24, 2001, (the "ENA/Citibank Fiscal Agency Agreement") among the Claimant, Citibank, the Debtor and ENA and (b) Fiscal Agency Agreement, dated as of May

        24, 2001, (the "ENA/Delta Fiscal Agency Agreement") among the Claimant, Delta Energy Corporation ("Delta"), the Debtor and ENA. The ENA/Citibank Fiscal Agency Agreement and the ENA/Delta Fiscal Agency Agreement are collectively referred to herein as the "Fiscal Agency Agreements." Copies of the ENA/Citibank Fiscal Agency Agreement and the ENA/Delta Fiscal Agency are attached hereto as Exhibit G and Exhibit H, respectively.

8.    The Debtor has entered into (a) the Guaranty Agreement, dated as of May 24, 2001, (the "ENA/Citibank Guaranty") guaranteeing all claims owed by ENA to each ENA Claim Holder (as such term is defined therein) under the ENA/Citibank Swap and (b) the Guaranty Agreement, dated as of May 24, 2001, (the "ENA/Delta Guaranty") guaranteeing all claims owed by ENA to each ENA Claim Holder (as such term is defined therein) under the ENA/Delta Swap. All rights under each Guaranty have been assigned to the Issuer pursuant to the Assignment Agreement. Copies of the ENA/Citibank Guaranty and the ENA/Delta Guaranty are attached hereto as Exhibit I and Exhibit J, respectively.

9.    The Debtor has entered into a letter agreement (the "Indemnification") dated as of May 24, 2001 under which it has agreed to indemnify and hold the Claimant harmless against any and all loss, liability, or expense (including reasonable attorneys' fees and expenses) incurred by the Claimant in connection with the Indenture and pay any fees, expenses and disbursements of the Claimant reasonably incurred in connection with the Transaction Documents (as such term is defined therein). The Indemnification is attached hereto as Exhibit K.

## THE DEBTOR'S OBLIGATIONS

10.    Pursuant to Section 7 of the ENA/Citibank Confirmation, the Claimant, on behalf of the Issuer, is entitled to payment on a Termination Claim against ENA in the aggregate amount of $146,581,991.65 (€164,791,446.49)[2] (the "ENA/Citibank Termination Claim").

11.    Pursuant to Section 2 of the ENA/Citibank Guaranty, the Claimant is entitled to payment from the Debtor of the ENA/Citibank Termination Claim and any and all expenses referred to under Section 11 of the ENA/Citibank Master Agreement incurred by the holders from time to time of the ENA Claims (as defined in the ENA/Citibank Guaranty), including, but not limited to, Claimant, in enforcing their respective rights under the ENA/Citibank Guaranty (including, without limitation, fees of legal counsel).

12.    Pursuant to Section 8 of the ENA/Delta Confirmation, the Claimant, on behalf of the Issuer, is entitled to payment on a Termination Claim against ENA in the aggregate amount of $8,877,846.39 (€9,980,715.45)[3] (the "ENA/Delta Termination Claim").

---

[2] *see* footnote 1 *supra*
[3] *see* footnote 1 *supra*

13. Pursuant to Section 2 of the ENA/Delta Guaranty, the Claimant is entitled to payment from the Debtor of the ENA/Delta Termination Claim and any and all expenses referred to under Section 11 of the ENA/Delta Master Agreement incurred by the holders from time to time of the ENA Claims (as defined in the ENA/Delta Guaranty), including, but not limited to, Claimant, in enforcing their respective rights under the ENA/Delta Guaranty (including, without limitation, fees of legal counsel).

14. Pursuant to the Enron Debt Security, the Claimant, on behalf of the Issuer, is entitled to payment of $28,639,482.78(€32,197,282.50)[4].

15. Pursuant to the Indemnification, Claimant is also entitled to its fees and expenses (including the fees and expenses of its counsel, Seward & Kissel LLP) that were incurred prior to December 2, 2001 and that continue to accrue.

16. Neither this proof of claim nor the filing hereof in the Bankruptcy Court shall (1) prejudice, impair, waive or otherwise affect in any respect the respective rights of the Claimant, the Trust, or any creditor (a "Creditor") of the Trust to assert, prosecute and enforce any and all claims, causes of action, rights and remedies that the Claimant, the Trust or such Creditor has or may have, at law or in equity, against any third party, and such third party's affiliates, or any other person, relating to, without limitation, the Trust, the Notes, any and all swap transactions relating to the Trust or the Notes and the physical settlement thereof, all of which claims, causes of action, rights and remedies are hereby reserved, (2) constitute any election of remedies by the Claimant, the Trust or any Creditor or (3) constitute or be deemed to constitute a consent or submission by the Claimant, the Trust or any Creditor to the jurisdiction of the Bankruptcy Court with respect to such claims, causes of action, rights and remedies.

17. No judgment has been rendered on this claim.

18. No payments have been made to date on this claim.

19. Notices regarding this proof of claim should be sent to:

    Ronald L. Cohen, Esq.
    Seward & Kissel LLP
    One Battery Park Plaza
    New York, New York 10004
    (212) 574-1200

and

    The Bank of New York
    101 Barclay Street, 8W
    New York, NY 10286

---

[4] see footnote 1 *supra*

      Attn: Loretta A. Lundberg
      (212) 815-5373

20.    The Claimant expressly reserves its right to replace, amend or supplement this proof of claim, including, without limitation, to include claims against Debtor arising under law or equity, including but not limited to damages sustained by Claimant and/or the holders of the Notes arising out of, related to or in connection with any acts and/or omissions of the Debtor.

Name of Claimant:                      The Bank of New York, as Indenture Trustee

Signature:

                                                    By: _____
                                                       Its Authorized Signatory

Dated:                                     October 10, 2002

**Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to five years, or both. 18 U.S.S §§ 152 and 3571.**

02662.0104 #351967

EXECUTION COPY

# INDENTURE

between

**ENRON EURO CREDIT LINKED NOTES TRUST,**

and

**UNITED STATES TRUST COMPANY OF NEW YORK,**
as Indenture Trustee

Dated as of May 24, 2001

NY3:#7263746

Document Excerpted to Reduce Bulk

## ENRON DEBT SECURITY

€30,000,000                                                             May 24, 2001

This Debt Security evidences a senior unsecured general obligation for borrowed money of Enron Corp. ("Enron"), is an instrument aggregating €30,000,000 in principal amount, is being issued by Enron to Citibank, N.A. ("Citibank"), on the date set forth above at the face amount hereof. Each term used in this instrument (this "Debt Security") and not otherwise defined herein shall have the meaning ascribed to such term in Appendix A to the Collateral Security Agreement of even date herewith (as at any time hereafter amended, restated or otherwise modified, the "Collateral Security Agreement"), among Enron Euro Credit Linked Notes Trust, a Delaware statutory business trust, Citibank, and United States Trust Company of New York, in two separate capacities, as Indenture Trustee and Collateral Agent, and Deutsche Bank A.G. London Branch, as Account Bank, and the Principles of Interpretation set forth in Appendix A to the Collateral Security Agreement shall apply to the terms defined herein and in such Appendix A.

For value received, Enron hereby promises to pay to the order of Citibank the principal sum of THIRTY MILLION EUROS (€30,000,000) as provided herein, and to pay interest on the unpaid principal amount of this Debt Security at the rate of 13.951% per annum from the date hereof until the first Interest Payment Date, and thereafter at a rate of 12.750% per annum until the principal amount of this Debt Security is paid in full.

Interest on this Debt Security is due and payable in arrears, at 11:00 a.m., Central European time, on each April 23 of each year (each, an "Interest Payment Date"), commencing on April 23, 2002; provided, that if any such Interest Payment Date is not a Business Day, interest stated to be payable on such Interest Payment Date shall be payable on the Business Day immediately preceding such Interest Payment Date. Interest payable on this Debt Security on any Interest Payment Date will be in an amount equal to the product of (a) the applicable interest rate specified above, (b) the number of days from and including the preceding Interest Payment Date to but excluding the applicable Interest Payment Date, calculated on a 30/360 day count basis (or, in the case of the first Interest Payment Date, from the Closing Date) divided by 360 and (c) the outstanding principal amount of this Debt Security as of the applicable Interest Payment Date.

Except as otherwise provided below, the payment of the principal of this Debt Security shall be made by Enron on, but not before April 23, 2006, provided, that if such date is not a Business Day, the principal amount stated to be payable on such date shall be payable on the Business Day immediately preceding such date.

The amounts payable on account of interest and principal under this Debt Security shall be paid by Enron to Deutsche Bank A.G. London Branch as paying agent for this Debt Security (the "Paying Agent") by wire transfer to the Enron Payment Account established and maintained by the Paying Agent under the Enron Debt Security Paying Agency Agreement dated as of the date hereof by and among Enron, Citibank and the Paying Agent (the "Paying Agency Agreement"). Following receipt of any payment hereunder the Paying Agent shall transmit such payment to Citibank in accordance with the Paying Agency Agreement.

NY3:#7267528v5

This Debt Security and the indebtedness evidenced hereby shall be binding upon and against Enron without regard to the validity or enforceability of any Transaction Document, any Trust Investment or any other Enron Deliverable Obligation, or any provision thereof, and Enron hereby waives any defense relating to the enforceability of any Transaction Document, any Trust Investment, or any other Enron Deliverable Obligation or any provision contained therein. Enron unconditionally waives the validity, legality, regularity, or enforceability of the Transaction Documents, the Trust Investments, and any other Enron Deliverable Obligations and Underlying Instruments and any other circumstance whatsoever (with or without notice to or knowledge of the obligors thereunder or Enron) that constitutes, or might be construed to constitute, an equitable or legal discharge of Enron with respect to its obligations hereunder, in bankruptcy or in any other instance, except any defense based on full payment of all amounts due hereunder.

The obligations of Enron set forth in this Debt Security shall not be subject to any requirement for the making of any demand or the taking of any action against any obligor under any Transaction Document, any Trust Investment, or any other Enron Deliverable Obligation or any other Person before the obligations hereunder may be enforced against Enron and such obligations shall remain in full force and effect without regard to, and shall not be released, discharged, or in any way affected by, any circumstance or condition whatsoever (whether or not Enron shall have knowledge or notice thereof or shall have assented thereto and notwithstanding the fact that no rights were reserved against Enron in connection therewith).

If Enron shall fail to pay any amount due and payable hereunder when due (and, if such failure is on account of the payment of interest hereunder, such failure shall remain uncured for five (5) days), the Paying Agent shall give notice of such failure in accordance with the Paying Agency Agreement and Citibank shall be entitled to declare the entire unpaid principal amount of this Debt Security, together with all accrued, unpaid interest thereon, immediately due and payable upon written notice to Enron. Except for such notice of acceleration, Enron waives all demand, presentment for payment, notice of non-payment, protest, notice of protest, notice of intent to accelerate maturity, and all other notice, filing of suit and diligence in collecting this Debt Security. Notwithstanding the foregoing, upon an Enron Bankruptcy, the principal of, and any unpaid interest on, this Debt Security shall automatically be due and payable immediately, without presentment, demand, protest, or other requirements of any kind, all of which are hereby expressly waived by Enron.

After acceleration of this Debt Security, all amounts paid hereunder shall be applied first to any past due amounts hereunder, next to any due and unpaid interest hereon, and the balance to the outstanding principal amount hereof.

Enron shall have no obligation or liability with respect to the application of any amounts paid by Enron hereunder.

Upon Enron's payment in full, and in accordance with the terms hereof, of all due and unpaid interest and other amounts due under this Debt Security and the entire principal amount hereof, Enron's obligations hereunder shall cease.

THE RIGHTS AND OBLIGATIONS OF ENRON AND CITIBANK IN RESPECT OF THIS DEBT SECURITY SHALL, PURSUANT TO NEW YORK GENERAL OBLIGATIONS

NY3:#7267528v5

LAW SECTION 5-1401, BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

ENRON AND CITIBANK EACH HEREBY IRREVOCABLY WAIVES TO THE FULLEST EXTENT PERMITTED BY LAW ALL RIGHT TO TRIAL BY JURY IN ANY PROCEEDING ARISING OUT OF OR RELATING DIRECTLY OR INDIRECTLY TO THIS DEBT SECURITY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). ENRON AND CITIBANK EACH HEREBY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE OTHER PARTY HAS REPRESENTED EXPRESSLY OR OTHERWISE, THAT SUCH PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTY HAVE BEEN INDUCED TO ISSUE AND ACCEPT THIS DEBT SECURITY BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS PARAGRAPH.

This Debt Security may not be amended except by an instrument in writing signed by each of Enron and Citibank or an assignee as set forth below, as the case may be. This Debt Security shall be binding upon and inure to the benefit of Enron and Citibank and their respective successors and permitted assigns. Enron shall not assign or otherwise transfer any of its rights or obligations under this Debt Security without the prior consent of Citibank. Prior to the date of effective delivery of a Credit Event Notice, Citibank shall not assign any of its rights under this Debt Security. After the date of effective delivery of a Credit Event Notice, Citibank may, at any time thereafter, without the consent of Enron, assign all or any portion of its rights under this Debt Security to one or more Persons and, upon Citibank giving notice of such assignment to Enron specifying the interest being assigned and the Person to which such interest is being assigned, and any assignee shall have the same rights of assignment with respect to its interest. Citibank and any such assignee shall be entitled to have this Debt Security subdivided by exchange of this Debt Security for debt securities of lesser denominations ("*Successor Debt Securities*") to the extent necessary to reflect any such assignment.

NY3:#7267528v5

      In connection with any partial assignment of this Debt Security, the parties agree to amend this Debt Security and any Successor Debt Securities as may be required to properly reflect any assignment and the interest of the parties with respect to this Debt Security and any Successor Debt Securities.

      ENRON CORP.

By: _____
Name: _____
Title: _____

NYJ:#7267528v5

In connection with any partial assignment of this Debt Security, the parties agree to amend this Debt Security and any Successor Debt Securities as may be required to properly reflect any assignment and the interest of the parties with respect to this Debt Security and any Successor Debt Securities.



ENRON CORP.

By: _____
Name: Dan O. Boyle
Title: Agent and Attorney in Fact

NY3:# 7267528

## ASSIGNMENT AND SETTLEMENT AGREEMENT

Reference is made to (i) that certain ISDA Master Agreement, dated as of May 24, 2001, the schedule thereto (collectively, the "Master Agreement") and the Confirmation with a Trade Date and an Effective Date of May 24, 2001 (the "Confirmation" and, together with the Master Agreement, the "Swap") by and between Enron Euro Credit Linked Notes Trust (the "Trust") and Citibank, N.A. ("Citibank"), (ii) the Notice of Intended Physical Settlement dated January 31, 2002 (the "Notice of Intended Physical Settlement"), delivered by Citibank, (iii) that certain ISDA Master Agreement, dated as of November 17, 1992, the schedule thereto (collectively, the "Enron/Citibank Master Agreement") and the Euro-Denominated Confirmation with a Trade Date and an Effective Date of May 24, 2001 (the "Enron/Citibank Confirmation" and, together with the Enron/Citibank Master Agreement, the "Enron/Citibank Swap") by and between Enron North America Corp. ("ENA") and Citibank, (iv) the Guaranty Agreement relating to the Enron/Citibank Confirmation, dated as of May 24, 2001, entered into and made by Enron Corp., (v) the Euro-Denominated Fiscal Agency Agreement dated as of May 24, 2001 (the "Enron/Citibank Fiscal Agency Agreement") among Citibank, ENA, Enron Corp., United States Trust Company of New York, as fiscal agent and Deutsche Bank A.G. London Branch, as account bank, (vi) that certain ISDA Master Agreement, dated as of November 18, 1999, the schedule thereto (collectively, the "Enron/Delta Master Agreement") and the Euro-Denominated Confirmation with a Trade Date and an Effective Date of May 24, 2001 (the "Enron/Delta Confirmation" and, together with the Enron/Delta Master Agreement, the "Enron/Delta Swap") by and between ENA and Delta Energy Corporation ("Delta"), (vii) the Guaranty Agreement relating to the Enron/Delta Confirmation, dated as of May 24, 2001, entered into and made by Enron Corp. and (viii) the Euro-Denominated Fiscal Agency Agreement dated as of May 24, 2001 (the "Enron/Delta Fiscal Agency Agreement" and, together with the Enron/Citibank Fiscal Agency Agreement, the "Fiscal Agency Agreements") among Delta, ENA, Enron Corp., United States Trust Company of New York, as fiscal agent and Deutsche Bank A.G. London Branch, as account bank. All capitalized terms used herein but not defined herein have the respective meanings ascribed thereto in the Swap and, if not used therein, have the respective meanings ascribed thereto in the applicable Fiscal Agency Agreement.

Citibank and the Trust hereby agree as follows:

1.  In accordance with the Physical Settlement Terms of the Swap and in settlement of Citibank's obligations under the Swap, Citibank hereby assigns to the Trust without recourse to Citibank, and the Trust hereby assumes from Citibank without recourse to Citibank, effective as of the date hereof (the "Effective Date"), the Citibank Portfolio. As used herein, the "Citibank Portfolio" means (i) Citibank's rights and obligations under the Enron Debt Security dated May 24, 2001 (the "Enron Debt Security"), payable by Enron Corp. to Citibank with an outstanding principal amount equal to €30,000,000 plus accrued and unpaid interest from May 24, 2001 to December 2, 2001 equal to €2,197,282.50 and (ii) Citibank's Termination Claims and Citibank's rights and obligations as a Claim Holder under the Fiscal Agency Agreements in the following amounts:

    (i) Enron/Delta Fiscal Agency Agreement:    €9,980,715.45

    (ii) Enron/Citibank Fiscal Agency Agreement:    €164,791,446.49

2.  In accordance with the Physical Settlement Terms of the Swap and in settlement of the Trust's obligations under the Swap, the Trust hereby assigns to Citibank without recourse to the Trust, and Citibank hereby assumes from the Trust without recourse to the Trust, effective as of the

- 2 -

Effective Date, the Trust's rights and obligations under the Certificate of Deposit (Reference Number: E01-90872CD-2) (the "Certificate of Deposit") payable by Citibank, N.A. to the Trust with a face amount equal to €222,500,000 (the "Trust Portfolio").

3. Each party hereto represents that (a) it owns the portfolio being assigned by it hereunder and that such portfolio is being assigned by it hereunder free and clear of any and all Liens (including, without limitation, any counterclaim, defense or right of set-off by or of the related obligor) and (b) this agreement has been duly authorized, executed and delivered on its behalf and constitutes its legal, valid and binding obligations enforceable in accordance with its terms, except as such enforceability may be limited by (i) bankruptcy, insolvency or other similar laws affecting creditors' rights generally and (ii) general principles of equity. Citibank hereby represents that the Enron Debt Security and the Termination Claims being assigned hereunder constitute Enron Deliverable Obligations. Citibank also (a) represents that (i) the Fiscal Agency Agreements being delivered hereunder are true and complete copies thereof and (ii) the Enron/Citibank Swap and the Enron/Delta Swap being delivered hereunder are true and complete copies of such Transaction (as defined in the applicable Confirmation) and (b) agrees to use its best efforts to provide original documents to the Trust if the Trust is required to produce such originals in a proceeding.

4. The Trust hereby acknowledges receipt of the Enron Debt Security and a copy of each of the Enron/Citibank Swap, the Enron/Delta Swap and the Fiscal Agency Agreements. Citibank hereby acknowledges receipt of the Certificate of Deposit.

5. From and after the Effective Date (i) the Trust shall be a party to, be bound by and have the rights and obligations as a Claim Holder under the Fiscal Agency Agreements to the extent of the interests assigned by Citibank under this Assignment and Settlement Agreement and (ii) Citibank shall relinquish its rights and be released from its obligations as a Claim Holder under the Fiscal Agency Agreements to the extent of the interests assigned by Citibank under this Assignment and Settlement Agreement.

6. This Assignment and Settlement Agreement shall be delivered (a) to the Claims Registrar for recording in the Claims Register pursuant to Section 5.03(c) of the Fiscal Agency Agreements and (b) to Enron in accordance with the terms of the Enron Debt Security.

7. No provision of this Assignment and Settlement Agreement shall be deemed to waive any right, claim or cause of action that the Trust may have against Citibank for any action taken by Citibank under or pursuant to this Agreement that is not in accordance with or authorized by the terms of the Credit Swap or the Collateral Security Agreement, nor shall any provision of this Agreement be deemed to waive any right, claim or cause of action that Citibank may have against the Trust, the Collateral Agent, the Indenture Trustee, the Noteholders or any other person or entity for any action taken by it under or pursuant to this Agreement that is not in accordance with or authorized by the terms of the Credit Swap or the Collateral Security Agreement.

8. This Assignment and Settlement Agreement shall be governed by and construed in accordance with the law of the State of New York.

- 3 -

9.  This Assignment and Settlement Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument and any of the parties hereto may execute this Assignment and Settlement Agreement by signing any such counterpart.

IN WITNESS WHEREOF, the parties hereto have caused this Assignment and Settlement Agreement to be executed by their duly authorized officers on this 8th day of February, 2002.

CITIBANK, N.A.

By _____
Title

Assignment and Settlement Agreement

NY3:#7283992

ENRON EURO CREDIT LINKED NOTES TRUST
by the Bank of New York, as Collateral Agent executing
as Attorney-In-Fact for Enron Euro Credit Linked Notes
Trust

By_____
Name:
Title:

Assignment and Settlement Agreement

NY3:#7283992

 

(Multicurrency—Cross Border)

# ISDA.
International Swap Dealers Association, Inc.

## MASTER AGREEMENT

dated as of November 17, 1992

Citibank, N.A. and Enron Capital & Trade Resources Corp., formerly known as Enron Risk Management Services Corp.

have entered and/or anticipate entering into one or more transactions (each a "Transaction") that are or will be governed by this Master Agreement, which includes the schedule (the "Schedule"), and the documents and other confirming evidence (each a "Confirmation") exchanged between the parties confirming those Transactions.

Accordingly, the parties agree as follows:—

1. **Interpretation**

(a) *Definitions.* The terms defined in Section 14 and in the Schedule will have the meanings therein specified for the purpose of this Master Agreement.

(b) *Inconsistency.* In the event of any inconsistency between the provisions of the Schedule and the other provisions of this Master Agreement, the Schedule will prevail. In the event of any inconsistency between the provisions of any Confirmation and this Master Agreement (including the Schedule), such Confirmation will prevail for the purpose of the relevant Transaction.

(c) *Single Agreement.* All Transactions are entered into in reliance on the fact that this Master Agreement and all Confirmations form a single agreement between the parties (collectively referred to as this "Agreement"), and the parties would not otherwise enter into any Transactions.

2. **Obligations**

(a) *General Conditions.*

(i) Each party will make each payment or delivery specified in each Confirmation to be made by it, subject to the other provisions of this Agreement.

(ii) Payments under this Agreement will be made on the due date for value on that date in the place of the account specified in the relevant Confirmation or otherwise pursuant to this Agreement, in freely transferable funds and in the manner customary for payments in the required currency. Where settlement is by delivery (that is, other than by payment), such delivery will be made for receipt on the due date in the manner customary for the relevant obligation unless otherwise specified in the relevant Confirmation or elsewhere in this Agreement.

(iii) Each obligation of each party under Section 2(a)(i) is subject to (1) the condition precedent that no Event of Default or Potential Event of Default with respect to the other party has occurred and is continuing, (2) the condition precedent that no Early Termination Date in respect of the relevant Transaction has occurred or been effectively designated and (3) each other applicable condition precedent specified in this Agreement.

Copyright © 1992 by International Swap Dealers Association, Inc.

Document Excerpted to Reduce Bulk