UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

ENRON NORTH AMERICA CORP.,

               Debtor.

Chapter 11

Case No.   01-16035 (AJG)



Filed: USBC - Southern District of New York
ENRON, Et Al.
01-16034 (CA)
0000011741

PROOF OF CLAIM OF THE BANK OF NEW YORK, AS INDENTURE TRUSTEE
FOR THE HOLDERS OF ENRON EURO CREDIT LINKED NOTES TRUST NOTES

1.    Name and Address of Claimant:

> The Bank of New York, as Indenture Trustee and
> Collateral Agent, on the 6.50% Enron Euro Credit
> Linked Notes Due 2006 of Enron Euro Credit Linked
> Notes Trust
>
> c/o Seward and Kissel LLP
> One Battery Park Plaza
> New York, New York 10004
> (212) 574-1200
> Attention: Ronald L. Cohen, Esq.

2.    Amount of Claim:

> Not less than $155,459,838.05 (€174,772,161.94)[1].

BACKGROUND

3.    The Bank of New York ("Claimant") is the indenture trustee (the "Indenture Trustee") for the Holders of the 6.50% Enron Euro Credit Linked Notes Due 2006

---

[1] The Debtor's obligations are in Euros. The Trustee has shown U.S. Dollars based on the exchange rate as of November 30, 2002, and the use of that exchange rate is without prejudice to the Trustee's right to apply an exchange rate as of a different date.

of Yosemite Securities Trust I (the "Notes") issued pursuant to an Indenture dated as of May 24, 2001 (the "Indenture") between the United States Trust Company of New York, as indenture trustee ("US Trust") and Enron Euro Credit Linked Notes Trust, as issuer (the "Issuer"), and that certain Collateral Security Agreement dated as of May 24, 2001 (the "Collateral Security Agreement") among the Issuer, US Trust, as indenture trustee, collateral agent (in such capacity, the "Collateral Agent"), and securities intermediary, Deutsche Bank A.G. London Branch, as account bank, and Citibank, N.A., as swap counterparty ("Citibank"). Copies of the Indenture and the Collateral Security Agreement are attached hereto as Exhibit A and Exhibit B, respectively.

4. The Bank of New York succeeded to all of US Trust's rights and obligations under the Indenture and the Collateral Security Agreement.

5. The Claimant has been appointed Attorney-in-Fact on behalf of the Issuer under Section 3.4 of the Collateral Security Agreement and has the right to file this claim. The Claimant is filing this claim as Collateral Agent and as Indenture Trustee.

## TRANSACTIONS

6. The Issuer, pursuant to an Assignment and Settlement Agreement dated as of February 8, 2002 (the "Assignment Agreement") among the Issuer, Citibank and Delta Energy Corporation ("Delta"), acquired all right, title and interest to termination claims (the "Termination Claims") against Enron North America Corp. (the "Debtor") arising under (a) the ISDA Master Agreement, dated as of November 17, 1992, the schedule thereto (collectively, the "ENA/Citibank Master Agreement") and the Confirmation with a Trade Date and an Effective Date of May 24, 2001 (the "ENA/Citibank Confirmation" and, together with the ENA/Citibank Master Agreement, the "ENA/Citibank Swap") by and between ENA and Citibank, and (b) the ISDA Master Agreement, dated as of November 18, 1999, the schedule thereto (collectively, the "ENA/Delta Master Agreement") and the Confirmation with a Trade Date and an Effective Date of May 24, 2001 (the "ENA/Delta Confirmation" and, together with the ENA/Delta Master Agreement, the "ENA/Delta Swap") by and between the Debtor and Delta. Copies of the Assignment Agreement, the ENA/Citibank Swap and the ENA/Delta Swap are attached hereto as Exhibit C, Exhibit D and Exhibit E, respectively.

7. The Claimant is the Fiscal Agent and Securities Intermediary with respect to the Termination Claims under the (a) Fiscal Agency Agreement, dated as of May 24, 2001, (the "ENA/Citibank Fiscal Agency Agreement") among the Claimant, Citibank, Enron Corp. ("Enron") and the Debtor and (b) Fiscal Agency Agreement, dated as of May 24, 2001, (the "ENA/Delta Fiscal Agency Agreement") among the Claimant, Delta Energy Corporation ("Delta"), Enron and the Debtor. The ENA/Citibank Fiscal Agency Agreement and the ENA/Delta Fiscal Agency Agreement are collectively referred to herein as the "Fiscal

Agency Agreements." Copies of the ENA/Citibank Fiscal Agency Agreement and the ENA/Delta Fiscal Agency are attached hereto as Exhibit F and Exhibit G, respectively.

## THE DEBTOR'S OBLIGATIONS

8. Pursuant to Section 7 of the ENA/Citibank Confirmation, the Claimant, on behalf of the Issuer, is entitled to payment on a Termination Claim against the Debtor in the aggregate amount of $146,581,991.65 (€164,791,446.49)[2] (the "ENA/Citibank Termination Claim"). Pursuant to Section 11 of the ENA/Citibank Master Agreement, Claimant is entitled to reasonable out-of-pocket expenses, including legal fees.

9. Pursuant to Section 8 of the ENA/Delta Confirmation, the Claimant, on behalf of the Issuer, is entitled to payment on a Termination Claim against the Debtor in the aggregate amount of $8,877,846.39 (€9,980,715.45)[3] (the "ENA/Delta Termination Claim"). Pursuant to Section 11 of the ENA/Delta Master Agreement, Claimant is entitled to reasonable out-of-pocket expenses, including legal fees.

10. Neither this proof of claim nor the filing hereof in the Bankruptcy Court shall (1) prejudice, impair, waive or otherwise affect in any respect the respective rights of the Claimant, the Trust, or any creditor (a "Creditor") of the Trust to assert, prosecute and enforce any and all claims, causes of action, rights and remedies that the Claimant, the Trust or such Creditor has or may have, at law or in equity, against any third party, and such third party's affiliates, or any other person, relating to, without limitation, the Trust, the Notes, any and all swap transactions relating to the Trust or the Notes and the physical settlement thereof, all of which claims, causes of action, rights and remedies are hereby reserved, (2) constitute any election of remedies by the Claimant, the Trust or any Creditor or (3) constitute or be deemed to constitute a consent or submission by the Claimant, the Trust or any Creditor to the jurisdiction of the Bankruptcy Court with respect to such claims, causes of action, rights and remedies.

11. No judgment has been rendered on this claim.

12. No payments have been made to date on this claim.

13. Notices regarding this proof of claim should be sent to:

> Ronald L. Cohen, Esq.
> Seward & Kissel LLP
> One Battery Park Plaza
> New York, New York 10004
> (212) 574-1200

---

[2] see footnote 1 *supra*
[3] see footnote 1 *supra*

and

>The Bank of New York
>101 Barclay Street, 8W
>New York, NY 10286
>Attn: Loretta A. Lundberg
>(212) 815-5373

14. The Claimant expressly reserves its right to replace, amend or supplement this proof of claim, including, without limitation, to include claims against Debtor arising under law or equity, including but not limited to damages sustained by Claimant and/or the holders of the Notes arising out of, related to or in connection with any acts and/or omissions of the Debtor.

Name of Claimant:                         The Bank of New York, as Indenture Trustee

Signature:                                By: _____
                                          Its Authorized Signatory

Dated:                                    October 10, 2002

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to five years, or both. 18 U.S.S §§ 152 and 3571.

02662.0104 #351935

EXECUTION COPY

# INDENTURE

between

**ENRON EURO CREDIT LINKED NOTES TRUST,**

and

**UNITED STATES TRUST COMPANY OF NEW YORK,**
as Indenture Trustee

Dated as of May 24, 2001

NY3:#7263746

# Document Excerpted to Reduce Bulk

## ASSIGNMENT AND SETTLEMENT AGREEMENT

Reference is made to (i) that certain ISDA Master Agreement, dated as of May 24, 2001, the schedule thereto (collectively, the "Master Agreement") and the Confirmation with a Trade Date and an Effective Date of May 24, 2001 (the "Confirmation" and, together with the Master Agreement, the "Swap") by and between Enron Euro Credit Linked Notes Trust (the "Trust") and Citibank, N.A. ("Citibank"), (ii) the Notice of Intended Physical Settlement dated January 31, 2002 (the "Notice of Intended Physical Settlement"), delivered by Citibank, (iii) that certain ISDA Master Agreement, dated as of November 17, 1992, the schedule thereto (collectively, the "Enron/Citibank Master Agreement") and the Euro-Denominated Confirmation with a Trade Date and an Effective Date of May 24, 2001 (the "Enron/Citibank Confirmation" and, together with the Enron/Citibank Master Agreement, the "Enron/Citibank Swap") by and between Enron North America Corp. ("ENA") and Citibank, (iv) the Guaranty Agreement relating to the Enron/Citibank Confirmation, dated as of May 24, 2001, entered into and made by Enron Corp., (v) the Euro-Denominated Fiscal Agency Agreement dated as of May 24, 2001 (the "Enron/Citibank Fiscal Agency Agreement") among Citibank, ENA, Enron Corp., United States Trust Company of New York, as fiscal agent and Deutsche Bank A.G. London Branch, as account bank, (vi) that certain ISDA Master Agreement, dated as of November 18, 1999, the schedule thereto (collectively, the "Enron/Delta Master Agreement") and the Euro-Denominated Confirmation with a Trade Date and an Effective Date of May 24, 2001 (the "Enron/Delta Confirmation" and, together with the Enron/Delta Master Agreement, the "Enron/Delta Swap") by and between ENA and Delta Energy Corporation ("Delta"), (vii) the Guaranty Agreement relating to the Enron/Delta Confirmation, dated as of May 24, 2001, entered into and made by Enron Corp. and (viii) the Euro-Denominated Fiscal Agency Agreement dated as of May 24, 2001 (the "Enron/Delta Fiscal Agency Agreement" and, together with the Enron/Citibank Fiscal Agency Agreement, the "Fiscal Agency Agreements") among Delta, ENA, Enron Corp., United States Trust Company of New York, as fiscal agent and Deutsche Bank A.G. London Branch, as account bank. All capitalized terms used herein but not defined herein have the respective meanings ascribed thereto in the Swap and, if not used therein, have the respective meanings ascribed thereto in the applicable Fiscal Agency Agreement.

Citibank and the Trust hereby agree as follows:

1. In accordance with the Physical Settlement Terms of the Swap and in settlement of Citibank's obligations under the Swap, Citibank hereby assigns to the Trust without recourse to Citibank, and the Trust hereby assumes from Citibank without recourse to Citibank, effective as of the date hereof (the "Effective Date"), the Citibank Portfolio. As used herein, the "Citibank Portfolio" means (i) Citibank's rights and obligations under the Enron Debt Security dated May 24, 2001 (the "Enron Debt Security"), payable by Enron Corp. to Citibank with an outstanding principal amount equal to €30,000,000 plus accrued and unpaid interest from May 24, 2001 to December 2, 2001 equal to €2,197,282.50 and (ii) Citibank's Termination Claims and Citibank's rights and obligations as a Claim Holder under the Fiscal Agency Agreements in the following amounts:

(i) Enron/Delta Fiscal Agency Agreement:    €9,980,715.45

(ii) Enron/Citibank Fiscal Agency Agreement:    €164,791,446.49

2. In accordance with the Physical Settlement Terms of the Swap and in settlement of the Trust's obligations under the Swap, the Trust hereby assigns to Citibank without recourse to the Trust, and Citibank hereby assumes from the Trust without recourse to the Trust, effective as of the

- 2 -

Effective Date, the Trust's rights and obligations under the Certificate of Deposit (Reference Number: E01-90872CD-2) (the "<u>Certificate of Deposit</u>") payable by Citibank, N.A. to the Trust with a face amount equal to €222,500,000 (the "<u>Trust Portfolio</u>").

3. Each party hereto represents that (a) it owns the portfolio being assigned by it hereunder and that such portfolio is being assigned by it hereunder free and clear of any and all Liens (including, without limitation, any counterclaim, defense or right of set-off by or of the related obligor) and (b) this agreement has been duly authorized, executed and delivered on its behalf and constitutes its legal, valid and binding obligations enforceable in accordance with its terms, except as such enforceability may be limited by (i) bankruptcy, insolvency or other similar laws affecting creditors' rights generally and (ii) general principles of equity. Citibank hereby represents that the Enron Debt Security and the Termination Claims being assigned hereunder constitute Enron Deliverable Obligations. Citibank also (a) represents that (i) the Fiscal Agency Agreements being delivered hereunder are true and complete copies thereof and (ii) the Enron/Citibank Swap and the Enron/Delta Swap being delivered hereunder are true and complete copies of such Transaction (as defined in the applicable Confirmation) and (b) agrees to use its best efforts to provide original documents to the Trust if the Trust is required to produce such originals in a proceeding.

4. The Trust hereby acknowledges receipt of the Enron Debt Security and a copy of each of the Enron/Citibank Swap, the Enron/Delta Swap and the Fiscal Agency Agreements. Citibank hereby acknowledges receipt of the Certificate of Deposit.

5. From and after the Effective Date (i) the Trust shall be a party to, be bound by and have the rights and obligations as a Claim Holder under the Fiscal Agency Agreements to the extent of the interests assigned by Citibank under this Assignment and Settlement Agreement and (ii) Citibank shall relinquish its rights and be released from its obligations as a Claim Holder under the Fiscal Agency Agreements to the extent of the interests assigned by Citibank under this Assignment and Settlement Agreement.

6. This Assignment and Settlement Agreement shall be delivered (a) to the Claims Registrar for recording in the Claims Register pursuant to Section 5.03(c) of the Fiscal Agency Agreements and (b) to Enron in accordance with the terms of the Enron Debt Security.

7. No provision of this Assignment and Settlement Agreement shall be deemed to waive any right, claim or cause of action that the Trust may have against Citibank for any action taken by Citibank under or pursuant to this Agreement that is not in accordance with or authorized by the terms of the Credit Swap or the Collateral Security Agreement, nor shall any provision of this Agreement be deemed to waive any right, claim or cause of action that Citibank may have against the Trust, the Collateral Agent, the Indenture Trustee, the Noteholders or any other person or entity for any action taken by it under or pursuant to this Agreement that is not in accordance with or authorized by the terms of the Credit Swap or the Collateral Security Agreement.

8. This Assignment and Settlement Agreement shall be governed by and construed in accordance with the law of the State of New York.

<u>Assignment and Settlement Agreement</u>

NY3:#7283992

- 3 -

9.  This Assignment and Settlement Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument and any of the parties hereto may execute this Assignment and Settlement Agreement by signing any such counterpart.

IN WITNESS WHEREOF, the parties hereto have caused this Assignment and Settlement Agreement to be executed by their duly authorized officers on this 8th day of February, 2002.

CITIBANK, N.A.

By _____
Title

Assignment and Settlement Agreement

NY3:#7283992

ENRON EURO CREDIT LINKED NOTES TRUST
by the Bank of New York, as Collateral Agent executing
as Attorney-In-Fact for Enron Euro Credit Linked Notes
Trust

By_____
Name:
Title:

 

(Multicurrency—Cross Border)

# ISDA®
International Swap Dealers Association, Inc.

# MASTER AGREEMENT

dated as of November 17, 1992

Citibank, N.A. and Enron Capital & Trade Resources Corp., formerly known as Enron Risk Management Services Corp.

have entered and/or anticipate entering into one or more transactions (each a "Transaction") that are or will be governed by this Master Agreement, which includes the schedule (the "Schedule"), and the documents and other confirming evidence (each a "Confirmation") exchanged between the parties confirming those Transactions.

Accordingly, the parties agree as follows:—

1.  Interpretation

(a)   *Definitions.* The terms defined in Section 14 and in the Schedule will have the meanings therein specified for the purpose of this Master Agreement.

(b)   *Inconsistency.* In the event of any inconsistency between the provisions of the Schedule and the other provisions of this Master Agreement, the Schedule will prevail. In the event of any inconsistency between the provisions of any Confirmation and this Master Agreement (including the Schedule), such Confirmation will prevail for the purpose of the relevant Transaction.

(c)   *Single Agreement.* All Transactions are entered into in reliance on the fact that this Master Agreement and all Confirmations form a single agreement between the parties (collectively referred to as this "Agreement"), and the parties would not otherwise enter into any Transactions.

2.   Obligations

(a)   *General Conditions.*

(i)   Each party will make each payment or delivery specified in each Confirmation to be made by it, subject to the other provisions of this Agreement.

(ii)   Payments under this Agreement will be made on the due date for value on that date in the place of the account specified in the relevant Confirmation or otherwise pursuant to this Agreement, in freely transferable funds and in the manner customary for payments in the required currency. Where settlement is by delivery (that is, other than by payment), such delivery will be made for receipt on the due date in the manner customary for the relevant obligation unless otherwise specified in the relevant Confirmation or elsewhere in this Agreement.

(iii)   Each obligation of each party under Section 2(a)(i) is subject to (1) the condition precedent that no Event of Default or Potential Event of Default with respect to the other party has occurred and is continuing, (2) the condition precedent that no Early Termination Date in respect of the relevant Transaction has occurred or been effectively designated and (3) each other applicable condition precedent specified in this Agreement.

Copyright © 1992 by International Swap Dealers Association, Inc.

Document Excerpted to Reduce Bulk