ORIGINAL

FORM B10 (Official Form 10) (4/98)    *Citibank NA Commodity Swap and Note Claims* II

| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

| Name of Debtor ENRON CORP. | Case Number 01-16034 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):
CITIBANK, N.A.

Name and address where notices should be sent:
Citibank, N.A.
250 West Street, 8th Floor
New York, New York, 10013
Attention: Peter Reynolds

With a copy to:
Paul, Weiss, Rifkind, Wharton & Garrison
1285 Avenue of the Americas
New York, N.Y. 10019-6064
Attn: Douglas R. Davis

Telephone number: (212) 373-3000

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Filed: USBC - Southern District of New York
ENRON, Et Al.
01-16034 (CA)    0000012107

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor: (*see attached*)

Check here if this claim
☐ Replaces / ☐ amends a previously filed claim, dated:

| 1. Basis for Claim | |
|---|---|
| ☐ Goods sold | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a) |
| ☐ Services performed | ☐ Wages, salaries, and compensation (fill out below) |
| ☐ Money loaned | Your SS #: |
| ☐ Personal injury/wrongful death | Unpaid compensation for services performed |
| ☐ Taxes | From          to |
| ☑ Other (*see attached*) | |

| 2. Date debt was incurred: (*see attached*) | 3. If court judgment, date obtained: |
|---|---|

4. Total Amount of Claim at Time Case Filed: $ In an amount no less than $30,642,060.86
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges. (*see attached*)

5. Secured Claim.
☑ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate ☐ Motor Vehicle
☑ Other (*right of setoff*)
Value of Collateral: (*see attached*)

Amount of arrearage and other charges at time case filed included in secured claim, if any:
$ (*see attached*)

6. Unsecured Priority Claim.
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4,300),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
☐ Up to $1,950* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child –11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/01 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

THIS SPACE IS FOR COURT USE ONLY

7. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this claim.

8. **Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

9. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date:
October 11, 2002 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):
Peter Reynolds, Director | |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## ATTACHMENT TO PROOF OF CLAIM
## OF CITIBANK, N.A.

1.      On December 2, 2001 (the "Petition Date"), Enron Corp. (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

2.      As of the Petition Date, the Debtor was, and still is, indebted and/or liable to Citibank, N.A. ("Claimant") for no less than $30,642,060.86 in regard of the transactions and/or matters discussed herein.

3.      Claimant is the holder of a certain promissory note issued by Debtor dated February 23, 2000 in the original principal amount of £15,500,000.00 (the "Promissory Note"), a copy of which is attached hereto as Exhibit A.  As of the petition date, Debtor was, and still is, indebted and/or liable to Claimant for the full amounts due in respect of the Promissory Note, including unpaid interest, fees and expenses accrued through the Petition Date, in an amount no less than £17,157,054.13 or, U.S. $ 24,441,081.46.[1]

4.      In addition, on February 23, 2000, to induce Claimant to extend financial accommodation to the Debtor's affiliated corporation, Enron North America Corp. ("ENA"), the Debtor executed and delivered a guaranty of payment (the "Guaranty") of any and all obligations and indebtedness due and owing to Claimant arising under certain commodity derivative transactions.  As of the Petition Date, ENA

---

[1]   The original amount of such claims were calculated in British Pounds Sterling in the amount of £ 17,157,054.13.  Claimant converted the amounts owed for purposes of filing this Proof of Claim according to the following exchange ratio: GBP/USD 1.42455.  Claimant reserves the right to assert additional amounts owed in dollars depending on the actual exchange ratio employed by any court to liquidate Claimant's claims hereunder.

was, and still is, indebted to Claimant for the aggregate amount of $6,200,979.40, as more particularly set forth below. By reason of the Guaranty, the Debtor, in addition to its indebtedness to Claimant set forth in Paragraph 3 above, is indebted to Claimant for said sum of $6,200,979.40.

### *ENA's Liability for which Debtor is Liable as Guarantor*

5.    Claimant is a swap participant with ENA and related entities under certain commodity swaps and related agreements (the "Citibank Swap Agreements"). Claimant therefore has contractual and statutory rights to offset and net out all termination values and payment amounts arising under or in connection with the swap transactions. In addition, Claimant has contractual rights of recovery against ENA for settlement payments owing under swaps, assigned to Claimant, but to which Claimant was not a direct participant.

6.    Claimant assigned certain claims under the Citibank Swap Agreements to non-Citibank entities and also received certain claims from other swap counterparties under other commodity swaps and related agreements ("Other Swap Agreements" and, together with the Citibank Swap Agreements, the "Swap Agreements").[2] All claims held by Citibank are referred to as the "Retained Claims." ENA owes Claimant for Retained Claims as follows:

---

[2]    Due to the voluminous nature of the documents supporting Claimant's claim, they have not been attached to this Proof of Claim. Copies of the documents are available upon request to counsel for Claimant.

(a)    The swap confirmed on February 23, 2000 between Debtor and
Delta Energy Corporation (the "ENA / Delta Swap"), of which Claimant retained claims
against Debtor totaling $4,045,581.55[3];

(b)    The swap confirmed on February 23, 2000 between Claimant and
Debtor (the "ENA / Citibank Swap"), of which Claimant retained claims against Debtor
totaling $2,155,397.85.[4]

7.    ENA accordingly owes Claimant no less than $6,200,979.40 in
regard of the transactions set forth above, in addition to default interest, fees, costs and
expenses not yet liquidated. By reason of the Guaranty, Debtor owes Claimant for said
same amount.

8.    Claimant hereby reserves the right to assert against Debtor in full
the aggregate settlement amounts Debtor owes under each transaction described herein,
and all fees, costs, and expenses related thereto including default interest, as if such
claims had not been assigned by Citibank in the event the assignment of its claims to non-
Citibank entities are in any manner determined invalid or otherwise infirm, either as a

---

[3]    The original amount of such claims were calculated in British Pounds Sterling in the
amount of £ 2,839,837.37. Claimant converted the amounts owed for purposes of
filing this Proof of Claim according to the following exchange ratio: GBP/USD
1.42455. Claimant reserves the right to assert additional amounts owed in dollars
depending on the actual exchange ratio employed by any court to liquidate Claimant's
claims hereunder.

[4]    The original amount of such claims were calculated in British Pounds Sterling in the
amount of £ 1,513,101.73. Claimant converted the amounts owed for purposes of
filing this Proof of Claim according to the following exchange ratio: GBP/USD
1.42455. Claimant reserves the right to assert additional amounts owed in dollars
depending on the actual exchange ratio employed by any court to liquidate Claimant's
claims hereunder.

function of the avoidance provisions of the Bankruptcy Code, pursuant to any other federal or state law, or otherwise.

9.    Claimant reserves the right to claim as of yet undetermined amounts against Debtor for contractual, statutory or common law rights of indemnity and contribution, if any, for and against any and all losses, claims, damages or liabilities, joint or several, and legal or other expenses reasonably incurred in connection with the Swap Agreements.

10.    In addition to the Debtor's obligations to Claimant as set forth above, Claimant is entitled to recover from the Debtor all costs and expenses, including reasonable attorneys' fees and disbursements, incurred in connection with Claimant's enforcement of its rights under the claims set forth herein.   The amount of such costs and expenses cannot be reasonably calculated or estimated at this time, but Claimant does not waive its rights thereto by not currently stating a specific amount.

11.    Claimant reserves the right to claim that all or any portion of the costs and expenses incurred by it after the Petition Date are administrative expenses entitled to a first priority under section 507(a)(1) of the Bankruptcy Code.

12.    In addition to the foregoing, the Debtor may be liable to Claimant for interest accruing after the Petition Date on the claims described herein to the extent such interest is allowable under the Bankruptcy Code.

13.    Claimant has filed this Proof of Claim under compulsion of the bar date established in this chapter 11 case and to protect Claimant from forfeiture of its claim against the Debtor by reason of such bar date.  Claimant has filed this Proof of Claim only with respect to claims arising out of the transactions and matters described

herein.  Claimant and/or its affiliates may file additional proofs of claims against the

Debtor, and/or one or more other debtors, with respect to claims arising out of other

transactions or matters.  In addition, Claimant may file proofs of claims against one or

more other debtors who have guaranteed, or are otherwise obligated with respect to, the

claims covered hereby.  Claimant reserves the right to amend and/or supplement this

Proof of Claim at any time, including after any bar date, in any manner, including for

purposes of fixing the amount of the claim described above together with interest, fees

and expenses due Claimant, and/or to file additional proofs of claim for any additional

claim which may be based on the same or additional documents or grounds of liability.

14.    In addition to this Proof of Claim, Claimant has filed a proof of

claim against ENA for the claims described above which are the subject of Debtor's

guaranty liability to Claimant.  Claimant has also filed a separate proof of claim against

the Debtor as guarantor of Debtor's contractual obligations, including other ENA

liabilities, generally.

15.    The filing of this Proof of Claim is not and shall not be deemed or

construed as: (a) a waiver or release of Claimant's rights against any person, entity, or

property, or a waiver of the right to compel the Debtor to return property of Claimant

currently in the possession of the Debtor; (b) a consent by Claimant to the jurisdiction of

this Court or any other court with respect to proceedings, if any, commenced in any case

against or otherwise involving Claimant; (c) a waiver or release of Claimant's right to

trial by jury in this Court or any other court in any proceeding as to any and all matters so

triable herein, whether or not the same be designated legal or private rights or in any case,

controversy, or proceeding related hereto, notwithstanding the designation or not of such

matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States Constitution; (d) a consent by Claimant to a jury trial in this Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy, or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise; (e) a waiver or release of Claimant's right to have any and all final orders in any and all non-core matters or proceedings entered only after *de novo* review by a United States District Court Judge; (f) a waiver of the right to move to withdraw the reference with respect to the subject matter of this Proof of Claim, any objection thereto or other proceeding which may be commenced in this case against or otherwise involving Claimant; or (g) an election of remedies.

> 16.    All notices regarding this Proof of Claim should be sent to Citibank, N.A., 250 West Street, 8th Floor, New York, New York, 10013, Attention: Peter Reynolds and Paul, Weiss, Rifkind, Wharton & Garrison, 1285 Avenue of the Americas, New York, New York 10019-6064, Attention: Douglas R. Davis.

## EXHIBIT A

Promissory Note

**ENRON DEBT SECURITY**
Series 2000-A

£15,500,000 **February 23, 2000**

      Reference is made to that certain Collateral Security Agreement, of even date herewith, among Yosemite Securities Company Ltd., a Jersey, Channel Islands limited liability company, Citibank, N.A., as swap counterparty, and United States Trust Company of New York in two separate capacities as indenture trustee and collateral agent, and Deutsche Bank A.G. London Branch, as account bank (as at any time hereafter amended, restated or otherwise modified, the "Collateral Security Agreement"). Each term used in this instrument (this "Debt Security") shall have the meaning ascribed to it in Appendix A to the Collateral Security Agreement and the Principles of Interpretation set forth in Appendix A to the Collateral Security Agreement shall apply to the terms defined herein and in such Appendix A. This Debt Security evidences a senior unsecured general obligation for borrowed money of Enron, is an instrument aggregating £15,500,000 in principal amount, is being issued by Enron to the Company on the date set forth above at par, and is an Enron Investment related to the Series 2000-A Notes. Enron acknowledges that the Company intends to grant a Security Interest in the Company's rights hereunder to the Collateral Agent pursuant to the Collateral Security Agreement and consents to the Granting of such Security Interest and the provisions of the Collateral Security Agreement and the Deed of Charge relating thereto.

      For value received, Enron hereby promises to pay to the order of the Company the principal sum of FIFTEEN MILLION FIVE HUNDRED THOUSAND POUNDS STERLING (£15,500,000.00) as provided herein, and to pay interest on this Debt Security from the date hereof until the principal amount of this Debt Security is paid in full on each interest payment date specified below in an amount equal to the amount, if any, by which the aggregate Citibank Fixed Payments in respect of the Series 2000-A Notes and related certificates payable for any particular Calculation Period exceed the aggregate Scheduled Interest Receipts from the Series 2000-A Company Investments (other than this Debt Security) for such Calculation Period, subject to the further payment at maturity of this Debt Security as described below.

      Interest is due and payable annually in arrears, at 11:00 a.m., London time, on each January 31 of each year, commencing January 31, 2001; provided, that if any such January 31 is not a Business Day, the interest payment date hereunder shall be the Business Day immediately preceding such payment date.

      Except as otherwise provided below, the payment of the principal of this Debt Security shall be made by Enron on, but not before February 19, 2007.

      If this Debt Security has not been repaid prior to the maturity date hereof, then on the maturity date, in addition to the payment of principal and interest otherwise payable hereunder, Enron shall also pay an amount equal to the product of (x) the then outstanding principal balance of the Series 2000-A Notes, multiplied by (y) the Citibank Fixed Rate for the Series 2000-A Notes,

1

Houston:122319 v 2
debt-security Series A vers. 2

**CONFIDENTIAL**                    **CITI-C 0115898**

multiplied by (z) the Day Count Fraction for the period from and including the maturity date hereof to but excluding the scheduled Maturity Date of the Series 2000-A Notes.

Until otherwise instructed by the Collateral Agent in writing, amounts payable on account of interest under this Debt Security shall be paid to the Interest Proceeds Account-Series 2000-A, and amounts payable on account of principal under this Debt Security shall be payable to the Principal Proceeds Account-Series 2000-A.

This Debt Security and the indebtedness evidenced hereby shall be binding upon and against Enron without regard to the validity or enforceability of any Transaction Document or any other Company Investment, or any provision thereof, and Enron hereby waives any defense relating to the enforceability of any Transaction Document or any Company Investment, or any provision contained therein. Enron unconditionally waives the validity, legality, regularity, or enforceability of the Transaction Documents and the other Company Investments and Underlying Instruments and any other circumstance whatsoever (with or without notice to or knowledge of the obligors thereunder or Enron) that constitutes, or might be construed to constitute, an equitable or legal discharge of Enron with respect to its obligations hereunder, in bankruptcy or in any other instance, except any defense based on full payment of all amounts due hereunder.

The obligations of Enron set forth in this Debt Security shall not be subject to any requirement for the making of any demand or the prior taking of any action against any obligor under any Transaction Document or any other Company Investment or any other Person before the obligations hereunder may be enforced against Enron and such obligations shall remain in full force and effect without regard to, and shall not be released, discharged, or in any way affected by, any circumstance or condition whatsoever (whether or not Enron shall have knowledge or notice thereof or shall have asserted thereto and notwithstanding the fact that no rights were reserved against Enron in connection therewith).

If Enron shall fail to pay any amount due and payable hereunder (and, if such failure is on account of the payment of interest hereunder, such failure shall remain uncured for five (5) days), the Collateral Agent, on behalf of the Company, shall be entitled to declare the entire unpaid principal amount of this Debt Security, together with all accrued, unpaid interest thereon, immediately due and payable upon written notice to Enron. Except for such notice of acceleration, Enron waives all demand, presentment for payment, notice of non-payment, protest, notice of protest, notice of intent to accelerate maturity, and all other notice, filing of suit and diligence in collecting this Debt Security. Notwithstanding the foregoing, upon an Enron Bankruptcy, the principal of, and any unpaid interest on, this Debt Security shall automatically be due and payable immediately, without presentment, demand, protest, or other requirements of any kind, all of which are hereby expressly waived by Enron.

After acceleration of this Debt Security, all amounts paid hereunder shall be applied first to any past due amounts hereunder, next to any due and unpaid interest hereon, and the balance to the outstanding principal amount hereof.

Enron shall have no obligation or liability with respect to the application by the Collateral Agent of any amounts paid by Enron hereunder.

CONFIDENTIAL          CITI-C 0115899

Upon Enron's payment in full, and in accordance with the terms hereof, of all due and unpaid interest and other amounts due under this Debt Security and the entire principal amount hereof, Enron's obligations hereunder shall cease.

THE RIGHTS AND OBLIGATIONS OF ENRON AND THE COMPANY IN RESPECT OF THIS DEBT SECURITY SHALL, PURSUANT TO NEW YORK GENERAL OBLIGATIONS LAW SECTION 5-1401, BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

ENRON AND THE COMPANY EACH HEREBY IRREVOCABLY WAIVES TO THE FULLEST EXTENT PERMITTED BY LAW ALL RIGHT TO TRIAL BY JURY IN ANY PROCEEDING ARISING OUT OF OR RELATING DIRECTLY OR INDIRECTLY TO THIS DEBT SECURITY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). ENRON AND THE COMPANY EACH HEREBY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE OTHER PARTY HAS REPRESENTED EXPRESSLY OR OTHERWISE, THAT SUCH PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTY HAVE BEEN INDUCED TO ISSUE AND ACCEPT THIS DEBT SECURITY BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS PARAGRAPH.

This Debt Security may not be amended except by an instrument in writing signed by each of Enron and the Company. This Debt Security shall be binding upon and inure to the benefit of Enron and the Company and their respective successors and permitted assigns. Enron shall not assign or otherwise transfer any of its rights or obligations under this Debt Security without the prior consent of the Company. The Company may, at any time and from time to time, without the consent of Enron, assign all or any portion of its rights under this Debt Security to one or more Persons and, upon the Company giving notice of such assignment to Enron specifying the interest hereunder being assigned and the Person to which such interest is being assigned, each reference herein to the Company shall (solely in respect of the interest so assigned) constitute a reference to such assignee (as if such assignee were named herein) rather than the Company. The Company shall be entitled to have this Debt Security subdivided by exchange of this Debt Security for debt securities of lesser denominations ("Successor Debt Securities") to the extent necessary to reflect any such assignment.

In connection with any partial assignment of this Debt Security, the parties agree to amend this Debt Security and any Successor Debt Securities to reflect changes reasonably requested by the parties in order to address intercreditor, voting and other issues.

ENRON CORP.

By: _____
Name: _____
Title: _____

Houston:122219 v 2
debt-security Series A vers. 2

3

CONFIDENTIAL

CITI-C 0115900

RightFAX          12/4/01 2:31     PAGE ___    ...ghtFAX

'00 16:56 FAX 01534 700007          JERSEY TRUST CO LTD                          @002

Pay to the Order of United States Trust Company of New York, as Securities Intermediary, under that certain Collateral Security Agreement dated as of February 23, 2000, among Yosemite Securities Company Ltd., Citibank, N.A., United States Trust Company of New York, as Indenture Trustee and Collateral Agent, and Deutsche Bank A.G. London Branch, as Account Bank.

Date: February 23, 2000

YOSEMITE SECURITIES
COMPANY, LTD.

By:
Name: NIGEL A LE QUESNE
Title: DIRECTOR

4

Document 122220 v 2
debt-security Exhin A ver. 3

CONFIDENTIAL

CITI-C 0115901