FORM B10 (Official Form 10) (4/98) ORIGINAL  *Citibank NA Commodity Swap and Note Claims* I

| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor ENRON CORP. | Case Number 01-16034 | |
| NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. | | |
| Name of Creditor (The person or other entity to whom the debtor owes money or property): CITIBANK, N.A. | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | |
| Name and address where notices should be sent: Citibank, N.A. 250 West Street, 8th Floor New York, New York, 10013 Attention: Peter Reynolds  With a copy to: Paul, Weiss, Rifkind, Wharton & Garrison 1285 Avenue of the Americas New York, N.Y. 10019-6064 Attn: Douglas R. Davis  Telephone number: (212) 373-3000 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.  ☐ Check box if the address differs from the address on the court. | Filed: USBC - Southern District of New York ENRON, Et Al. 01-16034 (CA)       0000012109  THIS SPACE IS FOR COURT USE ONLY |
| Account or other number by which creditor identifies debtor: (see attached) | Check here if this claim ☐ Replaces / ☐ amends a previously filed claim, dated: | |
| 1. Basis for Claim ☐ Goods sold ☐ Services performed ☐ Money loaned ☐ Personal injury/wrongful death ☐ Taxes ☒ Other (See attached) | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a) ☐ Wages, salaries, and compensation (fill out below) Your SS #: Unpaid compensation for services performed From                   to | |
| 2. Date debt was incurred: (see attached) | 3. If court judgment, date obtained: | |
| 4. Total Amount of Claim at Time Case Filed: $ In an amount no less than $38,310,541.57. If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below. ☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges. (see attached) | | |
| 5. Secured Claim. ☒ Check this box if your claim is secured by collateral (including a right of setoff). Brief Description of Collateral: ☐ Real Estate ☐ Motor Vehicle ☒ Other (right of setoff) Value of Collateral: (see attached)   Amount of arrearage and other charges at time case filed included in secured claim, if any: $ (see attached) | 6. Unsecured Priority Claim. ☐ Check this box if you have an unsecured priority claim Amount entitled to priority $ Specify the priority of the claim: ☐ Wages, salaries, or commissions (up to $4,300),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3). ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4). ☐ Up to $1,950* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6). ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child –11 U.S.C. § 507(a)(7). ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8). ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___). *Amounts are subject to adjustment on 4/1/01 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. | |
| 7. Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. 8. Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. 9. Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | | THIS SPACE IS FOR COURT USE ONLY |
| Date: October 11, 2002 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): Peter Reynolds, Director | |
| Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571. | | |

## ATTACHMENT TO PROOF OF CLAIM
## OF CITIBANK, N.A.

1.  On December 2, 2001 (the "Petition Date"), Enron Corp. (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

2.  As of the Petition Date, the Debtor was, and still is, indebted and/or liable to Citibank, N.A. ("Claimant") for no less than $38,310,541.57 in regard of the transactions and/or matters discussed herein.

3.  Claimant is the holder of a certain promissory note issued by Debtor dated November 18, 1999 in the original principal amount of $25,000,000.00 (the "Promissory Note"), a copy of which is attached hereto as Exhibit A. As of the petition date, Debtor was, and still is, indebted and/or liable to Claimant for the full amounts due in respect of the Promissory Note, including unpaid interest, fees and expenses accrued through the Petition Date.

4.  In addition, on December 22, 1999, to induce Claimant to extend financial accommodation to the Debtor's affiliated corporation, Enron North America Corp. ("ENA"), the Debtor executed and delivered a guaranty of payment (the "Guaranty") of any and all obligations and indebtedness due and owing to Claimant arising under certain commodity derivative transactions. As of the Petition Date, ENA was, and still is, indebted to Claimant for the aggregate amount of $13,310,541.57, as more particularly set forth below. By reason of the Guaranty, the Debtor, in addition to its indebtedness to Claimant set forth in Paragraph 3 above, is indebted to Claimant for said sum of $13,310,541.57.

Doc#: NY6: 330825_1

### *ENA's Liability for which Debtor is Liable as Guarantor*

5. Claimant is a swap participant with ENA and related entities under certain commodity swaps and related agreements (the "Citibank Swap Agreements"). Claimant therefore has contractual and statutory rights to offset and net out all termination values and payment amounts arising under or in connection with the swap transactions. In addition, Claimant has contractual rights of recovery against ENA for settlement payments owing under swaps, assigned to Claimant, but to which Claimant was not a direct participant.

6. Claimant assigned certain claims under the Citibank Swap Agreements to non-Citibank entities and also received certain claims from other swap counterparties under other commodity swaps and related agreements ("Other Swap Agreements" and, together with the Citibank Swap Agreements, the "Swap Agreements").[1] All claims held by Citibank are referred to as the "Retained Claims." ENA owes Claimant for Retained Claims as follows:

(a) The swap confirmed on December 22, 1999 between ENA and Delta Energy Corporation (the "ENA / Delta Swap"), of which Claimant retained claims against ENA totaling $12,806,453.95;

(b) The swap confirmed on December 22, 1999 between Claimant and ENA (the "ENA / Citibank Swap"), of which Claimant retained claims against ENA totaling $504,087.62.

---

[1] Due to the voluminous nature of the documents supporting Claimant's claim, they have not been attached to this Proof of Claim. Copies of the documents are available upon request to counsel for Claimant.

7. ENA accordingly owes Claimant no less than $13,3105,541.07 in regard of the transactions set forth above, in addition to default interest, fees, costs and expenses not yet liquidated. By reason of the Guaranty, Debtor owes Claimant for said same amount.

8. Claimant hereby reserves the right to assert against Debtor in full the aggregate settlement amounts Debtor owes under each transaction described herein, and all fees, costs, and expenses related thereto including default interest, as if such claims had not been assigned by Citibank in the event the assignment of its claims to non-Citibank entities are in any manner determined invalid or otherwise infirm, either as a function of the avoidance provisions of the Bankruptcy Code, pursuant to any other federal or state law, or otherwise.

9. Claimant reserves the right to claim as of yet undetermined amounts against Debtor for contractual, statutory or common law rights of indemnity and contribution, if any, for and against any and all losses, claims, damages or liabilities, joint or several, and legal or other expenses reasonably incurred in connection with the Swap Agreements.

10. In addition to the Debtor's obligations to Claimant as set forth above, Claimant is entitled to recover from the Debtor all costs and expenses, including reasonable attorneys' fees and disbursements, incurred in connection with Claimant's enforcement of its rights under the claims set forth herein. The amount of such costs and expenses cannot be reasonably calculated or estimated at this time, but Claimant does not waive its rights thereto by not currently stating a specific amount.

11. Claimant reserves the right to claim that all or any portion of the costs and expenses incurred by it after the Petition Date are administrative expenses entitled to a first priority under section 507(a)(1) of the Bankruptcy Code.

12. In addition to the foregoing, the Debtor may be liable to Claimant for interest accruing after the Petition Date on the claims described herein to the extent such interest is allowable under the Bankruptcy Code.

13. Claimant has filed this Proof of Claim under compulsion of the bar date established in this chapter 11 case and to protect Claimant from forfeiture of its claim against the Debtor by reason of such bar date. Claimant has filed this Proof of Claim only with respect to claims arising out of the transactions and matters described herein. Claimant and/or its affiliates may file additional proofs of claims against the Debtor, and/or one or more other debtors, with respect to claims arising out of other transactions or matters. In addition, Claimant may file proofs of claims against one or more other debtors who have guaranteed, or are otherwise obligated with respect to, the claims covered hereby. Claimant reserves the right to amend and/or supplement this Proof of Claim at any time, including after any bar date, in any manner, including for purposes of fixing the amount of the claim described above together with interest, fees and expenses due Claimant, and/or to file additional proofs of claim for any additional claim which may be based on the same or additional documents or grounds of liability.

14. In addition to this Proof of Claim, Claimant has filed a proof of claim against ENA for the claims described above which are the subject of Debtor's guaranty liability to Claimant. Claimant has also filed a separate proof of claim against

the Debtor as guarantor of Debtor's contractual obligations, including other ENA liabilities, generally.

15. The filing of this Proof of Claim is not and shall not be deemed or construed as: (a) a waiver or release of Claimant's rights against any person, entity, or property, or a waiver of the right to compel the Debtor to return property of Claimant currently in the possession of the Debtor; (b) a consent by Claimant to the jurisdiction of this Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving Claimant; (c) a waiver or release of Claimant's right to trial by jury in this Court or any other court in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy, or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States Constitution; (d) a consent by Claimant to a jury trial in this Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy, or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise; (e) a waiver or release of Claimant's right to have any and all final orders in any and all non-core matters or proceedings entered only after *de novo* review by a United States District Court Judge; (f) a waiver of the right to move to withdraw the reference with respect to the subject matter of this Proof of Claim, any objection thereto or other proceeding which may be commenced in this case against or otherwise involving Claimant; or (g) an election of remedies.

16. All notices regarding this Proof of Claim should be sent to Citibank, N.A., 250 West Street, 8th Floor, New York, New York, 10013, Attention: Peter Reynolds and Paul, Weiss, Rifkind, Wharton & Garrison, 1285 Avenue of the Americas, New York, New York 10019-6064, Attention: Douglas R. Davis.

Doc#: NY6: 330825_1

# EXHIBIT A

Promissory Note

Doc#: NY6: 330825_1

**ENRON DEBT SECURITY**
[Series 1999-A]

U.S. $25,000,000.00

November 18, 1999

Reference is made to that certain Collateral Security Agreement, of even date herewith, among Yosemite Securities Trust I, a Delaware statutory business trust, Citibank, N.A., as swap counterparty, and United States Trust Company of New York in four separate capacities as indenture trustee, collateral agent, account bank, and securities intermediary (as at any time hereafter amended, restated or otherwise modified, the "Collateral Security Agreement"). Each term used in this instrument (this "Debt Security") shall have the meaning ascribed to it in Appendix A to the Collateral Security Agreement and the Principles of Interpretation set forth in Appendix A to the Collateral Security Agreement shall apply to the terms defined herein and in such Appendix A. This Debt Security evidences a senior unsecured general obligation for borrowed money of Enron, is an instrument aggregating $25,000,000.00 in principal amount, is being issued by Enron to the Trust on the date set forth above at par, and is an Enron Investment related to the Series 1999-A Notes. Enron acknowledges that the Trust intends to grant a Security Interest in the Trust's rights hereunder to the Collateral Agent pursuant to the Collateral Security Agreement and consents to the Granting of such Security Interest and the provisions of the Collateral Security Agreement relating thereto.

For value received, Enron hereby promises to pay to the order of the Trust the principal sum of TWENTY-FIVE MILLION U.S. DOLLARS (U.S. $25,000,000.00) as provided herein, and to pay interest on this Debt Security from the date hereof until the principal amount of this Debt Security is paid in full on each interest payment date specified below in an amount equal to the amount, if any, by which (i) the aggregate Citibank Fixed Payments in respect of the Series 1999-A Notes payable for any particular Calculation Period that ends during the Relevant Period (as defined below) exceed (ii) the aggregate Scheduled Interest Receipts from the Series 1999-A Trust Investments (other than this Debt Security) for such Calculation Period, subject to the further payment at maturity of this Debt Security as described below. The "Relevant Period" for any particular interest payment date hereunder means the period (a) commencing on or after such interest payment date, and (b) ending on or prior to the date immediately preceding the next succeeding interest payment date hereunder.

Interest is due and payable semi-annually, at 11:00 a.m., New York City time, on each April 20 and October 20 of each year, commencing April 20, 2000; provided, that if any such April 20 or October 20 is not a Business Day, the interest payment date hereunder shall be the Business Day immediately preceding such April 20 or October 20, as applicable.

Except as otherwise provided below, the payment of the principal of this Debt Security shall be made by Enron on, but not before November 8, 2004.

If this Debt Security has not been repaid prior to the maturity date hereof, then on the maturity date, in addition to the payment of principal and interest otherwise payable hereunder, Enron shall also pay an amount equal to the product of (x) the then outstanding principal balance of the Series 1999-A Notes, multiplied by (y) the Citibank Fixed Rate for the Series 1999-A Notes,

1

debt-security ver 7 DOC
debt-security

multiplied by (z) the Day Count Fraction for the period from and including the maturity date hereof to but excluding the scheduled Maturity Date of the Series 1999-A Notes.

Until otherwise instructed by the Collateral Agent in writing, amounts payable on account of interest under this Debt Security shall be paid to the Interest Proceeds Account-Series 1999-A, and amounts payable on account of principal under this Debt Security shall be payable to the Principal Proceeds Account-Series 1999-A.

This Debt Security and the indebtedness evidenced hereby shall be binding upon and against Enron without regard to the validity or enforceability of any Transaction Document or any other Trust Investment, or any provision thereof, and Enron hereby waives any defense relating to the enforceability of any Transaction Document or any Trust Investment, or any provision contained therein. Enron unconditionally waives the validity, legality, regularity, or enforceability of the Transaction Documents and the other Trust Investments and Underlying Instruments and any other circumstance whatsoever (with or without notice to or knowledge of the obligors thereunder or Enron) that constitutes, or might be construed to constitute, an equitable or legal discharge of Enron with respect to its obligations hereunder, in bankruptcy or in any other instance, except any defense based on full payment of all amounts due hereunder.

The obligations of Enron set forth in this Debt Security shall not be subject to any requirement for the making of any demand or the prior taking of any action against any obligor under any Transaction Document or any other Trust Investment or any other Person before the obligations hereunder may be enforced against Enron and such obligations shall remain in full force and effect without regard to, and shall not be released, discharged, or in any way affected by, any circumstance or condition whatsoever (whether or not Enron shall have knowledge or notice thereof or shall have assented thereto and notwithstanding the fact that no rights were reserved against Enron in connection therewith).

If Enron shall fail to pay any amount due and payable hereunder (and, if such failure is on account of the payment of interest hereunder, such failure shall remain uncured for five (5) days), the Collateral Agent, on behalf of the Trust, shall be entitled to declare the entire unpaid principal amount of this Debt Security, together with all accrued, unpaid interest thereon, immediately due and payable upon written notice to Enron. Except for such notice of acceleration, Enron waives all demand, presentment for payment, notice of non-payment, protest, notice of protest, notice of intent to accelerate, maturity, and all other notice, filing of suit and diligence in collecting this Debt Security. Notwithstanding the foregoing, upon an Enron Bankruptcy, the principal of, and any unpaid interest on, this Debt Security shall automatically be due and payable immediately, without presentment, demand, protest or other requirements of any kind, all of which are hereby expressly waived by Enron.

After acceleration of this Debt Security, all amounts paid hereunder shall be applied first to any past due amounts hereunder, next to any due and unpaid interest hereon, and the balance to the outstanding principal amount hereof.

Enron shall have no obligation or liability with respect to the application by the Collateral Agent of any amounts paid by Enron hereunder.

2

debt-security ver 7 DOC
debt-security

Upon Enron's payment in full, and in accordance with the terms hereof, of all due and unpaid interest and other amounts due under this Debt Security and the entire principal amount hereof, Enron's obligations hereunder shall cease.

THE RIGHTS AND OBLIGATIONS OF ENRON AND THE TRUST IN RESPECT OF THIS DEBT SECURITY SHALL, PURSUANT TO NEW YORK GENERAL OBLIGATIONS LAW SECTION 5-1401, BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

ENRON AND THE TRUST EACH HEREBY IRREVOCABLY WAIVES TO THE FULLEST EXTENT PERMITTED BY LAW ALL RIGHT TO TRIAL BY JURY IN ANY PROCEEDING ARISING OUT OF OR RELATING DIRECTLY OR INDIRECTLY TO THIS DEBT SECURITY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). ENRON AND THE TRUST EACH HEREBY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE OTHER PARTY HAS REPRESENTED EXPRESSLY OR OTHERWISE THAT SUCH PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTY HAVE BEEN INDUCED TO ISSUE AND ACCEPT THIS DEBT SECURITY BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS PARAGRAPH.

This Debt Security may not be amended except by an instrument in writing signed by each of Enron and the Trust. This Debt Security shall be binding upon and inure to the benefit of Enron and the Trust and their respective successors and permitted assigns. Enron shall not assign or otherwise transfer any of its rights or obligations under this Debt Security without the prior consent of the Trust. The Trust may, at any time and from time to time, without the consent of Enron, assign all or any portion of its rights under this Debt Security to one or more Persons and, upon the Trust giving notice of such assignment to Enron specifying the interest hereunder being assigned and the Person to which such interest is being assigned, each reference herein to the Trust shall (solely in respect of the interest so assigned) constitute a reference to such assignee (as if such assignee were named herein) rather than the Trust. The Trust shall be entitled to have this Debt Security subdivided by exchange of this Debt Security for debt securities of lesser denominations ("*Successor Debt Securities*") to the extent necessary to reflect any such assignment.

In connection with any partial assignment of this Debt Security, the parties agree to amend this Debt Security and any Successor Debt Securities to reflect changes reasonably requested by the parties in order to address intercreditor, voting and other issues.

ENRON CORP.

By: /s/ W.W.B.
Name: William W. Brown
Title: Deputy Treasurer

3

debt-security ver 7 DOC
debt-security

## ENRON DEBT SECURITY
[Series 1999-A]

U.S. $25,000,000.00                          November 18, 1999

    Reference is made to that certain Collateral Security Agreement, of even date herewith, among Yosemite Securities Trust I, a Delaware statutory business trust, Citibank, N.A., as swap counterparty, and United States Trust Company of New York in four separate capacities as indenture trustee, collateral agent, account bank, and securities intermediary (as at any time hereafter amended, restated or otherwise modified, the "Collateral Security Agreement"). Each term used in this instrument (this "Debt Security") shall have the meaning ascribed to it in Appendix A to the Collateral Security Agreement and the Principles of Interpretation set forth in Appendix A to the Collateral Security Agreement shall apply to the terms defined herein and in such Appendix A. This Debt Security evidences a senior unsecured general obligation for borrowed money of Enron, is an instrument aggregating $25,000,000.00 in principal amount, is being issued by Enron to the Trust on the date set forth above at par, and is an Enron Investment related to the Series 1999-A Notes. Enron acknowledges that the Trust intends to grant a Security Interest in the Trust's rights hereunder to the Collateral Agent pursuant to the Collateral Security Agreement and consents to the Granting of such Security Interest and the provisions of the Collateral Security Agreement relating thereto.

    For value received, Enron hereby promises to pay to the order of the Trust the principal sum of TWENTY-FIVE MILLION U.S. DOLLARS (U.S. $25,000,000.00) as provided herein, and to pay interest on this Debt Security from the date hereof until the principal amount of this Debt Security is paid in full on each interest payment date specified below in an amount equal to the amount, if any, by which (i) the aggregate Citibank Fixed Payments in respect of the Series 1999-A Notes payable for any particular Calculation Period that ends during the Relevant Period (as defined below) exceed (ii) the aggregate Scheduled Interest Receipts from the Series 1999-A Trust Investments (other than this Debt Security) for such Calculation Period, subject to the further payment at maturity of this Debt Security as described below. The "Relevant Period" for any particular interest payment date hereunder means the period (a) commencing on or after such interest payment date, and (b) ending on or prior to the date immediately preceding the next succeeding interest payment date hereunder.

    Interest is due and payable semi-annually, at 11:00 a.m., New York City time, on each April 20 and October 20 of each year, commencing April 20, 2000; provided, that if any such April 20 or October 20 is not a Business Day, the interest payment date hereunder shall be the Business Day immediately preceding such April 20 or October 20, as applicable.

    Except as otherwise provided below, the payment of the principal of this Debt Security shall be made by Enron on, but not before November 8, 2004.

    If this Debt Security has not been repaid prior to the maturity date hereof, then on the maturity date, in addition to the payment of principal and interest otherwise payable hereunder, Enron shall also pay an amount equal to the product of (x) the then outstanding principal balance of the Series 1999-A Notes, multiplied by (y) the Citibank Fixed Rate for the Series 1999-A Notes,

1

debt-security ver 7 DOC
debt-security

multiplied by (z) the Day Count Fraction for the period from and including the maturity date hereof to but excluding the scheduled Maturity Date of the Series 1999-A Notes.

Until otherwise instructed by the Collateral Agent in writing, amounts payable on account of interest under this Debt Security shall be paid to the Interest Proceeds Account-Series 1999-A, and amounts payable on account of principal under this Debt Security shall be payable to the Principal Proceeds Account-Series 1999-A.

This Debt Security and the indebtedness evidenced hereby shall be binding upon and against Enron without regard to the validity or enforceability of any Transaction Document or any other Trust Investment, or any provision thereof, and Enron hereby waives any defense relating to the enforceability of any Transaction Document or any Trust Investment, or any provision contained therein. Enron unconditionally waives the validity, legality, regularity, or enforceability of the Transaction Documents and the other Trust Investments and Underlying Instruments and any other circumstance whatsoever (with or without notice to or knowledge of the obligors thereunder or Enron) that constitutes, or might be construed to constitute, an equitable or legal discharge of Enron with respect to its obligations hereunder, in bankruptcy or in any other instance, except any defense based on full payment of all amounts due hereunder.

The obligations of Enron set forth in this Debt Security shall not be subject to any requirement for the making of any demand or the prior taking of any action against any obligor under any Transaction Document or any other Trust Investment or any other Person before the obligations hereunder may be enforced against Enron and such obligations shall remain in full force and effect without regard to, and shall not be released, discharged, or in any way affected by, any circumstance or condition whatsoever (whether or not Enron shall have knowledge or notice thereof or shall have assented thereto and notwithstanding the fact that no rights were reserved against Enron in connection therewith).

If Enron shall fail to pay any amount due and payable hereunder (and, if such failure is on account of the payment of interest hereunder, such failure shall remain uncured for five (5) days), the Collateral Agent, on behalf of the Trust, shall be entitled to declare the entire unpaid principal amount of this Debt Security, together with all accrued, unpaid interest thereon, immediately due and payable upon written notice to Enron. Except for such notice of acceleration, Enron waives all demand, presentment for payment, notice of non-payment, protest, notice of protest, notice of intent to accelerate maturity, and all other notice, filing of suit and diligence in collecting this Debt Security. Notwithstanding the foregoing, upon an Enron Bankruptcy, the principal of, and any unpaid interest on, this Debt Security shall automatically be due and payable immediately, without presentment, demand, protest or other requirements of any kind, all of which are hereby expressly waived by Enron.

After acceleration of this Debt Security, all amounts paid hereunder shall be applied first to any past due amounts hereunder, next to any due and unpaid interest hereon, and the balance to the outstanding principal amount hereof.

Enron shall have no obligation or liability with respect to the application by the Collateral Agent of any amounts paid by Enron hereunder.

2

debt-security ver 7 DOC
debt-security

Upon Enron's payment in full, and in accordance with the terms hereof, of all due and unpaid interest and other amounts due under this Debt Security and the entire principal amount hereof, Enron's obligations hereunder shall cease.

THE RIGHTS AND OBLIGATIONS OF ENRON AND THE TRUST IN RESPECT OF THIS DEBT SECURITY SHALL, PURSUANT TO NEW YORK GENERAL OBLIGATIONS LAW SECTION 5-1401, BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

ENRON AND THE TRUST EACH HEREBY IRREVOCABLY WAIVES TO THE FULLEST EXTENT PERMITTED BY LAW ALL RIGHT TO TRIAL BY JURY IN ANY PROCEEDING ARISING OUT OF OR RELATING DIRECTLY OR INDIRECTLY TO THIS DEBT SECURITY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). ENRON AND THE TRUST EACH HEREBY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE OTHER PARTY HAS REPRESENTED EXPRESSLY OR OTHERWISE THAT SUCH PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTY HAVE BEEN INDUCED TO ISSUE AND ACCEPT THIS DEBT SECURITY BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS PARAGRAPH.

This Debt Security may not be amended except by an instrument in writing signed by each of Enron and the Trust. This Debt Security shall be binding upon and inure to the benefit of Enron and the Trust and their respective successors and permitted assigns. Enron shall not assign or otherwise transfer any of its rights or obligations under this Debt Security without the prior consent of the Trust. The Trust may, at any time and from time to time, without the consent of Enron, assign all or any portion of its rights under this Debt Security to one or more Persons and, upon the Trust giving notice of such assignment to Enron specifying the interest hereunder being assigned and the Person to which such interest is being assigned, each reference herein to the Trust shall (solely in respect of the interest so assigned) constitute a reference to such assignee (as if such assignee were named herein) rather than the Trust. The Trust shall be entitled to have this Debt Security subdivided by exchange of this Debt Security for debt securities of lesser denominations ("*Successor Debt Securities*") to the extent necessary to reflect any such assignment.

In connection with any partial assignment of this Debt Security, the parties agree to amend this Debt Security and any Successor Debt Securities to reflect changes reasonably requested by the parties in order to address intercreditor, voting and other issues.

ENRON CORP.

By: /s/ W.W.B.
Name: William W. Brown
Title: Deputy Treasurer

Pay to the Order of United States Trust Company of New York, as Collateral Agent, under that certain Collateral Security Agreement dated as of November 18, 1999, among Yosemite Securities Trust I, Citibank, N.A. and United States Trust Company of New York, as Indenture Trustee, Collateral Agent, Account Bank and Securities Intermediary.

Date: November 18, 1999

YOSEMITE SECURITIES TRUST I



By: Wilmington Trust Company, not in its individual capacity but solely as Trustee

By:
Name: _____
Title: _____



debt-security ver 7 DOC
debt-security

4