**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ENRON CORP., *et al.*,<br><br>          Reorganized Debtors. | Chapter 11<br>Case No. 01-16034 (AJG)<br><br>Jointly Administered |
| ENRON CORP., *et al.*,<br><br>          Plaintiff,<br><br>          v.<br><br>CITIGROUP, INC., *et al.*,<br><br>          Defendants. | Adv. Pro. No. 03-09266 |

**BANK DEFENDANTS' JOINT MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION FOR LEAVE TO**
**APPEAL THE DECISION OF THE BANKRUPTCY COURT**
**CONCERNING DETERMINATION PURSUANT TO 28 U.S.C. § 157(b)(3)**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. i

PRELIMINARY STATEMENT .................................................... 1

STATEMENT OF FACTS ........................................................... 5

LEGAL ISSUES ON APPEAL .................................................... 11

RELIEF SOUGHT ..................................................................... 11

RELEVANT STATUTES ........................................................... 11

THE MOTION FOR LEAVE MEETS THE STANDARD FOR INTERLOCUTORY
    APPEAL UNDER 28 U.S.C. § 158(a)(3) ........................................ 12

I.     THE CORE ORDER'S LEGAL ERRORS WILL FATALLY INFECT THE
     LITIGATION OF THIS UNDERLYING MULTI-BILLION DOLLAR CASE
     AND SHOULD BE REVERSED. ................................................... 12

A.    The Scope of "Core" Jurisdiction. ........................................... 13

B.    The Bank Defendants' Withdrawal Motion Under Section 157(d). .... 16

C.    The Statutory Conundrum of the Initial Core Determination Under Section
      157(b)(3). ............................................................................. 18

D.    Granting Immediate Leave to Appeal Promotes Judicial Efficiency Because
      it Will Determine, Before Trial, the Proper Role of the Bankruptcy Court
      and Appropriate Procedures to be Followed. ................................ 20

II.    THE BANKRUPTCY COURT'S EXPANSIVE JURISDICTIONAL
     DETERMINATION VIOLATES ARTICLE III OF THE CONSTITUTION AND
     SHOULD BE OVERTURNED. ...................................................... 21

A.    The Common Law Counts are Inherently Non-Core. ...................... 24

B.    The Bankruptcy Court's "Logical Connection" Test Is Premised on a
      Constitutionally Infirm "Predominantly Core" or "Intertwinement" Theory
      that Provides No Basis on which To Find the Common Law Counts Core. ........ 25

C.    The Mere Filing of a Proof of Claim Cannot Render the Common Law
      Counts Core ......................................................................... 30

D.    Under *Marathon*, "Counterclaims" Within the Bankruptcy Court's Core
      Jurisdiction Cannot Include All Claims that the Debtor Can Assert Against
      the Bank Defendants and Do Not Include the Common Law Counts. ........ 33

i

E.     The Bank Defendants' Assertion of Setoff Rights and Recoupment, Like Their Proofs of Claim, Also Cannot Transform the Underlying Non-Core Nature of the Common Law Counts Into Core Claims. ...................................... 35

CONCLUSION ......................................................................................................... 38

## <u>TABLE OF AUTHORITIES</u>

### CASES

*131 Liquidating Corp.* v. *LaSalle Capital Group, Inc. (In re 131 Liquidating Corp.)*, 222 B.R. 209 (S.D.N.Y. 1998) ................................................................ 17

*In re Adelphia Comm'ns Corp.*, 333 B.R. 649 (S.D.N.Y. 2005) ..................................... 22

*Adelphia Communications Corp.* v. *Rigas (In re Adelphia Communications Corp.)*, 02 Civ. 8495, 2003 WL 21297258 (S.D.N.Y. Jun. 4, 2003) ............. 28, 29

*Arnold Print Works, Inc.* v. *Apkin (In re Arnold Print Works, Inc.)*, 815 F.2d 165 (1st Cir. 1987) ................................................................................................ 14

*Back* v. *LTV Corp. (In re Chateaugay Corp.)*, 213 B.R. 633 (S.D.N.Y. 1997) ............... 23

*BancBoston Real Estate Capital Corp.* v. *JBI Assocs. Ltd. P'Ship (In re Jackson Brook Inst., Inc.)*, 227 B.R. 569 (D. Me. 1998) ............................................. 22, 23

*Ben Cooper, Inc.* v. *Ins. Co. of Pennsylvania (In re Ben Cooper, Inc.)*, 896 F.2d 1394 (2d Cir. 1990) ...................................................................................... 15

*Communications Workers* v. *Beck*, 487 U.S. 735 (1988) ................................................ 34

*Cooper* v. *Howitt (In re 1733 Ridge Road East, Inc.)*, 125 B.R. 722 (S.D.N.Y. 1991) ................................................................................................................ 18

*Enron Corp.* v. *Citigroup, Inc. (In re Enron Corp.)*, Adv. No. 03-9266, Ch.11 No. 01-16034, 2006 WL 2338020 (Bankr. S.D.N.Y. Aug. 14, 2006) ................. *passim*

*Enron Corp.* v. *Springfield Assocs., L.L.C. (In re Enron Corp.)*, Ch. 11 No. 01-16034, Adv. Nos. 05-01025, 05-01029, 05-01074, 05-01105, 05-010, 2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006) ...................................................... 12

*Enron Power Marketing, Inc.* v. *City of Santa Clara (In re Enron Power Marketing, Inc.)*, 2003 WL 68036 (S.D.N.Y. 2003) ........................................... 36

*Enron Power Marketing, Inc.* v. *Virginia Electric and Power Co. (In re Enron Corp.)*, 318 B.R. 273 (S.D.N.Y. 2004) ........................................................ 17, 18

*Ernst & Young, LLP* v. *Bankruptcy Servs. Inc. (In re CBI Holding Co., Inc.)*, 311 B.R. 350 (S.D.N.Y. 2004) .......................................................................... 24, 26

*Germain* v. *Connecticut Nat'l Bank*, 988 F.2d 1323 (2d Cir. 1993) ............................... 31

*Glinka* v. *Abraham and Rose Co., Ltd.*, No. 2:93-CV-291, 2:93-CV-329, 2:93-CV-361, 1994 WL 905714 (D.Vt. Jun. 6, 1994)........................................... 25, 37

*Halper* v. *Halper*, 164 F.3d 830 (3d Cir. 1999)......................................................... 25, 27

*Hasett* v. *BancOhio Nat'l Bank (In re CIS Corp.)*, 172 B.R. 748 (S.D.N.Y. 1994) ......... 35

*Horwitz* v. *Sheldon (In re Donald Sheldon & Co., Inc.)*, No. 92 Civ. 6834 (JSM), 1992 WL 396885 (S.D.N.Y. Dec. 17, 1992) ...................................................... 19

*Houbigant, Inc.* v. *ACB Mercantile, Inc. (In re Houbigant)*, 185 B.R. 680 (S.D.N.Y. 1995) .................................................................................................. 19

*Hunnicutt Co., Inc.* v. *TJX Cos., Inc. (In re Ames Department Stores, Inc.)*, 190 B.R. 157 (S.D.N.Y. 1995).................................................................................. 17

*Interconnect Telephone Svcs., Inc.* v. *Farren*, 59 B.R. 397 (S.D.N.Y. 1986)........... 15, 24

*Katchen* v. *Landy*, 382 U.S. 323 (1966)........................................................................ 37

*Kittay* v. *Ernst & Young, LLP (In re Kleinert's, Inc.)*, 2004 WL 1878787 (S.D.N.Y. Aug. 19, 2004) ................................................................................. 24

*Laborers Local 17 Health & Benefit Fund* v. *Phillip Morris, Inc.*, 7 F. Supp. 2d 294 (S.D.N.Y. 1998).......................................................................................... 23

*Lesser* v. *A-Z Assocs. (In re Lion Capital Group)*, 63 B.R. 199 (S.D.N.Y. 1985)........... 19

*In re Lloyd's American Trust Funds Litig.*, No. 96 CIV-1262, 1997 WL 458739 (S.D.N.Y. Aug. 12, 1997) ............................................................................... 23

*Luan Investment S.E.* v. *Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223 (2d Cir. 2002) .................................................................................. 13, 14

*Mirant Corp.* v. *The Southern Co.*, 337 B.R. 107 (N.D. Tex. 2006) ......................... 26, 30

*Nationwide Roofing & Sheet Metal, Inc.* v. *Cincinnati Ins. Co. (In re Nationwide Roofing & Sheet Metal, Inc.)*, 130 B.R. 768 (Bankr. S.D.Ohio 1991)................. 35

*Northern Pipeline Constr. Co.* v. *Marathon Pipe Line Co.*, 458 U.S. 50 (1982).......*passim*

*Official Committee of FMI Forwarding Co., Inc.* v. *Union Transport Corp. (In re FMI Forwarding Co., Inc.)*, 2004 WL 1348956 (S.D.N.Y. Jun. 16, 2004).... 26, 27

*Official Committee of Unsecured Creditors of Corson Mfg. Co.* v. *HSBC Bank USA (In re Corson Mfg. Co.)*, Ch. 11 Nos. 01-MC-5E, 99-16855K, AP 00-1366K, 2001 WL 877394 (W.D.N.Y. Jun. 27, 2001) ................................... 24

*Orion Pictures Corp.* v. *Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095 (2d Cir. 1993)........................................................14, 16, 17, 18

*Prudential Secs. Credit Corp., LLC* v. *Pacific Pointe Escrow, Inc. (In re AppOnline.com, Inc.)*, 303 B.R. 723 (S.D.N.Y. 2004)........................................ 17

*Ralls* v. *Doktor Pet Centers, Inc.*, 177 B.R. 420 (D. Mass. 1995)............................ 26, 27

*Ranch 1 Metro, Inc.* v. *State Nat'l Ins. Co. (In re Ranch 1 Metro, Inc.)*, No. C2 Civ. 4417 (WK), 2002 WL 31175184 (S.D.N.Y. Sept. 27, 2002)...................... 18

*Resolution Trust Corp.* v. *Best Products Co., Inc. (In re Best Products Co., Inc.)*, 68 F.3d 26 (2d Cir. 1995) ................................................................................. 15

*In re S.G. Phillips Constrs., Inc.* v. *City of Burlington (In re S.G. Phillips Constrs., Inc.)*, 45 F.3d 702 (2d Cir. 1995)........................................................ 14

*Schneider* v. *Riddick III (In re Formica, Corp.)*, 305 B.R. 147 (S.D.N.Y. 2004) ........... 18

*South Street Seaport Limited P'Ship* v. *Burger Boys, Inc. (In re Burger Boys, Inc.)*, 94 F.3d 755 (2d Cir. 1996) ...................................................................... 17

*Statutory Committee of Unsecured Creditors of Iridium Operating LLC* v. *Motorola, Inc. (In re Iridium Operating, LLC)*, 285 B.R. 822 (S.D.N.Y. 2002)................................................................................................................. 26

*Stoe* v. *Flaherty*, 436 F.3d 209 (3d Cir. 2006)............................................................... 25

*Thomas* v. *Union Carbide Agric. Prods. Co.*, 473 U.S. 568 (1985)............................... 13

*United Illuminating Co.* v. *Enron Power Marketing, Inc. (In re Enron Corp.)*, No. 03 Civ. 5078, 2003 WL 22171695 (S.D.N.Y. Sept. 22, 2003) .................... 18

*United Orient Bank* v. *Green (In re Green)*, 200 B.R. 296 (S.D.N.Y. 1996) ................. 24

*United States Lines, Inc.* v. *American S.S. Owners Mut. Protection & Indem. Ass'n (In re United States Lines, Inc.)*, 197 F.3d 631, 637 (2d Cir. 1999)..... 15, 35

*Wechsler* v. *Squadron, Ellenoff, Plesent, & Sheinfeld LLP*, 201 B.R. 635 (S.D.N.Y. 1996) ......................................................................................15, 19, 24

*Weiner's, Inc.* v. *T.G. & Y. Stores Co.*, 191 B.R. 30 (S.D.N.Y. 1996).......................21, 22, 23

## STATUTES AND RULES

28 U.S.C. § 157(b) ................................................................................................*passim*

28 U.S.C. § 157(c) ............................................................................................. 13, 20

28 U.S.C. § 157(d) ................................................................................................ 16

28 U.S.C. § 158(a) ................................................................................................. 1

28 U.S.C. § 1292(b) .............................................................................................. 22

Federal Rule of Bankruptcy Procedure 5011 ...................................................... 18

Federal Rule of Bankruptcy Procedure 8001 ........................................................ 1

Federal Rule of Bankruptcy Procedure 8002 ........................................................ 1

Federal Rule of Bankruptcy Procedure 8003 ........................................................ 1

Federal Rule of Bankruptcy Procedure 9033 .................................................... 4, 21

## MISCELLANEOUS

3 Collier on Bankruptcy ¶ 3.01 .......................................................................... 37

1 Norton Bankr. L. & Prac. 2d § 4:69.................................................................. 16

6 Norton Bankr. L. & Prac. 2d, § 148:15 ............................................................ 21

To the United States District Court for the Southern District of New York:

Pursuant to 28 U.S.C. § 158(a)(3) and Rules 8001, 8002, and 8003 of the Federal Rules of Bankruptcy Procedure, defendants Citigroup Inc. ("Citigroup"), Barclays PLC ("Barclays") and Deutsche Bank AG ("Deutsche Bank") and their respective co-defendant affiliates[1] (together, the "Bank Defendants"), respectfully submit this joint memorandum of law in support of their motion (the "Motion for Leave") for leave to appeal the order (the "Core Order") of the Bankruptcy Court for the Southern District of New York (Gonzalez, J.) (the "Bankruptcy Court") determining that three common law claims in the above-captioned adversary proceeding are core claims pursuant to 28 U.S.C. § 157(b)(2)(B) and (C) ("Section 157(b)(2)(B) and (C)").[2]

## PRELIMINARY STATEMENT

While this motion requires consideration of a compelling constitutional issue concerning the limits of bankruptcy court jurisdiction under Articles I and III of the United States Constitution, the urgent need for appellate review rests on principles of fundamental fairness and judicial economy. In the MegaClaim litigation (defined below), Enron has sued the Bank Defendants in the United States Bankruptcy Court for billions

---

[1]    The Citigroup co-defendant affiliates are:  Citibank, N.A.; Citigroup Global Markets Inc.; Citicorp North America, Inc.; Citigroup Financial Products Inc.; CXC LLC; Corporate Asset Funding Company, LLC; and Corporate Receivables Corporation, LLC.  The Barclays' co-defendant affiliates are:  Barclays Bank PLC; Barclays Capital Inc.; Barclays Capital Securities Limited; Barclays Physical Trading Limited; and Barclays Metals Limited.  The Deutsche Bank co-defendant affiliates are: Deutsche Bank Trust Company Americas; Deutsche Bank Securities Inc.; Deutsche Bank Luxembourg, S.A.; Deutsche Bank Trust Company Delaware; Deutsche Bank Trust Corporation; Bankers Trust International plc; BT Commercial Corp.; DB Green, Inc.; Deutsche Leasing New York Corp.; Seneca Delaware, Inc.; Deutsche Bank S.A.; BT Ever, Inc.; and Seneca Leasing Partners, L.P.

[2]    *Enron Corp.* v. *Citigroup, Inc. (In re Enron Corp.)*, Ch.11 Case No. 01-16034, Adv. No. 03-9266, 2006 WL 2338020 (Bankr. S.D.N.Y. Aug. 14, 2006).

of dollars of avoidable transfers; it has combined those avoidance claims with three common law counts that seek to hold the Bank Defendants responsible for virtually all of Enron's tens of billions of dollars of indebtedness.

The Bank Defendants have demanded a jury trial in the MegaClaim litigation. In furtherance of that right, the Bank Defendants will move in the United States District Court to withdraw the reference of the MegaClaim to that forum under 28 U.S.C. §§ 157(d) and (e). An element in the district court's consideration of the withdrawal of the reference motion will concern the core/non-core nature of the common law claims in the MegaClaim.

The statutory and case law directives conflict as to how the Bank Defendants should obtain a determination that the common law claims are (or are not) within the Bankruptcy Court's core jurisdiction. Specifically, section 157(d) of title 28 requires parties to file a motion to withdraw the reference in the district court. 28 U.S.C. § 157(d). Yet, section 157(b)(3) of title 28 (and many cases interpreting it) unambiguously states that the *bankruptcy court judge,* not the district court judge, initially determines whether a proceeding is core or non-core. 28 U.S.C. § 157(b)(3).

The statute thus creates an anomalous two-step process: to withdraw the reference of a case, the Bank Defendants must file a motion with the district court, but must first have the bankruptcy court determine one of the factors that the district court analyzes when deciding whether to grant the withdrawal motion. Significantly, this statutory scheme leaves unanswered what effect the bankruptcy court's initial core/non-core determination has on the district court's analysis of the withdrawal motion. More problematically (and of immediate concern here), decisions suggest that absent separate

appellate review, the bankruptcy court's determination of the core/non-core question binds the district court in its consideration of a motion to withdraw the reference.

In his August 14, 2006 decision ("Core Opinion") and the Core Order, Judge Gonzalez erroneously ruled that all of the claims in the MegaClaim are core. Notably, the Bankruptcy Court concluded that the legal nature of a non-core claim may be transformed if it shares operative *facts* -- rather than legal rights -- with core claims. The Bankruptcy Court also failed to consider the nature of each claim standing alone. Instead, it found that the traditionally non-core claims were core based on a "logical connection" between the non-core claims and the creditor's proofs of claim, a fact-driven "predominantly core" or "intertwinement"-based approach that violates the Supreme Court's constitutional holding in *Marathon*.[3] Finally, the Core Opinion effectively propounds a rule under which all claims against a creditor become core whenever the creditor files a proof of claim against the debtor's estate. This *per se*, bright-line approach creates an open-ended, limitless construction of the Bankruptcy Court's core jurisdiction that violates the constitutional limits of Article I, invades the exclusive province of the Article III courts, and would result in a great disincentive to all creditors to participate in the chapter 11 process.

The risk that the Core Order may become binding on the Bank Defendants' motion to withdraw the reference leaves the Bank Defendants with no option but to seek leave from this Court for an immediate appeal to reverse and correct the actions of the Bankruptcy Court. It also justifies granting the Motion for Leave.

---

[3]    *Northern Pipeline Constr. Co.* v. *Marathon Pipe Line Co.*, 458 U.S. 50 (1982).

The procedural quandary that the statutory scheme and case law create has profound ramifications. *First*, to preserve their Seventh Amendment jury trial rights over the non-core claims, the Bank Defendants must file a motion to withdraw the reference. Neither the Bank Defendants -- nor the district court -- should be bound by the Bankruptcy Court's error treating these claims as core. If the district court -- forced to accept as final a lower court determination of the core/non-core nature of the underlying claims -- denies the motion to withdraw the reference and the Bank Defendants' asserted jury trial right on the basis of that flawed determination, a real risk exists that the parties will have to proceed to trial of the MegaClaim before the Bankruptcy Court, and thereafter appeal the denial of the motion to withdraw the reference. Should the Bank Defendants prevail in such an appeal, the parties would need to "do over" the entire trial, this time before a jury, thus creating excessive delay and duplicative costs for all parties and the judiciary.

*Second*, the core/non-core determination goes to the heart of the bankruptcy court's ability to adjudicate these claims and its judicial method in doing so. While a bankruptcy court may preside over a non-core matter, it can only enter final orders and findings of fact on *core* matters. *See* 28 U.S.C. § 157(b)(2). On non-core matters, it must submit written proposed findings of fact and conclusions of law to the district court for its *de novo* review. *See* 28 U.S.C. § 157(c). Bankruptcy Rule 9033 sets out in detail the procedures that the Bankruptcy Court must follow in the disposition of non-core proceedings -- procedures unavailable if the Bankruptcy Court deals with all proceedings as core matters. Stated differently, determining the scope of the Bankruptcy Court's core jurisdiction effectively decides whether the bankruptcy judge acts with all

the powers of a judge, on the one hand, or functions more narrowly, as a judicial officer akin to a magistrate, adjunct to the district court, on the other.

The Core Order thus determines the procedural foundation of the underlying trial. Knowing the correct process to follow at the outset of this case presents a substantive matter of basic fairness, particularly given the stakes. Moreover, if the Core Order stands and is not overturned until *after* the trial concludes, the parties will have to redo the entire trial. This Court can avoid such gross inefficiencies if it grants the Bank Defendants' motion for immediate review of the Core Order.

For all these reasons, the Bank Defendants respectfully request that this Court grant the Motion for Leave and agree to review the Bankruptcy Court's interlocutory Core Order.

## STATEMENT OF FACTS

Enron Corporation and certain affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code commencing on December 2, 2001 (the "Petition Date"). On July 15, 2004, the Court entered an Order confirming Enron's Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors (the "Plan"). The Plan became effective on November 17, 2004. (Docket No. 19,759). Enron has begun making distributions under the Plan.

On August 1, 2002, the Bankruptcy Court entered an order establishing October 15, 2002 as the last date by which creditors must file proofs of claim. (Docket No. 5518). The Bank Defendants each filed claims against Enron's estates (collectively, the "Bank Defendants' Proofs of Claim"). For example, Barclays filed proofs of claim (the "Barclays' Proofs of Claim") seeking in excess of $85 million, plus unliquidated amounts. One of the Barclays' Proofs of Claim concerns a transaction (the "JT Holdings

Transaction") which Enron asserts was part of an alleged scheme between Enron and the

Bank Defendants by which the Bank Defendants assisted Enron's senior officers and

managers in manipulating and misstating Enron's financial condition.  The Barclays'

Proof of Claim relating to the JT Holdings Transaction also asserts a claim for

contribution, indemnification and reimbursement.  *Enron Corp.* v. *Citigroup Inc. (In re

Enron Corp.)*, Ch. 11 Case No. 01-16034, Adv. No. 03-09266, 2006 WL 2338020, at *1

(Bankr. S.D.N.Y. Aug. 14, 2006) (describing Barclays' Proofs of Claim).

   Citigroup and Deutsche Bank also filed proofs of claim.  Like Barclays'

Proofs of Claims, Citigroup and Deutsche Bank's proofs of claim seek in excess of

$85 million.  Some of the proofs of claim filed by Citigroup and Deutsche Bank also seek

amounts due in connection with transactions which Enron claims were part of the

"scheme" between Enron and the Bank Defendants described above.  Again, like

Barclays' Proofs of Claim, proofs of claim by Citigroup and Deutsche Bank assert claims

for contribution, indemnification and reimbursement.

   On September 24, 2003, Enron and certain of its affiliates (collectively

"Enron") filed this adversary proceeding (the "MegaClaim") against Citigroup and

various other financial institutions.[4]  While the alleged fraud at Enron relates to *Enron's*

financial statements, and *Enron's* senior officers (and many others) perpetrated that fraud

(which was pervasive and reached the highest levels throughout *Enron*), (*see, e.g.,* Cplt.

¶¶ 1, 138-49, 155-56, 173-80, 188, 198-221), Enron seeks to shift responsibility to the

Bank Defendants for its downfall.  Specifically, Enron alleges in the MegaClaim that the

Bank Defendants participated in a multi-year scheme to manipulate Enron's financial

---

[4] A copy of the Complaint, as amended, is attached hereto as Exhibit <u>A</u>.

statements and misstate its financial condition. (*See, e.g.,* Cplt. ¶ 1). It alleges that the Bank Defendants did so principally by designing and implementing structured finance transactions, knowing that Enron was improperly recording the financial effects of these transactions. (*E.g.,* Cplt. ¶ 2).

Based on these allegations, Enron asserts three self-titled "common law" counts in the MegaClaim complaint against Barclays, Citigroup and Deutsche Bank (among others): (i) aiding and abetting breach of fiduciary duty (Cplt. Count 74), (ii) aiding and abetting fraud (Cplt. Count 75), and (iii) committing unlawful civil conspiracy (Cplt. Count 76) (collectively, the "Common Law Counts"). While Enron did not quantify its damages on these counts, it appears to seek billions of dollars in damages from the Bank Defendants in connection with these claims.[5]

Separately (and independent of the Common Law Counts), the MegaClaim[6] asserts additional bankruptcy causes of action against the Bank Defendants, including counts to avoid and recover allegedly preferential and fraudulent transfers, and

---

[5]    In the MegaClaim complaint, Enron alleges the following damages in connection with its common law aiding and abetting claims against each of the Bank Defendants:

As a direct and proximate result of the Bank Defendants' actions and omissions, Enron was injured and damaged in at least the following ways: (1) its debt was wrongfully expanded out of all proportion to its ability to repay and it became insolvent and thereafter deeply insolvent; (2) it was forced to file bankruptcy and incurred and continues to incur substantial legal and administrative costs, as well as the costs of governmental investigations; (3) its relationships with its customers, suppliers and employees were undermined; and (4) its assets were dissipated.

(Cplt. ¶¶ 1273, 1595, 1600.)

[6]    Enron amended the Complaint on December 1, 2003, April 30, 2004, June 14, 2004 and January 10, 2005.

counts to disallow and equitably subordinate the Bank Defendants' claims against Enron. (Cplt. Counts 1-5, 20-29, 30-36, 65-73B).  For all intents and purposes, these counts seek to disallow, equitably subordinate, or avoid and recover as fraudulent or preferential transfers each transfer that Enron or its affiliates made in connection with any of the structured finance transactions that Enron claims helped perpetrate its massive fraud.

Barclays and Citigroup have answered the MegaClaim complaint. Deutsche Bank filed a partial motion to dismiss on February 17, 2004, which remains pending.[7]  The Bank Defendants (among other things) have each disputed the Bankruptcy Court's jurisdiction over the non-core claims, and have also demanded a jury trial on these claims.  In addition, each of the Bank Defendants -- either in their respective answers or in a proof of claim -- has asserted set-off and recoupment rights against the Debtors.

According to the August 29, 2006, scheduling order in this case, the completion of discovery in the MegaClaim will not occur until May 2007.  (Amended Scheduling Order at 6).  (Docket No. 553).  The parties must file dispositive motions by June 2007, with trial scheduled for October 2007.  (*Id.*).

On July 26, 2005, Barclays filed its motion in the Bankruptcy Court for an initial determination finding the Common Law Counts are non-core.  (Motion For Initial Determination Under 28 U.S.C. § 157(b)(3) That Certain Claims Are Non-Core Claims

---

[7]    The Bankruptcy Court heard oral argument on Deutsche Bank's motion to dismiss on January 27, 2005.  It has not yet rendered a decision on the motion.

("Barclays Non-Core Motion") and supporting memorandum of law).  (Docket Nos. 363,

364).  Barclays argued that the Common Law Counts are non-core claims because,

among other things, the claims involve state law rights, exist independently of Enron's

bankruptcy case, and do not fall within one of the examples of "core" matters specified in

Section 157(b)(2).

On September 12, 2005, Enron filed an objection to Barclays' motion

("Enron's Objection") on the grounds that (a) Barclays' Proofs of Claim and assertion of

set-off rights rendered Enron's otherwise non-core claims core and (b) since Enron's core

claims were so factually intertwined with its non-core claims, and the adversary

proceeding itself as a whole raised predominantly core claims, the entire adversary

proceeding was a core proceeding.  (Enron Objection at 27-29).  (Docket No. 386).

On March 17, 2006, Barclays filed its Response to Enron's Objection to

Motion for Initial Determination Under 28 U.S.C. § 157(b)(3) That Certain Claims Are

Non-Core Claims ("Barclays' Response") (Docket No. 485).  It argued that the filing of

proofs of claim and assertion of set-off rights did not provide a basis for converting

unrelated non-core claims into core claims.  (Barclays' Response at 2-9).  It further

argued that the "intertwinement" or "predominantly core" approaches were

constitutionally infirm and effectively eviscerated the Supreme Court's holding in

*Marathon*.  (*Id.* at 10-12).  On April 7, 2006, Enron filed a sur-reply.  (Plaintiffs' Sur-

Reply In Support Of Their Objection To The Barclays Defendants' Motion For Initial

Determination Under 28 U.S.C. § 157(b)(3) That Certain Claims Are Non-Core Claims).

(Docket No. 494).

On April 28, 2006, Citigroup filed its Joinder by Citigroup Defendants In Barclays' Motion And Memorandum Of Law In Support of Motion For Initial Determination Under 28 U.S.C. § 157(b)(3) That Certain Claims Are Non-Core ("Citigroup Joinder").  (Docket No. 503).  In its joinder, Citigroup adopted Barclays' arguments and further elaborated on the constitutional principles underlying *Marathon*, and the resulting limitations on the Bankruptcy Court's core jurisdiction.  Deutsche Bank also joined Barclays' Motion.  (*See* The Deutsche Bank Entities' Joinder In The Barclays Defendants' Motion For Initial Determination Under 28 U.S.C. § 157(b)(3) That Certain Claims Are Non-Core Claims).  (Docket No. 518).

On June 19, 2006, Enron filed a single objection to all the joinders.  It made essentially the same arguments against Citigroup, Deutsche Bank and the other defendants that had filed joinders as it had made against Barclays.  (Plaintiffs' Objection To The Joinder Of The Citigroup Defendants, The Deutsche Bank Defendants, And The Merrill Lynch Defendants In The Barclays Defendants' Motion For Initial Determination Under 28 U.S.C. § 157(b)(3) That Certain Claims Are Non-Core Claims).  (Docket No. 534).

The Bankruptcy Court heard oral argument on the matter on June 22, 2006.  On August 14, 2006, it issued its Opinion Concerning Determination Pursuant To 28 U.S.C. § 157(b)(3) in which it held that the Common Law Counts against Barclays and similarly situated co-defendants, including Citigroup and Deutsche Bank, were core claims pursuant to Sections 157(b)(2)(B) and (C) and that it thus had jurisdiction over the Common Law Counts.  (Core Opinion at 13).  (Docket No. 547).  On August 24, 2006, the Bankruptcy Court entered an order implementing its opinion.  (Docket No. 549).

Enron and the Bank Defendants subsequently entered into a consensual stipulation extending the date by which the Bank Defendants may file a notice of appeal and motion for leave to appeal the Core Order to September 25, 2006. The Bankruptcy Court so-ordered the stipulation on September 5, 2006. (Docket No. 555). Accordingly, on September 25, 2006, the Bank Defendants filed a notice of appeal and a joint motion for leave to file interlocutory appeal, along with this Joint Memorandum of Law in Support of Their Motions for Leave to Appeal the Decision of the Bankruptcy Court Concerning Determination Pursuant to 28 U.S.C. § 157(b)(3).

## LEGAL ISSUES ON APPEAL

This appeal raises the following legal issues:

1. When confronted with an adversary proceeding that presents both core and non-core claims, did the Bankruptcy Court err in concluding that, as a matter of law, the non-core claims could be transformed into core claims?

2. Did the Bankruptcy Court err in holding, as a matter of law, that non-core claims become core whenever a creditor files a proof of claim or when counterclaims are asserted?

## RELIEF SOUGHT

The Bank Defendants respectfully request that this Court grant leave to appeal the Core Order and reverse the Bankruptcy Court ruling on the core nature of the Common Law Counts.

## RELEVANT STATUTES

The Motion for Leave raises the issue of the constitutional limits of Sections 157(b)(1) and (b)(2)(B) and (C) of the Bankruptcy Code and the outer limits of the Bankruptcy Code's core jurisdiction. These sections provide:

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred

under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to--

> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
> (C) counterclaims by the estate against persons filing claims against the estate;
> ….

28 U.S.C. § 157(b)(1), (2)(B), (2)(C).[8]

## THE MOTION FOR LEAVE MEETS THE STANDARD FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 158(a)(3)

This case presents one of those rare combinations of legal error and procedural quandary that warrants immediate review of the Bankruptcy Court's interlocutory order.  *See, e.g., Enron Corp.* v. *Springfield Assocs., L.L.C. (In re Enron Corp.),* Ch. 11 Case No. 01-16034, Adv. Nos. 05-01025, 05-01029, 05-01074, 05-01105, 05-010, 2006 WL 2548592, at *8 (S.D.N.Y. Sept. 5, 2006) (granting leave to appeal interlocutory order where exceptional circumstances were present).

## I.     THE CORE ORDER'S LEGAL ERRORS WILL FATALLY INFECT THE LITIGATION OF THIS UNDERLYING MULTI-BILLION DOLLAR CASE AND SHOULD BE REVERSED.

The Bank Defendants sought an initial determination from the Bankruptcy Court that the Common Law Counts are non-core claims as a condition precedent to seeking to withdraw the reference of those counts from the Bankruptcy Court.  The Core

---

[8]     For ease of reference, the Bank Defendants attach a copy of Section 157(b) in its entirety as Exhibit <u>B</u> to this brief.

Order, which erroneously defines the scope of the Bankruptcy Court's jurisdiction over the multi-billion dollar claims at issue here, and which informs consideration of the withdrawal of the reference motion and procedural context in which the trial will take place, fatally infects the entire proceedings and should be reversed.

> **A.    The Scope of "Core" Jurisdiction.**

Section 157 of title 28 establishes a bankruptcy court's jurisdiction. 28 U.S.C. § 157. The statute divides bankruptcy proceedings into two principal categories: "core" and "non-core." *See* 28 U.S.C. § 157(b); *Luan Investment S.E.* v. *Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 228 (2d Cir. 2002). In core proceedings, the bankruptcy court has comprehensive power and may enter appropriate orders and judgments. *See* 28 U.S.C. § 157(b)(1); *Petrie Retail*, 304 F.3d at 228. In non-core proceedings, which otherwise relate to a bankruptcy case under title 11, the bankruptcy court may only submit proposed findings of fact and conclusions of law to the district court for *de novo* review. *See* 28 U.S.C. § 157(c)(1); *Petrie Retail*, 304 F.3d at 228.

The United States Supreme Court first articulated the core/non-core distinction in *Northern Pipeline Constr. Co.* v. *Marathon Pipeline Co.*, 458 U.S. 50 (1982). In *Marathon*, the Supreme Court held that "Congress may not vest in a non-Article III court, [such as the bankruptcy court], the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law[.]" *Petrie Retail*, 304 F.3d at 229 (quoting *Thomas* v. *Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 584 (1985) (discussing the *Marathon* holding)). In considering the constitutionality of the bankruptcy court's Article I jurisdiction, the Supreme Court noted that "the restructuring of debtor-creditor relations, ***which is at the core of the federal bankruptcy power***, must be distinguished from the adjudication of state-created private

rights, such as the right to recover contract damages[.]" *Marathon*, 458 U.S. at 71 (emphasis added).

Congress enacted Section 157 to codify this core/non-core distinction and implement *Marathon*. *Petrie Retail,* 304 F.3d at 229 (citing *In re S.G. Phillips Constrs., Inc.* v. *City of Burlington (In re S.G. Phillips Constrs., Inc.)*, 45 F.3d 702, 705 (2d Cir. 1995) (citing *Arnold Print Works, Inc.* v. *Apkin (In re Arnold Print Works, Inc.),* 815 F.2d 165, 166-67 (1st Cir. 1987) (Breyer, J.))). Section 157(b)(2) accordingly provides a non-exclusive list of proceedings that Congress deemed core.  28 U.S.C. § 157(b)(2).  These include, for example, matters concerning the administration of the estate (28 U.S.C. § 157(b)(2)(A)), allowance or disallowance of claims against the estate (28 U.S.C. § 157(b)(2)(B)), counterclaims by the estate against persons filing claims against the estate (28 U.S.C. § 157(b)(2)(C)), proceedings to determine, avoid or recover preferences (28 U.S.C. § 157(b)(2)(F)), proceedings to determine, avoid or recover fraudulent conveyances (28 U.S.C. § 157(b)(2)(K)), and other proceedings affecting debtor-creditor relationships (28 U.S.C. § 157(b)(2)(O)).

Although the Section 157(b)(2) categories at first glance appear so broad as to include almost any matter relating to bankruptcy, *Marathon* does not permit such an expansive interpretation.  *Orion Pictures Corp.* v. *Showtime Networks, Inc. (In re Orion Pictures Corp.)*,  4 F.3d 1095, 1102 (2d Cir. 1993) ("While it is clear that Congress intended § 157(b)(2)(A)'s designation of matters relating to the administration of the estate as core to encompass a wide range of matters, there is no evidence of any Congressional intent to contravene the Supreme Court's holding in *Marathon*."); *see also Resolution Trust Corp.* v. *Best Products Co., Inc. (In re Best Products Co., Inc.)*, 68 F.3d

26, 31 (2d Cir. 1995); *Ben Cooper, Inc.* v. *Ins. Co. of Pennsylvania (In re Ben Cooper, Inc.)*, 896 F.2d 1394, 1398 (2d Cir.), *vacated*, 498 U.S. 964 (1990), *reinstated*, 924 F.2d 36 (2d Cir. 1991).

   The Second Circuit has repeatedly admonished lower courts to resist as erroneous "an open-ended, limitless construction [of Section 157(b)(2)]. A determination of whether a matter is 'core' depends on the nature of the proceeding." *Best Products*, 68 F.3d at 31; *United States Lines, Inc.* v. *American S.S. Owners Mut. Protection & Indem. Ass'n (In re United States Lines, Inc.)*, 197 F.3d 631, 637 (2d Cir. 1999). A matter is core if it directly affects debtor-creditor relations. Conversely, a matter is non-core if it has little or no relation to the Bankruptcy Code, does not arise under the federal bankruptcy law, and would exist in the absence of a bankruptcy case. *See Wechsler* v. *Squadron, Ellenoff, Plesent, & Sheinfeld LLP*, 201 B.R. 635, 639 (S.D.N.Y. 1996); *Interconnect Tel. Svcs., Inc.* v. *Farren*, 59 B.R. 397, 400 (S.D.N.Y. 1986) ("non-core proceedings consist of those claims arising under traditional state law which must be determined by state law. They are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or state court.") (internal quotations and citations omitted).

   As the Bankruptcy Court acknowledged, *Enron Corp.*, 2006 WL 2338020, at *2, under these principles, the Common Law Counts in isolation are non-core claims because they arise under state law, vindicate private rights, exist independently from Enron's bankruptcy case and are pre-petition claims. As detailed below, the Bankruptcy Court then abandoned its initial, correct determination and instead adopted an erroneous one.

## B.    The Bank Defendants' Withdrawal Motion Under Section 157(d).

Like the core/non-core distinction of Section 157(b)(2), Congress designed the provision for withdrawing the reference in section 157(d) of title 28 ("Section 157(d)") to satisfy the Article III constitutional requirements *Marathon* articulated.  1 Norton Bankr. L. & Prac. 2d § 4:69 (Sept. 2006).  Section 157(d) intends to provide life-tenured district judges with control over referred bankruptcy cases and proceedings.  *Id.*  Thus, "while all bankruptcy cases and proceedings are referred in omnibus fashion by the district courts to the bankruptcy judges of that district pursuant to 28 U.S.C.A. § 157(a), [Section 157(d)] provides a mechanism for the withdrawal, in whole or in part, of any referred case or proceeding." *Id.*; *see also* Order of Acting Chief Judge Robert J. Ward dated July 10, 1984 (standing order of district court in this district referring cases to the bankruptcy court).

Section 157(d) provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

District courts in this circuit consider a number of factors when evaluating whether "cause" exists to withdraw the reference.  *Orion,* 4 F.3d at 1101 (citing cases).  These factors include: (1) whether the claim is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is the delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5) what will

prevent forum shopping, and (6) other related factors. *South Street Seaport Ltd. P'Ship* v. *Burger Boys, Inc. (In re Burger Boys, Inc.)*, 94 F.3d 755, 762 (2d Cir. 1996) (citations omitted); *Prudential Secs. Credit Corp., LLC* v. *Pacific Pointe Escrow, Inc. (In re AppOnline.com, Inc.)*, 303 B.R. 723, 726 (E.D.N.Y. 2004) (including the presence of a jury demand as a notable factor).

            In *Orion,* the Second Circuit directed district courts to "first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn," when considering withdrawal of the reference. *Orion*, 4 F.3d at 1101. The core/non-core determination relates to efficiency because "a bankruptcy court's determination on non-core matters is subject to *de novo* review by the district court [which] could lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court."[9] *Id.*

---

[9]    Moreover, case law in this district suggests that a motion to withdraw the reference may be premature if filed during the early stages of a case. *E.g., Enron Power Marketing, Inc.* v. *Virginia Elec. and Power Co. (In re Enron Corp.),* 318 B.R. 273, 275 (S.D.N.Y. 2004) (withdrawal of the reference premature where case was not trial ready); *Hunnicutt Co., Inc.* v. *TJX Cos., Inc. (In re Ames Department Stores, Inc.)*, 190 B.R. 157, 163 (S.D.N.Y. 1995) (same). Here, the Bank Defendants have taken the first step necessary to preserve their Seventh Amendment jury trial right. *Orion*, 4 F.3d at 1101-02 ("[i]f a case is non-core and a jury demand has been filed, a district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference." ); *131 Liquidating Corp.* v. *LaSalle Capital Group, Inc. (In re 131 Liquidating Corp.)*, 222 B.R. 209, 213 (S.D.N.Y. 1998) (granting motion to withdraw the reference where "[a]t least one of the claims at issue is non-core and must be tried before a jury in this Court.").

C.    **The Statutory Conundrum of the Initial Core Determination Under Section 157(b)(3).**

Section 157(d) and Bankruptcy Rule 5011(a) provide that a district court must hear a motion to withdraw the reference. *See* 28 U.S.C. § 157(d); F.R.B.P. 5011(a); *Cooper* v. *Howitt (In re 1733 Ridge Road East, Inc.)*, 125 B.R. 722, 724 (W.D.N.Y. 1991). Section 157(b)(3), on the other hand, expressly states that the bankruptcy judge "shall" determine whether a proceeding is core or non-core. *See* 28 U.S.C. § 157(b)(3); *1733 Ridge Road East*, 125 B.R. at 724. These conflicting statutory provisions, coupled with *Orion's* language that "[a] *district court* considering whether to withdraw the reference should *first* evaluate whether the claim is core or non-core," have generated confusion about which court makes the core/non-core determination in the context of a withdrawal motion. *Orion,* 4 F.3d at 1101 (emphasis added).

In an abundance of caution, the Bank Defendants followed the developing trend in this district that requires a party seeking to withdraw the reference to obtain an initial core/non-core determination from the bankruptcy court. *See, e.g., Enron Power Marketing, Inc.* v. *Virginia Elec. and Power Co. (In re Enron Corp.),* 318 B.R. 273, 275 (S.D.N.Y. 2004); *Schneider* v. *Riddick III (In re Formica, Corp.)*, 305 B.R. 147, 149 (S.D.N.Y. 2004); *United Illuminating Co.* v. *Enron Power Marketing, Inc. (In re Enron Corp.)*, No. 03 Civ. 5078, 2003 WL 22171695, at *2 (S.D.N.Y. Sept. 22, 2003) ("UIL's motion is premature. [The bankruptcy judge] has not yet made a determination whether this action is core or non-core, and there is no need for this court to preempt such a determination....UIL has provided no good reason to depart from the practice of allowing the bankruptcy judge in the first instance to determine if a proceeding is core or non-core."); *Ranch 1 Metro, Inc.* v. *State Nat'l Ins. Co. (In re Ranch 1 Metro, Inc.)*, No. C2

Civ. 4417 (WK), 2002 WL 31175184, at *3 (S.D.N.Y. Sept. 27, 2002) (denying motion

to withdraw the reference as premature because bankruptcy court had not made core/non-

core finding, notwithstanding absence of objection to the motion).

        The Bank Defendants now find themselves in a classic Catch-22:  having

complied with Section 157(b)(3), the Bank Defendants confront a Core Order that, absent

appeal, may bind a district court's consideration of their motion to withdraw the

reference.  *See Horwitz* v. *Sheldon (In re Donald Sheldon & Co., Inc.*), No. 92 Civ. 6834

(JSM), 1992 WL 396885, at *2 (S.D.N.Y. Dec. 17, 1992) ("The determination of whether

a proceeding is core can only by reviewed by the District Court on a proper, timely

appeal from that determination.  Thus, an order entered by the Bankruptcy Court that the

proceeding is core is binding on the District Court in a motion to withdraw the reference

until and unless the order is overturned on appeal."); *Lesser* v. *A-Z Assocs. (In re Lion

Capital Group)*, 63 B.R. 199, 209 (S.D.N.Y. 1985) (same).

        While the core/non-core determination is just one factor that the district

court will consider when granting the motion to withdraw the reference, *Wechsler*, 201

B.R. at 640 (citing *Houbigant, Inc.* v. *ACB Mercantile, Inc. (In re Houbigant)*, 185 B.R.

680, 686-87 (S.D.N.Y. 1995)), it nonetheless remains a factor.  As a result, absent

judicial review of the Core Order now, the Bank Defendants may be forced to proceed on

the withdrawal motion with one factor already decided erroneously against them.  No

litigant should bear the added burden of such an inherently unjust result, and the Bank

Defendants (and the district court deciding the withdrawal motion) should not be bound

by the Bankruptcy Court's erroneous decision.

**D.    Granting Immediate Leave to Appeal Promotes Judicial Efficiency Because it Will Determine, Before Trial, the Proper Role of the Bankruptcy Court and Appropriate Procedures to be Followed.**

The Core Order goes to the heart of the Bankruptcy Court's ability to adjudicate the Common Law Counts.  The core/non-core distinction not only affects the availability of the Bank Defendants' jury trial right, but also shapes the conduct of a trial in the absence of a jury trial right.  In the latter circumstance, it determines whether the Bankruptcy Judge acts as a judge with comprehensive power to enter final orders and judgments, or functions more narrowly as a magistrate adjunct to the district court.  28 U.S.C. §§ 157(b)(2), (c)(1).  The role of the Bankruptcy Judge, in turn, defines the manner in which the case will be tried:  Bankruptcy Rule 7052 defines the Bankruptcy Judge's duties and appropriate procedures in connection with core claims, and Bankruptcy Rule 9033 defines those duties and the appropriate procedures for rendering findings of fact and conclusions of law in connection with non-core claims.  *See, e.g., Halper* v. *Halper*, 164 F.3d 830, 836 (3d Cir. 1999) ("a proceeding's core or non-core nature is crucial in bankruptcy cases because it defines both the extent of the Bankruptcy Court's jurisdiction, and the standard by which the District Court reviews its factual findings.")

Here, the Core Order wrongly concludes that the Common Law Counts are core and that the Bankruptcy Court, accordingly, has comprehensive power to enter final orders and binding judgments.  28 U.S.C. § 157(b)(1).  If not challenged now (and if the Bank Defendants do not succeed in withdrawing the reference), the Bankruptcy Court will conduct the trial on these multi-billion dollar claims under Bankruptcy Rule 7052 rather than under Bankruptcy Rule 9033.  Adjudicating the Common Law Counts within the wrong procedural framework would inflict a substantive injustice on the Bank

Defendants. To illustrate: in non-core matters the Bankruptcy Judge files proposed findings of fact and conclusions of law for *de novo* review which the clerk then serves on the parties. F.R.B.P. 9033(a). Parties then have an opportunity to object and challenge those findings and conclusions. F.R.B.P. 9033(b). Upon its *de novo* review, the District Court may accept, reject or modify the proposed findings of fact or conclusions of law, receive further evidence or recommit the matter to the Bankruptcy Court with instructions. F.R.B.P. 9033(d). These procedural and substantive safeguards are entirely absent under Bankruptcy Rule 7052.

Moreover, if the Core Order remains standing and is not overturned until *after* trial concludes, the parties may have to relitigate the entire case. By granting the Motion for Leave, this Court can avoid such potentially staggering inefficiency. It can also greatly benefit the adjudication of this case by defining the procedurally and substantively proper role of the Bankruptcy Court -- magistrate or fully empowered judge -- before the submission of dispositive motions and the trial. All these considerations warrant immediate review of the Core Order.

## II. THE BANKRUPTCY COURT'S EXPANSIVE JURISDICTIONAL DETERMINATION VIOLATES ARTICLE III OF THE CONSTITUTION AND SHOULD BE OVERTURNED.

The Motion for Leave, which seeks review of the Bankruptcy Court's jurisdictional determination regarding multi-billion dollar state law claims, fully satisfies the standards for interlocutory appeal. *See, e.g., Weiner's, Inc.* v. *T.G. & Y. Stores Co.*, 191 B.R. 30, 31 (S.D.N.Y. 1996) (bankruptcy court determination that claims were core was an appealable interlocutory order); 6 Norton Bankr. L. & Prac. 2d, § 148:15 (citing cases in which leave to appeal was granted to permit review of bankruptcy court orders determining whether proceeding is core or non-core).

District courts may exercise jurisdiction over an interlocutory bankruptcy court order when that order concerns a controlling question of law for which there is a substantial ground for a difference of opinion, the immediate resolution of which may materially advance the ultimate resolution of the litigation. *See* 28 U.S.C. § 1292(b); *Weiner's*, 191 B.R. at 31; *In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 658 (S.D.N.Y. 2005) ("In deciding whether to grant leave to appeal under section 158(a)(3), reviewing courts have applied the standards set forth in 28 U.S.C. § 1292(b)."). Leave to appeal is discretionary, and district courts may adopt a more pragmatic and liberal approach to determining the appealability of bankruptcy court orders. *BancBoston Real Estate Capital Corp.* v. *JBI Assocs. Ltd. P'Ship (In re Jackson Brook Inst., Inc.)*, 227 B.R. 569, 582 (D. Me. 1998) ("This Court will thus analyze the appealability of the Bankruptcy Order in this case using the factors set out in section 1292(b) to guide its analysis while adopting the pragmatic and liberal approach required in determining the appealability of an interlocutory order in a bankruptcy proceeding.")

Here, the Core Order defines the power of the Bankruptcy Court to adjudicate the Common Law Counts. As such, it is immediately appealable. *Jackson Brook Inst.,* 227 B.R. at 582 (noting that courts have granted leave to appeal questions regarding a court's jurisdiction and that treatises regard orders "that go to the power of a court immediately appealable."). In addition, defining the proper procedural and substantive role of the Bankruptcy Court now manifestly advances resolution of the underlying case since it potentially prevents a costly and time-consuming re-trial. *See Weiner's,* 131 B.R. at 31 (accepting interlocutory appeal in part because jurisdictional determination that bankruptcy court cannot hear tort action "will advance the ultimate

termination of the litigation"). The Motion for Leave also presents a pure question of law. *Back* v. *LTV Corp. (In re Chateaugay Corp.)*, 213 B.R. 633, 636 (S.D.N.Y. 1997) (bankruptcy court's jurisdictional determination "involves a controlling issue of law"); *Weiner's,* 191 B.R. at 31 (accepting appeal of core/non-core determination); *Jackson Brook Inst.,* 227 B.R. at 583.

   In addition, the Motion for Leave raises issues on which a substantial ground for difference of opinion exists. *In re Lloyd's American Trust Funds Litig.*, No. 96 CIV-1262, 1997 WL 458739, at *5 (S.D.N.Y. Aug. 12, 1997) (under § 1292(b), a substantial ground for difference of opinion on the controlling question of law exists if: "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit.") (citations omitted); *see also Laborers Local 17 Health & Benefit Fund* v. *Philip Morris, Inc.*, 7 F. Supp.2d 294, 296-97 (S.D.N.Y. 1998) (finding substantial ground for difference of opinion on an issue on which courts had "come to widely varying conclusions.")

   Specifically, the law in this Circuit remains unsettled as to how a bankruptcy court, when confronted with an adversary proceeding that raises both core and non-core claims, should analyze the scope of its core jurisdiction over such claims. Notably, no Second Circuit case has endorsed the Bankruptcy Court's "logical connection" test, which itself assumes a "predominantly core" or "intertwinement" approach to determining core jurisdiction, and lower courts in this District do not agree that such a test passes constitutional muster. Similarly, no Second Circuit case has concluded that the mere filing of a proof of claim, or the assertion of a set-off or right of

recoupment, renders all claims a debtor might assert against the creditor core.  For all these reasons, a substantial ground for difference of opinion exists.[10]

**A.      The Common Law Counts are Inherently Non-Core.**

Courts in this Circuit have consistently held that claims such as the Common Law Counts are non-core.  *E.g., Kittay* v. *Ernst & Young, LLP (In re Kleinert's, Inc.)*, 2004 WL 1878787, at *1 n.2 (S.D.N.Y. Aug. 19, 2004) (bankruptcy court held that claims for breach of contract, negligence, professional malpractice, fraud, negligent misrepresentation and aiding and abetting breach of fiduciary duties were non-core); *Official Committee of Unsecured Creditors of Corson Mfg. Co.* v. *HSBC Bank USA (In re Corson Mfg. Co.)*, Civ. Case No. 01-MC-5E, Ch. 11 Case No. 99-16855K, Adv. No. 00-1366K, 2001 WL 877394, at *2 (W.D.N.Y. Jun. 27, 2001) (claims premised on malpractice and various breaches of fiduciary duty are non-core); *Wechsler,* 201 B.R. at 638, 640  (malpractice, breach of contract and breach of fiduciary duty claims are non-core); *United Orient Bank* v. *Green (In re Green)*, 200 B.R. 296, 298-99 (S.D.N.Y. 1996) (malpractice, breach of fiduciary duty claims are non-core); *Interconnect Tel.*, 59 B.R. at 398, 400 (conspiracy to defraud, wrongful appropriation of confidential information and unfair competition are non-core claims).

---

[10]    That the very question of whether a traditionally non-core claim can become core if it is factually intertwined with the creditor's claims against the debtor's estate and the debtor's unrelated counterclaims is presently on appeal to the Second Circuit provides further evidence that this issue is one on which substantial grounds for difference of opinion exists.  (Case No. 04-5972-BK9L; cross appeal 04-6300-BK (XAP) appeal of *Ernst & Young* v. *Bankr. Servs. (In re CBI Holding Co.)*, 311 B.R. 350 (S.D.N.Y. 2004)).  Oral argument on the appeal took place on September 12, 2005.  The Second Circuit has not yet rendered a decision on the matter.

Here, the Bankruptcy Court recognized that the Common Law Counts are inherently non-core. *Enron,* 2006 WL 2338020, at *2 ("Enron acknowledges that the Common Law Counts would be considered non-core matters when analyzed in isolation."). That should have ended its inquiry. Instead, the Bankruptcy Court strayed down a constitutionally infirm analytical path in which it evaluated the nature of the Common Law Counts based on their factual relationship to Barclays' Proofs of Claim. But the Common Law Counts are non-core because of their legal nature, *not* because Enron happened to assert them along with core claims that share common facts. *Stoe* v. *Flaherty*, 436 F.3d 209, 218 (3d Cir. 2006) ("claims that 'arise in' a bankruptcy case are claims that by their nature, *not their particular factual circumstance,* could only arise in the context of a bankruptcy case.") (citing *Halper,* 164 F.3d at 836 (proceeding is "core" "if it is a proceeding that, *by its nature*, could arise only in the context of a bankruptcy case")) (emphasis added).

    **B.**    **The Bankruptcy Court's "Logical Connection" Test Is Premised on a Constitutionally Infirm "Predominantly Core" or "Intertwinement" Theory that Provides No Basis on which To Find the Common Law Counts Core.**

Citing no legal authority for its holding, the Bankruptcy Court summarily concluded that the Common Law Counts are core proceedings because they "stem from the same transaction and are logically connected" to Barclays' Proofs of Claim. (Core Opinion at 10). With good reason, courts that have considered a "predominantly core" or "intertwinement" approach to determining a bankruptcy court's core jurisdiction -- such as the one the Bankruptcy Court employed here -- seriously question its constitutionality. *See, e.g., Glinka* v. *Abraham and Rose Co., Ltd.*, No. 2:93-CV-291, 2:93-CV-329, 2:93-CV-361, 1994 WL 905714, at *10 n.14 (D. Vt. Jun. 6, 1994) (questioning whether it

would be appropriate to determine that an entire proceeding is core if the core aspects predominate and noting that a predominantly core test would not be workable where a jury demand exists); *Statutory Committee of Unsecured Creditors of Iridium Operating LLC* v. *Motorola, Inc. (In re Iridium Operating LLC),* 285 B.R. 822, 832 (S.D.N.Y. 2002) (not deciding whether court must employ a claim by claim analysis or treat a proceeding of mixed core and non-core claims as core if the claims are predominantly core); *Official Committee of FMI Forwarding Co., Inc.* v. *Union Transport Corp. (In re FMI Forwarding Co., Inc.),* 01 Civ. 9462, 2004 WL 1348956, at *6 (S.D.N.Y. Jun. 16, 2004) (noting the lack of binding authority to support a "predominance of core claims" argument and the fact that the "predominance" approach itself has been called into question by "a great many federal courts."); *but see Ernst & Young* v. *Bankruptcy Servs. Inc. (In re CBI Holding Co., Inc.),* 311 B.R. 350, 362 (S.D.N.Y. 2004) (apparently adopting factual intertwinement approach).

        Under the principles of *Marathon*, a claim is either core or it is not. 458 U.S. at 71 and n.26. The Supreme Court's decision requires that the Bankruptcy Court make an independent jurisdictional determination as to each cause of action that Enron asserts based on its underlying legal nature, not on shared facts. Section 157(b)'s reference to "core proceeding" refers to each cause of action or right of recovery pled. *Mirant Corp.* v. *The Southern Co.,* 337 B.R. 107, 116 (N.D. Tex. 2006) ("the word 'proceedings' as used in section 157 refers to specific claims, causes of action, or grounds for relief, and not to the entire action."); *Ralls* v. *Doktor Pet Centers, Inc.* 177 B.R. 420, 425 n.6 (D. Mass. 1995). As the district court in *Doktor Pet Centers* explained:

> This is the only interpretation which would adequately heed
> the constitutional concerns in *Marathon*. If the word

> "proceeding" referred to the entire action before the court, a
> party could bring a state law claim within the purview of
> the bankruptcy judge merely by adding another count to,
> say, a motion to set aside a preference.  This cannot be the
> case.  Each claim must, *on its own*, satisfy the requirements
> of § 157(b).  A district court must scrutinize each count and
> each asserted right for relief to determine which ones were
> properly before the bankruptcy judge for final resolution
> and which ones must receive *de novo* review.

177 B.R. at 425 n.6 (emphasis added).

Bankruptcy courts should therefore employ a claim-by-claim analysis when faced with a case that has a mixture of core and non-core claims.  The Court of Appeals for the Third Circuit, for example, has explicitly rejected a "predominantly core" analysis even where "the core aspect heavily predominates and the non-core aspect is insignificant."  *Halper*, 164 F.3d  at 839 (reversing the district court and bankruptcy court conclusions that a predominantly core adversary proceeding was rendered core in its entirety and adopting "the claim-by-claim approach as the only one consistent with the teachings of *Marathon*.").

Courts in this district have also rejected the "predominantly core" approach, as well as an analysis that would convert non-core claims into core claims on the basis of "factual intertwinement."  As the District Court in *FMI Forwarding* noted:

> [I]n the Court's view, none of the cases Plaintiff cites stand
> for the proposition that a cause of action arising before and
> completely independent of the filing of a bankruptcy
> petition is inextricably intertwined with core bankruptcy
> proceedings, and thus none of these cases support
> classifying the malpractice claim against Marcus as core.
> Similarly, Plaintiff cites no binding authority to support its
> 'predominance of core claims' argument; and, in fact, the
> 'predominance' approach itself has been called into
> question by a great many federal courts."

2004 WL 1348956, at *5-6 (citing cases) (internal citations and quotations omitted).

Here, the Bankruptcy Court acknowledged that, when considered in isolation, the Common Law Counts are non-core. *Enron Corp.*, 2006 WL 2338020, at *2. It nonetheless concluded that the nature of the Common Law Counts was somehow rendered core because they shared operative facts with some of Barclays' Proofs of Claim. *Id.* at *4. For example, the Bankruptcy Court noted that, among other things:

> [t]he same transaction …forms the basis of [Barclays'] JT Transaction Proof of Claim and the Common Law Claims. … The alleged damages stem from the entirety of the transaction in facilitating the continuance of a company that had lost its value. Thus, the same transaction gives rise to both the JT Transaction Proof of Claim and the Common Law Claims. Therefore, the Common Law Claims are core proceedings in that they stem from the same transaction and are logically connected to the JT Transaction Proof of Claim.

*Enron Corp.*, 2006 WL 2338020, at *4.[11]

Shared operative facts, however, cannot transform the legal nature of non-core claims into core claims any more than they can render core claims non-core. *Adelphia Commc'ns Corp.* v. *Rigas (In re Adelphia Commc'ns Corp.)*, 02 Civ. 8495, 2003 WL 21297258 (S.D.N.Y. Jun. 4, 2003) illustrates the principle. In that case, the

---

[11] The Bankruptcy Court held that its analysis in the Core Opinion, which only addresses Enron's arguments as they relate to Barclays and Barclays' proofs of claim, applies equally to all the Bank Defendants inasmuch as their respective proofs of claim filed against Enron were for greater amounts than those filed by Barclays. (Core Opinion at 12 n.3). For ease of reference, the Bank Defendants adopt the Bankruptcy Court's approach in this regard and present their argument solely in terms of Barclays and the Barclays Proofs of Claims. By doing so, none of the Bank Defendants concede that, other than for the purposes of presenting arguments in this Motion for Leave, they are situated similarly to Barclays in connection with the Bank Defendants' Proofs of Claim or any other matter in MegaClaim, and hereby expressly reserve all of their rights in this regard.

debtor had sued a number of insiders alleging violations of RICO and the Securities

Exchange Act, as well as a variety of state law claims. *Id.* at *2. The District Court

found that the claims for fraudulent conveyance, constructive trust and demand for an

accounting were core claims since they directly impacted the bankruptcy estate. *Id.* The

District Court, however, refused to find the remaining claims core, even though they

shared extensive facts:

> Although the remaining claims in this proceeding arise
> from the same set of facts, they are non-core. They are not
> unique to a bankruptcy proceeding, they do not directly
> affect a core bankruptcy function, nor are they matters
> which the bankruptcy court would ordinarily be expected to
> have greater familiarity or expertise.

*Id.* (noting further that "the core claims relate to whether the … defendants hold property

that is actually property of the bankruptcy estate. The non-core claims relate to whether

the … defendants obtained that property in a fraudulent manner. The same discovery,

therefore, applies to both groups of claims. The non-core and core claims are

interrelated…")

  The Bankruptcy Court should have followed *Adelphia*. It should have

found that the Common Law Counts remained non-core claims since they are not unique

to bankruptcy, do not effect a core bankruptcy function,[12] and are not the type of claims

over which the Bankruptcy Court presumably has more expertise. Instead, the

Bankruptcy Court made a jurisdictional finding based on a poorly defined "connection"

between non-core claims and their shared facts with a creditor's proof of claim, rather

---

[12] Notably, Enron has long since confirmed its chapter 11 plan and begun making
distributions to its creditors.

than on an analysis of whether the underlying legal rights "arise in or under" federal bankruptcy law as Section 157(b) requires.

This "factual intertwinement" or factual inter-relatedness approach fails to pass constitutional muster. *Mirant*, 337 B.R. at 119 ("The court disagrees with [the] conclusion that whatever non-core claims there are … are so intertwined with the other claims in the complaint that the interests of justice would be served if the claims were to be tried together. The principles announced in *Marathon* would be violated if such an intertwinement theory were to be given effect…").

### C. The Mere Filing of a Proof of Claim Cannot Render the Common Law Counts Core.

The Bankruptcy Court found that by filing proofs of claim, some of which were based on transactions common to the Common Law Counts, the Bank Defendants effectively rendered the Common Law Counts core under Section 157(b)(2)(B) (concerning the allowance and disallowance of claims against the estate). It reasoned that by filing proofs of claim, the Bank Defendants made the Common Law Counts core because the "bankruptcy court's equitable jurisdiction encompasses interrelated claims that a debtor asserts against a creditor who filed a proof of claim." (Core Opinion at 10). Both the conclusion and its reasoning are incorrect.

Section 157(b)(2)(B) includes the "allowance or disallowance of claims *against the estate*" as a core proceeding. 28 U.S.C. § 157(b)(2)(B). The process of allowing or disallowing claims *against* the estate, however, does not necessarily or automatically implicate the bankruptcy court's adjudication of the *debtor's* wholly separate claims against a *creditor*.

Nor has the Second Circuit condoned the notion that the mere filing of a proof of claim expands a bankruptcy court's equitable jurisdiction to matters only incidentally related to the bankruptcy function.

> As discussed … above, the *Katchen, Granfinanciera,* and *Langenkamp* line of Supreme Court cases stands for the proposition that by filing a proof of claim a creditor forsakes its right to adjudicate before a jury any issue *that bears directly on the allowance* of that claim -- and does so not so much on a theory of waiver as on the theory that the legal issue has been converted to an issue of equity. It is reasonable that a creditor or debtor who submits to the equity jurisdiction of the bankruptcy court thereby waives any right to a jury trial for the resolution of disputes vital to the bankruptcy process, such as those involving the determination of who is a valid creditor and which creditors are senior in the creditor hierarchy. **We will not presume that the same creditor or debtor has knowingly and willingly surrendered its constitutional right to a jury trial for the resolution of disputes that are only incidentally related to the bankruptcy process.**

*Germain* v. *Connecticut Nat'l Bank,* 988 F.2d 1323, 1329-30 (2d Cir. 1993) (italics in original; bold added).

If the mere filing of a proof of claim cannot convert all legal disputes into equitable issues, as the Second Circuit held, then it follows that the mere filing of a proof of claim also does not invoke the Bankruptcy Court's equitable jurisdiction over *all* disputes that the case may present.  Under *Germain*, for a dispute to fall into the Bankruptcy Court's equitable jurisdiction, it "must be part of the claims-allowance process or affect the hierarchical reordering of creditors' claims."  *Germain,* 988 F.2d at 1330.

Here, the Common Law Counts are *not* part of the claims allowance process.  To the contrary, the Common Law Counts are state law causes of action that are assets of the *Debtors*, not claims against their estates.

Resolution of the Common Law Counts also does not effect a reordering of claims. As noted, Enron has already confirmed its chapter 11 plan, which has long since gone effective, and Enron has begun making distributions to its creditors. The only effect that resolution of the Common Law Counts may have on Enron's bankruptcy -- in the unlikely event that Enron prevails at trial -- is the amount of the distributions to which creditors are entitled. As the Bankruptcy Court stated, the potential for increased value inuring to the estate does not make the Common Law Counts core. *Enron,* 2006 WL 2338020, at *3 ("Simply, such an interpretation would eliminate entirely the core/non-core distinction and would thus run afoul of *Marathon.*") (internal citations omitted).

In contrast to the Common Law Counts (which do not affect the "claims-allowance process or affect the hierarchical reordering of the creditors' claims"), Enron has asserted in the MegaClaim numerous causes of action against the Bank Defendants which do just that: they seek to disallow, equitably subordinate, or avoid and recover as preferential or fraudulent transfers, practically every payment that Enron made to the Bank Defendants on transactions that Enron claims perpetrated Enron's fraud. Each of these counts goes to the "allowance or disallowance" of the Bank Defendants' Proofs of Claims against Enron's estate based on the same underlying transactions, and thereby involves the claims-allowance process or affects the hierarchical reordering of the Bank Defendants' rights. They also are causes of action which arise in and under title 11, namely, sections 502, 510(c), 544, 547, 548, and 550 of the Bankruptcy Code. In short, they are all core claims.

The problem with the Bankruptcy Court's reasoning is that it provides no limiting principle. *Marathon,* however, clearly imposes limits on a bankruptcy court's

core jurisdiction and distinguishes "the restructuring of debtor-creditor relations, which is at the *core* of the federal bankruptcy power," from the "adjudication of state-created private rights. . ." *Id.* at 71 (emphasis added).  Thus, the Supreme Court held that while a party may adjudicate a state law claim in federal court on the basis of its relationship to the reorganization petition, "this relationship does *not* transform the state-created right into a matter between the Government and the petitioner for reorganization [*i.e.*, a public right].  Even in the absence of the federal scheme, the plaintiff would be able to proceed against the defendant on the state-law contractual claims." *Id.* at 71 n.26 (emphasis added).

That is precisely the case here:  the Common Law Counts require the adjudication of state-created private rights.  They do not implicate the restructuring of debtor-creditor relations (*e.g.*, the allowance of Barclays' Proofs of Claim on their own legal merits) which lies at the core of the Bankruptcy Court's power.  The Bankruptcy Court's conclusion to the contrary is wrong and should be reversed.

**D.     Under *Marathon*, "Counterclaims" Within the Bankruptcy Court's Core Jurisdiction Cannot Include All Claims that the Debtor Can Assert Against the Bank Defendants and Do Not Include the Common Law Counts.**

Section 157(b)(2)(C) identifies "counterclaims by the estate against persons filing claims against the estate" as core.  Here, the Bankruptcy Court found that the Common Law Counts became core under Section 157(b)(2)(C) because Enron styled them as counterclaims against the Bank Defendants' Proofs of Claim.  *Enron,* 2006 WL 2338020, at *5 ("Further, the Common Law Claims have been asserted in the [MegaClaim] as counterclaims to Barclays' Proofs of Claim.").

As with its analysis of the effect of the Bank Defendants' Proofs of Claim on the legal nature of the Common Law Counts, the Bankruptcy Court reasoned that asserting a counterclaim affects the allowance and disallowance of claims against the Debtors' estates (although the Bankruptcy Court never explained exactly *how* it did so) and invokes the equitable jurisdiction of the bankruptcy court, thereby rendering the Common Law Counts core. *Id.* at *3 - 5. Under *Marathon,* though, not all counterclaims can be core -- the counterclaim must pertain directly to core bankruptcy functions (*i.e.,* it must "aris[e] under title 11 or aris[e] in a case … under title 11"). Any other result, even if the counterclaim arises from the same transaction as the proof of claim, runs afoul of Article III of the Constitution. *Marathon, supra.*

*First*, courts, when construing statutes, have a duty "to interpret a statute in a manner that renders it constitutionally valid." *Communications Workers of America v. Beck,* 487 U.S. 735, 762 (1988). Here, if Section 157(b)(2)(C) is read as giving the Bankruptcy Court core jurisdiction to fully adjudicate *all* estate claims against the Bank Defendants, as the Bankruptcy Court held, then both the "core function" test of *Marathon* and Section 157(b)(2)(C) become meaningless. A constitutionally sound interpretation of Section 157(B)(2)(C), on the other hand, provides that a counterclaim only falls within the Bankruptcy Court's "core" jurisdiction if it falls within the Bankruptcy Court's "core functions," such as the restructuring of debtor-creditor relations. *See Marathon,* 458 U.S. at 71. Here, as previously discussed, the Common Law Counts simply do not meet this standard.

*Second,* the core/non-core dichotomy addresses the question whether Article III allows Congress to assign adjudication of a cause of action to a non-Article III

tribunal.  If a cause of action is not a "public right" for Article III purposes, then Congress may not assign its adjudication to a specialized non-Article III court lacking "the essential attributes of the judicial power."  *Id.* at 71, 84.  If no act of Congress can assign such a claim to the Bankruptcy Court's core jurisdiction, then surely, no act of the *parties to the litigation,* or the Bankruptcy Court itself, can do so.  But that is precisely what the Bankruptcy Court found:  that the Bank Defendants, by asserting counterclaims against Enron, conferred Article III jurisdiction on the Bankruptcy Court and rendered the Common Law Counts core.  Such an absurd result cannot stand.

In the end, the Bankruptcy Court's attempt to force the Common Law Counts into the "counterclaim" taxonomy of Section 157(b)(2)(C) must fail.  The *nature* of the proceeding -- not its label -- determines whether a matter is core or non-core.  *U.S. Lines,* 197 F.3d at 637; *see Hasett* v. *BancOhio Nat'l Bank (In re CIS Corp.)*, 172 B.R. 748, 757 (S.D.N.Y. 1994) ("attempt to pigeonhole the claims into the neat categories of core matters … cannot obfuscate the reality that these are claims which at most only incidentally implicate provisions of the bankruptcy code."); *accord Nationwide Roofing & Sheet Metal, Inc.* v. *Cincinnati Ins. Co. (In re Nationwide Roofing & Sheet Metal, Inc.)*, 130 B.R. 768, 775 (Bankr. S.D.Ohio 1991) (holding claims were non-core even though they arguably fit within the literal wording of section 157(b)(2)).

**E.   The Bank Defendants' Assertion of Setoff Rights and Recoupment, Like Their Proofs of Claim, Also Cannot Transform the Underlying Non-Core Nature of the Common Law Counts Into Core Claims.**

As a further basis for transforming the Common Law Counts into core claims, the Bankruptcy Court found that Barclays had asserted set-off and recoupment rights, and "has thus invoked [the Bankruptcy Court's] core jurisdiction to determine the validity of its affirmative defense of set-off rights against the Common Law Counts."

*Enron,* 2006 WL 2338020, at *5.  Assuming for the sake of argument that a set-off claim

or right of recoupment *is* a core claim, it does not follow that the underlying action on

which those rights are based is *also* a core claim.[13]

    Just this argument has been rejected in an Enron-related case.  In *Enron*

*Power Marketing, Inc.* v. *City of Santa Clara (In re Enron Power Marketing, Inc.)*, No.

01 Civ. 7964, 2003 WL 68036 (S.D.N.Y. Jan. 8, 2003), Enron Power Marketing, Inc.

("EPMI") filed an adversary proceeding against the City of Santa Clara ("City") seeking

to recover post-petition debts that the City owed under a pre-petition agreement and

subsequent individual agreements entered into for the purchase and sale of electrical

power.  *Id.* at *1.  The City moved to withdraw the reference of the action to the

bankruptcy court, arguing among other things, that the matter was not a core proceeding.

*Id.*  EPMI argued that the contract dispute was core because the City sought a setoff

against EPMI's estate as one of its affirmative defenses, and that resolution of the dispute

would impact the administration of its estates.  *Id.* at *7.  Notwithstanding the presence of

an alleged setoff, District Judge Baer found that the contract claims were non-core.  *Id.* at

*9 ("I disagree with plaintiff that defendant's alleged breaches raise core issues under

§ 157.")

    The same applies here.

---

[13] In any event, the Bank Defendants' asserted set-off right does not amount to a new
"claim."  The set-off occurs merely as a consequence of resolving the underlying
causes of action between the parties.  In other words, the Bank Defendants'
distributions on account of their separately allowed claims might be reduced by the
amount of the Bank Defendants' (as of yet, purely speculative and unproven) liability
to Enron, but the set-off itself does not give rise to a new "claim," and certainly does
not state a claim of the kind that could render the wholly separate Common Law
Counts core.

Moreover, as with its analysis of what effect filing a proof of claim or asserting a counterclaim has on its core jurisdiction, the Bankruptcy Court incorrectly concluded that asserting a set-off and recoupment right also invoked the Bankruptcy Court's equitable jurisdiction and thereby rendered the Common Law Counts core.

In *Marathon*, Justice Brennan, writing for the plurality, expressly rejected the notion that the bankruptcy court's core jurisdiction expanded to *all* controversies that may fall within the bankruptcy court's *equitable* jurisdiction. *Marathon*, 458 U.S. at 79 n.31. In so holding, the Court specifically noted that *Katchen* v. *Landy,* 382 U.S. 323 (1966), which announced a sweeping principle regarding the effect of filing a proof of claim on a creditor's submission to the bankruptcy court's summary jurisdiction in the context of a preference action under the Bankruptcy Act, did *not* discuss or determine the Article III issue. *Id.* The proposition that the Bank Defendants' mere assertion of claims against the Debtors' estates -- whether by way of a set-off, recoupment right, indemnity or otherwise -- renders all claims in a resulting adversary proceeding core because it invokes the Bankruptcy Court's equitable jurisdiction is plainly inconsistent with *Marathon*. *See Glinka*, 1994 WL 905714, at *9 (noting that *Marathon* raises constitutional doubts as to whether filing a proof of claim renders all counterclaims core, citing to 3 COLLIER ON BANKRUPTCY ¶ 3.01 (L. King, Ed., 1994)). The Bankruptcy Court's equitable jurisdiction simply has no bearing on the inherent legal nature of the Common Law Counts.

For all the reasons discussed above in connection with filing a proof of claim and counterclaims, the Bank Defendants' assertion of a set-off or recoupment right

cannot transform the underlying nature of a non-core claim.  The Common Law Counts

remain non-core.

## CONCLUSION

For the foregoing reasons, the Bank Defendants respectfully request that

this Court grant the Motion for Leave and agree to immediate review of the Bankruptcy

Court's interlocutory Core Order.

Dated:  New York, New York
        September 25, 2006

Respectfully submitted,

/s/ Stephen J. Shimshak

Stephen J. Shimshak (SS-8822)
Douglas R. Davis (DD-0874)
Brad S. Karp (BK-3702)
Claudia L. Hammerman (CH-9005)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000

*Attorneys for Citigroup, Inc., Citibank, N.A.,
Citigroup Global Markets Inc., Citicorp North
America, Inc., Citigroup Financial Products Inc.,
CXC LLC, Corporate Asset Funding Company,
LLC, and Corporate Receivables Corporation,
LLC*

/s/ Hugh M. McDonald

Hugh M. McDonald (HM-2667)
Marc E. Bennett (MB-9164)
Andrew Matheson (AM-6471)
Lisa J.P Kraidin (LK-3569)
Anna Taruschio (AT-6483)
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 610-6300

--and--

David H. Braff (DB-0761)
Michael T. Tomaino, Jr. (MT-6200)
Jeffrey T. Scott (JS-5014)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000

*Attorneys  for Barclays PLC, Barclays Bank PLC,
Barclays Capital Inc., Barclays Capital Securities
Limited, Barclays Physical Trading Limited
and Barclays Metals Limited*

/s/ Owen C. Pell
Owen C. Pell (OP-0118)
Timothy S. Pfeifer (TP-6331)
Titia A. Holtz (TH-4379)
WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 819-8200

*Attorneys for Deutsche Bank AG, Deutsche Bank
Trust Company Americas, Deutsche Bank
Securities Inc., Deutsche Bank Luxembourg, S.A.,
Deutsche Bank Trust Company Delaware,
Deutsche Bank Trust Corporation, Bankers Trust
International plc, BT Commercial Corp., DB
Green, Inc., Deutsche Leasing New York Corp.,
Seneca Delaware, Inc., Deutsche Bank S.A., BT
Ever, Inc. and Seneca Leasing Partners, L.P.*

# Document Excerpted to Reduce Bulk