Hearing Date:  May 11, 2006

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Stephen J. Shimshak (SS-8822)
Douglas R. Davis (DD-0874)
1285 Avenue of the Americas
New York, New York  10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

*Attorneys for Citigroup Inc.; Citibank, N.A.; Citigroup Global Markets Inc.; Citicorp North America, Inc.; Citigroup Financial Products Inc.; CXC LLC; Corporate Asset Funding Company, LLC, and Corporate Receivables Corporation, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

..........................................................................x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 Case No. 01-16034 (AJG) |
| ENRON CORP., *et al.*, | : | Jointly Administered |
| Debtors. | | |

_____x

|  |  |  |
|---|---|---|
| ENRON CORP., *et al.*, | : | |
| Plaintiffs, | : | Adversary Proceeding No. 03-09266 (AJG) |
| v. | : | |
| CITIGROUP INC., *et al.,* | : | |
| Defendants. | : | |

..........................................................................x


**JOINDER BY CITIGROUP DEFENDANTS IN BARCLAYS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR INITIAL DETERMINATION UNDER 28 U.S.C. § 157(b)(3) THAT CERTAIN CLAIMS ARE NON-CORE**


Defendants Citigroup Inc. ("Citigroup"); Citibank, N.A.; Citigroup Global

Markets Inc.; Citicorp North America, Inc.; Citigroup Financial Products Inc. (formerly

known as Salomon Brothers Holding Company, Inc.); CXC LLC (formerly known as

CXC Incorporated); Corporate Asset Funding Company, LLC (formerly known as Corporate Asset Funding Company, Inc.), and Corporate Receivables Corporation, LLC (formerly known as Corporate Receivables Corporation, Inc.) (collectively, "Citigroup"), by their undersigned attorneys, hereby join in the Motion and Memorandum of Law in Support of Motion for Initial Determination Under 28 U.S.C. § 157(b)(3) That Certain Claims Are Non-Core Claims, and Response to Enron's Objection to Motion for Initial Determination Under 28 U.S.C. § 157(b)(3) that Certain Claims are Non-Core Claims, filed by defendants Barclays PLC, Barclays Bank PLC, Barclays Capital Inc., Barclays Capital Securities Limited, Barclays Physical Trading Limited and Barclays Metals Limited (collectively, "Barclays") on July 26, 2005 and March 17, 2006 respectively. Citigroup fully adopts and incorporates as its own all of Barclays' legal arguments and stated facts to the extent they apply to Citigroup, and in further support thereof, respectfully states as follows:

## PRELIMINARY STATEMENT

Citigroup joins in Barclays' motion because it implicates Citigroup's constitutional right to have an Article III court make final determinations of fact and law on Enron's billions of dollars of common law claims against it. Citigroup accordingly asks this Court to determine that Enron's three common law counts for (i) aiding and abetting breach of fiduciary duty, (ii) aiding and abetting fraud, and (iii) committing unlawful civil conspiracy (the "Common Law Counts") comprise non-core claims subject to *de novo* review under Bankruptcy Rule 9033. Like Barclays, Citigroup does not ask this Court to decide whether it and others have a jury trial right or whether a withdrawal of the reference is appropriate now; this Court's core/non-core determination does not involve deciding the right to a jury trial.

2

The Common Law Counts involve quintessentially private rights unrelated to the Bankruptcy Code. As Enron admits, they are grounded in state law: they do not arise under federal bankruptcy law and would exist, if viable, independently of Enron's bankruptcy cases. This Court therefore only has "related to" jurisdiction over the Common Law Counts and may only submit proposed findings of fact and conclusions of law to the District Court on these claims.

The common law counts remain non-core, notwithstanding that their facts potentially overlap with those of Enron's core claims. Article III of the Constitution and the statutory scheme that Congress enacted in response to the Supreme Court's holding in *Marathon*[1] do not tolerate deeming the entire adversary proceeding core simply because it includes core along with non-core claims (particularly ones that, as here, vastly exceed Enron's core claims against Citigroup). Similarly, the constitutional principles that Article III embody do not countenance transforming *all* of Enron's claims into core claims merely because Citigroup filed proofs of claim.

Citigroup therefore joins Barclays in asking this Court to determine that the common law counts are non-core, and that accordingly, if tried in the bankruptcy court, the resultant findings of fact and conclusions of law relevant to the Common Law Counts remain subject to *de novo* review by the District Court under Bankruptcy Rule 9033.

## STATEMENT OF FACTS

Enron Corporation and certain affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code commencing on December 2, 2001 (the

---

[1]     *Northern Pipeline Constr. Co.* v. *Marathon Pipe Line Co.*, 458 U.S. 50 (1982).

"Petition Date").  On or about October 11, 2002, Citigroup filed proofs of claims against Enron seeking recovery of amounts due under various financial transactions, as well as other grounds for liability.  On July 15, 2004, the Court entered an Order confirming Enron's Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors (the "Plan").  The Plan became effective on November 17, 2004.  On September 23, 2003, Enron and certain of its affiliates (collectively "Enron") commenced this adversary proceeding (the "MegaClaim") against Citigroup and various other financial institutions. Citigroup filed an answer to the complaint, as amended,[2] and on February 26, 2004, filed a demand for trial by jury of all issues that may be so tried.

Despite the fact that the alleged fraud at Enron relates to *Enron's* financial statements, and that *Enron's* senior officers perpetrated that fraud which pervasively reached the highest levels throughout *Enron*, (*E.g.,* Cplt. ¶¶ 1, 138-49, 155-56, 173-80, 188, 198-221), Enron seeks to hold Citigroup and other bank defendants responsible for its downfall.  Specifically, Enron claims that Citigroup and other bank defendants participated in a multi-year scheme to manipulate Enron's financial statements and misstate its financial condition.  (*E.g.,* Cplt. ¶ 1).  It alleges that Citigroup did so principally by designing and implementing structured finance transactions, knowing that Enron was improperly recording the financial effects of these transactions. (*E.g.,* Cplt. ¶ 2).

Based on these allegations, Enron asserts three self-titled "common law" counts against Citigroup and the other bank defendants: (i) aiding and abetting breach of fiduciary duty (Cplt. Count 74), (ii) aiding and abetting fraud (Cplt. Count 75), and (iii)

---

[2]    Enron amended the Complaint on December 1, 2003, April  30, 2004, June 14, 2004 and January 10, 2005.  Citigroup refers herein to the complaint as so amended.

committing unlawful civil conspiracy (Cplt. Count 76).  While not quantified, Enron

appears to seek billions of dollars in damages from Citigroup in connection with these

claims.[3]

Separately (and independent of the Common Law Counts), the

MegaClaim also asserts a number of bankruptcy causes of action against Citigroup,

including counts to avoid and recover allegedly preferential and fraudulent transfers, and

counts to disallow and/or equitably subordinate Citigroup's claims against Enron. (Cplt.

Counts 1-5, 65-68, 69-73B).

## ARGUMENT

### A.      The Common Law Counts Are Non-Core Claims

The Common Law Counts are non-core claims.  Section 157 of title 28

sets forth the core/non-core distinction.[4]  Congress enacted 28 U.S.C. § 157 in response

---

[3]    In the MegaClaim complaint, Enron alleges the following damages in connection
with its common law aiding and abetting claims against each of the 10 bank
defendants, including Citigroup:

As a direct and proximate result of the Bank Defendants' actions
and omissions, Enron was injured and damaged in at least the
following ways: (1) its debt was wrongfully expanded out of all
proportion to its ability to repay and it became insolvent and
thereafter deeply insolvent; (2) it was forced to file bankruptcy and
incurred and continues to incur substantial legal and administrative
costs, as well as the costs of governmental investigations; (3) its
relationships with its customers, suppliers and employees were
undermined; and (4) its assets were dissipated.

(*See* Cplt. ¶¶ 1273, 1595, 1600.)

[4]    Notably, Citigroup does not ask this Court to determine Citigroup's right to a jury
trial or the propriety of withdrawing the reference.  The core/non-core distinction is
"entitled to minimal weight" when reaching a decision on whether Citigroup has a
right to a jury trial and also does not end the withdrawal of the reference inquiry.
*Germain* v. *Conn. Nat'l Bank*, 988 F.2d 1323, 1326-27 (2d Cir. 1993).  Rather,
Citigroup joins Barclays in asking this Court for an initial determination that the

Doc #:DC1:155942.8

to the Supreme Court's ruling in *Marathon*, 458 U.S. at 71-72, 76 that non-Article III bankruptcy courts lacked the constitutional authority to adjudicate state-created private rights that did not fall within the core of federal bankruptcy power.  *See Orion Pictures Corp.* v. *Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1100-01 (2d Cir. 1993).  Section 157 accordingly classifies matters as either "core proceedings," which this Court may finally adjudicate, or "non-core proceedings," which this Court may hear, but for which this Court may only submit proposed findings of fact and conclusions of law to the district court for *de novo* review.  28 U.S.C. § 157(c)(1); *Orion Pictures*, 4 F.3d at 1100-01.

Section 157(b) provides a non-exhaustive list of core proceedings.  28 U.S.C. § 157(b)(2).  The statute alone, however, does not govern the core/non-core inquiry.  Instead, the statutory basis for this Court's jurisdiction to issue final orders depends on the nature of the proceeding, *i.e.*, whether it is "at the core of the federal bankruptcy power."  *S.G. Phillips Constructors, Inc.* v. *City of Burlington (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 707 (2d Cir.1995); *Resolution Trust Corp.* v. *Best Prods. Co., Inc. (In re Best Prods. Co., Inc.)*, 68 F.3d 26, 31 (2d Cir. 1995) ("A determination of whether a matter is 'core' depends on the nature of the proceeding.")

Indeed, in interpreting *Marathon* and the core/non-core distinction Congress established in section 157, the Second Circuit has repeatedly cautioned that courts should not interpret section 157(b) so broadly as to usurp the jurisdictional function of the Article III courts.  *E.g., Orion Pictures*, 4 F.3d at 1102 ("While it is clear

---

Common Law Counts are non-core to preserve its right to withdraw the reference when appropriate.  *Schneider* v. *Riddick (In re Formica Corp.)*, 305 B.R. 147, 149 (S.D.N.Y. 2004) ("any motion to withdraw would be premature until the bankruptcy court first determined whether the case was a core or non-core proceeding").

6

that Congress intended § 157(b)(2)(A)'s designation of matters relating to the

administration of the estate as core to encompass a wide range of matters, there is no

evidence of any Congressional intent to contravene the Supreme Court's holding in

*Marathon*."); *see also Best Prods. Co.,* 68 F.3d at 32 ("allowing [section 157(b)] to

encompass *any* breach of contract action that the debtor would pursue and that would be

expected to inure to the benefit of the debtor estate would create an exception to

*Marathon* that would swallow the rule") (internal citations and quotations omitted).

In the Second Circuit, therefore, a proceeding is core "if either (1) the type

of proceeding is unique to or uniquely affected by the bankruptcy proceedings . . . or (2)

the proceedings directly affect a core bankruptcy function. . ." *U.S. Lines, Inc.* v. *Am.*

*Steamship Owners Mut. Prot. and Indem. Ass'n, Inc. (In re U.S. Lines, Inc.)*, 197 F.3d

631, 637 (2d Cir. 1999).  Core proceedings include, for example, "fixing the order of

priority of creditor claims against a debtor, placing the property of the bankrupt,

wherever found, under the control of the court, for equal distribution among the creditors,

and administering all property in the bankrupt's possession." *Id.* (internal citations and

quotations omitted).

A matter is non-core, on the other hand, if it has little or no relation to the

Bankruptcy Code, does not arise under the federal bankruptcy law, and would exist in the

absence of a bankruptcy case. *E.g., Wechsler* v. *Squadron, Ellenoff, Plesent, & Sheinfeld*

*LLP*, 201 B.R. 635, 639 (S.D.N.Y. 1996) ("Noncore proceedings consist of those claims

arising under traditional state law which must be determined by state law. … They are

those civil proceedings that, in the absence of a petition in bankruptcy, could have been

brought in a district court or state court.") (internal quotations and citations omitted);

*Interconnect Telephone Svcs., Inc.* v. *Farren*, 59 B.R. 397, 400 (S.D.N.Y. 1986) (rights created by state law that are "independent of and antecedent to the reorganization petition" are non-core) (internal quotations and citations omitted).

Applying these standards, courts in this Circuit have consistently held that claims such as the Common Law Counts are non-core. *E.g., Kittay* v. *Ernst & Young, LLP (In re Kleinert's, Inc.)*, 2004 WL 1878787, at *1-2, n.2 (S.D.N.Y. Aug. 19, 2004) (bankruptcy court held that claims for breach of contract, negligence, professional malpractice, fraud, negligent misrepresentation and aiding and abetting breach of fiduciary duties were non-core); *Official Committee of Unsecured Creditors of Corson Mfg. Co.* v. *HSBC Bank USA (In re Corson Mfg. Co.)*, Nos. 01-MC-5E, 99-16855K, AP 00-1366K, 2001 WL 877394, at *2 (W.D.N.Y. Jun. 27, 2001) (claims premised on malpractice and various breaches of fiduciary duty are non-core); *Wechsler,* 201 B.R. at 638, 640  (S.D.N.Y. 1996) (malpractice, breach of contract and breach of fiduciary duty claims are non-core); *United Orient Bank* v. *Green (In re Green)*, 200 B.R. 296, 298-99 (S.D.N.Y. 1996) (malpractice, breach of fiduciary duty claims are non-core); *Interconnect Telephone*, 59 B.R. at 398, 400 (conspiracy to defraud, wrongful appropriation of confidential information and unfair competition are non-core claims).

The same conclusion applies to the Common Law Counts for several reasons.  First, Enron itself admits "that [its] common law counterclaims for aiding and abetting breach of fiduciary duty (Count 74), aiding and abetting fraud (Count 75), and unlawful civil conspiracy (Count 76), are grounded in state common law."  Plaintiffs' Objection to the Barclays Defendants' Motion for Initial Determination under 28 U.S.C. § 157(b)(3) that Certain Claims are Non-Core Claims ("Objection") at 11.  They are

indistinguishable from the breach of fiduciary duty and common law fraud claims the

district court concluded were "clearly" non-core in *Wechsler*.  201 B.R. at 639

("Certainly this case could exist independent of the bankruptcy case, since the claims are

state law claims.")

    <u>Second</u>, the Common Law Counts do not depend in any respect on the

bankruptcy laws or the Bankruptcy Code.  Through these Counts, Enron seeks to

vindicate exclusively private, non-bankruptcy rights.  For example, Enron seeks punitive

and exemplary damages, "in order to punish the Bank Defendants, to deter the Bank

Defendants from repeating the acts and omissions described in this Complaint, to protect

the public against similar acts and omissions in the future, and to serve as a warning to

others" in connection with each of the Common Law Counts.  MegaClaim Cplt. ¶¶ 1274,

1596, 1601.  Enron does not cite a single Bankruptcy Code section for any of these

charges, nor does it identify any federal bankruptcy right that the assertion of such claims

promotes.  Nor can it -- like the state-law private rights at issue in *Marathon*, the

Common Law Counts are non-core.  *Marathon*, 458 U.S. at 71-72 ("Appellant Northern's

right to recover contract damages to augment its estate is one of private right, that is, of

the liability of one individual to another under the law as defined.") (internal citations

and quotations omitted); *1800PostCards, Inc.* v. *Morel*, 153 F.Supp.2d 359, 367

(S.D.N.Y. 2001) (action that does not "depend in any respect on the bankruptcy laws" is

non-core).

    <u>Third</u>, Enron's labeling the claims as "core" or as "counterclaims" is not

determinative.  *E.g.,* Objection at 6 ("As to those Defendants who have filed claims or on

whose behalf claims have been filed … this adversary proceeding is brought as an

Doc #:DC1:155942.8

objection and counterclaim to those claims") (citing the Complaint).  The district court has expressly rejected any categorization of claims based on the words used to describe them.  *Hassett* v. *BancOhio Nat'l Bank (In re CIS Corp.)*, 172 B.R. 748, 756 (S.D.N.Y. 1994) ("In making my determination I will look beyond the labels to the substance of the action … to discover whether it can be fairly said to arise under the bankruptcy code and falls within the bankruptcy court's core jurisdiction.").

Finally, the Second Circuit has established that the potential benefit to Enron's estate should Enron prevail on the Common Law Counts does not serve as a basis for finding core jurisdiction.  *E.g., Orion Pictures*, 4 F.3d at 1102 (finding that merely because action might inure to the benefit of debtor's estate did not render action core even where debtor's viability depended on the outcome of the action, citing to 1 COLLIER ON BANKRUPTCY ¶ 3.01[2][b][iii] that defining pre-petition contract actions as core because the amounts allegedly due would inure to the benefit of the estate would "wipeout the underpinnings of *Marathon*") (internal quotations omitted); *CIS Corp.*, 172 B.R. at 757 ("Practically any claim brought by a trustee could be considered to have some connection to the estate's administration if the end result might be to bring property into the estate.  But that does not mean that all such claims involve core matters.")

In sum, the Common Law Counts are non-core claims and fall outside this Court's core jurisdiction.

**B.    Citigroup's Proofs of Claim Do Not Render the Common Law Counts Core.**

Enron makes much ado about the effect of filing a proof of claim on this Court's core jurisdiction.  While it is true that the Second Circuit has held that, by filing a proof of claim, a creditor submits itself to the equitable power of the bankruptcy court to disallow its claim, *e.g., Gulf States Exploration Co.* v. *Manville Forest Prods. Corp. (In*

*re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1389 (2d Cir. 1990), Enron's sweeping

conclusion that all claims that it asserts are automatically rendered core whenever a

creditor files a proof of claim simply does not follow.[5]

        *Marathon* held that that Congress may not vest in a non-Article III court

the power to adjudicate, render final judgment, and issue binding orders in a traditional

state law action, without consent of the litigants, and subject only to ordinary appellant

review.  458 U.S. at 84 (plurality opinion); *id.* at 90-92 (opinion concurring in judgment);

*id.* at 92 (Burger, C.J. dissenting).  The bankruptcy court therefore cannot render final

determinations on matters that are only "related to" a bankruptcy case, regardless of the

procedural posture in which the matter presents itself.

        Accordingly, a response to a proof of claim or counterclaim must still

meet the constitutional tests in *Marathon* to come within this Court's core jurisdiction,

*i.e.,* it must "arise[] under title 11" or "arise[] in a case under title 11."  28 U.S. C. §

---

[5]   Enron's argument that the Common Law Counts are counterclaims (which Citigroup disputes) and therefore core is also not dispositive.  Even though section 157(b)(2)(C) identifies "counterclaims by the estate against persons filing claims against the estate" as core,  the Second Circuit has noted that an "open-ended, limitless construction" of section 157(b)(2) is constitutionally infirm.  *E.g., Resolution Trust Corp.* v. *Best Prods. Co., Inc. (In re Best Prods. Co., Inc.)*, 68 F.3d 26, 31 (2d Cir. 1995); *Ben Cooper, Inc.* v. *Ins. Co. of Pennsylvania (In re Ben Cooper, Inc.)*, 896 F.2d 1394, 1398 (2d Cir. 1990) ("The language of §157(b)(2) could be construed to include almost any matter relating to bankruptcy, but the structure of the statue as a whole does not permit such a construction.").  The nature of the proceeding determines whether a matter is core or non-core, not its label.  *Best Prods.,* 68 F.3d at 31; *see CIS Corp.*, 172 B.R. at 757 ("attempt to pigeonhole the claims into the neat categories of core matters … cannot obfuscate the reality that these are claims which at most only incidentally implicate provisions of the bankruptcy code."); *accord Nationwide Roofing & Sheet Metal, Inc.* v. *Cincinnati Ins. Co. (In re Nationwide Roofing & Sheet Metal, Inc.)*, 130 B.R. 768, 775 (Bankr. S.D.Ohio 1991) (holding claims were non-core even though they arguably fit within the literal wording of section 157(b)(2)).

Doc #:DC1:155942.8

157(b)(1) ("Bankruptcy judges may hear and determine . . . all core proceedings arising under title 11, or arising in a case under title 11.")  A contrary ruling allows a creditor filing a claim to confer on an Article I court the jurisdictional power that the Supreme Court has held constitutionally remains the exclusive province of an Article III Court, effectively undermining the central tenet of *Marathon*.  458 U.S. at 76 ("In sum, Art. III *bars* Congress from establishing legislative courts to exercise jurisdiction over *all* matters *related to* those arising under the bankruptcy laws.") (emphasis added).

The problem with Enron's reasoning is that it provides no limiting principle.  *Marathon*, however, clearly imposes limits on a bankruptcy court's core jurisdiction and distinguishes "the restructuring of debtor-creditor relations, which is at the *core* of the federal bankruptcy power," from the "adjudication of state-created private rights. . ." *Id.* at 71 (emphasis added).  Of particular relevance to Enron's argument, the Supreme Court held that while a party may adjudicate a state law claim in federal court on the basis of its relationship to the reorganization petition, "this relationship does *not* transform the state-created right into a matter between the Government and the petitioner for reorganization [*i.e.*, a public right].  Even in the absence of the federal scheme, the plaintiff would be able to proceed against the defendant on the state-law contractual claims." *Id.* at 71 n.26 (emphasis added).

Justice Brennan, writing for the plurality, also rejected the notion that the bankruptcy court's core jurisdiction expanded to *all* controversies that may fall within the bankruptcy court's equitable jurisdiction.  *Marathon*, 458 U.S. at 79 n.31.  In so holding, the Court specifically noted that *Katchen* v. *Landy,* 382 U.S. 323 (1966), which announced a sweeping principle regarding the effect of filing a proof of claim on a

Doc #:DC1:155942.8

creditor's submission to the bankruptcy court's summary jurisdiction in the context of a preference action under the Bankruptcy Act, did *not* discuss or determine the Article III issue. *Id. Marathon* therefore rejects the proposition that the mere filing of a proof of claim renders all claims in a resulting adversary proceeding core. *See Glinka* v. *Abraham and Rose Co., Ltd.*, No. 2:93-CV-291, 2:93-CV-329, 2:93-CV-361, 1994 WL 905714, at *9 (D.Vt. Jun. 6, 1994) (noting that *Marathon* raises constitutional doubts as to whether filing a proof of claim renders all counterclaims core, citing to 3 COLLIER ON BANKRUPTCY , ¶3.01). The effect of filing a proof of claim is more limited.

A close examination of case law in this Circuit demonstrates that filing a proof of claim only affects counterclaims to the extent such claims themselves invoke the "the special rules of bankruptcy" concerning the allowance and disallowance of claims against the estate, *i.e.*, its core jurisdiction. *Manville Forest Prods.*, 896 F.2d at 1390 ("The determination of the objection to and allowance of its claim is clearly within the traditional core jurisdiction of the bankruptcy court.")  Thus, the proof of claim and counterclaims related to it become core matters (even if traditionally non-core) because "determination of an objection to a proof of claim … is clearly at the core of the federal bankruptcy function of restructuring debtor-creditor rights, implicating the unique powers of bankruptcy courts." *Id.*  Enron's argument that filing a proof of claim renders all claims that are only "related to" a case under title 11 core simply proves too much. *See e.g., Durso Supermarkets, Inc.* v. *D'Urso (In re Durso Supermarkets Inc.)*, 170 B.R. 211, 214 (S.D.N.Y. 1994) (debtor's fraud claims were non-core despite creditor having filed a proof of claim); *accord Glinka,* 1994 WL 905714, at *9 ("[G]iven that the prepetition state law counterclaims are not directly related to the proof of claim, *Marathon* requires

13

that the conversion and misappropriation of contract rights claims … must be treated as non-core notwithstanding the filing of an unrelated proof of claim."); *Marshall* v. *Marshall (In re Marshall),* 264 B.R. 609, 625 (C.D. Cal. 2001) ("a proceeding cannot be transformed from being non-core to being core through consent or waiver.  It would go against *Marathon* to hold that by filing a proof of claim, a creditor consents or waives any objections to core treatment."), *rev'd on other grounds,* 392 F.3d 1118 (9th Cir. 2004), *cert. granted*, 126 S.Ct. 35 (U.S. Sept. 27, 2005).

      The cases Enron cites are not to the contrary.  As Barclays explains in its motion, Enron's reliance on *Langenkamp* v. *Culp*, 498 U.S. 42 (1990) for the "appropriate test" for core jurisdiction is misplaced.  Opposition at 13.  *Langenkamp* decided the effect of filing a proof of claim on a party's Seventh Amendment right to a jury trial.  498 U.S. at 44-45.  It made no determination on Article III core jurisdiction. Moreover, *Langenkamp's* holding is based on *Katchen's* pre-Code principles about the effects of filing a proof of claim on the bankruptcy court's summary versus plenary jurisdiction, a principle that the Supreme Court in *Marathon* did not endorse as applicable to the scope of Article III jurisdiction under the Code.  458 U.S. at 71 n.31.

      But even if *Langenkamp's* reasoning applies by analogy to the core/non-core determination, the Second Circuit has already rejected Enron's limitless argument. Specifically, in *Germain*, 988 F.2d at 1327, the creditor argued that under *Langenkamp* and *Katchen,* filing a proof of claim triggers the process of allowing and disallowing claims thereby bringing *all* claims within the bankruptcy court's equitable jurisdiction. The Second Circuit disagreed:

> We agree that the filing of a proof of claim is a *necessary*
> condition – the claims-allowance process can hardly begin

> before a claim is made – however, it is not a *sufficient*
> condition. … The very phrase "claims-allowance process"
> suggests that the resolution of the dispute in which a jury
> trial is sought must affect the allowance of the creditor's
> claim in order to be part of that process.  A preference
> action does so; lender liability actions generally do not.
> Therefore suits like the Trustee's action in this case which
> would augment the estate but which have no effect on the
> allowance of a creditor's claim simply cannot be part of the
> claims-allowance process.

*Id.* at 1327.  The Second Circuit therefore has already rejected Enron's argument that

*Langenkamp* and *Katchen* stand for the proposition that the mere filing of a proof of

claim triggers this Court's core jurisdiction as to *all* claims.[6]

Enron relies heavily on *Statutory Comm. of Unsecured Creditors* v.

*Motorola, Inc. (In re Iridium Operating LLC)*, 285 B.R. 822 (S.D.N.Y. 2002) and *Ernst*

*& Young, LLP* v. *Bankr. Svcs., Inc. (In re CBI Holding Co., Inc.)*, 311 B.R. 350

(S.D.N.Y. 2004) for the proposition that the proofs of claim of Citigroup and others

render the Common Law Counts core.  At the outset, both of these cases rely on the

Second Circuit's "nature of the claim" test to determine whether the claims at issue are

core.  *CBI Holding*, 311 B.R. at 362 ("Proceedings can be core by virtue of their nature if

either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy

proceedings, or (2) the proceedings directly affect a core bankruptcy function.")

(quotations omitted); *Iridium*, 285 B.R. at 830 (same).  These cases therefore do not

propound a new core/non-core test, as Enron suggests.  Opposition at 13.  Rather, these

courts simply found that the facts they confronted fell within the "nature of the claim"

---

[6]  For this reason, the district court tests for core/non-core jurisdiction that Enron cites --
which it claims interpret *Langenkamp* and *Katchen* differently -- are of limited
precedential value.  Opposition at 13.

test because the proceedings directly affected a core bankruptcy function -- the process of allowance and disallowance of claims and adjudication of debtor-creditor rights.[7]

These cases in any event remain factually distinguishable from MegaClaim. *Iridium* involved claims and counterclaims arising from two related pre-petition contracts between the debtor and its former parent, Motorola, Inc. ("Motorola"). 285 B.R. at 824-25. Because the estate's non-core claims and Motorola's administrative proof of claim arose from the same contracts, the court held that Motorola's proof of claim invoked the bankruptcy court's core jurisdiction to allow and disallow claims, and thereby rendered the estate's counterclaims core. *Id.* at 830 ("The filing of the proof invokes the special rules of bankruptcy concerning objections to the claim, estimation of the claim for allowance purposes, and the rights of the claimant to vote on the proposed distribution. *Understood in this sense, a claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy."*) (citations omitted).

The claims in *Iridium* do not compare to Enron's Common Law Counts, which allege that Citigroup and dozens of bank defendants engaged in a "multi-year scheme to manipulate Enron's financial statements and misstate its financial condition" by "designing, implementing, and often financing" hundreds of structured finance transactions with dozens of different Enron-related entities. *See* Opposition at 4-5. On their face, the Common Law Claims do not share the type of common operative facts present in *Iridium*, which involved claims and counterclaims arising from just two, related contracts. The Common Law Counts assert affirmative recovery from Citigroup based on Citigroup's alleged misconduct in connection with hundreds of transfers arising

---

[7]    As explained previously, to the extent language in the *Iridium* court suggests a different test based on *Langenkamp*, it is wrongly decided.

from dozens of distinct transactions Citigroup allegedly consummated with numerous

Enron-related entities and allegedly, a whole cadre of other bank defendants.  To presume

"common facts" here is absurd.  Enron's disingenuous argument that the alleged

"scheme" provides the common operative facts essentially assumes the fact to be decided

and thus fares no better.

        The *CBI Holding* case is equally inapposite.  There, the court found that

the estate's traditionally non-core claims (alleging negligence, breach of contract, and

fraud) were core because they were legally interconnected with the creditor's proof of

claim and the estate's expungement claim.  *CBI Holding*, 311 B.R. at 362-63.  Notably,

the estate's claim against the creditor, its prepetition auditor, if proven, could have

provided a defense to the creditor's proof of claim under state law.  *Id.*  Accordingly, the

estate's fraud claims directly affected the allowance or disallowance of the creditor's

claim and fell within the bankruptcy court's core jurisdiction.  *Id.*   In contrast, for the

reasons Barclays explains in its pleadings, the Common Law Counts are not legally

interconnected with the allowance or disallowance of Citigroup's claims.[8]

        The common principle in *CBI Holding, Iridium* and other cases in which

courts have held that a proof of claim may render normally non-core causes of action

core, whether styled as counterclaims or otherwise, is that when a creditor files a proof of

claim it invokes the special rules of bankruptcy relating to objections to claims, *i.e.*, its

core jurisdiction, both as to the proof of claims and counterclaims against it.  *See*

---

[8]    In fact, Enron asserts separate causes of action seeking disallowance and equitable
subordination of Citigroup's claims under sections 502(d) and 510(c) of the
Bankruptcy Code.  Citigroup does not dispute that those claims are core.  As
Citigroup explains in Section C *infra,* however, that Enron's core claims may have
facts in common with its Common Law Counts does not render the entire adversary
proceeding core.

*Marathon*, 458 U.S. at 71 ("restructuring of debtor-creditor relations . . . is at the core of the federal bankruptcy power.").  And while the results from filing a proof of claim are not limited to adjudicating the claim itself, and may include causes of action where the estate acts offensively, as plaintiff, following the filing of a proof of claim, the results must nonetheless remain within the constitutionally prescribed limits of Article III.

It follows, as this Court has implicitly recognized, that a proof of claim may only render a traditionally non-core claim core if there is a close connection between the subject matter of the claims and the court's core jurisdiction.  Transcript of Decision at 62, *Enron Power Mktg., Inc.* v. *Nevada Power Co. (In re Enron Corp.)*,  No. 01-16034 (Bankr. S.D.N.Y. Sept. 25, 2003) (Gonzalez, J.) (holding that defendants' counterclaims were core because they were "not independent of the bankruptcy proceeding" and that the post-petition contract dispute from which they arose was a core proceeding because it "affects core functions. … It has a significant impact on the administration of the case and the efficient functioning of the bankruptcy system.  It concerns the allowance and disallowance of defendants' claims against the estate.  It concerns EPMI's counterclaims against the defendants who filed proofs of claim, and it affects the liquidation of assets of the estate."), *aff'd,* 2004 WL 3015256, at *5-6 (S.D.N.Y. Dec. 28, 2004); *accord PSINet, Inc.* v. *Cisco Sys. Capital Corp. (In re PSINet, Inc.)*, 271 B.R. 1, 24 (Bankr. S.D.N.Y. 2001) (finding the creditor's submission of a motion seeking post-petition payments form the debtor "significant not because it constitutes a consent to the treatment of the adversary proceeding as a core matter or the waiver of [the creditor's] ability to contend that the adversary proceeding is non-core, but rather because it shows … the close

connection between the subject matter of the adversary proceeding and the title 11 issues

in the underlying case . . .")

This is simply another way of saying a proceeding is core if it is unique to,

or uniquely affected by, the bankruptcy proceedings or directly affects a core bankruptcy

function. *E.g., U.S. Lines,* 197 F.3d at 637. Enron's Common Law Counts do not meet

this constitutional test. They do not invoke the claims allowance process or affect a core

bankruptcy function. Instead, like the lender liability claims in *Germain*, the Common

Law Counts seek affirmative recovery from Citigroup which, in the unlikely event that

Enron prevails, will merely augment its estate. 988 F.2d at 1327. Significantly, this

Court has already confirmed Enron's plan, and it has gone effective. Thus, the outcome

of the Common Law Counts will not affect Citigroup's ability to participate in Enron's

bankruptcy case by, for example, enabling it to vote on Enron's plan of reorganization or

exercising other creditor rights under the Bankruptcy Code. Nor does resolution of the

Common Law Counts affect allowance of Citigroup's claims or the administration of

Enron's bankruptcy cases.[9]

In sum, the nature of the Common Law Counts are quintessentially non-

core -- they seek to vindicate private rights arising under state law, regardless of

Citigroup's proofs of claim.

## C.   The "Intertwinement" or "Predominantly Core" Doctrine is Constitutionally Infirm and Provides No Basis on Which to Find the Common Law Counts Core.

Enron argues that the Common Law Counts are core because they arise

out of the same transactions and are "factually intertwined" with its core claims against

---

[9]   For the same reason, and as Barclays further explains, Citigroup's affirmative defenses and set-off claims also do not render the Common Law Counts core.

Doc #:DC1:155942.8

Citigroup for equitable subordination, preferential transfer, and fraudulent conveyance. Enron's "intertwinement" argument is really a plea that this Court ignore the constitutional limits of *Marathon* and determine that the entire MegaClaim is a core proceeding because some or, according to Enron, predominantly all of its claims are core. This Court should reject this constitutionally infirm approach, an approach which neither the Second Circuit nor other courts in this District condone. *E.g., Glinka*, 1994 WL 905714, at *10 n.14 (questioning whether it would be appropriate to determine that an entire proceeding is core if the core aspects predominate and noting that a predominantly core test would not be workable where a jury demand exists); *Iridium*, 285 B.R. at 832 (not deciding whether court must employ a claim by claim analysis or treat a proceeding of mixed core and non-core claims as core if the claims are predominantly core); *CIS Corp.*, 172 B.R. at 756-60 (employing claim-by-claim analysis when determining whether adversary proceeding was core).

At the outset, section 157 itself refers to specific claims, causes of action, or grounds for relief, and *not* to the entire action. *Mirant Corp.* v. *The Southern Co.*, 337 B.R. 107, 116 (N.D. Tex. 2006) ("The word 'proceedings' as used in section 157 refers to specific claims, causes of action, or grounds for relief, and not to the entire action."). For example, section 157(b)(1) provides that "[b]ankruptcy judges may hear and determine all *cases* under title 11 and all core *proceedings* arising under title 11." 28 U.S.C. § 157(b)(1) (emphasis added). Section 157(c) likewise provides that "[a] bankruptcy judge may hear a *proceeding* that is not a core *proceeding* but that is otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1) (emphasis added). Thus, the jurisdictional statute contemplates a claim by claim analysis.

*Marathon* also requires that this Court make an independent jurisdictional determination as to each of the causes of action Enron asserts. *Mirant*, 337 B.R. at 119 ("The court disagrees with [the] conclusion that whatever non-core claims there are … are so intertwined with the other claims in the complaint that the interests of justice would be served if the claims were to be tried together.  The principles announced in *Marathon* would be violated if such an intertwinement theory were to be given effect…").

The reasoning in *Halper* v. *Halper*, 164. F3d 830 (3d Cir. 1999) properly informs the analysis here.   In *Halper*, the Court of Appeals for the Third Circuit faced a case that had a mixture of core and non-core claims.  *Id.* at 838.  The district court and bankruptcy courts had determined that the entire adversary proceeding was core based on the view that "when a proceeding is in part a core proceeding and in part non-core, the courts may determine that the entire proceeding is core if the core aspect heavily predominates and the non-core aspect is insignificant."  *Id.* at 839 (internal quotations and citations omitted).  Noting that other courts, including some in this District, have expressly rejected or declined to follow this "predominantly core" approach, the Third Circuit adopted the claim-by-claim approach as "the only one consistent with the teachings of *Marathon.*"  *Id.*  The Court held:

> In *Marathon*, as we have noted, a debtor in bankruptcy sued for breach of a pre-petition contract.  The Court held that it would violate Article III for an Article I Bankruptcy Judge to adjudicate finally the tendered state law claim even though the plaintiff was a debtor in bankruptcy.  Here, if we followed the approach of the Bankruptcy and District Courts, we would be required to sanction the entry of judgment by an Article I Judge on a pre-petition state law contract claim where neither party is in bankruptcy."

21

*Id.*; *accord Marathon,* 458 U.S. at 73 ("Appellants' contention, in essence, is that pursuant to any of its Art. I powers, Congress may create courts free of Art. III's requirements whenever it finds that course expedient.  This contention has been rejected in previous cases."); *Mirant*, 337 B.R. at 119.  This Court cannot expand its core jurisdiction to encompass non-core claims simply because it would be efficient.[10]

       Contrary to Enron's "intertwinement" theory, a claim is either core or it is not.  *See Intellitek Computer Corp.* v. *Kollmorgen Corp. (In re Nanodata Computer Corp.)*, 74 B.R. 766, 771 (W.D.N.Y. 1987) ("an interpretation of the statute requiring that core proceedings must either arise under or arise in, coupled with the finding that the present matters did not, effectively closes the possibility of jurisdiction in the bankruptcy court.")  Where an adversary proceeding presents mixed core and non-core claims, a bankruptcy court must yield to the constitutional prerogative of Article III.   It cannot simply deem the entire case core.  Rather, the bankruptcy court must submit proposed findings of fact and conclusions of law under Bankruptcy Rule 9033 on the non-core claims.  As a result, where the facts of the core claims are "so intertwined" with those of the non-core claims, efficiency dictates that the district court should withdraw the reference of the *entire* adversary proceeding. For this reason, Courts in this District

---

[10]    Section 157(b)(1)'s limit on bankruptcy court jurisdiction is particularly applicable where the core status purports to extend to a non-core state-law counterclaim that is grossly disproportionate to the core claims.  Courts have recognized this prerequisite to core treatment in similar circumstances.  *See Complete Mgmt., Inc.* v. *Arthur Andersen, LLP ( In re Complete Mgmt., Inc.)*, 01-03459, 2002 WL 31163878, *3 (S.D.N.Y. Sept. 27, 2002) (core status does not "extend[] to a counterclaim that is, as here, seventy times greater than the proof of claim"); *In re Marshall*, 264 B.R. at 631-32 (core status does not extend to a state-law counterclaim that is disproportionate to the proof of claim).

routinely withdraw the reference in adversary proceedings that present mixed core and non-core claims.

*1800 Postcards, Inc.* is illustrative. In that case, the district court found that the debtor's claims were non-core because they involved a conventional breach of contract action that did not depend in any respect on the bankruptcy laws and could have been brought in another court. 153 F.Supp.2d at 367. The debtor's official committee intervened in the case, alleging additional counts including a fraudulent conveyance action. *Id.* The committee then argued that its imposition of the fraudulent conveyance claim was a core matter and that the court should therefore deny the pending motion to withdraw the reference based on the non-core claims. *Id.* The court rejected the argument, reasoning:

> The Committee's premises – that the fraudulent conveyance claim is core and that the Bankruptcy Court may conduct a jury trial on that claim – are correct, but its conclusion does not follow, at least in this case. The reference of the core proceeding may be withdrawn in the interests of efficiency when it presents an "overlapping of facts, transactions, and issues" with a case pending before the district court. The facts, transactions and issues underlying the Committee's complaint overlap with those underlying [the debtor's] non-core claims in the adversary proceeding as well as [defendant's] claims here. Accordingly, efficiency counsels withdrawing the referral of the Committee's claims.

*Id.; see also 131 Liquidating Corp.* v. *LaSalle Capital Group, Inc. (In re 131 Liquidating Corp.)*, 222 B.R. 209, 213 (S.D.N.Y. 1998) (noting that "[a]t least one of the claims at issue is non-core and must be tried before a jury in this Court. Since all the claims arise from the same letter of intent and all parties agree that the core and non-core claims should be tried together, the reference is withdrawn as to all claims."); *In re Green*, 200

B.R. at 299 (withdrawing the reference as to entire nondischargeability adversary proceeding based on non-core nature of third-party claims, and noting that "withdrawal of the reference as to the third-party action while allowing the adversary complaint to proceed in the Bankruptcy Court … likely would result in duplicative presentations on substantially overlapping factual matters.  Such a process would cause unnecessary delay and deplete both judicial resources and the assets of the bankruptcy estate.")

*      *      *      *      *

In sum, Citigroup joins Barclays and others in asserting its constitutional right to have an Article III court finally determine Enron's billions of dollars of common law claims against.  The Common Law Counts are state law causes of action that vindicate uniquely private rights independent of Enron's bankruptcy cases.  As such, they are "related to" claims and fall outside this Court's core jurisdiction.  Neither Citigroup's proofs of claims, nor the mixed nature of how Enron has chosen to posture the MegaClaim, changes this result.

24

## Conclusion

For the reasons stated herein and in Barclays' pleadings, Citigroup respectively asks this Court to enter an order determining that the Common Law Counts (Cplt. Counts 74 – 76) Enron asserts against Citigroup are non-core claims pursuant to U.S.C. § 157(b)(3).

Dated:  New York, New York
         April 28, 2005

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

____/s/ Stephen J. Shimshak_____

Stephen J. Shimshak (SS-8822)
Douglas R. Davis (DD-0874)
1285 Avenue of the Americas
New York, New York  10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

*Attorneys for Citigroup Inc.; Citibank, N.A.; Citigroup Global Markets Inc.; Citicorp North America, Inc.; Citigroup Financial Products Inc.; CXC LLC; Corporate Asset Funding Company, LLC, and Corporate Receivables Corporation, LLC*