UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re ENRON CORPORATION SECURITIES, DERIVATIVE & "ERISA" LITIGATION | MDL 1446 |
| This Document Relates To: | Civil Action No. H-01-3624 |
| MARK NEWBY, *et al.*, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   vs.<br><br>ENRON CORP., *et al.*<br><br>        Defendants. | (Consolidated) |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, *et al.*, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   vs.<br><br>KENNETH L. LAY, *et al.*,<br><br>        Defendants. | |
| WASHINGTON STATE INVESTMENT BOARD, *et al.*, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   vs.<br><br>KENNETH L. LAY, *et al.*,<br><br>        Defendants. | Civil Action No. H-02-3401 |
| CONSECO ANNUITY ASSURANCE COMPANY, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   vs.<br><br>CITIGROUP, INC., *et al.*,<br><br>        Defendants. | Civil Action No. H-03-2240 |

**STIPULATION OF SETTLEMENT**

This Stipulation of Settlement (together with all Exhibits and Schedules thereto, the "Stipulation"), dated as of January 27, 2006, is made and entered into by and between Lead Plaintiff and the Representative Plaintiffs (on behalf of themselves and each of the Settlement Class Members), on the one hand, and the Citigroup Defendants, on the other hand, by and through their respective counsel of record. This Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Actions and the Released Claims as to the Citigroup Releasees upon and subject to the terms and conditions hereof, and subject to the approval of the Court. Throughout this Stipulation, all capitalized terms used, but not immediately defined, have the meaning given to them in Part IV.1, below.

## I.    THE LITIGATION

Beginning on October 22, 2001, purported class actions were commenced in this Court asserting claims under the federal securities laws and other laws against Enron, certain of its officers and directors, Vinson & Elkins, L.L.P., and Arthur Andersen LLP and certain of its employees and affiliates. By Order dated December 12, 2001, the federal securities cases were consolidated under Civil Action No. H-01-3624, *Newby* v. *Enron Corp., et al.*, as the lead case. By Memorandum and Order dated February 15, 2002, the Court appointed The Regents of the University of California as Lead Plaintiff and the firm of Milberg Weiss Bershad Hynes & Lerach LLP (currently Lerach Coughlin Stoia Geller Rudman & Robbins LLP) as Lead Counsel.

On April 8, 2002, Lead Plaintiff filed a Consolidated Complaint in the *Newby* Action asserting claims against the Citigroup Defendants and other defendants. Lead Plaintiff and the other Representative Plaintiffs in the *Newby* Action purport to

1

represent a class consisting of purchasers of Enron's equity and debt securities (including securities of entities related to Enron) between October 19, 1998 and November 27, 2001. Plaintiffs assert claims against the Citigroup Defendants under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") and Rule 10b-5 promulgated thereunder; Sections 11 and 15 of the Securities Act of 1933 (the "1933 Act") (with respect to purchasers of Enron Corp.'s 7% Exchangeable Notes due July 31, 2002 and Enron Corp.'s Zero Coupon Convertible Senior Notes due 2021); and Sections 12(a)(2) and 15 of the 1933 Act (with respect to purchasers of Foreign Debt Securities).

On May 8, 2002, the Citigroup Defendants moved to dismiss the claims asserted against them in the *Newby* Consolidated Complaint on the ground that the Complaint failed to state a claim upon which relief could be granted because plaintiffs failed to allege facts that would sustain a claim that the Citigroup Defendants engaged in any actionable conduct. On December 20, 2002, the Court denied the Citigroup Defendants' motion to dismiss.

On May 14, 2003, Lead Plaintiff filed a First Amended Consolidated Complaint. On June 18, 2003, the Citigroup Defendants filed a motion to dismiss, which was denied on March 31, 2004. The Citigroup Defendants filed an answer to the First Amended Consolidated Complaint on May 5, 2004.

On May 28, 2003, Lead Plaintiff filed an amended motion for class certification. Following discovery, the Citigroup Defendants and other financial institution defendants filed papers opposing Lead Plaintiff's motion. The Court has not yet ruled on the motion.

2

On April 11, 2005, the Citigroup Defendants filed Cross-Claims And Third-Party Complaint for Contribution And Indemnification in the *Newby* Action against certain cross-defendants and third-party defendants.

On June 3, 2005, the Citigroup Defendants moved for partial judgment on the pleadings dismissing the claims asserted against them under Sections 10(b) and 20(a) of the 1934 Act and Rule 10b-5 thereunder. Plaintiffs' time to respond had not run when an agreement in principle to settle was reached. The Court declared the motion moot due to the settlement.

Plaintiffs commenced the *WSIB* Action on September 9, 2002. Plaintiffs in that Action purport to represent a class consisting of purchasers of Enron's equity and debt securities between September 9, 1997 and October 18, 1998. Plaintiffs assert claims against the Citigroup Defendants under Sections 10(b) and 20(a) of the 1934 Act and Rule 10b-5 promulgated thereunder. On October 17, 2002, the Court consolidated the *WSIB* Action into the *Newby* Action.

On November 14, 2003, the Citigroup Defendants moved to dismiss the *WSIB* Action on the ground that the claims asserted therein were untimely and on the further ground that the Complaint failed to state a claim upon which relief could be granted. On February 18, 2005, the Court granted the Citigroup Defendants' motion to dismiss on the ground that plaintiffs' claims were untimely, without reaching the Citigroup Defendants' alternative arguments.

The *Conseco* Action was commenced on March 5, 2003. Plaintiff in that Action purports to represent a class consisting of purchasers of Yosemite $750,000,000 8.25% Series 1999-A Linked Enron Obligations due 2004, Yosemite £200,000,000

8.75% Series 2000-A Linked Enron Obligations due 2007, Enron Credit Linked Notes $500,000,000 8% due 2005, Enron Euro Credit Linked Notes Trust €200,000,000 6.5% due 2006, Enron Credit Linked Notes II $500,000,000 7.375% due 2006, and Enron Sterling Credit Linked Notes Trust £125,000,000 7.25% due 2006 between November 4, 1999 and December 3, 2001. Plaintiff asserts claims against the Citigroup Defendants under Sections 10(b) and 20(a) of the 1934 Act and Rule 10b-5 promulgated thereunder; and Sections 12(a)(2) and 15 of the 1933 Act.

In connection with this Settlement, the named plaintiff in the *Conseco* Action has agreed to consolidate the *Conseco* Action with the *Newby* Action for all purposes, delete all separate class action allegations from its complaint, and, if so designated by the Court, act as a class representative for Foreign Debt Securities it purchased, subject to the authority of The Regents of the University of California as Lead Plaintiff.

On June 9, 2005, plaintiffs and the Citigroup Defendants reached an agreement in principle to settle the *Newby* and *Conseco* cases, subject to final documentation and the approval of the Court.

Plaintiffs' Counsel have conducted an extensive investigation regarding the claims asserted against the Citigroup Defendants in the Actions. Among other things, Plaintiffs' Counsel have reviewed and analyzed approximately 2.3 million pages of documents relating to Enron produced by the Citigroup Defendants, and additional millions of pages produced by Enron, other Defendants, and third parties; reviewed and analyzed the Citigroup Defendants' responses to interrogatories and requests for admission; and taken or participated in the depositions of 372 witnesses, including 27

4

witnesses currently or formerly affiliated with the Citigroup Defendants. Plaintiffs'

Counsel have also reviewed and analyzed the reports and other materials about Enron

issued by the Special Investigative Committee of the Board of Directors of Enron

Corporation; the Permanent Subcommittee of Investigations of the Senate Committee on

Governmental Affairs and its staff; and the Court-Appointed Bankruptcy Examiners of

Enron Corporation and Enron North America Corporation; as well as other information

available to them. Plaintiffs' Counsel are also aware of settlements entered into between

the Citigroup Defendants and certain regulatory bodies, including the Federal Reserve

Bank of New York and the New York State Banking Department, the Securities and

Exchange Commission, and the New York District Attorney. Plaintiffs' Counsel have

also consulted extensively with experts to review and advise on the issues pertinent to

plaintiffs' claims against the Citigroup Defendants and the other Defendants in the

Actions, including the damages that Plaintiffs' Counsel would seek to prove at a trial of

the Actions.

## II.    THE CITIGROUP DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

The Citigroup Defendants have denied and continue to deny each and all

of the claims and allegations of wrongdoing made by the Representative Plaintiffs in the

Actions, and maintain that they have meritorious defenses. The Citigroup Defendants

have expressly denied and continue to deny all charges of wrongdoing, violation of law,

or liability against them arising out of any of the conduct, statements, acts, or omissions

alleged, or that could have been alleged, in the Actions. The Citigroup Defendants also

have denied and continue to deny the allegations that the Representative Plaintiffs or any

Settlement Class Members were harmed by any conduct by them alleged in the Actions

or otherwise. The Citigroup Defendants have determined to enter into this Stipulation solely to eliminate the uncertainties, burden, and expense of further litigation. As set forth in ¶ 8.2, below, this Stipulation shall in no event be construed as or deemed to be evidence of an admission or concession by the Citigroup Defendants with respect to any claim of any fault or liability or wrongdoing or damage whatsoever.

## III.     CLAIMS OF THE REPRESENTATIVE PLAINTIFFS AND BENEFITS OF SETTLEMENT

The Representative Plaintiffs believe that the claims asserted in the Actions have merit. However, the Representative Plaintiffs and Plaintiffs' Counsel recognize and acknowledge the expense, length, and difficulty of continued proceedings necessary to prosecute the Actions against the Citigroup Defendants through trial, appeals, and/or potential further court proceedings. The Representative Plaintiffs and Plaintiffs' Counsel also have taken into account the Court's dismissal of the claims against the Citigroup Defendants in the *WSIB* Action and the pendency of the Citigroup Defendants' motion for partial judgment on the pleadings in the *Newby* Action, as well as the risk of any litigation, especially complex cases such as the Actions, and the difficulties and delays inherent in such litigation. The Representative Plaintiffs and Plaintiffs' Counsel also are mindful of the inherent problems of proof under, and possible defenses to, the claims asserted in the Actions. The Representative Plaintiffs and Plaintiffs' Counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon the Settlement Class Members. Based on their evaluation, and the extensive discovery taken in the Actions to date, as well as other information available to them, the Representative Plaintiffs and Plaintiffs' Counsel have determined

6

that the Settlement set forth in this Stipulation is in the best interests of the Representative Plaintiffs and the Settlement Class Members.

## IV.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and between Lead Plaintiff and the other Representative Plaintiffs (on behalf of themselves and each of the Settlement Class Members), on the one hand, and the Citigroup Defendants, on the other hand, by and through their respective counsel of record, that, subject to the approval of the Court, the Actions and the Released Claims as against the Citigroup Releasees shall be finally and fully compromised, settled, and released, and the *Newby*, *WSIB*, and *Conseco* Actions shall be dismissed with prejudice as to the Citigroup Defendants, upon and subject to the terms and conditions of this Stipulation, as follows.

## 1.    Definitions

As used in this Stipulation, the following capitalized terms (together with their cognate forms) have the meanings specified below.  In the event of any inconsistency between any definition set forth below and any definition set forth in any other document related to the Settlement set forth in this Stipulation, the definition set forth below shall control.

1.1    "Actions" means the *Newby* Action, the *WSIB* Action, the *Conseco* Action, the *Milbank* Action, the *Royal Bank of Canada* Action, and the *Toronto-Dominion* Action, regardless of any severance that may be effected pursuant to ¶ 7.5 of this Stipulation.

1.2    "Additional Expense Amount" means Ten Million Dollars ($10,000,000.00), which has been funded to the Escrow Account, to cover administrative

7

and other expenses in connection with this Settlement. The Additional Expense Amount shall be in addition to, and not included in, the Settlement Amount.

1.3     "Authorized Claimant" means any Settlement Class Member who, in accordance with the terms of this Stipulation, is entitled to a distribution from the Gross Settlement Fund pursuant to any Plan of Allocation approved by the Court or any order of the Court.

1.4     "Citigroup Defendants" means Citigroup Inc., Citibank, N.A., Citicorp, Citigroup Global Markets Inc. (f/k/a Salomon Smith Barney Inc.), Citigroup Global Markets Limited (f/k/a Salomon Brothers International Limited), and Schroder Salomon Smith Barney. When used herein with reference to a specific Action, the term "Citigroup Defendants" means those of the Citigroup Defendants that are named defendants in that Action.

1.5     "Citigroup Releasees" means, in any capacity, Citigroup Inc.; its present and former parents, subsidiaries, divisions, and affiliates (including but not limited to Citibank, N.A., Citicorp, Citigroup Global Markets Inc., Citigroup Global Markets Limited, and Schroder Salomon Smith Barney); each of their respective present and former employees, officers, directors, attorneys, accountants, insurers, and agents; any person or entity that was or is affiliated with, or has or had a controlling interest in, any of the foregoing; and the predecessors, heirs, successors, and assigns of each of the foregoing. Solely for purposes of this Stipulation, and without limiting the foregoing definition, the term "Citigroup Releasees" shall include Delta Energy Corporation and its officers, directors, and agents. The term "Citigroup Releasees" shall not include any Person who is presently a Non-Settling Defendant.

8

1.6    "*Conseco* Action" means the action entitled *Conseco Annuity Assurance Co.* v. *Citigroup, Inc., et al.*, No. H-03-2240 (S.D. Tex.).

1.7    "Court" means the United States District Court for the Southern District of Texas, Houston Division.

1.8    "Defendants" means each and all of the defendants and third-party defendants that have been or may hereafter be named in any of the complaints in the Actions.

1.9    "Effective Date" means the earliest date by which all of the events and conditions specified in ¶ 7.1, below, of this Stipulation have occurred or have been met.

1.10    "Enron" means Enron Corporation and all of its past and present parents, subsidiaries, divisions, joint ventures, predecessors, successors, assigns, related or affiliated entities, and any entity in which any of them has or had a controlling interest.

1.11    "Enron Securities" means (i) Enron's debt, equity, and preferred securities; (ii) debt, equity, and preferred securities of entities related to Enron; (iii) securities issued by Enron-related entities, the value or repayment of which was dependent on the credit, financial condition, or ability to pay of Enron; and (iv) put and call options based in whole or in part on the price or value of any of the foregoing. For purposes of this Stipulation, the term "Enron Securities" shall be deemed to include, without limitation, all securities listed in Schedules B-1 through B-4 hereto. The securities listed in Schedule B-1 shall be referred to as "Common Stock"; the securities listed in Schedule B-2 shall be referred to as "Preferred Securities"; the securities listed in Schedule B-3 shall be referred to as "Notes"; and the Securities listed in Schedule B-4 shall be referred to as "Foreign Debt Securities."

9

1.12 "Escrow Account" means the interest-bearing account designated by Plaintiffs' Settlement Counsel at a financial institution acceptable to the Citigroup Defendants, and maintained by the Escrow Agent, into which the Settlement Amount and the Additional Expense Amount shall be deposited.

1.13 "Escrow Agent" means the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP or its successor(s).

1.14 "Federal Funds Rate" means the Federal Funds rate as of June 9, 2005, as published in *The Wall Street Journal* under the description of "Money Rates."

1.15 "Final" means, with respect to any court order, including but not limited to the Judgment, that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise.  Without limitation, an order (including the Judgment) becomes "Final" when:  (a) no appeal has been filed and the time for commencing any appeal has expired; or (b) an appeal has been filed and either (i) the appeal has been dismissed and the time, if any, for commencing any further appeal has expired, or (ii) the order has been affirmed in its entirety and the time, if any, for commencing any further appeal has expired.  For purposes of this definition ¶ 1.15, an "appeal" includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari, mandamus, or prohibition, and any other proceedings of like kind.  Any appeal or other proceedings pertaining to any order adopting or approving a Plan of Allocation, or to any order issued in respect of an application by Plaintiffs' Counsel for attorneys' fees and expenses, shall not in any way delay or preclude the Judgment from becoming Final.

1.16    "Gross Settlement Fund" means the sum of the Settlement Amount and the Additional Expense Amount, plus any interest that may accrue thereon.

1.17    "Initial Settlement Amount" means Thirty Million Dollars ($30,000,000.00), to be funded to the Escrow Account as provided herein.  The Initial Settlement Amount shall be paid from, and shall not be in addition to, the Settlement Amount.

1.18    "Judgment" means the order of judgment and dismissal approving the Settlement to be rendered by the Court in the Actions substantially in the form attached hereto as Exhibit D.

1.19    "Lead Plaintiff" means The Regents of the University of California.

1.20    "*Milbank* Action" means the action entitled *The Regents of the University of California, et al.* v. *Milbank, Tweed, Hadley & McCloy LLP, et al.*, No. H-04-0088 (S.D. Tex.).

1.21    "Net Settlement Fund" means the balance of the Gross Settlement Fund after payment of the items set forth in ¶ 5.2(a) through 5.2(d), below.

1.22    "*Newby* Action" means the consolidated action entitled *Newby, et al.* v. *Enron Corp., et al.*, No. H-01-3624 (S.D. Tex.), and all actions consolidated therewith.

1.23    "Non-Settling Defendants" means each and all of the current Defendants in the Actions except the Citigroup Defendants, and any Person who may hereafter be named a defendant or a third-party defendant in any of the Actions.  The term "Non-Settling Defendants" includes any Defendants that have entered into settlement agreements that were not the subjects of Final orders of approval as of June 9, 2005.

1.24    "Notice and Administrative Costs" means reasonable costs of the notice described in ¶ 3.1, below and other reasonable administrative costs of implementing the Settlement described in this Stipulation.

1.25    "Notice and Claims Administrator" means an independent administrator selected by Plaintiffs' Settlement Counsel and appointed by the Court.

1.26    "Person" means an individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any other business or legal entity of any kind.

1.27    "Plaintiffs' Counsel" means counsel of record for the plaintiffs in the Actions.

1.28    "Plaintiffs' Settlement Counsel" means Lerach Coughlin Stoia Geller Rudman & Robbins LLP (and any successors thereof), William S. Lerach, Keith F. Park, Helen J. Hodges, 655 West Broadway, Suite 1900, San Diego, California 92101, Telephone: (619) 231-1058.

1.29    "Plan of Allocation" means any plan or formula of allocation of the Net Settlement Fund, to be approved by the Court upon further notice to the Settlement Class, whereby the Net Settlement Fund shall be distributed to Authorized Claimants. Any Plan of Allocation is not part of this Stipulation, and the Citigroup Defendants shall have no responsibility or liability with respect thereto.

1.30    "Preliminary Approval Order" means an order substantially in the form attached hereto as Exhibit A.

1.31    "Proof of Claim and Release" means the form to be sent to Settlement Class Members, upon further order of the Court, by which any Settlement Class Member may make claims against the Net Settlement Fund for damages allegedly incurred by reason of their investment in the Enron Securities.

1.32    "Released Claims" means any and all claims, demands, rights, liabilities, or causes of action of any nature whatsoever, known or unknown (including but not limited to Unknown Claims), arising out of or related in any way to the sale, purchase, or holding of, or the exercise or failure to exercise options with respect to, or the disclosure or non-disclosure of information with respect to, Enron Securities, including but not limited to all claims or allegations that were asserted or could have been asserted against the Citigroup Defendants or the Citigroup Releasees in the Actions (including but not limited to all claims under the 1933 Act, the 1934 Act, any other federal or state statute, common law, or the law of any foreign jurisdiction).

1.33    "Representative Plaintiffs" means Lead Plaintiff and the other named plaintiffs in the Actions.

1.34    "Request for Exclusion" means a request from a Person who timely and validly requests exclusion from the Settlement Class.

1.35    "Request for Revocation of Exclusion" means a request from a Person who timely and validly requests to revoke a Request for Exclusion.

1.36    "*Royal Bank of Canada* Action" means the action entitled *The Regents of the University of California, et al.* v. *Royal Bank of Canada, et al.*, No. H-04-0087 (S.D. Tex.).

13

1.37    "Settlement" means the settlement of the Actions embodied in this Stipulation.

1.38    "Settlement Amount" means Two Billion Dollars ($2,000,000,000.00) in cash, subject to adjustment pursuant to ¶¶ 2.12 and 2.13(b), below, plus interest on the unfunded portion at the Federal Funds Rate, from June 9, 2005 to the respective dates of funding under ¶ 2.1 of this Stipulation.

1.39    "Settlement Class" means all Persons (and their beneficiaries) who purchased or acquired any Enron Securities by any method, including but not limited to in an offering or purported private placement; in the secondary market; in exchange for shares of acquired companies pursuant to a registration statement; by means of an employer contribution to an employee stock plan; or through the exercise of options (including but not limited to options acquired pursuant to employee stock plans), between September 9, 1997 and December 2, 2001, inclusive.  Excluded from the Settlement Class are the Defendants, any entity in which any of the Defendants has a controlling interest, the directors of Enron, and the members of their immediate families or their successors, heirs, assigns, and legal representatives.  The Defendants or any entity in which any of the Defendants has a controlling interest (for purposes of this paragraph, together a "Defendant-Controlled Entity") are excluded from the Settlement Class only to the extent that such Defendant-Controlled Entity itself had a proprietary (*i.e.*, for its own account) interest in Enron Securities.  To the extent that a Defendant-Controlled Entity held Enron Securities in a fiduciary capacity or otherwise on behalf of any third-party client, account, fund, trust, or employee benefit plan that otherwise falls within the Settlement Class, neither such Defendant-Controlled Entity nor the third-party client,

14

account, fund, trust, or employee benefit plan shall be excluded from the Settlement Class

with respect to such Enron Securities.  Without limiting the foregoing, a Defendant-

Controlled Entity (and the Persons on whose behalf such Enron Securities are held) shall

not be excluded from the Settlement Class with respect to Enron Securities that were

held, purchased, or acquired (i) in a registered or unregistered investment company

(including, but not limited to, a unit investment trust or mutual fund); (ii) in a common,

collective, commingled, or group trust fund; or (iii) (a) in a life insurance company

separate account, or (b) in a segment or subaccount of a life insurance company's general

account to the extent associated with insurance contracts under which the insurer's

obligation is determined by the investment return and/or market value of the assets held

in such segment or subaccount, for which a Defendant-Controlled Entity serves as

investment manager, investment adviser, trustee, or depositor.  Defendants shall be

deemed to have a "controlling interest" in an entity if such Defendant has a beneficial

ownership interest, directly or indirectly, in more than 50% of the total outstanding

voting power of any class or classes of capital stock that entitle the holders thereof to vote

in the election of members of the board of directors of such entity.  "Beneficial

ownership" shall have the meaning ascribed to such term under Rule 13d-3 of the 1934

Act, as amended, or any successor statute or statutes thereto.  The Settlement Class shall

include any present or former employee of Enron other than named Defendants in the

Actions or in any other actions that are part of MDL 1446; *provided*, however, that

present or former employees of Enron who are named as Third-Party Counterclaim

Defendants in the Insurers' First Amended Answer to First Amended Third-Party

Complaint for Contract Enforcement and Injunctive Relief Regarding D&O Policy

15

Proceeds and First Amended Third-Party Counterclaim for Interpleader, filed October 22, 2004, in the *Newby* Action, but are not named defendants in any other action that is part of MDL 1446, shall be part of the Settlement Class.

1.40    "Settlement Class Member" means a Person who falls within the definition of the Settlement Class, excluding those Persons who make a Request for Exclusion and do not subsequently make a Request for Revocation of Exclusion.

1.41    "Settlement Class Period" means the period between September 9, 1997 and December 2, 2001, inclusive.

1.42    "Settling Parties" means, collectively, the Citigroup Defendants and the Representative Plaintiffs (on behalf of themselves and each of the Settlement Class Members).

1.43    "*Toronto-Dominion* Action" means the action entitled *The Regents of the University of California, et al.* v. *Toronto-Dominion Bank, et al.*, No. H-03-5528 (S.D. Tex.).

1.44    "Unknown Claims" means any Released Claim that any Representative Plaintiff or Settlement Class Member does not know or suspect to exist at the time of the release that, if known, might have affected this Stipulation or any of the terms hereof, or the decision by any Settlement Class Member not to object to this Settlement or to opt out from the Settlement Class.

1.45    "*WSIB* Action" means the action entitled *Washington State Investment Board, et al.* v. *Kenneth L. Lay, et al.*, No. H-02-3401 (S.D. Tex.).

16

2.      The Settlement Consideration

a.      The Gross Settlement Fund

2.1      In full and complete settlement of the claims against the Citigroup Releasees in the Actions and of the Released Claims, the Citigroup Defendants shall deposit the Settlement Amount with the Escrow Agent, for the benefit of the Settlement Class, as follows:

(a)      the Initial Settlement Amount shall be deposited with the Escrow Agent within five (5) business days after execution of the Stipulation;

(b)      amounts awarded by the Court as attorneys' fees and costs pursuant to ¶¶ 6.1 and 6.2, below, shall be funded five (5) business days after Final approval of the Settlement by the Court; and

(c)      the balance of the Settlement Amount shall be funded five (5) business days after both the Judgment and order approving the Plan of Allocation are Final, and notice of the foregoing is given to the Citigroup Defendants.

2.2      The Additional Expense Amount was deposited in the Escrow Account on June 16, 2005.

2.3      Under no circumstances will the Citigroup Defendants be required to pay more than the Settlement Amount (subject to the adjustments provided for in ¶¶ 2.12 and 2.13(b), below) and the Additional Expense Amount pursuant to this Stipulation and the Settlement.

2.4      No amount may be disbursed from the Gross Settlement Fund unless and until the Effective Date, except that, subject to the Court's approval:

(a)      upon entry of the Preliminary Approval Order, Plaintiffs' Settlement Counsel shall be entitled to provisional reimbursement of their out-of-pocket

17

costs (not to exceed $25 million) from the Initial Settlement Amount, subject to the

obligation to make appropriate refunds to the Gross Settlement Fund within five (5)

business days, plus interest at the Federal Funds Rate, if and when, as a result of any

order, the final award of attorneys' fees and costs pursuant to ¶¶ 6.1 and 6.2, below, is

lower than that amount, or if the Settlement is terminated;

        (b)    Notice and Administrative Costs shall be advanced from the Gross

Settlement Fund as incurred;

        (c)    Taxes and Tax Expenses (as defined in ¶ 2.11(b), below) shall be

paid from the Gross Settlement Fund as they become due; and

        (d)    any Fee and Expense Award (as defined in ¶ 6.2, below) that is

allowed by the Court pursuant to ¶¶ 6.1 and 6.2, below, shall be paid from the Gross

Settlement Fund in accordance with the provisions of those paragraphs.

        2.5    The Representative Plaintiffs and Plaintiffs' Settlement Counsel will

attempt in good faith to minimize the amount of Notice and Administrative Costs.

Plaintiffs' Settlement Counsel shall provide the Citigroup Defendants, upon request,

appropriate documentation of all Notice and Administrative Costs and other

disbursements from the Gross Settlement Fund made prior to the Effective Date.

        2.6    This is not a claims-made settlement; that is, as of the Effective Date, the

Citigroup Defendants shall not have any right to the return of the Gross Settlement Fund

or any portion thereof, irrespective of the number of Proof of Claim and Release forms

filed, the collective amount of losses of Authorized Claimants, the percentage of recovery

of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement

Fund, or for any other reason whatsoever.

18

**b.    The Escrow Agent**

2.7    The Escrow Agent shall invest the Gross Settlement Fund when received in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof (or in a fund composed predominantly of such instruments), and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. The Escrow Agent and the Settlement Class shall bear all risks related to investment of the Gross Settlement Fund.

2.8    The Escrow Agent shall not disburse the Gross Settlement Fund or any portion thereof except as provided in this Stipulation or by an order of the Court.

2.9    The Escrow Agent shall be authorized to execute only such transactions as are consistent with the terms of this Stipulation and any orders of the Court.

2.10    All funds held by the Escrow Agent shall be deemed and considered to be *in custodia legis*, and shall remain subject to the oversight and jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Stipulation or further order of the Court.

**c.    Taxes**

2.11    The Settling Parties and the Escrow Agent shall treat the Gross Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. The Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 2.11, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such

19

regulations. It shall be the responsibility of the Escrow Agent to prepare and deliver

timely and properly the necessary documentation for signature by all necessary parties,

and thereafter to cause the appropriate filing to occur.

(a)    For the purpose of Section 468B of the Internal Revenue Code of

1986, as amended, and the regulations promulgated thereunder, the "administrator" shall

be the Escrow Agent. The Escrow Agent shall satisfy the administrative requirements

imposed by Treas. Reg. § 1.468B-2, including, without limitation, (i) obtaining a

taxpayer identification number, (ii) satisfying any information reporting or withholding

requirements imposed on distributions from the Gross Settlement Fund, and (iii) timely

and properly filing applicable federal, state, and local tax returns necessary or advisable

with respect to the Gross Settlement Fund (including, without limitation, the returns

described in Treas. Reg. § 1.468B-2(k)) and paying any taxes reported thereon. Such

returns (as well as the election described in this ¶ 2.11) shall be consistent with this ¶ 2.11

and in all events shall reflect that all Taxes as defined in sub-paragraph (b), below, on the

income earned by the Gross Settlement Fund shall be paid out of the Gross Settlement

Fund as provided in sub-paragraph (b), below.

(b)    All (i) taxes (including any estimated taxes, interest, or penalties)

arising with respect to the income earned by the Gross Settlement Fund, including,

without limitation, any taxes or tax detriments that may be imposed upon the Citigroup

Defendants or their counsel with respect to any income earned by the Gross Settlement

Fund for any period during which the Gross Settlement Fund does not qualify as a

"qualified settlement fund" for federal or state income tax purposes (collectively,

"Taxes"), and (ii) expenses and costs incurred in connection with the operation and

implementation of this ¶ 2.11, including, without limitation, expenses of tax attorneys

and/or accountants and mailing and distribution costs and expenses relating to filing (or

failing to file) the returns described in this ¶ 2.11 (collectively, "Tax Expenses"), shall be

paid out of or reimbursed by the Gross Settlement Fund; in all events neither the

Citigroup Defendants nor their counsel shall have any liability or responsibility for the

Taxes or the Tax Expenses.  The Escrow Agent shall indemnify and hold harmless the

Citigroup Defendants and their counsel for Taxes and Tax Expenses (including, without

limitation, Taxes payable by reason of any such indemnification).  Further, Taxes and

Tax Expenses shall be treated as, and considered to be, a cost of administration of the

Gross Settlement Fund and shall timely be paid by the Escrow Agent out of the Gross

Settlement Fund without prior order from the Court and the Escrow Agent shall be

obligated (notwithstanding anything herein to the contrary) to withhold from distribution

to Authorized Claimants any funds necessary to pay such amounts, including the

establishment of adequate reserves for any Taxes and Tax Expenses (as well as any

amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)); neither

the Citigroup Defendants nor their counsel is responsible therefor, nor shall they have any

liability therefor.  The Settling Parties agree to cooperate with the Escrow Agent, each

other, and their tax attorneys and accountants to the extent reasonably necessary to carry

out the provisions of this ¶ 2.11.

    **d.**      **Adjustments to the Settlement Amount**

    2.12    As stated in ¶ 1.38, above, the Settlement Amount is $2 billion in cash;

except that:

(a)     the Settlement Amount will be reduced by an amount that is the product of $10 million and W (*i.e.*, $10 million *x* W), where "W" (expressed in percentage points or fractions thereof[1]), is: (i) the sum total of the number of shares of Common Stock purchased during the Settlement Class Period by members of the Settlement Class who opt out of the Settlement Class, expressed as a percentage of the average number of shares of Common Stock outstanding during the Settlement Class Period net of Treasury shares and shares held by Enron insiders, as reported in Enron's reports to the Securities and Exchange Commission, less (ii) one and one-half (1½) percent; provided that, in the foregoing equation, if "W" is a negative number, "W" shall be deemed to be zero (0);

(b)     the Settlement Amount will be reduced by an amount that is the product of $400,000 and X (*i.e.*, $400,000 *x* X), where "X" (expressed in percentage points or fractions thereof) is: (i) the sum total of the number of shares of Preferred Securities purchased during the Settlement Class Period by members of the Settlement Class who opt out of the Settlement Class, expressed as a percentage of the average number of shares of Preferred Securities outstanding during the Settlement Class Period net of Treasury shares and shares held by Enron insiders, as reported in Enron's reports to the Securities and Exchange Commission, less (ii) one and one-half (1½) percent; provided that in the foregoing equation, if "X" is a negative number, "X" shall be deemed to zero (0);

---

[1]     For example, if Common Stock opt outs accounted for a total of 2.1% of outstanding shares, then "W" would be 0.6 (*i.e.*, 2.1 - 1.5), and the Settlement Amount would be reduced by $6 million (*i.e.*, $10 million *x* 0.6). The computations set out in subparagraphs (b), (c) and (d) shall be made in the same manner.

22

(c)    the Settlement Amount will be reduced by an amount that is the product of $4.4 million and Y (*i.e.*, $4.4 million *x* Y), where "Y" (expressed in percentage points or fractions thereof) is: (i) the sum total of the face value of all Notes purchased during the Settlement Class Period by members of the Settlement Class who opt out of the Settlement Class, expressed as a percentage of the total face value of all Notes outstanding as of December 2, 2001, less (ii) one and one-half (1½) percent; provided that, in the foregoing equation, if "Y" is a negative number, "Y" shall be deemed to be zero (0); and

(d)    the Settlement Amount will be reduced by an amount that is the product of $5.2 million and Z (*i.e.*, $5.2 million *x* Z), where "Z" (expressed in percentage points or fractions thereof) is: (i) the sum total of the face value of all Foreign Debt Securities purchased during the Settlement Class Period by members of the Settlement Class who opt out of the Settlement Class, expressed as a percentage of the total face value of all Foreign Debt Securities outstanding as of December 2, 2001, less (ii) one and one-half (1½) percent; provided that in the foregoing equation, if "Z" is a negative number, "Z" shall be deemed to be zero (0).

2.13    Solely for purposes of the calculations provided for in ¶ 2.12, above:

(a)    the purchases of Enron Securities of the plaintiffs in the actions listed on Schedule A of this Stipulation (to the extent that such plaintiffs are members of the Settlement Class) shall be excluded from the numerator and denominator of the calculations provided for in ¶ 2.12, above. The Settling Parties shall endeavor in good faith to ascertain the amounts of Enron Securities purchased by those plaintiffs based

23

upon the allegations in the complaints or the accompanying certifications, documents or testimony obtained through discovery, or other available information;

      (b)    in the event that any of the plaintiffs in the actions listed in Schedule A does not opt out of the Settlement Class, the Settlement Amount shall be increased in proportion to each such plaintiff's purchases of securities in each category listed in ¶ 2.12, above, *provided*, however, that in no event shall the Settlement Amount be increased pursuant to this ¶ 2.13(b) by more than Sixty Million Dollars ($60,000,000.00); and

      (c)    the face value of securities issued in currencies other than United States dollars shall be converted to U.S. dollars at the rate in effect as of the close of the market on December 2, 2001.

    2.14    In order to effectuate the provisions of ¶¶ 2.12 and 2.13, above, the Preliminary Approval Order shall provide that (a) any Request for Exclusion submitted by a Settlement Class Member that purchased $100,000 or more of Enron Securities during the Settlement Class Period shall specify the amount of each class of Enron Securities the Settlement Class Member purchased during the Settlement Class Period; and (b) any Request for Exclusion or Request for Revocation of Exclusion forms must be submitted at least thirty (30) days prior to the Settlement Hearing (as defined in ¶ 3.1(b), below), and that, within three (3) business days of receipt by Plaintiffs' Settlement Counsel or the Notice and Claims Administrator of any Request for Exclusion or Request for Revocation of Exclusion forms, copies of all such forms shall be provided to counsel for the Citigroup Defendants. The Settling Parties acknowledge that the calculations provided for in ¶¶ 2.12 and 2.13, above, constitute material terms of this Stipulation.

Accordingly, after the close of the opt-out period, the Settling Parties will confer in good faith to perform the calculations provided for in ¶¶ 2.12 and 2.13, above. The Settling Parties further acknowledge that, in order to complete the calculations provided for in ¶¶ 2.12 and 2.13, above, a procedure must be established whereby, for Settlement Class Members who opt out of the Settlement Class but fail to provide information sufficient to determine their purchases, some amount of purchases is ascribed to them. Accordingly, Plaintiffs' Settlement Counsel and counsel for the Citigroup Defendants shall confer on a fair and equitable manner for estimating such purchases in advance of the Settlement Hearing. In the event the Settling Parties are not able to resolve their dispute, the Settling Parties will submit their respective positions to the Court for resolution concurrent with the Settlement Hearing, which resolution shall be final and not appealable.

**3.    Preliminary Approval Order and Settlement Hearing**

3.1    Promptly after the execution of this Stipulation, Lead Plaintiff shall apply to the Court for entry of a Preliminary Approval Order substantially in the form and content of Exhibit A attached hereto:

(a)    preliminarily approving the Settlement;

(b)    scheduling a hearing (the "Settlement Hearing"), to consider (i) whether the Settlement should be approved as fair, reasonable, and adequate to the Class Members, and whether the Judgment should be entered dismissing the claims of Lead Plaintiff, the Representative Plaintiffs, and all Settlement Class Members against the Citigroup Defendants in the Actions on the merits and with prejudice; and (ii) whether to approve any application by certain of Plaintiffs' Counsel for an award of attorneys' fees and payment of costs and expenses pursuant to ¶ 6.1 below;

25

(c)     certifying the Settlement Class, and finding that each element for certification of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure is met;

(d)     establishing the method for giving notice of the Settlement and the Settlement Hearing to the Settlement Class Members;

(e)     approving the forms of notice to be mailed to Settlement Class Members who can be identified with reasonable effort (the "Mailed Notice") and to be published (the "Summary Notice"), substantially in the form of Exhibits B and C hereto, respectively;

(f)     setting a period of time during which Settlement Class Members may submit a Request for Exclusion (which shall be no less than thirty (30) days from the date the Mailed Notice is distributed) or may serve written objections to the Settlement or to any application for attorneys' fees and expenses; and

(g)     enjoining prosecution of any action or claims that are subject to the release and dismissal contemplated by this Settlement by any Settlement Class Member who does not opt out of the Settlement Class.

3.2     At the Settlement Hearing, the Settling Parties shall jointly request entry of a Judgment, substantially in the form attached hereto as Exhibit D:

(a)     finally approving the Settlement as fair, reasonable, and adequate, within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing its consummation pursuant to its terms;

(b)    directing that the Actions be dismissed as to the Citigroup Defendants without costs and with prejudice, and releasing, as against each of the Citigroup Releasees, the Released Claims;

(c)    permanently barring and enjoining the institution and prosecution, by Lead Plaintiff, the Representative Plaintiffs, and the Settlement Class Members, of any other action against the Citigroup Releasees in any court asserting any Released Claims;

(d)    reserving jurisdiction over the Actions, including all future proceedings concerning the administration, consummation, and enforcement of this Stipulation;

(e)    barring, enjoining, and restraining the Non-Settling Defendants (including any other Person later named as a Defendant) from commencing, prosecuting, or asserting any claim for indemnity or contribution, however denominated, against the Citigroup Releasees, on the terms set forth in ¶ 4.6, below;

(f)    finding that the complaints in the Actions were filed on a good faith basis in accordance with the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 11 of the Federal Rules of Civil Procedure;

(g)    finding, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, that there is no just reason for delaying and directing entry of a final judgment as to the Citigroup Defendants; and

(h)    containing such other and further provisions consistent with the terms of this Stipulation to which the Settling Parties expressly consent in writing.

3.3    The Settling Parties hereby stipulate to certification of the Settlement Class, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, solely for purposes of this Stipulation and the Settlement set forth herein. The certification of the Settlement Class shall be binding only with respect to the Settlement of the Actions and only if the Judgment contemplated by this Stipulation becomes Final and the Effective Date occurs. Subject to the Court's approval, Conseco Annuity Assurance Company shall be designated as a class representative for purchasers of Foreign Debt Securities that it purchased.

3.4    If, for any reason, this Stipulation is terminated, or if the Effective Date for any reason does not occur, the certification of the Settlement Class shall automatically be vacated, *nunc pro tunc*. In such case, neither this Stipulation nor any order of this Court certifying the Settlement Class will be binding on any of the Settling Parties, the Actions shall proceed as though the Settlement Class had never been certified, and the Citigroup Defendants may oppose and assert all objections to certification of any class or subclass sought by any party to the Actions.

4.    **Releases**

4.1    Upon the Effective Date, the Representative Plaintiffs and each Settlement Class Member, on behalf of themselves, their successors and assigns, and any other Person claiming (now or in the future) through or on behalf of them, and regardless of whether any such Representative Plaintiff or Settlement Class Member ever seeks or obtains by any means, including, without limitation, by submitting a Proof of Claim and Release, any distribution from the Net Settlement Fund, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Citigroup Releasees, shall have

28

covenanted not to sue the Citigroup Releasees with respect to all such Released Claims, and shall be permanently barred and enjoined from instituting, commencing, prosecuting or asserting any such Released Claim against the Citigroup Releasees.

      4.2    With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the Representative Plaintiffs shall expressly waive, and each of the Settlement Class Members shall be deemed to have waived, and by operation of the Judgment shall have waived, the provisions, rights, and benefits of California Civil Code Section 1542 (to the extent it applies to the Actions), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

      4.3    The Representative Plaintiffs shall further expressly waive, and each of the Settlement Class Members shall be deemed to have waived, and by operation of the Judgment shall have waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable, or equivalent in effect to California Civil Code Section 1542 or that would otherwise act to limit the effectiveness or scope of the releases.  The Representative Plaintiffs and Settlement Class Members expressly acknowledge that they may hereafter discover facts in addition to or different from those that any of them or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims or otherwise, but upon the Effective Date each Representative Plaintiff shall expressly have, each Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever

settled and released any and all Released Claims, known or unknown, suspected or
unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now
exist or heretofore have existed, upon any theory of law or equity now existing or coming
into existence in the future, including, but not limited to, conduct that is negligent,
reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without
regard to the subsequent discovery or existence of such different or additional facts. The
Representative Plaintiffs acknowledge, and the Settlement Class Members shall be
deemed to have acknowledged, and by operation of the Judgment shall have
acknowledged, that the foregoing waiver was separately bargained for and a key element
of the Settlement of which this release is a part.

4.4    Upon the Effective Date, the Citigroup Defendants shall be deemed to
have, and by operation of the Judgment shall have, fully, finally, and forever released,
relinquished, and discharged each and all of the Settlement Class Members and Plaintiffs'
Counsel from all claims, arising out of, in any way relating to, or in connection with the
institution, prosecution, assertion, settlement, or resolution of the Actions or the Released
Claims, except to enforce the releases or other terms and conditions contained in this
Stipulation or any Court order (including but not limited to the Judgment) entered
pursuant thereto.

4.5    The Citigroup Defendants agree that, if there are any Non-Settling
Defendants, Citigroup will, as part of any later settlement by Representative Plaintiffs
with any such Defendants, provide a full and complete release of all claims against such
Defendants and any of their partners, principals, officers, or directors solely to the extent
they arise out of the claims in the Actions, including but not limited to, claims for

30

contribution, indemnity, malpractice, negligence, or otherwise arising under federal or

state law. The release set forth in the foregoing sentence shall be conditioned on

Representative Plaintiffs obtaining comparable releases for the Citigroup Defendants

from any other Defendants in the Actions who settle with Representative Plaintiffs.

      4.6    The Judgment shall, as a material condition of the Settlement, permanently

bar, enjoin, and restrain all Persons, including but not limited to the Non-Settling

Defendants, from instituting, commencing, prosecuting, or asserting any claim for

indemnity or contribution, however denominated (including but not limited to any claim

for breach of contract or misrepresentation), against the Citigroup Releasees (or any other

claim against the Citigroup Releasees where the alleged injury to such Person is such

Person's actual or threatened liability to the Settlement Class or any Settlement Class

Member, the cost of defending against claims asserted by the Settlement Class or any

Settlement Class Member, or the settlement of such claims), arising out of or related to

the claims or allegations asserted by the plaintiffs in the Actions, whether arising under

state, federal, or foreign law as claims, cross-claims, counterclaims, or third-party claims,

and whether asserted in the Actions, in this Court, in any federal or state court, or in any

other court, arbitration proceeding, administrative agency, or other forum in the United

States or elsewhere, and all such claims shall be deemed extinguished, discharged,

satisfied, and unenforceable. Any person so enjoined, barred, or restrained shall be

entitled to appropriate judgment reduction.

      4.7    The Settling Parties intend the provisions of the Judgment set forth in the

preceding paragraph to foreclose any liability of the Citigroup Defendants or the

Citigroup Releasees to contribute in any way toward any "uncollectible share" (as that

term is used in 15 U.S.C. § 78(4)-4(f)(4)) in connection with any of the Actions. Nonetheless, in the event that any Non-Settling Defendant may become liable to pay to the Settlement Class or any Settlement Class Member any such "uncollectible share" or any other amount for which the Non-Settling Defendant has an uncollectible right of contribution from any other Non-Settling Defendant, the Settlement Class and Class Members shall reduce or credit against any such amount due from the Non-Settling Defendants collectively that amount which the Citigroup Releasees would have been liable to contribute, in the event they had not settled prior to trial, with respect to such amounts.

       4.8     Pursuant to Section 21D(c)(1) of the PSLRA, the Settling Parties acknowledge that each Settling Party, and his, her, or its respective counsel, have complied with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to all papers and filings related to the Released Claims, and that insofar as they relate to the Released Claims, the Actions were not brought for any improper purpose and are not unwarranted under existing law or legally frivolous.

**5.     Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of Gross Settlement Fund**

       5.1     Plaintiffs' Settlement Counsel or, upon its appointment by the Court, the Notice and Claims Administrator, subject to the supervision, direction, and approval of the Court, shall administer the claims submitted by Settlement Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants pursuant to a Plan of Allocation to be approved by the Court.

       5.2     Subject to the terms of this Stipulation and any orders of the Court, the Gross Settlement Fund shall be applied as follows:

(a)    to pay all costs and expenses reasonably and actually incurred in connection with locating Settlement Class Members and providing notice to them pursuant to ¶ 3.1, above, in connection with administering and distributing the Net Settlement Fund to Authorized Claimants, and in connection with paying escrow fees and costs, if any;

(b)    to pay all costs and expenses, if any, reasonably and actually incurred in soliciting Settlement Class Members' claims and assisting with the filing and processing of such claims;

(c)    to pay the Taxes and Tax Expenses defined in ¶ 2.11(b), above;

(d)    to pay any Fee and Expense Award (as defined in ¶ 6.2, below) that is allowed by the Court pursuant to ¶¶ 6.1 and 6.2, below, subject to and in accordance with the provisions of ¶¶ 6.1 through 6.4, below; and

(e)    following the Effective Date, to distribute the balance of the Gross Settlement Fund after payment of items (a) through (d), above, to Authorized Claimants pursuant to a Plan of Allocation to be approved by the Court and any other applicable order of the Court, and consistent with the terms of this Stipulation.

5.3    No funds shall be distributed to Authorized Claimants until the Effective Date. Following the Effective Date, and in accordance with the terms of the Plan of Allocation and such further orders of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following:

(a)    Each Settlement Class Member who claims to be an Authorized Claimant shall be required, as a condition of receiving any distribution from the Net

33

Settlement Fund, to submit to the Notice and Claims Administrator a completed Proof of Claim and Release signed under penalty of perjury and supported by such documents as specified in the Proof of Claim and Release and as are reasonably available to such Settlement Class Member.

(b)     Except as otherwise ordered by the Court, each Settlement Class Member who fails to submit a Proof of Claim and Release within such period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to this Stipulation, but shall in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment.

5.4     All Persons who fall within the definition of the Settlement Class and who do not timely and validly request to be excluded from the Settlement Class in accordance with the instructions set forth in the Preliminary Approval Order shall be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment with respect to all Released Claims, regardless of whether such Persons seek or obtain by any means, including, without limitation, by submitting a Proof of Claim and Release or any similar document, any distribution from the Gross Settlement Fund or the Net Settlement Fund.

5.5     Neither the Citigroup Defendants nor their counsel shall have any responsibility for, interest in, or liability whatsoever with respect to the management, investment, or distribution of the Gross Settlement Fund, the Plan of Allocation, the determination, administration, calculation, review, or calculation of claims, the payment or withholding of Taxes, the distribution of the Net Settlement Fund, or any losses

34

incurred in connection with any such matters. The Representative Plaintiffs and each
Settlement Class Member hereby fully, finally, and forever release, relinquish, and
discharge the Citigroup Defendants and their counsel from any and all such liability. The
Escrow Agent shall indemnify and hold harmless the Citigroup Defendants and their
counsel for any losses or liabilities arising in connection with such matters.

5.6    No Person shall have any claim against the Representative Plaintiffs,
Plaintiffs' Settlement Counsel, or the Notice and Claims Administrator based on
distributions from the Gross Settlement Fund or the Net Settlement Fund made in
accordance with the Stipulation and the Settlement contained herein, any Plan of
Allocation, or further orders of the Court.

5.7    If there is any balance remaining in the Net Settlement Fund after six (6)
months from the date of distribution of the Net Settlement Fund (whether by reason of
tax refunds, uncashed checks, or otherwise), Plaintiffs' Settlement Counsel may
reallocate such balance among Authorized Claimants in an equitable and economic
fashion, subject to Court approval. Any balance remaining thereafter may be donated to
an appropriate non-profit organization, subject to Court approval.

5.8    No distribution of funds shall be made from the Net Settlement Fund
except pursuant to Court order.

5.9    Any Plan of Allocation of the Net Settlement Fund, including, but not
limited to, any adjustments to any Authorized Claimant's claim, is not a part of this
Stipulation and is to be considered by the Court separately from the Court's consideration
of the fairness, reasonableness, and adequacy of the Settlement, and any order or
proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this

Stipulation or affect the finality of the Court's Judgment approving this Stipulation and the Settlement, or any other orders entered pursuant to this Stipulation. The time to appeal from approval of the Settlement shall commence upon the Court's entry of the Judgment regardless of whether a Plan of Allocation has been submitted to the Court or has been approved.

**6.      Plaintiffs' Counsel's Attorneys'
         Fees and Reimbursement of Expenses**

6.1      Plaintiffs' Counsel may, upon such further notice to the Settlement Class as may be required, submit an application or applications (the "Fee and Expense Application") for distributions to them from the Gross Settlement Fund, for: (a) an award of attorneys' fees; plus (b) reimbursement of expenses incurred in connection with prosecuting the Actions; plus (c) any interest on such attorneys' fees and expenses (until paid) at the same rate and for the same periods as earned by the Settlement Fund, as appropriate, as may be awarded by the Court; plus (d) reimbursement of Lead Plaintiff's expenses as permitted by the PSLRA. Such a Fee and Expense Application may be made before or after the Settlement Hearing.

6.2      Any amounts that are awarded by the Court pursuant to ¶ 6.1, above (the "Fee and Expense Award") shall be paid to Plaintiffs' Counsel from the Gross Settlement Fund, as ordered, less any amount previously paid pursuant to ¶ 2.4(a), above, immediately after the Court executes an order or orders awarding such fees and expenses and permitting such distribution. If, and when, as a result of any appeal or further proceedings on remand, or successful collateral attack, the Fee and Expense Award is overturned or lowered, or if the Stipulation is terminated or is not approved by the Court, or if there is an appeal and any order approving the Stipulation does not become Final

and binding upon the Settlement Class, then Plaintiffs' Counsel shall, within five (5) business days after receiving notice from counsel for the Citigroup Defendants or from a court of appropriate jurisdiction, refund to the Gross Settlement Fund the amounts previously paid to them, plus interest thereon at the rate earned by the Settlement Fund, in an amount consistent with any such cancellation or termination of the Settlement or the reversal or modification of the Fee and Expense Award. Plaintiffs' Counsel, as a condition of receiving such fees and expenses, on behalf of themselves and their partners and/or shareholders, agree that such Plaintiffs' Counsel receiving fees and expenses, their law firms, partners, and shareholders are jointly and severally obligated for the entirety of such refund and are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this ¶ 6.2; *provided*, however, that only plaintiffs' counsel in the *Conseco* Action shall be obligated to refund the fees and expenses received by them, and plaintiffs' counsel in the *Conseco* Action shall not be obligated to refund the amount of the fees and expenses received by other Plaintiffs' Counsel.

6.3    The procedure for, and the allowance or disallowance by the Court of, any Fee and Expense Application are not part of the Settlement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order or proceeding relating to any Fee and Expense Application, the pendency *vel non* of any such application, or any appeal from any Fee and Expense Award or any other order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Judgment.

6.4     The Citigroup Defendants shall have no responsibility for, and no liability whatsoever with respect to, any payments to Plaintiffs' Counsel pursuant to ¶¶ 6.1 and 6.2, above, or to any other Person who may assert some claim thereto, or any Fee and Expense Award that the Court may make in the Actions.

**7.     Conditions of Settlement and Effect of Disapproval, Cancellation, or Termination**

7.1     The Effective Date of this Stipulation shall be the earliest date on which all of the following events and conditions have occurred or have been met:

(a)     the Citigroup Defendants shall have timely transferred or caused to be timely transferred to the Escrow Agent the portions of the Settlement Amount set forth in ¶ 2.1, above;

(b)     no Settling Party has the right under ¶ 7.3, below, to terminate this Stipulation or, if any Settling Party does have such right, it has given written notice to the other Settling Parties that it will not exercise such right;

(c)     the Court has approved the Settlement, following notice to the Settlement Class and the Settlement Hearing, and has entered the Judgment; and

(d)     the Judgment has become Final.

7.2     Upon the occurrence of all of the events referenced in ¶ 7.1, above, any and all remaining interest or right of the Citigroup Defendants in or to the Gross Settlement Fund, if any, shall be absolutely and forever extinguished.

7.3     If the Court does not enter the Judgment substantially in the form of Exhibit D hereto, or if the Court enters the Judgment and appellate review is sought and, on such review, the entry of the Judgment is Finally vacated, modified, or reversed, then this Stipulation and the Settlement incorporated therein shall be cancelled and terminated,

38

unless all parties who are adversely affected thereby, in their sole discretion within thirty (30) days from the date of the mailing of such ruling to such parties, provide written notice to all other parties hereto of their intent to proceed with the Settlement under the terms of the Judgment as modified by the Court or on appeal. Such notice may be provided on behalf of Lead Plaintiff, the Representative Plaintiffs, and the Class Members by Plaintiffs' Settlement Counsel. No Settling Party shall have any obligation whatsoever to proceed under any terms other than substantially in the form provided and agreed to herein; *provided*, however, that no order of the Court concerning any Fee and Expense Application or Plan of Allocation, or any modification or reversal on appeal of such order, shall constitute grounds for cancellation or termination of this Stipulation by any Settling Party. Without limiting the foregoing, the Citigroup Defendants shall have, in their sole and absolute discretion, the option to terminate the Settlement in its entirety in the event that the Judgment, upon becoming Final, does not include the bar order referenced in ¶ 4.6, above, or does not provide for the dismissal with prejudice of all of the Actions as against them. If any Settling Party engages in a material breach of the terms hereof, any other Settling Party, provided that it is in substantial compliance with the terms of this Stipulation, may terminate this Stipulation on notice to the breaching Settling Party or sue for enforcement.

7.4    Unless otherwise ordered by the Court, in the event that the Effective Date does not occur or this Stipulation should terminate, or be cancelled, or otherwise fail to become effective for any reason, including, without limitation, in the event that the Settlement is not approved by the Court or the Judgment is reversed or vacated following any appeal taken therefrom, then:

39

(a)    within ten (10) business days after written notification of such event is sent by counsel for the Citigroup Defendants to the Escrow Agent, the Gross Settlement Fund, to the extent received from the Citigroup Defendants, including the Settlement Amount, the Additional Expense Amount, all interest paid by or on behalf of the Citigroup Defendants or earned on the Gross Settlement Fund while held in escrow, and all payments disbursed, including all expenses, costs, and any Fee and Expense Award, excluding only Notice and Administrative Costs that have either been properly disbursed or are due and owing pursuant to ¶ 2.4(b), above, and Taxes and Tax Expenses that have been paid or that have accrued and will be payable at some later date, will be refunded, reimbursed, and repaid by the Escrow Agent to the Citigroup Defendants. Such amount due to the Citigroup Defendants shall not be reduced by any investment losses on funds in escrow and any such losses shall be an obligation of the Escrow Agent. If said amount or any portion thereof is not returned within such ten (10) day period, then interest shall accrue thereon at the rate earned on the Settlement Amount until the date that amount is returned;

(b)    at the written request of counsel for the Citigroup Defendants, the Escrow Agent or its designee shall apply for any tax refund owed to the Gross Settlement Fund and pay the proceeds to the Citigroup Defendants, after deduction of any fees or expenses reasonably incurred in connection with such application for refund, pursuant to such written request;

(c)    the Settling Parties shall be restored to their respective positions in the Actions as of June 8, 2005, with all of their respective claims and defenses (including

all opposition and objections to certification of any class or subclass in the Actions),

preserved as they existed on that date;

      (d)    the terms and provisions of this Stipulation, with the exception of

¶¶ 2.4, 3.4, 5.5, 6.2, 6.4, 7.3, 7.4, 7.5, 8.1, 8.2, and 9.2 (which shall continue in full force

and effect), shall be null and void and shall have no further force or effect with respect to

the Settling Parties, and neither the existence nor the terms of this Stipulation (nor any

negotiations preceding this Stipulation nor any acts performed pursuant to, or in

furtherance of, this Stipulation) shall be used or offered in evidence in the Actions or in

any other action or proceeding for any purpose (other than to enforce the terms remaining

in effect);

      (e)    any judgment or order entered by the Court in accordance with the

terms of this Stipulation shall be treated as vacated, *nunc pro tunc*; and

      (f)    the Settlement Class, if it has been certified, shall be vacated, *nunc*

*pro tunc.*

    7.5    Plaintiffs and the Citigroup Defendants agree to apply jointly to the Court

promptly after execution of this Stipulation for severance of the claims against the

Citigroup Defendants from the claims against the Non-Settling Defendants, and for

severance of the Citigroup Defendants' claims against third-party defendants (which

third-party claims will be withdrawn when the Judgment becomes Final), and for a stay

and adjournment of all deadlines in the Actions as to the Citigroup Defendants relating to

such severed claims for eight (8) months. The Citigroup Defendants acknowledge,

however, that further discovery of the Citigroup Defendants may be sought in connection

with Lead Plaintiff's prosecution of claims against the Non-Settling Defendants. The

41

Settling Parties agree that if, at the expiration of the eight-month period, the Judgment has not been entered and become Final, they will jointly apply for a further stay and adjournment. In the event the Stipulation is not approved by the Court or is terminated, the Settling Parties agree that, subject to Court approval: (a) the Citigroup Defendants' motion for partial judgment on the pleadings in the *Newby* Action, filed June 3, 2005, shall be reinstated; (b) the Settling Parties may take additional expert discovery in these Actions following such non-approval or termination, with pre-trial motion practice, including without limitation summary judgment motions, to follow the closure of the expert discovery period; (c) no application shall be made by plaintiffs to consolidate for discovery or trial the severed claims against the Citigroup Defendants with the claims asserted against the Non-Settling Defendants; and (d) any trial of the claims against the Citigroup Defendants shall commence no earlier than eight (8) months after such non-approval or termination (or such additional time in which the Actions are stayed as to the Citigroup Defendants).

**8. No Admissions**

8.1   The Settling Parties intend the Settlement as described herein to be a final and complete resolution of all disputes between them with respect to the Actions and to compromise claims that are contested, and it shall not be deemed an admission by any Settling Party as to the merits of any claim or defense or any allegation made in the Actions.

8.2   The Settling Parties acknowledge that the Citigroup Defendants are entering into this Settlement solely to eliminate the uncertainties, burden, and expense of protracted litigation. Neither this Stipulation nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Stipulation or the Settlement:

42

(a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claims, of any allegation made in the Actions, or of any wrongdoing or liability of the Citigroup Releasees; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any liability, fault, or omission of the Citigroup Releasees in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. Neither this Stipulation nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Stipulation or the Settlement, shall be admissible in any proceeding for any purpose, except to consummate or enforce the terms of the Settlement, and except that the Citigroup Releasees may file this Stipulation or the Judgment in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar, or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9.    **Miscellaneous Provisions**

9.1    The Settling Parties: (a) acknowledge that it is their intent to consummate this Stipulation; and (b) agree to proceed in good faith and cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation including, without limitation, executing such additional documents as may reasonably be requested by another Party to effectuate this Stipulation, without prejudice to the rights of any of the Settling Parties to terminate the Stipulation pursuant to ¶ 7.3, above.

43

9.2    In the event that the Settlement is terminated or does not receive preliminary or Final Court approval, or any amount paid for the benefit of the Settlement Class under ¶ 2.1, above, is determined to be a preference, voidable transfer, fraudulent transfer, or similar transaction by a Final order of a court of competent jurisdiction and the Representative Plaintiffs are required to return such amount to the Citigroup Defendants, then the Representative Plaintiffs have the right to bring, revive, or reinstate all claims against the Citigroup Defendants, by refunding the amounts as specified in ¶ 7.4, above, to the Citigroup Defendants, within ten (10) business days as set forth in ¶ 7.4, above.

9.3    The Representative Plaintiffs and Plaintiffs' Counsel acknowledge that, in view of the amount of discovery taken by them of the Citigroup Defendants and others to date, including extensive document and other written discovery as well as numerous depositions, together with other information available to them, Representative Plaintiffs and Plaintiffs' Counsel are satisfied that an adequate factual record has been established that supports the Settlement and hereby waive any right to conduct further discovery to assess or confirm the Settlement.

9.4    Following the Effective Date, the Citigroup Defendants will be subject as a non-party to discovery requests from Lead Plaintiff, *provided*, however, that the Citigroup Defendants will not be required to forego their right to object to any such requests on any otherwise applicable ground or any of their protections under the Federal Rules of Civil Procedure or any order of the Court, or to waive any attorney-client or other privilege or work product protection.  The Citigroup Defendants shall have no

44

obligation to cooperate with Representative Plaintiffs in connection with their prosecution of claims against any Non-Settling Defendants.

9.5    The Citigroup Defendants warrant that the payment of the Settlement Amount to the Escrow Agent will not render any of them insolvent.

9.6    The Settling Parties agree that the terms of this Stipulation were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

9.7    All of the Exhibits and Schedules to this Stipulation are material and integral parts hereof and are fully incorporated herein by reference.

9.8    This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all of the Settling Parties.

9.9    This Stipulation, including the Exhibits attached hereto, constitutes the entire agreement between Representative Plaintiffs and the Citigroup Defendants, and no representations, warranties, or inducements have been made to any Settling Party concerning this Stipulation other than the representations, warranties, and covenants contained and memorialized in such documents. It is understood by the Settling Parties that, except for the matters expressly represented herein, the facts or law with respect to which this Stipulation is entered into may turn out to be other than or different from the facts now known to each Settling Party or believed by such Settling Party to be true; each Settling Party therefore expressly assumes the risk of the facts or law turning out to be so different, and agrees that this Stipulation shall be in all respects effective and not subject to termination by reason of any such different facts or law. Except as otherwise provided herein, each Settling Party shall bear its own costs and attorneys' fees.

45

9.10    Plaintiffs' Settlement Counsel and Representative Plaintiffs represent and warrant that Plaintiffs' Settlement Counsel, on behalf of the Settlement Class, are expressly authorized by the Representative Plaintiffs to take all appropriate action required or permitted to be taken by or on behalf of the Settlement Class pursuant to this Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Settlement Class that they deem appropriate.

9.11    Each counsel or other Person executing this Stipulation or any of its Exhibits on behalf of any Settling Party hereby warrants that such counsel or other Person has the full authority to do so.

9.12    This Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  Counsel for the Settling Parties shall exchange among and between themselves original signed counterparts and a complete set of executed counterparts shall be filed with the Court.

9.13    This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties, including any corporation or other entity into or with which any Settling Party merges, consolidates, or reorganizes.

9.14    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation, and the Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing this Stipulation.

9.15    This Stipulation shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of New York, and the rights and

obligations of the Settling Parties shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New York without giving effect to any choice of law rules or principles.

IN WITNESS WHEREOF, the Settling Parties have caused this Stipulation to be executed, by their authorized attorneys, as of the date first written above.

LERACH COUGLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
William S. Lerach
Keith F. Park
Darren J. Robbins
Helen J. Hodges
Byron S. Georgiou
James I. Jaconette
Michelle M. Ciccarelli
James R. Hail
Anne L. Box
John A. Lowther
Alexandra S. Bernay
Matthew P. Siben
Robert P. Henssler, Jr.


  /s/ Roger B. Greenberg * signed by permission
    HELEN J. HODGES
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423


LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
REGINA M. AMES
KATHERINE C. SPLAN
9601 Wilshire Blvd., Suite 510
Los Angeles, CA  90210
Telephone: (310) 859-3100
Fax: (310) 278-2148

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
G. PAUL HOWES
JERRILYN HARDAWAY
Texas Bar No. 00788770
Federal I.D. No. 30964
1111 Bagby, Suite 4850
Houston, TX 77002
Telephone: (713) 571-0911

**Lead Counsel for Plaintiffs**

SCHWARTZ, JUNELL, GREENBERG
& OATHOUT, LLP
Roger B. Greenberg
State Bar No. 08390000
Federal I.D. No. 3932


_____/s/ Roger B. Greenberg_____
ROGER B. GREENBERG
Two Houston Center
909 Fannin, Suite 2700
Houston, TX 77010
Telephone: 713/752-0017


HOEFFNER & BILEK, LLP
THOMAS E. BILEK
Federal Bar No. 9338
State Bar No. 02313525
1000 Louisiana, Suite 1302
Houston, Texas 77002
Telephone: (713) 227-7720

**Attorneys in Charge**

BERGER & MONTAGUE, P.C.
SHERRIE R. SAVETT
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000

**Attorneys for Staro Asset Management**

WOLF POPPER LLP
ROBERT C. FINKEL
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600

**Attorneys for Nathaniel Pulsifer**

SCOTT + SCOTT, LLC
DAVID R. SCOTT
NEIL ROTHSTEIN
108 Norwich Avenue
Colchester, CT 06415
Telephone: (860) 537-3818

**Attorneys for the Archdiocese of Milwaukee
Supporting Fund, Inc.**

CUNEO GILBERT & LaDUCA, L.L.P.
JONATHAN W. CUNEO
MICHAEL G. LENETTI
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
Fax: (202) 789-1813

**Washington Counsel**

ABBEY GARDY, LLP

_____
                PAUL PARADIS

212 East 39th Street
New York, NY 10016
Telephone: (212) 889-3700
Facsimile: (212) 867-9346

**Attorneys for Plaintiff in the _Conseco_ Action**

50

PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
Brad S. Karp
Richard A. Rosen
Michael E. Gertzman
Claudia L. Hammerman
Robyn Tarnofsky
Julia Tarver Mason
Jonathan H. Hurwitz

_____
            Brad S. Karp

1285 Avenue of the Americas
New York, NY  10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

Eugene B. Wilshire
Jacalyn D Scott
WILSHIRE SCOTT & DYER P.C.
3000 One Houston Center
1221 McKinney
Houston, TX  77010
Telephone:  (713) 651-1221
Facsimile:  (713) 651-0020

**Attorneys for Citigroup Inc., Citibank, N.A., Citicorp, Citigroup Global Markets
Inc., Citigroup Global Markets Limited, and Schroder Salomon Smith Barney**

51