after written notice thereof shall have been given to the Borrower by the Agent or any Lender; or

(d)    the Borrower shall fail to perform any other term, covenant or agreement contained in any Loan Document on its part to be performed or observed if such failure shall remain unremedied for seven Business Days after written notice thereof shall have been given to the Borrower by the Agent or the Lender; or

(e)    the Borrower shall generally not pay its debts as such debts become due, or shall admit in writing its inability to pay its debts generally, or shall make a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against the Borrower seeking to adjudicate it a bankrupt or insolvent, or seeking liquidation, winding up, reorganization, arrangement, adjustment, protection, relief, or composition of it or its debts under any law relating to bankruptcy, insolvency or reorganization or relief of debtors, or seeking the entry of an order for relief or the appointment of a receiver, trustee, or other similar official for it or for any substantial part of its property and, in the case of any such proceeding instituted against it (but not instituted by it) that is being diligently contested by it in good faith, either such proceeding shall remain undismissed or unstayed for a period of 60 days or any of the actions sought in such proceeding (including, without limitation, the entry of an order for relief against, or the appointment of a receiver, trustee, custodian or other similar official for, it or any substantial part of its property) shall occur; or the Borrower shall take any action to authorize any of the actions set forth above in this subsection (e); or

(f)    any judgment or order for the payment of money in excess of $10,000 (or the equivalent in any foreign currency) shall be rendered against the Borrower and either (i) enforcement proceedings shall have been commenced by any creditor upon such judgment or order and such proceedings shall not have been stayed within 10 days or (ii) there shall be any period of 10 consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect; or

(g)    any non-monetary judgment or order shall be rendered against the Borrower that is reasonably likely to have a Material Adverse Effect, and there shall be any period of ten (10) consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect; or

(h)    any provision of any Loan Document after delivery thereof pursuant to Section 3.01 shall for any reason cease, in any material respect, to be valid and binding on or enforceable against the Borrower; or

EC 001014176



52

(i)     the Security and Collection Agent shall, at any time after the date of the making of the Advance, not have a valid and perfected first priority security interest in the Pledged Collateral (other than as a result of the action or inaction of the Security and Collection Agent or as a result of Permitted Liens); or

(j)     the Borrower shall for any reason dissolve or all of its Members shall have voted or consented to the dissolution of the Borrower; or

(k)     a Borrower Liquidating Event shall have occurred, or the Liquidation Period (as defined in the Joint Venture Company Agreement) shall have expired or terminated; or

(l)     any Member of the Borrower shall transfer its respective member interest so that as a result of any such transfer the Borrower is caused to be required to be registered as an "investment company" within the meaning of the Investment Company Act of 1940, as amended, unless such default is cured within thirty (30) Business Days;

then, and in any such event, the Agent shall at the request, or may with the consent, of the Lender, by notice to the Borrower, declare the Advance, all interest thereon and all other amounts payable under this Agreement and the other Loan Documents to be forthwith due and payable, whereupon the Advance, all such interest and all such amounts shall become and be forthwith due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived by the Borrower; provided, however, that in the event of an actual or deemed entry of an order for relief with respect to the Borrower under the United States federal Bankruptcy Code as then in effect, the Advance, all such interest and all such amounts shall automatically become and be due and payable, without presentment, demand, protest or any notice of any kind, all of which are hereby expressly waived by the Borrower. The Agent, the Security and Collection Agent, the Surety Provider, the Liquidity Providers and the Lender shall have, in addition to all other rights and remedies under this Agreement or otherwise, all other rights and remedies provided under the UCC of each applicable jurisdiction and other applicable laws, which rights shall be cumulative. Without limiting the foregoing or the general applicability of Article X hereof, the Lender may elect to assign all of its interest in the Advance to an Assignee following the occurrence of any Event of Default.

This document is subject to a
written Confidentiality Agreement

EC 001014177

AB000370629

53

## ARTICLE VII

## GRANT OF SECURITY INTEREST, PLEDGE AND ASSIGNMENT

SECTION 7.01. <u>Pledge and Assignment</u>. The Borrower hereby irrevocably pledges, transfers and assigns to the Security and Collection Agent for its benefit and the benefit of the Lender, the Surety Provider, the Liquidity Providers and the Agent, and grants to the Security and Collection Agent for its benefit and the benefit of the Lender, the Surety Provider, the Liquidity Providers and the Agent, a security interest in, all right, title and interest of the Borrower (whether now owned or hereafter acquired) in, to and under the following (the "<u>Pledged Collateral</u>"):

(a)     the Joint Venture Company Agreement, the Enron Agreement, the Tax Indemnity Agreement, the Purchase Option Agreement, the Purchase Option Escrow Agreement, the Escrow Agreement and the Escrowed Documents (collectively, the "<u>Assigned Agreements</u>"), including, without limitation, whether now existing or hereafter acquired or arising, (i) all rights of the Borrower to receive monies and other property or assets due and to become due to the Borrower under or pursuant to any of the Assigned Agreements, (ii) all claims of the Borrower for damages arising out of or for breach of or default under the Assigned Agreements, (iii) all rights of the Borrower to receive proceeds of any insurance, indemnity, warranty or guaranty with respect to the Assigned Agreements, (iv) all rights of the Borrower to perform thereunder and to compel performance and otherwise exercise all remedies thereunder (including, without limitation, the right to deliver a Joint Venture Termination Notice or to appoint a "Joint Venture Liquidator" under Section 12.9 of the Joint Venture Company Agreement, or to elect to receive in-kind distributions pursuant to Section 12.11 of the Joint Venture Company Agreement, or to appoint an "Appraiser" pursuant to Section 4.16 of the Joint Venture Company Agreement and (v) all general intangibles;

(b)     the Joint Venture Interest and all distributions, monies, instruments and other property or assets from time to time received, receivable or otherwise distributable or distributed in respect of or in exchange for any or all of the Joint Venture Interest (including, without limitation, the proceeds of the redemption of all or any portion of the Joint Venture Interest or any Enron Shares (and any certificates or instruments in respect thereof));

(c)     the Operating Account and all funds held therein and all certificates and instruments, if any, from time to time representing or evidencing such Operating Account, and all interest, dividends, cash, instruments and other property from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all funds from time to time in the Operating Account;

SS_NYL3A/27974
Nighthawk Credit & Security Agreement

This document is subject to a
written Confidentiality Agreement

EC 001014178

AB000370630

54

(d)    all Permitted Investments from time to time in the Operating Account and all certificates and instruments, if any, from time to time representing or evidencing the Permitted Investments, and all interest, earnings and proceeds in respect thereof;

(e)    all promissory notes issued to or held by the Borrower, certificates, if any, representing the Joint Venture Interest, certificates of deposit, securities and other instruments whether now owned or hereafter acquired by the Borrower (collectively, the "Securities");

(f)    the Purchase Option Escrow Account and all funds held therein and all certificates and instruments, if any, from time to time representing or evidencing such Purchase Option Escrow Account, and all interest, dividends, cash, instruments and other property from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all funds from time to time in the Purchase Option Escrow Account and all letters of credit delivered under the Purchase Option Agreement and proceeds of drawings thereon;

(g)    all other personal property of the Borrower (other than the Administrator's Account, amounts on deposit therein and proceeds thereof which Account, amounts and proceeds shall not constitute and are expressly excluded from the Pledged Collateral), whether now owned or existing or hereafter acquired or arising, or in which the Borrower may have an interest, and wheresoever located, whether or not of a type which may be subjected to a security interest under the UCC; and

(h)    to the extent not covered by clauses (a) through (g) above, all proceeds of any or all of the foregoing.

Notwithstanding the foregoing or anything to the contrary contained in this Agreement, any and all Excluded Payments (and all rights and remedies with respect thereto) are hereby expressly excluded from the Pledged Collateral, no security interest is granted therein and the Security and Collection Agent agrees to transfer, or cause the Administrator to transfer, promptly (whether or not (i) the provisions of Section 8.04(f) are then applicable or (ii) a Default or an Event of Default shall have occurred and be continuing) to the Administrator's Account (including from funds in the Operating Account) an amount equal to any and all Excluded Payments received by it or by the Administrator (including, without limitation, Excluded Payments made under the Joint Venture Company Agreement certified to it in writing as such by the Administrator based upon information supplied to it under the Operative Documents).

SS_NYLJA/27974
Nighthawk Credit & Security Agreement

This document is subject to a
written Confidentiality Agreement

EC 001014179



SECTION 7.02.  Security for Obligations.  This Agreement secures the payment of all Obligations of the Borrower now or hereafter existing, or incurred under, arising out of or in connection with this Agreement, whether for principal, interest, fees, expenses, indemnities or otherwise (all such obligations of the Borrower being the "Secured Obligations").  Without limiting the generality of the foregoing, this Agreement secures the payment of all amounts that constitute part of the Secured Obligations and would be owed by the Borrower to the Agent or the Lender, the Liquidity Providers or the Surety Provider under this Agreement but for the fact that they are unenforceable or not allowable due to the existence of a bankruptcy, reorganization or similar procedure involving the Borrower.

SECTION 7.03.  Delivery of Pledged Collateral.  (a)  All instruments and certificates representing or evidencing the Pledged Collateral shall be delivered to and held by or on behalf of the Security and Collection Agent on behalf of itself, the Agent, the Lender, the Liquidity Providers and the Surety Provider pursuant hereto and shall be in suitable form for transfer by delivery, or shall be accompanied by duly executed instruments of transfer or assignment in blank and undated, all in form and substance satisfactory to the Security and Collection Agent.  If the Borrower shall acquire (by purchase or otherwise) any additional certificated Securities (or certificates or instruments representing such Securities) at any time or from time to time on or after December 30, 1997, the Borrower will forthwith pledge and deposit such Securities (or certificates or instruments representing such Securities) as security with the Security and Collection Agent and deliver to the Security and Collection Agent, and the Security and Collection Agent shall accept under this Agreement, certificates or instruments therefor, duly endorsed in blank by the Borrower or such other instruments of transfer as are acceptable to the Security and Collection Agent, and promptly thereafter deliver to the Security and Collection Agent a certificate executed by a Borrower Class A Member describing such Securities and certifying that the same have been duly pledged and delivered to the Security and Collection Agent.

(b)     The Security and Collection Agent shall have the right, at any time in its discretion after the occurrence of an Event of Default and without notice to the Borrower, to transfer to or to register in the name of the Security and Collection Agent or any of its nominees as pledged hereunder any or all of such Pledged Collateral, subject to the provisions of the Escrow Agreement and the rights specified in Section 7.09.  Promptly after any such transfer or registration, the Security and Collection Agent shall give notice thereof to the Borrower, but the failure to give such notice shall not affect any of the rights or remedies of the Security and Collection Agent hereunder.  The Security and Collection Agent shall have the right at any time to exchange instruments or certificates representing or evidencing such Pledged Collateral for instruments or certificates of smaller or larger denominations, subject to the terms thereof and of the Escrow Agreement.

This document is subject to a
written Confidentiality Agreement

EC 001014180

AB000370632

56

SECTION 7.04. <u>Borrower Remains Liable</u>. Anything herein to the contrary notwithstanding, (i) the Borrower shall remain liable under the contracts and agreements included in the Pledged Collateral to the extent set forth therein to perform all of its duties and obligations thereunder to the same extent as if this Agreement had not been executed, (ii) the exercise by the Security and Collection Agent of any of the rights hereunder shall not release the Borrower from any of its duties or obligations under the contracts and agreements included in the Pledged Collateral, and (iii) neither the Security and Collection Agent, the Agent nor the Lender shall have any obligation or liability under the contracts and agreements included in the Pledged Collateral by reason of this Agreement, nor shall any such Person be obligated to perform any of the obligations or duties of the Borrower thereunder or to take any action to collect or enforce any claim for payment assigned hereunder, except as otherwise provided in Section 7.08 hereof.

SECTION 7.05. <u>Further Assurances</u>. (a) The Borrower agrees that at any time and from time to time, at the expense of the Borrower, the Borrower will promptly execute and deliver, and will cause the Administrator to promptly execute and deliver, as applicable, all further instruments and documents, and take all further action that the Security and Collection Agent may reasonably request, in order to perfect and protect any assignment and security interest granted or purported to be granted hereby or to enable the Security and Collection Agent to exercise and enforce its rights and remedies hereunder with respect to any Pledged Collateral. Without limiting the generality of the foregoing, the Borrower will, and will cause the Administrator to, as applicable, upon the reasonable request of the Security and Collection Agent, (i) execute and deliver to the Security and Collection Agent such financing or continuation statements or amendments thereto, and such other instruments or notices, as may be necessary or desirable, or as the Security and Collection Agent may reasonably request, in order to perfect and preserve the security interests granted or purported to be granted hereby and (ii) deliver to the Security and Collection Agent promptly upon receipt thereof all instruments representing or evidencing any of the Pledged Collateral duly endorsed and accompanied by duly executed instruments of transfer or assignment, all in form and substance reasonably satisfactory to the Security and Collection Agent.

(b)     The Borrower hereby authorizes the Security and Collection Agent to file one or more financing or continuation statements, and amendments thereto, relating to all or any part of the Pledged Collateral without the signature of the Borrower where permitted by law. A photocopy or other reproduction of this Agreement or any financing statement covering the Pledged Collateral or any part thereof shall be sufficient as a financing statement where permitted by law.

(c)     The Borrower will not, without the prior written consent of the Security and Collection Agent (after having given the Security and Collection Agent not less than 30 days' prior written notice thereof and after having executed and delivered to the Security and

SS_NYL3A/27974
Nighthawk Credit & Security Agreement

This document is subject to a
written Confidentiality Agreement

EC 001014181

AB000370633

57

Collection Agent such further instruments and documents in connection therewith as may be requested by the Security and Collection Agent pursuant to this Section 7.05) change its name, move or transfer from the location specified in Section 12.02 hereof (or any subsequent location) its principal place of business or chief executive office, or the location of the Borrower's books and records with respect to the Pledged Collateral.

      (d)    The Borrower agrees that after the date hereof, at the expense of the Borrower (including reasonable attorney's fees and disbursements), the Agent and the Security and Collection Agent may request and obtain an opinion of counsel in Bermuda as to the perfection of and other relevant matters related to the security interest under the laws of Bermuda.

      SECTION 7.06.  <u>Security and Collection Agent Appointed Attorney-in-Fact</u>. The Borrower hereby irrevocably appoints the Security and Collection Agent the Borrower's attorney-in-fact, with full authority in the place and stead of the Borrower and in the name of the Borrower or otherwise, from time to time in the Security and Collection Agent's discretion, upon the occurrence and during the continuance of a Default or an Event of Default, to take any action and to execute any instrument, and to direct the Administrator (and the Borrower shall cause the Administrator to promptly comply with any such direction) to take any action and to execute any instrument, as applicable, that the Security and Collection Agent, in its reasonable judgment, may deem necessary or advisable to accomplish the purposes of this Agreement, including, without limitation, to make demand on the Joint Venture and any Joint Venture Class A Member or on Enron or any Affiliate of any thereof for all amounts due under each Assigned Agreement to which it is a party, to receive, endorse and collect all instruments made payable to the Borrower representing any payment or other distribution in respect of the Pledged Collateral or any part thereof and to give full discharge for the same, and to file any claims or take any action or institute any proceedings that the Security and Collection Agent, in its reasonable judgment, may deem necessary or desirable for the collection of any of the Pledged Collateral or otherwise to enforce compliance with the terms and conditions of each Assigned Agreement or the rights of the Security and Collection Agent with respect to any of the Pledged Collateral.

      SECTION 7.07.  <u>Security and Collection Agent May Perform</u>. If the Borrower fails to perform any agreement contained herein, the Security and Collection Agent may itself perform, or cause performance of, such agreement, and the expenses of the Security and Collection Agent incurred in connection therewith shall be payable by the Borrower under Article XI or Section 12.04.

      SECTION 7.08.  <u>Reasonable Care</u>. The powers conferred on the Security and Collection Agent hereunder are solely to protect its interest in the Pledged Collateral and shall not impose any duty upon it to exercise any such powers. The Security and Collection Agent

SS_NYL3A/27974
Nighthawk Credit & Security Agreement

This document is subject to a
written Confidentiality Agreement

EC 001014182

AB000370634

58

shall be deemed to have exercised reasonable care in the custody and preservation of the Pledged Collateral in its possession if the Pledged Collateral is accorded treatment substantially equal to that which an ordinary person accords its own property, it being understood that none of the Security and Collection Agent, the Agent, the Surety Provider, the Liquidity Providers or the Lender shall have any responsibility for taking any necessary steps to preserve rights against any parties with respect to any Pledged Collateral other than, with respect to the Agent and the Security and Collection Agent, (i) the safe custody of any Pledged Collateral in its possession, (ii) the filing of continuation statements on Form UCC-3 or UCC-4, as applicable, in each jurisdiction, and with the filing offices, in which financing statements on Form UCC-1 are filed as contemplated by Section 3.01(b)(ii)(A), in each case within six months prior to the fifth anniversary of the filing of any such Form UCC-1 statements, (iii) the accounting for monies actually received by it hereunder and (iv) the application of monies in accordance with this Agreement.

SECTION 7.09.  Rights, Remedies and Obligations.  (a)  The Borrower agrees, and has effectively and irrevocably instructed each other party to each of the Assigned Agreements and the Joint Venture Custodian, that all payments due or to become due to the Borrower under or in connection with such Assigned Agreement (other than Excluded Payments or payments under the Purchase Option Agreement to be paid into the Purchase Option Escrow Account) shall be made directly to the Operating Account.

(b)    All payments received by the Borrower under or in connection with the Assigned Agreements contrary to the provisions of this Agreement shall be received in trust for the benefit of the Security and Collection Agent on behalf of itself, the Lender, the Surety Provider, the Liquidity Providers and the Agent, shall be segregated from other funds of the Borrower, and shall forthwith be paid over to the Security and Collection Agent in the same form as so received (with any necessary endorsement).

(c)    The Borrower shall not be entitled to elect to receive any distribution made pursuant to the Joint Venture Company Agreement in assets other than cash in liquidation of its interest in the Joint Venture, unless the Security and Collection Agent, the Surety Provider and the Lender have given their prior written consent, which consent shall be given in such party's sole discretion.  Unless otherwise agreed in writing by the Security and Collection Agent, the Lender and the Surety Provider, if the Borrower has not deposited sufficient funds into the Operating Account to redeem any non-cash assets distributed or to be distributed pursuant to the Joint Venture Company Agreement, on the second Business Day after any such liquidation distribution has been made, the Security and Collection Agent shall liquidate such non-cash assets promptly upon the receipt thereof.

(d)    The Security and Collection Agent shall have the exclusive right:

This document is subject to a
written Confidentiality Agreement

EC 001014183

AB000370635

59

(i)     other than with respect to the certification by the Administrator of amounts of Excluded Payments received in the Operating Account and otherwise with respect to Excluded Payments, to direct the Administrator (and the Borrower shall cause the Administrator to promptly comply with any such direction) with respect to the disbursement or other disposition, pursuant to the terms hereof, of funds deposited to or otherwise held in the Operating Account from time to time;

(ii)     to exercise the Class B Member's rights to instruct the Joint Venture with respect to the appointment and direction of a Joint Venture Liquidator (as defined in and pursuant to Section 12.9 of the Joint Venture Company Agreement) or an Appraiser (as defined in the Joint Venture Company Agreement or the Purchase Option Agreement); provided that, with respect to any right to appoint any Joint Venture Liquidator, if the Security and Collection Agent shall not have appointed such Joint Venture Liquidator within five Business Days of any occurrence of the event giving rise to such power of appointment, the Borrower shall have the right to appoint such a Joint Venture Liquidator;

(iii)     to make any election reserved to the Class B Member under Section 12.6(a) of the Joint Venture Company Agreement and deliver notice thereof to the Joint Venture and the Class A Member thereof;

(iv)     to make any determinations to be made by the Security and Collection Agent as to the satisfactory nature of any "Solvency Opinion" under (and as defined in) the Purchase Option Agreement or any letter of credit delivered under the Purchase Option Agreement or to deliver any release on behalf of the Borrower pursuant to the Purchase Option Escrow Agreement;

(v)     to draw on any letter of credit delivered pursuant to the Purchase Option Agreement; and

(vi)     to deliver any notices, instructions or directions to the Joint Venture Custodian that the Class B Member is entitled to provide pursuant to the Joint Venture Custody Agreement other than with respect to any Excluded Payments.

(e)     The Borrower agrees that it will not, without the prior written consent of the Security and Collection Agent, the Agent, the Surety Provider and the Lender, file or join in the filing of a petition for the commencement of proceedings under the federal bankruptcy laws with respect to the Joint Venture or the Borrower.

(f)     So long as this Agreement shall remain in effect, and regardless of whether any Event of Default under the Credit Agreement shall have occurred and

This document is subject to a
written Confidentiality Agreement

EC 001014184

AB000370636

60

notwithstanding the pledge hereunder by the Borrower of the Joint Venture Interest, each of the Borrower and the Security and Collection Agent shall be entitled, in its own right and without consent from the other, to deliver a Joint Venture Termination Notice pursuant to Section 12.1(b) of the Joint Venture Company Agreement in the manner and with the effect provided therein; provided, however, that the Security and Collection Agent shall deliver such Termination Notice upon the written instructions of the Lender in accordance with Section 9.01 hereof.

(g)    Without the prior written consent of the Security and Collection Agent, the Surety Provider and the Lender, the Borrower shall not (i) terminate any Assigned Agreement or consent to or accept any cancellation or termination thereof, (ii) waive any default under or breach of any Assigned Agreement, (iii) subject the Borrower to any additional obligations under the Joint Venture Company Agreement, (iv) consent to reduce the obligations of any Member of the Joint Venture under the Joint Venture Company Agreement, (v) release Enron from, or consent to the assignment by Enron of obligations under, the Enron Agreement, the Preferred Stock Purchase and Registration Agreement, the Purchase Option Agreement or the Purchase Option Escrow Agreement, or reduce any of Enron's obligations thereunder, (vi) otherwise impair in any material respect the value, interest or rights of the Borrower in the Pledged Collateral or (vii) consent to or approve any agreement, document, opinion, instrument or amendment contemplated by Section 10.03(h) of the Joint Venture Company Agreement, or make any determination as to any adverse effect described thereunder.

(h)    The Borrower shall have the exclusive right to take any action under the Joint Venture Company Agreement required by Section 4.20 of the Investor Company Agreement.

SECTION 7.10.  Remedies upon Default.  If any Event of Default shall have occurred and be continuing:

(a)    The Security and Collection Agent may exercise in respect of the Pledged Collateral, in addition to other rights and remedies provided for herein or otherwise available to it, all the rights and remedies of a secured party under the Uniform Commercial Code (the "UCC") in effect in the State of New York at that time (whether or not the UCC applies to the Pledged Collateral at issue) to the fullest extent permitted under applicable law, and the Security and Collection Agent may also, without notice except as specified below, sell the Pledged Collateral or any part thereof in one or more parcels at public or private sale, or at any of the Security and Collection Agent's offices or elsewhere, for cash, on credit or for future delivery, and upon such other terms as the Security and Collection Agent may deem commercially reasonable; provided, however, that the Security and Collection Agent will, to the extent permitted

This document is subject to a
written Confidentiality Agreement

EC 001014185

AB000370637

61

under the UCC and in compliance with the UCC, accept a deed in lieu of foreclosure with respect to all of the Pledged Collateral (and expressly excluding any Excluded Payments) if requested by the Borrower in form and substance reasonably acceptable to the Security and Collection Agent. The Borrower agrees that, to the extent notice of sale shall be required by law, at least ten days' notice to the Borrower of the time and place of any public sale or the time after which any private sale is to be made shall constitute reasonable notification. The Security and Collection Agent shall not be obligated to make any sale of Pledged Collateral or any part thereof regardless of notice of sale having been given. The Security and Collection Agent may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned. Notwithstanding the foregoing, if a Joint Venture Liquidating Event has occurred or if Enron has delivered the Full Purchase Exercise Notice (as defined in the Purchase Option Agreement), the Security and Collection Agent may not sell the Pledged Collateral until the earlier of (i) the occurrence of the Final Settlement Date with respect to the exercise of the Full Purchase Option and the transactions contemplated to occur thereon pursuant to the Purchase Option Agreement and (ii) the expiration of the Liquidation Period.

(b)    Any cash held by the Security and Collection Agent as Pledged Collateral and all cash proceeds received by the Security and Collection Agent in respect of any sale of, collection from, or other realization upon, all or any part of the Pledged Collateral shall be paid promptly after receipt thereof (and after payment of any amounts payable to the Security and Collection Agent pursuant to Sections 11.01 and 12.04 hereof) in whole or in part by the Security and Collection Agent pursuant to Section 8.04(d).

(c)    All rights of the Borrower to deliver any notices under or exercise any voting rights or other discretionary or consensual rights under any Assigned Agreement or to deliver instructions with respect to the investment of amounts held in the Operating Account that it would otherwise be entitled to exercise shall cease, and all such rights shall thereupon become vested in the Security and Collection Agent who shall thereupon have the sole right to exercise such voting and other consensual rights and to direct such investments until such time as the Security and Collection Agent has sold or transferred the Joint Venture Interest pursuant to the terms hereof or the Secured Obligations have been paid in full; provided that upon the occurrence of a Joint Venture Notice Event and prior to any exercise by the Security and Collection Agent of its right to foreclose on the Pledged Collateral pursuant to this Section 7.10, the Borrower shall continue to be entitled to give a Joint Venture Termination Notice as provided in Section 12.1 of the Joint Venture Company Agreement, in the manner and with the effect provided therein and to enforce the Operative Documents.

SS_NYL3A/27974
Nighthawk Credit & Security Agreement

This document is subject to a
written Confidentiality Agreement

EC 001014186

AB000370638

62

Notwithstanding the foregoing provisions, unless and until an Event of Default shall have occurred and be continuing, the Borrower may perform its obligations under the Assigned Agreements and may take any other actions in respect of such Assigned Agreements in any lawful manner not inconsistent with the provisions of this Agreement or any Assigned Agreement.

SECTION 7.11.  Continuing Assignment and Security Interest; Transfer of Advance.  This Agreement shall create a continuing security interest in the Pledged Collateral and shall (i) remain in full force and effect until the payment in full of the Secured Obligations on the Debt Collection Date, (ii) be binding upon the Borrower and its successors and assigns, and (iii) inure, together with the rights and remedies of the Security and Collection Agent hereunder, to the benefit of the Security and Collection Agent, the Agent and the Lender and their respective successors, transferees and assigns, including without limitation, the Surety Provider.  Without limiting the generality of the foregoing clause (iii), the Lender may assign any of its interest in the Advance to any other Person to the extent permitted by Article X, and such other Person shall thereupon become vested with all the benefits in respect thereof granted to the Lender herein or otherwise.  Upon the payment in full of the Secured Obligations on the Debt Collection Date, the Borrower shall be entitled to the return, upon its request and at its expense, of such of the Pledged Collateral as shall not have been sold or otherwise applied pursuant to the terms hereof and the Security and Collection Agent will execute and deliver such instruments, including UCC termination statements, as the Borrower may reasonably request to confirm the release and discharge of the Lien hereunder.

SECTION 7.12.  Registration of Pledge.  Concurrently with the execution of this Agreement, the Borrower will send to the Joint Venture written instructions substantially in the form of Exhibit J hereto and shall cause the Joint Venture to deliver to the Security and Collection Agent an Initial Transaction Statement substantially in the form of Exhibit K hereto confirming that the Joint Venture has registered on its books the pledge effected by this Agreement.

ARTICLE VIII

ADMINISTRATION, SETTLEMENT AND COLLECTION

SECTION 8.01.  Maintaining the Operating Account.  Until the payment in full of the Secured Obligations on the Debt Collection Date:

(a)     The Borrower will maintain the Operating Account only with the Administrator, subject to the dominion and control of the Security and Collection Agent.

SS_NYL3A/27974
Nighthawk Credit & Security Agreement

This document is subject to a
written Confidentiality Agreement

EC 001014187

AB000370639

63

(b)    It shall be a term and condition of the Operating Account, and on or prior to the date hereof the Borrower shall give to the Administrator written notice and shall obtain the Administrator's written agreement (such notice and agreement to be in form and substance satisfactory to the Security and Collection Agent), that notwithstanding any term or condition to the contrary in any other agreement relating to the Operating Account, and except as otherwise provided in Section 7.01 or 8.04 hereof concerning transfers and payments or in Section 7.10 hereof concerning payments after an Event of Default, no amount (including interest on Permitted Investments held in the Operating Account) shall be paid or released from the Operating Account to or for the account of, or withdrawn by or for the account of, the Borrower or any other Person. The Operating Account shall be subject to applicable laws, and applicable regulations of any competent banking or governmental authority, as may now or hereafter be in effect.

SECTION 8.02.  Deposit of Funds into the Operating Accounts.  (a)  On or prior to the date hereof, the Borrower shall give to the Joint Venture and its Members written notice (such notice to be in form and substance satisfactory to the Security and Collection Agent) irrevocably instructing the Joint Venture and the Joint Venture Custodian, respectively, that all payments due to the Borrower (other than Excluded Payments) under or in respect of the Joint Venture Company Agreement or the Purchase Option Agreement, as the case may be, and all other payments due to the Borrower under or in respect of the Joint Venture Interest shall be deposited directly into the Operating Account; provided, that if, after the delivery of a Full Purchase Exercise Notice (as such term is defined in the Purchase Option Agreement) by Enron pursuant to the Purchase Option Agreement, a Full Purchase Default shall occur, then any liquidating distributions received by the Investor from the Joint Venture that, pursuant to Section 9(d) of the Purchase Option Agreement, are to be paid to the Purchase Option Escrow Account shall be paid to such Purchase Option Escrow Account to be held and released from time to time in accordance with the terms of the Purchase Option Escrow Agreement.

(b)    Proceeds of the Advance shall be deposited directly into the Operating Account.

(c)    On or prior to the date hereof, the Borrower shall give to Enron written notice (such notice to be in form and substance satisfactory to the Security and Collection Agent) irrevocably instructing Enron that all amounts payable by Enron (other than Excluded Payments) under the Enron Agreement and the Purchase Option Agreement shall be deposited directly into the Operating Account or, to the extent provided in the Purchase Option Agreement, to the Purchase Option Escrow Account, such deposits to be in satisfaction of Enron's payment obligations thereunder.

This document is subject to a
written Confidentiality Agreement

EC 001014188

AB000370640

64

(d)    The Borrower shall cause the Administrator to promptly notify the Borrower, the Security and Collection Agent and the Agent (if other than the Security and Collection Agent) of any such deposit made pursuant to this Section 8.02 and to provide to the Borrower, the Security and Collection Agent and the Agent (if other than the Security and Collection Agent) monthly reports of holdings and transactions in the Operating Account.

(e)    On or prior to the date hereof, the Borrower shall give to the "Escrow Agent" (as defined in the Purchase Option Escrow Agreement) written notice (such notice to be in form and substance satisfactory to the Security and Collection Agent) irrevocably instructing such Escrow Agent that all amounts released to the Investor thereunder shall be deposited directly into the Operating Account.

SECTION 8.03.  Investing of Amounts in the Operating Account.  If requested by the Borrower, the Security and Collection Agent shall direct the Administrator (and the Borrower agrees not to take any action inconsistent with any such direction), subject to the provisions set forth in Section 8.04 hereof concerning transfers and payments and in Section 7.10 hereof concerning default, from time to time (a) to invest amounts on deposit in the Operating Account in such Cash Equivalents in the name of the Security and Collection Agent or as to which all actions required by Section 7.05 shall have been taken as the Borrower may select pursuant to written instructions received from time to time from a representative of the Borrower designated in writing from time to time to the Security and Collection Agent or, in the absence of such direction, in accordance with its customary practice, and (b) to the extent practicable, to invest interest and other earnings paid on the Cash Equivalents referred to in clause (a) above, and reinvest other proceeds of any such Cash Equivalents, in each case in such Cash Equivalents in the name of the Security and Collection Agent or as to which all actions required by Section 7.05 shall have been taken as the Borrower may select pursuant to written instructions received from time to time from a representative of the Borrower designated in writing to the Security and Collection Agent (the Cash Equivalents referred to in clauses (a) and (b) above being the "Permitted Investments"); provided, however, that the Security and Collection Agent may liquidate, or direct the Administrator (and the Borrower agrees not to take any action inconsistent with any such direction) to liquidate, any Permitted Investment prior to its maturity if the proceeds of such liquidation or conversion are necessary for any payment required to be made by the Security and Collection Agent in accordance with the provisions of Section 8.04 or 7.10 hereof.  Interest and proceeds that are not invested or reinvested as provided above shall be deposited and held in the Operating Account.  The Security and Collection Agent shall, to the extent reasonably practicable, dispose of investments in the Operating Account in a manner to minimize any loss on such investments, but in no event shall the Security and Collection Agent be liable for any losses incurred as the result of any sale or disposition of Permitted Investments, and the Borrower hereby releases the Security and Collection Agent from any liability arising out of, or in connection with, any investment or liquidation or conversion made by it hereunder, except where such liability

This document is subject to a
written Confidentiality Agreement

EC 001014189

AB000370641

65

arises from the Security and Collection Agent's gross negligence or willful misconduct. The Borrower hereby notifies the Administrator that the Security and Collection Agent has full dominion and control of the Operating Account and instructs the Administrator to act, or refrain from acting, with respect to the Operating Account at the direction of the Security and Collection Agent. The Borrower agrees not to take any action inconsistent with the preceding sentence.

SECTION 8.04. Transfers from the Accounts. (a) Transfers in Respect of Periodic Payments from the Operating Account. To the extent funds are available in the Operating Account and subject to Section 8.04(f)(iv) hereof, the Security and Collection Agent shall on each Payment Date (or, to the extent such funds are not available on such date, as soon as practicable on any Business Day thereafter to the extent funds are then available) direct the Administrator (and the Borrower agrees not to take any action inconsistent with such direction) to transfer and pay to the parties or accounts specified below the amounts indicated below from funds (other than Excluded Payments) then held in the Operating Account (such funds, collectively, the "Applicable Funds"), such transfers and payments to be made free and clear of any Lien hereunder:

(1)    First, to the Security and Collection Agent, an amount equal to the sum of the aggregate amount of fees and those Additional Financing Costs of which the Borrower shall have had notice no less than 5 Business Days prior to such Payment Date (or, if the Full Purchase Closing Date shall have occurred, which have been notified to the Borrower in accordance with Section 2.13) and that are then due and payable to the Security and Collection Agent;

(2)    Second, to the Agent, (i) for its account, an amount equal to the sum of the aggregate amount of fees and any Additional Financing Costs of which the Borrower shall have had notice no less than 5 Business Days prior to such Payment Date (or, if the Full Purchase Closing Date shall have occurred, which have been notified to the Borrower in accordance with Section 2.13) and that are then due and payable to the Agent and (ii) for the account of the Surety Provider, an amount equal to the accrued and unpaid Premium then due and payable to the Surety Provider hereunder, ratably as to clauses (i) and (ii) according to their respective amounts;

(3)    Third, to the Agent for the account of the Lender, an amount equal to the aggregate amount of accrued and unpaid interest and fees, including the Program Fee, then due and payable to the Lender hereunder;

(4)    Fourth, to the Agent for the ratable account, in accordance with their respective interests, of the Liquidity Providers, an amount equal to the accrued and unpaid Liquidity Fee then due and payable to the Liquidity Providers hereunder;

This document is subject to a
written Confidentiality Agreement

EC 001014190

AB000370642

66

(5)    Fifth, to the Agent for the ratable account, in accordance with their respective interests, of the Lender, the Liquidity Providers and the Surety Provider, respectively, in each case to whom those Additional Financing Costs of which the Borrower shall have had notice no less than 5 Business Days prior to such Payment Date (or, if the Full Purchase Closing Date shall have occurred, which have been notified to the Borrower in accordance with Section 2.13) and are then due and payable, an amount equal to such Additional Financing Costs, if any, then due and payable to the Lender, the Liquidity Providers and the Surety Provider, respectively; and

(6)    Sixth, to the Administrator, the balance of such funds.

(b)    Transfers from the Operating Account in Respect of Non-Periodic Payments Other Than in Respect of Principal. Subject to Section 8.04(f)(iv) hereof, to the extent funds are available in the Operating Account and after giving effect to any transfers required to be made pursuant to Section 8.04(a) above, the Security and Collection Agent shall from time to time direct the Administrator (and the Borrower agrees not to take any action inconsistent with such direction) to transfer and pay to the parties or accounts specified below the amounts indicated for such parties or accounts from funds held in the Operating Account as requested by the parties specified below, such transfers and payments to be made free and clear of any Lien hereunder:

(1)    First, from time to time, to the Security and Collection Agent, an amount equal to the sum of fees and those Additional Financing Costs of which the Borrower shall have had notice no less than 5 Business Days prior to such Payment Date (or, if the Full Purchase Closing Date shall have occurred, which have been notified to the Borrower in accordance with Section 2.13) and that are then due and payable to the Security and Collection Agent; and

(2)    Second, from time to time, to the Agent on behalf of itself, the Lender, the Liquidity Providers and the Surety Provider, respectively, for their ratable account in accordance with their respective interests therein, an amount equal to those Additional Financing Costs of which the Borrower shall have had notice no less than 5 Business Days prior to such Payment Date (or, if the Full Purchase Closing Date shall have occurred, which have been notified to the Borrower in accordance with Section 2.13) and that are then due and payable to the Agent, the Lender, the Liquidity Providers and the Surety Provider, respectively, as advised by the Agent.

In the event that the Security and Collection Agent receives a request from more than one party to direct the transfer of amounts from the Operating Accounts pursuant to this Section 8.04(b) the Security and Collection Agent shall direct the Administrator (and the Borrower agrees not to take any action inconsistent with any such direction) to

SS_NYL3A/27974
Nighthawk Credit & Security Agreement

This document is subject to a
written Confidentiality Agreement

EC 001014191



67

transfer amounts set forth in this Section 8.04(b) in the order and priority of clauses (1) and (2) above.

    (c)   Transfers from the Operating Account in Respect of Prepayments of Principal under Section 2.06(a) or 2.06(b)(i). Subject to clause (d) below and Section 8.04(f)(iv) hereof, upon receipt by the Security and Collection Agent of any optional or mandatory prepayment of the principal amount of the Advance pursuant to Section 2.06(a) or Section 2.06(b)(i), as the case may be, the Security and Collection Agent shall direct the Administrator (and the Borrower agrees not to take any action inconsistent with such direction) to transfer and pay from the Operating Account, promptly upon receipt thereof, to the parties specified below the amounts indicated below for such parties, solely from, and to the extent of, such funds received, such transfers and payments to be made free and clear of any Lien hereunder:

    (1)   First, to the Security and Collection Agent, an amount equal to the sum of the aggregate amount of fees and those Additional Financing Costs of which the Borrower shall have had notice no less than 3 Business Days prior to such transfer and payment (or, if the Full Purchase Closing Date shall have occurred, which have been notified to the Borrower in accordance with Section 2.13) and which are then due and payable to the Security and Collection Agent;

    (2)   Second, to the Agent on behalf of the Surety Provider, an amount equal to the accrued and unpaid Premium then due and payable to the Surety Provider hereunder;

    (3)   Third, to the Agent, an amount equal to the sum of the aggregate amount of fees and those Additional Financing Costs of which the Borrower shall have had notice no less than 3 Business Days prior to such transfer and payment (or, if the Full Purchase Closing Date shall have occurred, which have been notified to the Borrower in accordance with Section 2.13) and which are then due and payable to the Agent, the Lender, the Liquidity Providers and the Surety Provider, respectively, for their ratable account in accordance with their respective interests therein;

    (4)   Fourth, to the Agent for the account of the Lender, an amount equal to the aggregate amount of fees, including the Program Fee, and accrued and unpaid interest in respect of that portion of the principal amount of the Advance to be prepaid pursuant to clause sixth below, as advised by the Agent;

    (5)   Fifth, to the Agent for the account, in accordance with their respective interests, of the Liquidity Providers, an amount equal to the accrued and unpaid Liquidity Fee then due and payable to the Liquidity Providers hereunder;

SS_NYL3A/27974
Nighthawk Credit & Security Agreement

This document is subject to a
written Confidentiality Agreement

EC 001014192



68

(6)    Sixth, to the Agent for the account of the Lender in respect of the outstanding principal amount of the Advance, the amount of any prepayment of the principal amount of the Advance pursuant to Section 2.06(a) or 2.06(b)(i); and

(7)    Seventh, to the Administrator, the balance, if any, of such funds.

(d)    Transfers from the Operating Accounts in Respect of Prepayments of Principal under Section 2.06(b)(ii) or Application of Proceeds of Pledged Collateral pursuant to Section 7.10(b). Subject to Section 8.04(f)(iv) hereof, upon receipt by the Security and Collection Agent of any mandatory prepayment of the principal amount of the Advance pursuant to Section 2.06(b)(ii) and any related Guaranteed Payment or Full Purchase Amount, as the case may be, or any proceeds of Pledged Collateral upon and after the exercise of remedies pursuant to Section 7.10(b), the Security and Collection Agent shall direct the Administrator (and the Borrower agrees not to take any action inconsistent with such direction) to transfer and pay, promptly upon receipt thereof, to the parties specified below the amounts indicated below for such parties, solely from, and to the extent of, such funds received and such transfers, such payments to be made free and clear of any Lien hereunder:

(1)    First, to the Security and Collection Agent, an amount equal to the sum of the aggregate amount of fees and those Additional Financing Costs of which the Borrower shall have had notice no less than 3 Business Days prior to such transfer and payment (or, if the Full Purchase Closing Date shall have occurred, which have been notified to the Borrower in accordance with Section 2.13) and which are then due and payable to the Security and Collection Agent;

(2)    Second, to the Agent on behalf of the Surety Provider, an amount equal to the accrued and unpaid Premium then due and payable to the Surety Provider hereunder;

(3)    Third, to the Agent, an amount equal to the sum of the aggregate amount of fees and those Additional Financing Costs of which the Borrower shall have had notice no less than 3 Business Days prior to such transfer and payment (or, if the Full Purchase Closing Date shall have occurred, which have been notified to the Borrower in accordance with Section 2.13) and which are then due and payable to the Agent, the Lender, the Liquidity Providers and the Surety Provider, respectively, for their ratable account in accordance with their respective interests therein;

(4)    Fourth, to the Agent for the account of the Lender, an amount equal to the aggregate amount of fees, including the Program Fee, and accrued and unpaid interest in respect of that portion of the principal amount of the Advance to be prepaid pursuant to clause sixth below, as advised by the Agent;

SS_NYLJA/27974
Nighthawk Credit & Security Agreement

This document is subject to a
written Confidentiality Agreement

EC 001014193

AB000370645

69

(5)    Fifth, to the Agent for the account, in accordance with their respective interests, of the Liquidity Providers, an amount equal to the accrued and unpaid Liquidity Fee then due and payable to the Liquidity Providers hereunder;

(6)    Sixth, to the Agent for the account of the Lender, an amount equal to (x), in the case of a prepayment pursuant to Section 2.06(b)(ii)(y), the amount of the Member Interest Liquidation Value described therein and (y) otherwise the lesser of (x) the balance of such funds and (y) the aggregate outstanding principal amount of the Advance; and

(7)    Seventh, to the Administrator, the balance, if any, of such funds.

(e)    Transfers from the Operating Account in Respect of the Advance and Capital Contributions. (i) Subject to Section 8.04(f)(iv) hereof, upon receipt by the Security and Collection Agent of any proceeds identified to it by the Agent as being the proceeds of the Advance, the Security and Collection Agent shall direct the Administrator (and the Borrower agrees not to take any action inconsistent with any such direction) to transfer and pay, promptly upon receipt thereof, amounts then held in the Operating Account to the Joint Venture Custodian's "Joint Venture Operating Account" established and maintained pursuant to the Joint Venture Custody Agreement and held with Wilmington Trust Company at Rodney Square North, 1100 North Market Street, Wilmington, Delaware, 19890, solely from, and to the extent of, such funds received, such payments to be made free and clear of any Liens hereunder.

(ii)    Subject to Section 8.04(f)(iv) hereof, at the time the Security and Collection Agent directs the Administrator to make a transfer and payment pursuant to Section 8.04(e)(i), the Security and Collection Agent shall direct the Administrator (and the Borrower shall cause the Administrator to promptly comply with any such direction) to transfer and pay amounts then held in the Operating Account to the Joint Venture Custodian's account referred to in Section 8.04(e)(i) in the amount as notified by a Borrower Class A Member and solely from, and to the extent of, the aggregate amount of capital contributions made by the Members of the Borrower and deposited to the Operating Account, such payments to be made free and clear of any Lien hereunder.

(f)    General Provisions Applicable to All Transfers. (i) From time to time, upon the Security and Collection Agent's receipt of a notice from the Agent in respect of Additional Financing Costs (other than Additional Financing Costs described in the succeeding sentence) then due and payable or its own determination of any Additional Financing Costs (other than Additional Financing Costs described in the succeeding sentence) then due and payable to the Security and Collection Agent, the Security and Collection Agent shall direct the

SS_NYL3A/27974
Nighthawk Credit & Security Agreement

This document is subject to a
written Confidentiality Agreement

EC 001014194

AB000370646

Administrator (and the Borrower agrees not to take any action inconsistent with any such direction) to transfer and pay to the Agent or the Security and Collection Agent, as the case may be, from Applicable Funds, an amount equal to such Additional Financing Costs or to the extent of Applicable Funds. If at any time (x) the amount of Applicable Funds is insufficient to make such requested payment or (y) the Security and Collection Agent receives notice from the Agent that, or the Security and Collection Agent determines that, Additional Financing Costs in respect of interest payable pursuant to Section 2.08(b) (other than interest that would otherwise be payable under Section 2.03 in respect of the Advance), are then due and payable, there shall exist a "Deficiency" equal to the amount of such shortfall in such requested payment or such default interest.

(ii)     In the event of a Deficiency the Security and Collection Agent shall, within one Business Day of its determination of such Deficiency or receipt of any notice specified in Section 8.04(f)(i) above, give notice (a "Deficiency Notice") to the Administrator, the Borrower, the Members of the Borrower and the Agent specifying the amount and nature of such Deficiency and setting out the amount specified or requested, and the Borrower shall, to the extent of amounts on deposit in the Administrator's Account other than those relating to any Excluded Payment, pay to the Operating Account such amount so specified or requested.

(iii)     Upon the Security and Collection Agent's receipt of a notice from the Agent in respect of Additional Financing Costs then due and payable, or its own determination of an amount then due and payable to it, the Security and Collection Agent shall, within one Business Day of receipt of such notice from the Agent or such determination, as the case may be, provide copies of such notices or notice of such determination, as the case may be, to the Administrator, the Borrower, the Members of the Borrower and the Agent. In the case of the Security and Collection Agent's determination of an amount then due and payable to it, the notice of such determination shall set forth in reasonable detail the basis therefor and such notice shall be conclusive absent manifest error.

(iv)     Notwithstanding anything to the contrary set forth in this Section 8.04, (A) except as otherwise provided in subclause (B) below, at any time any officer of the Security and Collection Agent has or obtains actual knowledge (whether as a result of notice or otherwise) of the occurrence and continuance of a Default or Event of Default and until such time as the Security and Collection Agent shall have received notice from the Agent that such Default or Event of Default is no longer continuing, no transfers or payments of funds from the Operating Account shall be required to be directed by the Security and Collection Agent to be made by the Administrator to the Administrator's Account and (B) at any time any officer of the Security and Collection Agent has or obtains actual knowledge (whether as a result of notice or otherwise) of (x) the occurrence and continuance of an Event of Default under Section 6.01(a) or (y) the acceleration of the maturity of the Advance pursuant to Article VI and until such time as the Security and Collection Agent receives notice from the Agent that

SS_NYLJA/27974
Nighthawk Credit & Security Agreement

This document is subject to a
written Confidentiality Agreement

EC 001014195



71

such Event of Default no longer continues or that such acceleration has been rescinded, the Security and Collection Agent shall direct the Administrator (and the Borrower agrees not to take any action inconsistent with any such direction) to apply funds held in the Operating Accounts pursuant to Section 7.10(b) hereof, as directed by the Agent; provided, however, that upon the occurrence and during the continuance of any Default or Event of Default other than of any type set forth in Section 6.01(a), the Security and Collection Agent shall continue to direct the transfer of funds from the Operating Account in accordance with the other provisions of this Section 8.04, if and so long as at the time of, and after giving effect to, such transfer no Default or Event of Default shall have occurred and be continuing, or would occur, under Section 6.01(a).   The Agent shall promptly notify the Security and Collection Agent if any Default or Event of Default ceases to exist or is waived.

(v)    Notwithstanding anything in this Section 8.04 to the contrary, after the occurrence of the Full Purchase Closing Date, if a drawing shall have been made on the Surety Bond, on the date of payment of such drawing by the Surety Provider, the Security and Collection Agent shall direct the Administrator (and the Borrower agrees not to take any action inconsistent with any such direction) to transfer and pay to the extent of the Closing Payment received by the Borrower, free and clear of any Lien hereunder, (1) first, to the Agent for the account of the Lender, an amount equal to all interest accrued and unpaid interest in respect of the amount of such drawing and (2) second to the Administrator, the balance, if any, of such funds.

SECTION 8.05.  Agent's Agreements.  During such periods as the Agent and the Security and Collection Agent are not the same Person, the Agent agrees as follows:

(i)    At least one Business Day prior to each Payment Date, the Agent agrees to provide the Security and Collection Agent notice of the amount of each payment to be made by the Security and Collection Agent on such Payment Date in respect of amounts then payable by the Borrower in respect of interest and fees under this Agreement, it being understood by the Agent and the Lender that the Security and Collection Agent shall have no obligation to make any such payments unless and until it has received notice from the Agent.

(ii)    The Agent agrees to give the Security and Collection Agent prompt notice in writing of the date and amount of each payment to be made by the Security and Collection Agent in respect of amounts payable by the Borrower in respect of principal and interest and all other amounts due under this Agreement,  it being understood by the Agent and the Lender that the Security and Collection Agent shall have no obligation to make any such payments unless and until it has received notice from the Agent.

This document is subject to a
written Confidentiality Agreement

EC 001014196

AB000370648

72

     (iii)    The Agent agrees promptly to notify the Security and Collection Agent of (A) the occurrence of a Default or Event of Default of which the Agent has actual knowledge, (B) each Assignment and Acceptance delivered to and accepted by it and (C) the payment in full of the Secured Obligations on the Debt Collection Date. The Security and Collection Agent shall not be deemed to have knowledge of any Default or Event of Default unless informed in writing by the Agent, the Lender or the Borrower.

## ARTICLE IX

## THE AGENT, THE SECURITY AND COLLECTION AGENT
## AND THE ESCROW AGENT

     SECTION 9.01.  <u>Authorization and Action</u>.  The Lender hereby appoints and authorizes CNAI as the Agent hereunder, as the Security and Collection Agent hereunder and as the Escrow Agent under the Escrow Agreement, to take such action as Agent, Security and Collection Agent and Escrow Agent, respectively, on its behalf and to exercise such powers and discretion under this Agreement, the Escrow Agreement, the other Loan Documents and the Purchase Option Agreement as are delegated to the Agent, the Security and Collection Agent and the Escrow Agent, respectively, by the terms hereof and thereof, together with such powers and discretion as are reasonably incidental thereto. As to any matters not expressly provided for by the Loan Documents and the Purchase Option Agreement including, without limitation, enforcement or collection of the Debt resulting from the Advance and enforcement of this Agreement, the Escrow Agreement and the Purchase Option Agreement, the Agent, the Security and Collection Agent and the Escrow Agent, respectively, shall not be required to exercise any discretion or take any action, but shall be required to act or to refrain from acting (and shall be fully protected in so acting or refraining from acting) upon the instructions of the Lender or, in the case of the Security and Collection Agent and the Escrow Agent, the Agent and such instructions shall be binding upon the Lender; provided, however, that the Agent, the Security and Collection Agent and the Escrow Agent, as applicable, shall not be required to take any action that exposes it to personal liability or that is contrary to this Agreement, the Escrow Agreement, the Purchase Option Agreement or applicable law. The Agent agrees to give to the Lender prompt notice of each notice and copies of all other documents given to it by the Borrower, a Borrower Class A Member, the Administrator, the Security and Collection Agent and the Escrow Agent pursuant to the terms of this Agreement and the Escrow Agreement, and agrees to give the Security and Collection Agent, if not the same Person as the Agent, and the Escrow Agent prompt notice of each notice and copies of all other documents given to it by the Borrower or the Lender pursuant to the terms of this Agreement. The Security and Collection Agent, if not the same Person as the Agent, and the Escrow Agent agree to give to the Agent prompt notice of each notice and copies of all other documents given

This document is subject to a
written Confidentiality Agreement

EC 001014197



73

to it by the Borrower or the Lender pursuant to the terms hereof or the Escrow Agreement, respectively.

SECTION 9.02. <u>Agent's, Security and Collection Agent's and Escrow Agent's Reliance, Etc.</u> Neither the Agent, nor the Security and Collection Agent, nor the Escrow Agent nor any of their respective directors, officers, agents or employees shall be liable for any action taken or omitted to be taken by it or them under or in connection with the Loan Documents or the Purchase Option Agreement, except for its or their own gross negligence, fraud or willful misconduct, and the Lender agrees that it will not assert or seek to assert any claim it might have against any of them in violation of this provision. Without limitation of the generality of the foregoing: (i) the Agent may treat the Lender that made the Advance as the holder of the Debt resulting therefrom until the Agent receives and accepts an Assignment and Acceptance entered into by the Lender, as assignor, and an Eligible Assignee, as assignee, as provided in Article X hereof; (ii) the Agent, the Security and Collection Agent and the Escrow Agent may consult with legal counsel (including counsel for the Borrower or any Member of the Borrower), independent public accountants and other experts selected by them and shall not be liable for any action taken or omitted to be taken in good faith by it in accordance with the advice of such counsel, accountants or experts; (iii) neither the Agent, nor the Security and Collection Agent nor the Escrow Agent makes any warranty or representation to the Lender or shall be responsible to the Lender for any statements, warranties or representations made in or in connection with the Loan Documents or the Purchase Option Agreement; (iv) neither the Agent, nor the Security and Collection Agent nor the Escrow Agent shall have any duty to ascertain or to inquire as to the performance or observance of any of the terms, covenants or conditions of any Loan Document or the Purchase Option Agreement on the part of the Borrower (or in the case of the Purchase Option Agreement, Enron) or to inspect the property (including the books and records) of the Borrower (or in the case of the Purchase Option Agreement, Enron); (v) neither the Agent, nor the Security and Collection Agent nor the Escrow Agent shall be responsible to the Lender for the due execution, legality, validity, enforceability, genuineness, sufficiency or value of any Loan Document or the Purchase Option Agreement or any other instrument or document furnished pursuant hereto or thereto; (vi) neither the Agent, nor the Security and Collection Agent nor the Escrow Agent shall be liable under or in respect of any Loan Document or the Purchase Option Agreement by acting upon any notice, consent, certificate or other instrument or writing (which may be by telegram, telecopy, cable or telex) believed by it to be genuine and signed or sent by the proper party or parties; (vii) neither the Agent, nor the Security and Collection Agent nor the Escrow Agent shall be liable to the Lender for any losses incurred as the result of any sale or disposition of Permitted Investments in accordance with the Security Agreement; (viii) neither the Agent, nor the Security and Collection Agent nor the Escrow Agent makes any representation or warranty and neither the Agent, the Security and Collection Agent nor the Escrow Agent shall have responsibility concerning the value or validity of the Pledged Collateral or the validity or the perfection of the pledge thereof; and (ix) the Agent may

SS_NYL3A/27974
Nighthawk Credit & Security Agreement

This document is subject to a written Confidentiality Agreement

EC 001014198

AB000370650

74

assume that no Default or Event of Default has occurred and is continuing unless it has, in its capacity as Agent for the Lender, actual knowledge or actual notice to the contrary.

SECTION 9.03.  CNAI and Affiliates.  With respect to any Assignee Advance held by it, CNAI shall have the same rights and powers under the Loan Documents as any Lender and may exercise the same as though it were not the Agent, the Security and Collection Agent or the Escrow Agent, as the case may be; and with respect to any Assignee Advance held by CNAI, the term "Lender" shall, unless otherwise expressly indicated, include CNAI in its individual capacity.  CNAI and its Affiliates may accept deposits from, lend money to, act as trustee under indentures of, accept investment banking engagements from and generally engage in any kind of business with, the Borrower, Enron, the Surety Provider, any of their respective Affiliates and any Person who may do business with or own an interest in any of them, all as if it were not the Agent, the Security and Collection Agent or the Escrow Agent and without any duty to account therefor to the Lender.

SECTION 9.04.  Lender Credit Decision.  The Lender acknowledges that it has, independently and without reliance upon the Agent or the Security and Collection Agent and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Agreement.  The Lender also acknowledges that it will, independently and without reliance upon the Agent or the Security and Collection Agent and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under this Agreement.

ARTICLE X

ASSIGNMENT OF ADVANCE

SECTION 10.01.  Assignment and Participations.  (a) The Lender may, upon at least five (5) Business Days' notice to the Borrower and the Agent, assign to one or more banks or other entities all (but not a portion) of its rights and obligations under this Agreement (including, without limitation, all (but not a portion) of the Advance owing to it); provided, however, that (i) each such assignment shall be of all such rights and obligations of the assigning Lender, (ii) each such assignment shall be either to an Eligible Assignee described in clause (e), (f) or (g) of the definition of Eligible Assignee or to any other Eligible Assignee consented to by the Borrower, which consent may not be unreasonably withheld, (iii) no assignment shall be allowable hereunder unless the assignee is a "qualified purchaser" under the Investment Company Act of 1940, as amended, and the regulations promulgated thereunder, (iv) the parties to each such assignment shall execute and deliver to the Agent, for its acceptance and recording in the Register, an Assignment and Acceptance, together with a recordation fee of $1,000, (v) the Eligible Assignee shall have executed and delivered a

SS_NYL3A/27974
Nighthawk Credit & Security Agreement

This document is subject to a
written Confidentiality Agreement

EC 001014199

AB000370651

75

confidentiality agreement in the form of Exhibit I hereto and (vi) prior to the completion of any such assignment, the assigning Lender shall give written notice to the Agent with a copy to the Borrower of the proposed assignment, which notice shall state the name and address of the proposed assignee and the portion of the Advance to be assigned and the Agent shall, on the effective date specified in the applicable Assignment and Acceptance, provide written confirmation to the Borrower and assigning and assignee Lender of the total number of Lenders, as Liquidity Providers and as participants, respectively, then holding interests in the Advance. Subject to receipt of the confirmation referred to in subclause (B) of the preceding sentence, upon such execution, delivery, acceptance and recording, from and after the effective date specified in such Assignment and Acceptance, (x) the assignee thereunder shall be a party hereto and, to the extent that rights and obligations hereunder have been assigned to it pursuant to such Assignment and Acceptance, have the rights and obligations of a Lender hereunder and (y) the Lender assignor thereunder shall, to the extent that rights and obligations hereunder and under the other Loan Documents have been assigned by it pursuant to such Assignment and Acceptance, relinquish its rights and be released from its obligations under this Agreement and under the other Loan Documents (and, in the case of an Assignment and Acceptance covering all or the remaining portion of an assigning Lender's rights and obligations under this Agreement, such Lender shall cease to be a party hereto); provided, however, that no assignee shall have any right to payments under Sections 2.07, 2.09 or 12.04 or Article XI in an amount greater than the Initial Lender and any Liquidity Provider consented to by the Borrower would have been entitled to receive if such assignment had not been made.

       (b)    By executing and delivering an Assignment and Acceptance, the Lender assignor thereunder and the assignee thereunder confirm to and agree with each other and the other parties hereto as follows: (i) other than as provided in such Assignment and Acceptance, such assigning Lender makes no representation or warranty and assumes no responsibility with respect to any statements, warranties or representations made in or in connection with this Agreement, any other Loan Document or any other instrument or document furnished pursuant hereto or the execution, legality, validity, enforceability, genuineness, sufficiency or value of this Agreement, any other Loan Document or any other instrument or document furnished pursuant hereto; (ii) such assigning Lender makes no representation or warranty and assumes no responsibility with respect to the financial condition of the Borrower or the performance or observance by the Borrower of any of its obligations under this Agreement or any other instrument or document furnished pursuant hereto; (iii) such assignee confirms that it has received a copy of this Agreement, together with such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into such Assignment and Acceptance; (iv) such assignee will, independently and without reliance upon the Agent, such assigning Lender or any former Lender and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under this Agreement; (v) such assignee confirms that it is an Eligible Assignee; (vi) such assignee appoints and authorizes the Agent, the Security and

SS_NYLJA/27974
Nighthawk Credit & Security Agreement

This document is subject to a
written Confidentiality Agreement

EC 001014200

AB000370652

76

Collection Agent and the Escrow Agent to take such action as agent on its behalf and to exercise such powers and discretion under this Agreement and the Escrow Agreement, respectively, as are delegated to the Agent, the Security and Collection Agent and the Escrow Agent by the terms hereof and thereof, together with such powers and discretion as are reasonably incidental thereto; and (vii) such assignee agrees that it will perform in accordance with their terms all of the obligations that by the terms of this Agreement and the Escrow Agreement, respectively, are required to be performed by it as the Lender.

(c)    The Agent shall maintain at its address referred to in Section 12.02 hereof a copy of each Assignment and Acceptance delivered to and accepted by it and a register for the recordation of the name and address of the Lender from time to time and principal amount of the Advance owing to the Lender from time to time (the "Register"). The entries in the Register shall be conclusive and binding for all purposes, absent manifest error, and the Borrower and the Agent may treat each Person whose name is recorded in the Register as the Lender hereunder for all purposes of this Agreement. The Register shall be available for inspection by the Borrower or the Lender at any reasonable time and from time to time upon reasonable prior notice.

(d)    Upon its receipt of an Assignment and Acceptance executed by an assigning Lender and an assignee, the Agent shall, if such Assignment and Acceptance has been completed and is in substantially the form of Exhibit A hereto, (i) accept such Assignment and Acceptance, (ii) record the information contained therein in the Register and (iii) give prompt notice thereof to the Borrower.

(e)    The Lender may, subject to subsections (f), (g) and (h) of this Section 10.01, sell to any Eligible Assignee described in clause (e), (f) or (g) of the definition of Eligible Assignee or to any other Eligible Assignee consented to by the Borrower, which consent may not be unreasonably withheld, participations in or to all or a portion of its rights and obligations under this Agreement (including, without limitation, all or a portion of the Advance owing to it); provided, however, that (i) the Lender's obligations under this Agreement shall remain unchanged, (ii) the Lender shall remain solely responsible to the other parties hereto for the performance of such obligations, (iii) the Borrower and the Agent shall continue to deal solely and directly with the Lender in connection with the Lender's rights and obligations under this Agreement, (iv) no participant (other than any Liquidity Provider ) under any participation shall have any right to approve any amendment or waiver of any provision of any Loan Document, or any consent to any departure by any party thereto therefrom, except to the extent that such amendment, waiver or consent would reduce the principal of, or interest on, the Advance or any fees or other amounts payable for the benefit of such participant hereunder, in each case to the extent subject to such participation, postpone any date fixed for any payment of principal of, or interest on, the Advance or any such fees or other amounts payable hereunder, in each case to the extent subject to such participation, or

SS_NYLJA/27974
Nighthawk Credit & Security Agreement

This document is subject to a
written Confidentiality Agreement

EC 001014201

AB000370653

77

release all or substantially all of the Pledged Collateral, (v) no participation shall be allowed to be sold hereunder unless the participant represents and warrants that, at the time it becomes a participant, that it is a "qualified purchaser" under the Investment Company Act of 1940, as amended, and the regulations promulgated thereunder and (vi) such participant shall have executed and delivered a confidentiality agreement in the form of Exhibit I hereto.  No participant shall be entitled to receive any greater benefit pursuant to Sections 2.07, 2.09 or 12.04 or Article XI than the Lender granting such participation would have been entitled to receive with respect to the rights transferred in such participation.

(f)     Prior to the completion of a participation by the Lender, (i) the Lender proposing to sell a participation shall give written notice to the Agent with a copy to the Borrower of the proposed participation, which notice shall (A) state the name and address of the proposed participant and the portion of the Advance to be sold in such participation and (B) request confirmation from the Agent that the total number of Persons as the Lender, as Liquidity Providers and as participants, respectively (after giving effect to the proposed participation) is not greater than 30 Persons, and (ii) the Agent shall, on the effective date of such participation, provide written confirmation to the Borrower and the participating Lender of the total number of Persons as the Lender, as Liquidity Providers and as participants, respectively, then holding interests in the Advance.

(g)     The Lender shall, upon completion of a participation that shall be subject to receipt of the confirmation referred to in subclause (f)(i)(A) above, provide written notice to the Agent and the Borrower stating the name and address of the participant and the portion of the Advance sold to such participant or repurchased from such participant, as the case may be, and the Agent shall maintain at its address referred to in Section 12.02 a copy of each such notice received by it and a register for the recordation of such participations (the "Participation Register"), which register shall be conclusive and binding for all purposes, absent manifest error.  The Participation Register shall be available for inspection by the Borrower or the Lender at any reasonable time and from time to time upon reasonable prior notice.

(h)     ANY ATTEMPTED ASSIGNMENT OR GRANT OF A PARTICIPATION OR SUBPARTICIPATION IN VIOLATION OF THIS SECTION 10.01 SHALL BE VOID.  TO THE EXTENT THE LENDER ASSIGNS OR PARTICIPATES ANY PORTION OF ITS ADVANCE OR COMMITMENT IN VIOLATION OF THIS SECTION 10.01, THE LENDER AND THE PROPOSED ASSIGNEE OR PARTICIPANT, AS THE CASE MAY BE, SHALL UPON NOTICE BY THE AGENT TAKE ALL STEPS NECESSARY OR ADVISABLE TO AVOID THE BORROWER BEING OR BECOMING AN "INVESTMENT COMPANY" WITHIN THE MEANING OF THE INVESTMENT COMPANY ACT OF 1940, INCLUDING BUT NOT LIMITED TO, ALL STEPS NECESSARY TO TRANSFER SUCH ASSIGNED OR PARTICIPATED INTEREST THEREUNDER TO THE LENDER SELECTED BY THE BORROWER AND THE

This document is subject to a
written Confidentiality Agreement

EC 001014202

AB000370654

78

AGENT.  NO ASSIGNEE (TO THE EXTENT PROVIDED IN SECTION 10.01(A)) AND
NO PARTICIPANT SHALL BE ENTITLED TO RECEIVE ANY GREATER BENEFIT
PURSUANT TO SECTIONS 2.07, 2.09 AND 12.04 AND ARTICLE XI HEREOF THAN
THE LENDER OR LIQUIDITY PROVIDER CONSENTED TO BY THE BORROWER
WOULD HAVE BEEN ENTITLED TO RECEIVE WITH RESPECT TO THE RIGHTS
TRANSFERRED.

(i)      The Lender may, in connection with any assignment or participation or
proposed assignment or participation pursuant to this Section 10.01, disclose to the assignee or
participant or proposed assignee or participant, any information relating to the Borrower
furnished to the Lender by or on behalf of the Borrower; provided, however, that, prior to any
such disclosure, the assignee or participant or proposed assignee or participant shall sign a
confidentiality agreement in the form of Exhibit I hereto.

(j)      Notwithstanding any other provision set forth in this Agreement, (i) the
Lender may at any time create a security interest in all or any portion of its rights under this
Agreement (including, without limitation, the CXC Advance or Assignee Advance owing to it)
in favor of any Federal Reserve Bank in accordance with Regulation A of the Board of
Governors of the Federal Reserve System, and (ii) upon any payment by the Surety Provider
under the Surety Bond, the Lender and the Liquidity Providers, respectively, may assign to the
Surety Provider their respective rights under and with respect to this Agreement and the
Advance outstanding at such time hereunder to the extent required under, and in accordance
with, the Insurance Agreement.

ARTICLE XI

INDEMNIFICATION

SECTION 11.01.  Indemnities by the Borrower.  (a)  The Borrower agrees, to
the fullest extent permitted by law, to indemnify and hold harmless the Agent, the Security and
Collection Agent, the Surety Provider, the Lender, each Liquidity Provider and any Affiliate
of any thereof (each, an "Indemnified Party") from and against any and all claims, damages,
liabilities and expenses (including, without limitation, reasonable fees and disbursements of
counsel and claims, damages, liabilities and expenses relating to environmental matters) other
than Taxes or Other Taxes (and taxes excluded from the definition of the term "Taxes"
pursuant to clauses (1) and (2) of the first sentence of Section 2.09(a)), which are governed by
Section 2.09, or Additional Financing Costs under Section 2.07, or if the Full Purchase
Closing Date has occurred, any Additional Financing Costs claimable pursuant to Section 2.13
(all of the foregoing to the extent not expressly excluded being collectively referred to as the
"Indemnified Amounts") for which any of them may become liable or which may be incurred

This document is subject to a
written Confidentiality Agreement

EC 001014203


AB000370655

79

by or asserted against any such Indemnified Party, in each case in connection with or arising out of or by reason of any investigation, litigation, or proceeding, whether or not any Indemnified Party is a party thereto, arising out of, related to or in connection with this Agreement or any other Loan Document, any Operative Document or any Assigned Agreement, or the use of proceeds of the Advance, including, without limitation, any and all Indemnified Amounts relating to or resulting from:

        (i)     reliance on any representation or warranty or statement made or deemed made by the Borrower (or any of its members) in this Agreement or any other Loan Document which shall have been incorrect in any material respect when made;

        (ii)    the failure by the Borrower to comply with any applicable law, rule or regulation with respect to any Operative Document or Assigned Agreement, or the nonconformity of any Operative Document or Assigned Agreement with any such applicable law, rule or regulation, unless due to any act or omission on the part of the Agent, the Lender, the Liquidity Providers, the Surety Provider or the Security and Collection Agent;

        (iii)   the failure to vest in the Security and Collection Agent a valid and perfected first priority security interest in the Pledged Collateral (subject to Permitted Liens) unless due to any act or omission on the part of and solely in the control of the Agent, the Lender, the Liquidity Providers, the Surety Provider or the Security and Collection Agent;

        (iv)   the failure to have filed, or any delay in filing, financing statements or other similar instruments or documents under the UCC of any applicable jurisdiction or other applicable laws with respect to any Pledged Collateral, unless due to any act or omission on the part and solely in the control of the Agent, the Lender, the Liquidity Providers, the Surety Provider or the Security and Collection Agent;

        (v)    any dispute, claim, offset or defense of the Joint Venture, Enron or any other party to an Operative Document or Assigned Agreement to the payment of any amount owing to the Borrower under the provisions thereof (including, without limitation, a defense based on such payment or the related Operative Document or Assigned Agreement not being a legal, valid and binding obligation of such Person enforceable against it in accordance with its terms), unless the same is due to any act or omission on the part of the Agent, the Lender, the Liquidity Providers, or the Security and Collection Agent;

SS_NYLJA/27974
Nighthawk Credit & Security Agreement

This document is subject to a
written Confidentiality Agreement

EC 001014204

AB000370656

(vi)    any failure of the Borrower to perform its duties or obligations in accordance with the provisions hereof or to perform its duties and obligations under the Assigned Agreements; or

(vii)    any investigation, litigation or proceeding related to this Agreement or any other Loan Document or the use of proceeds of the Advance or in respect of any Operative Document or Assigned Agreement, unless due to any act or omission on the part and solely in the control of the Agent, the Lender, the Liquidity Providers, the Surety Provider, or the Security and Collection Agent.

THE FOREGOING INDEMNITY SHALL EXPRESSLY INCLUDE ANY INDEMNIFIED AMOUNT ATTRIBUTABLE TO THE ORDINARY, SOLE OR CONTRIBUTORY NEGLIGENCE OF ANY INDEMNIFIED PARTY, BUT SHALL EXCLUDE ANY INDEMNIFIED AMOUNT ATTRIBUTABLE TO THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF SUCH INDEMNIFIED PARTY. IT IS THE INTENT OF THE PARTIES HERETO THAT THE INDEMNIFIED PARTIES, TO THE EXTENT PROVIDED IN THIS SECTION 11.01(a), BE INDEMNIFIED FOR THEIR OWN ORDINARY, SOLE OR CONTRIBUTORY NEGLIGENCE.

(b)    Any Indemnified Party that proposes to assert a right to be indemnified under this Section 11 will, promptly after receipt of notice of commencement of any action, suit or proceeding against such Indemnified Party, or the incurrence or realization of Indemnified Amounts, in respect of which a claim is to be made against the Borrower under this Section 11, notify the Borrower of such incurrence or realization or of the commencement of such action, suit or proceeding, enclosing a copy of all papers served, but the omission so to notify the Borrower promptly of any such incurrence, realization, action, suit or proceeding shall not relieve (x) the Borrower from any liability that it may have to such Indemnified Party under this Section 11 or otherwise, except, as to the Borrower's liability under this Section 11, to the extent, but only to the extent, that the Borrower shall have been prejudiced by such omission, or (y) any other Person from liability that it may have to any Indemnified Party under this Section 11 or otherwise.

(c)    In connection with any investigation, litigation or proceeding for which the Borrower has agreed to indemnify the Indemnified Parties pursuant to Section 11.01(a), the reasonable fees and expenses of one firm of counsel (plus any local or special counsel as may be necessary) acting on behalf of the Indemnified Parties (as a group) shall constitute the obligations for fees and expenses of counsel to be reimbursed by the Borrower to the Indemnified Parties; provided, however, that in the event the Agent, the Security and Collection Agent, the Surety Provider, the Liquidity Provider or the Lender reasonably determines that there is a conflict of interest between the Agent, the Security and Collection Agent, the Surety Provider, the Liquidity Providers (as a group) or the Lender in the conduct of the defense of such investigation, litigation or proceeding or that there are specific defenses

SS_NYLJA/27974
Nighthawk Credit & Security Agreement

This document is subject to a
written Confidentiality Agreement

EC 001014205

AB000370657

81

available to the Agent, the Security and Collection Agent, the Surety Provider, the Liquidity Providers (as a group) or the Lender that are different from or additional to those available to the Agent, the Security and Collection Agent, the Surety Provider, the Liquidity Providers (as a group) or the Lender, then the party making such reasonable determination shall have the right to appoint one firm of separate counsel (plus any local or special counsel as may be necessary with respect to such conflict), the reasonable fees and expenses of which shall also constitute the obligations for fees and expenses of counsel to be reimbursed by the Borrower to the Indemnified Parties.

## ARTICLE XII

### MISCELLANEOUS

SECTION 12.01.  Amendments, Etc.  No amendment, waiver, modification or supplement of any provision of this Agreement or any other Loan Document, nor consent to any departure by the Borrower therefrom, shall in any event be effective unless (i) the same shall be in writing and signed by the Borrower, the Agent and the Lender, or, if the Agent or the Lender shall not be the party thereto, by the party thereto and consented to by the Agent or the Lender, and (ii) prior written notice of the same shall have been delivered to S&P and Moody's (and, in the case of any material amendment, waiver, modification, supplement, consent or departure, S&P and Moody's shall have consented in writing thereto or, at S&P or Moody's respective option, have provided oral consent thereto satisfactory to the Agent), and then such amendment, waiver, modification, supplement or consent shall be effective only in the specific instance and for the specific purpose for which given.

SECTION 12.02.  Notices, Etc.  All notices and other communications provided for hereunder shall be in writing (including telecopy communication) and mailed, telecopied or delivered, if to the Borrower, at its address at c/o Wilmington Trust Company, Rodney Square North, 1100 North Market Street, Wilmington, Delaware, 19890, Attention: Corporate Trust Department, facsimile no. (302) 427-4749; with copies to (x) Prairie Hawk, Inc., c/o Enron Corp., 1400 Smith Street, Houston, Texas, 77002, Attention:  Treasurer and (y) Enron Corp., 1400 Smith Street, Houston, Texas, 77002, Attention:  Treasurer; if to the Initial Lender, c/o Citicorp North America, Inc., 450 Mamaroneck Avenue, Harrison, NY 10528, Attention:  Corporate Asset Funding; and as to any other Lender at the address specified in the Assignment and Acceptance pursuant to which it became a Lender; if to the Agent, at 450 Mamaroneck Avenue, Harrison, New York 10528; if to the Security and Collection Agent, at 450 Mamaroneck Avenue, Harrison, New York 10528; or, as to each party, at such other address as shall be designated by such party in a written notice to the other parties.  Any such notices and communications shall be deemed to be delivered, given, and received for all purposes as of the date so delivered, if delivered personally, or otherwise as of

This document is subject to a
written Confidentiality Agreement

EC 001014206



82

the date on which the same was received (if a Business Day or, if not, on the next succeeding Business Day). Anything in Section 5.03 to the contrary notwithstanding, the obligation of the Borrower to deliver notices to the Agent, the Lender and the Security and Collection Agent pursuant to Section 5.03(e), 5.03(f) and 5.03(g) shall be deemed satisfied to the extent that the Joint Venture has delivered such notices to the Agent, the Lender and the Security and Collection Agent. In addition, the Agent agrees to furnish to S&P and Moody's copies of all written notices that it receives from time to time hereunder other than the Notice of Borrowing.

SECTION 12.03. No Waiver; Remedies. No failure on the part of the Lender, the Agent or the Security and Collection Agent to exercise, and no delay in exercising, any right hereunder or under any Loan Document shall operate as a waiver thereof; nor shall any single or partial exercise of any such right preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

SECTION 12.04. Costs and Expenses. (a) The Borrower agrees to pay pursuant to Section 8.04 (i) all reasonable costs and expenses of the Agent, the Security and Collection Agent, the Surety Provider, the Lender, the Initial Liquidity Provider and (after the occurrence of any Joint Venture Notice Event, Joint Venture Termination Event, Joint Venture Liquidating Event, Default or Event of Default) the other Liquidity Providers, in connection with the administration, modification and amendment of the Loan Documents (including, without limitation, (A) all due diligence, transportation, computer, duplication, appraisal, audit, insurance, consultant, search, filing, rating agency and recording fees and expenses, (B) the preservation of, or the sale (other than any registration under the securities laws with respect thereto) of, collection from, or other realization upon, any of the Pledged Collateral, (C) the enforcement of any of the rights of the Security and Collection Agent, the Agent or the Lender hereunder and (D) the reasonable fees and expenses of counsel for the Agent, the Security and Collection Agent, the Surety Provider, the Lender, the Initial Liquidity Provider and (after the occurrence of any Joint Venture Notice Event, Joint Venture Termination Event, Joint Venture Liquidating Event, Default or Event of Default) the other Liquidity Providers with respect to advising such Person as to its rights and responsibilities, or the perfection, protection or preservation of rights or interests, under the Loan Documents, with respect to negotiations with the Borrower or with other creditors of the Borrower arising out of any Default or Event of Default or with the Joint Venture or Enron arising out of any Joint Venture Notice Event, Joint Venture Termination Event or Joint Venture Liquidating Event or any events or circumstances that may give rise to a Default or Event of Default or a Joint Venture Notice Event, Joint Venture Termination Event or Joint Venture Liquidating Event and with respect to presenting claims in or otherwise participating in or monitoring any bankruptcy, insolvency or other similar proceeding involving creditors' rights generally and any proceeding ancillary thereto with respect to the Borrower, the Joint Venture or Enron) and (ii) all reasonable out-of-pocket costs and expenses of the Agent, the Security and Collection Agent,

This document is subject to a
written Confidentiality Agreement

EC 001014207

AB000370659

83

the Surety Provider, the Lender and the Liquidity Providers in connection with the enforcement of the Loan Documents, whether in any action, suit or litigation, any bankruptcy, insolvency or other similar proceeding affecting creditors' rights generally or otherwise (including, without limitation, the reasonable fees and expenses of counsel for the Agent, the Lender and the Surety Provider with respect thereto), subject, in each case to the limitations set forth in Section 11.01(c).

(b)    If the Borrower fails to pay when due any costs, expenses or other amounts payable by it under any Loan Document, including, without limitation, fees and expenses of counsel and indemnities, but excluding scheduled principal and interest payments and commitment fees, such amount may be paid on behalf of the Borrower by the Agent or the Lender, in its sole discretion.

(c)    The indemnities set forth in Article XI and this Section 12.04 shall be in addition to any other obligations or liabilities of the Borrower hereunder or at common law or otherwise; provided, however, that the indemnities set forth in Article XI and this Section 12.04 shall not apply with respect to (x) Additional Financing Costs subject to Section 2.07 or claimable pursuant to Section 2.13 (for which the exclusive remedy shall be pursuant to Section 2.07 or Section 2.13, as the case may be) or that are no longer claimable against the Borrower pursuant to Section 2.14 or (y) Taxes or Other Taxes (and taxes excluded from the definition of the term "Taxes" pursuant to clauses (1)and (2) of the first sentence of Section 2.09(a)) and liabilities with respect thereto, for which the exclusive remedy of the Lender, the Agent and the Security and Collection Agent against the Borrower shall be pursuant to Section 2.09 hereof.  Without prejudice to the survival of any other obligation of the Borrower under this Agreement, but subject to the foregoing, the indemnities and obligations contained in Article XI and this Section 12.04 shall survive the payment in full of the principal of and interest on the Advance or any other termination of this Agreement.

SECTION 12.05.  Right of Set-off.  Upon (a) the occurrence and during the continuance of any Event of Default and (b) the making of the request or the granting of the consent specified by Section 6.01 hereof to authorize the Agent to declare the Advance due and payable pursuant to the provisions of Section 6.01 hereof, the Lender is hereby authorized at any time and from time to time, to the fullest extent permitted by law, to set-off and otherwise apply any and all deposits (general or special, time or demand, provisional or final) at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower (other than any deposits held in the Administrator's Account or deposits in any account to the extent constituting Excluded Payments, which deposits the parties to this Agreement acknowledge are specifically excluded from the Lender's set-off rights provided for in this Section 12.05) against any and all of the Obligations of the Borrower now or hereafter existing under this Agreement and although such obligations may be unmatured.  The Lender agrees promptly to notify the Borrower after any such set-off and application; provided,

SS_NYLJA/27974
Nighthawk Credit & Security Agreement

This document is subject to a
written Confidentiality Agreement

EC 001014208

AB000370660

84

however, that the failure to give such notice shall not affect the validity of such set-off and application. The rights of the Lender under this Section are in addition to other rights and remedies (including, without limitation, other rights of set-off) that the Lender may have.

SECTION 12.06. Binding Effect. This Agreement shall become effective when it shall have been executed by the Borrower, the Agent and the Security and Collection Agent and when the Agent shall have been notified by the Initial Lender that the Initial Lender has executed it and thereafter shall be binding upon and inure to the benefit of the Borrower, the Agent and the Lender and their respective successors and assigns, provided, however, that the obligations of the Lender under Article II hereof shall not become effective until satisfaction by the Borrower or waiver by the Lender of each of the conditions set forth in Section 3.01 hereof, and provided further that the Borrower shall not have the right to assign its rights or obligations hereunder or any interest herein without the prior written consent of the Lender, except to its Borrower Class A Member and the Administrator as provided in Section 12.09. The Surety Provider and the Escrow Agent shall be deemed third-party beneficiaries of the provisions in this Agreement relating to the Surety Provider and the Escrow Agent, as fully as if each were a party to this Agreement.

SECTION 12.07. Governing Law. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York.

SECTION 12.08. Execution in Counterparts. This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement. Delivery of an executed counterpart of a signature page to this Agreement by telecopier shall be effective as delivery of a manually executed counterpart of this Agreement.

SECTION 12.09. Borrower Class A Member and Administrator. Pursuant to the Investor Company Agreement, certain duties and responsibilities of the Borrower pursuant to this Agreement and the other Loan Documents have been delegated to the Borrower Class A Member. Pursuant to the Administration Agreement, the Borrower Class A Member have delegated to the Administrator certain duties and responsibilities of the Borrower pursuant to this Agreement and the other Loan Documents. The Borrower acknowledges and agrees that the Lender, the Agent, the Surety Provider and the Security and Collection Agent shall be entitled to rely on the written directions, instructions, consents, approvals, and other actions taken by the Class A Member and the Administrator on behalf or for the account of the Borrower pursuant to the terms of this Agreement and the other Loan Documents.

SECTION 12.10. Non-Recourse Liability. (a) No recourse under any obligation, covenant or agreement of the Borrower contained in this Agreement or the other

SS_NYLJA/27974
Nighthawk Credit & Security Agreement

This document is subject to a
written Confidentiality Agreement

EC 001014209

AB000370661

85

Loan Documents shall be had against the Borrower (except to the extent of the Pledged Collateral), any Member of the Borrower, any permitted transferee of any Member or the Administrator, or any beneficiary, stockholder, trustee, employee, member, partner, officer or director of, or any lender to, any Member of the Borrower, any permitted transferee of any such Member or the Administrator, or of any of their respective Affiliates or to any of their assets, by the enforcement of any assessment or by any legal or equitable proceedings seeking to assert such recourse against the Borrower, its Members or any permitted transferee of any Member or any of the other foregoing Persons, by virtue of any statute or otherwise; it being expressly agreed and understood that no personal liability whatever shall attach to or be incurred by the Borrower (except to the extent of the Pledged Collateral), any Member of the Borrower, any permitted transferee of any such Member or the Administrator, or any beneficiary, stockholder, trustee, employee, member, partner, officer or director of, or any lender to, any Member of the Borrower, any permitted transferee of any such Member or the Administrator, or any of their respective Affiliates, or any of them, under or by reason of any of the obligations, covenants or agreements of the Borrower contained in this Agreement or the other Loan Documents, or implied therefrom; and it being further expressly agreed and understood that any and all personal liability of the Borrower (except to the extent of the Pledged Collateral), any Member of the Borrower, any permitted transferee of any such Member or the Administrator, as such, and of every such beneficiary, stockholder, trustee, employee, member, partner, officer, or director of, or any lender to, any Member of the Borrower, any permitted transferee of any such Member or the Administrator, or any of their respective Affiliates, for breaches by the Borrower of any of such obligations, covenants or agreements, either at common law or at equity or under any statute or constitution, is hereby expressly waived by the Agent, the Security and Collection Agent and the Lender as a condition of and consideration for the execution of this Agreement; provided, however, that nothing contained in this Section 12.10 shall impair the validity of the Obligations evidenced by this Agreement, prevent the taking of any action permitted by law against the Borrower to the extent of the Pledged Collateral or the proceeds of such Pledged Collateral, or in any way affect or impair the right of the Agent or any Lender to take any action permitted by law to realize upon any of the Pledged Collateral.

(b)     Each of the Agent and the Lender hereby irrevocably agrees that, in furtherance of the provisions of the preceding subsection (a) of this Section 12.10, (i) it shall not institute against, or join any other Person in instituting against, any Member of the Borrower or any permitted transferee of any Member, as such, or any beneficiary, stockholder, trustee, employee, member, partner, officer or director of, or any lender to, any Member of the Borrower or any permitted transferee of any such Member, as such, or any of their respective Affiliates (except for the Borrower itself but solely to the extent of, and to the extent necessary to realize on, the Pledged Collateral), any bankruptcy, reorganization, insolvency or liquidation proceeding, or other proceeding under any national, federal or state bankruptcy or similar law, in connection with any claim relating to the transactions

SS_NYL3A/27974
Nighthawk Credit & Security Agreement

This document is subject to a
written Confidentiality Agreement

EC 001014210

AB000370662

86

contemplated hereby, (ii) in the event of any reorganization under the Bankruptcy Reform Act of 1978, as amended, of any Member of the Borrower, or the Borrower, it will make the election under Section 1111(b)(2) of such Act and (iii) if for any reason, whether or not related to the Bankruptcy Reform Act of 1978, as amended, it shall recover from the Borrower or any Member of the Borrower or any permitted transferee of any such Member or any other Person referred to in paragraph (a) above, any assets or amounts other than the assets constituting the Pledged Collateral, it promptly shall return such asset or amount recovered to such Person. Nothing contained in this Section 12.10 shall prevent the Lender from enforcing as a full recourse obligation (and retaining the proceeds thereof) any obligation under this Agreement or any other Loan Document that is expressed as being an obligation of any entity other than the Borrower.

SECTION 12.11. Consent to Jurisdiction. (a) The Borrower, on behalf of itself and its successors and assigns and in respect of its property, hereby irrevocably agrees, to the fullest extent it may do so under law, in the event it files any action, one effect of which could be to halt, enjoin, impair or hinder the enforcement of the parties' obligations hereunder or under the other Loan Documents, or proceedings to enforce collection on those obligations, including, but not limited to, any proceeding under the United States Bankruptcy Code, to file such action, and hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined, in the United States District Court for the Southern District of New York sitting in New York City or in such District's Bankruptcy Court, as applicable, assuming venue in that District would be proper, or in the courts of the State of New York, First Department sitting in New York County. The Borrower, on behalf of itself and its successors and assigns, hereby irrevocably waives, to the fullest extent it may do so under law, the defense of an inconvenient forum to such action or proceeding. To the fullest extent permitted by applicable Law, the Borrower, on behalf of itself and its successors and assigns, hereby irrevocably agrees to elect in favor of filing in or transferring to the United States District Court for the Southern District of New York, assuming that venue in such district would otherwise be proper, to the extent it has any control over the choice of a district for the filing or transfer of a case under the United States Bankruptcy Code for any of its Affiliates as debtor. In the event an Affiliate of the Borrower or Enron or any of its Affiliates is the subject of a separate case under the United States Bankruptcy Code, in a court other than the Bankruptcy Court for the Southern District of New York, the Borrower, on behalf of itself and its successors and assigns, hereby irrevocably agrees to the fullest extent permitted by applicable Law to seek a transfer to the latter district, assuming venue in such district would otherwise be proper. In the event that a bankruptcy court enters a motion to consolidate multiple cases filed by the Borrower or any of its Affiliates or Enron or any of its Affiliates, the Borrower also agrees to the fullest extent permitted by applicable Law to seek a transfer of the consolidated case to the latter district, assuming venue in such district would otherwise be proper. The execution of this Agreement is expressly conditioned on the willingness and intention of the Borrower to enforce the provisions of this Section 12.11. In addition, the

This document is subject to a
written Confidentiality Agreement

EC 001014211

AB000370663

87

Borrower warrants that it is subject to no preexisting obligations that would interfere with its adherence to the foregoing provisions of this Section 12.11 and additionally warrants that it will not enter into other agreements that in any way compromise its ability to adhere to these provisions without the express written consent of the Lender.

(b)    Any legal action or proceeding with respect to this Agreement or any other Loan Document may be brought in the courts of the State of New York located in the County of New York or of the United States for the Southern District of New York, and, by execution and delivery of this Agreement, the Borrower hereby irrevocably accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts. Nothing herein shall affect the right of the Agent or the Lender to bring any legal action or proceeding with respect to this Agreement or any other Loan Document against the Borrower in the courts of any other jurisdiction. To the fullest extent permitted by applicable Law, the Borrower hereby irrevocably waives any objection that it may now or hereafter have to the laying of venue of any of the aforesaid actions or proceedings arising out of or in connection with this Agreement or any other Loan Document brought in the courts referred to in subsection (a) of this Section and hereby further irrevocably waives and agrees not to plead or claim in any such court that any such action or proceeding brought in any such court has been brought in an inconvenient forum.

(c)    The Borrower hereby irrevocably appoints The Corporation Trust Company with offices on the date hereof at 1633 Broadway, New York, NY 10019 (or any successor appointed by the Borrower Class A Member, provided that such successor shall be located in New York City and engaged in the business of acting as a process agent and shall be a company of national recognition, and provided further that notice of such successor agent shall be promptly given to the Security and Collection Agent and the Agent by such Borrower Class A Member, the "Process Agent") as its designee, appointee and agent to receive, accept and acknowledge on its behalf and its property service of copies of the summons and complaint and any other process that may be served in any action or proceeding under subsection (a) or (b) of this Section. Such service may be made by delivering a copy of such process to the Borrower in care of the Process Agent at the Process Agent's address, and the Borrower hereby authorizes and directs the Process Agent to accept such service on its behalf. As an alternative method of service, the Borrower also irrevocably consents to the service of any and all process in any such action or proceeding by the delivering of copies of such process to the Borrower at its address specified in Section 12.02 hereof. To the fullest extent permitted by applicable Law, the Borrower agrees that a non-appealable final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

SECTION 12.12. Confidentiality. Except to the extent permitted by another confidentiality agreement entered into in connection herewith with the consent of the Class B

This document is subject to a
written Confidentiality Agreement

EC 001014212

AB000370664

88

Member of the Borrower, each of the Agent, the Security and Collection Agent, the Surety Provider, the Liquidity Providers and the Lender agrees that it shall not to disclose without the prior consent of the Borrower or if any information relates to Enron or its Affiliates, without Enron's prior consent (other than to its Affiliates in the ordinary course of business in connection with any Loan Document, the administration thereof or any transaction contemplated hereby, employees, auditors or counsel or to another party hereto to the extent that such party is the Agent, the Security and Collection Agent, the Surety Provider, the Liquidity Providers or the Lender if the disclosing party or the disclosing party's holding or parent company in its sole discretion determines that any such other party should have access to such information) any Confidential Information, provided that each of the Agent, the Security and Collection Agent, the Surety Provider, the Liquidity Providers and the Lender may disclose any such information (a) as may be required or appropriate in any report, statement or testimony submitted to any municipal, state or federal regulatory body having or claiming to have jurisdiction over such party or to the Board of Governors of the Federal Reserve System or the Federal Deposit Insurance Corporation or similar regulatory organizations (whether in the United States or elsewhere), (b) as may be required or appropriate in response to any summons or subpoena or in connection with any litigation, and (c) in order to comply with any law, order, regulation or ruling applicable to any such party.

SECTION 12.13. Headings. The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect any of the terms hereof.

SECTION 12.14. Acknowledgement. Each Lender and Liquidity Provider hereby acknowledges that in a liquidation of the Joint Venture, the assets of the Joint Venture will be applied to make Guaranteed Payments prior to making any distribution in respect of the Capital Account of the Borrower, which will result in the payment of certain Excluded Payments which will not be applied to the principal, interest, fees or other amounts owing by the Borrower hereunder.

SECTION 12.15. WAIVER OF JURY TRIAL. THE BORROWER, THE AGENT, THE SECURITY AND COLLECTION AGENT AND THE LENDER EACH HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO ANY OF THE LOAN DOCUMENTS, THE ADVANCE OR THE ACTIONS OF THE AGENT, THE SECURITY AND COLLECTION AGENT OR THE LENDER IN THE NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT THEREOF.

SECTION 12.16. Consent to Assignments under Insurance Agreement. So long as no Default, Event of Default, Joint Venture Notice Event, Joint Venture Termination Event, Joint Venture Liquidating Event or Incipient Event has occurred and is continuing, the

This document is subject to a
written Confidentiality Agreement

EC 001014213

AB000370665

89

Agent will not grant any consent pursuant to Section 6.04(c) of the Insurance Agreement without the prior written consent of the Class B Member of the Borrower.

SS_NYL3A/27974
Nighthawk Credit & Security Agreement

This document is subject to a
written Confidentiality Agreement

EC 001014214

AB000370666

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first above written.

NIGHTHAWK INVESTORS L.L.C.

By: Golden Eagle L.L.C.,
    its Class A Member

By: Kestrel Investor L.L.C.,
    its Sole Member

By: HCM High Yield Opportunity
    Fund, L.P.,
    its Sole Member

By: Harch Capital Management, Inc.,
    as Sub-Advisor and Authorized
    Delegee

By: _____
    Michael E. Lewitt
    Executive Vice President

This document is subject to
a written Confidentiality Agreement.

SS_NYL3A/27974

EC 001014215

AB000370667

CITICORP NORTH AMERICA, INC.,
as Agent and as Security and Collection
Agent

By: _____

   Name:
   Title:          VICE PRESIDENT

This document is subject to
a written Confidentiality Agreement.

SS_NYL3A/27974

EC 001014216

AB000370668

Initial Lender

CXC INCORPORATED

By: Citicorp North America, Inc.,
as Attorney-in-fact

By: _____
    Name:
    Title:          BRAN. A. RASKOVIC
                    VICE PRESIDENT

This document is subject to
a written Confidentiality Agreement.

SS_NYL3A/27974

EC 001014217

AB000370669