EXECUTION COPY

---

## CLOSING AGREEMENT

---

### YOSEMITE SECURITIES TRUST I

**$750,000,000 8.25% Series 1999-A Linked Enron Obligations**

**$75,000,000
Enron Credit-Linked Trust Certificates**

**ENRON CORP.**

**STRUCTURED PRODUCTS CORP.,**
as Depositor

**YOSEMITE SECURITIES TRUST I**

**CITIBANK, N.A.**

**WILMINGTON TRUST COMPANY,**
as Trustee

and

**DEUTSCHE BANK SECURITIES INC. ,
DONALDSON, LUFKIN & JENRETTE SECURITIES CORPORATION,
GREENWICH NATWEST LIMITED,** as agent for National Westminster Bank Plc,
**and**
**SALOMON SMITH BARNEY INC.,**
as Initial Purchasers

DC1:#8047657v8

ECMM000064647

**Table of Contents**

ARTICLE 1 DEFINITIONS................................................................................................ 1
    Section 1.1.Definitions................................................................................................ 1
ARTICLE 2 ACTIONS ON CLOSING DATE............................................................... 2
    Section 2.1.Time and Place of Closing....................................................................... 2
    Section 2.2.Actions on Closing Date. ......................................................................... 2
ARTICLE 3 CONDITIONS .............................................................................................. 4
    Section 3.1.Conditions Precedent to Transactions..................................................... 4
ARTICLE 4 MISCELLANEOUS ................................................................................... 10
    Section 4.1.Survival ................................................................................................... 10
    Section 4.2.Severability of Provisions. ..................................................................... 10
    Section 4.3.Effect of Headings. ................................................................................ 10
    Section 4.4.Effectiveness; Counterparts. .................................................................. 10
    Section 4.5.Governing Law. ...................................................................................... 10
    Section 4.6.Amendments. .......................................................................................... 11

**Exhibit A – Form of Accession Agreement**

ECMM000064648

CLOSING AGREEMENT

This CLOSING AGREEMENT is made as of November 4, 1999 (this "Agreement") by and among ENRON CORP., STRUCTURED PRODUCTS CORP., YOSEMITE SECURITIES TRUST I, a business trust created under the laws of the State of Delaware (the "Trust"), CITIBANK, N.A. ("Citibank"), WILMINGTON TRUST COMPANY (in its individual capacity, "WTC" and as Trustee under the Yosemite Securities Trust I Agreement, "Trustee"), and DEUTSCHE BANK SECURITIES INC., DONALDSON, LUFKIN & JENRETTE SECURITIES CORPORATION, GREENWICH NATWEST LIMITED, as agent for National Westminster Bank, Plc, and SALOMON SMITH BARNEY INC., as Initial Purchasers (each of the parties to this Agreement, and each Person acceding to this Agreement as provided in Section 4.4, being referred to individually as a "Party" and, collectively, as the "Parties").

WITNESSETH:

WHEREAS, the Trust has entered into an Indenture (the "Indenture"), dated as of the Closing Date, with the Indenture Trustee, which Indenture contemplates the issuance, from time to time in one or more series (each, a "Series"), of senior secured notes of the Trust pursuant to the terms of such Indenture and one or more Indenture Supplements thereto;

WHEREAS, the Trust will issue, as of the Closing Date, the Series 1999-A Linked Enron Obligations (the "Notes"), in each case pursuant to the terms of the Indenture and the Indenture Supplement relating thereto;

WHEREAS, the Trust will enter into, as of the Closing Date, an ISDA Master Agreement and a Schedule (together with Confirmations thereto executed from time to time, the "Citibank Swap") with Citibank; and

WHEREAS, in order to provide security for the Secured Obligations, the Trust has agreed to Grant to the Collateral Agent, on behalf of and for the benefit of the Secured Parties, a security interest in the Collateral in the manner set forth in the Collateral Security Agreement dated as of the Closing Date (the "Collateral Security Agreement");

NOW, THEREFORE, in consideration of the premises and of the agreements herein contained, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto hereby agree as follows:

ARTICLE 1

DEFINITIONS

Section 1.1.    Definitions. Unless otherwise defined herein or unless the context shall otherwise require, capitalized terms used in this Agreement shall have the meanings assigned to such terms in Appendix A to the Collateral Security Agreement, and the Principles of

DC1:#8047657v8

ECMM000064649

Interpretation set forth in Appendix A to the Collateral Security Agreement shall apply to the terms defined herein and in such Appendix A. In addition, the following terms as used herein shall have the following respective meanings:

"Closing Date Documents" shall mean each Transaction Document entered into or required to be entered into on or prior to the Closing Date, the Certificate Purchase Agreement and the Note Purchase Agreement.

## ARTICLE 2

## ACTIONS ON CLOSING DATE

Section 2.1.    Time and Place of Closing.  The closing of the transactions described in Section 2.2 hereof shall commence at 9:00 a.m., New York City time, on the Closing Date at the offices of Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, or at such other time and at such other location as shall be agreed by the parties hereto.

Section 2.2.    Actions on Closing Date.  On or before the Closing Date, the following transactions shall be consummated (if on the Closing Date, simultaneously, unless otherwise specified herein or in the other Transaction Documents or Closing Date Documents), subject to the terms and conditions hereof and of the other Closing Date Documents and for each Party, to the extent such Party is intended to be benefited thereby, on the basis of the representations and warranties set forth in the Transaction Documents and the other Closing Date Documents:

    (a)   The Trust.

        (i)   The Trust shall enter into the Trust Agreement.

        (ii)   The Trust shall enter into the Certificate Purchase Agreement.

        (iii)   Not later than 11:00 a.m., New York City time (or such other time as may be agreed among the Parties), on the Closing Date, the Trust shall issue and deliver the Certificates under the Trust Agreement and pursuant to the Certificate Purchase Agreement to the Initial Certificate Purchasers, pursuant to instructions of the Initial Certificate Purchasers and against receipt of the purchase price of the Certificates.

        (iv)   Not later than 11:00 a.m., New York City time (or such other time as may be agreed among the Parties), on the Closing Date, the Trust shall issue and deliver to United States Trust Company of New York, as custodian for DTC, pursuant to the instructions of the Initial Purchasers and against receipt of the Purchase Price of the Notes (as such term is defined in the Note Purchase Agreement), (i) one or more global certificates representing the aggregate

ECMM000064650

principal amount of Notes to be sold in reliance upon Rule 144A under the Securities Act (the "Rule 144A Global Notes") and (ii) one or more global certificates representing the aggregate principal amount of Notes to be sold in reliance on Regulation S (the "Regulation S Global Notes" and together with the Rule 144A Global Note, the "Global Notes"), in each case registered in the name of Cede & Co. as nominee for DTC.

(v)    The Trust shall use the proceeds of the sale of the Notes and the Certificates to purchase Trust Investments.

(vi)    The Trust shall enter into the Collateral Security Agreement, the Citibank Swap and the other Closing Date Documents to which it is a party, and shall grant its rights under the Citibank Swap, together with its rights in the other Collateral, to the Collateral Agent pursuant to the terms and conditions of the Collateral Security Agreement.

(b)    The Indenture Trustee.

(i)    The Indenture Trustee shall enter into the Indenture and the Indenture Supplement for the Notes and shall authenticate the Notes thereunder.

(ii)    The Indenture Trustee shall enter into the Collateral Security Agreement and the other Closing Date Documents to which the Indenture Trustee is a party.

(c)    Enron.  Enron shall enter into the Note Purchase Agreement and the Certificate Purchase Agreement.

(d)    Depositor.  The Depositor shall enter into the Trust Agreement.

(e)    Citibank.  Citibank shall enter into the Citibank Swap and the Collateral Security Agreement and shall issue the Confirmations under Citibank Swap with respect to the Trust Investments purchased by the Trust with the proceeds of the sale of the Notes and the Certificates.

(f)    Initial Certificate Purchasers.  The Initial Certificate Purchasers shall enter into the Certificate Purchase Agreement with the Trust.  Against receipt of the Certificates, the Initial Certificate Purchasers shall pay or cause to be paid to the Trust, in immediately available funds, the purchase price of the Certificates in the aggregate amount of $75,000,000, without deduction for commissions or expenses, in U.S. Dollars, to the account or accounts as the Trust shall have specified by written notice to the Initial Certificate Purchasers, not later than the Closing Date.

(g)    Initial Purchasers.

ECMM000064651

(i)      The Initial Purchasers shall enter into the Note Purchase Agreement with the Trust. Against receipt of beneficial interests in the Notes issued on the Closing Date, the Initial Purchasers will pay or cause to be paid to the Trust in immediately available funds the Purchase Price (as such term is defined in the Note Purchase Agreement) in the aggregate amount of $750,000,000, without deduction for commissions or expenses, in U.S. Dollars to the account or accounts as the Trust shall have specified by written notice to the Initial Purchasers, not later than the Closing Date.

(ii)     The Initial Purchasers shall instruct Euroclear and Cedel as to the allocation of interests in the Regulation S Global Notes among accounts of Euroclear's and Cedel's participants on behalf of purchasers of beneficial interests in the Notes.

(h)     Collateral Agent. The Collateral Agent shall enter into the Collateral Security Agreement.

(i)     Account Bank; Securities Intermediary. The Account Bank and the Securities Intermediary shall enter into the Collateral Security Agreement.

ARTICLE 3

CONDITIONS

Section 3.1.    Conditions Precedent to Transactions. The obligation of each Party to enter into the transactions described in Section 2.2 hereof on the Closing Date shall be subject to the satisfaction (or waiver by such Party) on or prior to the Closing Date of the following conditions precedent:

(a)     Closing Date Documents. The form of each of the Collateral Security Agreement, the Citibank Swap, the Indenture, the Indenture Supplement for the Notes shall be satisfactory to such Party. The Note Purchase Agreement and each of the other Closing Date Documents entered into or required to be entered into on or prior to the Closing Date shall be satisfactory to such Party and shall remain in full force and effect. In addition, the Indenture Trustee shall have received fully executed copies of each of the Transaction Documents to which the Trust is a party (other than the Certificates, the Indenture, the Indenture Supplement and the Notes), certified by the Trustee as being true, correct and complete copies of such Transaction Documents on the Closing Date.

(b)     Authorization, Execution and Delivery of Documents. Each of the Closing Date Documents shall have been duly authorized, executed and delivered by each of the parties thereto (other than such Party). Such Party shall have received a true and correct copy of each Transaction Document (not furnished in original form) entered into or required to be entered into on or prior to the Closing Date, including without limitation all amendments and supplements to each such Transaction Document, and, if such Party is a party to any other Closing Date Document, of such Closing Date Document.

ECMM000064652

(c)     <u>Collateral</u>. All actions necessary, in the reasonable opinion of such Party, in order to effectively establish and create a first priority Lien and perfected security interest in the Collateral under the Collateral Security Agreement in favor of the Collateral Agent, subject, in each case, only to Liens arising under or permitted by the Transaction Documents, shall have been duly taken (or provisions therefor shall have been made), including without limitation, the making of all conveyances, registrations and filings.

(d)     <u>Opinions</u>. Opinions addressed (except as otherwise specified in such opinion) to the Collateral Agent, the Indenture Trustee, the Initial Purchasers, the Trustee, Citibank and the Initial Certificate Purchasers, dated the Closing Date, of the following counsel shall have been delivered to the applicable addressees, each such opinion to be in form and scope and otherwise reasonably satisfactory to the recipients and their counsel:

(i)     Vinson & Elkins LLP, counsel to Enron, as to the Closing Agreement, Certificate Purchase Agreement, and Note Purchase Agreement;

(ii)     Internal counsel of Enron as to the Closing Agreement, Certificate Purchase Agreement and Note Purchase Agreement;

(iii)     Vinson & Elkins LLP, counsel to Enron, as to nonconsolidation;

(iv)     Vinson & Elkins LLP, counsel to Enron, as to 10(b)(5) matters;

(v)     Milbank, Tweed, Hadley & McCloy LLP, special New York counsel to the Initial Purchasers, as to the Indenture, the Notes, security interests and perfection;

(vi)     Milbank, Tweed, Hadley & McCloy LLP, special New York counsel to the Initial Purchasers, as to 10(b)(5) matters;

(vii)     Milbank, Tweed, Hadley & McCloy LLP, special New York counsel to the Initial Purchasers, as to tax matters;

(viii)     Milbank, Tweed, Hadley & McCloy LLP, special New York counsel to Depositor, as to the Trust Agreement;

(ix)     Richards, Layton & Finger, special Delaware counsel; and

(x)     Seward & Kissel LLP, special counsel for the Indenture Trustee and the Collateral Agent.

(e)     <u>Conditions Precedent to Issuance of Notes</u>. The satisfaction (or waiver by the Trustee) in accordance with the Indenture and the Note Purchase Agreement of all of the conditions precedent to the issuance of the Notes.

ECMM000064653

(f)    Conditions Precedent to Purchase of Notes.  The satisfaction (or waiver by the Initial Purchasers) of all of the conditions precedent to the closing of the transactions contemplated by the Indenture and the Note Purchase Agreement with respect to the Notes and no termination of the Note Purchase Agreement pursuant to Section 13 thereof shall have occurred.

(g)    Conditions Precedent to Issuance of Certificates.  The satisfaction (or waiver by the Trustee) in accordance with the Trust Agreement and the Certificate Purchase Agreement of all of the conditions precedent to the issuance of the Certificates.

(h)    Conditions Precedent to Purchase of Certificates.  The satisfaction (or waiver by the Initial Certificate Purchasers) of all of the conditions precedent to the purchase of the Certificates pursuant to the Certificate Purchase Agreement.

(i)    Closing Certificates.

(i)    On the Closing Date, such Party shall have received a certificate of each of Enron, the Depositor, the Trust, the Indenture Trustee, the Collateral Agent, the Securities Intermediary, the Account Bank and Citibank, dated the Closing Date, in form and substance reasonably satisfactory to the receiving Party, certifying (A) that the Closing Date Documents to which such certifying Party is a party have been duly executed and delivered by such certifying Party and are in full force and effect with respect to such Party, and (B) such certifying Party has satisfied all conditions precedent contained in the Closing Date Documents to which it is a party required to be satisfied by it (that have not been waived) on or prior to the Closing Date.

(ii)    On the Closing Date, such Party shall have received a certificate of each of Enron, the Depositor, Wilmington Trust Company, United States Trust Company of New York and Citibank, dated the Closing Date, in form and substance reasonably satisfactory to the receiving Party, attaching and certifying as of the Closing Date as to (A) the certifying Party's Charter Documents (other than Citibank), (B) the resolutions of the certifying Party's Board of Directors or other governing body, if applicable, duly authorizing the certifying Party's execution, delivery and performance of each Closing Date Document and each other Transaction Document to which it is or is to be a party and each other document required to be executed and delivered by it in accordance with the provisions hereof or thereof and (C) the incumbency and signature of the Persons authorized to execute and deliver, as may be required hereunder, documents on its behalf in connection with the transactions contemplated hereby and by the other Transaction Documents and Closing Date Documents.

(iii)    On the Closing Date, such Party that is intended to be the beneficiary of representations and warranties of Enron, the Depositor, the Trust, the Indenture Trustee, the Collateral Agent, the Securities Intermediary, the Account Bank or Citibank, shall have received a certificate of such Person, dated

ECMM000064654

the Closing Date, in form and substance reasonably satisfactory to the receiving Party, certifying (A) the representations and warranties of the certifying Party made for the benefit of the receiving Party set forth in each Transaction Document and each other Closing Date Document are be true and correct on and as of the Closing Date (both immediately prior to the consummation of the transactions intended to occur on the Closing Date and also after giving effect thereto) in all material respects as if made on and as of such date (or, if stated to have been made solely as of an earlier date, were true and correct as of such date); (B) no Default, Indenture Event of Default or Swap Event by the certifying Party has occurred and is continuing; (C) there are no actions, suits, investigations or proceedings at law or in equity by or before any Governmental Authority pending or threatened against the certifying Party, and there shall not have been issued or proposed to be issued any orders, judgments or decrees by any Governmental Authority against the certifying Party, to set aside, restrain, enjoin or prevent the execution, delivery or performance of any of the Transaction Documents or any of the other Closing Date Documents to which the certifying Party is a party or the consummation of the transactions contemplated thereby; and (D) the transactions contemplated hereby and by each of the other Transaction Documents and other Closing Date Documents will not violate any Applicable Law applicable to the certifying Party in effect as of the Closing Date and will not subject the certifying Party to any Tax, penalty or liability under or pursuant to any Applicable Law applicable to the certifying Party in effect as of the Closing Date.

(iv)    On the Closing Date, such Party shall have received a certificate of the Trust dated the Closing Date in form and substance reasonably satisfactory to the Indenture Trustee and counsel for the Initial Purchasers to the effect that immediately before and immediately after the issuance of the Notes on the Closing Date no Default, Swap Event or Indenture Event of Default with respect to any Series of Notes has occurred and is continuing.

(j)    Fees and Expenses.  To the extent Enron has received an invoice for such fees and expenses not less than two Business Days prior to the Closing Date, Enron shall have paid, or provided for payment of, (i) the fees and expenses payable to the Indenture Trustee, the Collateral Agent, the Trustee, Citibank, Enron, the Initial Purchasers, Bankers Trust Luxembourg S.A., as Luxembourg paying and transfer agent, and the Rating Agencies (including the reasonable fees and expenses of counsel to such Persons) and (ii) the reasonable fees and expenses of counsel to the Initial Certificate Purchasers on the Closing Date.

(k)    Certain Facts and Circumstances.

(i)    The representations and warranties of each other Party set forth in each Transaction Document and each other Closing Date Document for the benefit of such Party shall be true and correct on and as of the Closing Date (both immediately prior to the consummation of the transactions intended to occur on the Closing Date and also after giving effect thereto) in all material respects as if

ECMM000064655

made on and as of such date (or, if stated to have been made solely as of an earlier date, were true and correct as of such date).

(ii)    No Default, Indenture Event of Default or Swap Event shall have occurred and be continuing.

(iii)    No change in the condition (financial or otherwise) of Enron shall have occurred that could reasonably be expected to result in a Material Adverse Effect on Enron and no other act, event or circumstance shall have occurred which has had or could reasonably be expected to have a Material Adverse Effect on Enron.

(iv)    There shall be no actions, suits, investigations or proceedings at law or in equity by or before any Governmental Authority pending or threatened, and there shall not have been issued or proposed to be issued any orders, judgments or decrees by any Governmental Authority, to set aside, restrain, enjoin or prevent the execution, delivery or performance of any of the Transaction Documents or any of the other Closing Date Documents or the consummation of the transactions contemplated thereby.

(v)    The transactions contemplated hereby and by each of the other Transaction Documents and other Closing Date Documents will not violate any Applicable Law in effect as of the Closing Date and will not subject any Party to any Tax, penalty or liability under or pursuant to any Applicable Law in effect as of the Closing Date.

(vi)    No invalidation shall have occurred of Rule 144A or Regulation S under the Securities Act by any court or any withdrawal or proposed withdrawal of any rule or regulation under the Securities Act or the Exchange Act by the SEC or any amendment or proposed amendment thereof by the SEC which, in the judgment of the Initial Purchasers, would materially impair the ability of the Initial Purchasers to purchase, hold or effect resales of the Notes as contemplated in the Indenture.

(l)    Rating of Notes. The Indenture Trustee, the Trustee, Citibank and the Initial Purchasers shall have received (i) a letter from Moody's rating the Notes "Baa2" or better and (ii) a letter from S&P rating the Notes "BBB+" or better, in each case, in form and substance reasonably satisfactory to the Indenture Trustee, the Trustee, Citibank and the Initial Purchasers.

(m)    Financing Statements. The Collateral Agent shall have received Financing Statements signed by the Trust, in form and substance reasonably satisfactory to the Collateral Agent and the Secured Parties.

(n)    Documents to be Delivered in Respect of Enron Investments. (i) For each Enron Investment to be delivered on the Closing Date, the Trust and Citibank shall have received:

ECMM000064656

(A) originals of any promissory note or other evidence of indebtedness, duly endorsed to the order of the Collateral Agent (such originals to be delivered only to the Collateral Agent as secured party),

(B) copies certified by Enron as true, complete and correct of all documents evidencing, securing or otherwise relating to such Enron Investment as in effect on the Closing Date,

(C) copies certified by Enron as true, complete and correct of all documents and notices required by the terms of such Enron Investment notifying the obligors of such transfer,

(D) evidence satisfactory to each of the Trust and Citibank that such Enron Investment is a valid and binding obligation of the obligors thereunder and that no default or event of default exists with respect to such Enron Investment, and

(E) such other evidence satisfactory to the Trust and Citibank that all consents necessary or advisable (in the reasonable opinion of the Trust and Citibank) to permit such Enron Investment to be transferred to the Trust and to permit the Trust to grant a security interest therein to the Collateral Agent for the benefit of the Secured Parties, enforceable as a security interest against all other creditors of the Trust and any Persons purporting to purchase any such Enron Investment from the Trust, and to permit the Collateral Agent to exercise remedies pursuant to such security interest (including but not limited to the sale of such Enron Investment), have been obtained and are in full force and effect.

(ii) In addition, for each Trust Investment to be delivered on the Closing Date, the Trust and Citibank shall have received all assignment agreements and other documents and instruments evidencing the transfer of such Trust Investment to the Trust (including any notification of any securities intermediary).

(o)    Trust Orders. For each Trust Investment to be delivered on the Closing Date, Citibank shall have (i) proffered all Confirmations required under the Citibank Swap and (ii) received copies certified by the Trustee as true, complete and correct of all Trust Orders required to be delivered to the Collateral Agent pursuant to Section 3.2 of the Collateral Security Agreement.

(p)    DTC. The Notes shall have been accepted for clearance of secondary market trading by DTC and Morgan Guaranty Trust Company of New York, Brussels office, as operator of Euroclear and Cedel.

(q)    Auditor's Letter. The Parties shall have received from Arthur Andersen an auditor's comfort letter, and a "bring-down" of such comfort letter to the Closing Date, regarding certain Enron financial information.

(r)    Additional Documents and Certificates, Etc. The Indenture Trustee, the Collateral Agent, the Trustee, Citibank, Enron, the Initial Purchasers and the Initial Certificate

ECMM000064657

Purchasers shall have received such other documents, agreements, certificates and opinions as any such Person or their counsel may reasonably request.

## ARTICLE 4

## MISCELLANEOUS

Section 4.1.   Survival  All agreements and indemnities contained in this Agreement and in any agreement, document or certificate delivered pursuant hereto, or in connection herewith, shall survive and continue in effect following the execution and delivery of this Agreement and the Closing Date.

Section 4.2.   Severability of Provisions.  If any provision hereof shall be held invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provision hereof.  To the extent permitted by Applicable Law, the parties hereto hereby agree that any provision hereof that renders any other term or provision hereof invalid or unenforceable in any respect shall be modified, but only to the extent necessary to avoid rendering such other term or provision invalid or unenforceable, and such modification shall be accomplished in the manner that most nearly preserves the benefit of the parties' bargain hereunder.

Section 4.3.   Effect of Headings.  The Table of Contents and the headings of the Articles, Sections, subsections, clauses and paragraphs hereof, are for convenience of reference only, and shall not affect the construction or interpretation of this Agreement.

Section 4.4.   Effectiveness; Counterparts.  This Agreement shall be effective as between the signatories hereto when executed and delivered by Enron, the Depositor, the Trust, Citibank, Wilmington Trust Company and the Initial Purchasers.  Each of the Indenture Trustee, the Collateral Agent, the Account Bank, the Securities Intermediary and each Initial Certificate Purchaser shall accede to its respective rights and obligations hereunder upon the execution and delivery by such Person of an agreement acceding hereto and agreeing to be bound by the provisions hereof, in the form attached hereto as Exhibit A. This Agreement may be executed in any number of counterparts, each of which shall be an original; but all such counterparts shall together constitute but one and the same instrument.

Section 4.5.   Governing Law.  (a) THE RIGHTS AND OBLIGATIONS OF EACH OF THE PARTIES UNDER THIS AGREEMENT SHALL, PURSUANT TO NEW YORK GENERAL OBLIGATIONS LAW SECTION 5-1401, BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

(b)      EACH OF ENRON, THE TRUST, THE COLLATERAL AGENT, THE DEPOSITOR, THE INITIAL PURCHASERS, THE INITIAL CERTIFICATE PURCHASERS AND THE INDENTURE TRUSTEE HEREBY IRREVOCABLY WAIVES TO THE FULLEST EXTENT PERMITTED BY LAW ALL RIGHT TO TRIAL BY JURY IN ANY PROCEEDING ARISING OUT OF OR RELATING DIRECTLY OR INDIRECTLY TO ANY OF THIS AGREEMENT OR ANY OTHER TRANSACTION DOCUMENTS OR THE

ECMM000064658

TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH OF ENRON, THE TRUST, THE COLLATERAL AGENT, THE DEPOSITOR, THE INITIAL PURCHASERS, THE INITIAL CERTIFICATE PURCHASERS AND THE INDENTURE TRUSTEE (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED EXPRESSLY OR OTHERWISE, THAT SUCH PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS PARAGRAPH.

Section 4.6.    <u>Amendments</u>.  This Agreement may be amended or modified only by the written consent of each of the parties hereto.

ECMM000064659

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first set forth above.

ENRON CORP.

By: _William W. Brown_

    Title: _William W. Brown_
    Name: _Deputy Treasurer_

STRUCTURED PRODUCTS CORP.

By: _____
    Title:
    Name:

YOSEMITE SECURITIES TRUST I

By:  WILMINGTON TRUST COMPANY,
      not in its individual capacity but solely as
      Trustee

    By: _____
       Title:
       Name:

CITIBANK, N.A.

By: _____
    Title:
    Name:

WILMINGTON TRUST COMPANY, not in its
individual capacity except as expressly provided
herein, but solely as Trustee

By: _____
    Title:
    Name:

DC1:#8047657v9

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first set forth above.

ENRON CORP.

By: _____
    Title:
    Name:

STRUCTURED PRODUCTS CORP.

By: _____
    Title: *Finance Officer*
    Name: *Matthew Meyers*

YOSEMITE SECURITIES TRUST I

By:  WILMINGTON TRUST COMPANY,
      not in its individual capacity but solely as
      Trustee

     By: _____
         Title:
         Name:

CITIBANK, N.A.

By: _____
    Title:
    Name:

WILMINGTON TRUST COMPANY, not in its
individual capacity except as expressly provided
herein, but solely as Trustee

By: _____
    Title:
    Name:

DC1:#8047657v8

ECMM000064661

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first set forth above.

ENRON CORP.

By: _____
    Title:
    Name:

STRUCTURED PRODUCTS CORP.

By: _____
    Title:
    Name:

YOSEMITE SECURITIES TRUST I

By:  WILMINGTON TRUST COMPANY,
     not in its individual capacity but solely as
     Trustee

    By: _____
      Title:
      Name:  JAMES P. LAWLER
             Vice President

CITIBANK, N.A.

By: _____
    Title:
    Name:

WILMINGTON TRUST COMPANY, not in its
individual capacity except as expressly provided
herein, but solely as Trustee

By: _____
    Title:
    Name:  JAMES P. LAWLER
          Vice President

DC1:#8047657v8

ECMM000064662

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first set forth above.

ENRON CORP.

By: _____
    Title:
    Name:

STRUCTURED PRODUCTS CORP.

By: _____
    Title:
    Name:

YOSEMITE SECURITIES TRUST I

By:  WILMINGTON TRUST COMPANY,
      not in its individual capacity but solely as
      Trustee

      By: _____
          Title:
          Name:

CITIBANK, N.A.

By: _____
    Title: *Managing Director*
    Name: *Fred Chapey*

WILMINGTON TRUST COMPANY, not in its
individual capacity except as expressly provided
herein, but solely as Trustee

By: _____
    Title:
    Name:

DC1:#8047657v8

ECMM000064663

DEUTSCHE BANK SECURITIES INC.
as Initial Purchaser

By: _____

    Title: _MANAGING DIRECTOR_

    Name: _Paul F. Christenson_

By: _____

    Title: Associate

    Name: _Benjamin Ditch_

DONALDSON, LUFKIN & JENRETTE
SECURITIES CORPORATION
as Initial Purchaser

By: _____

    Title:

    Name:

GREENWICH NATWEST LIMITED, as agent for
National Westminster Bank, Plc
as Initial Purchaser

By: _____

    Title:

    Name:

SALOMON SMITH BARNEY INC.
as Initial Purchaser

By: _____

    Title:

    Name:

ECMM000064664

DEUTSCHE BANK SECURITIES INC.
as Initial Purchaser


By: _____
    Title:
    Name:


By: _____
    Title:
    Name:

DONALDSON, LUFKIN & JENRETTE
SECURITIES CORPORATION
as Initial Purchaser


By: _____
    Title:
    Name:

GREENWICH NATWEST LIMITED, as agent for
National Westminster Bank, Plc
as Initial Purchaser


By: _____
    Title:
    Name:


SALOMON SMITH BARNEY INC.
as Initial Purchaser


By: _____
    Title:
    Name:

ECMM000064665

DEUTSCHE BANK SECURITIES INC.
as Initial Purchaser


By: _____
   Title:
   Name:


By: _____
   Title:
   Name:

DONALDSON, LUFKIN & JENRETTE
SECURITIES CORPORATION
as Initial Purchaser


By: _____
   Title:
   Name:

GREENWICH NATWEST LIMITED, as agent for
National Westminster Bank, Plc
as Initial Purchaser


By: _Kevin Howard_
   Title: SENIOR VICE PRESIDENT
   Name: KEVIN HOWARD


SALOMON SMITH BARNEY INC.
as Initial Purchaser


By: _____
   Title:
   Name:

DC1:#8047657v8

ECMM000064666

DEUTSCHE BANK SECURITIES INC.
as Initial Purchaser


By: _____
    Title:
    Name:


By: _____
    Title:
    Name:

DONALDSON, LUFKIN & JENRETTE
SECURITIES CORPORATION
as Initial Purchaser


By: _____
    Title:
    Name:

GREENWICH NATWEST LIMITED, as agent for
National Westminster Bank, Plc
as Initial Purchaser


By: _____
    Title:
    Name:


SALOMON SMITH BARNEY INC.
as Initial Purchaser

By: _Anne Clarke_
    Title: _Managing Director_
    Name: _Anne Clarke Wolff_

ECMM000064667

EXHIBIT A
to
Closing Agreement

[FORM OF ACCESSION AGREEMENT]

November ____, 1999

To      the Parties to the Closing Agreement
        dated as of _____, 1999
        among Enron Corp., Structured
        Products Corp., Yosemite Securities
        Trust I, Citibank, N.A. and the Initial
        Purchasers named herein (the
        "Closing Agreement")

        We refer to the Closing Agreement. Terms defined herein shall have their

respective defined meanings when used herein.

        We hereby accede to the rights and obligations of the Closing Agreement and

agree to be bound by the terms and conditions thereof with effect from and after the date of this

letter.

                            [UNITED STATES TRUST COMPANY
                            OF NEW YORK,
                                as Indenture Trustee, Collateral Agent,
                                Account Bank and Securities
                                Intermediary

                            By_____
                                Name:
                                Title:][1]


                            [NAME OF CERTIFICATE PURCHASER]

                            By_____
                                Name:
                                Title:][2]

---

[1]     Insert or delete as appropriate, and include appropriate details in inserted signature block.
[2]     Insert or delete as appropriate, and include appropriate details in inserted signature block.

NY3:#7227731v1

ECMM000064668