EXECUTION COPY

---

## CLOSING AGREEMENT

---

### YOSEMITE SECURITIES COMPANY LTD.

£200,000,000 8.75% Series 2000-A Linked Enron Obligations

£22,250,000
Equity Certificates

ENRON CORP.

YOSEMITE SECURITIES COMPANY LTD.

CITIBANK, N.A.

U.S. TRUST COMPANY OF NEW YORK,
as Indenture Trustee, Collateral Agent and Securities Intermediary

DEUTSCHE BANK LUXEMBOURG S.A.
as Paying Agent and Luxembourg Paying Agent

DEUTSCHE BANK A.G. LONDON BRANCH,
as Account Bank

BANKBOSTON, N.A., AS TRUST ADMINISTRATOR FOR LONG LANE MASTER TRUST IV,
as Initial Certificate Purchaser

and

SALOMON BROTHERS INTERNATIONAL LIMITED

THE ROYAL BANK OF SCOTLAND PLC

BARCLAYS BANK PLC
as Initial Purchasers

NY3:#7228945

AB000081030

Table of Contents

Page

ARTICLE 1 DEFINITIONS....................................................................1
    Section 1.1.    Definitions....................................................................1

ARTICLE 2 ACTIONS ON CLOSING DATE...............................................2
    Section 2.1.    Time and Place of Closing...........................................2
    Section 2.2.    Actions on Closing Date..............................................2

ARTICLE 3 CONDITIONS ..................................................................4
    Section 3.1.    Conditions Precedent to Transactions............................4

ARTICLE 4 MISCELLANEOUS ............................................................10
    Section 4.1.    Survival...................................................................10
    Section 4.2.    Severability of Provisions...........................................10
    Section 4.3.    Effect of Headings. ...................................................10
    Section 4.4.    Effectiveness; Counterparts. .......................................10
    Section 4.5.    Governing Law. ........................................................10
    Section 4.6.    Amendments. ..........................................................11

NY3:#7228945

AB000081031

## CLOSING AGREEMENT

This CLOSING AGREEMENT is made as of February 15, 2000 (this "Agreement") by and among ENRON CORP., individually and as Initial Certificate Purchaser, YOSEMITE SECURITIES COMPANY LTD., a limited liability company incorporated under the laws of Jersey, Channel Islands (the "Company"), CITIBANK, N.A. ("Citibank"), U.S. TRUST COMPANY OF NEW YORK, as Indenture Trustee, Collateral Agent and Securities Intermediary, DEUTSCHE BANK A.G. LONDON BRANCH, as Account Bank, DEUTSCHE BANK LUXEMBOURG S.A., as Paying Agent and Luxembourg Paying Agent, BANKBOSTON, N.A., as Trust Administrator for Long Lane Master Trust IV, as Initial Certificate Purchaser, SALOMON BROTHERS INTERNATIONAL LIMITED, THE ROYAL BANK OF SCOTLAND PLC and BARCLAYS BANK PLC, as Initial Purchasers (each of the parties to this Agreement, and each Person acceding to this Agreement as provided in Section 4.4, being referred to individually as a "Party" and, collectively, as the "Parties").

### W I T N E S S E T H:

WHEREAS, the Company has been formed on February 3, 2000;

WHEREAS, the Company will enter into an Indenture (the "Indenture"), dated as of the Closing Date, with the Indenture Trustee, which Indenture contemplates the issuance, from time to time in one or more series (each, a "Series"), of senior secured notes of the Company pursuant to the terms of such Indenture and one or more Indenture Supplements thereto;

WHEREAS, the Company will issue, as of the Closing Date, the Series 2000-A Linked Enron Obligations (the "Notes"), pursuant to the terms of the Indenture and the Indenture Supplement relating thereto;

WHEREAS, the Company will enter into, as of the Closing Date, an ISDA Master Agreement and a Schedule (together with Confirmations thereto executed from time to time, the "Citibank Swap") with Citibank; and

WHEREAS, in order to provide security for the Secured Obligations, the Company has agreed to Grant to the Collateral Agent, on behalf of and for the benefit of the Secured Parties, a security interest in the Collateral in the manner set forth in the Collateral Security Agreement dated as of the Closing Date (the "Collateral Security Agreement") and the Deed of Charge dated as of the Closing Date (the "Deed of Charge");

NOW, THEREFORE, in consideration of the premises and of the agreements herein contained, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto hereby agree as follows:

NY3:#7228945

AB000081032

## ARTICLE 1

### DEFINITIONS

Section 1.1.    <u>Definitions</u>.  Unless otherwise defined herein or unless the context shall otherwise require, capitalized terms used in this Agreement shall have the meanings assigned to such terms in Appendix A to the Collateral Security Agreement, and the Principles of Interpretation set forth in Appendix A to the Collateral Security Agreement shall apply to the terms defined herein and in such Appendix A.  In addition, the following terms as used herein shall have the following respective meanings:                             .

"<u>Closing Date Documents</u>" shall mean each Transaction Document entered into or required to be entered into on or prior to the Closing Date, the Certificate Purchase Agreement and the Note Purchase Agreement.

## ARTICLE 2

### ACTIONS ON CLOSING DATE

Section 2.1.    <u>Time and Place of Closing</u>.  The closing of the transactions described in Section 2.2 hereof shall commence at 9:00 a.m., London time, on the Closing Date at the offices of Milbank, Tweed, Hadley & McCloy LLP, Dashwood House, 69 Old Broad Street, London EC2M 1QS England, or at such other time and at such other location as shall be agreed by the parties hereto.

Section 2.2.    <u>Actions on Closing Date</u>.  On or before the Closing Date, the following transactions shall be consummated (if on the Closing Date, simultaneously, unless otherwise specified herein or in the other Transaction Documents or Closing Date Documents), subject to the terms and conditions hereof and of the other Closing Date Documents and for each Party, to the extent such Party is intended to be benefited thereby, on the basis of the representations and warranties set forth in the Transaction Documents and the other Closing Date Documents:

(a)    <u>The Company</u>.

(i)    The Company shall adopt its Memorandum and Articles of Association.

(ii)    The Company shall enter into the Certificate Purchase Agreement.

(iii)    Not later than 11:00 a.m., London time (or such other time as may be agreed among the Parties), on the Closing Date, the Company shall allot, issue and deliver the Certificates under its Memorandum and Articles of Association and pursuant to the Certificate Purchase Agreement to the Initial Certificate Purchasers, pursuant to instructions of the Initial Certificate Purchasers and against receipt of the subscription price of the Certificates.

AB000081033

(iv)    The Company shall obtain all necessary consents required by the Jersey Financial Services Commission to market and issue the Notes.

(v)    Not later than 11:00 a.m., London time (or such other time as may be agreed among the Parties), on the Closing Date, the Company shall issue and deliver to Deutsche Bank Luxembourg S.A., as common depositary for Morgan Guaranty Trust Company of New York, Brussels Office, as operator of the Euroclear System and CSB, pursuant to the instructions of the Initial Purchasers and against receipt of the Purchase Price of the Notes (as such term is defined in the Note Purchase Agreement), a temporary global note in bearer form without coupons or talons attached, representing the aggregate principal amount of Notes to be sold in reliance on Regulation S (the "Temporary Global Note") and a permanent global note (the "Permanent Global Note") in bearer form without coupons or talons attached, to be exchanged for the Temporary Global Note in accordance with its terms.

(vi)    The Company shall use the proceeds of the sale of the Notes and the Certificates to purchase Company Investments.

(vii)    The Company shall enter into the Collateral Security Agreement, the Deed of Charge, the Citibank Swap and the other Closing Date Documents to which it is a party, and shall Grant security over its rights under the Citibank Swap, together with its rights in the other Collateral, to the Collateral Agent pursuant to the terms and conditions of the Collateral Security Agreement and the Deed of Charge.

(b)    <u>The Indenture Trustee.</u>

(i)    The Indenture Trustee shall enter into the Indenture and the Indenture Supplement for the Notes and shall authenticate (either directly or through an Authenticating Agent) the Notes thereunder.

(ii)    The Indenture Trustee shall enter into the Collateral Security Agreement and the other Closing Date Documents to which the Indenture Trustee is a party.

(c)    <u>Enron</u>.  Enron shall enter into the Note Purchase Agreement and the Certificate Purchase Agreement.

(d)    <u>Citibank</u>.  Citibank shall enter into the Citibank Swap and the Collateral Security Agreement and shall issue the Confirmations under the Citibank Swap with respect to the Company Investments purchased by the Company with the proceeds of the sale of the Notes and the Certificates.

(e)    <u>Initial Certificate Purchasers</u>.  The Initial Certificate Purchasers shall enter into the Certificate Purchase Agreement with the Company.  Against receipt of the Certificates, the Initial Certificate Purchasers shall pay or cause to be paid to the Company, in immediately available funds, the purchase price of the Certificates in the

AB000081034

aggregate amount of £22,250,000, without deduction for commissions or expenses, in pounds sterling, to the account or accounts as the Company shall have specified by written notice to the Initial Certificate Purchasers, not later than the Closing Date.

(f)    Initial Purchasers.

(i)    The Initial Purchasers shall enter into the Note Purchase Agreement with the Company. Against delivery to the common depositary for Euroclear and CSB of the Temporary Global Note issued on the Closing Date, the Initial Purchasers will pay or cause to be paid to the Company in immediately available funds the Purchase Price (as such term is defined in the Note Purchase Agreement) in the aggregate amount of £200,000,000, without deduction for commissions or expenses, in pounds sterling to the account or accounts as the Company shall have specified by written notice to the Initial Purchasers, not later than the Closing Date.

(ii)    The Initial Purchasers shall instruct Euroclear and CSB as to the allocation of interests in the Temporary Global Note among accounts of Euroclear's and CSB's participants on behalf of purchasers of beneficial interests in the Notes.

(g)    Collateral Agent. The Collateral Agent shall enter into the Collateral Security Agreement and the Deed of Charge.

(h)    Account Bank. The Account Bank shall enter into the Collateral Security Agreement and the Deed of Charge.

(i)    Paying Agent. The Paying Agent shall execute an agreement pursuant to Section 2.06(b) of the Indenture.

ARTICLE 3

CONDITIONS

Section 3.1.    Conditions Precedent to Transactions. The obligation of each Party to enter into the transactions described in Section 2.2 hereof on the Closing Date shall be subject to the satisfaction (or waiver by such Party) on or prior to the Closing Date of the following conditions precedent:

(a)    Closing Date Documents. The form of each of the Collateral Security Agreement, the Deed of Charge, the Citibank Swap, the Indenture and the Indenture Supplement for the Notes shall be satisfactory to such Party. The Note Purchase Agreement and each of the other Closing Date Documents entered into or required to be entered into on or prior to the Closing Date shall be satisfactory to such Party and shall remain in full force and effect. In addition, the Indenture Trustee shall have received fully executed copies of each of the Transaction Documents to which the Company is a party (other than the Certificates, the

AB000081035

Indenture, the Indenture Supplement and the Notes), certified by the Company as being true, correct and complete copies of such Transaction Documents on the Closing Date.

(b)     <u>Authorization, Execution and Delivery of Documents</u>. Each of the Closing Date Documents shall have been duly authorized, executed and delivered by each of the parties thereto (other than such Party).  Such Party shall have received a true and correct copy of each Transaction Document (not furnished in original form) entered into or required to be entered into on or prior to the Closing Date, including without limitation all amendments and supplements to each such Transaction Document, and, if such Party is a party to any other Closing Date Document, of such Closing Date Document.

(c)     <u>Collateral</u>.  All actions necessary, in the reasonable opinion of such Party, in order to effectively establish and create a first priority Lien and perfected security interest in the Collateral under the Collateral Security Agreement and a Lien and perfected security interest in the Collateral Accounts under the Deed of Charge in favor of the Collateral Agent, subject, in each case, only to Liens arising under or permitted by the Transaction Documents, shall have been duly taken (or provisions therefor shall have been made), including without limitation, the making of all conveyances, registrations and filings (other than filings required in the United Kingdom in respect of the Deed of Charge and the Collateral Security Agreement).

(d)     <u>Opinions</u>.  Opinions addressed (except as otherwise specified in such opinion) to the Collateral Agent, the Indenture Trustee, the Initial Purchasers, the Company, Citibank, the Account Bank and the Initial Certificate Purchasers, dated the Closing Date, of the following counsel shall have been delivered to the applicable addressees, each such opinion to be in form and scope and otherwise reasonably satisfactory to the recipients and their counsel:

(i)      Vinson & Elkins LLP, counsel to Enron, as to the Closing Agreement, Certificate Purchase Agreement and Note Purchase Agreement;

(ii)     Internal counsel of Enron as to the Closing Agreement, Certificate Purchase Agreement and Note Purchase Agreement;

(iii)    Vinson & Elkins LLP, counsel to Enron, as to nonconsolidation;

(iv)    Vinson & Elkins LLP, counsel to Enron, as to 10(b)(5) matters;

(v)     Milbank, Tweed, Hadley & McCloy LLP, special New York counsel to the Initial Purchasers, as to the Indenture, the Notes, security interests and perfection;

(vi)    Milbank, Tweed, Hadley & McCloy LLP, special New York counsel to the Initial Purchasers, as to 10(b)(5) matters;

(vii)   Milbank, Tweed, Hadley & McCloy LLP, special New York counsel to the Initial Purchasers, as to U.S. tax matters;

(viii)  Slaughter and May, special English counsel to Enron, as to U.K. tax matters, security interests and perfection under the Deed of Charge and securities law matters;

AB000081036

(ix)     Jones, Day, Reavis & Pogue, special counsel for the Indenture Trustee and the Collateral Agent;

(x)     Mourant du Feu & Jeune, special Jersey counsel to Enron and the Company, as to the Transaction Documents, security interests and perfection, Jersey, Channel Islands tax matters, and disclosure matters; and

(xi)     Crills Advocates, special Jersey counsel to the Initial Purchasers, as to the Transaction Documents, security interests and perfection, Jersey, Channel Islands tax matters and disclosure matters.

(e)     <u>Conditions Precedent to Issuance of Notes</u>.  The satisfaction (or waiver by the Indenture Trustee) in accordance with the Indenture and the Note Purchase Agreement of all of the conditions precedent to the issuance of the Notes.

(f)     <u>Conditions Precedent to Purchase of Notes</u>.  The satisfaction (or waiver by the Initial Purchasers) of all of the conditions precedent to the closing of the transactions contemplated by the Indenture and the Note Purchase Agreement with respect to the Notes and no termination of the Note Purchase Agreement pursuant to Section 13 thereof shall have occurred.

(g)     <u>Conditions Precedent to Purchase of Certificates</u>.  The satisfaction (or waiver by the Initial Certificate Purchasers) of all of the conditions precedent to the purchase of the Certificates pursuant to the Certificate Purchase Agreement.

(h)     <u>Closing Certificates</u>.

(i)     On the Closing Date, such Party shall have received a certificate of each of Enron, the Company, the Indenture Trustee, the Collateral Agent, the Account Bank and Citibank, dated the Closing Date, in form and substance reasonably satisfactory to the receiving Party, certifying (A) that the Closing Date Documents to which such certifying Party is a party have been duly executed and delivered by such certifying Party and are in full force and effect with respect to such Party, and (B) such certifying Party has satisfied all conditions precedent contained in the Closing Date Documents to which it is a party required to be satisfied by it (that have not been waived) on or prior to the Closing Date.

(ii)     On the Closing Date, such Party shall have received a certificate of each of Enron, the Company, the Indenture Trustee, the Account Bank and Citibank, dated the Closing Date, in form and substance reasonably satisfactory to the receiving Party, attaching and certifying as of the Closing Date as to (A) the certifying Party's Charter Documents (other than Citibank), (B) the resolutions of the certifying Party's Board of Directors or other governing body, if applicable, duly authorizing the certifying Party's execution, delivery and performance of each Closing Date Document and each other Transaction Document to which it is or is to be a party and each other document required to be executed and delivered by it in accordance with the provisions hereof or thereof and (C) the incumbency and signature of the Persons authorized to execute and deliver, as may be required hereunder, documents on its behalf in connection with the transactions

AB000081037

contemplated hereby and by the other Transaction Documents and Closing Date Documents.

(iii)     On the Closing Date, each such Party that is intended to be the beneficiary of representations and warranties of Enron, the Company, the Indenture Trustee, the Collateral Agent, the Account Bank or Citibank, shall have received a certificate of each applicable Person, dated the Closing Date, in form and substance reasonably satisfactory to the receiving Party, certifying (A) the representations and warranties of the certifying Party intended to be made for the benefit of the receiving Party set forth in each Transaction Document and each other Closing Date Document to be true and correct on and as of the Closing Date (both immediately prior to the consummation of the transactions intended to occur on the Closing Date and also after giving effect thereto) in all material respects as if made on and as of such date (or, if stated to have been made solely as of an earlier date, were true and correct as of such date); (B) no Default, Indenture Event of Default or Swap Event by the certifying Party has occurred and is continuing; (C) there are no actions, suits, investigations or proceedings at law or in equity by or before any Governmental Authority pending or threatened against the certifying Party, and there shall not have been issued or proposed to be issued any orders, judgments or decrees by any Governmental Authority against the certifying Party, to set aside, restrain, enjoin or prevent the execution, delivery or performance of any of the Transaction Documents or any of the other Closing Date Documents to which the certifying Party is a party or the consummation of the transactions contemplated thereby; and (D) the transactions contemplated hereby and by each of the other Transaction Documents and other Closing Date Documents will not violate any Applicable Law applicable to the certifying Party in effect as of the Closing Date and will not subject the certifying Party to any Tax, penalty or liability under or pursuant to any Applicable Law applicable to the certifying Party in effect as of the Closing Date.

(iv)     On the Closing Date, such Party shall have received a certificate of the Company dated the Closing Date in form and substance reasonably satisfactory to the Indenture Trustee and counsel for the Initial Purchasers to the effect that immediately before and immediately after the issuance of the Notes on the Closing Date no Default, Swap Event or Indenture Event of Default with respect to the Notes has occurred and is continuing.

(i)     <u>Fees and Expenses</u>.  To the extent Enron has received an invoice for such fees and expenses not less than two Business Days prior to the Closing Date, Enron shall have paid, or provided for payment of, (i) the fees and expenses payable to the Indenture Trustee, the Collateral Agent, the Management Company, the Account Bank, Citibank, Enron, the Initial Certificate Purchasers, the Initial Purchasers, the Luxembourg Paying Agent, the Paying Agent and the Rating Agencies (including the reasonable fees and expenses of counsel to such Persons) and (ii) the reasonable fees and expenses of counsel to the Initial Certificate Purchasers on the Closing Date.

AB000081038

(j)    Certain Facts and Circumstances.

(i)    The representations and warranties of each other Party set forth in each Transaction Document and each other Closing Date Document that are intended to be made for the benefit of such Party shall be true and correct on and as of the Closing Date (both immediately prior to the consummation of the transactions intended to occur on the Closing Date and also after giving effect thereto) in all material respects as if made on and as of such date (or, if stated to have been made solely as of an earlier date, were true and correct as of such date).

(ii)    No Default, Indenture Event of Default or Swap Event shall have occurred and be continuing.

(iii)    No change in the condition (financial or otherwise) of Enron shall have occurred that could reasonably be expected to result in a Material Adverse Effect on Enron and no other act, event or circumstance shall have occurred which has had or could reasonably be expected to have a Material Adverse Effect on Enron.

(iv)    There shall be no actions, suits, investigations or proceedings at law or in equity by or before any Governmental Authority pending or threatened, and there shall not have been issued or proposed to be issued any orders, judgments or decrees by any Governmental Authority, to set aside, restrain, enjoin or prevent the execution, delivery or performance of any of the Transaction Documents or any of the other Closing Date Documents or the consummation of the transactions contemplated thereby.

(v)    The transactions contemplated hereby and by each of the other Transaction Documents and other Closing Date Documents will not violate any Applicable Law in effect as of the Closing Date and will not subject any Party to any Tax, penalty or liability under or pursuant to any Applicable Law in effect as of the Closing Date.

(vi)    No invalidation shall have occurred of Regulation S under the Securities Act or any regulation or rule thereunder by any court or any withdrawal or proposed withdrawal of any rule or regulation under the Securities Act or the Exchange Act by the SEC or any amendment or proposed amendment thereof by the SEC which, in the judgment of the Initial Purchasers, would materially impair the ability of the Initial Purchasers to purchase, hold or effect resales of the Notes as contemplated in the Indenture.

(k)    Rating of Notes.  The Indenture Trustee, the Company, Citibank and the Initial Purchasers shall have received (i) a letter from Moody's rating the Notes "Baa2" or better and (ii) a letter from S&P rating the Notes "BBB+" or better, in each case, in form and substance reasonably satisfactory to the Indenture Trustee, the Company, Citibank and the Initial Purchasers.

(l)    Financing Statements.  The Collateral Agent shall have received Financing Statements signed by the Company, in form and substance reasonably satisfactory to the Collateral Agent and the Secured Parties.

NY3:#7228945                                    8

AB000081039

(m)    <u>Documents to be Delivered in Respect of Enron Investments</u>.

(i)    For each Enron Investment to be delivered on the Closing Date, the Company and Citibank shall have received:

(A)    originals of any promissory note or other evidence of indebtedness, duly endorsed to the order of the Collateral Agent (such originals to be delivered only to the Collateral Agent as secured party),

(B)    copies certified by Enron as true, complete and correct of all documents evidencing, securing or otherwise relating to such Enron Investment as in effect on the Closing Date,

(C)    copies certified by Enron as true, complete and correct of all documents and notices required by the terms of such Enron Investment notifying the obligors of such transfer,

(D)    evidence satisfactory to each of the Company and Citibank that such Enron Investment is a valid and binding obligation of the obligors thereunder and that no default or event of default exists with respect to such Enron Investment, and

(E)    such other evidence satisfactory to the Company and Citibank that all consents necessary or advisable (in the reasonable opinion of the Company and Citibank) to permit such Enron Investment to be transferred to the Company and to permit the Company to grant a security interest therein to the Collateral Agent for the benefit of the Secured Parties, enforceable as a security interest against all other creditors of the Company and any Persons purporting to purchase any such Enron Investment from the Company, and to permit the Collateral Agent to exercise remedies pursuant to such security interest (including but not limited to the sale of such Enron Investment), have been obtained and are in full force and effect.

(ii)    In addition, for each Company Investment to be delivered on the Closing Date, the Company and Citibank shall have received all assignment agreements and other documents and instruments evidencing the transfer of such Company Investment to the Company.

(n)    <u>Company Orders</u>. For each Company Investment to be delivered on the Closing Date, Citibank shall have (i) proffered all Confirmations required under the Citibank Swap and (ii) received copies certified by the Company as true, complete and correct of all Company Orders required to be delivered to the Collateral Agent pursuant to Section 3.2 of the Collateral Security Agreement.

(o)    <u>Euroclear and CSB</u>. The Notes shall have been accepted for clearance of secondary market trading by Morgan Guaranty Trust Company of New York, Brussels office, as operator of Euroclear and CSB.

AB000081040

(p)    Auditor's Letter.  The Parties shall have received from Arthur Andersen LLP an auditor's comfort letter, and a "bring-down" of such comfort letter to the Closing Date, regarding certain Enron financial information.

(q)    Jersey Consents.  Consents pursuant to the Control of Borrowing (Jersey) Order 1958 by the Jersey Financial Services Commission and the Companies (General Provisions)(Jersey) Order 1992 shall have been given by the proper Jersey, Channel Island authorities and have not been withdrawn.

(r)    Additional Documents and Certificates, Etc.  The Indenture Trustee, the Collateral Agent, the Company, Citibank, Enron, the Initial Purchasers and the Initial Certificate Purchasers shall have received such other documents, agreements, certificates and opinions as any such Person or their counsel may reasonably request.

## ARTICLE 4

## MISCELLANEOUS

Section 4.1.    Survival.  All agreements and indemnities contained in this Agreement and in any agreement, document or certificate delivered pursuant hereto, or in connection herewith, shall survive and continue in effect following the execution and delivery of this Agreement and the Closing Date.

Section 4.2.    Severability of Provisions.  If any provision hereof shall be held invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provision hereof.  To the extent permitted by Applicable Law, the parties hereto hereby agree that any provision hereof that renders any other term or provision hereof invalid or unenforceable in any respect shall be modified, but only to the extent necessary to avoid rendering such other term or provision invalid or unenforceable, and such modification shall be accomplished in the manner that most nearly preserves the benefit of the parties' bargain hereunder.

Section 4.3.    Effect of Headings.  The Table of Contents and the headings of the Articles, Sections, subsections, clauses and paragraphs hereof, are for convenience of reference only, and shall not affect the construction or interpretation of this Agreement.

Section 4.4.    Effectiveness; Counterparts.  This Agreement shall be effective as between the signatories hereto when executed and delivered by Enron, the Company, Citibank, the Indenture Trustee, the Collateral Agent, the Account Bank, the Paying Agent, the Luxembourg Paying Agent, each initial Certificate Purchaser and each Initial Purchaser.  This Agreement may be executed in any number of counterparts, each of which shall be an original; but all such counterparts shall together constitute but one and the same instrument.

Section 4.5.    Governing Law.  (a) THE RIGHTS AND OBLIGATIONS OF EACH OF THE PARTIES UNDER THIS AGREEMENT SHALL, PURSUANT TO NEW YORK GENERAL OBLIGATIONS LAW SECTION 5-1401, BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

AB000081041

(b)    EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES TO THE FULLEST EXTENT PERMITTED BY LAW ALL RIGHT TO TRIAL BY JURY IN ANY PROCEEDING ARISING OUT OF OR RELATING DIRECTLY OR INDIRECTLY TO ANY OF THIS AGREEMENT OR ANY OTHER TRANSACTION DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED EXPRESSLY OR OTHERWISE, THAT SUCH PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS PARAGRAPH.

Section 4.6.    <u>Amendments</u>.  This Agreement may be amended or modified only by the written consent of each of the parties hereto.

AB000081042

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first set forth above.

ENRON CORP.,
Individually and as Initial Certificate Purchaser

By: _William W. Brown_

    Title: _William W. Brown_

    Name: _Deputy Treasurer_

YOSEMITE SECURITIES COMPANY LTD.

By: _____

    Title:

    Name:

CITIBANK, N.A.

By: _____

    Title:

    Name:

U.S. TRUST COMPANY OF NEW YORK,
    as Indenture Trustee, Collateral Agent and
    Securities Intermediary

By_____

    Title:

    Name:

DEUTSCHE BANK LUXEMBOURG, S.A.
    as Paying Agent and Luxembourg Paying Agent

By_____

    Title:

    Name:

NY3:#7228945v10

AB000081043

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first set forth above.

ENRON CORP.,
Individually and as Initial Certificate Purchaser

By: _____
    Title:
    Name:

YOSEMITE SECURITIES COMPANY LTD.

By: _____
    Title: DIRECTOR
    Name: NIGEL A LE QUESNE.

CITIBANK, N.A.

By: _____
    Title:
    Name:

U.S. TRUST COMPANY OF NEW YORK,
    as Indenture Trustee, Collateral Agent and
    Securities Intermediary

By _____
    Title:
    Name:

DEUTSCHE BANK LUXEMBOURG, S.A.
    as Paying Agent and Luxembourg Paying Agent

By _____
    Title:
    Name:

AB000081044

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first set forth above.

ENRON CORP.,
Individually and as Initial Certificate Purchaser

By: _____
    Title:
    Name:

YOSEMITE SECURITIES COMPANY LTD.

By: _____
    Title:
    Name:

CITIBANK, N.A.

By: _____
    Title:
    Name:

U.S. TRUST COMPANY OF NEW YORK,
    as Indenture Trustee, Collateral Agent and
    Securities Intermediary

By_____
    Title:
    Name:

DEUTSCHE BANK LUXEMBOURG, S.A.
    as Paying Agent and Luxembourg Paying Agent

By_____
    Title:
    Name:

NY3:#7228945v9

AB000081045

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first set forth above.

ENRON CORP.,
Individually and as Initial Certificate Purchaser

By: _____
    Title:
    Name:

YOSEMITE SECURITIES COMPANY LTD.

By: _____
    Title:
    Name:

CITIBANK, N.A.

By: _____
    Title:
    Name:

U.S. TRUST COMPANY OF NEW YORK,
    as Indenture Trustee, Collateral Agent and
    Securities Intermediary

By _____
    Title:
    Name:    THOMAS MUSARRA
               SENIOR VICE PRESIDENT

DEUTSCHE BANK LUXEMBOURG, S.A.
    as Paying Agent and Luxembourg Paying Agent

By _____
    Title:
    Name:

NY3:#7228945v9

AB000081046

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first set forth above.

ENRON CORP.,
Individually and as Initial Certificate Purchaser

By: _____
    Title:
    Name:

YOSEMITE SECURITIES COMPANY LTD.

By: _____
    Title:
    Name:

CITIBANK, N.A.

By: _____
    Title:
    Name:

U.S. TRUST COMPANY OF NEW YORK,
    as Indenture Trustee, Collateral Agent and
    Securities Intermediary

By _____
    Title:
    Name:

DEUTSCHE BANK LUXEMBOURG, S.A.
    as Paying Agent and Luxembourg Paying Agent

By _____
    Title: ASSOCIATE
    Name: K.D. BURFELD

AB000081047

DEUTSCHE BANK A.G. LONDON BRANCH,
as Account Bank

By _____
    Title: VP
    Name: MARK JONES

By _____
    Title: ASSOCIATE
    Name: F.O.B WIPER

SALOMON BROTHERS INTERNATIONAL
LIMITED
as Initial Purchaser


By: _____
    Title:
    Name:

THE ROYAL BANK OF SCOTLAND plc
as Initial Purchaser


By: _____
    Title:
    Name:

BARCLAYS BANK PLC
as Initial Purchaser


By: _____
    Title:
    Name:

AB000081048

- 2 -

DEUTSCHE BANK A.G. LONDON BRANCH,
    as Account Bank

By_____
        Title:
        Name:

By_____
        Title:
        Name:

SALOMON BROTHERS INTERNATIONAL
LIMITED
as Initial Purchaser

By: _____
        Title:
        Name:

THE ROYAL BANK OF SCOTLAND plc
as Initial Purchaser

By: _____
        Title:
        Name:

BARCLAYS BANK PLC
as Initial Purchaser

By: _____
        Title:
        Name:

AB000081049

- 2 -

DEUTSCHE BANK A.G. LONDON BRANCH,
  as Account Bank

By_____
     Title:
     Name:

By_____
     Title:
     Name:

SALOMON BROTHERS INTERNATIONAL
LIMITED
as Initial Purchaser


By: _____
     Title:
     Name:

THE ROYAL BANK OF SCOTLAND plc
as Initial Purchaser

By: _____
     Title: SENIOR SOLICITOR
     Name: ANDREW FREER

BARCLAYS BANK PLC
as Initial Purchaser


By: _____
     Title:
     Name:

NY3:#7228945v11

AB000081050

- 2 -

DEUTSCHE BANK A.G. LONDON BRANCH,
    as Account Bank

By_____
    Title:
    Name:

By_____
    Title:
    Name:

SALOMON BROTHERS INTERNATIONAL
LIMITED
as Initial Purchaser

By: _____
    Title:
    Name:

THE ROYAL BANK OF SCOTLAND plc
as Initial Purchaser

By: _____
    Title:
    Name:

BARCLAYS BANK PLC
as Initial Purchaser

By: _____
    Title:
    Name: **Richard Owen Cloke**
           AUTHORISED SIGNATORY
           BARCLAYS BANK PLC

NY3:#7228945v11

AB000081051