EXECUTION COPY

---

## CLOSING AGREEMENT

---

### ENRON EURO CREDIT LINKED NOTES TRUST

**€200,000,000**
**6.5% Enron Euro Credit Linked Notes due 2006**

**€22,500,000**
**Certificates**

**ENRON CORP.,**

**ENRON EURO CREDIT LINKED NOTES TRUST,**

**CITIBANK, N.A.,**
as Depositor of the Trust and Swap Counterparty

**WILMINGTON TRUST COMPANY,**
as Trustee

**UNITED STATES TRUST COMPANY OF NEW YORK,**
as Indenture Trustee and Collateral Agent

**DEUTSCHE BANK A.G. LONDON BRANCH,**
as Account Bank

and

**SALOMON BROTHERS INTERNATIONAL LIMITED,**
**UBS AG, ACTING THROUGH ITS BUSINESS GROUP UBS WARBURG,**
**CREDIT LYONNAIS S.A.,**
**THE ROYAL BANK OF SCOTLAND PLC,**
**BNP PARIBAS**
**and**
**SCOTIA CAPITAL INC.,**
as Initial Purchasers

ECMM000294059

# Table of Contents

ARTICLE 1 DEFINITIONS.................................................................................................2
Section 1.1.    Definitions.....................................................................................2
ARTICLE 2 ACTIONS ON CLOSING DATE.................................................................2
Section 2.1.    Time and Place of Closing.............................................................2
Section 2.2.    Actions on Closing Date................................................................2
ARTICLE 3 CONDITIONS ..............................................................................................2
Section 3.1.    Conditions Precedent to Transactions............................................4
ARTICLE 4 MISCELLANEOUS ......................................................................................4
Section 4.1.    Survival..........................................................................................9
Section 4.2.    Severability of Provisions..............................................................9
Section 4.3.    Effect of Headings. ......................................................................10
Section 4.4.    Effectiveness; Counterparts. ........................................................10
Section 4.5.    Governing Law. ...........................................................................10
Section 4.6.    Amendments. ...............................................................................11

NY3:#7264042v3

ECMM000294060

## CLOSING AGREEMENT

This CLOSING AGREEMENT is made as of May 17, 2001 (this "Agreement") by and among ENRON CORP., ENRON EURO CREDIT LINKED NOTES TRUST, a business trust created under the laws of the State of Delaware (the "Trust"), CITIBANK, N.A., as Depositor of the Trust and Swap Counterparty ("Citibank"), WILMINGTON TRUST COMPANY (in its individual capacity, "WTC" and as Trustee under the Enron Euro Credit Linked Notes Trust Agreement, "Trustee"), UNITED STATES TRUST COMPANY OF NEW YORK (as Indenture Trustee under the Indenture, "Indenture Trustee", and as Collateral Agent under the Collateral Security Agreement, "Collateral Agent"), DEUTSCHE BANK A.G. LONDON BRANCH (as Account Bank under the Collateral Security Agreement, "Account Bank"), and SALOMON BROTHERS INTERNATIONAL LIMITED, UBS AG, ACTING THROUGH ITS BUSINESS GROUP UBS WARBURG, CREDIT LYONNAIS S.A., THE ROYAL BANK OF SCOTLAND PLC, BNP PARIBAS and SCOTIA CAPITAL INC., as Initial Purchasers (each of the parties to this Agreement, and each Person acceding to this Agreement as provided in Section 4.4, being referred to individually as a "Party" and, collectively, as the "Parties").

## W I T N E S S E T H :

WHEREAS, the Trust has entered into an Indenture (the "Indenture"), dated as of the Closing Date, with the Indenture Trustee, which Indenture contemplates the issuance of senior secured notes of the Trust pursuant to the terms of such Indenture;

WHEREAS, the Trust will issue, as of the Closing Date, the Enron Euro Credit Linked Notes (the "Notes"), pursuant to the terms of the Indenture;

WHEREAS, the Trust will enter into, as of the Closing Date, an ISDA Master Agreement and a Schedule (together with the Confirmation thereto, the "Credit Swap") with Citibank; and

WHEREAS, in order to provide security for the Secured Obligations, the Trust has agreed to Grant to the Collateral Agent, on behalf of and for the benefit of the Secured Parties, a security interest in the Collateral in the manner set forth in the Collateral Security Agreement dated as of the Closing Date (the "Collateral Security Agreement") and the Deed of Charge dated as of the Closing Date (the "Deed of Charge");

NOW, THEREFORE, in consideration of the premises and of the agreements herein contained, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto hereby agree as follows:

ECMM000294061

ARTICLE 1

DEFINITIONS

Section 1.1.    Definitions.  Unless otherwise defined herein or unless the context shall otherwise require, capitalized terms used in this Agreement shall have the meanings assigned to such terms in Appendix A to the Collateral Security Agreement, and the Principles of Interpretation set forth in Appendix A to the Collateral Security Agreement shall apply to the terms defined herein and in such Appendix A.  In addition, the following terms as used herein shall have the following respective meanings:

"Closing Date Documents" shall mean each Transaction Document entered into or required to be entered into on or prior to the Closing Date, the Certificate Purchase Agreement and the Note Purchase Agreement.

ARTICLE 2

ACTIONS ON CLOSING DATE

Section 2.1.    Time and Place of Closing.  The closing of the transactions described in Section 2.2 hereof shall commence at 9:00 a.m., New York City time, on the Closing Date at the offices of Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, or at such other time and at such other location as shall be agreed by the parties hereto.

Section 2.2.    Actions on Closing Date.  On or before the Closing Date, the following transactions shall be consummated (if on the Closing Date, simultaneously, unless otherwise specified herein or in the other Transaction Documents or Closing Date Documents), subject to the terms and conditions hereof and of the other Closing Date Documents and for each Party, to the extent such Party is intended to be benefited thereby, on the basis of the representations and warranties set forth in the Transaction Documents and the other Closing Date Documents:

(a)    The Trust.

(i)    The Trust shall enter into the Trust Agreement.

(ii)    The Trust shall enter into the Certificate Purchase Agreement.

(iii)    Not later than 9:00 a.m., New York City time (or such other time as may be agreed among the Parties), on the Closing Date, the Trust shall issue and deliver the Certificates under the Trust Agreement and pursuant to the Certificate Purchase Agreement to the Initial Certificate Purchaser, pursuant to

2

ECMM000294062

instructions of the Initial Certificate Purchaser and against receipt of the purchase price of the Certificates.

(iv)    Not later than 9:00 a.m., New York City time (or such other time as may be agreed among the Parties), on the Closing Date, the Trust shall issue and deliver to the Common Depositary, as custodian for Euroclear and Clearstream, Luxembourg, pursuant to the instructions of the Initial Purchasers and against receipt of the Purchase Price of the Notes (as such term is defined in the Note Purchase Agreement), (i) one or more global certificates representing the aggregate principal amount of Notes to be sold in reliance on Regulation S (the "Regulation S Global Notes") and (ii) one or more global certificates representing the aggregate principal amount of Notes to be sold in reliance upon Rule 144A under the Securities Act (the "Rule 144A Global Notes" and together with the Regulation S Global Note, the "Global Notes"), in each case registered in the name of BT Globenet Nominees Limited as nominee for the Common Depositary.

(v)    The Trust shall use the proceeds of the sale of the Notes and the Certificates to purchase Trust Investments.

(vi)    The Trust shall enter into the Collateral Security Agreement, the Deed of Charge, the Credit Swap and the other Closing Date Documents to which it is a party, and shall grant its rights under the Credit Swap, together with its rights in the other Collateral, to the Collateral Agent pursuant to the terms and conditions of the Collateral Security Agreement and the Deed of Charge.

(b)    The Indenture Trustee.

(i)    The Indenture Trustee shall enter into the Indenture and shall authenticate the Notes thereunder.

(ii)    The Indenture Trustee shall enter into the Collateral Security Agreement and the other Closing Date Documents to which the Indenture Trustee is a party.

(c)    Enron.  Enron shall enter into the Note Purchase Agreement and the Certificate Purchase Agreement.

(d)    Depositor.  Citibank, as depositor of the Trust, shall enter into the Trust Agreement.

(e)    Citibank.  Citibank shall enter into the Credit Swap and the Collateral Security Agreement and shall issue the Confirmation under Credit Swap with respect to the Trust Investments purchased by the Trust with the proceeds of the sale of the Notes and the Certificates.

ECMM000294063

(f)    <u>Initial Certificate Purchaser</u>.  The Initial Certificate Purchaser shall enter into the Certificate Purchase Agreement with the Trust.  Against receipt of the Certificates, the Initial Certificate Purchaser shall pay or cause to be paid to the Trust, in immediately available funds, the purchase price of the Certificates in the aggregate amount of €22,500,000, without deduction for commissions or expenses, in Euros, to the account or accounts as the Trust shall have specified by written notice to the Initial Certificate Purchaser, not later than the Closing Date.

(g)    <u>Initial Purchasers</u>.

(i)    Against receipt of beneficial interests in the Notes issued on the Closing Date, the Initial Purchasers will pay or cause to be paid to the Trust in immediately available funds the Purchase Price (as such term is defined in the Note Purchase Agreement) in the aggregate amount of €200,000,000, without deduction for commissions or expenses, in Euros to the account or accounts as the Trust shall have specified by written notice to the Initial Purchasers, not later than the Closing Date.

(ii)    The Initial Purchasers shall instruct Euroclear and Clearstream, Luxembourg as to the allocation of interests in the Global Notes among accounts of Euroclear's and Clearstream, Luxembourg's participants on behalf of purchasers of beneficial interests in the Notes.

(h)    <u>Collateral Agent</u>.  The Collateral Agent shall enter into the Collateral Security Agreement and the Deed of Charge.

(i)    <u>Account Bank</u>.  The Account Bank shall enter into the Collateral Security Agreement and the Deed of Charge.


# ARTICLE 3

# CONDITIONS

Section 3.1.    <u>Conditions Precedent to Transactions</u>.  The obligation of each Party to enter into the transactions described in Section 2.2 hereof on the Closing Date shall be subject to the satisfaction (or waiver by such Party) on or prior to the Closing Date of the following conditions precedent:

(a)    <u>Closing Date Documents</u>.  The form of each of the Collateral Security Agreement, the Deed of Charge, the Credit Swap and the Indenture shall be satisfactory to such Party.  The Note Purchase Agreement and each of the other Closing Date Documents entered into or required to be entered into on or prior to the Closing Date shall be satisfactory to such Party and shall remain in full force and effect.  In addition, the Indenture Trustee shall have received fully executed copies of each of the Transaction Documents to which the Trust is a party (other than the Certificates, the Indenture, and the Notes), certified by the Trustee as being true, correct and complete copies of such Transaction Documents on the Closing Date.

(b)    <u>Authorization, Execution and Delivery of Documents</u>.  Each of the Closing Date Documents shall have been duly authorized, executed and delivered by each of the parties thereto (other than such Party).  Such Party shall have received a true and correct copy of each Transaction Document (not furnished in original form) entered into or required to be entered into on or prior to the Closing Date, including, without limitation, all amendments and supplements to each such Transaction Document, and, if such Party is a party to any other Closing Date Document, of such Closing Date Document.

(c)    <u>Collateral</u>.  All actions necessary, in the reasonable opinion of such Party, in order to effectively establish and create a first priority Lien and perfected security interest in the Collateral under the Collateral Security Agreement and a Lien and perfected security interest in the Collection Account under the Deed of Charge in favor of the Collateral Agent, subject, in each case, only to Liens arising under or permitted by the Transaction Documents, shall have been duly taken (or provisions therefor shall have been made), including without limitation, the making of all conveyances, registrations and filings (other than filings required in the United Kingdom in respect of the Deed of Charge and the Collateral Security Agreement).

(d)    <u>Opinions</u>.  Opinions addressed (except as otherwise specified in such opinion) to the Collateral Agent, the Indenture Trustee, the Initial Purchasers, the Trustee, Citibank and the Initial Certificate Purchaser, dated the Closing Date, of the following counsel shall have been delivered to the applicable addressees, each such opinion to be in form and scope and otherwise reasonably satisfactory to the recipients and their counsel:

(i)    Vinson & Elkins LLP, counsel to Enron, as to the Closing Agreement, Certificate Purchase Agreement and Note Purchase Agreement;

(ii)    Internal counsel of Enron as to the Closing Agreement, Certificate Purchase Agreement and Note Purchase Agreement;

(iii)    Vinson & Elkins LLP, counsel to Enron, as to 10(b)(5) matters;

(iv)    Milbank, Tweed, Hadley & McCloy LLP, special New York counsel to the Initial Purchasers, as to the Indenture, the Notes, security interests and perfection;

(v)    Milbank, Tweed, Hadley & McCloy LLP, special New York counsel to the Initial Purchasers, as to security interests and perfection under the Deed of Charge;

(vi)    Milbank, Tweed, Hadley & McCloy LLP, special New York counsel to the Initial Purchasers, as to 10(b)(5) matters;

(vii)    Milbank, Tweed, Hadley & McCloy LLP, special New York counsel to the Initial Purchasers, as to tax matters;

(viii)  Richards, Layton & Finger, special Delaware counsel;

(ix)  Jones, Day, Reavis and Pogue, special counsel for the Indenture Trustee and the Collateral Agent; and

(x)  Seward & Kissel LLP, special counsel for the Account Bank.

(e)  <u>Conditions Precedent to Issuance of Notes</u>.  The satisfaction (or waiver by the Trustee) in accordance with the Indenture and the Note Purchase Agreement of all of the conditions precedent to the issuance of the Notes.

(f)  <u>Conditions Precedent to Purchase of Notes</u>.  The satisfaction (or waiver by the Initial Purchasers) of all of the conditions precedent to the closing of the transactions contemplated by the Indenture and the Note Purchase Agreement with respect to the Notes and no termination of the Note Purchase Agreement pursuant to Section 13 thereof shall have occurred.

(g)  <u>Conditions Precedent to Issuance of Certificates</u>.  The satisfaction (or waiver by the Trustee) in accordance with the Trust Agreement and the Certificate Purchase Agreement of all of the conditions precedent to the issuance of the Certificates.

(h)  <u>Conditions Precedent to Purchase of Certificates</u>.  The satisfaction (or waiver by the Initial Certificate Purchaser) of all of the conditions precedent to the purchase of the Certificates pursuant to the Certificate Purchase Agreement.

(i)  <u>Closing Certificates</u>.

(i)  On the Closing Date, such Party shall have received a certificate of each of Enron, the Trust, the Indenture Trustee, the Collateral Agent, the Account Bank and Citibank, dated the Closing Date, in form and substance reasonably satisfactory to the receiving Party, certifying (A) that the Closing Date Documents to which such certifying Party is a party have been duly executed and delivered by such certifying Party and are in full force and effect with respect to such Party, and (B) such certifying Party has satisfied all conditions precedent contained in the Closing Date Documents to which it is a party required to be satisfied by it (that have not been waived) on or prior to the Closing Date.

(ii)  On the Closing Date, such Party shall have received a certificate of each of Enron, Wilmington Trust Company, United States Trust Company of New York, Deutsche Bank A.G. London Branch and Citibank, dated the Closing Date, in form and substance reasonably satisfactory to the receiving Party, attaching and certifying as of the Closing Date as to (A) the certifying Party's Charter Documents (other than Citibank), (B) the resolutions of the certifying Party's Board of Directors or other governing body, if applicable, duly authorizing the certifying Party's execution, delivery and performance of each Closing Date Document and each other Transaction Document to which it is or is to be a party and each other document required to be executed and delivered by it in

ECMM000294066

accordance with the provisions hereof or thereof and (C) the incumbency and signature of the Persons authorized to execute and deliver, as may be required hereunder, documents on its behalf in connection with the transactions contemplated hereby and by the other Transaction Documents and Closing Date Documents.

       (iii)    On the Closing Date, such Party that is intended to be the beneficiary of representations and warranties of Enron, the Trust, the Indenture Trustee, the Collateral Agent, the Account Bank or Citibank, shall have received a certificate of such Person, dated the Closing Date, in form and substance reasonably satisfactory to the receiving Party, certifying (A) the representations and warranties of the certifying Party made for the benefit of the receiving Party set forth in each Transaction Document and each other Closing Date Document are true and correct on and as of the Closing Date (both immediately prior to the consummation of the transactions intended to occur on the Closing Date and also after giving effect thereto) in all material respects as if made on and as of such date (or, if stated to have been made solely as of an earlier date, were true and correct as of such date); (B) no Default, Indenture Event of Default or Swap Event by the certifying Party has occurred and is continuing; (C) there are no actions, suits, investigations or proceedings at law or in equity by or before any Governmental Authority pending or threatened against the certifying Party; and there shall not have been issued or proposed to be issued any orders, judgments or decrees by any Governmental Authority against the certifying Party, to set aside, restrain, enjoin or prevent the execution, delivery or performance of any of the Transaction Documents or any of the other Closing Date Documents to which the certifying Party is a party or the consummation of the transactions contemplated thereby; and (D) the transactions contemplated hereby and by each of the other Transaction Documents and other Closing Date Documents will not violate any Applicable Law applicable to the certifying Party in effect as of the Closing Date and will not subject the certifying Party to any Tax, penalty or liability under or pursuant to any Applicable Law applicable to the certifying Party in effect as of the Closing Date.

       (iv)    On the Closing Date, such Party shall have received a certificate of the Trust dated the Closing Date in form and substance reasonably satisfactory to the Indenture Trustee and counsel for the Initial Purchasers to the effect that immediately before and immediately after the issuance of the Notes on the Closing Date no Default, Swap Event or Indenture Event of Default with respect to the Notes has occurred and is continuing.

       (j)    <u>Fees and Expenses</u>.  To the extent Enron has received an invoice for such fees and expenses not less than two Business Days prior to the Closing Date, Enron shall have paid, or provided for payment of, (i) the fees and expenses payable to the Indenture Trustee, the Collateral Agent, the Account Bank, the Trustee, Citibank, Enron, the Initial Purchasers, Deutsche Bank Luxembourg S.A., as Luxembourg paying and transfer agent, and the Rating

ECMM000294067

Agencies (including the reasonable fees and expenses of counsel to such Persons) and (ii) the reasonable fees and expenses of counsel to the Initial Certificate Purchaser on the Closing Date.

(k)    <u>Certain Facts and Circumstances</u>.

(i)    The representations and warranties of each other Party set forth in each Transaction Document and each other Closing Date Document for the benefit of such Party shall be true and correct on and as of the Closing Date (both immediately prior to the consummation of the transactions intended to occur on the Closing Date and also after giving effect thereto) in all material respects as if made on and as of such date (or, if stated to have been made solely as of an earlier date, were true and correct as of such date).

(ii)    No Default, Indenture Event of Default or Swap Event shall have occurred and be continuing.

(iii)    No change in the condition (financial or otherwise) of Enron shall have occurred that could reasonably be expected to result in a Material Adverse Effect on Enron and no other act, event or circumstance shall have occurred which has had or could reasonably be expected to have a Material Adverse Effect on Enron.

(iv)    There shall be no actions, suits, investigations or proceedings at law or in equity by or before any Governmental Authority pending or threatened, and there shall not have been issued or proposed to be issued any orders, judgments or decrees by any Governmental Authority, to set aside, restrain, enjoin or prevent the execution, delivery or performance of any of the Transaction Documents or any of the other Closing Date Documents or the consummation of the transactions contemplated thereby.

(v)    The transactions contemplated hereby and by each of the other Transaction Documents and other Closing Date Documents will not violate any Applicable Law in effect as of the Closing Date and will not subject any Party to any Tax, penalty or liability under or pursuant to any Applicable Law in effect as of the Closing Date.

(vi)    No invalidation shall have occurred of Rule 144A or Regulation S under the Securities Act by any court or any withdrawal or proposed withdrawal of any rule or regulation under the Securities Act or the Exchange Act by the SEC or any amendment or proposed amendment thereof by the SEC which, in the judgment of the Initial Purchasers, would materially impair the ability of the Initial Purchasers to purchase, hold or effect resales of the Notes as contemplated in the Indenture.

(l)    <u>Rating of Notes</u>. The Indenture Trustee, the Trustee, Citibank and the Initial Purchasers shall have received (i) a letter from Moody's rating the Notes "Baa1" or better

ECMM000294068

and (ii) a letter from S&P rating the Notes "BBB+" or better, in each case, in form and substance reasonably satisfactory to the Indenture Trustee, the Trustee, Citibank and the Initial Purchasers.

(m)  <u>Financing Statements</u>.  The Collateral Agent shall have received Financing Statements signed by the Trust, in form and substance reasonably satisfactory to the Collateral Agent and the Secured Parties.

(n)  <u>Documents to be Delivered in Respect of Initial Trust Investments</u>.  (i) For each Trust Investment to be purchased on the Closing Date, the Trust shall have received:

(A) originals of any promissory note or other evidence of indebtedness, duly endorsed to the order of the Collateral Agent (such originals to be delivered only to the Collateral Agent as secured party),

(B) copies certified by Citibank as true, complete and correct of all documents evidencing, securing or otherwise relating to the initial Trust Investments as in effect on the Closing Date, and

(C) copies certified by Citibank as true, complete and correct of all documents and notices required by the terms of the initial Trust Investments notifying the obligors of such transfer.

(o)  <u>Trust Orders</u>.  For each Trust Investment to be delivered on the Closing Date, Citibank shall have received copies certified by the Trustee as true, complete and correct of all Trust Orders required to be delivered to the Collateral Agent pursuant to Section 3.2 of the Collateral Security Agreement.

(p)  <u>Euroclear and Clearstream, Luxembourg</u>.  The Notes shall have been accepted for clearance of secondary market trading by Euroclear Bank S.A./N.A., as operator of Euroclear and Clearstream, Luxembourg.

(q)  <u>Auditor's Letter</u>.  The Parties shall have received from Arthur Andersen an auditor's comfort letter, and a "bring-down" of such comfort letter to the Closing Date, regarding certain Enron financial information.

(r)  <u>Additional Documents and Certificates, Etc</u>.  The Indenture Trustee, the Collateral Agent, the Trustee, Citibank, Enron, the Initial Purchasers and the Initial Certificate Purchaser shall have received such other documents, agreements, certificates and opinions as any such Person or their counsel may reasonably request.

## ARTICLE 4

## MISCELLANEOUS

Section 4.1.  <u>Survival</u>  All agreements and indemnities contained in this Agreement and in any agreement, document or certificate delivered pursuant hereto, or in

connection herewith, shall survive and continue in effect following the execution and delivery of this Agreement and the Closing Date.

Section 4.2.    Severability of Provisions.  If any provision hereof shall be held invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provision hereof.  To the extent permitted by Applicable Law, the parties hereto hereby agree that any provision hereof that renders any other term or provision hereof invalid or unenforceable in any respect shall be modified, but only to the extent necessary to avoid rendering such other term or provision invalid or unenforceable, and such modification shall be accomplished in the manner that most nearly preserves the benefit of the parties' bargain hereunder.

Section 4.3.    Effect of Headings.  The Table of Contents and the headings of the Articles, Sections, subsections, clauses and paragraphs hereof, are for convenience of reference only, and shall not affect the construction or interpretation of this Agreement.

Section 4.4.    Effectiveness: Counterparts. This Agreement shall be effective as between the signatories hereto when executed and delivered by Enron, the Trust, Citibank, Wilmington Trust Company and the Initial Purchasers.  The Initial Certificate Purchaser shall accede to its respective rights and obligations hereunder upon the execution and delivery by it of an agreement acceding hereto and agreeing to be bound by the provisions hereof, in the form attached hereto as Exhibit A. This Agreement may be executed in any number of counterparts, each of which shall be an original; but all such counterparts shall together constitute but one and the same instrument.

Section 4.5.    Governing Law.  (a) THE RIGHTS AND OBLIGATIONS OF EACH OF THE PARTIES UNDER THIS AGREEMENT SHALL, PURSUANT TO NEW YORK GENERAL OBLIGATIONS LAW SECTION 5-1401, BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

(b)    EACH OF ENRON, THE TRUST, THE COLLATERAL AGENT, CITIBANK, THE INITIAL PURCHASERS AND THE INDENTURE TRUSTEE HEREBY IRREVOCABLY WAIVES TO THE FULLEST EXTENT PERMITTED BY LAW ALL RIGHT TO TRIAL BY JURY IN ANY PROCEEDING ARISING OUT OF OR RELATING DIRECTLY OR INDIRECTLY TO ANY OF THIS AGREEMENT OR ANY OTHER TRANSACTION DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH OF ENRON, THE TRUST, THE COLLATERAL AGENT, CITIBANK, THE INITIAL PURCHASERS AND THE INDENTURE TRUSTEE (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED EXPRESSLY OR OTHERWISE, THAT SUCH PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS PARAGRAPH.

ECMM000294070

Section 4.6.    <u>Amendments</u>.  This Agreement may be amended or modified only by the written consent of each of the parties hereto.

ECMM000294071

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first set forth above.

ENRON CORP.

By: _____

Title: _____

Name: Dan O. Boyle
Agent and Attorney in Fact

ENRON EURO CREDIT LINKED NOTES TRUST

By:  WILMINGTON TRUST COMPANY,
not in its individual capacity but solely as Trustee

By: _____

Title: _____

Name: _____

[Closing Agreement]

ECMM000294072

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first set forth above.

ENRON CORP.

By: _____
    Title:
    Name:


ENRON EURO CREDIT LINKED NOTES TRUST

By: WILMINGTON TRUST COMPANY,
    not in its individual capacity but solely as
    Trustee


By: _____
    Title:
    Name: Kathleen A. Pedelini
           Administrative Account Manager


[Closing Agreement]

NY3:#7264042

ECMM000294073

CITIBANK, N.A.

By: _____
Title: Vice President
Name: Steven T. Incontro

[Closing Agreement]

NY3:#7264042

ECMM000294074

WILMINGTON TRUST COMPANY, not in its
individual capacity except as expressly provided
herein, but solely as Trustee

By: _____

Title:

Name:    Kathleen A. Pedelini
         Administrative Account Manager

[Closing Agreement]

ECMM000294075

NY3:#7264042

UNITED STATES TRUST COMPANY OF NEW
YORK, not in its individual capacity except as
expressly provided herein, but solely as Indenture
Trustee and Collateral Agent

By: _____
Title:
Name:    **THOMAS MUSARRA**
         **SENIOR VICE PRESIDENT**

[Closing Agreement]

NY3:#7264042

ECMM000294076

DEUTSCHE BANK A.G. LONDON BRANCH,
not in its individual capacity except as expressly
provided herein, but solely as Account Bank

By: _____

    Title:

    Name:

[Closing Agreement]

ECMM000294077

SALOMON BROTHERS INTERNATIONAL
LIMITED
as Initial Purchaser

By: _Peter Charles_____
   Title: *MANAGING DIRECTOR*
   Name: *PETER CHARLES*

UBS AG, ACTING THROUGH ITS BUSINESS
GROUP UBS WARBURG,
as Initial Purchaser

By: _____
   Title:
   Name:

CREDIT LYONNAIS
as Initial Purchaser

By: _____
   Title:
   Name:

THE ROYAL BANK OF SCOTLAND PLC
as Initial Purchaser

By: _____
   Title:
   Name:

BNP PARIBAS
as Initial Purchaser

By: _____
   Title:
   Name:

[Closing Agreement]

ECMM000294078

SALOMON BROTHERS INTERNATIONAL
LIMITED
as Initial Purchaser


By: _____
    Title:
    Name:


UBS AG, ACTING THROUGH ITS BUSINESS
GROUP UBS WARBURG,
as Initial Purchaser


By: _____
    Title: Jonathan A. Gottlieb
    Name: Director


CREDIT LYONNAIS
as Initial Purchaser


By: _____
    Title:
    Name:


THE ROYAL BANK OF SCOTLAND PLC
as Initial Purchaser


By: _____
    Title:
    Name:


BNP PARIBAS
as Initial Purchaser


By: _____
    Title:
    Name:

[Closing Agreement]

NY3:#7264042

ECMM000294079

SALOMON BROTHERS INTERNATIONAL
LIMITED
as Initial Purchaser


By: _____
     Title:
     Name:


UBS AG, ACTING THROUGH ITS BUSINESS
GROUP UBS WARBURG,
as Initial Purchaser


By: _____
     Title:
     Name:


CREDIT LYONNAIS S.A.
as Initial Purchaser


By: _____
     Title: Jacques SALLEZ
     Name: Executive Vice President


THE ROYAL BANK OF SCOTLAND PLC
as Initial Purchaser


By: _____
     Title:
     Name:


BNP PARIBAS
as Initial Purchaser


By: _____
     Title:
     Name:

[Closing Agreement]

NY3:#7264042

ECMM000294080

SALOMON BROTHERS INTERNATIONAL
LIMITED
as Initial Purchaser


By: _____
        Title:
        Name:


UBS AG, ACTING THROUGH ITS BUSINESS
GROUP UBS WARBURG,
as Initial Purchaser


By: _____
        Title:
        Name:


CREDIT LYONNAIS S.A.
as Initial Purchaser


By: _____
        Title:
        Name:


THE ROYAL BANK OF SCOTLAND PLC
as Initial Purchaser


By: _____
        Title:    AUTHORISED SIGNATORY
        Name:    DAVID HITKINS


BNP PARIBAS
as Initial Purchaser


By: _____
        Title:
        Name:

[Closing Agreement]

NY3:#7264042

ECMM000294081

SALOMON BROTHERS INTERNATIONAL
LIMITED
as Initial Purchaser


By: _____
    Title:
    Name:


UBS AG, ACTING THROUGH ITS BUSINESS
GROUP UBS WARBURG,
as Initial Purchaser


By: _____
    Title:
    Name:


CREDIT LYONNAIS S.A.
as Initial Purchaser


By: _____
    Title:
    Name:


THE ROYAL BANK OF SCOTLAND PLC
as Initial Purchaser


By: _____
    Title:
    Name:


BNP PARIBAS
as Initial Purchaser


By: _____
    Title:  Director
    Name:  Douglas Cook

[Closing Agreement]

ECMM000294082

SCOTIA CAPITAL INC.
as Initial Purchaser

By: _____
Title:   Director
         Capital Markets Group
Name: B.J. Buckley

[Closing Agreement]

ECMM000294083

NY3:#7264042