29

(a)    All Dispositions must be for cash; provided that the Marengo General Partner, in its discretion, shall be entitled to effect any Disposition pursuant to the terms of any Contributed Investments (i) to effect an exchange for a security having substantially similar terms to such Contributed Investment, in order to effect a change in the dividend rate or interest rate applicable to such Contributed Investment or (ii) in the nature of the exercise of options, warrants, or conversion rights; provided further that, in any event, no such Disposition described in clause (i) or (ii) above shall be permitted if, after giving effect thereto, the ratios referred to in Section 2.21(a)(ii) and (a)(iii) (before and after giving effect to such Disposition and any resulting change in the EIR Asset Value of the affected Contributed Investment) would not be met;

(b)    All cash proceeds of any Disposition of (i) a Contributed Investment shall be deposited to the Klondike Operating Account and (ii) of a Debt Security shall, if Disposed of by or on behalf of Klondike, be deposited to the Klondike Operating Account and, if Disposed of by or on behalf of Yukon, be deposited to the Yukon Operating Account;

(c)    The Contributed Investments shall not be Disposed of in whole for an amount less than the EIR Asset Value at the time of Disposition and a Debt Security shall not be disposed of in whole  for an amount less than the greater of the EIR Asset Value of such Debt Security and the Contributed Value of such Debt Security unless, in each case, the Marengo Limited Partner shall have consented thereto (which consent may be given or withheld in its sole discretion);

(d)    Any Disposition of part of a Contributed Investment shall, unless the Marengo Limited Partner shall have consented thereto (which consent may be given or withheld in its sole discretion), be for an amount not less than an amount equal to the product of (x) with respect to such Contributed Investment, the EIR Asset Value of the Contributed Investment and (y) the percentage of such Contributed Investment to be Disposed of, provided, however, that (i) nothing in this Section 4.12 prohibits the Contributed Investments from being Disposed of in accordance with Section 4.16 and (ii) proceeds of the type referred to in Section 4.12(b) (ii) above shall, if resulting from a Disposition by Yukon, be invested only in Cash Equivalents or Debt Securities.  Clauses (a) to (d) (inclusive) above shall not apply to any Disposition of the Contributed Investments which is made in accordance with the provisions of Section 4.16;

(e)    Any Disposition of Debt Securities shall be made in whole and not in part; and

(f)    Enron Demand Loans may be Distributed to the Marengo General Partner pursuant to and in accordance with Section 7.2(b).

    THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090386

30

4.13. Payment Instructions. The Marengo General Partner shall (a) maintain, or cause to be maintained, in full force and effect (and substitute or reissue as necessary) each, and (b) not revoke, or cause or permit to be revoked, or modify, or cause or permit to be modified, any, payment instruction of the kind described in Section 2.16(a)(viii).

4.14. Contributed Investments. The Marengo General Partner shall exercise (and use all reasonable efforts to cause each Marengo Subsidiary and each of Marengo's other Affiliates to exercise) all of the rights and remedies of Marengo and each Marengo Subsidiary (but only to the extent, if any, of such rights and remedies) and each of its Affiliates under each document, instrument or agreement evidencing or relating to Marengo's or such Marengo Subsidiary's interest in the Contributed Investments. The Marengo General Partner shall comply, and shall cause the Underlying Business to comply, with the covenants set forth on Schedule 4.14.

4.15. The Marengo Portfolio Manager. (a) Definition. The "*Marengo Portfolio Manager*" shall mean:

(i) prior *to* the occurrence of a Liquidating Event, the Marengo General Partner or an Affiliate of Enron appointed by the Marengo General Partner; and

(ii) following the occurrence of a Liquidating Event, the Marengo General Partner or any other Affiliate of Enron appointed as Marengo Portfolio Manager by the Marengo General Partner; provided that:

(1) In the event that a liquidation of Marengo results from a Termination Event other than those set forth in clause (i), (iv) or (v) of the definition of "*Termination Event*", then the Marengo Portfolio Manager shall be appointed by the Marengo Limited Partner upon written notice thereof to the Marengo General Partner; or

(2) If either the Marengo General Partner or such Marengo Portfolio Manager appointed by the Marengo General Partner shall then be in material breach of any term or covenant of this Agreement or any Notice Event or any Termination Event (other than a Termination Event set forth in clause (i), (iv) or (v) of the definition of "Termination Event") shall occur, then the Marengo Portfolio Manager shall be appointed by the Marengo Limited Partner upon written notice thereof to the Marengo General Partner; or

(3) If the Collection Date does not occur within 30 days after the Liquidation Start Date, then the Marengo Portfolio Manager shall be appointed by the Marengo Limited Partner upon written notice thereof to the Marengo General Partner, provided, however, that notwithstanding the foregoing to the contrary, upon receipt by the Marengo Limited Partner of amounts from Distributions equal to its

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090387

Capital Account after giving effect to all allocations pursuant to Section 6 and all accrued and unpaid Guaranteed Payments payable by Marengo through the date of the receipt of such Distributions, the Marengo Portfolio Manager shall be appointed by the Marengo General Partner upon written notice thereof to the Marengo Limited Partner.

(b)   Role.  (i)  Prior to the occurrence of a Liquidating Event, the Marengo Portfolio Manager shall manage, maintain and conserve the Marengo Property (including without limitation, all Marengo Property of the Marengo Subsidiaries), subject to the terms of the Operative Documents.

(ii)   Following the occurrence of a Liquidating Event, the Marengo Portfolio Manager shall effect the dissolution, winding up and liquidation of Marengo and the Marengo Subsidiaries in accordance with Section 12.10 and Section 4.15(c).

(c)   Marengo Portfolio Manager Following Occurrence of Liquidating Event.  The following provisions shall apply with respect to a Marengo Portfolio Manager following the occurrence of a Liquidating Event:

(i)   The Marengo General Partner and the Marengo Limited Partner (as applicable) may appoint an appointee to be Marengo Portfolio Manager under the relevant circumstances set forth in clause (a) above at any time prior to, on or following the Liquidation Start Date by delivering written notice of such appointment to the other, such appointment to be effective at the times such Marengo Partner is entitled to so appoint a Marengo Portfolio Manager.  Any such appointment may be subsequently withdrawn by similar written notice.

(ii)   The Marengo Portfolio Manager shall have the rights set forth in Section 17-803(b) of the Act, Section 18-803 of the Delaware Limited Liability Company Act and under the Organizational Documents of each of the Marengo Subsidiaries and exclusively shall have the rights, power and authority of the Marengo General Partner necessary or appropriate in its discretion to effect the dissolution, winding up and liquidation of Marengo and the Marengo Subsidiaries.  The actions of the Marengo Portfolio Manager shall for all purposes be the actions of Marengo or, as the case may be, the applicable Marengo Subsidiary.

(iii)   Marengo is authorized to pay a reasonable fee to the Marengo Portfolio Manager for its services performed pursuant to this Section 4.15 and to reimburse the Marengo Portfolio Manager for its reasonable costs and expenses incurred in performing those services.

32

(iv)    Any Marengo Portfolio Manager may, in its discretion on 30 days notice, resign as Marengo Portfolio Manager and the Marengo General Partner or the Marengo Limited Partner (as applicable) shall appoint a replacement Marengo Portfolio Manager pursuant to Section 4.15(a).

(v)    The Marengo General Partner or the Marengo Limited Partner, as applicable, shall notify the Marengo Custodian of the identity of the Marengo Portfolio Manager and any change in the identity of the Marengo Portfolio Manager, in each case appointed by the Marengo General Partner or, as applicable, the Marengo Limited Partner pursuant to Section 4.15(a).

4.16.  Substitution of Contributed Investments.  In addition to the rights under Section 4.12, the Marengo General Partner shall be permitted, on behalf of Marengo and Klondike, upon 10 Business Days prior notice to the Marengo Limited Partner, to Dispose, or cause the Disposition by Klondike, of the Contributed Investments by way of a capital distribution to Marengo, and thereafter by way of a capital Distribution to the Marengo General Partner, provided, however, that:

(a)    taking into account the EIR Value of any other Contributed Investment contributed to Marengo or Klondike in substitution for such Contributed Investment Disposed of by Klondike (such substituted Contributed Investment, the "*Substituted Contributed Investment*") and any cash contributed simultaneously therewith, Marengo and the Marengo Subsidiaries are, on a consolidated basis, at all times (both before and immediately after giving effect to such Disposition and the contribution of any such Substituted Contributed Investment) in compliance with the Equity Investment Requirements;

(b)    the representations and warranties set forth in Section 2.16(a) with respect to any such Substituted Contributed Investment are in all material respects true and correct;

(c)    no Incipient Event, Notice Event, Enron Event, Termination Event or Liquidating Event has occurred or will occur as a result of such Disposition and any such substitution; and

(d)    on the substitution date the Marengo General Partner shall provide written notice to the Marengo Limited Partner (in the form of a revised Schedule 2.16) of the details that are the subject of the representations set forth in Section 2.16(a)(v)(C) with respect to such substituted Contributed Investment.

4.17.  Disposition of Contributed Investments to Enron and its Affiliates.  The Contributed Investments and the Debt Securities may be Disposed of by Marengo or any Marengo Subsidiary to Enron or any Affiliate of Enron, provided that such Disposition complies in all respects

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090389

33

with the other provisions of this Agreement and the other Operative Documents, including Section 4.16 (assuming for purposes of this Section 4.17 that such Disposition were made to the Marengo General Partner for the purposes of assessing such compliance).

4.18.    Disposition of Amounts in Marengo Operating Account.  On each Business Day the Marengo General Partner shall cause amounts standing to the credit of the Marengo Operating Account to be applied in payment of Marengo's payment obligations which are due and payable on such Business Day pursuant to the provisions of the Operative Documents; provided that such Disposition complies in all respects with the other provisions of this Agreement and the other Operative Documents.

4.19.    Contribution of Marengo Property Held By Marengo.  On each Business Day the Marengo General Partner shall cause any Capital Contributions received by Marengo from the Marengo Partners to be forthwith contributed by Marengo (i) in the case of Contributed Investments or cash contributed to Marengo in connection with the Disposition of a Contributed Investment by Klondike, to Klondike, (ii) in the case of Debt Securities or cash contributed to Marengo in connection with the disposition of a Debt Security by Yukon, to Yukon, and (iii) in the case of any other Marengo Property, to a Marengo Subsidiary determined by the Marengo General Partner.

4.20.    Marengo Property held by Marengo.  On each Business Day after giving effect to the Dispositions referred to in Section 4.18 and the contributions referred to in Section 4.19, Marengo shall hold no Marengo Property other than its member interests in the Marengo Subsidiaries.

4.21.    Yukon Distributions.  Marengo shall not, other than after the occurrence of a Liquidating Event, cause or permit Yukon to make any Distribution to Marengo except upon compliance with the following terms:

(a) such Distribution from Yukon shall be in cash;

(b) the Marengo General Partner shall have elected, under Section 7.2(a) or Section 7.7 to make a Distribution by Marengo to the Marengo Limited Partner;

(c) such Distribution from Yukon shall be made only on the date of payment of such Distribution from Marengo to the Marengo Limited Partner; and

(d) the proceeds of such Distribution from Yukon shall be applied to the payment of amounts payable to the Marengo Limited Partner under Section 7.2(a) or Section 7.7, as the case may be.

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090390

34

## SECTION 5

## PARTNERSHIP CAPITAL

5.1.    Capital Accounts. A Capital Account shall be established for each Marengo Partner in the books of Marengo. Upon the making of the initial Capital Contributions pursuant to Section 5.2, the initial Capital Account of the Marengo General Partner shall be the aggregate of (i) the Contributed Value of the Contributed Investments, (ii) cash, if any, contributed by the Marengo General Partner to Marengo, and (iii) the principal amount of Enron Demand Loans, if any, contributed by the Marengo General Partner to Marengo, and the initial Capital Account of the Marengo Limited Partner shall be the aggregate Contributed Value of the Debt Securities contributed by the Marengo Limited Partner, in each case reflecting the initial Capital Contribution of each such Marengo Partner to Marengo. The Capital Account of any Marengo Partner shall be maintained in accordance with the following provisions:

(i)    To each Marengo Partner's Capital Account there shall be credited such Marengo Partner's Capital Contributions made pursuant to Sections 5.2, 5.3 or 5.4, as the case may be, such Marengo Partner's distributive share of Profits, any items in the nature of income or gain that are specially allocated to such Marengo Partner pursuant to this Agreement, and the amount of any Marengo liabilities paid, discharged or assumed (pursuant to an enforceable instrument of assumption and release) by such Marengo Partner or any Affiliate of such Marengo Partner or that are secured at the time of distribution by the Marengo Property distributed to such Marengo Partner.

(ii)    To each Partner's Capital Account there shall be debited the amount of cash and the Gross Asset Value of any Marengo Property Distributed to such Marengo Partner pursuant to Section 7 (other than Section 7.1) or Section 12, such Marengo Partner's distributive share of Losses and any items in the nature of expenses or losses that are specially allocated to such Marengo Partner pursuant to Section 6 and the amount of the liabilities of such Marengo Partner assumed by Marengo or that are secured by any property contributed by such Marengo Partner to Marengo.

(iii)    In the event all or any portion of any Marengo Partnership Interest is transferred in accordance with the terms of this Agreement, the transferee shall succeed to the Capital Account of the transferor to the extent it relates to the Transferred Marengo Partnership Interest.

(iv)    In determining the amount of any liability for the purposes of clauses (i) and (ii), there shall be taken into account Code Section 752(c) and any other applicable provisions of the Code and Regulations.

35

(v)    "*Guaranteed payments*", within the meaning of Section 707(c) of the Code, made to a Marengo Partner, including Guaranteed Payments made pursuant to Section 7.1, shall not be treated as Distributions to the recipients of such guaranteed payments for the purposes of the maintenance of the Marengo Partners' Capital Accounts.

The Marengo General Partner shall maintain the Marengo Partners' Capital Accounts in accordance with this Agreement. However, in the event any Marengo Partner disputes in an appropriate judicial proceeding the determination of its Capital Account, an independent *de novo* determination of the Marengo Partners' Capital Accounts shall be made.

5.2.    Closing Date Contribution by the Marengo Partners.  On the Closing Date:

(a)    the Marengo General Partner shall make a Capital Contribution to Marengo of (i) the Contributed Investments, (ii) cash, if any, and (iii) Enron Demand Loans, if any, (which Contributed Investments, cash, or Enron Demand Loans, as the case may be, shall immediately thereafter be contributed by Marengo to Klondike);

(b)    the Marengo Limited Partner shall make a Capital Contribution to Marengo of Debt Securities described on Schedule 5.2 hereto (which Debt Securities shall immediately thereafter be contributed by Marengo to Yukon) with an aggregate Contributed Value equal to the Limited Partner Capital Amount,

in each case subject to the satisfaction (or waiver in writing by such Marengo Partner) of the following conditions:

(i)    no Liquidating Event, Termination Event, Notice Event or Incipient Event shall have occurred and be continuing before or after giving effect to any such Capital Contribution; and

(ii)    funding is available, after satisfaction of relevant conditions to funding under the Operative Documents, to the Marengo Limited Partner from existing or simultaneous equity investments in the Marengo Limited Partner and from existing credit facilities in an aggregate amount sufficient to enable such Marengo Partner to make the Capital Contribution.

5.3.    Additional Capital Contributions.  (a) The Marengo General Partner on behalf of Marengo, may, from time to time, deliver a Notice of Capital Contribution to the Marengo Limited Partner requesting the Marengo Limited Partner to make additional Capital Contributions to Marengo.

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090392

36

(b)    A Notice of Capital Contribution shall:

(i)    state the proposed Capital Contribution Date for the making of the additional Capital Contribution, which shall be a date at least 5 Business Days after the date of such notice;

(ii)    state the requested Contributed Value of such Capital Contribution, which shall not exceed the Unused Limited Partner Capital Amount;

(iii)    state whether the additional Capital Contribution is to be made in the form of cash or Debt Securities (or a combination of both, in which case such notice shall state the amount of cash and the amount and description (including amounts and maturities in detail similar to that set forth on Schedule 5.2 hereto) of Debt Securities comprising such Capital Contribution); and

(iv)    confirm that:

(A)    the representations and warranties contained in Section 2.16 and Section 2 of the Enron Agreement are and will be correct in all material respects on and as of the date of such Notice of Capital Contribution and the requested Capital Contribution Date, before and after giving effect to such additional Capital Contribution and to the application of the proceeds therefrom, as though made on and as of each such date (except to the extent that such representations and warranties relate solely to an earlier date, in which case such representations and warranties shall have been true and correct in all material respects on and as of such earlier date); and

(B)    no event has occurred and is continuing, or would result from the making of such additional Capital Contribution or from the application of the proceeds therefrom, that constitutes an Incipient Event, Liquidating Event, a Notice Event or a Termination Event.

(c)    The Marengo Limited Partner shall not be required to make any such additional Capital Contribution unless the following conditions have been satisfied (or waived in writing by the Marengo Limited Partner and subject to any consents of third parties required to grant such waiver):

(i)    the representations and warranties contained in Section 2.16 and Section 2 of the Enron Agreement are correct in all material respects on and as of the date of such Notice of Capital Contribution and the requested Capital Contribution Date, before and after giving effect to such additional Capital Contribution and to the application of the proceeds therefrom, as though made on and as of each such date (except to the extent that such representations and warranties relate solely to an earlier date, in which case such

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT


EC21020A0090393

37

representations and warranties shall have been true and correct in all material respects on and as of such earlier date);

(ii)    no Liquidating Event, Termination Event, Notice Event or Incipient Event shall have occurred and be continuing before or after giving effect to such additional Capital Contribution;

(iii)    funding is available, after satisfaction of relevant conditions to funding under the Operative Documents, to the Marengo Limited Partner solely from credit facilities existing on the Closing Date in an aggregate amount sufficient to enable the Marengo Limited Partner to make the additional Capital Contribution; and

(iv)    the amount of such additional Capital Contribution does not exceed the Unused Limited Partner Capital Amount as at the Contribution Date.

(d)    For all purposes of the Operative Documents, any Capital Contribution by the Marengo Limited Partner in the form of Debt Securities shall be deemed to occur on the purchase date of such Debt Securities, and as between the Marengo Limited Partner, on the one hand, and Marengo, on the other hand, all risk of loss and all gains on such Debt Securities shall be for the account of Marengo and not for the account of the Marengo Limited Partner. In no event shall the Marengo Limited Partner be liable for any loss nor entitled to any gain on any such Debt Securities. The foregoing in no way modifies any provision of Section 6.

(e)    The Marengo General Partner may, in its discretion, make additional Capital Contributions to Marengo in cash (which cash shall immediately thereafter be contributed by Marengo to a Marengo Subsidiary).

5.4.    Mandatory Capital Contributions. (a) Deficiency Contributions. In the event Marengo, Klondike or Yukon is required to make any payment (without duplication) (i) in respect of Marengo Expenses or Marengo Subsidiary Expenses, as the case may be, (ii) pursuant to Section 4.11 or Section 13, or (iii) on account of any mandatory capital contribution, assessment or other required payment in respect of the Contributed Investments, the Marengo General Partner shall make additional Capital Contributions to Marengo in an amount equal to such required payment. Such contributions shall be made in immediately available funds to the Marengo Operating Account so that Marengo may make such payment, or make a capital contribution to a Marengo Subsidiary to enable such Marengo Subsidiary to make such payment, when such payment is due. The Marengo General Partner shall instruct each of the Custodians to make such payments when such payments are due.

(b)    Exclusivity. Except as provided in Section 5.2 and Section 5.3 and as provided by Section 17-607 of the Act, the Marengo Limited Partner shall have no obligation of any kind to make Capital Contributions to or assume or pay liabilities of Marengo.

Marengo Partnership Agreement
NYDOCS03/494571    THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT



38

(c)    Marengo Custodian Notification. If the Marengo General Partner makes a Capital Contribution under this Section 5.4 or otherwise (except under Section 5.2) to Marengo, the Marengo General Partner shall notify the Marengo Custodian of the provision, if any, of this Agreement pursuant to which such Capital Contribution is made or the reason such Capital Contribution is made.

5.5.    No Withdrawal of Capital. Except as otherwise provided in this Agreement, no Marengo Partner shall demand or receive a return of its Capital Contributions. Under circumstances requiring a return of any Capital Contributions, no Marengo Partner shall have the right to receive property other than cash except as may be specifically provided in this Agreement.

5.6.    No Return on Capital. No Marengo Partner shall receive any yield or return with respect to its Capital Contributions on its Capital Account, except as otherwise provided in this Agreement.

5.7    Contribution of Capital Contributions Received by Marengo. Notwithstanding anything to the contrary in this Agreement, upon Marengo's receipt of any Capital Contribution consisting of Debt Securities, such Debt Securities shall immediately be contributed to Yukon and upon Marengo's receipt of any Capital Contribution consisting of Contributed Investments, such Contributed Investments shall immediately be contributed to Klondike.

SECTION 6

ALLOCATIONS

6.1.    Allocations Generally. For the purposes of maintaining the Capital Accounts provided for in Section 5.1. Profits or Losses or items thereof (and for federal and state income tax purposes the corresponding items of income, gain, loss, deduction, and credit) for each Fiscal Year shall be allocated 100% to the Marengo General Partner except as provided in the succeeding provisions of this Section 6.

6.2.    Losses. All Losses for any Fiscal Year shall be allocated as follows:

(i)    First, 98.5% to the Marengo General Partner and 1.5% to the Marengo Limited Partner until the cumulative amount of Losses allocated pursuant to this Section 6.2(i) for the current Fiscal Year and all prior Fiscal Years equals the cumulative amount of Profits allocated pursuant to Section 6.3(v) for all prior Fiscal Years;

(ii)    Second, 100% to the Marengo General Partner until the excess of (x) the cumulative amount of Losses allocated to the Marengo General Partner for the current Fiscal Year and all prior Fiscal Years pursuant to this Section 6.2(ii) over (y) the cumulative

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090395

39

amount of Profits allocated to the Marengo General Partner for all prior Fiscal Years pursuant to Section 6.3(iv) equals $200,000,000;

(iii)    Third, 98.5% to the Marengo General Partner and 1.5% to the Marengo Limited Partner until the Capital Account of the Marengo General Partner is reduced to zero;

(iv)    Fourth, 100% to the Marengo Limited Partner until the Capital Account of the Marengo Limited Partner is reduced to zero; and

(v)    Thereafter, 100% to the Marengo General Partner.

6.3.    Profits. All Profits for any Fiscal Year shall be allocated as follows:

(i)    First, 100% to the Marengo General Partner until the cumulative amount of Profits allocated to the Marengo General Partner for the current Fiscal Year and all prior Fiscal Years pursuant to this Section 6.3(i) equals the cumulative amount of Losses allocated to the Marengo General Partner for all prior Fiscal Years pursuant to Section 6.2(v);

(ii)    Second, 100% to the Marengo Limited Partner until the cumulative amount of Profits allocated to the Marengo Limited Partner for the current Fiscal Year and all prior Fiscal Years pursuant to this Section 6.3(ii) equals the cumulative amount of Losses allocated to the Marengo Limited Partner for all prior Fiscal Years pursuant to Section 6.2(iv);

(iii)    Third, 98.5% to the Marengo General Partner and 1.5% to the Marengo Limited Partner until the cumulative amount of Profits allocated pursuant to this Section 6.3(iii) for the current Fiscal Year and all prior Fiscal Years equals the cumulative amount of Losses allocated pursuant to Section 6.2(iii) for all prior Fiscal Years;

(iv)    Fourth, 100% to the Marengo General Partner until the cumulative amount of Profits allocated to the Marengo General Partner for the current Fiscal Year and all prior Fiscal Years pursuant to this Section 6.3(iv) equals the cumulative amount of Losses allocated to the Marengo General Partner for all prior Fiscal Years pursuant to Section 6.2(ii) plus $200,000,000; and

(v)    Thereafter, 98.5% to the Marengo General Partner and 1.5% to the Marengo Limited Partner.

6.4.    Special Allocations. Any items of gain, loss or deduction attributable to the Contributed Investments shall be allocated 100% to the Marengo General Partner.

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090396

40

6.5.    <u>Timing of Allocations</u>.  Profits, Losses and any other items of income, gain, loss or deduction to be allocated pursuant to this Section 6 shall be allocated to the Capital Accounts by the Marengo General Partner on:

(a)    the last day of each Fiscal Year (taking into account the Distribution to be paid in January of the following Fiscal Year relating to the Payment Period ending in January of such following Fiscal Year);

(b)    in relation to any Profit, Loss or other item of income, gain, loss or deduction on or in respect of the Disposition of Permitted Investments on the date of disposition of such Permitted Investment; and

(c)    on the date of determination of the EIR Asset Value of any Marengo Property following the occurrence of a Mark-to-Market Event.

6.6.    <u>Contributed Property</u>.  For Federal and state income tax purposes, income, gain, loss, and deduction with respect to property contributed to Marengo by a Marengo Partner or revalued pursuant to Regulation § 1.704-1(b)(2)(iv)(f) shall be allocated between the Marengo Partners in a manner that takes into account the variation between the Adjusted Basis of such property and its Gross Asset Value, as required by section 704(c) of the Code and Regulation § 1.704-1(b)(4)(i), using any allocation methodology permitted by Regulation § 1.704-3 and selected by the Marengo General Partner.

6.7.    <u>Other Allocation Rules</u>.  For the purposes of determining the Profits, Losses, or any other items allocable to any period, Profits, Losses, and any such other items shall be determined on a daily, monthly, or other basis, as determined by the Marengo General Partner using any permissible method under section 706 of the Code and the Regulations thereunder.  The Marengo Partners hereby agree to be bound by the provisions of this Section 6 in reporting their shares of the income, gain, loss, deduction, and credit of Marengo for income tax purposes, except as may otherwise be required by Law.

SECTION 7

<u>GUARANTEED PAYMENTS, DISTRIBUTIONS AND RETIREMENTS</u>

7.1.    <u>Guaranteed Payments</u>.  Marengo shall make the following payments to the Marengo Limited Partner at the following times, each of which shall be treated as a *"guaranteed payment"* within the meaning of Code Section 707(c), shall be considered an expense of Marengo for income tax and Capital Account purposes and shall not be considered a Distribution for any purpose of this Agreement or the Act including in maintaining the Marengo Limited Partner's Capital Account (each, a *"Guaranteed Payment"*):

Marengo Partnership Agreement
NYDOCS03/494571

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090397

41

(a)    On the Payment Date next succeeding the last day of each Payment Period, commencing on April 7, 2000 for the Payment Period commencing on the Closing Date and ending on April 1, 2000, an amount equal to the Preferred Payment for such Payment Period.

(b)    On the date of any Distribution to the Marengo Limited Partner pursuant to Section 7.2 or Section 12, if such date of payment is other than a Payment Date, an amount equal to the sum of (1) all accrued and unpaid Preferred Payments to such date, on the amount of the Marengo Limited Partner's positive Capital Account balance so Distributed, and (2) all accrued and unpaid Additional Financing Costs, Transaction Costs and Liquidation Amounts that are payable pursuant to Section 4.11(b).

(c)    On each Payment Date or other date specified in the *proviso* to Section 4.11(b) or otherwise specified hereunder or under any other Operative Document, all accrued and unpaid Additional Financing Costs, Transaction Costs and Liquidation Amounts payable pursuant to Section 4.11(b) or otherwise payable hereunder or under any other Operative Document.

(d)    With respect to any Guaranteed Payment (other than any Additional Financing Costs), Distribution, redemption, retirement or other payment by Marengo to the Marengo Limited Partner that is not paid at the time specified therefor, additional amounts in respect thereof accruing at a rate per annum equal to the sum of 2% per annum and the Preferred Rate in effect for the most recently completed Payment Period.

(e)    At the times specified in Section 13, all indemnities owing under Section 13.

7.2.    Distributions. (a) (i) At any time and from time to time prior to the occurrence of the Liquidation Start Date but not more than once in each calendar year, the Marengo General Partner may elect to cause Marengo to make a cash Distribution in respect of the Marengo Limited Partnership Interest to the Marengo Limited Partner by giving written notice of its election to the Marengo Limited Partner.

(ii)    The Unrecovered Capital of the Marengo Limited Partner shall not, pursuant to this Section 7.2(a), be reduced (x) below $15,000,000 or (y) more often than once in each Fiscal Year of Marengo.

(iii)    Any notice given pursuant to clause (a)(i) above (a "*Distribution Notice*") may be given only once in the calendar year in which given and shall include the Distribution Date (as defined in clause (iv) below) on which the Distribution shall be made to the Marengo Limited Partner (which date may, subject to clause (ii)(y) above, occur in the succeeding calendar year) and the amount of such Distribution.

Marengo Partnership Agreement
NYDOCS03/494571

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090398

42

(iv)    In the event the Marengo General Partner has elected to cause Marengo to make a Distribution pursuant to this Section 7.2(a), such Distribution shall be made to the Marengo Limited Partner on the date (the "*Distribution Date*") specified in the Distribution Notice (which shall not, in any event, be a date earlier than January 13 in any calendar year), which date shall be not less than five (5) Business Days or more than fifteen (15) Business Days after the date on which the Distribution Notice was given pursuant to this Section 7.2(a).

(v)    In the event that a Distribution Notice has been given pursuant to this Section 7.2(a), the Marengo General Partner shall, subject to clause (a)(ii) above and clause (a)(vi) below, make a Distribution in the amount stated in the applicable Distribution Notice to the Marengo Limited Partner on the Distribution Date, such Distribution to be in a minimum amount of $10,000,000 and an integral multiple of $1,000,000 and to be accompanied by an amount equal to the aggregate of:

(A)    the accrued and unpaid Preferred Payments on the amount of the Distribution payable to the Marengo Limited Partner through the Distribution Date;

(B)    all accrued and unpaid amounts payable pursuant to Section 4.11 through the Distribution Date; and

(C)    all unpaid obligations under any indemnity contained herein.

(vi)    After giving effect to any Distribution to the Marengo Limited Partner under Section 7.2(a) and any Distributions from the Marengo Subsidiaries on the date of such Distribution to Marengo all Equity Investment Requirements shall be satisfied.

(b)    Except as otherwise provided in Section 12, after making any payments pursuant to Section 7.1(a) and (b) and 7.2(a) and paying current expenses, the Marengo General Partner, in its discretion, may cause Marengo to Distribute to the Marengo General Partner cash in an amount, or Enron Demand Notes (other than Enron Demand Notes evidencing Qualifying Enron Demand Loans) with an aggregate principal amount, such that, after giving effect to such Distribution, the Equity Investment Requirements would all be met.

7.3.    Admission and Withdrawal of Marengo Limited Partner.  If any retirement or liquidating distribution would, subject to Section 7.2 (a)(ii), result in the Capital Account of the Marengo Limited Partner being reduced to zero, or if Enron or its designee purchases in full the Marengo Limited Partnership Interest pursuant to an exercise of the Purchase Option, upon such retirement or purchase the Marengo General Partner shall admit a Person selected by the Marengo General Partner to be the Marengo Limited Partner.  Such admission shall be deemed to have occurred immediately before the deemed withdrawal of Nahanni as Marengo Limited Partner but shall not affect the allocations or distributions to or rights of the withdrawing Marengo Limited Partner through the date of such withdrawal or thereafter in respect of rights accruing through such

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090399

43

date or as otherwise provided herein, including in Section 13.4. Following such admission, Nahanni shall be deemed to have withdrawn from Marengo. This Section 7.3 shall not apply to a Marengo Limited Partner admitted under this Section 7.3.

7.4.    Making of Payments, Etc.    All Guaranteed Payments, Distributions, retirements or other payments (each of the foregoing being a *"Payment"*) to the Marengo Partners pursuant to any provision of this Agreement shall be made in immediately available funds no later than 11:00 a.m. (New York City time) on the day of such Payment, and, at the time of the making of any such Payment, the Marengo General Partner or, after the Liquidation Start Date, the Marengo Portfolio Manager, shall provide to the Marengo Limited Partner and the Administrator a notice identifying the nature of the Payment, the Section or Sections of this Agreement pursuant to which it is being made and the amount being distributed or paid pursuant to each such Section. Each Payment hereunder shall be accompanied by written notice pursuant to Section 9.3. The Marengo General Partner or, after the Liquidation Start Date, the Marengo Portfolio Manager, shall notify the Marengo Custodian of the amount of each Payment hereunder, the calculation thereof, in reasonable detail, and the Section of this Agreement pursuant to which such payment is to be made no later than 11:00 A.M. (Wilmington, Delaware time) on the second Business Day prior to any such payment.

7.5.    Payment Reports. Marengo shall prepare and furnish to each Marengo Partner not later than 45 days after the date on which any Payment is made after the Liquidation Start Date that reduces a Marengo Partner's Capital Account to zero or less:

(i)    a Mark-to-Market Schedule as of immediately prior to the making of such Payment;

(ii)    a statement of the Marengo Partners' Capital Accounts and the Unrecovered Capital of the Marengo Limited Partner as of immediately prior to the making of such Payment; and

(iii)    a certificate of a Marengo General Partner that such statements have been prepared in accordance with this Agreement.

7.6.    Determination of the Preferred Payment. (a) Certain Notices. The Marengo Limited Partner shall, or shall cause the Administrator to, notify Marengo, by notice to the Marengo General Partner, (i) of the Preferred Rate applicable to a Payment Period (or portion thereof) three Business Days prior to the Payment Date for such Payment Period (or portion thereof) or Distribution Date (as the case may be) and (ii) whether the Notified Amount used in the calculation of such Preferred Rate was based on the CXC Rate or the Purchaser Rate, or if applicable, both on the last day of such Payment Period. The Notified Amount shall initially be based on the CXC Rate. Each determination by the Marengo Limited Partner of the Preferred Rate, Notified Amount, Equity Amount and Fee Amount hereunder shall be conclusive and binding for all purposes, absent manifest error, and shall be accompanied by such supporting documentation as to the determination of the

Marengo Partnership Agreement
NYDOCS03/494571

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090400

44

Preferred Rate, Notified Amount, Equity Amount and Fee Amount as Marengo may reasonably request.

(b)    Computation. The Preferred Payment for any Payment Period (or portion thereof) shall be computed by the Marengo General Partner or, if the Liquidation Start Date has occurred, the Marengo Portfolio Manager, based upon the information provided by or on behalf of the Marengo Limited Partner pursuant to clause (a) above, and on the basis of a year having 360 days and for the actual days elapsed (including the first day but excluding the last day) occurring in the related Payment Period (or portion thereof). The Marengo General Partner or the Marengo Portfolio Manager, as the case may be, shall notify the Marengo Custodian of the amount of such Preferred Payment on a timely basis.

7.7.    Retirement of Marengo Limited Partnership Interest. (a) In General. (i) The Marengo General Partner may, at any time prior to the occurrence of the Liquidation Start Date, elect to cause all of the Marengo Limited Partnership Interest to be retired in full in accordance with this Section 7.7 by giving written notice of its election to the Marengo Limited Partner.

(ii)    Any notice given pursuant to clause (a)(i) above (a "*Retirement Notice*") shall include the Retirement Date (as defined in and selected in accordance with Section 7.7(c)) on which the retirement distribution shall be made to the Marengo Limited Partner.

(b)    Distributions upon Retirement of the Marengo Limited Partnership Interest. (i) In the event that the Marengo Limited Partnership Interest is to be retired pursuant to this Section 7.7, Marengo shall make a Distribution to the Marengo Limited Partner on the Retirement Date in full retirement of the Marengo Limited Partnership Interest in an amount equal to the aggregate of, without duplication:

(A)    the greater of (1) the Unrecovered Capital of the Marengo Limited Partner as at the Retirement Date and (2) the aggregate amount of the Capital Account of the Marengo Limited Partner after giving effect to all allocations to the Capital Account resulting from the occurrence of a Mark-to-Market Event;

(B)    the accrued and unpaid Preferred Payments payable to the Marengo Limited Partner through the Retirement Date;

(C)    all accrued and unpaid amounts payable pursuant to Section 4.11, and all other Guaranteed Payments, through the Retirement Date; and

(D)    all other amounts that are accrued but unpaid under or in respect of the Operative Documents (including all unpaid obligations under any indemnity contained in any Operative Document).

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090401

45

(c)    Retirement Date. In the event that the Marengo General Partner has elected to retire the Marengo Limited Partnership Interest pursuant to this Section 7.7, distributions shall be made to the Marengo Limited Partner, and the Marengo Limited Partnership Interest shall be retired, on the date (the *"Retirement Date"*) specified in the Retirement Notice, which date shall not be less than five (5) Business Days or more than fifteen (15) Business Days after the date on which the Retirement Notice was given pursuant to Section 7.7(a); provided, that if a Termination Event shall have occurred and be continuing, the Retirement Date shall in any event be no later than the last day of the Purchase Option Period.

## SECTION 8

## ACCOUNTING: BOOKS AND RECORDS: REPORTS

8.1.    Accounting: Books and Records. (a) Maintenance. Marengo shall maintain at its principal place of business or, upon notice to the Marengo Partners, at such other place within the United States as the Marengo General Partner shall determine, separate books of account for Marengo and the Marengo Subsidiaries, which shall include a record of all costs and expenses incurred, all charges made, all credits made and received, and all income derived in connection with the conduct of Marengo and the Marengo Subsidiaries and the operation of its business in accordance with this Agreement.

(b)    Accounting Methods. The accounts of Marengo and the Marengo Subsidiaries shall be prepared in accordance with GAAP.

(c)    Access to Books, Records, Etc. Any Marengo Partner or any agents or representatives of such Marengo Partner, at Marengo's expense, may visit and inspect any of the properties of Marengo and the Marengo Subsidiaries and examine any information it may reasonably request from Marengo and the Marengo Subsidiaries financial and operating records and books of account of Marengo and the Marengo Subsidiaries, and discuss the affairs, finances and accounts of Marengo and the Marengo Subsidiaries with the Marengo General Partner and the officers of the Marengo General Partner's corporate general partner, all at such reasonable times (*i.e.*, during normal business hours, at reasonable intervals and upon reasonable notice) and, prior to the occurrence and during the continuance of any Incipient Event, Notice Event, Termination Event or Liquidating Event, at such reasonable intervals as such Marengo Partner or any agents or representatives of such Marengo Partner may reasonably request for purposes related to this Agreement. In addition, any Marengo Partner may discuss the affairs, finances and accounts of Marengo and the Marengo Subsidiaries with the independent accountants of Marengo at reasonable intervals and with the knowledge of the Marengo General Partner where feasible. The rights granted to a Marengo Partner pursuant to this Section 8.1(c) are expressly subject to compliance by such Marengo Partner with the reasonable confidentiality procedures and guidelines of Marengo, as such procedures and guidelines may be established by the Marengo General Partner in its reasonable judgment from time to time.

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090402

46

8.2.  **Tax Matters**. (a) **Partnership Reporting**.  All returns filed by Marengo in respect of Federal, state and local income taxes shall be filed on the basis that Marengo is a partnership for Federal, state and local income tax purposes unless otherwise (x) required by law, or (y) unanimously agreed by all Marengo Partners.  The Marengo Partners shall take all steps pursuant to applicable Regulations and applicable state or local law in order to achieve partnership classification for Marengo for Federal, state and local income tax purposes and, in this connection, the Marengo Limited Partner will join in the making of any election requested in good faith by the Marengo General Partner in furtherance of this objective; provided that any such election could not reasonably be expected to reduce the amount or change the timing of the receipts of any payments expected to be received by the Marengo Limited Partner.

(b)  **Tax Matters Partner**.  The Marengo General Partner is authorized, in the case of material elections with the consent of the Marengo Limited Partner, not to be unreasonably withheld, to make any and all elections for Federal, state, and local tax purposes.  If the Marengo Limited Partner fails to respond within a reasonable period of time (never to be less than 30 days) under the circumstances, to a written request by the Marengo General Partner for consent to an election sought to be made for Marengo, the Marengo General Partner may make such election without the consent of the Marengo Limited Partner.  The Marengo General Partner is authorized, to the extent provided in Code Sections 6221 through 6231, to represent Marengo and the Marengo Partners before taxing authorities or courts of competent jurisdiction in tax matters affecting Marengo or the Marengo Partners in their capacities as Marengo Partners, and to file any tax returns and execute any agreements or other documents relating to or affecting such tax matters, including agreements or other documents that bind the Marengo Partners with respect to such tax matters or otherwise affect the rights of Marengo and the Marengo Partners.  The Marengo General Partner is specifically authorized to act as the *"Tax Matters Partner"* under the Code and in any similar capacity under state or local Law.  Notwithstanding the generality of the foregoing, the Tax Matters Partner shall make regular and current reports to the Marengo Limited Partner on the status of all representations of Marengo and the Marengo Partners before taxing authorities and courts of competent jurisdiction.  The Tax Matters Partner shall provide to the Marengo Limited Partner copies of all material notices, correspondence and other written materials received from or sent to the taxing authorities of Marengo.  Furthermore, without the prior written consent of the Marengo Limited Partner (which consent shall not be unreasonably withheld), the Tax Matters Partner may not enter into any agreements or documents that would affect the amount, timing or character of any items of income, gain, loss, deduction or credit allocated to or otherwise realized by, the Marengo Limited Partner.

(c)  **Tax Information**.  Necessary tax information shall be delivered to each Marengo Partner as soon as practicable after the end of each Fiscal Year of Marengo but not later than 90 days after the end of each such Fiscal Year.  The Marengo General Partner shall file tax returns for Marengo prepared in accordance with the Code and the Regulations.

47

## SECTION 9

### REPORTS AND INFORMATION; ENRON DEMAND LOANS

9.1.    Periodic Reporting. Marengo shall furnish or cause to be furnished to each Marengo Partner the following:

(a)    Annual Reports. Within 120 days after the end of each Fiscal Year beginning with the Fiscal Year ended December 31, 2000, the following:

(i)    a Compliance Certificate executed by a senior financial or senior accounting officer of Enron;

(ii)    for each Fiscal Year, audited balance sheets as of the last day of such Fiscal Year and the preceding Fiscal Year (if any) and audited income statements and statements of cash flows for such periods and the notes associated with each, for Marengo and the Marengo Subsidiaries on a consolidated basis;

(iii)    a statement of such Marengo Partner's Capital Account balances at the end of the Fiscal Year and a statement of the changes therein since the end of the prior Fiscal Year (if any); and

(iv)    a completed Operating Report for such Fiscal Year showing details of consolidated cash flow, the EIR Asset Value of the Contributed Investments, the Debt Securities and each Enron Demand Loan, Dispositions of Debt Securities made during such Fiscal Year by Marengo and the Marengo Subsidiaries and the proceeds of such Dispositions.

(b)    Quarterly Reports. Within 60 days after the close of each Fiscal Quarter (other than the final Fiscal Quarter of any Fiscal Year) the following:

(i)    unaudited consolidated statements of cash flows of Marengo for such Fiscal Quarter and the notes associated therewith;

(ii)    consolidated balance sheets of Marengo as of the end of such Fiscal Quarter and for the comparable quarter of the prior Fiscal Year (if any);

(iii)    consolidated income statements of Marengo for such Fiscal Quarter, for the year to date ending such Fiscal Quarter and for the comparable periods of the prior Fiscal Year (if any);

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090404

48

(iv)    a Compliance Certificate executed by a Responsible Officer of the Marengo General Partner;

(v)    a completed Operating Report for such Fiscal Quarter showing details of consolidated cash flow, the EIR Asset Value of the Contributed Investments, the Debt Securities and each Enron Demand Loan, Dispositions of Debt Securities made during such Fiscal Quarter by Marengo and the Marengo Subsidiaries and the proceeds of such Dispositions; and

(vi)    a certification by the Marengo General Partner that the statements described in Section 9.1(b)(i) include all adjustments necessary in the opinion of the Marengo General Partner for fair presentation of the results of such Fiscal Quarter.

(c)    <u>Other Notices</u>.  A notice of the occurrence of any Liquidating Event, Termination Event, Notice Event or Incipient Event promptly, but in any event no later than two (2) Business Days after a Responsible Officer of the Marengo General Partner has actual knowledge of such occurrence or such event becomes generally publicly known and a notice setting forth details of the actions that the Marengo General Partner has taken or proposes to take with respect thereto within ten (10) Business Days after such Responsible Officer obtained actual knowledge of such event.

(d)    <u>Additional Information</u>.  Promptly following any such request, such other information as is reasonably requested by any Marengo Partner.

9.2.    <u>Notices</u>. (a)  Marengo shall provide to each Marengo Partner, promptly after receipt by Marengo or any Marengo Subsidiary, copies of any report, notice, certificate or other instrument furnished to Marengo or any Marengo Subsidiary under or with respect to the Permitted Assets or any Marengo Subsidiary.

(b)    Marengo shall provide to the Nahanni Collateral Agent and the Agent simultaneously with delivery to the Marengo Partners, copies of all statements, notices, reports and other information delivered to the Marengo Partners pursuant to this Section 9.

9.3.    <u>Payment Identification</u>.  Each Payment hereunder shall be accompanied by written notice by the Marengo General Partner or the Marengo Portfolio Manager, as the case may be, identifying the provision pursuant to which such Payment is made and the nature of the Payment.

9.4.    <u>Accounts</u>.  (a)  Marengo shall maintain, and shall cause each Marengo Subsidiary to maintain, each of the Accounts with the applicable Custodian.

(b)    It shall be a term and condition of each of the Accounts, and on or prior to Closing Date the Marengo General Partner shall give, and shall cause Marengo and each Marengo

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT



EC21020A0090405

49

Subsidiary to give, to each of the Custodians written notice and shall obtain each of the Custodian's written agreement (such notice and agreement to be in form and substance satisfactory to the Marengo Limited Partner), that notwithstanding any term or condition to the contrary in any other agreement relating to the Accounts, no amount (including interest on Permitted Investments held in the Accounts) shall be paid or released from the Accounts to or for the account of, or withdrawn by or for the account of, any Person except in accordance with and pursuant to the terms of the Custody Agreements and this Agreement; provided that:

(i)     subject to Section 9.5 and to the other provisions of the Operative Documents, amounts standing to the credit of the Accounts may be invested in Permitted Investments in accordance with the Custody Agreements applicable to such Accounts;

(ii)    withdrawals may be made from the Accounts to enable Marengo and the Marengo Subsidiaries to make the Distributions, Guaranteed Payments and other payments required to be made pursuant to Section 7; and

(iii)   no proceeds of any Debt Security or Cash Equivalent may, if resulting from a Disposition or collection or other realization by Yukon of or upon any such Debt Security or Cash Equivalent, be invested in any assets other than Cash Equivalents, Debt Securities, and Qualified Enron Demand Loans.

(c)     Each of the Accounts shall be subject to applicable laws, and applicable regulations of any competent banking or governmental authority, as may now or hereafter be in effect.

(d)     The Marengo General Partner or the Marengo Portfolio Manager, as the case may be, shall give all necessary directions to the Custodians to effect the payments or withdrawals under this Section 9.4.

(e)     All amounts received by Marengo on any account whatsoever shall be deposited into the Marengo Operating Account. All amounts received by Yukon on any account whatsoever shall be deposited into the Yukon Operating Account. All amounts received by Klondike on any account whatsoever shall be deposited into the Klondike Operating Account. On or prior to Closing Date, the Marengo General Partner, on behalf of Marengo and each Marengo Subsidiary shall give to Enron written notice (such notice to be in form and substance satisfactory to Nahanni) irrevocably instructing Enron and all Affiliates of Enron to which Enron Demand Loans are made that all amounts payable by Enron or such Affiliates (i) under or in respect of the Enron Demand Loans made or held by Klondike shall be deposited directly into the Klondike Operating Account and (ii) under or in respect of the Qualified Enron Demand Loans made or held by Yukon shall be deposited directly in the Yukon Operating Account.


EC21020A0090406