50

(f)    The Marengo General Partner shall cause each of the Custodians to promptly notify the Marengo General Partner and the Marengo Limited Partner of any deposit made pursuant to clause (e) above and to provide to the Marengo General Partner and the Marengo Limited Partner monthly reports of holdings and transactions in each of the Accounts.

(g)    Interest and proceeds that are not required to be invested or reinvested as provided above shall be contributed to the Marengo Subsidiaries and held in the Accounts of the applicable Marengo Subsidiary.

9.5.    <u>Enron Demand Loans</u>.  (a)  Each Enron Demand Loan shall cease to be a Permitted Investment, and Marengo and Klondike shall not, and the Marengo General Partner shall not permit Marengo or Klondike to, make or maintain any Enron Demand Loans if:

(i)    a Notice Event or Termination Event occurs; or

(ii)    Enron fails to comply with any obligation under Section 5.3(b) of the Enron Agreement.

(b)    Klondike shall not, and the Marengo General Partner shall not permit Klondike to, make any further Enron Demand Loan if an Incipient Event occurs and so long as such Incipient Event is continuing.  Marengo shall not, and the Marengo General Partner shall not permit Marengo to, make Enron Demand Loans.

(c)    In no event shall any Enron Demand Loan be made to the extent that, after giving effect to such Enron Demand Loan, the ratio set forth in Section 2.21(a)(ii) would not be met.

SECTION 10

<u>TRANSFERS OF PARTNERSHIP INTERESTS</u>

10.1.    <u>Restriction on Transfers</u>.  Except as otherwise permitted by this Agreement, no Marengo Partner shall pledge or otherwise Transfer all or any portion of its Marengo Partnership Interest.

10.2.    <u>Permitted Transfer — Limited Partner</u>.  Subject to the conditions and restrictions set forth in Section 10.3, all or any portion of the Marengo Limited Partnership Interest may be Transferred to any Person; <u>provided</u> that (a) any Transfer by the Marengo Limited Partner must be consented to by the Marengo General Partner (such consent not to be unreasonably withheld), (b) in no event shall the total number of Marengo Limited Partners exceed one except as otherwise provided in Section 7.4 and (c) prior to the occurrence of a Liquidating Event no Transfer may be made to a Competitor of Enron.

Marengo Partnership Agreement
NYDOCS03/494571

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090407

51

10.3.  Conditions to Permitted Transfers.  Subject to Section 10.4, no Transfer shall be treated as a Permitted Transfer unless and until the following conditions are satisfied:

(a)  Documentation.  The transferor and transferee shall execute and deliver to Marengo (i) such documents and instruments of conveyance as may be necessary or appropriate in the opinion of counsel to Marengo to effect such Transfer and to confirm the agreement of the transferee to be bound by the provisions of this Agreement and (ii) unless the requirement of this clause (ii) has been waived by the Required Marengo Partners, in the case of the transferee, a confidentiality agreement in the form of Exhibit D hereto.

(b)  Tax Information.  The transferor and transferee shall furnish Marengo with the transferee's taxpayer identification number, sufficient information to determine the transferee's initial tax basis in the Transferred Marengo Limited Partnership Interests, and any other information reasonably necessary to permit Marengo to file all required Federal and state tax returns and other legally required information statements or returns.  Without limiting the generality of the foregoing, Marengo shall not be required to make any Distribution otherwise provided for in this Agreement with respect to any Transferred Marengo Limited Partnership Interests until it has received such information.

(c)  Securities Law Opinion.  Such Transfer will be exempt from all applicable registration requirements, including such requirements under the Securities Act, and any applicable state securities Law, and will not violate any Applicable Laws regulating the Transfer of securities, and, except in the case of a Transfer of Marengo Limited Partnership Interests to another Marengo Partner or to a Wholly Owned Affiliate of the transferor or of any other Marengo Partner, or unless waived by the Required Marengo Partners, the transferor shall provide an opinion of counsel to such effect.  Such counsel and opinion shall be reasonably satisfactory to the Required Marengo Partners.

(d)  Investment Company Act/Public Utility Holding Company Act Opinions.  Such Transfer will not cause Marengo to be deemed to be an "investment company" under the Investment Company Act or cause Marengo to be subject to regulation as a "*holding company*" or a "*subsidiary company*" of a "*holding company*" within the meaning of the Public Utility Holding Company Act of 1935; and the transferor shall provide an opinion of counsel to such effect, unless waived by the Required Marengo Partners.  Such counsel and opinion shall be reasonably satisfactory to the Required Marengo Partners, and the Marengo Partners shall provide to such counsel any information available to the Marengo Partners, as the case may be, and relevant to such opinion.

(e)  Certificates.  Unless waived by the Required Marengo Partners, the transferor Marengo Limited Partner shall execute a Transferor Certificate and the transferee of the Marengo Limited Partner shall execute a Transferee Certificate.

52

(f)    Expenses. Unless the requirements of this paragraph have been waived by the Required Marengo Partners, Marengo shall be reimbursed by the transferor and/or transferee for all Marengo Expenses that it reasonably incurs in connection with such Transfer.

(g)    No Withholding Tax. Neither the transferee nor any Person who owns a direct or indirect interest in the transferee and who may be treated for Federal tax purposes as a Marengo Partner (or is attributed income from Marengo or a Marengo Subsidiary on a pass-through basis) is a nonresident alien individual, foreign partnership, foreign corporation or other foreign person with respect to whom (taking into account statutory or treaty exemptions) distributions, allocations or payments from Marengo are subject to withholding tax at a rate in excess of zero percent under Sections 1441, 1442, 1446 or any other provision of the Code imposing U.S. Federal tax withholding requirements upon distributions, allocations or payments by a partnership to a foreign person.

(h)    Partnership Status. The Transfer will not jeopardize Marengo's status as a partnership for Federal income tax purposes and the transferee is not a tax-exempt entity as described in Section 168(h)(2) or Section 501(a) of the Code. The transferor shall provide an opinion of counsel in respect of the foregoing, which opinion and counsel shall be reasonably satisfactory to each non-transferring Partner.

10.4.    Pledge of Marengo Limited Partnership Interest; Foreclosure Transfers. (a) Nothing in this Section 10 prevents the creation of any Permitted Lien (as defined in the Nahanni Credit Agreement) in the Marengo Limited Partnership Interest in favor of the Nahanni Collateral Agent as contemplated by the Nahanni Credit Agreement.

(b)    The Marengo General Partner hereby irrevocably consents to:

(i)    any transfer or assignment of the Marengo Limited Partnership Interest to the Nahanni Collateral Agent in connection with the creation of such Permitted Lien; and

(ii)    subject to Section 10.2(c), any subsequent transfer or assignment of the Marengo Limited Partnership Interest to any Person consequent upon the exercise by the Nahanni Collateral Agent of the security interests created under the Nahanni Credit Agreement (a "*Foreclosure Transfer*").

(c)    If a Foreclosure Transfer is effected under and in accordance with the terms of the Marengo Assignment:

(i)    the requirements of Section 10.3 shall not apply to such Foreclosure Transfer (except to the extent expressly contemplated by Section 3 of the Marengo Assignment); and

Marengo Partnership Agreement
NYDOCS03/494571

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090409

53

(ii)    such Foreclosure Transfer shall be treated for the purposes of the Marengo Partnership Agreement as having satisfied all of the requirements for a Transfer under Section 10.7.

10.5.    Prohibited Transfers. (a) Any purported Transfer of a Marengo Partnership Interest that is not a Permitted Transfer shall be null and void and of no effect whatsoever; provided that, if Marengo is required to recognize a Transfer that is not a Permitted Transfer, the interest Transferred shall be strictly limited to the transferor's rights to allocations and Distributions as provided by this Agreement with respect to the Transferred Marengo Partnership Interests, which allocations and Distributions may be applied (without limiting any other legal or equitable rights of Marengo) to satisfy any debts, obligations, or liabilities for damages that the transferor or transferee of such Marengo Partnership Interests may have to Marengo.

(b)    In the case of a Transfer or attempted Transfer of a Marengo Partnership Interest that is not a Permitted Transfer, the parties engaging or attempting to engage in such Transfer shall indemnify and hold harmless Marengo and the other Marengo Partners from all cost, liability, and damage that any of such indemnified Persons may incur (including incremental tax liability and attorneys' fees and expenses) as a result of such Transfer or attempted Transfer and efforts to enforce the indemnity granted hereby.

10.6.    Rights of Unadmitted Assignees. (a) In General. A Person who acquires a Marengo General Partnership Interest in contravention of Section 10.1 or a Person who acquires a Marengo Limited Partnership Interest but who is not admitted as a substituted Marengo Limited Partner pursuant to Section 10.7 shall be entitled only to allocations and Distributions with respect to such acquired Partnership Interest in accordance with this Agreement, but shall have no right to any information or accounting of the affairs of Marengo, shall not be entitled to inspect the books or records of Marengo, and, except for such entitlement to allocations and Distributions, shall not have any of the rights of a Marengo Partner under the Act or this Agreement.

(b)    Marengo Partners. Following a Transfer to a transferee who acquires any Marengo Partnership Interest from a Marengo Partner under this Agreement but who is not admitted as a Marengo Partner, the transferor shall not cease to be a Marengo Partner and shall continue to be a Marengo Partner until immediately after the time, if any, the transferee is admitted as a Marengo Partner under this Agreement.

10.7.    Admission as Substituted Partners. Subject to Section 10.4 and the other provisions of this Section 10, a transferee of a Marengo Partnership Interest may be admitted to Marengo as a substituted Marengo Partner only upon satisfaction of the further conditions set forth below:

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090410

54

(i)     In the case of a transfer of the Marengo Limited Partnership Interest, the Marengo General Partner shall have consented to such admission, which consent may not unreasonably be withheld or delayed;

(ii)    The Marengo Partnership Interest was acquired by means of a Permitted Transfer;

(iii)   The transferee becomes a party to this Agreement as a Marengo Partner and executes such documents and instruments as the Marengo Partners consenting to such admission may reasonably request as may be necessary or appropriate to confirm such transferee as a Marengo Partner, including such transferee's agreement to be bound by the terms and conditions of this Agreement;

(iv)    Unless the requirements of this Section 10.7(iv) have been waived by the Marengo Partners consenting to such admission, the transferee pays or reimburses Marengo for all reasonable legal, filing, publication and other costs that Marengo incurs in connection with the admission of the transferee as a Marengo Partner with respect to the Transferred Marengo Partnership Interest; and

(v)     Unless the requirements of this Section 10.7(v) have been waived by the Marengo Partners consenting to such admission, if the transferee is a partnership, limited liability company or corporation, such transferee provides Marengo with evidence satisfactory to counsel for Marengo that such transferee has made representations and warranties substantially the same as those set forth in Sections 2.15(b) and (c) as of the date of the Transfer.

10.8.   Distributions with Respect to Transferred Marengo Partnership Interests. Except as otherwise provided in Sections 7.2, 7.3 and 7.7 if any Marengo Partnership Interest is Transferred in compliance with the provisions of this Section 10, all Distributions on or before the date of such Permitted Transfer shall be made to the transferor, and all Distributions thereafter shall be made to the transferee. Solely for the purposes of making such Distributions, Marengo shall recognize such Permitted Transfer not later than the end of the calendar month during which it is given notice of such Permitted Transfer; provided, however, that if Marengo is given notice of a Permitted Transfer at least fourteen (14) days prior to the Permitted Transfer, Marengo shall recognize such Permitted Transfer as of the date of such Permitted Transfer, and provided further that if Marengo does not receive a notice stating the date such Marengo Partnership Interest was Transferred and such other information as the Marengo General Partner may reasonably require within thirty (30) days after the end of the Fiscal Quarter during which the Permitted Transfer occurs, all Distributions shall be made to the Person who, according to the books and records of Marengo, on the last day of the Fiscal Quarter during which the Permitted Transfer occurs, was the record owner of the Marengo Partnership Interest. Neither Marengo nor the Marengo General Partner shall incur any liability for making Distributions in accordance with the provisions of this Section 10.8,

Marengo Partnership Agreement
NYDOCS03/494571

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090411

55

whether or not the Marengo General Partner or Marengo has knowledge of any Transfer of ownership of the Marengo Partnership Interest.

## SECTION 11

## POWER OF ATTORNEY

11.1.    Attorney-in-Fact. Each Marengo Partner hereby makes, constitutes, and appoints the Marengo General Partner and, effective as of the Liquidation Start Date, the Marengo Portfolio Manager, severally, with full power of substitution and resubstitution, its true and lawful attorney-in-fact for it and in its name, place, and stead and for its use and benefit, to sign, execute, certify, acknowledge, swear to, file, publish and record (a) all certificates of Marengo, amended name or similar certificates, and other certificates and instruments (including counterparts of this Agreement in the form identical to the original counterpart thereof manually executed by such Marengo Partner (as amended, restated or modified in accordance with clause (b) below)) that the Marengo General Partner or Marengo Portfolio Manager may deem necessary to be filed by Marengo under the Laws of the State of Delaware or any other state or jurisdiction approved by the Marengo Partners in which Marengo is doing or intends to do business; (b) any and all amendments, restatements or modifications to this Agreement and the instruments described in (a), as now or hereafter amended, which the Marengo General Partner or the Marengo Portfolio Manager may deem necessary to effect a change or modification of Marengo in the form approved in writing by all of the Marengo Partners (and not by their agents or attorneys-in-fact appointed pursuant to the power of attorney granted pursuant to this Section 11.1) in accordance with the terms of this Agreement, including amendments, restatements or modifications to reflect (i) the exercise by any Marengo Partner of any power granted to it under this Agreement, (ii) any amendments adopted by the Marengo Partners in accordance with the terms of this Agreement, (iii) the admission of any substituted Marengo Partner and (iv) the disposition by any Marengo Partner of its Marengo Partnership Interest; (c) all certificates of cancellation and other instruments that the Marengo General Partner or Marengo Portfolio Manager deems necessary or appropriate to effect the dissolution and termination of Marengo pursuant to the terms of this Agreement and (d) any other instrument that is now or may hereafter be required by law to be filed on behalf of Marengo or is deemed necessary by the Marengo General Partner or Marengo Portfolio Manager to carry out fully the provisions of this Agreement in accordance with its terms; provided that nothing in this Section 11 shall authorize or be deemed to authorize any such attorney-in-fact to take any action for or in the name, place or stead of any Marengo Partner, or otherwise referred to in this Section 11 with respect to any Marengo Partner, to the extent such action requires the consent of such Marengo Partner pursuant to the terms of this Agreement and such Marengo Partner has not so consented. Each Marengo Partner authorizes each such attorney-in-fact to take any further action that such attorney-in-fact shall consider necessary in connection with any of the foregoing, hereby giving each such attorney-in-fact full power and authority to do and perform each and every act or thing whatsoever requisite to be done in connection with the foregoing as fully as such Marengo Partner

Marengo Partnership Agreement
NYDOCS03/494571

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090412

56

might or could do personally, and hereby ratifying and confirming all that any such attorney-in-fact shall lawfully do or cause to be done by virtue thereof or hereof.

 11.2. <u>Nature of Special Power</u>.  The power of attorney granted pursuant to this Section 11:

  (i) Is a special power of attorney coupled with an interest and is irrevocable;

  (ii) May be exercised by any such attorney-in-fact by listing the Marengo Partners executing any agreement, certificate, instrument, or other document with the single signature of any such attorney-in-fact acting as attorney-in-fact for such Marengo Partners; and

  (iii) Shall survive and not be affected by the subsequent Bankruptcy, insolvency, dissolution, or cessation of existence of a Marengo Partner and shall survive the delivery of a permitted assignment by a Marengo Partner of the whole or a portion of its Marengo Partnership Interest (except that where the assignment is of all of such Marengo Partner's Marengo Partnership Interest and the assignee, with the consent of the Required Marengo Partners, is admitted as a substituted Marengo Partner, the power of attorney shall survive the delivery of such assignment for the sole purpose of enabling any such attorney-in-fact to effect such substitution) and shall extend to such Marengo Partner's or assignee's successors and assigns.

SECTION 12

<u>DISSOLUTION AND WINDING UP</u>

 12.1. <u>Liquidation</u>. (a) <u>Liquidating Events</u>. Marengo shall dissolve and commence winding up and liquidating upon, and only upon, the occurrence of a Liquidating Event.

  (b) <u>Termination Notice</u>. At any time on or after the occurrence and during the continuance of any Notice Event, the Marengo Limited Partner may elect to cause such Notice Event to result in a Termination Event by delivering to the Marengo General Partner a notice (a "***Termination Notice***") of such election. Such Termination Notice shall be effective on the day it is delivered (unless stated to be effected on any other day after the day of delivery) to the Marengo General Partner (or if such day or such other day is not a Business Day, the immediately following Business Day). Any such Termination Notice may be rescinded by the Marengo Limited Partner giving such notice prior to its effectiveness by delivery of a rescission notice to the Marengo General Partner.

 12.2. <u>Winding Up</u>. (a) <u>Distribution of Assets</u>. Upon the occurrence of a Liquidating Event, Marengo shall continue solely for the purposes of winding up its affairs and the

Marengo Partnership Agreement
NYDOCS03/49457!

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090413

57

affairs of each of the Marengo Subsidiaries in an orderly manner, liquidating its assets and the assets of the Marengo Subsidiaries, and satisfying the claims of its creditors and the creditors of the Marengo Subsidiaries and Marengo Partners, and no Marengo Partner shall take any action with respect to Marengo or the Marengo Subsidiaries that is inconsistent with the winding up of Marengo's and the Marengo Subsidiaries' business and affairs; provided that all covenants contained in this Agreement and obligations provided for in this Agreement shall continue to be fully binding upon the Marengo Partners until the Marengo Property has been distributed pursuant to this Section 12.2 and the certificate of limited partnership has been canceled pursuant to the Act. The Marengo Portfolio Manager shall be responsible for overseeing the winding up and dissolution of Marengo and the Marengo Subsidiaries (including taking any actions required by Section 12.10), shall take full account of Marengo's and the Marengo Subsidiaries' liabilities and the Marengo Property, and shall cause the Marengo Property or the proceeds from the Disposition thereof, to the extent sufficient therefor, to be applied and distributed, to the maximum extent permitted by Law, in the following order:

      (i)    First, as provided in Section 17-804(a)(1) of the Act (including the payment of all Guaranteed Payments) with respect to Marengo and the Marengo Subsidiaries; and

      (ii)    Second, the balance, if any, to the Marengo Partners in an amount equal to their Capital Account balances, after giving effect to all contributions, Distributions, and allocations made for all periods through the end of the Liquidation Period; provided that cash shall be first applied and distributed to the Marengo Limited Partner and second to the Marengo General Partner.

      (b)    Reserves. In the reasonable good faith discretion of the Marengo Portfolio Manager, with the consent of the Marengo Limited Partner, a portion (determined in the manner provided below) of the Distributions that would otherwise be made to the Marengo Partners pursuant to Section 12.2(a) may be:

      (i)    Distributed to a trust established for the benefit of the Marengo Partners solely for the purposes of liquidating Marengo Property, collecting amounts owed to Marengo, and paying any reasonably anticipated contingent or unforeseen liabilities or obligations of Marengo arising out of or in connection with Marengo. The assets of any such trust shall be distributed to the Marengo Partners from time to time, in the reasonable good faith discretion of the Marengo Portfolio Manager, in the same proportions (as determined below) as the amount distributed to such trust by Marengo would otherwise have been distributed to the Marengo Partners pursuant to Section 12.2(a); or

      (ii)    Withheld to provide a reasonable reserve for reasonably anticipated Marengo liabilities (contingent or otherwise) and to allow for the collection of the unrealized portion of any installment obligations owed to Marengo; provided that such withheld amounts shall be distributed to the Marengo Partners as soon as practicable.

Marengo Partnership Agreement
NYDOCS03/494571

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT


EC21020A0090414

58

The portion of the Distributions that would otherwise have been made to each of the Marengo Partners that is instead distributed to a trust pursuant to Section 12.2(b)(i) or withheld to provide a reserve pursuant to Section 12.2(b)(ii) shall be determined in the same manner as the expense or deduction that would have been allocated if Marengo had realized an expense equal to such amounts immediately prior to a Distribution being made pursuant to Section 12.2(a).

12.3.    No Restoration of Deficit Capital Accounts. Notwithstanding anything in this Agreement to the contrary, if a Liquidating Event has occurred and Marengo is wound up in accordance with Section 12.2, no Marengo Partner shall be obligated to make any Capital Contributions to Marengo in respect of a deficit balance in its Capital Account, and such deficit shall not be considered to be a debt owed to Marengo or to any other Person for any purpose whatsoever; provided, however, that the Marengo General Partner shall be obligated to make such a Capital Contribution in cash to the extent of any amounts required to be contributed by the Marengo General Partner pursuant to Section 5.3 that have not yet been contributed.

12.4.    No Constructive Liquidation. In the event Marengo is liquidated within the meaning of Regulations Section 1.704-1(b)(2)(ii)(g) but no Liquidating Event has occurred, the Marengo Property shall not be liquidated, Marengo's liabilities shall not be paid or discharged, Marengo's affairs shall not be wound up and no adjustments to the Marengo Partners' Capital Accounts shall be made (except as otherwise specifically provided in Section 6).

12.5.    Rights of Marengo Partners. Each Marengo Partner shall look solely to the Marengo Property held by Marengo for the return of its Capital Contribution and, except as otherwise provided in Section 12.11, shall have no right or power to demand or receive property other than cash from Marengo.

12.6.    Occurrence of Liquidating Event. (a) A "*Liquidating Event*" will occur (the date of such occurrence being the "*Liquidation Start Date*") on the first Business Day occurring immediately after the expiration of the Purchase Option Period following the occurrence of a Termination Event unless prior to such date the Purchase Notice Date has occurred; provided that, if the Purchase Notice Date referred to in this Section 12.6(a) has occurred and a Purchase Default occurs on or prior to the Purchase Closing Date or if the condition described in Section 3(b)(iii) of the Purchase Option Agreement is not satisfied on the date of occurrence of a Termination Event, the Liquidation Start Date shall occur on the next Business Day following such Purchase Default or such Termination Event.

(b)    The Marengo Partners hereby agree that Marengo shall not be dissolved or required to be wound up notwithstanding the occurrence of an event that caused the last Marengo General Partner or Marengo Limited Partner to cease to be a Marengo General Partner or Marengo Limited Partner, as the case may be, if within ninety (90) days after such event (x) in the case such event relates to a Marengo Limited Partner, the Personal Representative (as defined in the Act) of the Marengo Limited Partner and the Marengo General Partner agree in writing to continue the

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090415

59

business of Marengo and to the admission, effective as of the date of such event, of one or more additional Limited Partners, or (y) in the case such event relates to a Marengo General Partner, the remaining Marengo Partners, agree in writing to continue the business of Marengo and to the appointment, effective as of the date of such event, of one or more additional General Partners.

12.7.  Allocations and Distributions During Period of Liquidation.  During the Liquidation Period, the Marengo Partners shall continue to share Profits, Losses and other items of Marengo income, gain, loss or deduction in the manner provided in Section 6 and Preferred Payments, Distributions and other payments shall continue to be made as set forth in Section 7.

12.8.  Character of Liquidating Distributions.  All payments made in liquidation of Marengo Partnership Interests shall be made in exchange for the interest of such Marengo Partner in Marengo Property pursuant to Section 736(b)(1) of the Code, including the interest of such Marengo Partner in Marengo goodwill.

12.9.  Liquidation Procedures.  Unless otherwise agreed by each Marengo Partner, the Marengo Portfolio Manager shall conduct the winding up of Marengo's business in accordance with the Act.  The Marengo Portfolio Manager expressly acknowledges that it is subject to the foregoing sentence.

12.10.  Form of Liquidating Distributions to Partners.  For purposes of making Distributions required by Section 12.2, the Marengo Portfolio Manager may determine whether to distribute to the Marengo Partners all or any portion of the Marengo Property in kind or to sell or otherwise liquidate all or any portion of the Marengo Property and distribute the proceeds therefrom, provided that the Marengo Portfolio Manager shall not distribute Marengo Property other than cash to the Marengo Limited Partner.  Following the payment in full in cash of all amounts due and payable to the Marengo Limited Partner hereunder, and if requested by the Marengo General Partner, Distributions in kind of the Marengo Property shall be made to the Marengo General Partner.


SECTION 13

INDEMNIFICATION AND CERTAIN LIMITATIONS ON DAMAGES

13.1.  Indemnification of the Marengo Partners.  Subject to the limitations set forth in Section 13.5, each of the Marengo General Partner and Marengo hereby agrees jointly and severally, to the fullest extent permitted by Law, to indemnify, hold harmless and pay, and the Marengo Portfolio Manager, or any receiver or trustee of Marengo (each of the foregoing Persons being an *"Indemnitor"*) (in the case of the Marengo Portfolio Manager, receiver or trustee, to the extent of Marengo Property) shall indemnify, hold harmless and pay, on an After-Tax Basis, all Expenses (the Expenses, on an After-Tax Basis, being collectively referred to as *"Indemnified*

60

*Amounts*") of any Indemnified Person which may be incurred or realized by or asserted against such Indemnified Person, relating to, growing out of or resulting from:

(i)    Marengo Obligations.  Any failure by Marengo, a Marengo Subsidiary or the Marengo General Partner to perform or observe each of its covenants and obligations under this Agreement or any other Operative Document to which it is a party or under which it is stated to have obligations (collectively, the "*Covered Documents*"), including Indemnified Amounts resulting from or arising out of or in connection with enforcement of the Covered Documents (or determining whether or how to enforce any Covered Documents, whether through negotiations, legal proceedings or otherwise), or responding to any subpoena or other legal process or informal investigative demand in connection herewith or therewith; or

(ii)    Representations and Warranties.  Any inaccuracy in, or any breach of, any written certification, representation or warranty made by or on behalf of Marengo, a Marengo Subsidiary or the Marengo General Partner in any Covered Document or in any written report or certification required hereunder or under any other Covered Document, in each case (A) if but only if such certification, representation or warranty is made as of a specific date, as of the date as of which the facts stated therein were certified, represented or warranted and (B) in all other cases, as of any date or during any period to which such certification, representation or warranty may be applicable; or

(iii)    Investigations: Litigation: Proceedings.  Any investigation, litigation or proceeding, whether or not such Indemnified Person is a party thereto, that (A) relates to, grows out of or results from any action or omission, or alleged action or omission, by or on behalf of or attributable to Marengo or a Marengo Subsidiary and (B) would not have resulted in Indemnified Amounts incurred or realized by or asserted against such Indemnified Person but for the Operative Documents or the transactions thereunder or contemplated thereby.

13.2.    Indemnification for Business Qualification Requirements.  Subject to the limitations set forth in Section 13.5, each Indemnitor (in the case of a receiver or trustee, to the extent of Marengo Property) shall indemnify, save harmless and pay, all Indemnified Amounts with respect to any Indemnified Person resulting from the failure of the Marengo Limited Partner or any other Indemnified Person to qualify to do business in any state (other than Delaware) or other jurisdiction in which the Marengo Limited Partner or a direct or indirect member, partner, shareholder or other equity holder of such a Marengo Partner would not be required to qualify to do business but for its being a Marengo Partner, or a direct or indirect member, partner, shareholder or other equity holder of such a Marengo Partner (assuming for this purpose that the Marengo Limited Partner (or such other Indemnified Person, as the case may be) had no contact with such state or other jurisdiction that would so require it to so qualify but for its being a Marengo Partner, or a direct or indirect member, partner, shareholder or other equity holder of such a Marengo Partner, as the case may be).

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090417

13.3.  Marengo Portfolio Manager and Sales Agent Indemnification. Subject to the limitations set forth in Section 13.5, if the Marengo Portfolio Manager or a Sales Agent is a Person other than the Marengo General Partner or an Affiliate of the Marengo General Partner, then Marengo, or in the event that Marengo has terminated, then the Marengo General Partner, shall indemnify, save harmless, and pay all Indemnified Amounts (including all sales charges, underwriting fees or discount and other Expenses that are payable in connection with any Disposition of Debt Securities) with respect to, or incurred on behalf of Marengo and any Marengo Subsidiaries by, each Indemnified Person, incurred, realized by or asserted against the Marengo Portfolio Manager or the Sales Agent, or their respective officers, directors, agents or employees, in connection with any Disposition of Marengo Property or the liquidation of Marengo, or by reason of any act performed or omitted to be performed by any of the foregoing in connection therewith, including reasonable attorneys' fees incurred by each Indemnified Person in connection with the defense of any litigation or other proceeding based on any such act or omission, or alleged act or omission, or any other investigation, litigation or proceeding, whether or not such Indemnified Person is a party thereto, arising in connection with any such Disposition or liquidation, and including any indemnity claims against the Marengo Portfolio Manager arising under Section 13.1.

13.4.  Survival of Indemnification Obligations. All indemnities provided for in this Agreement shall survive the Transfer or retirement of any Marengo Partnership Interest and the liquidation of Marengo. After any such Transfer, retirement or liquidation, the provisions of this Section 13 shall inure to the benefit of each Transferring Partner with respect to Indemnified Amounts arising in respect of the period during which such Transferring Partner was a Marengo Partner (including with respect to actions taken or omitted to be taken, and events occurring and circumstances existing, during such period).

13.5.  Limitations on Indemnification Obligations. The indemnities provided in Sections 13.1, 13.2 and 13.3 shall be subject to the following limitations:

(a)  Limitation by Law. Such sections shall be enforced only to the maximum extent permitted by Law.

(b)  Misconduct, Etc. No Person, and no controlling Affiliate of such Person in its own right (but without prejudice to the claims of Persons who are Indemnified Persons by reason of a relationship to such controlling Affiliate (such as an agent, employee, creditor or surety of such controlling Affiliate)) shall be indemnified from any liability solely caused by or resulting from (as determined by a final judgment of a court of competent jurisdiction) (i) the actual fraud, willful misconduct, bad faith or gross negligence of such Person or (ii) any inaccuracy in, or breach of, any written certification, representation or warranty made by such Person in any Covered Document or in any written report or certification required hereunder or under any other Covered Document unless such inaccuracy or breach is attributable to any written information provided by Enron or its Affiliates, in each case under this clause (ii) (A) if, but only if, such certification, representation or warranty is made as of

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT


EC21020A0090418

62

a specific date, as of the date as of which the facts stated therein were certified, represented or warranted and (B) in all other cases, as of any date or during any period to which such certification, representation or warranty may be applicable.

(c)    No Duplication. Indemnified Amounts under this Section 13 shall be without duplication of any amounts payable under, but shall also not limit in any way, indemnification provisions of any other Operative Document or any amounts actually paid thereunder.

(d)    General. Notwithstanding the provisions of this Section 13 to the contrary, no Indemnitor shall be required to pay, protect, indemnify, or hold harmless:

(i)    Any Indemnified Person for Indemnified Amounts arising solely from, or attributable to, disputes among the Nahanni Collateral Agent or any Marengo Portfolio Manager (other than a Marengo Portfolio Manager which is an Affiliate of Enron), CXC, the APA Purchasers, the Surety or the Equity Investors and that are not caused or contributed to in any material respect (as determined by a final judgment of a court of competent jurisdiction) by any act or omission of Yellowknife, Enron, or any of their respective Affiliates (other than, at any time when Enron or an Affiliate thereof is not the Marengo General Partner, Marengo and the Marengo Subsidiaries); or

(ii)    Any Indemnified Person for Indemnified Amounts arising solely from, or attributable to, the violation by such Indemnified Person of any Laws (including banking or securities laws), other than any such violation to the extent (as determined by a final judgment of a court of competent jurisdiction) (x) caused by Yellowknife, Enron or any of their respective Affiliates (other than, at any time when Enron or an Affiliate thereof is not the Marengo General Partner, Marengo and the Marengo Subsidiaries) or (y) resulting from the entering into of the Operative Documents and the transactions contemplated thereby.

13.6.    Payments; No Reduction of Capital Account. Any amounts subject to the indemnification provisions of this Section 13 shall be paid by the applicable Indemnitor within ten Business Days following demand therefor, accompanied, as may be appropriate in the context, by supporting documentation in reasonable detail. Payments to a Marengo Partner pursuant to this Section 13 shall not reduce the Capital Account of such Marengo Partner. To the extent Marengo is required to indemnify any Person hereunder, each such Indemnified Person shall be a creditor of Marengo to the extent of the Indemnified Amounts owing to such Indemnified Person hereunder from time to time. Payment shall be made to the bank account or at another location as such Indemnified Person shall designate in writing or as is expressly required under any Operative Document the obligations under which are the subject of any such payment, not later than 1:00 p.m. (New York time) on the date for such payment in immediately available funds.

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090419

63

13.7. Procedural Requirements. (a) Notice of Claims. Any Indemnified Person that proposes to assert a right to be indemnified under this Section 13 will, promptly after receipt of notice of commencement of any action, suit or proceeding against such Indemnified Person, or the incurrence or realization of Indemnified Amounts, in respect of which a claim is to be made against the relevant Indemnitor under this Section 13, notify the relevant Indemnitor of such incurrence or realization or of the commencement of such action, suit or proceeding, enclosing a copy of all papers served, but the omission so to notify the relative Indemnitor promptly of any such incurrence, realization, action, suit or proceeding shall not relieve (x) any Indemnitor from any liability that it may have to such Indemnified Person under this Section 13 or otherwise, except, as to such Indemnitor's liability under this Section 13, to the extent, but only to the extent, that such Indemnitor shall have been prejudiced by such omission or (y) any other Indemnitor from liability that it may have to any Indemnified Person under the Operative Documents.

(b) Defense of Proceedings. In case any such action, suit or proceeding shall be brought against any Indemnified Person and it shall notify the relevant Indemnitor of the commencement thereof, such Indemnitor shall be entitled to participate in, and to assume the defense of, such action, suit or proceeding with counsel reasonably satisfactory to such Indemnified Person, and after notice from such Indemnitor to such Indemnified Person of such Indemnitor's election so to assume the defense thereof and the failure by such Indemnified Person to object to such counsel within ten Business Days following its receipt of such notice. Such Indemnitor shall not be liable to such Indemnified Person for legal or other expenses incurred after such notice of election to assume such defense except as provided below and except for the reasonable costs of investigating, monitoring or cooperating in such defense subsequently incurred by such Indemnified Person reasonably necessary in connection with the defense thereof. Such Indemnified Person shall have the right to employ its counsel in any such action, suit or proceeding, but the fees and expenses of such counsel shall be at the expense of such Indemnified Person unless:

(i) the employment of counsel by such Indemnified Person at the expense of such Indemnitor has been authorized in writing by such Indemnitor;

(ii) such Indemnified Person shall have concluded in its good faith (which conclusion shall be determinative unless a court determines that conclusion was not reached in good faith) that there is or may be a conflict of interest between such Indemnitor and such Indemnified Person in the conduct of the defense of such action or that there are or may be one or more different or additional defenses, claims, counterclaims, or causes of action available to such Indemnified Person (it being agreed that in any case referred to in this clause (ii) such Indemnitor shall not have the right to direct the defense of such action on behalf of the Indemnified Person);

(iii) such Indemnitor shall not have employed counsel to assume the defense of such action within a reasonable time after notice of the commencement thereof; or

Marengo Partnership Agreement
NYDOCS03/494571            THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090420

64

(iv)    any counsel employed by such Indemnitor shall fail to timely commence or maintain the defense of such action,

in each of which cases the fees and expenses of counsel for such Indemnified Person shall be at the expense of such Indemnitor; provided that, without the prior written consent of such Indemnified Person no Indemnitor shall settle or compromise, or consent to the entry of any judgment in, any pending or threatened claim, action, investigation, suit or other legal proceeding in respect of which indemnification may be sought under this Section 13, unless such settlement, compromise or consent includes an unconditional release of such Indemnified Person from all liability for Expenses arising out of such claim, action, investigation, suit or other legal proceeding.

No Indemnified Person shall settle or compromise, or consent to the entry of any judgment in, any pending or threatened claim, action, investigation, suit or other legal proceeding in respect of which any payment by any Indemnitor would result hereunder or under the other Operative Documents without the prior written consent of the relevant Indemnitor, such consent not to be unreasonably withheld or delayed.

THE FOREGOING INDEMNITY SHALL EXPRESSLY INCLUDE ANY INDEMNIFIED AMOUNTS ATTRIBUTABLE TO THE ORDINARY, SOLE OR CONTRIBUTORY NEGLIGENCE OF ANY INDEMNIFIED PERSON, BUT SHALL EXCLUDE ANY SUCH INDEMNIFIED AMOUNTS ATTRIBUTABLE TO THE GROSS NEGLIGENCE, FRAUD OR WILLFUL MISCONDUCT OF SUCH INDEMNIFIED PERSON. IT IS THE INTENT OF THE PARTIES HERETO THAT THE INDEMNIFIED PERSONS, SHALL, TO THE EXTENT PROVIDED IN THIS SECTION 13, BE INDEMNIFIED FOR THEIR OWN ORDINARY, SOLE OR CONTRIBUTORY NEGLIGENCE.

13.8.  Consequential Damages.  IN NO EVENT SHALL ANY PARTY TO THIS AGREEMENT OR ANY OTHER OPERATIVE DOCUMENT OR ANY INDEMNITOR BE LIABLE TO ANY OTHER PARTY TO THIS AGREEMENT OR ANY OTHER OPERATIVE DOCUMENT OR ANY INDEMNIFIED PERSON, IRRESPECTIVE OF WHETHER ALLEGED TO BE BY WAY OF INDEMNITY OR AS A RESULT OF BREACH OF CONTRACT, BREACH OF WARRANTY, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, OR ANY OTHER LEGAL THEORY, AND WHETHER ARISING BEFORE OR AFTER THE COLLECTION DATE, FOR DAMAGES THAT CONSTITUTE PUNITIVE, EXEMPLARY, INCIDENTAL, SPECIAL, INDIRECT, OR CONSEQUENTIAL DAMAGES OF ANY NATURE WHATSOEVER.

## SECTION 14

## MISCELLANEOUS

14.1.  Notices.  Any notice, payment, demand, or communication required or permitted to be given by any provision of this Agreement shall be in writing or by facsimile and shall be deemed to have been delivered, given, and received for all purposes (a) if delivered personally,

Marengo Partnership Agreement
NYDOCS03/494571                THIS AGREEMENT IS SUBJECT TO
                        A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090421

65

to the Person or to an officer of the Person to whom the same is directed or (b) when the same is actually received (if on a Business Day, or, if not, on the next succeeding Business Day), if sent either by courier or delivery service or certified mail, postage and charges prepaid, or by facsimile, if such facsimile is followed by a hard copy of the facsimile communication sent by certified mail, postage and charges prepaid, addressed as follows, or to such other address as such Person may from time to time specify by notice to the Marengo Partners:

(i)     If to Marengo, to the address set forth in the first sentence of Section 2.7, with copies sent to the Marengo General Partner at its address set forth in Section 2.2; and

(ii)    If to a Marengo Partner, to the address set forth in Section 2.2.

14.2.  **Binding Effect**.  Except as otherwise provided in this Agreement, every covenant, term and provision of this Agreement shall be binding upon and inure to the benefit of the Marengo Partners and their respective permitted successors, transferees, and assigns (including any assignee for security purposes or Person holding a security interest). This Agreement and the rights and obligations hereunder may not be assigned to any Person other than a Permitted Transferee, without the prior written consent of the Required Marengo Partners.

14.3.  **Severability**. Except as otherwise provided in the succeeding sentence, every provision of this Agreement is intended to be severable, and, if any term or provision of this Agreement is illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the validity or legality of the remainder of this Agreement. The preceding sentence of this Section shall be of no force or effect if the consequence of enforcing the remainder of this Agreement without such illegal or invalid term or provision would be to cause any Marengo Partner to lose the benefit of its economic bargain.

14.4   **Set-Off**.  (a) Except to the extent set forth in Sections 3.8(c) and 10.5, Marengo shall not be entitled to offset against any payments required to be made by it hereunder any claims that it may have against any Marengo Limited Partner, and hereby waives any set-off rights that it may have in respect of any such Marengo Limited Partner.

(b)     Marengo is hereby authorized at any time after the Liquidation Start Date, to the fullest extent permitted by Law, to set-off and otherwise apply any and all Distributions owing to the Marengo General Partner against any and all obligations of the Marengo General Partner under the Operative Documents, although such obligations may be unmatured.  The rights of Marengo under this Section 14.4(b) are in addition to any other rights and remedies (including, without limitation, other rights of set-off) that Marengo or the Marengo Portfolio Manager may have.

14.5.  **Construction**.  The terms of this Agreement are intended to embody the economic relationship among the Marengo Partners and shall not be subject to modification by or

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT



EC21020A0090422



66

conform with any actions by any governmental authority except as this Agreement may be explicitly so amended.

14.6. <u>Governing Law</u>. The Laws of the State of Delaware shall govern this Agreement.

14.7. <u>Counterpart Execution</u>. This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement. Delivery of an executed counterpart of a signature page to this Agreement by telecopier shall be as effective as delivery of a manually executed counterpart of this Agreement.

14.8. <u>Specific Performance</u>. Each Marengo Partner agrees with the other Marengo Partners that the other Marengo Partners would be irreparably damaged if any of the provisions of this Agreement are not performed in accordance with their specific terms and that monetary damages would not provide an adequate remedy in such event. Accordingly, it is agreed that, in addition to any other remedy to which the nonbreaching Marengo Partners may be entitled, at law or in equity, the nonbreaching Marengo Partners shall be entitled to injunctive relief to prevent breaches of the provisions of this Agreement and specifically to enforce the terms and provisions of this Agreement in any action instituted in any court of the United States or any state thereof having subject matter jurisdiction thereof.

14.9. <u>Amendments</u>. Amendments, restatements and corrections to and cancellations of this Agreement may be proposed by any Marengo Partner by notice to Marengo and each other Marengo Partner. Following such proposal, the Marengo General Partner on behalf of Marengo shall submit to the Marengo Partners a verbatim statement of any proposed amendment, restatement, correction or cancellation and shall seek the written vote of the Marengo Partners thereon or shall call a meeting to vote thereon and to transact any other business that it may deem appropriate. A proposed amendment, restatement, correction or cancellation shall be adopted and be effective as an amendment, restatement, correction or cancellation of this Agreement only if such amendment, restatement, correction or cancellation is in writing and receives the affirmative vote of all the Marengo Partners.

14.10. <u>Waiver of Jury Trial</u>. EACH OF THE MARENGO PARTNERS HEREBY IRREVOCABLY WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY.

14.11. <u>Consent to Jurisdiction and Service of Process</u>. The parties hereto hereby (a) consent to the non-exclusive jurisdiction of (i) the courts of the State of Delaware and (ii) the United States District Court for the District of Delaware sitting in Wilmington, Delaware and (b) consent to service of process delivered by certified mail addressed to, in the case of the Marengo

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090423

67

General Partner, its corporate secretary. This Section 14.11 shall not be construed as limiting a party's ability to bring an action in any other jurisdiction or to serve process by any other legal means. Notwithstanding the foregoing to the contrary, to the fullest extent permitted by Law, the parties agree that any action brought in any court of the State of Delaware shall be brought in a court sitting in New Castle County, Delaware.

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090424

IN WITNESS WHEREOF, the parties have entered into this Amended and Restated Partnership Agreement as of the day first above set forth.

Marengo:

MARENGO, L.P.
By: its General Partner

YELLOWKNIFE INVESTORS, INC.

By: _____ SMS

Name: *William W. Brown*
Title: *President*

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090425

Marengo General Partner:                    YELLOWKNIFE INVESTORS, INC.

By·    _William W. Brown_                    sms
                Name: William W. Brown
                Title: President

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC2102DA0090426

Marengo Limited Partner:

NAHANNI INVESTORS L.L.C.,

By: MACKENZIE RIVER INVESTORS, LLC,
   Its Managing Member

   By: CRESCENT/MACH I PARTNERS, L.P.,
     as its Sole Member

   By: TCW ASSET MANAGEMENT COMPANY
     Its Investment Manager

   By: _____
     Name: Jonathan R. Insull
     Title: Vice President

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0090427

Initial Marengo Limited Partner:                    ENRON CORP.

By:   _William W. B_____  sms
      Name: William W. Brown
      Title: Deputy Treasurer

Marengo Partnership Agreement
NYDOCS03/494571

THIS AGREEMENT IS SUBJECT TO
A WRITTEN CONFIDENTIALITY AGREEMENT

EC21020A0098428

Document Excerpted to Reduce Bulk