**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ENRON CREDITORS RECOVERY CORP., *et al.*,<br><br>               Reorganized Debtors. | 07 Civ. 10612<br><br>Chapter 11<br>Case No. 01-16034 (AJG)<br><br>Jointly Administered |
| ENRON CORP., *et al.*,<br><br>             Plaintiffs,<br><br>          v.<br><br>CITIGROUP, INC., *et al.*,<br><br>             Defendants. | Adv. Pro. No. 03-09266 |

**CITIGROUP DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO WITHDRAW THE REFERENCE**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ........................................................................................................ i

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 4

    I.     The Motion To Withdraw Is Timely ......................................................................... 4

    II.    The Common Law Claims Are Not Rendered Core, Nor Are the
            Jury Trial Rights With Respect To These Claims Forfeited, Based
            on a Factual Relationship To Citigroup's Proofs of Claim ...................................... 7

            A.     Jury Trial Rights:. ....................................................................................... 8
            B.     Core/Non-core ........................................................................................... 13

    III.   CXC, CRC and CAFCO ......................................................................................... 15

    IV.   Enron's Bifurcation Proposal is Meritless ............................................................. 17

    V.    Complexity Provides Independent "Cause" To Withdraw The
            Reference Here ........................................................................................................ 19

CONCLUSION .................................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

CASES

*ABF Capital Mgmt.* v. *Kidder Peabody & Co.* (*In re Granite Partners, L.P.*),
210 B.R. 508 (Bankr. S.D.N.Y. 1997) ............................................................................... 18

*Aetna Inc. Co.* v. *Kennedy*,
301 U.S. 389 (1937) ........................................................................................................... 13

*Agudas Chasidei Chabad* v. *Gournay*,
833 F.2d 431 (2d Cir. 1987) .............................................................................................. 19

*Alexander* v. *Hillman*,
296 U.S. 222 (1935) ............................................................................................................. 9

*Beacon Theatres, Inc.* v. *Westover*,
359 U.S. 500 (1959) ........................................................................................................... 18

*Bianco* v. *Hoehn*
(*In re Gaston & Snow*), No. 94 Civ. 0485(LMM), 173 B.R. 302 (S.D.N.Y. Oct.
31, 1994) .............................................................................................................................. 6

*Braniff Int'l Airlines, Inc.* v. *Aeron Aviation Res. Holdings II, Inc.*
(*In re Braniff Int'l Airlines, Inc.*), 159 B.R. 117 (E.D.N.Y. Sept. 30, 1993) .................... 20

*Complete Mgmt. Inc.* v. *Arthur Andersen, LLP*
(*In re Complete Mgmt., Inc.*), No. 02 Civ. 1736(NRB) 2002 WL 31163878
(S.D.N.Y. Sept. 17, 2002) .................................................................................................. 20

*Delta Air Lines* v. *City of Los Angeles* (*In re Delta Airlines Inc.*),
No. 07 Civ. 2649(DC), 2007 WL 3166776 (S.D.N.Y. Oct. 30, 2007) ............................. 14

*Ernst & Young* v. *Bankr. Servs. Inc.* (*In re CBI Holding Co.*),
311 B.R. 350 (S.D.N.Y. 2004) ............................................................................... 11, 12, 13

*First Fid. Bank* v. *Hooker Inv., Inc.* (*In re Hooker Inv., Inc.*),
937 F.2d 833 (2d Cir. 1991) .............................................................................................. 11

*Franklin Ridgewood Assocs.* v. *Catwil Corp.* (*In re Franklin Ridgewood Assocs.*),
Adv. No. 90-0591S, 1990 WL 153572 (Bankr. E.D. Pa. Oct. 11, 1990) ........................... 20

*Germain* v. *Conn. Nat'l Bank*,
988 F.2d 1323 (2d Cir. 1993) .............................................................................................. 8

*Granfinanciera S.A.* v. *Nordberg*,
    492 U.S. 33 (1989) .................................................................... 3, 8, 9, 10, 11

*Hedstrom Corp.* v. *Wal-Mart Stores, Inc.* (*In re Hedstrom Corp.*),
    No. 04-38543, 2006 WL 1120572 (N.D. Ill. Apr. 24, 2006) ................ 16

*In re Commercial Fin., Inc.*,
    251 B.R. 397 (Bankr. N.D. Okla. 2000) ............................................. 16

*Iridium IP LLC* v. *Motorola, Inc.* (*In re Iridium Operating LLC*),
    373 B.R. 283 (Bankr. S.D.N.Y. 2007) ............................................... 14

*N. Am. Energey Conservation, Inc.* v. *Interstate Energy Res., Inc.*
    (*In re N. Am. Energy Conservation, Inc.*), No. 00 CIV 4302 (SHS),
    2000 WL 1514614 (S.D.N.Y. Oct. 12, 2000) ..................................... 16

*Judge* v. *Schweigert*
    (*In re Leedy Mortg. Co.*), 62 B.R. 303 (E.D. Pa. 1986) ........................ 19

*Katchen* v. *Landy*,
    382 U.S. 323 (1966) ............................................. 2, 3, 7, 9, 10, 11, 14

*Langenkamp* v. *Culp*,
    498 U.S. 42 (1990) ................................................................ 3, 9, 10, 11,

*N. Pipeline Const. Co.* v. *Marathon Pipeline Co.*,
    458 U.S. 50 (1982) ........................................................................ 14

*O'Connell* v. *Terranova* (*In re Adelphia Inst. Inc.*),
    112 B.R. 534 (S.D.N.Y. 1990) .......................................................... 6

*Official Comm. of Unsecured Creditors* v. *Am. Tower Corp.*,
    No. 05 Civ. 6268 (RPP), 2005 WL 3455775 (S.D.N.Y. Dec. 15, 2005) ................. 6

*OHC Liquidation Trust* v. *Credit Suisse* (*In re Oakwood Homes Corp.*),
    No. 04-57060(PJW), 2007 WL 4031606 (Bankr. D. Del. Nov. 15, 2007) ................ 12, 16, 17

*Paracor Fin., Inc.* v. *General Elec. Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996) ........................................................... 16

*Parklane Hosiery Co.* v. *Shore*,
    439 U.S. 322 (1979) ....................................................................... 19

*Reding* v. *Gallagher*
    (*In re Childs*), 342 B.R. 823 (M.D. Ala. 2006) .................................... 7

*Resolution Trust Corp.* v. *Best Products Co.* (*In re Best Products Co.*),
    68 F.3d 26 (2d Cir. 1999) ............................................................... 14

*Solutia Inc.* v. *FMC Corp.*,
No. 04 Civ. 2842 (WHP), 2004 WL 1661115 (S.D.N.Y. July 27, 2004) ............................. 15

*Times Circle E., Inc.* v. *Edward Isaacs & Co.* (*In re Times Circle E., Inc.*),
Adv. No. 95/8248A, 1995 WL 489551, at *3 (S.D.N.Y. Aug. 15, 1995) ................................ 6

*Urban Outfitters, Inc.* v. *166 Enterprise Corp.*,
136 F. Supp. 2d 273 (S.D.N.Y. 2001) ................................................................. 13

## STATUTES

11 U.S.C. § 502 ......................................................................................... 9

28 U.S.C. § 157 ................................................................................ 14, 15, 21

## PRELIMINARY STATEMENT

Enron has provided no meritorious response to Citigroup's motion to withdraw the reference in this case.

As its primary argument, Enron contends that Citigroup's motion to withdraw the reference should be rejected as untimely. Enron characterizes this motion as a "belated gambit" by Citigroup both to "judge shop" and "to delay trial" and says that Citigroup gave "[no] indication that it intended to object" to trial of this action in the bankruptcy court. (Enron Br. 1-2, 21-26.) Enron's professed surprise is disingenuous. Moreover, its timeliness objection is incomprehensible in view of the positions that Enron has previously taken with this Court.

In a brief submitted to this Court late last year, Enron acknowledged the Bank Defendants' intention to move to withdraw the reference in this case but stated that such a motion would be premature until the case was "trial ready." Specifically, in its brief in opposition to the Bank Defendants' motion for leave to appeal the Core Order, Enron wrote:

> Throughout the Motion for Leave, the Bank Defendants state they will file a motion to have this Court withdraw the reference of this adversary proceeding to the Bankruptcy Court. *Id.* at 2, 4, 12, 13, 18-19. **That motion would be premature if filed now**, as the Bank Defendants acknowledge. *Id.* at 17 n.9 (citing cases where **withdrawal of the reference is premature when the case is not "trial ready"**).

(*See* Ex. H to Karp Decl. at 23 (emphases added).)

Consistent with Enron's own position on -- and the correct view of -- the applicable law, Citigroup waited to bring this motion until this case approached "trial readiness." (In fact, dispositive motions have yet to be made and will not be fully briefed for more than three months). Citigroup's motion to withdraw the reference is clearly timely.

Enron's argument to the contrary -- like its suggestion that the timing of the motion somehow reflects improper motives on the part of Citigroup -- is regrettable.

The rest of Enron's brief rests on repeating the constitutionally infirm "factual relatedness" and "logical connection" test improperly used by the bankruptcy court. The proofs of claim filed by certain Citigroup defendants (and the affirmative defenses asserted by these defendants to like effect) do not transform the quintessentially common law causes of action asserted by Enron into claims within the core jurisdiction of the bankruptcy court. In determining whether or not a cause of action is core, Second Circuit precedent specifically directs courts to consider the fundamental "nature" of the cause of action, not the alleged factual connection between the cause of action and proofs of claim. It is clear that, by their "nature," the common law claims are not core bankruptcy matters.

Enron's brief applies the same "factual relatedness" analysis to argue that these defendants have forfeited their jury trial rights with respect to the common law claims. But the only such "forfeiture" ever approved by the relevant Supreme Court cases arises in the specific context of preference and fraudulent conveyances actions, because of a specific statutory requirement under the Bankruptcy Code. No statute or Supreme Court precedent requires or permits the forfeiture of jury trial rights with respect to the common law claims based on a factual "nexus" with Citigroup's proofs of claim.

Indeed, the Supreme Court's rationale in these cases turned on the fact that, in resolving the preference objection to a proof of claim (as required under the Bankruptcy Act), the bankruptcy court would *necessarily resolve* every conceivable issue that could arise in the estate's affirmative claim to recover that preference. *See Katchen* v. *Landy*, 382 U.S. 323, 334 (1966). Thus, "nothing [would] remain[ ] for adjudication in a plenary suit" before a jury. *Id.* at 334. It was only in that narrow circumstance that the estate's *legal*

2

claim against a debtor could be "convert[ed]" into a matter triable in *equity*. *Id.* at 336. Under *Katchen*, *Granfinanciera* and *Langenkamp*, the estate's claim objection must be *congruent* with its affirmative legal claim for relief against the creditor in order for that affirmative claim to be triable in equity without a jury. Enron cannot pretend that this is the case here. There can be no possible suggestion that a determination of Enron's statutory objections to Citigroup's proofs of claim will necessarily determine all of the substantial factual and legal issues (including, among many others, questions of *in pari delicto*, causation, deepening insolvency damages and comparative fault) that the trial court and fact finder must resolve in connection with Enron's common law causes of action. Citigroup's proofs of claims (and affirmative defenses) have no effect on its jury trial rights with respect to Enron's common law claims.

As a fallback, Enron suggests that the Citigroup defendants (including CXC, CRC and CAFCO) have contractually waived any right to a jury trial in the Mega Claim based on alleged jury trial waivers in "many" of the Citigroup challenged transactions. (*See* Enron Br. 38.) Enron does not seriously pursue this argument. Its half-hearted argument (and string citation to various transaction documents) does not remotely sustain its heavy burden to demonstrate that the Citigroup defendants knowingly waived their Seventh Amendment rights to a jury trial with respect to the claims in this action.

Finally, Enron has offered virtually nothing to rebut Citigroup's argument that the length and complexity of this "Mega" trial, in and of itself, constitutes sufficient "cause" to withdraw the reference in this case. Enron does not dispute that the trial in this case will be exceedingly lengthy and complex; that it will raise difficult trial management, evidentiary and other legal issues more commonly resolved by the district courts than by the bankruptcy courts; or that a trial of this magnitude lies well outside the intended purpose and

core competency of bankruptcy courts. Instead, Enron offers the single example of a 50-day trial conducted by one bankruptcy judge in this district (and devoted to the bankruptcy issue of solvency, just one of the many issues to be tried in this case). This lone example speaks volumes. As a matter of efficiency and fairness, this case belongs in the district court.

Enron's repeated suggestion that this court should somehow bifurcate this case (all the while insisting elsewhere in its brief that all of the claims are factually interconnected) smacks of desperation. (*See, e.g.*, Enron Br. 29, 42-43, 46.) The idea that the equitable subordination action should proceed in bankruptcy court while the rest of the action waits to be tried in district court makes absolutely no sense from the perspective of efficiency and fairness and would contravene the Citigroup defendants' constitutional right to a jury trial on the common law claims. Enron's other bifurcation suggestions (such as trying the claims against CXC, CRC and CAFCO in the district court while the rest of the case proceeds in bankruptcy court) are equally senseless. The obvious inefficiency and wastefulness of these proposals suggests that it is Enron that is improperly "judge-shopping" (*see* Enron Br. 2) here.[1]

## ARGUMENT

### I.    The Motion To Withdraw Is Timely

The undisputed chronology demonstrates that Citigroup (and the other Bank Defendants) have at all times made clear their intention to move to withdraw the reference in this case and have appropriately and responsibly pursued that objective. Moreover, as Enron itself has argued to this Court, such a motion would have been premature until the case was "trial ready."

---

[1]    Enron's opposition brief devotes considerable space to detailing Enron's allegations against Citigroup. While Citigroup vigorously disputes these allegations, a detailed refutation is irrelevant to the current motion. That is for the trial in this matter.

Enron filed the operative complaint in this action, the Fourth Amended Complaint, in January 2005.[2]  By stipulation, Enron agreed to extend Citigroup's time to respond to the Fourth Amended Complaint to October 2005 and Citigroup filed its Answer at that time.  In July 2005, Barclays filed a motion before the bankruptcy court seeking an initial determination that the common law claims are core.  Barclays brought that motion, in compliance with applicable law, as an express precursor to a motion to withdraw the reference.  (*See* Mem. of Law in Support of Motion for Initial Determination Under 28 U.S.C. § 157(b)(3) That Certain Claims Are Non-Core Claims, July 26, 2005, at 2 (explaining that the motion was brought "to comply with the apparent requirement in this Circuit that [a party] seek an initial determination [from the bankruptcy court] that such claims are non-core **before filing its motion to withdraw the reference** with respect to such claims.") (emphasis added).)[3]  Enron opposed the motion and Citigroup joined it.  In August 2006, the bankruptcy court rendered its decision finding that the common law claims were within the core jurisdiction of the bankruptcy court.

Promptly thereafter, in September 2006, the Bank Defendants (including Citigroup) moved for leave to appeal the Core Order.  They did so expressly for the purpose of ensuring that a district court would not be bound by the bankruptcy court's Core Order in connection with a subsequent motion to withdraw the reference.  In its brief, the Bank

---

[2]  Contrary to Enron's suggestion, it would have made absolutely no sense for Citigroup (or any defendant) to have moved to withdraw the reference in this case based on the first complaint filed in this action in September 2003.  The complaint remained a moving target – with numerous plaintiffs, defendants and claims added and subtracted – until the current, Fourth Amended version was filed in January 2005.  *See* Ex. 52 to Heyn Decl. Indeed, Citigroup did not even file answers to each of the iterations of the complaint, *see id.*, since, on a number of occasions, Enron advised Citigroup that a particular version would soon be superseded by further amendment.

[3]  This document is attached as Exhibit 1 to the accompanying Reply Declaration of Brad S. Karp in Further Support of the Citigroup Defendants' Motion to Withdraw the Reference, dated December 21, 2007 (the "Reply Karp Decl.").

Defendants pointed to case law from this district indicating that a motion to withdraw the reference may be premature where the case was not trial ready. (*See* Ex. G to Karp Decl. 17 n.9.) In its November 2006 brief to this Court opposing the Motion for Leave, Enron insisted that a motion to withdraw the reference by the Bank Defendants would be premature until the case was trial ready. Specifically, Enron wrote:

> Throughout the Motion for Leave, the Bank Defendants state they will file a motion to have this Court withdraw the reference of this adversary proceeding to the Bankruptcy Court. *Id.* at 2, 4, 12, 13, 18-19. **That motion would be premature if filed now**, as the Bank Defendants acknowledge. *Id.* at 17 n.9 (citing cases where **withdrawal of the reference is premature when the case is not "trial ready"**).

(Ex. H to Karp Decl at 23 (emphases added); *see also id.* at 3 ("In the Motion for Leave, **the Bank Defendants repeatedly state their intention to move to withdraw the reference** of this adversary proceeding to the Bankruptcy Court. That motion has not yet been filed because the Bank Defendants acknowledge that **it is premature**." (emphases added; internal citations omitted)).) The Motion for Leave was fully briefed in December 2006 and is currently pending before this Court.

Numerous courts in this district, including in adversary proceedings relating to the Enron bankruptcy case, have held that a motion to withdraw the reference was premature until the case was trial-ready. (*See* Opening Br. at 17 n. 27.[4]) In any event,

---

[4]     *See also Official Comm. of Unsecured Creditors* v. *Am. Tower Corp.*, No. 05 Civ. 6268 (RPP), 2005 WL 3455775, at *3 (S.D.N.Y. Dec. 15, 2005) (denying motion to withdraw as "premature" without prejudice to it being brought "at the appropriate time"); *Bianco* v. *Hoehn (In re Gaston & Snow)*, No. 94 Civ. 0485 (LMM), 173 B.R. 302, 307 (S.D.N.Y. Oct. 31, 1994) (denying motion to withdraw as "premature," but stating movants "may renew their motion, if necessary, when the case is ready for trial"); *Times Circle East, Inc.* v. *Edward Isaacs & Co. (In re Times Circle E., Inc.)*, Adv. No. 95/8248A, 1995 WL 489551, at *3 (S.D.N.Y. Aug. 15, 1995) ("the motion for withdrawal of the reference is denied without prejudice to renewal when the case is ready for trial"); *O'Connell* v. *Terranova (In re Adelphia Inst. Inc.)*, 112 B.R. 534, 538 (S.D.N.Y. 1990) ("the

6

because the Bank Defendants initiated the process of moving to withdraw the reference in this case less than seven months after the complaint in this action finally came to rest (and three months *before* Citigroup filed its answer), the cases that Enron cites finding such motions untimely where no action was taken for eighteen months or more (or where the motion involved egregious tactical maneuvering) have no relevance here. (*See* Enron Br. 22, 25-26.[5]) In view of the relevant law and Enron's prior arguments to this Court, Enron has no basis to object to the timing of this motion.[6]

## II.    The Common Law Claims Are Not Rendered Core, Nor Are the Jury Trial Rights With Respect To These Claims Forfeited, Based on a Factual Relationship To Citigroup's Proofs of Claim

According to Enron, the factual "nexus" between Citigroup's proofs of claim and the common law causes of action both renders the common law claims core and strips the Citigroup defendants of any jury trial rights with respect to these claims. (*See* Enron Br. 3-5, 28-38.) In making this argument, Enron improperly conflates the analysis and caselaw

---

appropriateness of removal of the case to a district court for trial by jury, on asserted Seventh Amendment grounds, will become a question ripe for determination if and when the case becomes trial ready").

[5]    Indeed, it bears mentioning that in the *Childs'* case from the Middle District of Alabama, on which Enron principally relies, the court denied the motion to withdraw as untimely where the movant had litigated the case in bankruptcy court for three years "without mention[ing]" or "[bringing] to anyone's attention" the fact that the party intended to move to withdraw the reference, did so only on "the eve of trial" and after its motion for summary judgment had been denied, and substantially reargued its summary judgment motion in the motion to withdraw the reference. *See Reding* v. *Gallagher (In re Childs)*, 342 B.R. 823, 828-30 (M.D. Ala. 2006). The facts at issue in *Childs*, as in the other cases cited in Enron's brief, bear no resemblance to those here.

[6]    Given that Citigroup and the other Bank Defendants have consistently and repeatedly stated their intention to move to withdraw the reference in this case and given Enron's insistence, until now, that such motion would be premature until this case was trial ready, Enron's criticism of Citigroup for "actively participat[ing] in an array of discovery and motion practice" and "calendaring pretrial and trial dates" in the bankruptcy court or for accurately representing in various conferences or hearings that this matter is scheduled to be tried in the bankruptcy court in April 2008 (Enron Br. 23-24), is inappropriate.

7

relevant to the Seventh Amendment question of whether jury trial rights exist with the separate and distinct analysis and caselaw applicable to the Article III question of whether or not a claim is core.   Enron's assertion that the Seventh Amendment jury trial right and Article III "core/non-core" questions are "interrelated" (or "closely related"), *see* Enron Br. 28 & n.26, is directly contrary to controlling Second Circuit precedent.  Indeed, the Second Circuit has ruled that the fact that a proceeding is deemed to be "core" is "entitled to minimal weight" in determining whether the constitutional right to a jury trial exists. *Germain* v. *Conn. Nat'l Bank*, 988 F.2d 1323, 1327-28 (2d Cir. 1993).

In all events, whether or not there is a factual "nexus" between Citigroup's proofs of claim and the common law causes of action does not affect the constitutional calculus relevant to either question.  Nor does it matter that Enron has "styled" its common law claims as objections and counterclaims, *see* Enron Br. 17.  These quintessential non-core common law claims are not converted into core claims by virtue of a supposed factual "nexus," and the jury trial rights with respect to these claims are not forfeited.[7]

A.    **Jury Trial Rights**: Enron does not dispute that, under the *Granfinanciera* two-step analysis, the common law claims asserted by Enron carry jury trial rights. According to Enron, however, these jury trial rights are forfeited based on a factual

---

[7]   Enron repeatedly refers to Citigroup's "massive" claims against the estate and suggests that it has been "required" by the bankruptcy court to reserve $4 billion dollars with respect to the indemnity claims filed on behalf of certain of the Citigroup defendants. (*See, e.g.*, Enron Br. 3, 15.)  The suggestion is misleading.  The bankruptcy court never estimated these claims; it simply entered an agreed-upon order between Citigroup and Enron establishing a reserve in this amount.  Moreover, as that order expressly provides, the reserve amounts "shall (a) not constitute an acknowledgement or admission of liability, or lack thereof, amount or validity, or lack thereof, with respect to any Affected Claim and (b) **not be relevant to the resolution of any issue in any court or tribunal** other than to enforce the provisions of Section 21.3 of the Plan before this Court. . . ." *See* Ex. 4 to the Heyn Decl., Combined Order, Pursuant to 11 U.S.C. §§ 105(a), 502(c) and 1142, Estimating Certain Contingent Claims for Purposes of Establishing Reserves, Nov. 3, 2005, at 2 (emphasis added).

relationship between these common law claims and Citigroup's proofs of claim (and parallel affirmative defenses of set off and indemnity). But given the importance of the Seventh Amendment right to a jury trial, the only such "forfeiture" ever approved by the Supreme Court arose in the limited context of preference and fraudulent conveyance actions, *see Katchen,* 382 U.S. 323 (1996) (discussing preference); *Granfinanciera S.A.* v. *Nordberg,* 492 U.S. 33 (1989) (discussing fraudulent conveyance); *Langenkamp* v. *Culp,* 498 U.S. 42 (1990) (discussing preference), based on the fact that there is a specific statutory requirement under the Bankruptcy Code that these avoidance questions be fully resolved before a proof of claim filed by a creditor can be allowed.[8]

Because the Bankruptcy Code mandates that a court *must* disallow "any claim of any entity" that received and has not returned a preferential or fraudulent transfer, *see* 11 U.S.C. § 502(d), the Supreme Court has determined that these questions "[u]navoidably and by the very terms of the Act," *Katchen*, 382 U.S. at 330, become "part of the claims-allowance process which is triable only in equity," *Langenkamp*, 498 U.S. at 44. *See also Germain*, 988 F.2d at 1329 ("before a claim may be allowed, a court *must* resolve any preference issues that the trustee might raise") (emphasis in original). Enron has not identified, and there is no analogous statutory requirement that the common law causes of actions, seeking billions of dollars in compensatory (as well as punitive) damages, be resolved as part of the "claims allowance process." Thus, Enron's position, if accepted here,

---

[8]  It is notable that the one Supreme Court case that Enron quotes at length in discussing the question of jury trial rights is *Alexander* v. *Hillman*, 296 U.S. 222 (1935) (*see* Enron Br. 4, 31-32), a case that had nothing to do with jury trial rights. Indeed, that case dealt with the question of personal jurisdiction -- specifically, whether a receivership court had "jurisdiction of the persons" with respect to counterclaims "cognizable in equity" asserted by the receiver where the creditor had submitted to the jurisdiction of the court by filing a claim against the estate. *Id.* at 231, 238-39. In all events, the counterclaims at issue in that case concerned alleged fraudulent conveyances. *Id.* at 235-36.

would expand the definition of the "claims allowance process" to sweep in any affirmative claim for relief brought by the estate that shares "operative facts" with certain proofs of claim, and thus would represent a staggering expansion of a very limited doctrine concerning the forfeiture of a constitutional right.

The Supreme Court in *Katchen*, based its holding on the facts that (1) the bankruptcy court was statutorily required to resolve the preference objection in connection with the summary (*i.e.*, without a jury) claims allowance process, and (2) the determination of that preference objection would necessarily resolve every conceivable issue that might arise in a separate plenary action (with jury trial rights) by the estate to recover the preference. As the *Katchen* Court explained:

> in passing on the [statutory preference] objection, a bankruptcy court *must necessarily* determine the amount of preference, if any, so as to ascertain whether the claimant, should he return the preference, has satisfied the condition imposed by [section 57(g) of the Bankruptcy Act] on allowance of the claim. Thus once a bankruptcy court has dealt with the preference issue *nothing remains for adjudication* in a plenary suit. . . . To require the trustee to commence a plenary action in such circumstances would be a meaningless gesture.

382 U.S. at 334 (emphases added). The Supreme Court took pains to emphasize that its ruling did not imply that the bankruptcy court "has summary jurisdiction to adjudicate a demand by the trustee for affirmative relief, all of the substantial factual and legal bases for which have not been disposed of in passing on objections to the claim." *Id.* at 333 n.9.

Thus, the *Katchen*, *Granfinanciera* and *Langenkamp* line of cases, which concern only preference and fraudulent conveyance actions, turns on the fact that every element of the estate's affirmative claim for relief "must necessarily" be determined in connection with the estate's claim objection. Here, Enron's objections to Citigroup claims concededly would not resolve "all of the substantial factual and legal" issues (including,

10

among countless others, questions of *in pari delicto*, causation, deepening insolvency damages and comparative fault) that must be resolved in connection with Enron's common law claims.[9]

Enron's insistence that "the claims asserted by Citigroup satisfy any *conceivable* requirement that those claims relate to Enron's actions in order . . . to waive any claimed right of jury trial," (*see* Enron Br. 34 (emphasis in original)), entirely misses the point. It is simply not enough that the proofs of claim *relate* in some way to the estate's affirmative claims for relief (or that they "stem from the same transaction" or involve the "same operative facts"). Under *Katchen*, *Granfinanciera* and *Langenkamp*, the estate's claim objection must be *congruent* with its affirmative legal claim for relief against the creditor in order for that affirmative claim to be triable in equity without a jury. Enron cannot pretend that this is the case here.[10] The Citigroup defendants' jury trial rights on the common law claims require the withdrawal of the reference here.

---

[9] The most that Enron suggests is that the resolution of the common law claims may be related to the question of whether certain contractual exclusions for "bad faith, gross negligence or willful misconduct" by the indemnified party apply with respect to contractual indemnity rights asserted in certain Citigroup proofs of claim (and parallel affirmative defenses). *See* Enron Br. 5, 35. In fact, it is far from certain that the question of Citigroup's state of mind would be conclusively determined for purposes of the common law claims in connection with adjudicating Enron's objections to Citigroup's proofs of claim. Among numerous other issues, the contractual exclusion Enron cites encompasses "gross negligence" which would fall far short of the "knowing" conduct that Enron must prove in connection with its common law claims.

[10] Indeed, the one Second Circuit case approving the "forfeiture" of jury trial rights where a creditor filed a proof of claim concerned preference and fraudulent conveyance actions. *See First Fid. Bank* v. *Hooker Inv., Inc.* (*In re Hooker Inv., Inc.*), 937 F.2d 833 (2d Cir. 1991).

Enron cites *Ernst & Young* v. *Bankr. Servs. Inc.* (*In re CBI Holding Co.*), 311 B.R. 350 (S.D.N.Y. 2004), as adopting its expansive reading of the *Katchen*, *Granfinanciera* and *Langenkamp* line of cases. In *CBI*, the district court determined that Ernst & Young lost its jury trial rights with respect to the estate's affirmative claims of negligence, breach of contract and fraud -- and that "the legal issues relevant to [these] claims have been converted to issues of equity" -- based on a factual relationship to the Ernst & Young's proof of claim, such that "success on [the common law claims] would result in the

As a fallback position (in three pages of its brief), Enron suggests that the Citigroup defendants have contractually waived any right to a jury trial with respect to the common law claims based on alleged jury waivers in "many" of the Citigroup challenged transactions. (*See* Enron Br. 38-46.) But Enron does not -- and cannot -- contend that its common law claims, alleging that the Citigroup defendants engaged in a broad-based conspiracy, are limited to the fifteen Citigroup transactions specifically challenged in the Mega Complaint.[11] Thus, even if certain individual transaction documents contain jury waiver rights in favor of Enron, these cannot waive a jury trial with respect to the far broader common law claims. *See OHC Liquidation Trust* v. *Credit Suisse (In re Oakwood Homes Corp.)*, Adv. No. 04-57060 (PJW), 2007 WL 4031606 at *10 (Bankr. D. Del. Nov. 15, 2007) (where action alleged breaches of "far broader duties, not arising from any written contract," broad jury waivers in transaction documents forming part of alleged wrongdoing were "far too limited" to apply).

In all events, Enron asserts that there are jury waiver provisions in only ten (of these fifteen) transactions. (*See* Enron Br. 38-39.) And even with respect to this subset of transactions, Enron does not demonstrate (as is its burden) that *each* Citigroup defendant

---

disallowances of Ernst & Young's Proof of Claim." *Id.* at 366 (internal quotations omitted). Citigroup submits that *CBI* is wrongly decided; it ignores the crucial reasoning in *Katchen*, that an affirmative legal claim is only converted into an equitable claim when it is entirely congruent with a claim objection triable in equity. Notably, the question of whether Ernst & Young had jury trial rights with respect to the estate's common law claims (along with the question of whether the "factual relationship" was sufficient to convert these inherently non-core common law claims into core bankruptcy matters) is currently on appeal to the Second Circuit. The Court heard argument in September 2005 but has yet to render a decision. *See In re CBI Holding Co.*, 04-5972 (2d Cir. argued Sept. 19, 2005).

[11] For example, the Mega Complaint alleges that the Bank Defendants' (including Citigroup's) investments in the LJM2 limited partnership operated by Enron's CFO – not among the fifteen challenged Citigroup transactions – is evidence of the Bank Defendants' knowing participation in Enron's fraud, *see* Compl. ¶¶ 222-24, 245-60.

executed a jury waiver in favor of the relevant Enron plaintiff – Enron Corp. Enron Corp. asserts the common law claims against *each* of the Citigroup defendants, but the Complaint's factual allegations are typically directed at "Citigroup" as an undifferentiated whole, and Enron seeks to hold *each* Citigroup defendant liable for the totality of these allegations. (*See, e.g.*, Complaint ¶ 28 (alleging each Citigroup defendant acted as the "control person, successor, agent, co-conspirator, alter ego, and/or co-venture partner of the others as to the matters discussed herein and are collectively referred to in this Complaint as 'Citigroup.'").

Enron's superficial argument (and string citation to various transaction documents) does not remotely sustain its heavy burden to demonstrate that each of the Citigroup defendants knowingly waived its Seventh Amendment right to a jury trial with respect to the common law causes of action.[12]

**B.     Core/Non-core:** Relying on the same factual relationship between its common law claims and Citigroup's proofs of claim, Enron contends that its common law claims are "counterclaims" to Citigroup's proofs of claim and thereby fit within the examples of "core" proceedings set forth in 28 U.S.C. §157(b)(2) – specifically, Section 157(b)(2)(C) "counterclaims by the estate against persons filing claims against the estate." However, as previously discussed in Citigroup's opening brief (and in the Bank Defendants' briefs on the Leave to Appeal the Core Order), while the literal wording of the Section

---

[12]  *See, e.g., Aetna Inc. Co.* v. *Kennedy*, 301 U.S. 389, 393 (1937) (because "the right of jury trial [in a civil case] is fundamental, courts indulge every reasonable presumption against waiver"); *Urban Outfitters, Inc.* v. *166 Enterprise Corp.*, 136 F. Supp. 2d 273, 275 (S.D.N.Y. 2001) ("Courts are to strictly construe jury waiver clauses, as the right to a jury trial is fundamental and protected by the Seventh Amendment. This right can only be waived knowingly and intentionally and waiver is not lightly inferred or extended. As such, the burden of proving an intentional waiver is upon the party asserting waiver . . .") (citations omitted).

157(b)(2) examples could be read to sweep in virtually any matter relating to a bankruptcy, the Supreme Court's decision in *Marathon* rules out such an expansive interpretation. (*See* Opening Br. 28-29.) Indeed, Section 157(b) itself provides the limiting principle for the interpretation of these examples: core proceedings must "aris[e] under title 11, or aris[e] in a case under title 11." 28 U.S.C. § 157(b)(1).

Enron's common law claims indisputably do not arise under title 11; nor do they arise in a case under title 11. The common law claims arose pre-petition, seek to vindicate private rights arising under state law, would exist whether or not Enron had filed for bankruptcy and seek only money damages. As the Second Circuit has admonished, "an open-ended, limitless construction [of Section 157(b)(2)] would be incorrect. A determination of whether a matter is 'core' depends on the nature of the proceeding." *Resolution Trust Corp.* v. *Best Products Co. (In re Best Products Co.)*, 68 F.3d 26, 31 (2d Cir. 1995). By their nature, the common law claims are non-core. Their nature cannot be changed because they are factually related to Citigroup's proofs of claim, or because Enron has styled them as "counterclaims," so that they fall within the literal wording of Section 157(b)(2)(C).[13] The non-core nature of the common law claims "strongly weighs in

---

[13] Indeed, the core/non-core dichotomoy addresses the question whether Article III allows Congress to assign adjudication of a cause of action to a non-Article III tribunal. As *Marathon* made clear, if a cause of action is not a "public right" for Article III purposes, then Congress may not assign its adjudication to a specialized non-Article III court. *See N. Pipeline Const. Co.* v. *Marathon Pipeline Co.*, 458 U.S. 50, 71, 84 (1982). If no act of Congress can assign these common law causes of action to the Bankruptcy Court's core jurisdiction, then surely, no act of the parties to the litigation can do so. But that is Enron's essential argument here and the basis for the bankruptcy court's Core Order: that Enron, by asserting these common law claims as counterclaims to the Citigroup defendants' proofs of claim, conferred Article III jurisdiction on the Bankruptcy Court and rendered the common law counts core.

Enron cites a number of cases finding that inherently non-core claims become core when they are asserted as counterclaims to a creditor's proof of claim. *See, e.g., In re CBI Holding Co.*, 311 B.R. 350; *Iridium IP LLC* v. *Motorola, Inc. (In re Iridium Operating LLC)*, 373 B.R. 283 (Bankr. S.D.N.Y. 2007); *Delta Air Lines* v. *City of Los Angeles (In*

favor of withdrawal of the reference." *See Solutia Inc.* v. *FMC Corp.*, No. 04 Civ. 2842 (WHP), 2004 WL 1661115, at *3 (S.D.N.Y. July 27, 2004); Opening Br. 31-32.

## III.    CXC, CRC and CAFCO

As demonstrated in Citigroup's opening brief, CXC, CRC and CAFCO did not file proofs of claim in the Enron bankruptcy; thus, there can be no argument that these entities have somehow lost their jury trial rights with respect to either the fraudulent conveyance claims (seeking to recover $1.7 billion from them) or the common law claims (seeking to recover over $18 billion on a joint-and-several basis) that Enron has asserted against them. In response, Enron has advanced a number of arguments; none has merit.

*First*, Enron contends that CXC, CRC and CAFCO have filed claims against the estate because these entities are Citigroup "affiliates" and thus covered by certain indemnity claims Citigroup filed on behalf of its "affiliates." Contrary, to Enron's assertions, these entities have *no* pending proofs of claim in the Enron bankruptcy. Citigroup's indemnity proofs of claim were filed on behalf of "certain of its affiliates" that had been sued by third parties in Enron-related litigation. (*See* Exs. 36 and 38 to the Heyn Decl..) CXC, CRC and CAFCO are not among the affiliates specifically listed on the proofs of claim; they have not been sued in any of the litigations specifically listed on the proofs of claim; nor have they *ever* been sued by *any* third parties in any Enron-related litigation. *Id.*; *see also* Karp Reply Decl. ¶ 3. Enron does not and cannot claim otherwise.[14] No matter

---

*re Delta Airlines Inc.)*, No. 07 Civ. 2649 (DC) 2007 WL 3166776 (S.D.N.Y. Oct. 30, 2007). Citigroup submits that these cases are wrongly decided as they ignore the limitation in Section 157(b)(1) that core proceedings must arise under title 11 or in a case under title 11, as well as the Second Circuit's directive that determination of whether a matter is "core" turns on the fundamental "nature" of the claim. The issue is currently pending before the Second Circuit in connection with the appeal of *CBI*. *See supra* n.10.

[14]   For this reason, it is unnecessary to address the question of whether CXC, CRC and CAFCO – in which Citigroup has no ownership interest – are properly considered "affiliates" (or the question of whether the Bankruptcy Code's expansive definition or

what Enron says, these indemnity claims are simply not asserted on behalf of CXC, CRC or CAFCO.[15]

      *Next*, Enron contends that even if these entities have not lost their jury trial rights by asserting claims against the estate, they nevertheless have waived their jury trial rights in the relevant transaction documents. In fact, as discussed above, Enron has not come close to carrying its burden of demonstrating contractual waivers signed by these defendants for the benefit of each of the relevant Enron plaintiffs, much less waivers of sufficient scope to waive the broad conspiracy claims alleged in the common law counts.[16]

---

other more restrictive definitions of "affiliates" should apply in connection with an analysis of jury trial rights).

[15] Enron contends that even if no proofs of claim were filed on their behalf (and none was), the fact that the Answer (filed on behalf of all Citigroup defendants) asserts affirmative defenses of set-off and indemnity generally on behalf of all defendants constitutes a claim by each of these defendants against the estate. The fact that, as a protective matter (as well as a matter of efficiency), the affirmative defenses were asserted by the Citigroup defendants on an undifferentiated basis should not be seen to create a claim by CXC, CRC or CAFCO where no right to indemnity or set-off has in fact been advanced. In fact, in the cases Enron relies on, the creditor advanced a particular basis for the affirmative defense of indemnity or set-off. *See, e.g., Hedstrom Corp.* v. *Wal-Mart Stores, Inc.* (*In re Hedstrom Corp.*), No. 04-38543, 2006 WL 1120572, at *1 (N.D. Ill. Apr. 24, 2006); *N. Am. Energy Conservation, Inc.* v. *Interstate Energy Res., Inc.* (*In re N. Am. Energy Conservation, Inc.*), No. 00 CIV 4302 (SHS), 2000 WL 1514614, at *1 (S.D.N.Y. Oct. 12, 2000); *In re Commercial Fin., Inc.*, 251 B.R. 397, 404 (Bankr. N.D. Okla. 2000).

[16] For example, while Enron notes that CRC and CAFCO were parties to a contract containing a jury trial waiver (Enron Br. 39-40; *see also* Ex. 74 to Heyn Decl.), only Enron North America, Inc., was a beneficiary of that waiver. But the common law claims against CRC and CAFCO are asserted by Enron Corp. (*see* Compl. ¶¶ 1267-1601 (Count 74; Count 75; Count 76)) and the fraudulent conveyance counts against these defendants are based on certain transfers allegedly made by Enron Corp. and Enron Natural Gas Marketing Corp. (*see* Compl. ¶ 729 (Count 3)). *See Paracor Fin., Inc.* v. *General Elec. Capital Corp.*, 96 F.3d 1151, 1166 (9th Cir. 1996); (contractual jury waiver "may not be invoked by one who is not a party to the contract"); *OHC Liquidation Trust* v. *Credit Suisse* (*In re Oakwood Homes Corp.*), No. 04-57060 (PJW), 2007 WL 4031606, at *9-10 (Bankr. D. Del. Nov. 15, 2007) (contractual jury waiver for the benefit of one entity cannot be invoked by its affiliates). All of the contractual jury waiver provisions that Enron points to contain similar defects, and Enron does not even try to explain how they apply. In fact, none of them is broad enough to apply to Enron's sweeping common law claims, which seek to hold each Citigroup defendant responsible

*Finally*, Enron misleadingly suggests that it has sued CXC, CRC and CAFCO only for fraudulent transfers,[17] and argues that, to the extent these entities have jury trial rights, the fraudulent transfer claims against them should be severed and tried to a jury in the district court while the rest of the case, including the common law claims, goes forward in the bankruptcy court.  Enron argues that "the tail should not wag the dog," (*see* Enron Br. at 15), and the jury trial rights of CXC, CRC and CAFCO should not be a basis to withdraw the entire action.  Here, again, Enron's argument is entirely at odds with its own complaint. Enron seeks to recover *$1.7 billion* from these entities in connection with its fraudulent conveyance claims (out of a total of $2.7 billion) and Enron seeks to hold these entities jointly and severally liable for *$18 billion* with respect to the common law claims.  Some "tail."

## IV.    Enron's Bifurcation Proposal is Meritless

Enron's suggestion that this Court should bifurcate this case (even though Enron insists that all of the claims are factually interconnected[18]) smacks of desperation. Enron argues that, at a minimum, the equitable subordination action should proceed in bankruptcy court while the rest of the action waits to be tried in district court.[19]  But this

---

for every transaction in which any Citigroup defendant participated.  *See In re Oakwood Homes*, 2007 WL 4031606, at *10.

[17]  Enron repeatedly refers to these entities as  "avoidance defendants," "[defendants] being sued for receiving avoidable transfers," "defendants in connection with various avoidance actions," and "defendants on some of the preference and fraudulent transfer claims."  *See, e.g.*, Enron Br. 3, 15, 41.

[18]  *See,* Enron Br. 17 ("the same SPE transactions that serve as a basis for many of the Citigroup defendants' proofs of claim also form the basis for Enron's claims for common law damages, equitable subordination, and preference/fraudulent transfer avoidance that are asserted in the Complaint"); *see also id.* 3, 5, 29, 34-35.

[19]  *See* Enron Br. 29 (even if jury trial rights require withdrawal of certain claims "there would be no basis to withdraw the reference as to the equitable subordination actions, which should be tried before the Bankruptcy Court in the first instance"), 46 ("this Court should allow the Bankruptcy Court to decide this unique bankruptcy issue [the equitable

proposal makes absolutely no sense from the perspective of efficiency and fairness, and would contravene the Citigroup defendants' constitutional right to a jury trial on the common law claims.

Enron predicates its claim for equitable subordination on the same factual allegations that underlie its common law claims. (*See, e.g.,* Compl. ¶ 1261.) Thus, equitable subordination "is merely an alternative remedy for the same wrong." *See ABF Capital Mgmt.* v. *Kidder Peabody & Co.* (*In re Granite Partners, L.P.*), 210 B.R. 508, 517 (Bankr. S.D.N.Y. 1997); *see also id.* (a "plaintiff cannot recover damages and obtain equitable subordination for the same wrong"). If Enron prevails on its common law claims (which, incidentally, seek to recover damages far in excess of the value of the Citigroup proofs of claim that Enron seeks to subordinate) then Enron "will be made whole, and will not be entitled to any further legal or equitable relief." *Id.*

Moreover, Enron's proposal of trying the factually related equitable subordination actions first while the legal claims with jury rights wait in the wings would contravene the Supreme Court's clear directive that, "wherever possible," courts should exercise their discretion to ensure that "the right to a jury trial of legal issues [is not] lost through prior determination of equitable claims." *Beacon Theatres, Inc.* v. *Westover*, 359 U.S. 500, 510-11 (1959). Indeed, in similar circumstances, the bankruptcy court in *In re Granite Partners* concluded that the only feasible options were either for the district court to try the equitable subordination claim along with the common law claims or for the equitable subordination claim to remain stayed in the bankruptcy court and resolved on the basis of collateral estoppel *after* the common law claims were adjudicated in the district court. *In re Granite Partners*, 210 B.R. at 517 n.7 ("adjudication of the equitable subordination claim,

___

subordination action] first, and withdraw the reference, if at all, only after the equitable subordination proceedings have concluded").

either directly by the district court or indirectly based upon the collateral estoppel effect given to any judgment it enters, will promote judicial economy without interfering with the administration of these estates").[20]    The sheer inefficiency and wastefulness of Enron's position are palpable. [21]

## V.    **Complexity Provides Independent "Cause" To Withdraw The Reference Here**

Enron offers virtually nothing to rebut Citigroup's argument that the length and complexity of this "Mega" trial, in and of itself, constitutes sufficient "cause" to withdraw the reference in this case. Enron does not dispute that this case will be exceedingly lengthy and complex. Nor does it dispute that this case will raise difficult trial management, evidentiary and other legal issues more commonly resolved by federal district courts than by the bankruptcy courts. Indeed, Enron does not dispute that a trial of this magnitude lies well outside the intended purpose and core competency of bankruptcy courts.

---

[20] While Enron cites *In re Granite Partners* in its brief, *see* Enron Br. 43, not surprisingly Enron ignores its central holding. Instead, in support of its argument that the adjudication of the equitable subordination action precede a jury trial on the common law claims, Enron cites cases where no jury trial right existed on the legal claims, *see Agudas Chasidei Chabad* v. *Gournay*, 833 F.2d 431 (2d Cir. 1987) (Enron Br. 45, 46), and where the prior equitable proceeding had been brought by an entirely different plaintiff (the SEC) and the question was whether adverse findings against the defendant could be given collateral estoppel effect in a subsequent legal proceeding brought by securities plaintiffs, *see Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322 (1979) (Enron Br. 45).

[21] Enron's other bifurcation suggestions -- trying the "factually distinct" preference and fraudulent conveyance claims against CXC, CRC and CAFCO in the district court *after* the rest of the case, including the equitable subordination and common law claims, proceeds in bankruptcy court, *see* Enron Br. 42 – is equally senseless. First, Enron's suggestion once again ignores that CXC, CRC and CAFCO have also been sued on the common law claims. Second, it is simply not the case that the avoidance actions against these defendants are "factually distinct." Enron's preference and fraudulent conveyance claims, like its common law claims, concern the challenged transactions and allege that these transactions were disguised "loans" made to conceal Enron's financial condition and eventual insolvency. *See, e.g.,* Compl. ¶¶ 708, 719, 732, 1240, 1244 ("These transfers . . . were made to assist the Insiders in presenting misleading or incomplete financial information about Enron . . ."). Thus, none of the cases Enron cites (*see* Enron Br. 42) remotely supports the approach it urges here.

The fact that, in response to these arguments, Enron invokes a single 50-day trial conducted by one bankruptcy judge in this district devoted to the bankruptcy issue of solvency – just one of the issues to be tried in this case – is telling.[22]  As a matter of efficiency and fairness, this case belongs in the district court.

## CONCLUSION

For the foregoing reasons, the Citigroup defendants respectfully request that this Court grant the Motion to Withdraw the Reference under 28 U.S.C. § 157 (d).

Dated: New York, New York
          December 21, 2007

                                        Respectfully submitted,

                                        /s/  Brad S. Karp
                                        Brad S. Karp (bkarp@paulweiss.com)
                                        Stephen J. Shimshak
                                        Douglas R. Davis
                                        Michael Gertzman
                                        Claudia L. Hammerman
                                        PAUL, WEISS, RIFKIND, WHARTON &
                                        GARRISON LLP

---

[22]  Enron does not dispute that this Court has discretion to withdraw the reference for "cause" based on the length and complexity of the trial in this action.  Instead, Enron confines itself to criticizing the cases cited in Citigroup's opening brief (*see* Enron Br. 46-48).  Enron's criticism is entirely misplaced.  For example, based on the bankruptcy court decision in *Franklin Ridgewood Assocs.* v. *Catwil Corp.* (*In re Franklin Ridgewood Assocs.*), Adv. No. 90-0591S, 1990 WL 153572 (Bankr. E.D. Pa. Oct. 11, 1990), Enron suggests that *Judge* v. *Schweigert* (*In re Leedy Mortg. Co.*), 62 B.R. 303 (E.D. Pa. 1986), "no longer seems to be good law."  Enron Br. 47.  Of course, a bankruptcy court decision cannot overrule a decision of the district court.  Moreover, *Franklin Ridgewood Assocs.* declined to follow *In re Leedy Mortg. Co.* on the question of transferring a debtor's adversary proceeding to another district, it had nothing to do with -- and did not even discuss -- the question of withdrawing the reference to the district court of the same district where the bankruptcy is pending.  Finally, cases in this district, including *Complete Mgmt., Inc.* v. *Arthur Andersen, LLP* (*In re Complete Mgmt., Inc.*), No. 02 Civ. 1736(NRB) 2002 WL 31163878, at *3 (S.D.N.Y. Sept. 17, 2002) and *Braniff Int'l Airlines, Inc.* v. *Aeron Aviation Res. Holdings II, Inc.* (*In re Braniff Int'l Airlines, Inc.*), 159 B.R. 117, 126 (E.D.N.Y. Sept. 30, 1993), cited in Citigroup's opening brief (*see* Opening Br. 32-33), continue to rely on *In re Leedy Mortg. Co.* for its analysis of "cause" for withdrawal of the reference.

1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000

*Attorneys for Citigroup Inc., Citibank, N.A., Citigroup Global Markets, Inc., Citicorp North America, Inc., Citigroup Financial Products, Inc., Citigroup Global Markets Ltd., CXC LLC, Corporate Asset Funding Company, LLC, and Corporate Receivables Corporation, LLC.*