UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                       :
In re:                                   :   Chapter 11
     ENRON CREDITORS RECOVERY  :   Case No. 01-16034 (AJG)
     CORP., et al.,                       :   Jointly Administered
                                         :   Adv. Pro. No. 03-09266 (AJG)
               Reorganized Debtors.  :   M 47 (GEL)
-------------------------------------------------------------x
                                       :
ENRON CORP., et al.,                  :
                                         :
               Plaintiffs,          :
                                         :   **OPINION AND ORDER**
   -against-                         :
                                         :   07 Civ. 10612 (GEL)
CITIGROUP, INC., et al.,             :
                                         :
               Defendants.         :
                                         :
-------------------------------------------------------------x

David M. Stern, Klee Tuchin, Bogdanoff & Stern LLP, Los Angeles, CA, William J. McSherry, Jr., Crowell & Moring LLP, New York, NY, H. Lee Godfrey (Kenneth S. Marks, Mary Kathryn Sammons, and James T. Southwick, of counsel), Susman Godfrey L.L.P., Houston, TX, Scott E. Ratner (Albert Togut and Richard Milin, of counsel), Togut, Segal & Segal LLP, New York, NY, Richard L. Wasserman (Michael Schatzow, of counsel), Venable LLP, Baltimore, MD, for plaintiffs and reorganized debtors.

Brad S. Karp (Stephen J. Shimshak, Douglas R. Davis, Michael Gertzman, and Claudia L. Hammerman, of counsel) Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, for the Citigroup defendants.

GERARD E. LYNCH, District Judge:

      This opinion addresses two related but separately filed applications by various financial institutions in connection with proceedings in the United States Bankruptcy Court for the Southern District of New York relating to the bankruptcy of Enron Corp. Citigroup Inc. (and

various affiliated entities) (collectively "Citigroup"),[1] Deutsche Bank AG (and various affiliates) (collectively "Deutsche Bank"),[2] and Barclays PLC (and various affiliates) (collectively "Barclays")[3] (together, the "Bank Defendants") initially sought leave to appeal from a decision of the Bankruptcy Court ruling that various claims brought against them and by Enron in an adversary proceeding in that Court are core bankruptcy claims within the meaning of 28 U.S.C. § 157(b)(2), Enron Corp. v. Citigroup Inc. (In re Enron Corp.), 349 B.R. 108, 115 (Bankr. S.D.N.Y. 2006), and Citigroup separately moves to withdraw the reference to the Bankruptcy Court of the adversary proceeding. Since both Barclays and Deutsche Bank have subsequently settled with Enron, Citigroup is the only financial institution who seeks judicial resolution of these motions,[4] both of which will be denied.

---

[1] The "Citigroup" entities represented in these actions are Citigroup Inc., Citibank, N.A., Citigroup Global Markets, Inc., Citigroup Global Markets Ltd., Citigroup Financial Products Inc., CXC LLC ("CXC"), Corporate Asset Funding Company, LLC ("CAFC"), and Corporate Receivables Corporation, LLC ("CRC").

[2] The "Deutsche Bank" entities represented in these actions are Deutsche Bank AG, Deutsche Bank Trust Company Americas, Deutsche Bank Securities Inc., Deutsche Bank Luxembourg, S.A., Deutsche Bank Trust Company Delaware, Deutsche Bank Trust Corporation, Bankers Trust International plc, BT Commercial Corp., DB Green, Inc., Deutsche Leasing New York Corp., Seneca Delaware, Inc., Deutsche Bank S.A., DB Ever, Inc. (f/k/a BT Ever, Inc.), and Seneca Leasing Partners, L.P.

[3] The "Barclays" entities are Barclays PLC, Barclays Bank PLC, Barclays Capital Inc., Barclays Capital Securities Limited, Barclays Physical Trading Limited, and Barclays Metals Limited.

[4] Citigroup and Deutsche Bank, together with Barclays, jointly moved for leave to appeal the Bankruptcy Court's order; Barclays, however, had provisionally settled its dispute with Enron by the time Enron filed its opposition papers on November 27, 2006. (See Opp. Mot. for Leave to Appeal 1 n.1.) By December 21, 2006, the Bankruptcy Court approved the final settlement between Barclays and Enron (see Adv. Pro. Order of Dec. 21, 2006, Doc. 586), and thereafter Barclays was not involved in the motion for leave to appeal. Citigroup initially moved to withdraw the reference solely on its own behalf. On December 3, 2007, Deutsche Bank moved for leave to join that application (see Deutsche Bank Joinder), and on January 8, 2008,

## BACKGROUND

Since the spectacular collapse of Enron in 2001, the resulting bankruptcy proceedings have been handled by the Hon. Arthur Gonzalez of the United States Bankruptcy Court for the Southern District of New York. The Bank Defendants, along with other financial institutions, filed various proofs of claim against Enron in the Bankruptcy Court, with Citigroup seeking in excess of $150 million,[5] as well as general claims for contribution and indemnification in connection with litigation brought by third parties against Citigroup resulting from Enron's frauds.[6]

---

after settling with Enron (see Adv. Pro. Order of Dec. 27, 2007, Doc. 652), withdrew that motion (see Withdrawal of Deutsche Bank Joinder). Because it had already settled with Enron, Barclays neither joined Citigroup's motion to withdraw the reference in the first place, nor filed papers on its own behalf. (See Opp. Mot. to Withdraw Ref. 17 n. 17.)

[5] Proofs of claim filed by Citigroup exceed $168 million. (See Claim nos. 12102, 12103, 12105, 12106, 12107, 12108, 12109.) Citigroup defendants also filed proofs of claim asserting indemnity and setoff (see Claim nos. 12104, 12843, 14503, 14504, 14505), and assigned billions of dollars in claims to other entities (see Claim nos. 11731-11742). Proofs of claim filed by Barclays exceed $85 million. See Enron, 349 B.R. at 110. Proofs of claim filed by Deutsche Bank exceed $125 million. (See Claim nos. 12799, 12798, 12800, 12797.)

[6] The parties dispute whether all the Citigroup "affiliates," including CXC, CRC, and CAFCO, have filed claims against the estate. Citigroup has filed proofs of claim "on behalf of . . . its subsidiaries" (see Claim no. 14503, Attachment ¶2; Claim no. 14504, Attachment ¶ 2) and on behalf of "certain of its affiliates" (see Claim no. 12843, Attachment ¶ 2, Claim no. 14505, Attachment ¶ 2), seeking reimbursement for expenses in legal proceedings "by reason of Claimants' commercial relationship with the Debtor and its affiliates" (Claim no. 12843, Attachment ¶ 4; Claim no. 14505, Attachment ¶ 4) and indemnity, contribution, and setoff "arising from, among other things, Claimants' commercial relations with the Debtor and its affiliates" (Claim no. 12843, Attachment ¶ 3; Claim no. 14505, Attachment ¶ 3). Citigroup contends that CXC, CRC, and CAFCO did not file claims against Enron because they "are not among the affiliates specifically listed on the proofs of claim." (Mot. to Withdraw Ref. Reply Mem. 15, citing Claim nos. 12843, 14504.) However, since the claims were filed on behalf of affiliates "including" those specifically named, the "affiliates" on whose behalf the claims were filed included entities other than those specifically named. (See Claim no. 12843, Attachment ¶ 2; Claim no. 14505, Attachment ¶ 2.) Citigroup provides no convincing argument why CXC, CRC, and CAFCO were not affiliated entities for purposes of the relevant proofs of claim. (See

As a result of the eventual confirmation of Enron's bankruptcy plan, the present reorganized Enron operates as a litigation trust. Its principal function is to collect and administer, and ultimately distribute, Enron's remaining assets, including its claims against various financial institutions for alleged misconduct arguably contributory to Enron's fraudulent activities and eventual collapse. In 2003, Enron counterclaimed against these financial institutions, including the Bank Defendants, alleging that they engaged in a scheme with the senior management of pre-bankruptcy Enron to manipulate and misstate Enron's financial condition, to the detriment of Enron. The Bank Defendants argued in response that Enron's claims were not core bankruptcy matters under 28 U.S.C. § 157(b)(2), and demanded a jury trial with respect to non-core matters. In an opinion and order filed on August 14, 2006, the Bankruptcy Court ruled that Enron's claims against the Bank Defendants were core claims. Enron, 349 B.R. at 115.[7] The Bank Defendants then moved in this Court for leave to appeal that ruling.

---

also note 11.)

[7] Barclays initially filed the motion seeking a determination of the core/non-core issue. (Adv. Pro. Doc. Nos. 363, 364.) Only after that motion was fully briefed did Citigroup move to join Barclays's motion, adopting Barclays's arguments and adding supplemental briefing in support of some of those arguments. (Adv. Pro. Doc. No. 503.) Deutsche Bank also joined Barclays's motion. (Adv. Pro. Doc. No. 518.) Although the bulk of the briefings discussed the legal issues as they related to Barclays's situation, and although the Bankruptcy Court's August 2006 ruling specifically discussed the claims against Barclays, the reasoning and the ruling apply equally to the claims against Citigroup and Deutsche Bank. Citigroup recognizes that the Bankruptcy Court "held that the Common Law Counts against Barclays and similarly situated co-defendants, including Citigroup and Deutsche Bank, were core claims pursuant to Sections 157(b)(2)(B) and (C) and that it thus had jurisdiction over the Common Law Counts." (Mot. for Leave to Appeal 10.)

The Bankruptcy Court proceeded to manage discovery and other pre-trial proceedings, moving toward a trial of these matters, now scheduled to begin on April 28, 2008. On November 27, 2007, Citigroup moved in this Court to withdraw the reference of these matters to the Bankruptcy Court, seeking to have this Court take over trial of the claims against them. That motion was fully briefed as of the end of December 2007, and is now ripe for decision by this Court.

## DISCUSSION

### I.     Motion for Leave to Appeal

Like appeals from district courts, appeals from the bankruptcy court are subject to the final judgment rule. That is, piecemeal appeals of interlocutory orders are disfavored, and appeals as of right as a general matter may be taken only from a final judgment. See Fed. R. Bankr. P. 8001(a); 28 U.S.C. § 158(a)(1); Bogaerts v. Shapiro (In re Litas Intern., Inc.), 316 F.3d 113, 116 (2d Cir. 2003). However, district courts are empowered to authorize, in their discretion, appeals from interlocutory orders. Appeals from non-final bankruptcy court orders may be taken either pursuant to 28 U.S.C. § 158(a)(3) or under the collateral order doctrine. In re Adelphia Comm. Corp., 333 B.R. 649, 657 (S.D.N.Y. 2005).[8]

---

[8] Pursuant to the collateral order doctrine, as first set forth in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546-47 (1949), "[a]n interlocutory order may be appealed . . . where the decision would (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action[ ], and (3) be effectively unreviewable on appeal from a final judgment." Adelphia, 333 B.R. at 657-58 (citations and internal quotation marks omitted). "A decision is not reviewable as a collateral order unless it satisfies all three requirements." In re Worldcom, Inc., No. M-47, 2005 WL 1208519, at *1 (S.D.N.Y. May 19, 2005) (citations and internal quotation marks omitted). Citigroup does not contend that the Bankruptcy Court's order may be appealed as of right under the collateral order doctrine.

Appeals made pursuant to 28 U.S.C. § 158(a)(3) are only appropriate where, as in interlocutory appeals from district court orders made pursuant to 28 U.S.C. § 1292(b), (1) the lower court's ruling involves a controlling question of law; (2) there is substantial ground for difference of opinion with respect to the lower court's ruling; and (3) an immediate appeal would materially advance the ultimate determination of the litigation. Adelphia, 333 B.R. at 658; Dynegy Mktg. & Trade v. Enron Corp. (In re Enron Corp.), 316 B.R. 767, 771-72 (S.D.N.Y. 2004); Alexander v. Woodstock (In re Alexander), 248 B.R. 478, 483 (S.D.N.Y. 2000). The power to grant an interlocutory appeal pursuant to § 1292(b), and analogously, pursuant to § 158(a)(3), "must be strictly limited to the precise conditions stated in the law." Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 25 (2d Cir. 1990) (citation and internal quotation marks omitted). "In addition, leave to appeal is warranted only when the movant demonstrates the existence of 'exceptional circumstances.'" Adelphia, 333 B.R. at 658 (citations omitted). Moreover, even assuming the party can demonstrate these "precise conditions," "[t]he appellate court may deny the appeal for any reason, including docket congestion." Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978).

These standards are not met here. Most significantly, the core/non-core issue decided by the Bankruptcy Court in the ruling that Citigroup seeks to appeal is not a controlling question of law. Answering it will not resolve the litigation between Enron and Citigroup; the issue does not go to the merits of that litigation at all. Nor does the answer to this question even determine where the litigation will be resolved. That question is the subject of the motion to withdraw the reference, which Citigroup eventually filed. Indeed, Citigroup effectively acknowledges that the effort to appeal the Bankruptcy Court's ruling is simply a preliminary skirmish, intended to gain

a tactical advantage in the later application to this Court to withdraw the reference and take control of the litigation itself.

Citigroup argues that this Court, when deciding whether to withdraw the reference, is bound by the Bankruptcy Court's determination of the core/non-core issue, which can only be reviewed on an appeal of that ruling, whether at the end of the proceeding or by interlocutory review. The authorities on this point are conflicting, with some courts adopting the view put forward by Citigroup, see Horwitz v. Sheldon (In re Donald Sheldon & Co., Inc.), No. 92 Civ. 6834, 1992 WL 396885, at *2 (S.D.N.Y. Dec. 17, 1992); Lesser v. A-Z Assocs. (In re Lion Capital Group), 63 B.R. 199, 209 (S.D.N.Y. 1985), and others taking the opposite view, Bianco v. Hoehn (In re Gaston & Snow), 173 B.R. 302, 306 (S.D.N.Y. 1994); Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1102 (2d Cir. 1993). This Court inclines to the latter opinion.

The awkward procedure that Citigroup felt compelled to follow here demonstrates the impracticality of the view that the Bankruptcy Court's determination of the core/non-core issue is binding on a district court later deciding whether to review the reference. A motion to withdraw the reference, which is addressed to the sound discretion of the District Court, permits that court to address the full range of issues relating to the proper forum in which to litigate the pending dispute. The reference may be withdrawn, and the case restored to the District Court's calendar, whether or not the dispute is a core matter. Thus, where there are other sound reasons why a matter should be heard in the District Court, a motion to withdraw the reference may permit the District Court to avoid ruling on potentially difficult and far-reaching questions of jurisdictional law. Such a motion, moreover, typically brings before the Court a fuller record of

the considerations that may be relevant to understanding the nature of the dispute, which may better illuminate the abstract issue of jurisdiction. If the District Court may only consider the core/non-core issue on a separate interlocutory appeal, the issue may be forced to a premature and unnecessary conclusion.

Moreover, the argument that the District Court should be "bound" by an unappealed ruling of the Bankruptcy Court on the core/non-core issue rests on questionable logic. In addressing the potential withdrawal of the reference, the question whether the matter before the Bankruptcy Court concerns core bankruptcy functions will normally be of considerable importance, because (for a variety of reasons discussed below) the reference is more likely to be withdrawn where the proceeding is not a core bankruptcy matter. In considering the question in this context, the District Court does not engage in appellate "review" of any determination of the Bankruptcy Court; it simply addresses a legal issue relevant to its own exercise of discretion with respect to the division of labor between the District Court and its bankruptcy subdivision. Nor can the Court be "bound," in some res judicata sense, by an interlocutory ruling of a court that is, in the end, simply an arm of the District Court itself. The ruling that Citigroup seeks to appeal here does not finally determine any rights of the parties. It simply represents the Bankruptcy Court's views of an issue that was necessary for it to address in determining how to proceed with the case. That ruling is entitled to considerable respect and deference as the view of a Court with greater specialized expertise in bankruptcy matters than this Court enjoys. It cannot, however, prevent this Court from undertaking its own analysis of the legal issues relevant to how *it* should exercise its own power to decide whether to withdraw the reference of

the matter to the Bankruptcy Court that is itself simply a discretionary order of the District Court with reference to the division of its own business.

Thus, the proper place for these issues to be addressed is in connection with the motion to withdraw the reference, not a separate appeal of a purely abstract interlocutory ruling on the part of the Bankruptcy Court. The motion for leave to appeal that ruling is therefore denied.

## II.     The Motion to Withdraw the Reference

The claims involved in this case have been referred to the Bankruptcy Court pursuant to this Court's standing order providing that all cases filed pursuant to the federal courts' bankruptcy jurisdiction shall be so referred. See Standing Order of Referral of Cases to Bankruptcy Judges, Southern District of New York, dated July 10, 1984; 28 U.S.C. § 157(a). However, the district court "may withdraw, in whole or in part, any case or proceeding [so] referred . . . on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). In deciding whether "cause" to withdraw the reference exists,

> the district court should weigh several factors, of which the first is the most important: (1) whether the claim is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is the delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors.

S. St. Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys), 94 F.3d 755, 762 (2d Cir. 1996). Citigroup moves to withdraw the reference, arguing (1) that it is entitled to a jury trial on at least some of the claims advanced by Enron, and that a jury trial may not be conducted by a bankruptcy judge absent the consent of all parties – which Citigroup declines to provide; (2) that at least some of Enron's claims are non-core claims, as to which a bankruptcy court may not enter final judgment, but may only recommend findings that would then be subject to inefficient

de novo review by this Court; and (3) that the length and complexity of the trial itself argues for trial in the District Court, which Citigroup contends is more competent to try such matters. None of these arguments is ultimately persuasive.[9]

    A.    <u>Jury Trial and Core Claims</u>

An understanding of the nature of the claims and counterclaims made by the parties is necessary to evaluating Citigroup's interrelated arguments that it is entitled to a jury trial on Enron's counterclaims and that those claims involve non-core matters. While Citigroup would have the issues analyzed as if Enron's claims against it stood in isolation, those claims are in fact intimately related to claims brought by the Citigroup entities against the Enron estate in the Bankruptcy Court as part of the bankruptcy proceedings. Citigroup, for example, filed more than $150 million in claims against the Enron debtors (<u>see</u> <u>supra</u> note 5), as well as claims in undetermined amounts "for contractual, statutory and common law rights of indemnity,

---

[9] As a threshold matter, Enron argues that the motion should be rejected as untimely. This argument is without merit. Putting to one side a series of technical issues with respect to whether Citigroup could appropriately have made such a motion at an earlier point, Citigroup's intention to file this motion has been made clear for a long time, and Enron can hardly claim to have been surprised or prejudiced by its filing. Parties to bankruptcy proceedings seeking to have the reference to the bankruptcy court withdrawn should not be required to walk a tightrope between cases holding that motion is "premature" if brought before a case is "trial ready," <u>see</u> <u>Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp.</u>, No. 05 Civ. 6268, 2005 WL 3455775, at *3 (S.D.N.Y. Dec. 15, 2005); <u>Gaston & Snow</u>, 173 B.R. at 307; <u>Times Circle E., Inc. v. Edward Isaacs & Co. (In re Times Circle E., Inc.)</u>, No. 95 Civ. 2838, 1995 WL 489551, at *3 (S.D.N.Y. Aug. 15, 1995); <u>O'Connell v. Terranova (In re Adelphia Inst. Inc.)</u>, 112 B.R. 534, 538 (S.D.N.Y. 1990), and arguments that the motion is untimely if brought a few months before a scheduled trial. In any event, the timeliness standard is flexible and case-specific, <u>see</u> <u>Rickel & Assocs., Inc. v. Smith (In re Rickel & Assocs., Inc.)</u>, No. 03 Civ. 7236, 2003 WL 23021972, at *2 (S.D.N.Y. Dec. 24, 2003) ("there is no bright line test for timeliness"), and must be administered in a manner that fosters the efficient and fair resolution of disputes. If Citigroup were correct in any of its arguments, rejection of the motion on grounds of timeliness would compromise substantive rights or generate inefficiencies. The motion to withdraw the reference should be decided on its merits.

contribution, set-off and liability against Debtor arising from, among other things, Claimants' commercial relations with the Debtor and its affiliates." Claim no. 12843, Attachment ¶ 3; Claim no. 14505, Attachment ¶ 3. The "Claimants" on whose behalf these claims are made include "Citigroup, Inc., . . . and its subsidiaries," Claim nos. 12843 & 14505, and "certain of its affiliates." Claim no. 12843, Attachment ¶ 2; Claim no. 14505, Attachment ¶ 2. These claims, which are made in relation to some of the very transactions that are the subject of Enron's claims,[10] are so substantial that they have required Enron to establish a $4 billion reserve. (See Bankr. Order of Nov. 3, 2005, Doc. 28003.)

Enron instituted the adversary proceeding that is the subject of this motion by filing a counterclaim against numerous financial institutions, including the Bank Defendants, alleging that they participated in a massive fraud with the former management of Enron, and asserting claims for subordination of the priority of certain claims of the Bank Defendants and/or other entities, for damages for fraud and other common-law causes of action, and for the avoidance of allegedly preferential or fraudulent transfers. The pleading asserting this counterclaim is also styled as an objection to the Bank Defendants' claims.

Citigroup first asserts that it has a constitutional right to a trial by jury on all of the common-law causes of action for damages asserted by Enron, citing cases such as Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42 (1989). Enron, indeed, concedes that its

---

[10] The loans that are the basis of Citigroup's claims are a subset of those transactions, but it appears that the transactions that form the basis of most of Enron's claims include earlier loans that were repaid via the funding of the later loans, still outstanding at the time of the bankruptcy, that are the subject of the Citigroup claims. (Opp. Mot. to Withdraw Ref. 14.) Citigroup also filed billions of dollars worth of other unrelated claims against the Enron estate. (See id. at 13 n.13, citing Claim nos. 11264, 12098, 12099, 12100, 12101, 12110, 12111, 14179, 14196, 14198, 14208, 14209, 14503, 14504, available at www.bsillc.com.)

common-law damage claims, considered in isolation, would properly be regarded as non-core claims triable only by jury. But as Enron points out, the Supreme Court in Granfinanciera acknowledged that claims that arise "as part of the process of allowance and disallowance of claims" and that are "integral to the restructuring of debtor-creditor relations" may be resolved in the bankruptcy court without implicating a jury trial right. 492 U.S. at 58. Citigroup acknowledges this point with respect to Enron's fraudulent or preferential transfer claims, but contend that the situation is different with respect to Enron's claims for fraud, conspiracy, and the like.

The case law, however, is not so limited. Although recent cases such as Katchen v. Landy, 382 U.S. 323 (1966), and Langenkamp v. Culp, 498 U.S. 42 (1990), apply the principle to cases involving preferences, the root of the doctrine, as is evident from its citation in Katchen, see 382 U.S. at 335, extends back to Alexander v. Hillman, 296 U.S. 222 (1935). In Alexander, the Supreme Court reversed a decision dismissing common-law counterclaims in an equitable receivership action, a matter closely akin to bankruptcy, for lack of jurisdiction. The Court held that by submitting their claims to the receivership court, the counterclaim-defendants had "submitted themselves to the court's jurisdiction in respect of all defenses that might be made by the receivers and of all objections that other claimants might interpose to the validity, amounts or priorities of their claims." Id. at 238-39. The Court went on emphatically to reject the claim that this submission to jurisdiction did not extend so far as to permit the receivership court, a court of equity, to address legal counterclaims against the claimants:

> Respondents' contention means that, while invoking the court's jurisdiction to establish their right to participate in the distribution, they may deny its power to require them to account for what they misappropriated. In behalf of the creditors and stockholders, the

> receivers reasonably may insist that, before taking aught, respondents may by the receivership court be required to make restitution.  That requirement is in harmony with the rule generally followed by courts of equity that having jurisdiction of the parties to controversies brought before them, they will decide all matters in dispute and decree complete relief.  [Citations omitted.] Distribution may not be made without decision upon the counterclaims.  Nothing is more clearly a part of the subject-matter of the main suit than recovery of all that to the *res* belongs.

Id. at 241-42.  It is this fundamental rule that underlies the later decisions in Katchen and Langenkamp.  Once a party submits to the jurisdiction of the bankruptcy court by making a claim, the party submits to the jurisdiction of the Court to establish the respective rights of the parties.

This is not to say, as Citigroup would characterize the argument, that bankruptcy claimants may be deprived of their rights to a jury trial on any legal claims that the debtor may have against it, simply because the debtors choose to characterize their claims as counterclaims. Enron's claims here are not simply miscellaneous claims that it happens to have against Citigroup.  Rather, its claims go directly to the very matters that Citigroup has brought before the Bankruptcy Court.  The very loans that Citigroup seeks to have repaid are claimed by Enron to have been extended as part of a fraudulent scheme engaged in by Citigroup and former Enron management to the profit of the lenders and the detriment of Enron and its legitimate creditors. The very fraud alleged in the litigations for which Citigroup seeks to be indemnified is the one in which the counterclaims assert that the Bank Defendants were central participants, and Citigroup asserts in its answer the same indemnification rights that are the basis for the claims it asserted in the bankruptcy proceeding proper.  That is precisely the point that Judge Gonzalez made in ruling that Enron's claims against the Bank Defendants involved core bankruptcy matters.  See

349 B.R. at 113. Citigroup's claims, moreover, are not simply a trivial tail to which Enron seeks to attach a gigantic dog – Citigroup's claims ultimately involve billions of dollars.

District courts have frequently refused to withdraw the reference in similar situations, holding that the interrelation of claims asserted against a debtor and counterclaims asserted against the claimants, and/or the assertion of setoffs against those counterclaims, rendered the entire dispute a "core" bankruptcy matter triable in the bankruptcy court without a jury. For example, in In re Iridium Operating LLC v. Motorola, Inc., (In re Iridium Operating LLC), 285 B.R. 822 (S.D.N.Y. 2002), Judge Pauley ruled that

> Traditionally non-core claims against a creditor in an adversary proceeding will be considered core if: (1) the claim arises out of the same transaction as the creditor's proofs of claim or setoff claim, or (2) the adjudication of the adversary proceeding claim would require consideration of issues raised by the proofs of claim or setoff claim such that the two claims are logically connected.

Id. at 832 (citations omitted). Similarly, in North American Energy Conservation, Inc. v. Interstate Energy Resources, Inc. (In re North American Energy Conservation, Inc.), No. 00 Civ. 4302, 2000 WL 1514614, at *2 (S.D.N.Y. Oct.12, 2000), Judge Stein found that "by pleading setoffs in the form of 'affirmative defenses,'" a party had "in fact asserted a claim against [the] bankruptcy estate," and thus rendered an otherwise non-core claim "a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B)." Examples can be multiplied. See, e.g., Hedstrom Corp. v. Wal-Mart Stores, Inc. (In re Hedstrom Corp.), No. 05 Civ. 6888, 2006 WL 1120572, at *3 (N.D. Ill. April 24, 2006); Gecker v. Mantelman (In re Mantelman), No. 01 Civ. 9915, 2002 WL 922087, at *1 (N.D. Ill. May 6, 2002); Commercial Fin. Servs., Inc. v. Jones (In re Commercial Fin.

Servs., Inc.), 251 B.R. 397, 405-07 (Bankr. N.D. Okla. 2000); Interconnect Tel. Servs., Inc. v. Farren, 59 B.R. 397, 400-01 (S.D.N.Y. 1986).[11]

      In short, this Court agrees with the ruling of the Bankruptcy Court that the proceedings involved here are core proceedings that may be tried in the Bankruptcy Court without a jury, and Citigroup's arguments to the contrary are unavailing.

---

[11] Citigroup may not avoid this result by arguing that certain of its affiliates named as defendants in Enron's counterclaims – CAFCO, CXC, and CRC – did not in fact file proofs of claim.  First, the assertions of setoffs made in Citigroup's answer to the Enron counterclaims were made on behalf of all of the Citigroup defendants involved in the adversary proceeding including CAFCO, CXC, and CRC.  (Adv. Pro. Amended Answer (Heyn Dec. Ex. 3) at 240, 245.)  Second, as noted above, several of the affirmative proofs of claims involving indemnity and setoff were expressly made on behalf of Citigroup and its "affiliates" (see, e.g., Claim no. 12843, Attachment ¶¶ 2-3, Claim no. 14505, Attachment ¶¶ 2-3), Citigroup has expressly referred to CAFCO, CXC, and CRC during the course of this adversary proceeding as "affiliates" (see, e.g., Mot. for Leave to Appeal, at 1 n.1; see also Opp. Mot. to Withdraw Ref. 16 n.15), and provides no convincing reason why, in this context, the assertions of setoffs would not also have been made on behalf of CAFCO, CXC, and CRC in the underlying bankruptcy case, given the involvement of those entities in the transactions at issue and the broad language encompassed in the proofs of claim.  Third, many of the specific transactions involved in the Enron counterclaims are ones in which the very affiliates who now claim a jury trial right in fact waived a jury by the express terms of the contract.  Finally, even if there were some merit to Citigroup's argument as to certain claims against certain specific defendants, withdrawal of the reference as to the entire dispute would not be required, because the bulk of the dispute is unquestionably triable in the Bankruptcy Court in any event, and the parties' briefing is insufficient to permit this Court to carve out those few matters as to which the "affiliate" argument applies.  Should it become apparent at some later stage of the case that certain specific claims against specific defendants are not, as now appears, core claims on the theories set out above, the findings of the Bankruptcy Court as to those matters may be treated as recommendations and reviewed de novo in this Court.  Moreover, it would be a far more efficient use of judicial resources for this Court to review the Bankruptcy Court's rulings de novo on these specific, limited issues, after the Bankruptcy Court has resolved those numerous issues that undisputably go to the core of the bankruptcy process, than to remove the entire proceeding to this Court and to try the case in its entirety.

B.   <u>Competence of the Bankruptcy Court</u>

Citigroup's remaining argument for withdrawal of the reference may be dealt with more summarily. It asserts that the contemplated trial, which is projected to last as long as four months, is simply beyond the competence of the Bankruptcy Court, and would be better served by the presumed expertise of this Court in trying complex matters.

There is indeed authority for withdrawing the reference where a proceeding is expected to be exceptionally complex, <u>see</u> <u>Braniff Int'l Airlines, Inc. v. Aeron Aviation Res. Holdings II, Inc. (In re Braniff Int'l Airlines, Inc.)</u>, 159 B.R. 117, 126 (E.D.N.Y. 1993); <u>Complete Mgmt. Inc. v. Arthur Andersen, LLP (In re Complete Mgmt. Inc.)</u>, No. 02 Civ. 1736, 2002 WL 31163878, at *3 (S.D.N.Y. Sept. 27, 2002); <u>Judge v. Ridley & Schweigert (In re Leedy Mortgage Co.)</u>, 62 B.R. 303, 306 (E.D. Pa. 1986), and it would unquestionably lie within this Court's discretion to do so. In the specific circumstances of this case, however, such an exercise of discretion would be unwise.

First, Citigroup considerably overstates the relative expertise of this Court and of the Bankruptcy Court in trying cases. The Bankruptcy Court in this District is no stranger to complicated trials, and there is no doubt that that Court in general, and Judge Gonzalez in particular, has all the skills necessary to handle a complex proceeding.

Second, any greater experience in trying cases that may hypothetically be ascribed to the District Court as an institution is more than outweighed by the specific expertise that Judge Gonzalez has acquired with respect to the Enron matter by his seven years of presiding over the Enron bankruptcy. This greater familiarity with the underlying facts of the case will undoubtedly enable the Bankruptcy Judge to expedite the proceedings in a way that would be

16

impossible for a Court that would have to spend an enormous amount of time getting up to speed on matters already well known to Judge Gonzalez.

Third, the case is already scheduled for trial in the Bankruptcy Court next month. Removing the case to this Court would entail considerable delay. This Court could not realistically try the case until November or December, and as noted, the trial would surely take longer before a Court that lacked familiarity with the underlying proceedings, thus imposing additional costs on the parties in briefing and presenting evidence in order to provide the Court with necessary background. Moreover, whether or not justified, the perception that Citigroup simply sought to achieve delay and shop for a different judge than the one who has the greatest familiarity with the case would undermine the appearance of justice in the case.

For all of these reasons, the Court declines the invitation to remove the case from its proper forum on grounds of the purported complexity of the trial.

## CONCLUSION

For the reasons stated, Citigroup's motions for leave to appeal and to withdraw the reference are denied.

SO ORDERED.

Dated: New York, New York
       March 17, 2008

                                                                          GERARD E. LYNCH
                                                                          United States District Judge